**Richard E. Weltman (rew@weltmosk.com)**
**Michael L. Moskowitz (mlm@weltmosk.com)**
**Debra Kramer (dk@weltmosk.com)**
**Adrienne Woods (aw@weltmosk.com)**
**Melissa A. Guseynov (mag@weltmosk.com)**
**WELTMAN & MOSKOWITZ, LLP**
*Proposed Attorneys for Debtor/Debtor-in-Possession*
270 Madison Avenue, Suite 1400
New York, New York 10016-0601
(212) 684-7800

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>HVI CAT CANYON, INC.,<br><br>             Debtor. | Chapter 11 Case<br><br>Case No. 19-12417 (MEW) |

**DEBTOR'S MOTION SEEKING ENTRY OF AN ORDER UNDER BANKRUPTCY CODE SECTIONS 363(A), (B), (F) AND (M) AND BANKRUPTCY RULES 2002, 6004 AND 9004, AND L.B.R. 6004-1: (I) AUTHORIZING DEBTOR TO SELL PROPERTY KNOWN AS THE REDU ASSET BY PRIVATE SALE; (II) SCHEDULING A HEARING TO APPROVE SUCH SALE; AND (III) APPROVING THE MANNER AND EXTENT OF NOTICE OF SUCH HEARING**

TO:  THE HONORABLE MICHAEL E. WILES
       UNITED STATES BANKRUPTCY JUDGE

       HVI Cat Canyon, Inc., as debtor and debtor-in-possession ("Debtor"), in support of Debtor's Motion seeking entry of an Order under sections 363(a), (b), (f) and (m) of title 11 of the United States Code ("Bankruptcy Code"), Rules 2002, 6004 and 9004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 6004-1 of the Local Bankruptcy Rules, (i) authorizing Debtor to sell property known as the REDU Asset (as such term is described below) by private sale free and clear of all liens, claims and encumbrances with such liens, claims and encumbrances to attach to the proceeds of sale; (ii) scheduling a hearing to approve such sale; and (iii) approving the manner and extent of notice of such hearing; together with such other and further relief as this Court deems just and proper; and respectfully represents as follows:

## BACKGROUND

1.      On July 25, 2019, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor is authorized to continue to operate its business and manage its properties as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An Official Committee of Unsecured Creditors ("Creditors' Committee") was appointed in this chapter 11 case.

2.      Debtor is the owner and operator of producing oil and gas interests in California. Debtor owns an approximate 100% working interest and an average 85% net revenue interest in several oilfields in the Santa Maria Valley of Santa Barbara County, North Belridge in Kern County, and Richfield East Dome Unit in Orange County. Debtor's assets include: (a) fee and leased mineral acreage, (b) oil and gas wells, (c) compressor plants, (d) tank batteries, and (e) an extensive pipeline infrastructure. Debtor was formed as a Colorado corporation in 1997 and employs approximately 50 individuals.

3.      The Richfield East Dome Unit ("REDU") is located in the Richfield Field in Orange County, California. REDU has had continuous oil production since the field's discovery in the 1920's. The field was unitized in 1969 amongst independent producers, with Texaco as operator. Debtor has been the owner and operator of the REDU Asset since 1999 and without any significant environmental and regulatory impacts.

4.      Today, there are a total of 139 wells (85 oil and gas producers and 54 water injectors) within REDU. The field spans approximately 568 mineral acres across three cities: Anaheim, Yorba Linda, and Placentia. These cities are amongst the prestigious residential communities within Orange County. As the population in Southern California grew over the decades, the once-rural properties surrounding REDU were eventually developed with residences

coming as close as possible to REDU's footprint. REDU's operations are a complex array of equipment and pipeline infrastructure that snakes its way through high-end apartment complexes, schools, parks and multi-family dwellings, in densely populated neighborhoods.

5. In December 2017, the California Department of Conservation, Division of Oil, Gas and Geothermal Resources ("DOGGR") – which has oversight of REDU's operations – issued Order No. 1119 to Debtor to stop injection, remediate project issues, take preventative measures, impose a civil penalty and to post a "Life of" bond. The Order has been amended twice since then resulting in Order No. 1119C, as corrections by DOGGR had been made in acknowledgment of Debtor's interim compliance with the Order. However, Debtor's requirement to file a "Life of" bond continues to be required in Order 1119C in the approximate amount of $39 million which is the cost estimated by DOGGR to plug the REDU wells and remediate the subject properties. It is Debtor's understanding that if the REDU Asset were sold pursuant to which a new operator would replace Debtor, DOGGR would waive or cancel the "Life of" bond requirement. Absent such sale, HVI would have to fund $39 million to either post a "Life of" bond in compliance with Order 1119C or, failing such bond posting and having to shut in the field as a result, plug the wells and remediate the properties.

