LOEB & LOEB LLP
MARC S. COHEN (SBN 65486)
mscohen@loeb.com
DONALD A. MILLER (SBN 228753)
dmiller@loeb.com
STEVEN S. ROSENTHAL (SBN 109739)
srosenthal@loeb.com
ALICIA M. CLOUGH (SBN 260012)
aclough@loeb.com
MARIAH V. S. VOLK (SBN 323068)
mvolk@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone:    310.282.2000
Facsimile:    310.282.2200

Xavier BECERRA
Attorney General of California
LISA W. CHAO
Supervising Deputy Attorney General
JOHN C. KEITH
Deputy Attorney General
State Bar No. 229755
   300 South Spring Street, Suite 1702
   Los Angeles, CA  90013
   Telephone:  (213) 269-6251
   Fax:  (916) 731-2144
E-mail:  John.Keith@doj.ca.gov

*Attorneys for the California State Lands Commission*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No.: 9:19-BK-11573-MB<br>Chapter 11 |
| HVI CAT CANYON, INC., | |
| Debtor. | **RESPONSE TO REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO:**<br><br>**(1) CALIFORNIA STATE LAND COMMISSION'S LIMITED OBJECTION TO APPLICATION FOR ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT OF PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, EFFECTIVE AS OF AUGUST 16, 2019 [Docket No. 346]; and**<br><br>**(2) CALIFORNIA STATE LAND COMMISSION'S LIMITED OBJECTION TO APPLICATION OF THE** |

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

|  |  |
|---|---|
| ) | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AUTHORIZATION TO RETAIN AND EMPLOY CONWAY MACKENZIE, INC. AS FINANCIAL ADVISOR, EFFECTIVE AS OF AUGUST 16, 2019 [Docket No. 347]** |
| ) | Hearing Date:  October 28, 2019 |
| ) | Hearing Time: 10:00 a.m. |
| ) | Place: Courtroom 201 |
| ) |        U.S. Bankruptcy Court |
| ) |        1415 State Street, Courtroom 202 |
| ) |        Santa Barbara, CA 93101 |
| ) | Judge: The Honorable Martin R. Barash |

The California State Lands Commission (the "Commission") respectfully submits this response to the omnibus reply (the "Reply") [Docket No. 392] filed by the Official Committee of Unsecured Creditors (the "Committee") in connection with (1) the Committee's Application For Order Authorizing and Approving the Employment of Pachulski Stang Ziehl & Jones LLP ("PSZJ") as Counsel, Effective as of August 16, 2019 (the "Pachulski Employment Application"), and (2) the Committee's Application for Authorization to Retain and Employ Conway MacKenzie, Inc. as Financial Advisor, Effective as of August 16, 2019 (the "Conway MacKenzie Employment Application").

**1. The Pachulski Employment Application**

Contrary to the arguments contained in the Reply, the Commission is not asking the Court to deny the Pachulski Employment Application.  The Commission is not objecting to PSZJ's employment, *per se*, and never suggested that PSZJ should not be employed.  Similarly, at this time, the Commission has no *per se* objection to PSZJ being compensated for work that the law firm has already performed.  The Commission is not arguing that the firm should not be paid.  Rather, the Commission filed its limited objection to the Pachulski Employment Application on October 4, 2019 with the knowledge that a motion for the appointment of a Chapter 11 trustee was imminent.  Indeed, the Commission, together with a consortium of other co-movants comprised of other California state and local regulatory agencies, as well as holders of royalty interests, filed a

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

2

motion seeking the appointment of a Chapter 11 trustee on October 7, 2019.[1]  On October 16, 2019, the Court entered an order authorizing the appointment of a Chapter 11 trustee.  [Docket No. 409]

In its Reply to the Commission's limited objection, the Committee makes no acknowledgement that its role will be scaled back if a Chapter 11 trustee is appointed.  Instead, the Commission appears to insist that the role of the Committee's professionals will not change.  Reply at 3:6-15.  The Commission submits that this presumption is speculative and demonstrates an inflated sense of the Committee's role in the post-trustee-appointment posture of this case.  It is well-established that a Committee's role in a case is altered when the statutory basis of the case is changed.

Moreover, the Committee has never been representative of the overall creditor body of the Debtor's estate, so its continued presence is unnecessarily wasteful.  The Committee was appointed pursuant to 11 U.S.C. § 1102(a)(1) by the Office of the U.S. Trustee in the Southern District of New York, where the case was initially filed.  It is not known how the U.S. Trustee's office in New York went about selecting the members, but the value of their claims is demonstrably dwarfed by comparison to the claims held by overall creditor body.  The Committee is comprised of three members: (1) Brian Corson, in his individual capacity; (2) Escolle Tenants in Common; and (3) Pacific Petroleum California, Inc.  None of these three creditors are listed among the List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders in the Debtor's Petition (the "20 Largest List").  [Docket No. 1 at pp. 6-8 of 25]  According to the Debtor's schedules, all three Committee members' claims stem from pending litigation.  Accordingly, those claims are all contingent on these entities ultimately prevailing in litigation against the Debtor.[2]  Indeed, the value of Mr. Corson's claim against the Debtor's estate is

---

[1] Specifically, on October 7, 2019, the Commission, together with the California Department of Conservation Division of Oil, Gas, and Geothermal Resources ("DOGGR"), Santa Barbara County, the Air Pollution Control District, and the Office of Harry E. Hagen, Treasurer-Tax Collector (the "Santa Barbara Entities"), and BUGANKO, LLC ("BUGANKO") filed their Motion for Appointment of a Chapter 11 Trustee [Docket No. 356] (the "Commission Trustee Motion"), pursuant to section 1104(a) of the Bankruptcy Code.

