1   ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@dgdk.com*
2   JOHN N. TEDFORD, IV (State Bar No. 205537)
    *jtedford@dgdk.com*
3   DANNING, GILL, DIAMOND & KOLLITZ, LLP
    1901 Avenue of the Stars, Suite 450
4   Los Angeles, California 90067-6006
    Telephone: (310) 277-0077
5   Facsimile: (310) 277-5735

6   Proposed Attorneys for Michael A. McConnell,
    Chapter 11 Trustee
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                      **NORTHERN DIVISION**

11

12  In re                                    Case No. 9:19-bk-11573-MB

13  HVI CAT CANYON, INC.,                    Chapter 11

14          Debtor.                          **NOTICE OF MOTION AND TRUSTEE'S
                                             EMERGENCY MOTION FOR**
15                                           **(1) AUTHORITY TO ACCEPT A
                                             PARTIAL PREPAYMENT OF THE**
16                                           **AMOUNT OWED BY CALIFORNIA
                                             ASPHALT PRODUCTION, INC., TO THE**
17                                           **ESTATE, OR IN THE ALTERNATIVE
                                             FOR AUTHORITY TO OBTAIN**
18                                           **"CREDIT" IN THE FORM OF SUCH
                                             PREPAYMENT, AND (2) WAIVER OF**
19                                           **ANY STAY IMPOSED BY FRBP 6004(h);
                                             AND MEMORANDUM OF POINTS AND**
20                                           **AUTHORITIES, DECLARATION OF TIM
                                             SKILLMAN, AND REQUEST FOR**
21                                           **JUDICIAL NOTICE IN SUPPORT
                                             THEREOF**
22
                                             Date:    October 25, 2019
23                                           Time:    9:00 a.m.
                                             Place:   Courtroom 303
24                                                    21041 Burbank Blvd.
                                                      Woodland Hills, California
25
                                                      - and -
26
                                             Courtroom 201
27                                           1415 State Street
                                             Santa Barbara, California
28

1564242.1  26932

1   **PLEASE TAKE NOTICE** that on **October 25, 2019**, at **9:00 a.m.**, in Courtroom 303 of

2   the U.S. Bankruptcy Court for the Central District of California located at 21041 Burbank

3   Boulevard, Woodland Hills, California, and by video available in Courtroom 201 of the U.S.

4   Bankruptcy Court for the Central District of California located at 1415 State Street, Santa Barbara,

5   California, Michael A. McConnell, the chapter 11 trustee (the "Trustee") for the estate of HVI Cat

6   Canyon, Inc. (the "Debtor"), will and does hereby move the Court, **on an emergency basis**, for an

7   order authorizing the Trustee to accept a partial prepayment of the amounts that will be owed by

8   one of the Debtor's affiliates, California Asphalt Production, Inc. ("CAP"), for delivery of product

9   that accrued, and continue to accrue, during the month of October 2019.  If the Court deems the

10  prepayment to constitute "credit," the Trustee requests that the Court authorize the Trustee to

11  obtain such credit.  The Trustee also requests that the Court waive any stay that may apply to the

12  enforcement of the Court's order.  The Trustee requests that the Court enter an order substantially

13  in the form of the order attached as Exhibit "1" hereto.

14      **PLEASE TAKE FURTHER NOTICE** that this motion has been filed on an emergency

15  basis because the Trustee needs the funds to pay payroll on October 25, 2019, and to pay certain

16  other expenses on October 25 or as soon thereafter as possible.

17      **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9075-1, a hearing on this

18  motion is set for **October 25, 2019**, at **9:00 a.m.**  In accordance with the Court's instructions given

19  to the Trustee's counsel:

20  - This motion has been filed on or before noon on October 24, 2019.

21  - Telephonic notice of the hearing on this motion will be given to counsel for the
      following by 1:00 p.m. on October 24, 2019:

22

23      - the Debtor;
        - the Official Committee of Unsecured Creditors (the "Committee");
        - UBS AG, London Branch ("UBS");
24      - County of Santa Barbara, California ("Santa Barbara");
        - California State Lands Commission;
25      - Buganko, LLC;
        - GIT, Inc. ("GIT");
26      - the Office of the United States Trustee; and
        - parties that have requested special notice.

27

28

1564242.1 26932                                        1

1    **PLEASE TAKE FURTHER NOTICE** that oppositions to this motion, or to the setting of

2    the hearing on this motion on an emergency basis, may be presented orally at the hearing. Parties

3    wishing to submit written oppositions must do so by no later than 9:00 a.m. on October 25, 2019.

4    If you do not have any objection to this motion, you need not take any further action.

5

6                                **Summary of Relief Requested**

7        The Trustee's motion may be summarized as follows: On October 8, 2019, the Court

8    entered its most recent order authorizing the Debtor to use cash collateral (the "Cash Collateral

9    Order").[1]  The order was entered with the express consent of UBS, the Debtor, the Committee,

10   GIT, and Harry E. Hagen as Treasurer-Tax Collector of the County of Santa Barbara, California.

11   One of the goals of the order was to provide for the use of cash collateral by a chapter 11 trustee if

12   the Court were to order the appointment of a trustee at an upcoming hearing. The Court did order

13   that a trustee be appointed, and Michael A. McConnell was just appointed as the chapter 11 trustee.

14       Although the Trustee has authority to use cash collateral, the Trustee discovered that the

15   estate has insufficient cash to pay payroll and related expenses that must be paid on Friday,

16   October 25, 2019. The Trustee has about $18,000 of available cash on hand, and needs

17   approximately $113,000 to pay employees and related expenses, including payroll taxes. The

18   Trustee also needs about $146,000 to pay royalties that are supposed to be paid on about October

19   25, plus $71,500 to pay other necessary expenses.

20       Given the short time frame, the Trustee is unable to borrow the necessary funds from UBS

21   or any other source. As a result, at the Trustee's request, one of the Debtor's affiliates, California

22   Asphalt Productions, Inc. ("CAP"), has agreed to partially prepay amounts that CAP is not actually

23   required to pay until November 25, 2019. CAP will prepay approximately $332,000, which will

24   provide the Trustee the cash he needs to make the payments identified on Exhibit "2" to the

25

26

27       _____
         [1] Docket no. 375. A copy of the Cash Collateral Order is attached as Exhibit "3" to the Request
28   for Judicial Notice.

1    Declaration of Tim Skillman.  (As of the time of filing of this motion, the money had not yet been

2    received from CAP.)

3        To be clear:  The October 8 order already authorizes the Trustee to use cash collateral to

4    pay these expenses.  The Trustee simply needs an infusion of cash to do so.  The Trustee therefore

5    seeks authority to accept CAP's partial prepayment.

6        The Trustee believes that his acceptance of the partial prepayment falls within the ordinary

7    course of the Debtor's business.  However, out of an abundance of caution, the Trustee requests

8    authority, pursuant to 11 U.S.C. § 363(b) and (c), to accept the prepayment and use the funds in

9    accordance with the Cash Collateral Order.

10        The Trustee does not believe that the partial prepayment qualifies as "credit" for purposes

11    of § 364.  However, if the Court deems the prepayment to constitute "credit," the Trustee requests

12    authority, pursuant to 11 U.S.C. § 364, for authority to obtain such "credit."

13        In accordance with Federal Rule of Bankruptcy Procedure 4001(c)(1)(A), the Debtor's

14    proposed form of order is attached as Exhibit "1" hereto.  There is no written agreement with CAP

15    regarding its partial prepayment.

