SNOW SPENCE GREEN LLP
Ross Spence (TX SBN 18918400)
ross@snowspencegreen.com
Carolyn Carollo (TX SBN 24083437)
carolyncarollo@snowspencegreen.com
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
Telephone: (713) 335-4800
Facsimile:  (713) 335-4848

*Attorneys for the County of Santa Barbara, California; Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California; and Santa Barbara County Air Pollution Control District*

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA BARBARA DIVISION

| | |
|---|---|
| In re:<br><br>HVI Cat Canyon, Inc.,<br><br>Debtor. | Case No.: 9:19-bk-11573-MB<br><br>Chapter 11<br><br>**SANTA BARBARA COUNTY AIR POLLUTION CONTROL DISTRICT, COUNTY OF SANTA BARBARA, AND HARRY E. HAGEN, TREASURER-TAX COLLECTORS' RESPONSE TO TRUSTEE'S MOTION AND EMERGENCY MOTION FOR AN ORDER: (1) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING SUPERPRIPARITY FINANCING; (2) AUTHORIZING CONTINUED USE OF CASH COLLATERAL; (3) SCHEDULING A FINAL HEARING; AND (4) GRANTING RELATED RELIEF**<br>Date: November 8, 2019<br>Time: 9:00 a.m.<br>Place: Courtroom 201<br>       1415 State Street<br>       Santa Barbara, California<br><br>Judge: Hon. Martin R. Barash |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

The Santa Barbara County Air Pollution Control District, the County of Santa Barbara, and Harry E. Hagen, Treasurer-Tax Collector of the County of Santa Barbara[1] ("Hagen-Tax Collector") (collectively "S.B. Parties"), respond to the Trustee's Motion And Emergency Motion for an Order: (1) Authorizing the Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing Continued Use of Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief together with Memorandum ("Motion")

## Background

1. On Tuesday, November 5, counsel for the S.B. Parties received a DIP term sheet and a budget from counsel for the Trustee. Questions were posed but not answered satisfactorily. On November 7 around noon, counsel for the S.B. Parties received the Motion. There is insufficient time to study all the allegations of the Motion and especially the loan documents, which are to govern over the Motion. However, the S.B. Parties make the following initial responses.

## Post-Petition Regulatory Costs

2. The Debtor's headquarters and base of operations is in Santa Barbara County. The S.B. Parties provide numerous services and regulatory oversight for this

---

[1] Hagen, Treasurer-Tax Collector does not submit to the jurisdiction of this Court for determination of the Debtor's tax liabilities.

Debtor. *See* Declarations of Kaitlyn McNally [Dkt. 303]; John Zorovich [Dkt. 304]; Diane Sauer [Dkt. 305]; Julie Lawrence [Dkt. 307]; James Ray [Dkt. 308]; Kristina Aguilar [Dkt. 313], all incorporated herein. Indeed, this Debtor has needed more regulatory oversight and utilization of regulatory personnel than any other oil and gas operator in the County's recent history, including record numbers of Notices of Violation. Declaration of John Zorovich [Dkt. 304] at paragraph 3; *see* also Declaration of McNally [Dkt. 303].

3. The Court is aware of the two prior spills this Debtor has had during the pendency of this case. There has just been another. *See* Photograph and article attached as **Exhibit A**.

4. Payment of the S.B. Parties' regulatory costs has been included in every budget tendered in this case and in every cash collateral order. *See* Docket Nos. 43, 182, and 375. However, the S.B. Parties' regulatory costs have never been paid, as shown in the S.B. Parties' Declarations filed at Docket Nos. 303, 304, 305, 307, 308, 309, 310, and 313, as well as the new Declarations of John Zorovich and Kristina Aguilar, attached hereto as **Exhibits B** and **C**.