*Summary of Purchase Agreement*

6. As more fully discussed below, Debtor has signed an Agreement of Sale and Purchase ("Purchase Agreement") with REDU Holdings, LLC ("Buyer") to acquire the REDU Asset for $1.25 million, in its present "as is, where is" condition. In summary, the REDU Asset substantially consists of: (i) all rights, titles and interests of Debtor in and to the oil, gas and mineral leases which comprise the mineral acres; (ii) the wells located on the leases or lands pooled therewith; (iii) various contracts, including exploration, development, operation and maintenance

contracts; (iv) personal property; and (v) surface interests. It is respectfully submitted that the Purchase Agreement be reviewed in its entirety regarding the property to be sold and purchased under the Purchase Agreement. A copy of the Purchase Agreement is annexed as Exhibit "A."

7. Moreover, Buyer has agreed as further consideration to assume all liability arising from its ownership, operation and use of REDU as well as such claims in Order No. 1119C (excluding the claim to pay a civil penalty). To Debtor's knowledge, the new operator who would replace Debtor upon closing the sale is in good standing with DOGGR to take over REDU's operations.

## RELIEF REQUESTED

8. Debtor submits this Application seeking entry of an Order under sections 363(a), (b), (f) and (m) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9004, and Local Bankruptcy Rule 6004-1: (i) authorizing Debtor to sell property known as the REDU Asset by private sale, free and clear of such liens, claims and encumbrances with such liens, claims and encumbrances attaching to the proceeds of sale; (ii) scheduling a hearing to approve such sale; and (iii) approving the manner and extent of notice of such hearing; together with such other and further relief as this Court deems just and proper.

9. Debtor has been engaged in an active marketing campaign for the last 3 years, which included hiring Roth Capital Partners in 2017, in an attempt to solicit and negotiate offers for the purchase of the REDU Asset among other properties. Despite extensive marketing efforts undertaken by Roth Capital Partners over several months, no buyers came forward. Thereafter, Debtor initiated a dialogue with the adjacent Operator – Bridgemark, to acquire the REDU Asset. However, after DOGGR issued Order No. 1119 (its first Order) in December 2017, Bridgemark, who was the only potential buyer of the REDU Asset, declined to proceed.

10. It was not until approximately two months ago, that Debtor received an unsolicited expression of interest from Buyer to purchase the REDU Asset. The dialogue eventually resulted in execution of the attached Purchase Agreement. The prospective purchaser is neither an affiliate nor creditor of Debtor. The negotiations with the prospective purchaser were at arms-length.

11. The offer received from Buyer will enable Debtor to bring much needed funds to the bankruptcy estate while eliminating the potential cost of approximately $39 million to Debtor and its creditors of plugging the wells and remediating the properties. Moreover, approval of the private sale of the REDU Asset will enable DOGGR to waive or cancel the "Life of" bond requirement in Order No. 1119C. While Debtor has appealed Order No. 1119C, the hearing of such appeal is scheduled for August 26 through August 29, 2019 before an Administrative Law Judge. Any ruling to require the "Life of" bond will attach to the REDU Asset, making it essentially impossible for Debtor to sell the properties and, in turn, causing Debtor to plug the wells and remediate the properties at a cost of approximately $39 million.

12. Debtor submits the current offer, subject to this Court's approval, is likely the best and, possibly, the only offer to be received for the purchase of the REDU Asset. With the dearth of interest in the REDU Asset despite marketing efforts previously undertaken by an investment bank retained by Debtor, Debtor believes that making the offer subject to higher and/or better offers will not result in any higher and/or better offer being made for the REDU Asset. Rather, any further delay in the sale of the REDU Asset could result in the loss of the current offer, to the detriment of Debtor's estate and creditors, while potentially saddling Debtor's estate with the significant remediation costs of approximately $39 million. Accordingly, Debtor respectfully requests that the Court approve the attached Purchase Agreement and allow Debtor to consummate

the sale of the REDU Asset in accordance with the express terms set forth in the Purchase Agreement.