[2] As of the filing of this response, the members of the Committee have not filed proofs of claim.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

3

Case 9:19-bk-11573-MB    Doc 422    Filed 10/21/19    Entered 10/21/19 16:47:51    Desc
Main Document    Page 4 of 8

"unknown." [Docket No. 171 at p. 103 of 316][3] The value of Escolle Tenants in Common's claim is $2,679.65 as of the petition date. [Docket No. 171 at p. 136 of 316] The value of Pacific Petroleum California's claim is also described as "unknown," then later listed as $244,306.21. [Docket No. 171 at p. 211 of 316] In any event, regardless of the nominal value of their claims, these three litigants are not the type of traditional trade creditors who typically serve on creditors' committees to represent the interests of the entire body of unsecured creditors.

In contrast, the value of the claims held by the parties that collectively filed the Commission Trustee Motion are significantly greater than the value of the claims held by the three members of the Committee. In fact, the group's collective claims could be as much as $100 million. The Santa Barbara Entities appear no fewer than three times on the 20 Largest List: (1) Santa Barbara County Treasurer-Tax Collector (1st largest unsecured creditor with a claim of $3,351,085.42); (2) Santa Barbara County-APCD (4th largest unsecured creditor with a claim of $1,072,681.43); and (3) Santa Barbara County P&D (6th largest unsecured creditor with a claim of $703,708.05). [Docket No. 1 at pp. 6-8 of 25] DOGGR is also on the 20 Largest List, with an unsecured claim of $300,562.97. Moreover, as of the petition date, it was estimated that the Debtor owed $12.6 million in unpaid royalties.[4] The Commission's claim is premised on the fact that the Commission is a major creditor of the debtor in the case of Rincon Island Limited Partnership (currently winding down in the Northern District of TX Bk Court). Its claim is $78,876,162 (as of May 10, 2018). HVI was the general partner of RILP and the entity in control of RILP until the day RILP filed for Chapter 11 relief on August 8, 2016. On that day, RILP's insiders – presumably to shield the new entity from potential liability associated with RILP – created a new, single-purpose entity called RILP-H LLC to replace RILP's former general partner

---

[3] Mr. Corson's pending litigation is premised on his purported entitlement to wage and overtime pay. Mr. Corson was making $21 per hour. Even a generous estimation of the value of Mr. Corson's claim, if he prevails in litigation, could not conceivably exceed $50,000.

[4] *See* Declaration of Alicia Clough, filed concurrently ("Clough Decl."), Ex. A at 33 (August 29, 2019 Expert Report of Monty Kehl).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

4

(HVI). As the general partner at the time the claims arose against RILP, HVI remains liable for the claims against RILP.[5]

Given the size of the claims held by the co-movants that submitted the Commission Trustee Motion and the ongoing threats posed to California citizens and wildlife as a result of the Debtor's disregard for its regulatory obligations, it should come as no surprise that these co-movants have been essentially functioning as a de facto creditors' committee. These co-movants have played an unusually active role in this case, first in moving to transfer the venue of the case from the Southern District of New York, to the Northern District of Texas, and eventually to the Central District of California. The Committee actively opposed the attempts to change venue to bring the case to the Central District of California. *See, e.g.,* Declaration of Alicia Clough, filed concurrently ("Clough Decl."), Ex. B (Statement of Position of Official Committee of Unsecured Creditors in Support of Motion to Transfer Venue) [Docket No. 74 at 1-2] ("The Committee agrees that this bankruptcy case does not belong in [the Southern District of New York] and should be transferred, but the Committee requests that this Court transfer venue to the Northern District of Texas (the "Texas Bankruptcy Court") where the Debtor's affiliate case of Rincon Island Limited Partnership is pending ("Rincon")"); *see also* Clough Decl., Ex. C at 48:18-23 (8/27/2019 Hearing Tr.) (Committee counsel: "We do agree that venue is improper here and it should be transferred. Then it's just a question of which court to go to. The debtor's expressed the preference for Texas, as has the official committee, which is entirely made up of California creditors. That's all I wanted to say.").

The co-movants also were compelled to take the laboring oar in seeking the appointment of a Chapter 11 trustee and note that the Committee declined to do so. In fact, the Committee tried to stand in the way of the request for a Chapter 11 trustee, attempting instead to align itself with the Debtor and advocate for a Chief Restructuring Officer, while leaving the Debtor's management in place, rather than a trustee. *See, e.g.,* Clough Decl., Ex. D at 90:4-14 (9/23/2019 Hearing Tr.)