16        In accordance with Federal Rule of Bankruptcy Procedure 4001(c)(1)(B) and other

17    applicable rules, the following table summarizes the significant terms of the proposed "credit" and

18    the proposed order:[2]

| Material Term or Type of Provision | Summary of Provision(s) | Location in Order |
|---|---|---|
| Amount | Appx. $332,000 | ¶ 2 |
| Interest rate | None. | N/A |
| Maturity date | None. | N/A |
| Events of default | None. | N/A |
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | None. | N/A |

[2] Because this table is provided, the Trustee requests that the Court waive the requirement in LBR 4001-2 that the Trustee file a separate *Statement Regarding Cash Collateral or Debtor in Possession Financing.*

1564242.1  26932                                3

| Material Term or Type of Provision | Summary of Provision(s) | Location in Order |
|---|---|---|
| The providing of adequate protection or priority for a claim that arose before the commencement of the case or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | None. | N/A |
| Cross-collateralization – i.e., clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law | None. | N/A |
| Roll-up – i.e., provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | None. | N/A |
| Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | None. | N/A |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien security the claim | None. | N/A |
| A waiver or modification of Code provisions or applicable rules relating to the automatic stay | None. | N/A |
| Automatic relief from the automatic stay upon occurrence of certain events | None. | N/A |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364 | None. | N/A |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order | None | N/A |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | None | N/A |

| Material Term or Type of Provision | Summary of Provision(s) | Location in Order |
|---|---|---|
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action | None | N/A |
| The indemnification of any entity | None | N/A |
| A release, waiver, or limitation of any right under § 506(c) | None | N/A |
| The granting of any lien on any claim or cause of action arising under § 506(c) | None | N/A |
| The granting of a lien on any claim or cause of action arising under §§ 544, 1 545, 547, 548, 549, 553(b), 723(a), or 724(a) | None | N/A |
| With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | None | N/A |
| Pay down prepetition principal owed to a creditor | None | N/A |
| Findings of fact on matters extraneous to the approval process | None | N/A |

The Trustee's motion is based upon this notice and motion, the accompanying Memorandum of Points and Authorities, Declaration of Tim Skillman, and Request for Judicial Notice, the separate proof of telephonic notice of the hearing, the papers and pleadings on file in this case, and such other evidence as may be presented to the Court.

DATED: October 24, 2019          DANNING, GILL, DIAMOND & KOLLITZ, LLP

By:      /s/ John N. Tedford, IV
JOHN N. TEDFORD, IV
Proposed Attorneys for Michael A. McConnell,
Chapter 11 Trustee

1564242.1  26932          5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### **INTRODUCTION**

Only three days ago, Michael A. McConnell accepted appointment as the chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"). Based on his investigation thus far, the Trustee has learned that the estate has approximately $18,000 of available cash on hand. This is substantially less than the Debtor projected to have in its most recent cash collateral budget.[3] The Trustee will be investigating the reasons for the shortfall.

In the meantime, the Trustee needs cash to make certain payments that were included in the approved cash collateral budget. Especially, the Trustee needs to fund the payroll that must be paid on October 25, 2019. The budgeted items that the Trustee believes he should pay on October 25, or as soon thereafter as possible, are identified in Exhibit "2" to the Declaration of Tim Skillman.

One of the Debtor's primary sources of revenue is one of its affiliates, California Asphalt Production ("CAP"). The Debtor and CAP are parties to multiple agreements, including a Waste Gas Handling Agreement. Under that agreement (and possibly other agreements), CAP is required to make payments to the Debtor on or before the 25th day of each month for charges that accrued during the immediately preceding month. Thus, on or before November 25, 2019, CAP is required to pay charges that have accrued (and are accruing) during October 2019. Based on the limited investigation that the Trustee has been able to conduct thus far, the Trustee believes that the total amount that will be owed by CAP for October 2019 will be $1.5 million to $2 million.

To allow the Trustee to pay the payroll and certain other budgeted items, CAP has agreed to prepay a portion of the amount CAP will owe for charges accrued (and accruing) in October 2019. Specifically, CAP will prepay the amount needed for the Trustee to pay the $331,000 of expenses listed in Exhibit "2" to Mr. Skillman's declaration. (As of the time of filing of this motion, the money had not yet been received from CAP.)

---

[3] *See* Docket no. 375 (*Agreed Order for Consensual Use of Cash Collateral*). Exhibit "3".

1    Out of an abundance of caution, because this arrangement may not be strictly within the

2    ordinary course of the Debtor's business, the Trustee is seeking authority to accept the prepayment

3    and use the funds to pay the budgeted items consistent with the Court's prior grant of authority to

4    use cash collateral.  Also out of an abundance of caution, if the Court considers this arrangement to

5    be a credit transaction, the Trustee is seeking authority to obtain the "credit" under 11 U.S.C.

6    § 364.  Either way, so that the Trustee can pay the payroll and other expenses immediately, the

7    Trustee is requesting that the Court waive any applicable stay.

8

9                                              **II.**

10                              **STATEMENT OF FACTS**

11   A.    **OVERVIEW AND HISTORY OF THE DEBTOR'S BUSINESS**

12        The Debtor is a Colorado corporation authorized to conduct business in the state of

13   California.  It is the owner and operator of producing oil and gas interests in California.  According

14   to the Debtor, it "owns an approximately 100% working interest and an average 85% net revenue

15   interest in several oilfields in the Santa Maria Valley of Santa Barbara County, North Belridge in

16   Kern County, and Richfield East Dome Unit in Orange County."[4]

17        Prior to the Petition Date, the Debtor engaged in transactions with certain of its affiliates,

18   including CAP.  The Debtor has described its transactions with CAP accordingly:

19            Debtor has multiple agreements with [CAP] pursuant to which CAP
             agrees to purchase from Debtor: Crude, handle waste gas, process
20           BS&W Excess and/or Cold Oil and Debtor agrees to purchase Light
             Crude and Hot Loads, as such terms are defined and described in the
21           operative agreements (collectively, the "CAP Agreements") annexed
             hereto as Exhibit D.[5]
22

23   At least one of those agreements provides as follows:

24            [CAP] shall pay [the Debtor] . . . for all Waste Gas delivered
             to [CAP] at the Point of Delivery and metered by [CAP], payable
25           monthly, on or before the 25th day of each month ("Due Date")

26   ---
     [4] Docket no. 16, pp. 1-2, ¶ 2.

27
     [5] Docket no. 16, p. 5, ¶ 13.

28

1564242.1  26932                          7

1                    following receipt of an invoice or such other documentation acceptable
to the Parties for the amounts which accrued during the immediate
2                    preceding calendar month. . . ..[6]

3         On October 23, 2019, the Trustee and his agents met with principals of the debtor (Ernesto

4 Olivares and Alex Dimitrijevic).  Mr. Olivares, the Debtor's Chief Financial Officer, advised that

5 (1) no additional sum was due to the Debtor on October 25, 2019, notwithstanding that the cash

6 collateral budget projected that approximately $1 million would be received this week,[7] (2) the

7 absolutely necessary expenses which had to be paid on October 25, 2019 aggregate $331,339,

8 including payroll and payroll taxes, and royalties, and (3) CAP will owe the estate for the month of

9 October 2019 between $1.5 million and $2 million.  Whatever the amount, the Debtor's principals

10 advised that that CAP's payment is not required until November 25, 2019.

11

12 **B.**     **THE DEBTOR'S BANKRUPTCY FILING AND THE TRUSTEE'S APPOINTMENT**

13         On July 25, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under

14 chapter 11 of title 11 of the United States Code (the "Code").  The case was originally filed in the

15 Southern District of New York.  It was transferred to the Northern District of Texas, and then later

16 to the Central District of California.

17         The Debtor initially operated its business as a "debtor in possession," allowing it to exercise

18 substantially all rights of a trustee in the bankruptcy case.  On or about October 16, 2019, the Court

19 entered its *Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee*.  On or about

20 October 22, 2019,  the Court approved the appointment of Michael A. McConnell as the chapter 11

21 trustee in this case.

22

23

24

25

26     [6] Docket no. 16-4, p. 17 of 51, ¶ 4(a).

27     [7] *See* Exhibit "3" to the Request for Judicial Notice.

28

1564242.1 26932                                    8

**C.    THE MOST RECENT ORDER AUTHORIZING USE OF CASH COLLATERAL**

On or about October 8, 2019, the Court entered its *Agreed Order for Consensual Use of Cash Collateral* (the "Cash Collateral Order").[8]  A copy of the Cash Collateral Order is attached as Exhibit "3" to the Request for Judicial Notice.  The Cash Collateral Order provided, in relevant part, as follows:

- The Debtor was authorized to use Cash Collateral to pay ordinary course operating expenses in accordance with a budget that was attached to the Cash Collateral Order (the "Approved Budget").