5. The Trustee includes the S.B. Parties in his proposed short budget, but when asked to agree that if the proposed DIP loan is approved then the form of order would provide that the budgeted amounts will be paid, the Trustee's counsel refused. Further, significant additional amounts will be due to the S.B. Parties in Week 19 and Week 20, which weeks are not in the Trustee's budget. **Exhibit B** ($177,000 additional owed to the County) and **Exhibit D** ($348,278.32 additional owed to Hagen-Tax

Collector not including the post-petition penalties and interest of $247,942.80).

6. Trustees "do not have carte blanche to ignore state and local laws protecting the environment against pollution." *Cumberland Farms v. Florida Dep't of Environmental Protection*, 116 F.3d 16, 19-20 (1st Cir. 1997). In *Cumberland Farms*, the court upheld post-petition penalties imposed on a debtor-in-possession for failing to file when due with the Florida Department of Environmental Protection the requisite financial responsibility information for an owner of an underground storage tank, and giving the penalty administrative priority status. *Id.* at 19-21. Health, safety, and environmental regulatory costs are "actual and necessary, both to preserve the estate in required compliance with state law and to protect the health and safety of a potentially endangered public." *In re Appalachian Fuels, LLC*, 521 B.R. 779, 794 (E.D. Ky. 2014), citing *Lancaster v. State of Tennessee (In re Wall Tube & Metal Products Co.)*, 831 F. 2d 118, 123-24 (6th Cir. 1987). These regulatory costs, as well as the penalties assessed for failure to pay the costs, are given administrative claim treatment under § 503. *Id.* at 775-779.

## The Proposed Budget

7. The budget proposed by the Trustee is for only 3 weeks, because two of the weeks have already passed. The Court will have to analyze what the estate is giving up in order to finance only 3 more weeks of this case. The Trustee's counsel has orally stated that the Trustee is planning to pay Hagen-Tax Collector the 2019 taxes due by December 10, but that is not in the budget nor is it even escrowed for future payment. The S.B. Parties asked the Trustee to extend the budget two more weeks to include this

payment, but he refused. The Motion states that "projection beyond that time [anything beyond the proposed budget] was deemed speculative." Motion at p. 9.

8.  At the end of the three weeks, the loan balance is budgeted to be $1,985,091 (i.e. $1,014,909 still left to be drawn from the proposed $3 million DIP loan proceeds). *See* Trustee's budget line 46. It does not make sense for the Trustee not to extend the budget to disclose how he intends to spend those loan funds in the following weeks. When asked, the Trustee's counsel stated that they do have a 13-week budget that will follow, but they are not releasing it yet. It is not clear whether the Trustee is even seeking Court authority or has UBS permission to spend the balance of the loan funds, so why is a DIP loan of $3,000,000 being requested for the three-week period?

9.  The Trustee's primary stated emphasis is on paying the payroll and payroll taxes of the Debtor, and that is the stated basis of the emergency.  In that regard, despite the fact that the Trustee is replacing the Debtor's management, no economies are being realized. The payroll for the pre-Trustee budget is the same as the Trustee's proposed budget. Compare Docket No. 375 and the Trustee's budget, both of which have payroll at $76,000 every two weeks. This is in addition to the $714,410 accruing in the new budget for professional fees.

## Tax Lien

10.  As shown in the Declaration of Bryan Fiebert In Support Of Dkt. Nos. 153 & 206 [filed at Dkt. 309 in this case] and the second Declaration of Bryan Fiebert attached as **Exhibit D**, as of September 26, 2019 the Debtor's estate owes Hagen-Tax

Collector $4,810,387.36 in taxes, penalties and interest for prior years, and all but $19,717.54 of those taxes are secured by the Debtor's interest in real property in Santa Barbara County. In addition, the Debtor owes an $696,556.64 for current year taxes, half of which will start accruing penalties and interest if not paid by December 10, 2019. Fiebert Declarations. As shown in the declarations and as provided by statute, all of these taxes are secured by a lien on the assets of the Debtor's estate constituting real property or interests in real property.