13. In addition, Debtor requests the Bankruptcy Court determine Purchaser has acted in good faith and is entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m). The Purchase Agreement was negotiated by and between Debtor and the Purchaser at arm's length and in good faith. Purchaser has not provided any deposit with respect to the purchase of the REDU Asset.

14. The sale of the REDU Asset to Buyer, pursuant to Bankruptcy Code sections 363(b) and (f) will be free and clear of all liens, claims and encumbrances, if any, with such liens, claims and encumbrances attaching to the proceeds of sale.

## BASIS FOR THE RELIEF REQUESTED

15. This Court has jurisdiction to hear this Motion under 28 U.S.C. §§ 157(a) and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O). The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363(b) and (f), Bankruptcy Rules 2002 and 6004 and Local Bankruptcy Rule 6004-1.

16. Bankruptcy Code section 363(b)(1) provides that "[t]he Trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) and (f). This section is applicable to Debtor pursuant to Bankruptcy Code section 1107(a). The terms of such sale are generally within the sound discretion of the Debtor. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670 (Bankr. S.D.N.Y. 1989)(sale of debtor's airline shuttle assets approved where representing the exercise of independent good faith and non-coerced business judgment by the debtor, the debtor articulated a compelling business reason for

the sale and the price represented fair value). As recognized by the Second Circuit in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), a court may approve a Bankruptcy Code section 363 application after expressly determining from the evidence presented at the hearing, that a good business reason exists to grant such application.

17. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be made by private sale or auction. As set forth herein, based upon the dearth of interest in the REDU Asset, Debtor's ability to realize funds from the sale of the REDU Asset and eliminate significant remedial costs of approximately $39 million to the benefit of its estate and creditors, Debtor believes the sale of the REDU Asset to Buyer by private sale is warranted and in the best interests of the estate and its creditors. Any further delay in the sale of the REDU Asset will only result in Debtor's inability to sell the asset as a result of DOGGR's Orders, while saddling the estate with substantial debt to the detriment of Debtor's estate and its creditors.

18. As set forth herein, Debtor respectfully submits that compelling business justifications exist for approval of the relief requested in this Motion and the sale of the REDU Asset to Buyer in accordance with the Purchase Agreement.

## NOTICE OF THE MOTION

19. Notice of this Motion has been provided to (i) the U.S. Trustee (Attn: Serene Nakano, Esq. and Greg M. Zipes, Esq.); (ii) the holders of the five (5) largest secured claims against Debtor; (iii) Pachulski Stang Ziehl & Jones LLP, 780 Third Avenue, 34th Floor, New York, New York 10017; Attn: Robert J. Feinstein, Esq. and Richard E. Mikels, Esq., proposed counsel for the Creditors' Committee; (iv) O'Melveny & Meyers, LLP, 400 South Hope Street, Los Angeles California 90071-2899; Attn: Evan M. Jones, Esq., counsel to secured creditor UBS

AG London Branch; (iv) Quinn Emanuel Urquhart & Sullivan, LLP, 711 Louisiana Street, Suite 500, Houston, Texas 77002, Attn: Patty Tomasco, Esq., counsel for GIT, Inc.; (v) the Internal Revenue Service; (vi) the Environmental Protection Agency and similar state environmental agencies for states in which Debtor conducts business; (vii) the state attorneys general for states in which Debtor conducts business; (viii) DOGGR; and (ix) all persons and entities who have filed Notices of Appearance in this case (collectively, the "Notice Parties").  Debtor submits that, in view of the facts and circumstances, such notice to the Notice Parties is sufficient and proper notice, and no other or further notice need be provided.

**WHEREFORE**, Debtor respectfully requests that this Court grant this Motion approving the private sale of the REDU Asset to Buyer in accordance with the Purchase Agreement, free and clear of all liens, claims and encumbrances, if any, with such liens, claims and encumbrances to attach to the proceeds of sale, and granting such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         August 27, 2019

**WELTMAN & MOSKOWITZ, LLP**
*Proposed Attorneys for Debtor/Debtor in Possession*

By: */s/ Michael L. Moskowitz*
    **MICHAEL L. MOSKOWITZ**
270 Madison Avenue, Suite 1400
New York, New York 10016
(212) 684-7800