---

[5] The Commission has already spent at least $23 million out-of-pocket undertaking the plug and abandonment work on RILP's wells to avert serious threats to California's coastal environment and protect the health and safety of California's citizens and wildlife. *See* Declaration of Joseph Fabel, filed concurrently ("Fabel Decl."), ¶¶ 2-3.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

5

(statement by Committee counsel at September 23, 2019 hearing in which counsel urged the secured creditor – UBS AG, London Branch – to file a motion for a trustee, while insisting that the Committee "is not in a position to file that motion right now").

The Committee has made no efforts to communicate, coordinate, or collaborate with the environmental regulators in this case, choosing instead to pretend that they did not exist. This continued to be the case even after the Commission filed the limited objection to the Pachulski Employment Application. The Commission's limited objection to the Pachulski Employment Application is predicated, in part, on the fact that the Committee has not actually been fulfilling its statutory function of acting "as a watchdog on behalf of the larger body of creditors which it represents." *In re AKF Foods, Inc.*, 36 B.R. 288, 289 (Bankr. E.D.N.Y. 1984). The co-movants that filed the Commission Trustee Motion saw no choice but to step into the role of "watchdog," both in spearheading the venue transfer efforts and in seeking the appointment of a trustee. Indeed, it is telling that the Committee did not send its counsel or any representative to the 341(a) Meeting of Creditors on October 10, 2019.[6] The 341(a) meeting lasted the better part of the day and afforded creditors ample opportunity to ask questions of the Debtor's Chief Operating Officer, Mr. Olivares. The Committee chose not to avail itself of this opportunity.[7]

In short, the Commission is not asking the Court to deny the Pachulski Employment Application outright. Rather, the Commission simply seeks to raise concerns about rubberstamping an application without questioning the above-described issues that should give the Court, as well as other unsecured creditors, pause.[8] The Commission is simply suggesting that the Committee should start standing down.

---

[6] *See* Declaration of Mariah Volk, filed concurrently ("Volk Decl."), ¶ 2.

[7] *See id.*

[8] The Commission recognizes that it will have the opportunity to raise the problem of "duplication as between estate professionals" at the fee application phase of the case. Committee's Reply at 3:16-21. But the Commission takes issue with the Committee's characterization of such duplication as "hypothetical." It is not pure conjecture or speculation that leads the Commission to raise concerns about "duplication as between estate professionals." This concern is legitimate and paramount. It should not go unrecognized by the Court. Now that the Court has entered an order authorizing the appointment of a Chapter 11 trustee, the concern is a ripened, imminent issue. Once appointed, the trustee will retain his or her own professionals. The team will take over the administration of the estate, minimizing the need for the "watchdog" role

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

6

### 2. The Conway MacKenzie Employment Application

The Commission respectfully submits that – now that the Court has authorized the appointment of a Chapter 11 trustee – there is even less of a need for the Committee to have its own financial advisor. The newly appointed trustee will, undoubtedly, retain its own financial advisor to assist with the trustee's duties as the estate's independent fiduciary. There is simply no need for a secondary financial advisory firm, particularly one as expensive as Conway MacKenzie. In the Conway MacKenzie Employment Application, the Committee purports to need to retain a financial advisor for the purpose of assisting the Committee in "(i) understanding the Debtor's businesses and operations; (ii) executing its fiduciary duties; and (iii) maximizing the value of the Debtor's estate." Conway MacKenzie Employment App. at ¶4. But it is now the duty of the trustee to maximize the value of the Debtor's estate. The Committee cannot pretend that the landscape of this case has not been dramatically altered with the appointment of a Chapter 11 trustee, which has resulted in the displacement of the debtor-in-possession.

The Committee's Reply makes no attempt to explain how or why there could be a need for two different financial advisory firms in this case. As the Committee's counsel has recognized, this is "a thin case, obviously. If you've seen the budget, there's very little money there right now."[9] Nonetheless, the Committee offers no explanation to justify the retention of two financial advisors going forward. Accordingly, although the Commission has not asked the Court to deny the Pachulski Employment Application, the Commission does hereby submit that there are grounds for denying the Conway Mackenzie Employment Application.

In sum, the Commission respectfully requests that the Court carefully consider the issues set forth in the Commission's limited objections and herein regarding the Pachulski Employment

---

that a creditors' committee is meant to play. The Committee's statutory role will no longer be as necessary as it once was. Duplication of efforts would be inevitable if the Committee were to attempt to insert itself as an alleged fiduciary for the creditor body. There is nothing "hypothetical" about this matter. And the Committee's back-of-the-hand dismissal – suggesting that the issue should not be considered until the Court considers requests for compensation – is not well-taken.

[9] *See* Clough Decl., Ex. D at 89:6-7 (excerpt from 9/23/2019 Hearing Tr.).

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

7

Application.  The Commission further requests that the Court deny the Conway MacKenzie Employment Application.

Dated: October 21, 2019

LOEB & LOEB LLP

By: /s/ Marc S. Cohen
Marc S. Cohen
*Attorneys for the California State Lands Commission*

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

18288257.2
232604-10002

8