- Without a court order or written consent of UBS and Santa Barbara, the Debtor was *not* authorized to make "any royalty payments or surface lease payments to insiders or affiliates of the Debtor."  The Debtor was required to hold such payments in an interest-bearing escrow or segregated account.

- Subject to certain conditions (including the consent of the Committee and Santa Barbara), UBS may, by written agreement, amend the Approved Budget to extend the date through which Cash Collateral may be used and to increase the amount of Cash Collateral that may be used thereunder.

- "[T]he Trustee is specifically authorized to use Cash Collateral pursuant to the terms" of the Cash Collateral Order.

**D.    THE TRUSTEE'S CRITICAL NEED FOR CASH TO PAY CERTAIN ITEMS IN THE APPROVED BUDGET, AND CAP'S AGREEMENT TO PARTIALLY PREPAY FOR CHARGES ACCRUED (AND ACCRUING) IN OCTOBER 2019**

Although the Trustee has the authority to use cash collateral to pay the budgeted items, he does not have the cash.  In the coming weeks and months, the Trustee hopes to work with UBS and others to address the Debtor's cash flow issues.  The Trustee will also investigate the reasons for the significant disparity between the revenue projection in the cash collateral budget and what the Debtor's officers provided to him on October 23, 2019.

In the meantime, the Trustee needs cash to meet the October 25 payroll and pay certain other expenses that the Trustee and his proposed CRO have identified as high-priority items.  The Trustee inquired whether UBS could loan the necessary funds, but it is logistically impossible for UBS to agree to such a loan, and for the Trustee to file a timely motion for approval of such a loan,

---

[8] Docket no. 375 (Exhibit "3").

1564242.1 26932

9

1   in such a short time frame. At the Trustee's request, CAP has agreed to partially prepay amounts

2   that CAP will owe for October 2019, which would not normally be paid for another three or four

3   weeks. This will enable the Trustee to pay the necessary expenses when due.

4          To reiterate: All of the expenses that the Trustee intends to pay now were included in the

5   Approved Budget. A comparison of the Approved Budget and the list of payments that the Trustee

6   intends to make immediately using the funds received from CAP is attached as Exhibit "2" to Mr.

7   Skillman's declaration. In addition, the Trustee is not waiving rights to against any parties for the

8   shortfalls in revenues which were due on October 25, 2019 as projected in the cash collateral

9   budget.

10

11                                          III.

12                                      **ARGUMENT**

13  A.   **THE COURT SHOULD AUTHORIZE THE TRUSTEE TO ACCEPT THE**

14        **PARTIAL PREPAYMENT FROM CAP**

15         Unless the court, on request of a party in interest and after notice and hearing, orders

16  otherwise, a chapter 11 trustee may operate a debtor's business. 11 U.S.C. § 1108. If the debtor's

17  business is authorized to be operated under § 1108, and unless the court orders otherwise, a trustee

18  may enter into transactions in the ordinary course of business, without notice or a hearing, and may

19  use property of the estate in the ordinary course of business without notice of a hearing. 11 U.S.C.

20  § 363(c)(1). However, a trustee may not use cash collateral unless each party that has an interest in

21  such cash collateral consents, or the court authorizes such. 11 U.S.C. § 363(c)(2). If a trustee

22  proposes to enter into transactions and/or use property of the estate *outside* of the ordinary course

23  of business, he or she may do so after notice and a hearing. 11 U.S.C. § 363(b).

24         In this case, the Trustee already has authority to operate the Debtor's business. The Trustee

25  believes that his agreement to accept a partial prepayment from CAP is within the ordinary course

26  of the Debtor's business since there appears to be no question that CAP will owe the estate at least

27  $1.5 million for October 2019. However, the Trustee recognizes that the partial payment is being

28  made by CAP before October concludes and before the customary invoice(s) and documentation is

1    provided to CAP.  The Trustee also recognizes that CAP is an affiliate of the Debtor, subjecting the

2    transaction to a higher degree of scrutiny.

3            For this reason, the Trustee requests that the Court expressly authorize the Trustee to accept

4    a partial prepayment from CAP in an amount sufficient to cover the payments identified in Exhibit

5    "2" to Mr. Skillman's declaration, under the column heading "Reforecast Week 13."

6

7    **B.    IF THE COURT CONSIDERS THIS A CREDIT TRANSACTION, THE COURT**

8            **SHOULD AUTHORIZE THE TRUSTEE TO OBTAIN CREDIT PURSUANT TO**

9            **11 U.S.C. § 364**

10           If the debtor's business is authorized to be operated under § 1108 and unless the court

11   orders otherwise, a trustee may obtain unsecured credit and incur unsecured debt in the ordinary

12   course of business, allowable as an administrative expense against the estate.  11 U.S.C. § 364(a).

13   After notice and a hearing, the court may authorize the trustee to obtain credit or incur unsecured

14   debt outside of the ordinary course of business.  11 U.S.C. § 364(b).

15           The Trustee does not believe that he is proposing a credit transaction.  However, out of an

16   abundance of caution, if the Court concludes that the Trustee's acceptance of funds from CAP is a

17   credit transaction, the Trustee requests that it be approved and that the order provide that CAP's

18   extension of "credit" will reduce the amounts that CAP must pay the estate in the future for the

19   charges that accrue during October 2019.[9]

20           The Trustee's request will not prejudice any party in interest.  The prepayment will not, in

21   any way, reduce the total amount that CAP must pay to the estate or release any claims for sums

22   actually still due or any improper setoffs.  UBS's security interests (and any other parties' security

23   interests) will attach to CAP's prepayment if and to the same extent that they would attach to any

24   other receipt from CAP.  The Court has already authorized cash collateral to be used in accordance

25   with the Approved Budget.  Therefore, all of the parties with interests in the funds to be received

26   _____

27   [9] Of course, CAP will still owe the estate for the balance of charges that accrue during October
     2019, and its partial prepayment will not any way affect other claims that the estate and CAP may
28   have against each other.

1564242.1  26932                                11

1  from CAP have either consented to the Trustee's use of revenues to pay the expenses, or the Court

2  already has determined that they are adequately protected.

3

4  **C.**    **THE COURT SHOULD WAIVE ANY STAY APPLICABLE UNDER FRBP 6004(h)**

5       Federal Rule of Bankruptcy Procedure 6004(h) provides than an order authorizing the use,

6  sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after

7  entry of the order, unless the court orders otherwise.  So the Trustee may promptly pay payroll and

8  other expenses identified in Exhibit "2" to Mr. Skillman's declaration, the Trustee requests that the

9  Court's order provide that it is effective and immediately enforceable notwithstanding any potential

10  application of Rule 6004(h).

11

12                                    **IV.**

13                               **CONCLUSION**

14       For the reasons set forth above, the Court should authorize the Trustee to accept CAP's

15  partial prepayment of the amounts that will be owed by CAP for charges that have accrued, and

16  continue to accrue, during October 2019.  If the Court deems the prepayment to constitute credit,

17  the Court should authorize the Trustee to obtain such credit.  So that the Trustee may immediately

18  pay necessary expenses, the Court should waive any stay that may apply to the enforcement of the

19  Court's order.  The Trustee requests that the Court enter an order substantially in the form of the

20  order attached as Exhibit "1" hereto.

21

22  DATED:  October 24, 2019            DANNING, GILL, DIAMOND & KOLLITZ, LLP

23

24

                                   By:      _/s/ John N. Tedford, IV_
25                                          JOHN N. TEDFORD, IV
                                            Proposed Attorneys for Michael A. McConnell,
26                                          Chapter 11 Trustee

27

28

1564242.1  26932                          12

## DECLARATION OF TIM SKILLMAN

I, Tim Skillman, declare and state as follows:

1.  I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently with respect to such facts.

2.  I am a partner at CR3 Partners, LLC ("CR3").  CR3 is a national turnaround and performance improvement firm.  CR3 offers advisory services and our professionals often serve as officers to assist clients in need of crisis management and other turnaround services.  I have served as Chief Restructuring Officer to two companies, and as a C-level executive for other companies in need of someone to help navigate crises in and out of bankruptcy.