11. The lien securing these tax obligations is superior to every other lien, regardless of the time of such other lien's creation, including the lien claim of UBS. The California Revenue & Tax Code provides

> Every tax declared in this chapter to be a lien on real property, and every public improvement assessment declared by law to be a lien on real property, have priority over all other liens on the property, regardless of the time of their creation. Any tax or assessment described in the preceding sentence shall be given priority over matters including, but not limited to, any recognizance, deed, judgment, debt, obligation, or responsibility with respect to which the subject real property may become charged or liable.

Cal. Rev. & Tax. Code § 2192.1.

12. No taxes have been paid from the Debtor's estate to Hagen-Tax Collector since this case was filed. *See* both Fiebert Declarations. Indeed, no taxes have been paid by this Debtor for years. *See id.* As a result, the penalties and interest that will have accrued post-petition on the secured debt owed to Hagen-Tax Collector by early December will be $247,942.80. Fiebert Declaration at Ex. D.

13. The property on which the Hagen-Tax Collector lien is attached is declining in value. *See Abella v. Knight Oil Tools*, 945 S.W.2d 847, 850 (Tex. App. – Houston [1st

Dist.] 1997, orig. proceeding)("Hydrocarbons are unique because they are not reproducible and the amount is finite. The Oil and Gas Leases to which Plaintiffs' liens have attached are likewise unique because as production occurs, the value of the leases diminishes and finally becomes worthless. The value of Plaintiffs' lien diminish daily as the well is produced."). The cases the Trustee cites for an equity cushion being adequate protection are all cases where the value of the collateral was increasing or remaining steady. Motion at 22-23.

## Section 364(c)

14. Where an estate, such as this Debtor's, is already subject to a lien, like Hagen-Tax Collector's lien, section 364(c) of the Bankruptcy Code provides that the Court after notice and a hearing, may authorize the obtaining of credit secured by a <u>junior</u> lien on property of the estate. 11 U.S.C. § 364(c)(3); *see also In* re *DLH Master Land Holding, LLC*, 2010 Bankr LEXIS 5683 *8 (Bankr. N.D. Tex. 2010)(lender's adequate protection replacement lien was subject to and junior to the liens of the Taxing Authorities). The real property upon which UBS seeks to be granted a lien for its proposed DIP loan, is property that is already secured by Hagen-Tax Collector's superior tax lien, thus, UBS is only entitled to be granted a lien that is junior to Hagen's tax lien on the property.

15. The ongoing taxes owed to Hagen-Tax Collector must be paid. *See* 11 U.S.C. § 362(b)(18); *In re D. Papagni Fruit Co.*, 132 B.R. 42 (Bankr. E.D. Ca. 1991). Such taxes routinely are paid in other bankruptcy cases and other secured creditors usually "complain loudly (and often pay the taxes themselves) when a default in tax payments

occurs." *In re D. Papagni Fruit Co.*, 132 B.R. at 46.

16. The budget should provide for payment of these taxes. *See In re Dennis*, 2010 WL 5209261, 2010 Bankr. LEXIS 4762 *17, *28 (Bankr. N.D. Tex. 2010)(payment of Real Estate Taxes included in the cash collateral budget and "The Debtors shall provide the Banks with the status of all negotiations, if any, regarding taxing authorities on a monthly basis."); *In re Energytec, Inc.*, 2009 Bankr LEXIS 4856 *2 (Bankr. E.D. Tex. 2009)(debtor authorized to pay taxing authorities pursuant to cash collateral order); *In re Samshi Homes, LLC*, 2011 WL 2837640, 2011 Bankr LEXIS 2745 *4-6 (Bankr. S.D. Tex. 2011)(third motion to use cash collateral denied where debtor failed to pay real property taxes under prior orders); *In re MBS-Lodge at Sonterra, Ltd.*, 2010 Bankr. LEXIS 5604 *22 (Bankr. E.D. La. 2010)(debtor authorized to pay taxes under cash collateral budget); *In re Swami Shree, LLC*, 2012 Bankr LEXIS 3643 *8, *11 (Bankr. D. Md. 2012)(property tax payments included in cash collateral budget). As stated by one court