3.  Subject to Court approval, Michael A. McConnell, the chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"), will be retaining CR3 in this case. I will be working as, or in a capacity similar to, a Chief Restructuring Officer.

4.  On October 23, 2019, the Trustee, the Trustee's proposed general bankruptcy counsel (Eric P. Israel of Danning, Gill, Diamond & Kollitz, LLP) and I met with certain of the Debtor's representatives, including the Debtor's Chief Financial Officer, M. Ernesto Olivares.  To the extent we could do so in the limited time available, we examined the financial condition of the estate and expenses that the Trustee needs to pay in the very near future.  Most urgently, we discovered that payroll needs to be paid on October 25, but the estate does not (and will not) have enough cash to cover the payroll.  Available cash at this time is only $18,022.

5.  The Debtor's Chief Financial Officer advised that:  (1) no material additional sum was due the debtor on October 25, 2019, notwithstanding that the cash collateral budget projected $997,550,000 would be received this week on or before that date, (2) the absolutely necessary expenses which had to be paid on October 25, 2019 aggregate $331,339, including payroll, payroll taxes, and royalties, and (3) CAP will owe the estate for the month of October 2019 between $1.5 million and $2 million.  I am also informed and believe that the October 25 payroll, with taxes and related expenses, will exceed $100,000.

6.    At the direction of the Trustee, I asked the financial advisors for UBS, AG, London Branch ("UBS") whether UBS would loan funds to the estate to cover the payroll and other priority expenses. However, given the very short amount of time needed to obtain UBS's approval and to document any loan agreement, their shock at the serious shortfall of projected receipts compared with the cash collateral budget, and the very short amount of time in which the Trustee would need to prepare and file a motion for approval of any such agreement, borrowing the funds from UBS – at least in time to meet the payroll obligations – was infeasible.

7.    The Trustee explored other options as well. Ultimately, California Asphalt Production, Inc. ("CAP"), agreed to prepay a portion of the payment it would normally make on or about November 20. This is not a loan, it is a prepayment that will be credited against whatever CAP owes for sales to CAP for the month of October. Based on my discussions with Mr. Olivares, I am informed and believe that CAP will owe the estate $1.5 million to $2 million for charges that accrued, and are continuing to accrue, in the month of October.

8.    I am informed and believe that, on or about October 8, 2019, the Court entered an order authorizing the use of cash collateral in accordance with a budget attached to the order (the "Budget"). Based on my discussions with Mr. Olivares, I identified specific items in the Budget that I believe should be paid immediately from the funds to be received from CAP.

9.    A comparison between week 13 in the Budget and the amounts that I believe should be paid immediately is attached as Exhibit "2" hereto. The amounts I believe should be paid immediately are identified in the column under the heading "Reforecast Week 13."

10.    With respect to the line items for "Royalties" and "Escrow Royalties," these are amounts that I am told are due by October 25, 2019. In the Budget, the Debtor projected that it would pay $167,453 of "Royalties" during Week 9 and $31,602 of "Escrow Royalties" during Week 11. I am informed and believe that these payments were not made during those weeks. I believe that the Trustee should pay these amounts as soon as possible to avoid potential adverse consequences of not doing so.

11. With respect to the line item for "Payroll," I am informed and believe that this line item includes amounts that, outside of bankruptcy, would be paid to the Debtor's President, Alex Dimitrijevic, and possibly other officers or insiders. However, I am informed and believe that the Trustee does not intend to pay compensation to Mr. Dimitrijevic and/or other officers at this time until insider compensation authority is obtained.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2019, at Santa Maria, California.

Tim Skillman

## **REQUEST FOR JUDICIAL NOTICE**

Michael A. McConnell, the chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"), requests that the Court take judicial notice of the following:

1.    On July 25, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

2.    The Debtor filed its petition in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then to the Central District of California.

3.    On October 8, 2019, the Court entered its *Agreed Order for Consensual Use of Cash Collateral* (the "Cash Collateral Order").  A true and correct copy of the Cash Collateral Order is attached as Exhibit "3" hereto.

4.    Initially, the debtor operated its business as a debtor in possession, allowing it to exercise substantially all rights of a trustee in the bankruptcy case.

5.    On October 16, 2019, the Court entered its *Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee.*

6.    On or about October 22, 2019, the Court entered an order approving the appointment of Michael A. McConnell as the chapter 11 trustee for the Debtor's estate.

DATED:  October 24, 2019              DANNING, GILL, DIAMOND & KOLLITZ, LLP


                                      By:    _/s/ John N. Tedford, IV_____
                                             JOHN N. TEDFORD, IV
                                             Proposed Attorneys for Michael A. McConnell,
                                             Chapter 11 Trustee

1564242.1  26932                          16

EXHIBIT "1"

ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@dgdk.com*
JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@dgdk.com*
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Proposed attorneys for Michael A. McConnell,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**NORTHERN DIVISION**

| | |
|---|---|
| In re | Case No. 9:19-bk-11573-MB |
| HVI CAT CANYON, INC., | Chapter 11 |
| Debtor. | **ORDER GRANTING TRUSTEE'S EMERGENCY MOTION FOR (1) AUTHORITY TO ACCEPT A PARTIAL PREPAYMENT OF THE AMOUNT OWED BY CALIFORNIA ASPHALT PRODUCTION, INC., TO THE ESTATE, OR IN THE ALTERNATIVE FOR AUTHORITY TO OBTAIN "CREDIT" IN THE FORM OF SUCH PREPAYMENT, AND (2) WAIVER OF ANY STAY IMPOSED BY FRBP 6004(h)** |
| | Date:    October 25, 2019 |
| | Time:    9:00 a.m. |
| | Place:    Courtroom 303 |
| | 21041 Burbank Blvd. |
| | Woodland Hills, California |
| | - and - |
| | Courtroom 201 |
| | 1415 State Street |
| | Santa Barbara, California |

**Exhibit 1**

1564245.1  26932

1    On October 25, 2019, at 9:00 a.m., the Court heard and considered the *Emergency Motion*

2    *for (1) Authority to Accept a Partial Prepayment of the Amount Owed by California Asphalt*

3    *Production, Inc., to the Estate, or in the Alternative for Authority to Obtain "Credit" in the Form*

4    *of Such Prepayment, and (2) Waiver of Any Stay Imposed by FRBP 6004(h)* (the "Motion") filed by

5    Michael A. McConnell, the chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon,

6    Inc. (the "Debtor"), the Honorable Martin R. Barash, United States Bankruptcy Judge, presiding.

7    Eric P. Israel of Danning, Gill, Diamond & Kollitz, LLP, appeared on behalf of the Trustee; and all

8    other appearances were as noted on the record at the hearing.

9    The Court having read the Motion and its accompanying Memorandum of Points and

10    Authorities, Declaration of Tim Skillman (the "Skillman Declaration"), and Request for Judicial

11    Notice (*docket no. __*), and the proof of telephonic notice given to parties upon which the Court

12    required the Trustee to give such notice (*docket no. ___*), having determined that cause exists to

13    conduct a hearing on the Motion on an emergency basis pursuant to Local Bankruptcy Rule 9075-

14    1, having determined that notice of the Motion and of the hearing was adequate and proper, having

15    determined that the relief sought by the Trustee is property characterized as a use of estate property

16    governed by 11 U.S.C. § 363 and not a credit transaction governed by 11 U.S.C. § 364, having

17    heard the statements of counsel at the hearing, for the reasons stated by the Court on the record at

18    the hearing, and for good cause appearing, it is

19    **ORDERED THAT:**

20    1.    The Motion is granted.

21    2.    Pursuant to 11 U.S.C. § 363, the Trustee is authorized to accept approximately

22    $332,000 from California Asphalt Production, Inc. ("CAP") as a partial prepayment of the amounts

23    that will be owed by CAP for charges that have accrued, and that are continuing to accrue, during

24    October 2019.

25    3.    In accordance with the Court's prior *Agreed Order for Consensual Use of Cash*

26    *Collateral* (the "Cash Collateral Order") (*docket no. 375*), and subject to any limitations set forth in

27    the Cash Collateral Order with respect to payments and distributions to insiders and affiliates, and

28    also subject to any limitations set forth in applicable rules and guidelines regarding compensation

1  paid to insiders, the Trustee is authorized to use the funds received from CAP to pay the expenses

2  listed in Exhibit "2" to the Skillman Declaration under the heading "Reforecast Week 13."