> Ad valorem taxes are a proper expense of administration. Indeed, the debtors were obliged to pay the real estate taxes as they became due and owing. Section 959(b) of Title 28 mandates that a debtor-in-possession "manage and operate the property in his possess … according to the requirements of the valid laws of the State in which such property is situated." Having assumed the role of trustee, the debtors held the status of agents conducting business under authority of a United States Court. Under the provisions of 28 U.S.C. § 960, the Gifaldis were, therefore,

Case 9:19-bk-11573-MB    Doc 477    Filed 11/07/19    Entered 11/07/19 15:14:25    Desc
Main Document    Page 9 of 17

subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

*In re Gifaldi*, 207 B.R. 54, 56 (Bankr. W.D. N.Y. 1997). In a case involving another oil and gas operator obtaining a DIP loan, the court's order approving the loan required the debtor to pay the ad valorem taxes and made the lender's DIP lien junior to permitted liens including ad valorem tax liens. *In re Adams Resources Expl. Corp.*, 2017 Bankr LEXIS 4540 *15-16, *78, *100, *123-24 (Bankr. D. Del. 2017). That court also excluded avoidance actions from the post-petition collateral on which the lender was provided a DIP lien. *Id.* at *15-16. The same was true in *In re GR Hospitality Mgmt., LLC*, 2010 WL 5209361, *4-5 (Bankr. N.D. Tex. 2010). In its DIP loan order, the court required the debtor to pay or escrow taxes when due, granted the DIP lender bank a post-petition lien only **co-extensive with** and of same priority as bank's prepetition liens, and excluded avoidance actions from the post-petition lien. *Id.*

17. Since Hagen-Tax Collector has a lien on the Debtor's oil & gas properties, a lien that is senior to all other liens, UBS should only be entitled to be granted a lien that is junior to the tax lien on the oil & gas properties. 11 U.S.C. § 364(c)(3). Perhaps the reason the Trustee cannot extend the budget a mere two weeks to show that the taxes will be paid by December 10 is because UBS is requiring loan proceeds be spent to obtain an updated Netherland Sewell reserve report by November 18. At that point, UBS evidently wants to reserve the right to pull the plug on this case depending on what the

**SNOW SPENCE GREEN LLP**    I:\Client\SBCO0006 HVI Cat Canyon\BK\Response to DIP Motion.docx    9
S.B. PARTIES' RESPONSE TO DIP MOTION

current reserve values are.

18. The question presented is whether a 3-week extension of this case at the expense of granting priming liens on all assets, including avoidance actions, and granting UBS superpriority administrative expense claim status actually benefits the estate. "[B]ankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender. Thus, courts look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest." *Resolution Trust Co. v. Official Unsecured Creditors Committee (In re Defender Drug Stores, Inc.)*, 145 B.R. 312, 317 (9th Cir. BAP 1992). Courts recognize that in connection with post-petition financing, lenders may try to exact favorable terms that may have the effect of causing harm to the estate and creditors. *See Defender Drug Stores, Inc.*, 145 B.R. at 317. Debtors in possession and trustees lack significant negotiation leverage and post-petition financers "may be tempted to overreach", and thus, the Court should determine whether the proposed terms prejudice the estate and its creditors. *In re Tamarack Resort, LLC*, 2010 Bankr. LEXIS 3680, at *41 (Bankr. D. Idaho Oct. 19, 2010), citing *Defender Drug Stores*, 145 B.R. at 317. In this Debtor's case, the can is merely being kicked down the road for three weeks at a great cost to the estate. *See In re Crouse Grp., Inc.*, 71 B.R. 544, 550-51 (Bankr. E.D. Pa. 1987)(DIP financing motion denied where the

proposed short-term financing did nothing for the estate "except to keep alive a faint hope that Fidelity will continue to fund [debtors'] efforts on the projects through completion"). In *Crouse*, as apparently in this case also, the debtor's parent company was unwilling to fund the debtor's projects any further because the parent believed that making advances to its subsidiary debtors was not "the best utilization" of the parent's funds. *Id.* at 546-47.