3         4.     Nothing in this order or the Trustee's acceptance of the partial prepayment shall

4  constitute or be deemed in any way to give rise to a waiver or release by the Trustee of any rights

5  that the estate may have against any party with respect to the shortfall in receipts that the budget

6  attached to the Cash Collateral Order projected to be received on or before October 25, 2019.

7         5.     The terms and conditions of this order shall be effective and immediately

8  enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of

9  Federal Rule of Bankruptcy Procedure 6004(h) or any other statute or rule providing for a stay of

10  enforcement of this order and its terms.

11                                    # # # # #

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1564245.1  26932

2

**0020**

EXHIBIT "2"

| HVI CAT CANYON INC. Week 13 Budget - *Reforecast* | Original Forecast Week 13 | Reforecast Week 13 | |
|---|---|---|---|
| Estimated Beginning Cash Balance (1) | 168,507 | 33,800 | |
| | | | |
| **Cash Inflows (2)** | | | |
| SMV | 859,100 | | |
| Redu | 61,283 | | |
| Belridge | 77,167 | | |
| **Total Cash Inflows** | **997,550** | - | |
| | | | |
| Royalties (3) | | (118,392) | ($167,453) was projected for Week 9 |
| Escrow Royalties (4) | | (27,690) | ($31,602) was projected for Week 11 |
| **Total Cash Inflows** | **997,550** | **(146,081)** | |
| | | | |
| **Cash Outflows** | | | |
| **Operating Expenses (5)** | | | |
| | | | |
| Payroll Checks | 76,000 | 76,000 | |
| Payroll Taxes | | 27,431 | $27,431 was projected for Week 12 |
| Garnishment & Child Supports | | 1,320 | $1,320 was projected for Week 12 |
| Surface Rents | | | |
| Consultants | 9,008 | 9,008 | |
| Phones | 2,000 | | |
| Power PG&E | | | |
| Power SoCalEdison | | | |
| Waste Management | | | |
| Water | | | |
| SouthernCalGas | | | |
| Portable Restrooms | 169 | | |
| Alarms | | | |
| Cafeteria | | | |
| Copies | | | |
| Chemicals | 10,000 | 10,000 | |
| Pumps | 25,000 | 25,000 | |
| Gasoline | 11,500 | 11,500 | |
| Transportation | 267,521 | | |
| Vacuum Trucks | | | |
| LCR | 430,000 | | |
| Electricians | 10,000 | 5,000 | |
| Welders | 5,000 | | |
| Supplies (Belts-Parts) | 2,000 | 2,000 | |
| Parts (Compressor, Pipe, others) | 8,000 | 5,000 | |
| Clean Chemical towers | | | |
| Vehicle maintenance | 8,000 | 8,000 | |
| Drink Water | 150 | | |
| Weed abatement | 5,000 | 5,000 | |
| Well Analysis | 3,000 | | |
| Compliance | | | |
| Fire Department | 5,000 | | |
| APCD | 2,000 | | |
| SBP - APCD | | | |

Exhibit 2

| | | |
|---|---|---|
| SBP - P&D | 119,843 | |
| SBP - FD | | |
| SBP - EHS | | |
| SBP - Tax | | |
| Escrow - Surface Rents | | |
| **Total Operating Expenses** | **999,191** | **185,258** |
| | | |
| **G&A Expenses** | | |
| | | |
| Bank Charges & fees | 100 | |
| Insurances | 12,418 | |
| Backoffice & Administrative | 109,000 | |
| Total G&A | **121,518** | - |
| | | |
| **Growth Production Capex** | | |
| SMV | | |
| BELRIDGE | | |
| REDU | | |
| | | |
| Total Growth Production | - | - |
| | | |
| **Total Cash Outflows** | 1,120,709 | 331,339 |
| **Net Cash Flow** | (123,159) | (331,339) |
| **Estimated Ending Cash Balance** | **45,348** | **(297,539)** |

(1) Estimated cumulative book bank balance in HVI's Operating, Payroll and Payroll Tax Accounts as of 10/23/19, per Ernesto Olivares. The Escrow bank account balance is not included in this estimate and, per E. Olivares, has a balance around $40k.

(2) Per E. Olivares, $23.8k of collections due to HVI Cat Canyon for week 13 will be remitted to HVI Cat Canyon next week.

(3) Royalties due by 10/25/19 per royalty schedule provided by E. Olivares.

(4) Escrow royalties due by 10/25/19 per royalty schedule provided by E. Olivares.

(5) Per discussions w/ Alex Dimitrijevic and Ernesto Olivares, the following Operating Expenses need to be funded in order to avoid interrupting normal operations of the Debtor.

EXHIBIT "3"

1   O'MELVENY & MYERS LLP
    Evan M. Jones (S.B. # 115827)
2   Brian M. Metcalf (S.B. # 205809)
    Darren L. Patrick (S.B. # 310727)
3   400 South Hope Street, 18th Floor
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   E-mail: ejones@omm.com
    E-mail: bmetcalf@omm.com
6   E-mail: dpatrick@omm.com

7   Gary Svirsky (N.Y. SBN: 2899417)
    Samantha M. Indelicato (N.Y. SBN: 5598263)
8   (appearing *pro hac vice*)
    Seven Times Square
9   New York, NY 10036
    Telephone: (212) 326-2000
10  Facsimile: (212) 326-2061
    E-mail: gsvirsky@omm.com
11  E-mail: sindelicato@omm.com

12  *Attorneys for UBS AG, London Branch*

13

14              UNITED STATES BANKRUPTCY COURT

15        CENTRAL DISTRICT OF CALIFORNIA — NORTHERN DIVISION

16

17  In re:                              Case No. 9:19-bk-11573-MB

18  HVI CAT CANYON, INC.,               Chapter 11

19          Debtor.                     **AGREED ORDER FOR CONSENSUAL
                                        USE OF CASH COLLATERAL**
20
                                        Telephonic Hearing
21                                      Date:   October 8, 2019
                                        Time:   11:00 a.m.
22                                      Place:  Courtroom 202
                                                21041 Burbank Boulevard
23                                              Woodland Hills, California  91367

24

25

26          This Agreed Order for Consensual Use of Cash Collateral is entered as of October 8, 2019

27  with the express consent of UBS AG London Branch ("UBS"), the Debtor and Debtor in Possession

28  ("Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), GIT, Inc., and

**Exhibit 3**

Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California ("Santa

Barbara") with respect of the following facts:

On October 4, 2019 the Court denied the *Debtor's Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 Approving Use of Cash Collateral, Providing Adequate Protection and Setting Final Hearing Pursuant to Bankruptcy Rule 4001* [ECF No. 11] (the "Cash Collateral Motion") and the *Motion of the Debtor to Surcharge Collateral Pursuant to 11 U.S.C §§ 506(c) and 552(b)* [ECF No. 55] (the "Surcharge Motion"). The Court set for hearing on October 18, 2019 any motions seeking appointment of a trustee filed in this case pursuant to a schedule set forth by the Court on the record.

The parties hereto wish to provide for use of cash collateral in anticipation of that hearing as well as to permit a transition period for use of cash collateral by any trustee the Court may order appointed at such hearing (the "Trustee").

Based upon the evidence and pleadings adduced with regard to the Cash Collateral Motion and Surcharge Motion, such use being found necessary to avoid immediate and serious harm to the estate and potential harm to the public health and safety as contemplated by Bankruptcy Rule 4001(b), notice and opportunity for hearing being sufficient under the circumstances, and good cause appearing therefore,

IT IS HEREBY ORDERED AS FOLLOWS:

1.    Use of Cash Collateral. Debtor may use Cash Collateral, on the terms and conditions set forth herein, provided that the amount used pursuant to this Order (without regard to prior orders regarding cash collateral) does not exceed $2,031,129 through October 25, 2019. To the extent the Debtor holds an interest, all funds and cash investments of Debtor, including any funds on deposit at any banks or other institutions as of the Petition Date, are Cash Collateral of UBS within the meaning of 11 U.S.C. § 363(a). In addition, all cash proceeds of the collateral (and investments

- 2 -
AGREED ORDER FOR CONSENSUAL USE OF CASH COLLATERAL

**0026**

1   thereof) received after the Petition Date are Cash Collateral of UBS within the meaning of 11 U.S.C.