## Section 364(d)

19. Section 364(d) of the Bankruptcy Code provides that the Court may authorize the obtaining of credit or the incurring of debt secured by a senior <u>or equal lien</u> on property of the estate that is subject to a lien only if— (A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. 11 U.S.C. § 364(d)(1). The Trustee bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 364(d)(2).

20. To obtain superpriority pursuant to 11 U.S.C. § 364(c)(1) as well as a senior lien pursuant to 11 USCS § 364(d)(1), the Trustee must be unable to obtain credit by some other, less drastic means; in addition, before a senior lien can be granted, the Trustee must demonstrate that there is adequate protection for the secured party whose lien is being primed. *In re Au Natural Restaurant, Inc.*, 63 B.R. 575 (Bankr. S.D.N.Y. 1986). Section 364(d)(1)(A) provides that superpriority status will be given only to those resources that the Trustee would not be able to obtain without this special priority. *In re*

*LTV Steel Co.*, 299 B.R. 863, 869-70 (Bankr. N.D. Ohio 2003). This special priority is granted under limited circumstances and does not cover all claims. *Id.*

21. The Trustee proposes to enter into a DIP loan, granting UBS a super-priority lien that would prime Hagen-Tax Collector's first priority tax lien. As such, the Debtor must show that (1) it cannot obtain a loan that would be junior to Hagen-Tax Collector's tax lien, and (2) Hagen-Tax Collector is given adequate protection of his tax lien. The Trustee has not met his burden of proof, nor has he shown why an equal lien would not be sufficient.

(i) <u>364(d)(1)(A)</u>

22. If UBS believes that the value of the properties are what UBS asserts, and that UBS's DIP loan will enhance the value of the property of the estate by more than the amount of that DIP loan, then UBS should reasonably be willing to take a lien that is junior to the Hagen-Tax Collector's lien.

(ii) <u>364(d)(1)(B)</u>

23. Adequate protection under 11 U.S.C. § 364(d) requires that creditor be given something equivalent to that which it would receive if it were voluntarily making a mixed, partially secured/partially unsecured loan in junior position. *In re Chevy Devco*, 78 B.R. 585, 588 (Bankr. C.D. Cal. 1987). The allowance of a superpriority claim must be predicated upon an affirmative grant of adequate protection to the prepetition creditor, here Hagen-Tax Collector. *Zions Credit Corp. v. Rebel Rents, Inc. (In re Rebel Rents, Inc.)*, 291 B.R. 520, 534 (Bankr. C.D. Cal. 2003). But here, Hagen-Tax Collector is being offered

nothing. No indubitable equivalent proposal is made; in fact, no adequate protection under § 361 is offered. The proposal is to give UBS every conceivable protection, including protections that courts often deny. The Trustee is not offering that Hagen-Tax Collector share pari passu with UBS in the new priming lien, nor that Hagen-Tax Collector receive a lien on other assets like UBS. The Trustee is offering nothing.

24. An equity cushion can provide adequate protection against a motion for relief from stay, but the issue of adequate protection under Section 364(d)(2) is different from that in an action for relief from stay. *In re Chevy Devco*, 78 B.R. at 588.

> In a motion for relief from stay, the adequate protection is meant to preserve the status quo of the creditor during a reasonable length of time. The rights of the creditor are frozen, but not changed. It is different in Section 364.