2   § 363(a).

3       2.      Compliance with the Cash Collateral Budget. Except as otherwise set forth herein,

4   Debtor is hereby authorized to use all Cash Collateral to pay ordinary course operating expenses in

5   accordance with the budget annexed hereto as **Exhibit 1** (including all terms and conditions set

6   forth therein, the "Cash Collateral Budget"), subject to a variance of ten percent (10%) of the

7   expenses set forth in the Cash Collateral Budget. To the extent amounts set forth in the Cash

8   Collateral Budget are not used in a given week, they may be spent in any subsequent week absent

9   further Order of the Court.

10

11      3.      Limitations on Use of Cash Collateral. Debtor shall notify Huron Consulting Group

12  ("Huron"),      via      email      to      both      mkehl@huronconsultinggroup.com      and

13  azughayer@huronconsultinggroup.com, of any payments that exceed $7,500 not less than 36 hours

14  prior to initiating such payment (a "Proposed Payment"). If Huron does not object to the Proposed

15  Payment within 36 hours by email to the Debtor at meo@greka.com and agd@greka.com, Debtor

16  may proceed to make such payment. Should Huron object to the Proposed Payment, such payment

17  shall not be made without further Order of the Court. The parties consent to judicial intervention

18  on an expedited basis to determine whether such Proposed Payment may proceed. Any payments

19  to be made under the attached Cash Collateral Budget to Santa Barbara, departments or agencies

20  of the County of Santa Barbara, and the APCD must be approved by Huron. If approved, such

21  payments shall be made timely in accordance with the attached Cash Collateral Budget. For the

22  avoidance of doubt, no payments shall be made to GIT pursuant to this Order for prepetition work

23  or claims other than reimbursement with regard to the Debtor's employees.

24

25

26      4.      Reporting Requirements. As a condition to use of Cash Collateral, Debtor shall

27  promptly: (i) provide to UBS and Santa Barbara a variance report reasonably acceptable to UBS

28

- 3 -

**0027**

1   on a weekly basis during the period for which use of Cash Collateral is permitted for this and any

2   subsequent interim order, which shall be delivered by the Wednesday of the following week; and

3   (ii) comply with all additional reasonable requests of UBS, Santa Barbara, and their respective

4   representatives and agents.

5       5.    Adequate Protection – Replacement and Additional Liens. UBS is entitled, pursuant

6

7   to 11 U.S.C. §§ 361 and 363(e), to adequate protection of its interests in the collateral, including

8   the Cash Collateral, for any diminution in value of its interests in the prepetition collateral,

9   including, without limitation, any such diminution resulting from use by Debtor of Cash Collateral

10  and any other collateral, and the imposition of the automatic stay pursuant to 11 U.S.C. § 362. As

11  partial adequate protection for any diminution in value of UBS's interests in the collateral from and

12

13  after the Petition Date, effective upon the commencement of this case and without the necessity of

14  the execution by Debtor or UBS of any mortgages, security agreements, pledge agreements,

15  financing statements or otherwise, the following replacement security interests and liens are hereby

16  granted to UBS, subject only to (i) valid and perfected non-voidable liens in existence on the

17  Petition Date or arising thereafter, and (ii) valid liens in existence on the Petition Date that are

18  perfected subsequent to the Petition Date as permitted by 11 U.S.C. § 546(b): (a) to the full extent

19

20  of any diminution in value of UBS's prepetition collateral, a perfected first priority senior security

21  interest in and lien upon all cash of Debtor and any investment of the funds of Debtor, whether

22  existing on the Petition Date or thereafter acquired as of the date hereof and as of the Petition Date;

23  and (b) to the full extent of any diminution in value of UBS's prepetition collateral, a perfected first

24  priority senior security interest in and lien upon all other pre- and post-petition property of Debtor,

25  whether existing on the Petition Date or thereafter acquired, including, without limitation, all

26  accounts, cash, Cash Collateral, deposit accounts, chattel paper, instruments, documents,

27  investment property, supporting obligations, customer lists, letter of credit rights, inventory,

28

- 4 -

AGREED ORDER FOR CONSENSUAL USE OF CASH COLLATERAL

**0028**

fixtures, equipment, general intangibles, goods, patents, copyrights and trademarks as well as all

products and proceeds of any of the foregoing and books and records relating to any of the foregoing

and to Debtor's business and the proceeds of all of the foregoing (collectively, the "Post-Petition

Collateral").

6.    Adequate Protection for the Use of Cash Collateral – Superpriority Claim.  To the

extent the Post-Petition Collateral granted to UBS herein does not provide adequate protection of

its interests in the Cash Collateral, UBS shall have a super-priority administrative expense claim

under Section 507(b) of the Bankruptcy Code as necessary to compensate UBS for any diminution

in value of its Collateral occurring as a result of Debtor's use of Cash Collateral during this Chapter

11 Case ("Cash Collateral Superpriority Claim").  The Cash Collateral Superpriority Claim shall

have priority over all administrative expenses of any kind or any subsequently filed bankruptcy

case under any Chapter of the Bankruptcy Code in any court of competent jurisdiction, including

such administrative expenses of the kinds specified in, or allowable under, Sections 105, 326, 330,

331, 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code.  Additionally, no: (i) costs or

expenses of administration which have been or may be incurred (a) in the Chapter 11 Case; (b) after

conversion of the Chapter 11 Case to a case proceeding under Chapter 7 of the Bankruptcy Code,

or (c) in any other proceeding related hereto; and/or (ii) priority claims as defined in Section 507(a)

of the Bankruptcy Code are, or will be, prior to or *pari passu* with the Cash Collateral Superpriority

Claim.

7.    Perfection of Adequate Protection Liens.  UBS may, but shall not be required, to file

or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction

or take any other action in order to validate and perfect the security interests and liens granted to

them pursuant to this Order.  If UBS shall, in their sole discretion, choose to file such financing

statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of

AGREED ORDER FOR CONSENSUAL USE OF CASH COLLATERAL

such security interests and liens, the liens and security interests granted herein shall be deemed

perfected at the time and on the date of entry of this Order.  Upon request by UBS, Debtor is

authorized, without the further consent of any party, to take any actions and to execute and deliver

such instruments as may be necessary to enable UBS to further perfect, preserve and enforce the

security interests and liens granted to UBS by this Order.

8.    The Adequate Protection Liens granted by this Order and the Cash Collateral

Superpriority Claim granted by this Order shall not attach to avoidance claims of the estate or

proceeds thereof.  For the avoidance of doubt, nothing in this Order shall prevent UBS from

asserting claims against or participating in such claims or proceeds under any other basis. Without

limiting the foregoing, this provision shall not be retroactive, such that nothing in the Order shall

alter or change the status of, or any limitation or agreement on, any lien or claim against such

avoidance actions of proceeds thereof with regard to use of collateral or Cash Collateral prior to

the date hereof.

9.    Absent further order of the Court or written consent of UBS and Santa Barbara for

payments specifically designated as a royalty payment or surface lease payment to an insider or

affiliate, the Debtor shall not make the following payments:  (i) any royalty payments or surface

lease payments to insiders or affiliates of the Debtor or (ii) any payment of legal fees for the Debtor

or any committee, but the Debtor shall hold such payments in an interest-bearing escrow or

segregated account.  All such issues are expressly reserved for future determination.  The Cash

Collateral Budget attached hereto includes certain items for accounting purposes only; this Order

does not permit payment of these items under this Order. Notwithstanding anything to the contrary,

Cash Collateral shall only be used to pay those items in the Cash Collateral Budget that have been

specifically approved by UBS and to escrow payments as set forth above.  For the avoidance of

doubt, the Debtor has no authority to make any (i) insider or affiliate royalty payments; (ii) insider

- 6 -

0030

or affiliate surface lease payments; (iii) professional fee payments; or (iv) other payments which are listed below the line in the Cash Collateral Budget for accounting purposes but not authorized by this Order, regardless of whether any such payments listed in (i)-(iv) are included in the Cash Collateral Budget.