*In re Chevy Devco*, 78 B.R. at 588. Moreover, even the status quo is not adequate protection because the debtor's property consists of finite amounts of oil that are being produced and sold, never to be returned and not used to satisfy any of the debts owed to the County. *See Abella, supra.*

25. The pre-petition creditor, here Hagen-Tax Collector, should be given adequate protection, that as nearly as possible under the circumstances of the case would provide the creditor with the value of his bargained for rights. *Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 564 (3d Cir. 1994) citing *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) (quoting *In re American Mariner Industries, Inc.*,

734 F.2d 426, 435 (9th Cir. 1984)). Whether protection is adequate "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the superpriority given to the post-petition loan. *Swedeland Dev. Group*, 16 F.3d 552, 564 (3d Cir. 1994). Among the ways a debtor may demonstrate the existence of adequate protection is by supplying the pre-petition lender with a new third-party guaranty or with substitute collateral. *Id.*

26. The Trustee makes no showing that the proposed DIP loan and 3-week extension will enhance the value of the property securing Hagen-Tax Collector's lien. The Trustee asserts that it will help maintain value of property, but does not address the facts that the value of the estate is steadily diminishing, nor the fact that the estate loses money every week.

27. Even where an assertion is made that DIP loan funds will be used to enhance or develop the debtor's property, that is not by itself sufficient to support a finding of adequate protection. *Id.* at 566 citing *See Town of Westport v. Inn at Longshore*, 32 Bankr. 942, 946 (Bankr. D. Conn. 1983). "Those cases which have considered improvements to be adequate protection have done so only when the improvements were made in conjunction with the debtor's providing additional collateral to the prepetition creditor beyond the contemplated improvements." *Id. See, e.g., In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987) (grant of additional, unencumbered collateral to prepetition creditor). Development of property with DIP funds does not equate to adequate protection especially where, as in the Debtor's case, the property has historically

operated at a loss or future projections are belied by historical performance. *See id.* ("Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects."); *Shaw Indus. v. First Nat'l Bank (In re Shaw Indus.)*, 300 B.R. 861, ___ (Bankr. W.D. Pa. 2003)(Bankruptcy court refused debtor's request to incur senior secured debt because other secured creditors would not have been adequately protected; although other creditors were over-secured, debtor's continued operating losses eroded this equity, there was no evidentiary basis to support debtor's projection of return to profitability, and the industry in which debtor operated was faltering, which made debtor's prospects inherently risky.); *In re Chevy Devco*, 78 B.R. at 589 (a mere potential for success is not sufficient adequate protection, especially where the debtor's owners are not willing to put in additional money).

28. In this case, there is no drilling proposed to be done to increase production, just further declines in reserves. There is no question that the proposed UBS superpriority lien will cause a dollar-for-dollar diminution in the amount of the debtor's property securing Hagen-Tax Collector's lien. *See In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D. N.Y. 1996). The proof that should have been offered, but is lacking, is that this proposed $3.0 million DIP loan will enhance the debtor's real property value by more than $3.0 million.

29. Not only is UBS granted a super-priority lien, but the automatic stay will automatically lift on 5 days' notice if there is any event of default, such as default in the

performance of or compliance with any term contained in any loan document. There will be events of default on day one under this proposed loan agreement. As a single example, the debtor's representation that all taxes, assessments, fees and other governmental charges have been paid will not be true. See loan at p. 24.  As another example, if the debtor has any non-renewal of approval by a governmental agency, that is an event of default, and that is already the case for this debtor. In addition, UBS's consent will be required for the filing of any plan, all future rights to surcharge the collateral are waived, and the estate will now be indemnifying UBS. For no gain, and merely buying a short additional time, the estate is giving up maximum rights.

### Burden of Proof

30. In order to secure approval of post-petition financing pursuant to 11 U.S.C. §§ 364(c) and/ or (d), the Trustee bears the burden of proving the following: first, that the proposed financing is an exercise of sound and reasonable business judgment; second, that no alternative financing is available on any other basis; third, that the financing is in the best interests of the estate and its creditors; and, as a corollary to the first three points, that no better offers, bids, or timely proposals are before the Court. *In re Phase-I Molecular Toxicology*, 285 B.R. 494, 495 (Bankr. D.N.M. 2002). The burden of proof has not been met for the proposed DIP loan transaction.

Dated: November 7, 2019            SNOW SPENCE GREEN LLP

                                   By:  */s/ Ross Spence*
                                        Ross Spence

*Attorneys for the County of Santa Barbara, California; Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California; and Santa Barbara Air Pollution Control District*