10. Authorization of use of Cash Collateral pursuant to this Order shall automatically terminate unless a Trustee is ordered appointed by the Court on or before October 18, 2019. For the avoidance of doubt, nothing in this Order nor consent to it shall be deemed consent to or appointment of a Trustee. All parties reserve their rights with regard to such issue.

11. By written agreement, UBS may agree to waive such termination in full or permit only limited use of Cash Collateral in any manner following such event. UBS may, but is not required to, by written agreement, amend the Cash Collateral Budget to extend the date through which Cash Collateral may be used and to increase the amount of Cash Collateral that may be used thereunder; *provided, however*, that any amendment to the Cash Collateral Budget made pursuant to the authority set forth in this Order shall be subject to the following conditions and limitations:

> (a) any such amendment shall not alter the nature and types of payments that were authorized under this Order;
>
> (b) any such amendment shall require the consent of the Committee;
>
> (c) any such amendment shall require the consent of Santa Barbara; and
>
> (d) if a Trustee is ordered and appointed, any such amendment shall require the consent of the Trustee, upon actual appointment of the Trustee. Upon such event, the consent of the Debtor to an amendment shall not be required.

The foregoing conditions and limitations are intended to apply only to consensual changes to the Cash Collateral Budget that are made pursuant to the authority of this Order.

AGREED ORDER FOR CONSENSUAL USE OF CASH COLLATERAL

0031

12.    Upon entry of a written amendment in compliance with the foregoing, the new agreed budget shall constitute the Cash Collateral Budget for all purposes under this Order.

13.    Promptly following entry of any such amended Cash Collateral Budget, the Debtor or Trustee, as applicable, shall promptly file notice with this Court, and provide notice of such entry to all parties entitled to notice.

14.    Upon appointment of any Trustee, the Trustee is specifically authorized to use Cash Collateral pursuant to the terms hereof. The right of the Trustee to seek additional or different use of Cash Collateral is specifically preserved, provided that upon filing of any such request, UBS may by written notice terminate authorization to use Cash Collateral pursuant to this Order, or may agree to permit only use of Cash Collateral in any limited manner following such event.

15.    All rights of the Debtor, the Trustee, and the estate to surcharge the collateral of UBS are hereby waived with regard to any period during which Cash Collateral is used pursuant to this Order.

16.    Successors and Assigns.    The provisions of this Order shall be binding upon UBS, Debtor, and their respective successors and assigns (including the Trustee or any other trustee hereinafter appointed or elected for Debtor's estate) and inure to the benefit of UBS and Debtor and (except with respect to any trustee hereinafter appointed or elected for the estate of Debtor) its respective successors and assigns.

17.    Nothing in this Cash Collateral Order or the Cash Collateral Budget shall permit the Debtor to violate 28 U.S.C. § 959(b), and nothing in this Cash Collateral Order or the Cash Collateral Budget shall in any way diminish the obligation of any entity, including the Debtor, to comply with environmental laws.

18.    Nothing in this Order shall determine or effect the relative priority of any prepetition lien or post-petition lien, and all rights are expressly reserved in that regard. All rights are expressly

- 8 -

AGREED ORDER FOR CONSENSUAL USE OF CASH COLLATERAL

0032

Case 9:19-bk-11573-MB    Doc 373    Filed 10/08/19    Entered 10/08/19 16:03:54    Desc
Main Document    Page 9 of 11

reserved with respect to whether any asset is cash collateral for any entity other than UBS and GLR,
LLC and thus any entitlement of such other entities to adequate protection, including without
limitation any superpriority claim.

###

*[signature]*

October 8, 2019

- 9 -

AGREED ORDER FOR CONSENSUAL USE OF CASH COLLATERAL

0033

| HVI CAT CANYON INC. weeks 9-13 budget | Forecast Week 9 23-Sep-19 | Forecast Week 10 30-Sep-19 | Forecast Week 11 7-Oct-19 | Forecast Week 12 14-Oct-19 | Forecast Week 13 21-Oct-19 | TOTAL |
|---|---|---|---|---|---|---|
| 1 Beginning Cash Balance | 346,221 | 208,341 | 390,529 | 55,716 | 168,507 | 346,221 |
| 2 | | | | | | |
| 3 Cash Inflows (*) | | | | | | |
| 4 SMV | 200,000 | 254,003 | 360,000 | 360,000 | 859,100 | 2,033,103 |
| 5 Redu | | | | | 61,283 | 61,283 |
| 6 Belridge | | | | | 77,167 | 77,167 |
| 7 Total Cash Inflows | 200,000 | 254,003 | 360,000 | 360,000 | 997,550 | 2,171,553 |
| 8 | | | | | | |
| 9 Royalties | (167,453) | | | | | (167,453) |
| 10 Escrow Royalties(**) | | | (31,602) | | | (31,602) |
| 11 Total Cash Inflows | 32,547 | 254,003 | 328,398 | 360,000 | 997,550 | 1,972,498 |
| 12 | | | | | | |
| 13 Cash Outflows | | | | | | |
| 14 Operating Expenses | | | | | | |
| 15 | | | | | | |
| 16 Payroll Checks | 73,149 | 483 | 76,000 | | 76,000 | 225,632 |
| 17 Payroll Taxes | | 26,241 | | 27,431 | | 53,672 |
| 18 Garnishment & Child Supports | | 1,320 | | 1,320 | | 2,639 |
| 19 Surface Rents | 41,642 | | 22,000 | | | 63,642 |
| 20 Consultants | 9,133 | | 9,008 | | 9,008 | 27,148 |
| 21 Phones | - | 209 | 2,000 | 1,500 | 2,000 | 5,709 |
| 22 Power PG&E | - | | 248,000 | | - | 248,000 |
| 23 Power SoCalEdison | - | | 25,000 | - | - | 25,000 |
| 24 Waste Mangement | - | 1,487 | | | | 1,487 |
| 25 Water | - | | 624 | 1,276 | - | 1,901 |
| 26 SouthernCalGas | - | 25 | - | 65 | - | 89 |
| 27 Portable Restrooms | - | 1,694 | 1,196 | 485 | 169 | 3,544 |
| 28 Alarms | - | | | 663 | - | 663 |
| 29 Cafeteria | - | - | | 275 | - | 275 |
| 30 Copies | - | | | 231 | - | 231 |
| 31 Chemicals | - | 5,655 | 10,000 | 10,000 | 10,000 | 35,655 |
| 32 Pumps | 4,424 | 8,237 | 25,000 | 25,000 | 25,000 | 87,661 |
| 33 Gasoline | - | | 23,000 | 23,000 | 11,500 | 57,500 |
| 34 Transportation | | | | | 267,521 | 267,521 |
| 35 Vacuum Trucks | | | | | | - |
| 36 LCR | | | | | 430,000 | 430,000 |
| 37 Electricians | 2,770 | 3,295 | 10,000 | 10,000 | 10,000 | 36,065 |
| 38 Welders | 1,300 | | 5,000 | 5,000 | 5,000 | 16,300 |
| 39 Supplies (Belts-Parts) | (663) | 2,997 | 2,000 | 2,000 | 2,000 | 8,334 |
| 40 Parts (Compressor, Pipe, others) | | 9,129 | 8,000 | 8,000 | 8,000 | 33,129 |
| 41 Clean Chemical towers | | | | 1,480 | - | 1,480 |
| 42 Vehicle maintenance | - | 1,466 | 8,000 | 8,000 | 8,000 | 25,466 |
| 43 Drink Water | - | | 150 | - | 150 | 300 |
| 44 Weed abatement | - | 5,116 | 10,000 | 5,268 | 5,000 | 25,385 |
| 45 Well Analysis | - | | 3,000 | 3,000 | 3,000 | 9,000 |
| 46 Compliance | 8,612 | | 40,000 | | | 48,612 |
| 47 Fire Department | | | 5,000 | | 5,000 | 10,000 |
| 48 APCD | | | 2,000 | 2,000 | 2,000 | 6,000 |
| 49 SBP - APCD (****) | | | 40,000 | 111,115 | | 151,115 |
| 50 SBP - P&D (****) | | | 40,000 | | 119,843 | 159,843 |
| 51 SBP - FD (****) | | | 16,440 | | | 16,440 |
| 52 SBP - EHS (****) | | | 10,475 | | | 10,475 |
| 53 SBP - Tax (****) | | | 1,300 | | | 1,300 |
| 54 Escrow - Surface Rents(**) | | | 7,500 | | | 7,500 |
| 55 Total Operating Expenses | 140,367 | 67,354 | 650,693 | 247,109 | 999,191 | 2,104,714 |
| 56 | | | | | | |
| 57 G&A Expenses | | | | | | |
| 58 | | | | | | |

0034

| | | | | | | | |
|---|---|---|---:|---:|---:|---:|---:|
| 59 | Bank Charges & fees | | | | 100 | 100 | 100 | 300 |
| 60 | Insurance | | | | 12,418 | | 12,418 | 24,836 |
| 61 | Backoffice & Administrative (***) | 30,061 | 4,460 | | | 109,000 | 143,521 |
| 62 | Total G&A | 30,061 | 4,460 | 12,518 | 100 | 121,518 | 168,657 |
| 63 | | | | | | | |
| 64 | Growth Production Capex | | | | | | |
| 65 | SMV | | | | | | - |
| 66 | BELRIDGE | | | | | | - |
| 67 | REDU | | | | | | - |
| 68 | | | | | | | |
| 69 | Total Growth Production | - | - | - | - | - | - |
| 70 | | | | | | | |
| 71 | Total Cash Outflows | 170,427 | 71,814 | 663,211 | 247,209 | 1,120,709 | 2,273,371 |
| 72 | | | | | | | |
| 73 | Net Cash Flow | (137,880) | 182,189 | (334,813) | 112,791 | (123,159) | (300,873) |
| 74 | | | | | | | |
| 75 | Ending Cash Balance | 208,341 | 390,529 | 55,716 | 168,507 | 45,348 | 45,348 |
| 76 | | | | | | | |

(*)Forecast dependent on actual delivered barrels and price
(**) Escrow of funds as directed under Interim Cash Collateral Order
(***) Only payments for reimbursement of HVI employee expenses appoved under the Cash Collateral Order
(****) Payments to SBA authorities accelerated from original budget proposal

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF MOTION AND TRUSTEE'S EMERGENCY MOTION FOR (1) AUTHORITY TO ACCEPT A PARTIAL PREPAYMENTOF THE AMOUNT OWED BY CALIFORNIA ASPHALT PRODUCTION, INC., TO THE ESTATE, OR IN THE ALTERNATIVE FOR AUTHORITY TO OBTAIN "CREDIT" IN THE FORM OF SUCH PREPAYMENT, AND (2) WAIVER OF ANY STAY IMPOSED BY FRBP 6004(h); AND MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF TIME SKILLMAN, AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  October 24, 2019 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  October 24, 2019 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  October 24, 2019 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Messenger:  ProLegal – 10/24/19**
The Honorable Martin R. Barash
U.S. Bankruptcy Court, Courtroom 303
Bin on 1st Floor outside entry to Intake Section
21041 Burbank Blvd.
Woodland Hills, CA 91367

**Via FedEx Priority Overnight**
Debtor
HVI Cat Canyon, Inc.,
2617 Clark Avenue
Santa Maria, CA  95454

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 24, 2019 | Patricia Morris | /s/ Patricia Morris |
|---|---|---|
| Date | Printed Name | Signature |

1564260.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

1. <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>

- Alan H Katz on behalf of Interested Party CTS Properties, Ltd. akatz@lockelord.com
- Alicia Clough on behalf of Creditor California State Lands Commission aclough@loeb.com, mnielson@loeb.com, ladocket@loeb.com
- Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee brian.fittipaldi@usdoj.gov
- Brian L Holman on behalf of Creditor Bradley Land Company b.holman@musickpeeler.com
- Brian M Metcalf on behalf of Interested Party UBS AG, London Branch bmetcalf@omm.com
- Christopher D Sullivan on behalf of Creditor Diamond McCarthy LLP csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com
- Daniel A Solitro on behalf of Interested Party CTS Properties, Ltd. dsolitro@lockelord.com, ataylor2@lockelord.com
- Darren L Patrick on behalf of Interested Party UBS AG, London Branch dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com
- David L Osias on behalf of Creditor Allen Matkins Leck Gamble Mallory & Natsis LLP dosias@allenmatkins.com, bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com, csandoval@allenmatkins.com
- Don Fisher on behalf of Interested Party Interested Party dfisher@ptwww.com, tblack@ptwww.com
- Emily Young on behalf of Creditor Epiq Corporate Restructuring, LLC Claims Agent pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- Fred Whitaker on behalf of Interested Party Eller Family Trust lshertzer@cwlawyers.com
- Gisele M Goetz on behalf of Interested Party Courtesy NEF gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu
- H Alexander Fisch on behalf of Interested Party California Regional Water Quality Control Board, Central Coast Alex.Fisch@doj.ca.gov
- H Alexander Fisch on behalf of Interested Party California Department of Fish & Wildlife Alex.Fisch@doj.ca.gov
- Ira S Greene on behalf of Interested Party CTS Properties, Ltd. Ira.Greene@lockelord.com
- Jeannie Kim on behalf of Interested Party Pacific Gas and Electric Company jkim@friedmanspring.com
- Jeffrey N Pomerantz on behalf of Creditor Committee Official Committee of Unsecured Creditors jpomerantz@pszjlaw.com
- Jennifer Taylor on behalf of Interested Party UBS AG, London Branch jtaylor@omm.com
- John C Keith on behalf of Creditor California State Lands Commission john.keith@doj.ca.gov
- Karen L Grant on behalf of Creditor BUGANKO, LLC kgrant@silcom.com
- Karl J Fingerhood on behalf of Interested Party United States of America on behalf of USEPA and US Coast Guard karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- Marc S Cohen on behalf of Creditor California State Lands Commission mscohen@loeb.com, klyles@loeb.com
- Matthew C. Heyn on behalf of Creditor Department of Conservation, Division of Oil, Gas and Geothermal Reources Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- Michael L Moskowitz on behalf of Debtor HVI Cat Canyon, Inc. mlm@weltmosk.com, jg@weltmosk.com;aw@weltmosk.com
- Mitchell E Rishe on behalf of Creditor California Department of Conservation, Division of Oil, Gas & Geothermal Resources mitchell.rishe@doj.ca.gov

1564260.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                F 9013-3.1.PROOF.SERVICE

- Mitchell E Rishe on behalf of Creditor Department of Conservation, Division of Oil, Gas and Geothermal Reources mitchell.rishe@doj.ca.gov
- Patricia B Tomasco on behalf of Creditor GIT, Inc. pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com
- Razmig Izakelian on behalf of Creditor GIT, Inc. razmigizakelian@quinnemanuel.com
- Ross Spence on behalf of Interested Party Santa Barbara Air Pollution Control District ross@snowspencelaw.com, janissherrill@snowspencelaw.com; donnasutton@snowspencelaw.com; brittanyDecoteau@snowspencelaw.com
- Ross Spence on behalf of Interested Party County of Santa Barbara, California ross@snowspencelaw.com, janissherrill@snowspencelaw.com; donnasutton@snowspencelaw.com; brittanyDecoteau@snowspencelaw.com
- Ross Spence on behalf of Interested Party Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California ross@snowspencelaw.com, janissherrill@snowspencelaw.com; donnasutton@snowspencelaw.com; brittanyDecoteau@snowspencelaw.com
- Salina R Thomas on behalf of Interested Party Courtesy NEF bankruptcy@co.kern.ca.us
- Salina R Thomas on behalf of Interested Party Kern County Treasurer Tax Collector bankruptcy@co.kern.ca.us
- Todd C. Ringstad on behalf of Interested Party Interested Party becky@ringstadlaw.com, arlene@ringstadlaw.com
- William C Beall on behalf of Creditor GLR, LLC will@beallandburkhardt.com, carissa@beallandburkhardt.com

1564260.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE