Jeffrey N. Pomerantz (CA Bar No. 143717)
Maxim B. Litvak (CA Bar No. 215852)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4114
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: jpomerantz@pszjlaw.com
        mlitvak@pszjlaw.com

Attorneys for the Official Committee of
Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No.: 19-bk-11573-MB |
| HVI CAT CANYON, INC. | Chapter 11 |
| Debtor. | ***SUPPLEMENTAL* OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO:** |
| | **EMERGENCY MOTION FOR AN ORDER: (1) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING SUPERPRIORITY FINANCING; (2) AUTHORIZING CONTINUED USE OF CASH COLLATERAL; (3) SCHEDULING A FINAL HEARING; AND (4) GRANTING RELATED RELIEF [Docket No. 474]** |
| | Date: November 21, 2019<br>Time: 2:30 p.m.<br>Place: 1415 State Street<br>Courtroom 201<br>Santa Barbara, CA 93101<br>Judge: Hon. Martin R. Barash |

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

bankruptcy case of HVI Cat Canyon, Inc. (the "Debtor") respectfully submits this supplemental

objection to the entry of a final order approving the above-captioned motion (the "Trustee Financing

Motion") of Michael A. McConnell, the chapter 11 trustee of the Debtor (the "Chapter 11 Trustee"),

seeking final approval of financing (the "Trustee Facility") provided by UBS AG, Stamford Branch,

an affiliate of UBS AG, London Branch, the Debtor's asserted prepetition secured creditor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

UBS AG, Stamford Branch and UBS AG, London Branch are together referenced herein as "UBS."

In support of this supplemental objection, the Committee represents as follows:

### Supplemental Objection

In approving the Trustee Financing Motion on an interim basis on November 12, 2019, the Court limited the Committee's professional fees to $50,000 for the five-week period ending at the end of this month. Up to $30,000 of this amount has been dedicated to an investigation of UBS's asserted liens on the Debtor's oil and gas assets, which work will be performed by special counsel. Such lien review is not an easy task in an oil and gas case. The Chapter 11 Trustee admitted that he did not do a lien review prior to agreeing to the terms of the Trustee Facility. The Committee's bankruptcy counsel has already exceeded the remaining $20,000 for the month of November by objecting to the Trustee Financing Motion.[1] As a result of the Committee's objection, the Court required material modifications to the Trustee Facility that benefit general unsecured creditors, such as eliminating UBS's intended liens and superpriority claims encumbering avoidance actions against non-insider third parties.[2] Although the Chapter 11 Trustee no doubt attempted to negotiate the best deal for the estate given the circumstances, the Committee was needed to challenge the overreaching aspects of the Trustee Facility.

Based upon the Court's ruling and the lack of any funds for Committee counsel going forward, the Committee essentially has been neutered and rendered unable to do its job as a watchdog for the interest of general unsecured creditors. While the Committee appreciates that its role has changed since the appointment of the Chapter 11 Trustee, the adversary process, and particularly the efforts of the Committee on behalf of unsecured creditors, must be preserved and

---

[1] The Committee reserves the right to seek a *pro rata* sharing with the Chapter 11 Trustee's professionals of any carve-outs in this case, as is common in Delaware cases. The Court should be prepared, at the conclusion of the case and to the extent necessary, to look at all allowed chapter 11 professional fees and reach a conclusion as to whether a reallocation of the carve-out would be appropriate. *See In re iPic-Gold Class Entertainment, LLC*, Case No. 19-11739 (LSS), at p. 12-13 (Bankr. D. Del. Sept. 17, 2019) ("I reserve the right, as Judge Shannon does, in his cases, to reallocate the professionals' budget, if appropriate -- meaning among estate professionals." ) (Silverstein, J.) (transcript attached as **Exhibit A**).

[2] As the Chapter 11 Trustee was forced to admit in testimony during the interim hearing, the amount budgeted for Committee counsel during the interim budget is 1/25 of the amount budgeted for the Chapter 11 Trustee's professionals. While the Committee does not expect the typical ratio of approximately 1/3 given the appointment of the Chapter 11 Trustee, the gross disparity in this case does not allow the Committee to function in the way envisioned by the Bankruptcy Code.

DOCS_SF:102286.3 38336/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

appropriately funded. *See In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (insisting on "a carve out from a superpriority status and postpetition lien in a reasonable amount designed to provide for payment of the fees of debtor's and the committees' counsel and possible trustee's counsel in order to preserve the adversary system. Absent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced."). Simply put, if UBS wants to continue to benefit from the rights and protections to which it will be entitled under a final order approving the Trustee Financing Motion, UBS must allow the Debtor to pay the freight of this chapter 11 case. *See In re Tenney Village Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (debtor-in-possession financing terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of [the secured creditor]"). Accordingly, the Committee renews its request that the carve out for Committee professional fees in November total $50,000, in addition to the $30,000 allocated to lien review.

Further, this Court expressed concern with the unpaid and unresolved accrued administrative chapter 11 expenses facing this estate. The Chapter 11 Trustee testified that these expenses may exceed $1 million. The Committee's professionals alone have approximately $500,000 in unpaid fees and expenses through the date of the Chapter 11 Trustee's appointment on October 21, 2019.[3] The Committee's fees were incurred supporting efforts to have the case initially transferred to Dallas, Texas, objecting to the Debtor's intent to continue certain intercompany transfers, and subsequently seeking the appointment of a chapter 11 trustee.[4]

The principal reason for the foregoing accruals of unpaid expenses is UBS's stubborn unwillingness to allow *any* carve outs in this case for the three-month period *prior* to the Chapter 11 Trustee's appointment. That is neither appropriate nor fair and results in this case being administratively insolvent, particularly given that the Court has already determined that the value of

---

[3] These amounts include fees and expenses incurred by the Committee's bankruptcy counsel (Pachulski Stang Ziehl & Jones LLP), its financial advisor (Conway MacKenzie), and its local counsel in Dallas, Texas (Cole Schotz).

[4] In fact, as the Court will recall, it was the Committee's request that the Court *sua sponte* appoint a chapter 11 trustee at the conclusion of the cash collateral trial that led to the Court dispensing with the need for parties to file a motion for an order shortening time and scheduling an emergency hearing on the various trustee motions that had yet to be filed. This expedited process undoubtedly reduced UBS's professional fees and other administrative expenses had the trustee motions been heard on regular notice.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the assets of the estate is less than the amount of the prepetition debt held by UBS.  While the Committee does not expect the Court to order UBS to fund immediately these unpaid expenses, the Court should insist on a process whereby these unpaid fees may be paid as a condition for allowing the case to continue in chapter 11.

The Committee appreciates the current financial condition of the estate and that UBS is shouldering the burden of financing operations until the Trustee can hopefully stabilize the business and market it for sale.  The Committee does not expect payment on account of its professionals' pre-trustee fees until either the estate becomes self-sustaining and can generate cash to start paying those expenses or there is a sale of the estate's assets.  But the Court should insist on *some* mechanism by which chapter 11 administrative *may* be paid in this case. The Committee therefore proposes the following sharing mechanism:  for every dollar that becomes distributable from this estate to UBS (or a successor thereto) on account of its prepetition claims (after repayment of the Trustee Facility), five percent (5%) of such amount should be set aside for the pro rata payment of unpaid budgeted chapter 11 administrative expenses that accrued prior to the Chapter 11 Trustee's appointment and allowed fees and expenses of the estate's professionals incurred during such period, including both Debtor and Committee professionals (in each case, to the extent allowed by this Court).  In this way, once distributions payable to UBS total $20 million, five percent (5%) of such amount or $1 million will be set aside for the benefit of chapter 11 administrative claimants.  In the event of a credit bid by UBS (or a successor thereto), such five percent (5%) sharing obligation would need to be funded in cash.

The Committee submits that a sharing formula of 95:5 in UBS's favor is more than reasonable under the circumstances, and reflects the costs that UBS should be required to bear in consideration of all of the benefits, concessions, waivers, and releases flowing to it under the Trustee Facility and the ability to have this case remain in chapter 11.  At the end of the day, this Court should not condone an administratively insolvent chapter 11 estate.  UBS, like every other asserted secured lender in every other case, must be required to set aside sufficient funds to preserve the sanctity of the adversary process.  If not, then this chapter 11 case is, as this Court noted at the last

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:102286.3 38336/002

1  hearing, a "farce" and should be converted to chapter 7 so that the continued accrual of unpaid

2  chapter 11 administrative expenses will cease.

3  <u>**Conclusion**</u>

4          For the foregoing reasons, the Committee urges the Court to decline entering a final order

5  approving the Trustee Facility unless and until (a) adequate funding is made available to allow the

6  Committee to effectively act as an estate fiduciary in the way that the Bankruptcy Code envisions

7  and (b) there is a path to satisfy the Committee's accrued professional fees in order to avoid

8  administrative insolvency.

9  Dated:    November 18, 2019                    PACHULSKI STANG ZIEHL & JONES  LLP

10

11                                              By      /s/ *Maxim B. Litvak*
                                                        Attorneys for Official Committee of Unsecured
12                                                      Creditors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

1

## **EXHIBIT A**

2

**Transcript of Proceedings from iPic-Gold Class Entertainment, LLC**
**September 17, 2019**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:102286.3 38336/002

# In Re:

*IPIC-GOLD CLASS ENTERTAINMENT LLC, et al.*

*Case No. 19-11739(LSS)*

*September 17, 2019*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*

Min-U-Script® with Word Index

1

2  UNITED STATES BANKRUPTCY COURT

3  DISTRICT OF DELAWARE

4  - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  IPIC-GOLD CLASS ENTERTAINMENT, LLC,     Case No.

7  et al.,                                 19-11739(LSS)

8            Debtors.

9  - - - - - - - - - - - - - - - - - - - - -x

10

11

12             United States Bankruptcy Court

13             824 North Market Street

14             Wilmington, Delaware

15

16             September 17, 2019

17             5:08 PM

18

19

20  B E F O R E:

21  HON. LAURIE SELBER SILVERSTEIN

22  U.S. BANKRUPTCY JUDGE

23

24  ECR OPERATOR:  MICHAEL MILLER

25

1    Notice of Hearing Scheduled for September 17, 2019 at 4:00 p.m.

2    Eastern Time (the "Hearing") [Docket No. 286].

3

4    Ruling on:

5    Debtors' Motion for Interim and Final Orders: (A) Authorizing

6    Debtors in Possession to (I) Obtain Post-petition Financing

7    Pursuant to 11 U.S.C. Sections 105, 362, 363, and 364, (II)

8    Grant Liens and Superpriority Claims to Post-petition Lenders

9    Pursuant to 11 U.S.C. Sections 364; (III) Use Cash Collateral,

10   and (IV) Provide Adequate Protection to Pre-petition Credit

11   Parties, (B) Modifying Automatic Stay Pursuant to 11 U.S.C.

12   Sections 361, 362, 363, and 364; and (C) Scheduling Final

13   Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) and Local

14   Bankruptcy Rule 4001-2 (the "DIP Motion") [Docket No. 15].

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Penina Wolicki

```
 1
 2  A P P E A R A N C E S :
 3  PACHULSKI STANG ZIEHL & JONES LLP
 4         Attorneys for Debtors
 5  BY:   JOSHUA M. FRIED, ESQ. (TELEPHONICALLY)
 6         JEFFREY N. POMERANTZ, ESQ. (TELEPHONICALLY)
 7         PETER J. KEANE, ESQ. (TELEPHONICALLY)
 8         MAXIM B. LITVAK, ESQ. (TELEPHONICALLY)
 9
10
11  UNITED STATES DEPARTMENT OF JUSTICE
12         Office of the United States Trustee
13  BY:   BENJAMIN A. HACKMAN, ESQ. (TELEPHONICALLY)
14
15
16  COLE SCHOTZ P.C.
17         Attorneys for Official Creditors' Committee
18  BY:   G. DAVID DEAN, ESQ.
19         PATRICK J. REILLEY, ESQ. (TELEPHONICALLY)
20
21
22  BURR & FORMAN LLP
23         Attorneys for ERSA and TRSA DIP Lenders
24  BY:   J. CORY FALGOWSKI, ESQ.
25         DEREK F. MEEK, ESQ. (TELEPHONICALLY)
```

1

2    BALLARD SPAHR LLP

3            Attorneys for Federal Realty

4    BY:   LESLIE C. HEILMAN, ESQ. (TELEPHONICALLY)

5

6

7    FROST BROWN TODD LLC

8            Washington Prime Group Inc.

9    BY:   RONALD E. GOLD, ESQ. (TELEPHONICALLY)

10

11

12   ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

13            Attorneys for LBA IV-PPII-Retail, LLC

14   BY:   MICHAEL S. GREGER, ESQ. (TELEPHONICALLY)

15

16

17   ASHBY & GEDDES, P.A.

18            Attorneys for TDC Fort Lee, LLC

19   BY:   GREGORY A. TAYLOR, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.

3              Thank you, Counsel.  Sorry to be juggling things

4     around today, but I wanted to rule on this today, because I

5     realize you need an answer, and this is not quite as pretty as

6     I would want it to be, but I have a ruling.

7              Okay.  The parties know we had a significant

8     discussion of DIP financing, somewhat on a practical level,

9     somewhat on an intellectual level.  In order to rule, I decided

10    to go back to some basics, and I read what I think are two very

11    important cases:  Judge Buschman's decision in In re Ames

12    Department Stores, Inc., 115 B.R. 34 (1990); and the Third

13    Circuit's decision in In re Swedeland Development Group, Inc.

14    16 F.3d 552 (1994) decision.

15             These cases discuss DIP financing and adequate

16    protection for use of a pre-petition lender's collateral,

17    including cash collateral.  Reviewing these cases reminds us of

18    the appropriate standards.

19             As Ames states, except for unsecured credit in the

20    ordinary course, post-petition lending requires the

21    authorization of the court.  In determining whether to approve

22    a particular transaction, the court acts in its informed

23    discretion, but its discretion is not unbounded.

24             First, the court may approve a financing transaction

25    only if the debtor demonstrates with evidence that it has

IPIC-GOLD CLASS ENTERTAINMENT, LLC, ET AL.                      6

1   reasonably attempted to obtain the least intrusive credit
2   available.  That is, first the debtor attempts to obtain
3   unsecured credit, then credit with priority status, then credit
4   with a junior lien on encumbered assets, and finally credit
5   secured by priming liens.
6          Second, if the financing includes a priming lien, the
7   debtor must show adequate protection.
8          Then in exercising discretion with respect to
9   financing, under 364(b), (c), or (d), courts must recognize the
10  balance Congress struck in the Code between debtors seeking to
11  reorganized and creditors' expectations of payment.  In doing
12  so, courts focused on proposed terms of the financing that
13  "tilt the conduct of the case; prejudice, at an early stage,
14  the powers and rights that the Bankruptcy Code confers for the
15  benefit of all creditors; or leverage the Chapter 11 process by
16  preventing motions by parties-in-interest from being decided on
17  their merits."
18         This is, in part, because debtors-in-possession enjoy
19  little negotiating power with a proposed lender, particularly
20  one that has a pre-petition lien on cash collateral.
21         But the Court does respect that debtors-in-possession
22  are permitted to exercise their business judgment consistent
23  with the confines of their fiduciary duties.
24         The Ames court summarized the standard this way:  "the
25  court's discretion under Section 364 is to be utilized on

1  grounds that permit reasonable business judgment to be
2  exercised so long as the financing agreement does not contain
3  terms that leverage the bankruptcy process and powers or its
4  purpose is not so much to benefit the estate as it is to
5  benefit a party-in-interest."
6          This requires a case-by-case determination.
7          As for adequate protection, the Code appears to
8  contemplate nonconsensual priming fights.  Again, it is a
9  condition to permitting any lending at all.  Section 363 and
10  364 contemplate courts making decisions on whether adequate
11  protection is sufficient to protect the pre-petition secured
12  lender.
13          And as in Swedeland, the Code contemplates that
14  adequate protection for diminution in value as provided in
15  Section 361 of the Bankruptcy Code, should provide the pre-
16  petition secured lender with the value of its bargained-for
17  rights.
18          Pre-petition creditors, even undersecured creditors,
19  are entitled to adequate protection, which may take the form of
20  additional collateral and/or periodic payments for proven
21  diminution.  This too, is a case-by-case determination.
22          These cases, and I would suggest the Code itself, were
23  written in a time with very different types of financing
24  vehicles, some would say simpler ones, and with more
25  traditional funders -- that is, banks.  Debtors often had more

1   unsecured debt, therefore having more unencumbered assets.

2           These days, pre-petition and post-petition financing

3   structures are complicated.  There are often multiple layers of

4   secured pre-petition debt, and we see all types of funders.

5   Further, it is not unusual for a debtor's pre-petition debt to

6   be secured by all of the debtor's assets.  And with some

7   exception, almost all the cases I see are like the current

8   case, in which the DIP lender is also the pre-petition lender.

9           In some cases, though I am told not this one, the

10  lender has insisted on the filing of the bankruptcy, and there

11  is not a contested adequate protection fight.  Rather, the

12  debtor and lender come in with a consensual deal as to both the

13  terms of the DIP financing, new-money piece of the transaction,

14  and the adequate protection terms on the pre-petition loan.

15  Sometimes these are called protective DIPs.

16          The lender does not ask the court to determine

17  adequate protection, rather the lender tells the court what it

18  is willing to accept.  And the DIP financing and the adequate

19  protection are packaged as one transaction, one deal, a package

20  deal.

21          Notwithstanding the significant changes in the

22  financial markets, the principles of Ames and Swedeland still

23  apply.  The Court takes a case-by-case approach to the issues

24  of the appropriateness of the terms of the financing and the

25  request for adequate protection.  But the Court can be mindful

1    of the reality that, as the players tell her, the DIP financing

2    and the adequate protection are one deal.  So in exercising its

3    discretion in approving DIP financing, the Court can look to

4    whether the entire transaction, including the adequate

5    protection terms, contain provisions that leverage the

6    bankruptcy process and power or impermissibly advantage the

7    lender at the expense of the estate.

8           As applied here, the package that was put in front of

9    me is as follows:  sixteen million in new money; the lender is

10   Teachers' Retirement System of Alabama and the Employees'

11   Retirement System of Alabama; the DIP lenders are the pre-

12   petition lenders.

13          The pre-petition lender claims it is owed

14   approximately 205 million dollars.  Debtor represents that the

15   vendors, suppliers, and unsecured trade are thirteen to fifteen

16   million dollars.

17          The debtors' first-day declaration states that the

18   debtors' obligation under the pre-petition loan agreement is

19   secured by substantially all of the debtors' assets.

20   Notwithstanding that statement, the committee has discovered

21   that certain assets are not encumbered.  These include seven

22   leaseholds that are in various stages of development, with a

23   cost basis on the debtors' books, of 5.8 million dollars;

24   liquor licenses; commercial tort claims, and that the committee

25   believes the UCCs are not specific enough, so that the D&O

1    claims are also unencumbered; proceeds from the AMC case, if

2    the debtor is successful in reversing the appeal and wins on

3    remand; of course, the avoidance actions.

4            As for the budget, potentially, not all stub rent has

5    been paid.  At least there is one instance of disputed rent

6    that is not yet taken care of.

7            The budget anticipates projected disbursements through

8    the period of the expiration of the budget, but nothing for the

9    period after that.  The explanation is that the credit

10   outstanding would relate to movie distributors, food, and

11   liquor, which a buyer will have to take.

12           Of course, I do not know if I have a buyer yet.  There

13   is a robust sales process ongoing, and all are hopeful, but we

14   don't know the results.

15           The evidence also shows that critical vendors, tax,

16   and PACA/PASA claims were paid 4.8 million dollars through

17   first-day orders.  The debtor also paid 385,000 dollars in

18   priority claims in first-day orders.  And the remaining

19   unsecured claims as scheduled -- recognizing that there could

20   be significant, possibly, rejection claims or other claims --

21   but the scheduled claims are fourteen million dollars.

22           No party has challenged the debtors' business judgment

23   that it needs DIP financing during the bankruptcy case.  And no

24   party has challenged the economic terms of the financing.  The

25   stipulations placed into evidence at the hearings show that

1    alternative financing is not available on better terms, and a

2    priming fight would be costly.

3         Finally, I note that the debtor -- the lender has

4    already made certain concessions, and in particular, has agreed

5    that avoidance actions will not be liened up and will not be

6    subject to superpriority claims.

7         It's against this backdrop that I'm making my rulings.

8         With respect to the unencumbered assets, the DIP

9    lenders will be entitled to a lien on unencumbered assets for

10    their new money.  I do not think that that was an issue, but I

11    just wanted to state that first.  I do not believe there was

12    any objection, and I do think that it's appropriate that the

13    new money be secured by unencumbered assets.

14         With respect to adequate protection, I'm going to

15    provide the pre-petition lenders with a lien on unencumbered

16    assets to the extent of diminution that will be proved in the

17    future.  The order should not have a definition of what

18    diminution means.  It is what it is, and I'm not making any

19    findings now about what constitutes diminution in the pre-

20    petition lenders' collateral.

21         As a condition to approving the lending, I am not

22    going to let the unencumbered assets advantage the pre-petition

23    lending, except to the extent of diminution.  We've been

24    calling this marshalling, but I don't think that's what it is,

25    as we've discussed.  I think it is -- it's not marshalling when

IPIC-GOLD CLASS ENTERTAINMENT, LLC, ET AL.          12

1   we're talking about it in the context of DIP financing.

2          So the lender will have to repay its DIP financing

3   first out of encumbered assets, but the unencumbered assets

4   will be there, if necessary, to pay back the DIP financing.

5   And as I said, the adequate protection claim of the pre-

6   petition lender will be protected by the unencumbered assets as

7   well, because that is what Swedeland teaches us.  But again,

8   I'm not pre-determining the amount of that claim, if any.

9          With respect to 506(c) and 552, on the facts of this

10  case, and at this stage, I'm not going to permit the waiver in

11  these circumstances.

12         I'll also note that if the -- I would say here --

13  debtor is correct in its assertion of how the case plays out,

14  there won't be a need to surcharge the collateral, because all

15  of the post-petition administrative expenses will be paid, in

16  any event.

17         The prohibited-purposes provision, I will not approve

18  the lengthy paragraph describing prohibited purposes for which

19  cash collateral cannot be used or DIP financing cannot be used.

20  I think this type of provision is exactly the type of provision

21  that Ames suggests is inappropriate.

22         I will approve a customary provision that the DIP

23  collateral may not be used to sue the DIP lender.

24         The committee budget.  My understanding is that that

25  has been increased to 400,000 dollars.  I'm going to keep it at

 1  that, but I reserve the right, as Judge Shannon does, in his

 2  cases, to reallocate the professionals' budget, if

 3  appropriate -- meaning among estate professionals.

 4          I admonish the committee to be keenly in tune with the

 5  limits.  This is not a free hand.  I'm not giving the committee

 6  a free hand, but I'm reserving the right to take a look at that

 7  in the context of the case and all of the professional fees.

 8          The only other issue I think remaining is the issue of

 9  the LLC and the debtors' stipulations.  The parties, as I

10  recall, talked about various ways to resolve that.  And the

11  committee and lenders and debtors should come up with language

12  to solve for that problem.

13          It's clear that the debtors' stipulation should not be

14  used to prohibit the investigation that the committee is

15  otherwise entitled to do, and to sue, if appropriately,

16  derivatively, on behalf of the estate.

17          So those are my rulings.  I think I've hit all the

18  issues.  Is there anything that I've missed?

19          MR. DEAN:  I don't think so --

20          MR. LITVAK:  Your Honor, this is Max Litvak on behalf

21  of Pachulski Stang Ziehl & Jones, who are counsel for the

22  debtor.

23          THE COURT:  Yes.

24          MR. LITVAK:  If I may speak?

25          THE COURT:  Yes.

1      MR. LITVAK:  And Your Honor, Jeff Pomerantz is also on

2  the line, but he is only on listen only, because he actually

3  had a medical procedure today, otherwise he would be taking the

4  lead, but he asked me to take the lead in light of that

5  procedure.

6      Your Honor, I just had a question about your ruling

7  with respect to the issue of marshalling and the way that we

8  would need to revise this form of final DIP order.  You said

9  that it would be all right for the DIP lender to have a lien on

10 unencumbered assets, but then you said that the DIP lender

11 should look first to the already encumbered assets and then to

12 the unencumbered?

13     THE COURT:  Correct.

14     MR. LITVAK:  So -- okay, so basically your ruling is

15 that the lender should marshal in that respect; is that

16 correct?

17     THE COURT:  If you're going to call that marshal, yes,

18 then that is correct.

19     MR. LITVAK:  Okay.  Great.  And then the second

20 question that I had, with respect to the prohibited-purposes

21 provision, there is a cap in the order on the committee's

22 investigation budget with respect to the pre-petition lender

23 liens and claims.  It was 25,000 dollars, and it was increased

24 to 50,000 dollars.

25     THE COURT:  Um-hum.

1    MR. LITVAK:  I take it that the Court would approve

2  that cap; is that correct?

3    THE COURT:  Yes.  My understanding is that the -- my

4  recollection of the hearing is that the committee counsel

5  agreed that it would stay within the limits that it had

6  negotiated.

7    MR. DEAN:  That's correct, Your Honor.

8    THE COURT:  The 50,000 dollars.

9    MR. LITVAK:  Okay, thank you, Your Honor.

10    And then one other question on that same prohibited-

11  purposes provision.  You said that it would -- you would

12  approve a customary provision that the committee could not use

13  cash collateral or DIP proceeds to sue the DIP lender.  Would

14  that also apply to the pre-petition lender?

15    THE COURT:  Yes.

16    MR. LITVAK:  And here it's the same parties.

17    THE COURT:  Yes.

18    MR. LITVAK:  Okay, thank you, Your Honor.  I think,

19  with that, and certainly subject to discussing it with DIP

20  counsel, we would be in a position, from the debtors'

21  perspective, to revise the form of final DIP order, circulate

22  it amongst the parties, and then hopefully submit it to the

23  Court with everyone's agreement.

24    THE COURT:  That's fine.  I assume that the lenders'

25  counsel needs to speak with their client about the Court's

1  ruling.  And to the extent that the lenders are willing to lend

2  on these terms, then I would expect to see a revised form of

3  order.  But I expect those discussions to take place.

4           MR. FALGOWSKI:  Yes, Your Honor.  For the record, Cory

5  Falgowski on behalf of RSA.  That's -- I was about to rise to

6  make that comment, that we will need to talk to our client

7  about some of the Court's rulings.  And then we would expect to

8  circle back with the parties after we have those conversations.

9           THE COURT:  Yes.

10          MR. DEAN:  Your Honor, I think we covered everything.

11 I just wanted to stand because you asked -- I think all the

12 issues that we discussed at the hearing were covered by the

13 ruling.  So thanks for --

14          THE COURT:  Okay.

15          MR. DEAN:  -- staying late and giving us such a

16 thoughtful ruling.  We appreciate it.

17          THE COURT:  Well --

18          MR. DEAN:  Thank you.

19          THE COURT:  -- not a problem.  And as I said, I wanted

20 to give it to you today because I knew that lenders' counsel

21 would need time to circle up with their client and those

22 discussions that need to take place.  So thank you.

23          MR. DEAN:  Thank you very much.

24          THE COURT:  We're --

25          MR. DEAN:  Have a good night.

1          THE COURT:  -- we're adjourned.  Good night.

2          MR. LITVAK:  Thank you, Your Honor.

3      (Whereupon these proceedings were concluded at 5:29 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                              I N D E X
 3                              RULINGS
 4                                         Page      Line
 5  The DIP lenders will be entitled to a    11         8
 6  lien on unencumbered assets for their
 7  new money.
 8  The pre-petition lenders will have a     11        14
 9  lien on unencumbered assets to the
10  extent of diminution that will be
11  proved in the future.
12  The unencumbered assets will not         11        21
13  advantage the pre-petition lending,
14  except to the extent of diminution.
15  506(c) and 552 waivers are not           12         9
16  permitted at this stage.
17  The prohibited-purposes provision is     12        17
18  not approved.
19  The Court will approve a customary       12        22
20  provision that the DIP collateral may
21  not be used to sue the DIP lender.
22  The committee budget is set at 400,000   12        24
23  dollars; the Court reserves the right
24  to reallocate professional fees.
25
```

1

2                        C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Penina Wolicki*

8                                        September 18, 2019

9    _____        _____

10   PENINA WOLICKI (CET-569)                DATE

11   AAERT Certified Transcriber CET-569

12

13   eScribers, LLC

14   352 Seventh Avenue, Suite #604

15   New York, NY 10001

16   (973) 406-2250

17   operations@escribers.net

18

19

20

21

22

23

24

25

IPIC-GOLD CLASS ENTERTAINMENT, LLC, et al.
Case No. 19-11739(LSS)

September 17, 2019

## A

**accept (1)**
8:18
**actions (2)**
10:3;11:5
**acts (1)**
5:22
**actually (1)**
14:2
**additional (1)**
7:20
**adequate (15)**
5:15;6:7;7:7,10,
14,19;8:11,14,17,18,
25;9:2,4;11:14;12:5
**adjourned (1)**
17:1
**administrative (1)**
12:15
**admonish (1)**
13:4
**advantage (2)**
9:6;11:22
**Again (2)**
7:8;12:7
**against (1)**
11:7
**agreed (2)**
11:4;15:5
**agreement (3)**
7:2;9:18;15:23
**Alabama (2)**
9:10,11
**ALLEN (1)**
4:12
**almost (1)**
8:7
**alternative (1)**
11:1
**AMC (1)**
10:1
**Ames (5)**
5:11,19;6:24;8:22;
12:21
**among (1)**
13:3
**amongst (1)**
15:22
**amount (1)**
12:8
**and/or (1)**
7:20
**anticipates (1)**
10:7
**appeal (1)**
10:2
**appears (1)**
7:7
**applied (1)**
9:8
**apply (2)**

8:23;15:14
16:16
**appreciate (1)**
16:16
**approach (1)**
8:23
**appropriate (3)**
5:18;11:12;13:3
**appropriately (1)**
13:15
**appropriateness (1)**
8:24
**approve (6)**
5:21,24;12:17,22;
15:1,12
**approving (2)**
9:3;11:21
**approximately (1)**
9:14
**around (1)**
5:4
**ASHBY (1)**
4:17
**assertion (1)**
12:13
**assets (15)**
6:4;8:1,6;9:19,21;
11:8,9,13,16,22;
12:3,3,6;14:10,11
**assume (1)**
15:24
**attempted (1)**
6:1
**attempts (1)**
6:2
**Attorneys (3)**
4:3,13,18
**authorization (1)**
5:21
**available (2)**
6:2;11:1
**avoidance (2)**
10:3;11:5

## B

**back (3)**
5:10;12:4;16:8
**backdrop (1)**
11:7
**balance (1)**
6:10
**BALLARD (1)**
4:2
**Bankruptcy (6)**
6:14;7:3,15;8:10;
9:6;10:23
**banks (1)**
7:25
**bargained-for (1)**
7:16
**basically (1)**
14:14
**basics (1)**

5:10
**basis (1)**
9:23
**behalf (3)**
13:16,20;16:5
**believes (1)**
9:25
**benefit (3)**
6:15;7:4,5
**better (1)**
11:1
**books (1)**
9:23
**both (1)**
8:12
**BR (1)**
5:12
**BROWN (1)**
4:7
**budget (6)**
10:4,7,8;12:24;
13:2;14:22
**Buschman's (1)**
5:11
**business (3)**
6:22;7:1;10:22
**buyer (2)**
10:11,12

## C

**call (1)**
14:17
**called (1)**
8:15
**calling (1)**
11:24
**can (2)**
8:25;9:3
**cap (2)**
14:21;15:2
**care (1)**
10:6
**case (7)**
6:13;8:8;10:1,23;
12:10,13;13:7
**case-by-case (3)**
7:6,21;8:23
**cases (7)**
5:11,15,17;7:22;
8:7,9;13:2,2
**cash (4)**
5:17;6:20;12:19;
15:13
**certain (2)**
9:21;11:4
**certainly (1)**
15:19
**challenged (2)**
10:22,24
**changes (1)**
8:21
**Chapter (1)**

6:15
**circle (2)**
16:8,21
**Circuit's (1)**
5:13
**circulate (1)**
15:21
**circumstances (1)**
12:11
**claim (2)**
12:5,8
**claims (11)**
9:13,24;10:1,16,
18,19,20,20,21;11:6;
14:23
**clear (1)**
13:13
**client (2)**
15:25;16:6,21
**Code (6)**
6:10,14;7:7,13,15,
22
**collateral (9)**
5:16,17;6:20;7:20;
11:20;12:14,19,23;
15:13
**comment (1)**
16:6
**commercial (1)**
9:24
**committee (9)**
9:20,24;12:24;
13:4,5,11,14;15:4,12
**committee's (1)**
14:21
**complicated (1)**
8:3
**concessions (1)**
11:4
**concluded (1)**
17:3
**condition (2)**
7:9;11:21
**conduct (1)**
6:13
**confers (1)**
6:14
**confines (1)**
6:23
**Congress (1)**
6:10
**consensual (1)**
8:12
**consistent (1)**
6:22
**constitutes (1)**
11:19
**contain (2)**
7:2;9:5
**contemplate (2)**
7:8,10
**contemplates (1)**
7:13

**contested (1)**
8:11
**context (1)**
12:1;13:7
**conversations (1)**
16:8
**Cory (1)**
16:4
**cost (1)**
9:23
**costly (1)**
11:2
**Counsel (6)**
5:3;13:21;15:4,20,
25;16:20
**course (1)**
5:20;10:3,12
**COURT (29)**
5:2,21,22,24;6:21,
24;8:16,17,23,25;
9:3;13:23,25;14:13,
17,25;15:1,3,8,15,17,
23,24;16:9,14,17,19,
24;17:1
**courts (3)**
6:9,12;7:10
**court's (1)**
6:25;15:25;16:7
**covered (2)**
16:10,12
**credit (3)**
5:19;6:1,3,3,3,4;
10:9
**creditors (3)**
6:15;7:18,18
**creditors' (1)**
6:11
**critical (1)**
10:15
**current (1)**
8:7
**customary (2)**
12:22;15:12

## D

**D&O (1)**
9:25
**days (1)**
8:2
**deal (4)**
8:12,19,20;9:2
**DEAN (7)**
13:19;15:7;16:10,
15,18,23,25
**debt (3)**
8:1,4,5
**debtor (10)**
5:25;6:2,7;8:12;
9:14;10:2,17;11:3;
12:13;13:22
**debtors (3)**
6:10;7:25;13:11

IPIC-GOLD CLASS ENTERTAINMENT, et al.
Case No. 19-11739(LSS)

September 17, 2019

debtors' (8)
9:17,18,19,23;
10:22;13:9,13;15:20
debtor's (2)
8:5,6
debtors-in-possession (2)
6:18,21
decided (2)
5:9;6:16
decision (3)
5:11,13,14
decisions (1)
7:10
declaration (1)
9:17
definition (1)
11:17
demonstrates (1)
5:25
Department (1)
5:12
derivatively (1)
13:16
describing (1)
12:18
determination (2)
7:6,21
determine (1)
8:16
determining (1)
5:21
Development (2)
5:13;9:22
different (1)
7:23
diminution (6)
7:14,21;11:16,18,
19,23
DIP (23)
5:8,15;8:8,13,18;
9:1,3,11;10:23;11:8;
12:1,2,4,19,22,23;
14:8,9,10;15:13,13,
19,21
DIPs (1)
8:15
disbursements (1)
10:7
discovered (1)
9:20
discretion (5)
5:23,23;6:8,25;9:3
discuss (1)
5:15
discussed (2)
11:25;16:12
discussing (1)
15:19
discussion (1)
5:8
discussions (2)
16:3,22
disputed (1)

10:5
distributors (1)
10:10
dollars (10)
9:14,16,23;10:16,
17,21;12:25;14:23,
24;15:8
during (1)
10:23
duties (1)
6:23

**E**

early (1)
6:13
economic (1)
10:24
Employees' (1)
9:10
encumbered (4)
6:4;9:21;12:3;
14:11
enjoy (1)
6:18
enough (1)
9:25
entire (1)
9:4
entitled (3)
7:19;11:9;13:15
ESQ (4)
4:4,9,14,19
estate (4)
7:4;9:7;13:3,16
even (1)
7:18
event (1)
12:16
everyone's (1)
15:23
evidence (3)
5:25;10:15,25
exactly (1)
12:20
except (2)
5:19;11:23
exception (1)
8:7
exercise (1)
6:22
exercised (1)
7:2
exercising (2)
6:8;9:2
expect (3)
16:2,3,7
expectations (1)
6:11
expense (1)
9:7
expenses (1)
12:15

expiration (1)
10:8
explanation (1)
10:9
extent (3)
11:16,23;16:1

**F**

F3d (1)
5:14
facts (1)
12:9
FALGOWSKI (2)
16:4,5
Federal (1)
4:3
fees (1)
13:7
fiduciary (1)
6:23
fifteen (1)
9:15
fight (2)
8:11;11:2
fights (1)
7:8
filing (1)
8:10
final (2)
14:8;15:21
finally (2)
6:4;11:3
financial (1)
8:22
financing (21)
5:8,15,24;6:6,9,12;
7:2,23;8:2,13,18,24;
9:1,3;10:23,24;11:1;
12:1,2,4,19
findings (1)
11:19
fine (1)
15:24
First (5)
5:24;6:2;11:11;
12:3;14:11
first-day (3)
9:17;10:17,18
focused (1)
6:12
follows (1)
9:9
food (1)
10:10
form (4)
7:19;14:8;15:21;
16:2
Fort (1)
4:18
fourteen (1)
10:21
free (2)

13:5,6
front (1)
9:8
FROST (1)
4:7
funders (2)
7:25;8:4
Further (1)
8:5
future (1)
11:17

**G**

GAMBLE (1)
4:12
GEDDES (1)
4:17
giving (2)
13:5;16:15
GOLD (1)
4:9
good (2)
16:25;17:1
Great (1)
14:19
GREGER (1)
4:14
GREGORY (1)
4:19
grounds (1)
7:1
Group (2)
4:8;5:13

**H**

hand (2)
13:5,6
hearing (2)
15:4;16:12
hearings (1)
10:25
HEILMAN (1)
4:4
hit (1)
13:17
Honor (9)
13:20;14:1,6;15:7,
9,18;16:4,10;17:2
hopeful (1)
10:13
hopefully (1)
15:22

**I**

impermissibly (1)
9:6
important (1)
5:11
inappropriate (1)
12:21

Inc (3)
4:8;5:12,13
include (1)
9:21
includes (1)
6:6
including (2)
5:17;9:4
increased (2)
12:25;14:23
informed (1)
5:22
insisted (1)
8:10
instance (1)
10:5
intellectual (1)
5:9
into (1)
10:25
intrusive (1)
6:1
investigation (2)
13:14;14:22
issue (4)
11:10;13:8,8;14:7
issues (3)
8:23;13:18;16:12
IV-PPII-Retail (1)
4:13

**J**

Jeff (1)
14:1
Jones (1)
13:21
Judge (2)
5:11;13:1
judgment (3)
6:22;7:1;10:22
juggling (1)
5:3
junior (1)
6:4

**K**

keenly (1)
13:4
keep (1)
12:25
knew (1)
16:20

**L**

language (1)
13:11
late (1)
16:15
layers (1)
8:3

**LBA (1)**
4:13
**lead (2)**
14:4,4
**leaseholds (1)**
9:22
**least (2)**
6:1;10:5
**LECK (1)**
4:12
**Lee (1)**
4:18
**lend (1)**
16:1
**lender (22)**
6:19;7:12,16;8:8,
8,10,12,16,17;9:7,9,
13;11:3;12:2,6,23;
14:9,10,15,22;15:13,
14
**lenders (6)**
9:11,12;11:9,15;
13:11;16:1
**lenders' (3)**
11:20;15:24;16:20
**lender's (1)**
5:16
**lending (4)**
5:20;7:9;11:21,23
**lengthy (1)**
12:18
**LESLIE (1)**
4:4
**level (2)**
5:8,9
**leverage (3)**
6:15;7:3;9:5
**licenses (1)**
9:24
**lien (6)**
6:4,6,20;11:9,15;
14:9
**liened (1)**
11:5
**liens (2)**
6:5;14:23
**light (1)**
14:4
**limits (2)**
13:5;15:5
**line (1)**
14:2
**liquor (2)**
9:24;10:11
**listen (1)**
14:2
**little (1)**
6:19
**Litvak (11)**
13:20,20,24;14:1,
14,19;15:1,9,16,18;
17:2
**LLC (4)**

4:7,13,18;13:9
**LLP (2)**
4:2,12
**loan (1)**
8:14;9:18
**long (1)**
7:2
**look (3)**
9:3;13:6;14:11

**M**

**making (3)**
7:10;11:7,18
**MALLORY (1)**
4:12
**markets (1)**
8:22
**marshal (2)**
14:15,17
**marshalling (3)**
11:24,25;14:7
**MATKINS (1)**
4:12
**Max (1)**
13:20
**may (4)**
5:24;7:19;12:23;
13:24
**meaning (1)**
13:3
**means (1)**
11:18
**medical (1)**
14:3
**merits (1)**
6:17
**MICHAEL (1)**
4:14
**million (6)**
9:9,14,16,23;
10:16,21
**mindful (1)**
8:25
**missed (1)**
13:18
**money (3)**
9:9;11:10,13
**more (3)**
7:24,25;8:1
**motions (1)**
6:16
**movie (1)**
10:10
**much (2)**
7:4;16:23
**multiple (1)**
8:3
**must (2)**
6:7,9

**N**

**NATSIS (1)**
4:12
**necessary (1)**
12:4
**need (6)**
5:5;12:14;14:8;
16:6,21,22
**needs (2)**
10:23;15:25
**negotiated (1)**
15:6
**negotiating (1)**
6:19
**new (3)**
9:9;11:10,13
**new-money (1)**
8:13
**night (2)**
16:25;17:1
**nonconsensual (1)**
7:8
**note (2)**
11:3;12:12
**Notwithstanding (2)**
8:21;9:20

**O**

**objection (1)**
11:12
**obligation (1)**
9:18
**obtain (2)**
6:1,2
**often (2)**
7:25;8:3
**one (7)**
6:20;8:9,19,19;
9:2;10:5;15:10
**ones (1)**
7:24
**ongoing (1)**
10:13
**only (4)**
5:25;13:8;14:2,2
**order (6)**
5:9;11:17;14:8,21;
15:21;16:3
**orders (2)**
10:17,18
**ordinary (1)**
5:20
**otherwise (2)**
13:15;14:3
**out (2)**
12:3,13
**outstanding (1)**
10:10
**owed (1)**
9:13

**P**

**PA (1)**
4:17
**PACA/PASA (1)**
10:16
**Pachulski (1)**
13:21
**package (2)**
8:19;9:8
**packaged (1)**
8:19
**paid (4)**
10:5,16,17;12:15
**paragraph (1)**
12:18
**part (1)**
6:18
**particular (2)**
5:22;11:4
**particularly (1)**
6:19
**parties (5)**
5:7;13:9;15:16,22;
16:8
**parties-in-interest (1)**
6:16
**party (2)**
10:22,24
**party-in-interest (1)**
7:5
**pay (1)**
12:4
**payment (1)**
6:11
**payments (1)**
7:20
**period (2)**
10:8,9
**periodic (1)**
7:20
**permit (2)**
7:1;12:10
**permitted (1)**
6:22
**permitting (1)**
7:9
**perspective (1)**
15:21
**petition (4)**
7:16;9:12;11:20;
12:6
**piece (1)**
8:13
**place (2)**
16:3,22
**placed (1)**
10:25
**players (1)**
9:1
**plays (1)**
12:13
**Please (1)**
5:2
**PM (1)**

17:3
**Pomerantz (1)**
14:1
**position (1)**
15:20
**possibly (1)**
10:20
**post-petition (3)**
5:20;8:2;12:15
**potentially (1)**
10:4
**power (2)**
6:19;9:6
**powers (2)**
6:14;7:3
**practical (1)**
5:8
**pre- (4)**
7:15;9:11;11:19;
12:5
**pre-determining (1)**
12:8
**prejudice (1)**
6:13
**pre-petition (15)**
5:16;6:20;7:11,18;
8:2,4,5,8,14;9:13,18;
11:15,22;14:22;
15:14
**pretty (1)**
5:5
**preventing (1)**
6:16
**Prime (1)**
4:8
**priming (4)**
6:5,6;7:8;11:2
**principles (1)**
8:22
**priority (2)**
6:3;10:18
**problem (1)**
13:12;16:19
**procedure (2)**
14:3,5
**proceedings (1)**
17:3
**proceeds (2)**
10:1;15:13
**process (4)**
6:15;7:3;9:6;10:13
**professional (1)**
13:7
**professionals (1)**
13:3
**professionals' (1)**
13:2
**prohibit (1)**
13:14
**prohibited (1)**
12:18
**prohibited- (1)**
15:10

**prohibited-purposes (2)**
12:17;14:20
**projected (1)**
10:7
**proposed (2)**
6:12,19
**protect (1)**
7:11
**protected (1)**
12:6
**protection (15)**
5:16;6:7;7:7,11,
14,19;8:11,14,17,19,
25;9:2,5;11:14;12:5
**protective (1)**
8:15
**proved (1)**
11:16
**proven (1)**
7:20
**provide (2)**
7:15;11:15
**provided (1)**
7:14
**provision (7)**
12:17,20,20,22;
14:21;15:11,12
**provisions (1)**
9:5
**purpose (1)**
7:4
**purposes (2)**
12:18;15:11
**put (1)**
9:8

**Q**

**quite (1)**
5:5

**R**

**Rather (2)**
8:11,17
**re (2)**
5:11,13
**read (1)**
5:10
**reality (1)**
9:1
**realize (1)**
5:5
**reallocate (1)**
13:2
**Realty (1)**
4:3
**reasonable (1)**
7:1
**reasonably (1)**
6:1
**recall (1)**
13:10

**recognize (1)**
6:9
**recognizing (1)**
10:19
**recollection (1)**
15:4
**record (1)**
16:4
**rejection (1)**
10:20
**relate (1)**
10:10
**remaining (2)**
10:18;13:8
**remand (1)**
10:3
**reminds (1)**
5:17
**rent (2)**
10:4,5
**reorganized (1)**
6:11
**repay (1)**
12:2
**represents (1)**
9:14
**request (1)**
8:25
**requires (2)**
5:20;7:6
**reserve (1)**
13:1
**reserving (1)**
13:6
**resolve (1)**
13:10
**respect (9)**
6:8,21;11:8,14;
12:9;14:7,15,20,22
**results (1)**
10:14
**Retirement (2)**
9:10,11
**reversing (1)**
10:2
**Reviewing (1)**
5:17
**revise (2)**
14:8;15:21
**revised (1)**
16:2
**right (3)**
13:1,6;14:9
**rights (2)**
6:14;7:17
**rise (1)**
16:5
**robust (1)**
10:13
**RONALD (1)**
4:9
**RSA (1)**
16:5

**rule (2)**
5:4,9
**ruling (6)**
5:6;14:6,14;16:1,
13,16
**rulings (3)**
11:7;13:17;16:7

**S**

**sales (1)**
10:13
**same (1)**
15:10,16
**scheduled (2)**
10:19,21
**seated (1)**
5:2
**Second (2)**
6:6;14:19
**Section (3)**
6:25;7:9,15
**secured (7)**
6:5;7:11,16;8:4,6;
9:19;11:13
**seeking (1)**
6:10
**seven (1)**
9:21
**Shannon (1)**
13:1
**show (2)**
6:7;10:25
**shows (1)**
10:15
**significant (3)**
5:7;8:21;10:20
**simpler (1)**
7:24
**sixteen (1)**
9:9
**solve (1)**
13:12
**Sometimes (1)**
8:15
**somewhat (2)**
5:8,9
**Sorry (1)**
5:3
**SPAHR (1)**
4:2
**speak (2)**
13:24;15:25
**specific (1)**
9:25
**stage (2)**
6:13;12:10
**stages (1)**
9:22
**stand (1)**
16:11
**standard (1)**
6:24

**standards (1)**
5:18
**Stang (1)**
13:21
**state (1)**
11:11
**statement (1)**
9:20
**states (2)**
5:19;9:17
**status (1)**
6:3
**stay (1)**
15:5
**staying (1)**
16:15
**still (1)**
8:22
**stipulation (1)**
13:13
**stipulations (2)**
10:25;13:9
**Stores (1)**
5:12
**struck (1)**
6:10
**structures (1)**
8:3
**stub (1)**
10:4
**subject (2)**
11:6;15:19
**submit (1)**
15:22
**substantially (1)**
9:19
**successful (1)**
10:2
**sue (3)**
12:23;13:15;15:13
**sufficient (1)**
7:11
**suggest (1)**
7:22
**suggests (1)**
12:21
**summarized (1)**
6:24
**superpriority (1)**
11:6
**suppliers (1)**
9:15
**surcharge (1)**
12:14
**Swedeland (4)**
5:13;7:13;8:22;
12:7
**System (2)**
9:10,11

**T**

**talk (1)**

16:6
**talked (1)**
13:10
**talking (1)**
12:1
**tax (1)**
10:15
**TAYLOR (1)**
4:19
**TDC (1)**
4:18
**Teachers' (1)**
9:10
**teaches (1)**
12:7
**TELEPHONICALLY (4)**
4:4,9,14,19
**tells (1)**
8:17
**terms (9)**
6:12;7:3;8:13,14,
24;9:5;10:24;11:1;
16:2
**thanks (1)**
16:13
**therefore (1)**
8:1
**Third (1)**
5:12
**thirteen (1)**
9:15
**though (1)**
8:9
**thoughtful (1)**
16:16
**tilt (1)**
6:13
**today (4)**
5:4,4;14:3;16:20
**TODD (1)**
4:7
**told (1)**
8:9
**tort (1)**
9:24
**trade (1)**
9:15
**traditional (1)**
7:25
**transaction (5)**
5:22,24;8:13,19;
9:4
**tune (1)**
13:4
**two (1)**
5:10
**type (2)**
12:20,20
**types (2)**
7:23;8:4

**U**

| | |
|---|---|
| **UCCs (1)** | 13:21 |
| 9:25 | |
| **Um-hum (1)** | **1** |
| 14:25 | |
| **unbounded (1)** | **11 (1)** |
| 5:23 | 6:15 |
| **under (3)** | **115 (1)** |
| 6:9,25;9:18 | 5:12 |
| **undersecured (1)** | **16 (1)** |
| 7:18 | 5:14 |
| **unencumbered (11)** | **1990 (1)** |
| 8:1;10:1;11:8,9, | 5:12 |
| 13,15,22;12:3,6; | **1994 (1)** |
| 14:10,12 | 5:14 |
| **unsecured (5)** | |
| 5:19;6:3;8:1;9:15; | **2** |
| 10:19 | |
| **unusual (1)** | **205 (1)** |
| 8:5 | 9:14 |
| **up (3)** | **25,000 (1)** |
| 11:5;13:11;16:21 | 14:23 |
| **use (2)** | |
| 5:16;15:12 | **3** |
| **used (4)** | |
| 12:19,19,23;13:14 | **34 (1)** |
| **utilized (1)** | 5:12 |
| 6:25 | **361 (1)** |
| | 7:15 |
| **V** | **363 (1)** |
| | 7:9 |
| **value (2)** | **364 (2)** |
| 7:14,16 | 6:25;7:10 |
| **various (2)** | **364b (1)** |
| 9:22;13:10 | 6:9 |
| **vehicles (1)** | **385,000 (1)** |
| 7:24 | 10:17 |
| **vendors (2)** | |
| 9:15;10:15 | **4** |
| | |
| **W** | **4.8 (1)** |
| | 10:16 |
| **waiver (1)** | **400,000 (1)** |
| 12:10 | 12:25 |
| **Washington (1)** | |
| 4:8 | **5** |
| **way (2)** | |
| 6:24;14:7 | **5.8 (1)** |
| **ways (1)** | 9:23 |
| 13:10 | **5:29 (1)** |
| **Whereupon (1)** | 17:3 |
| 17:3 | **50,000 (2)** |
| **willing (2)** | 14:24;15:8 |
| 8:18;16:1 | **506c (1)** |
| **wins (1)** | 12:9 |
| 10:2 | **552 (2)** |
| **within (1)** | 5:14;12:9 |
| 15:5 | |
| **written (1)** | |
| 7:23 | |
| | |
| **Z** | |
| | |
| **Ziehl (1)** | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO:  EMERGENCY MOTION FOR AN ORDER: (1) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING SUPERPRIORITY FINANCING; (2) AUTHORIZING CONTINUED USE OF CASH COLLATERAL; (3) SCHEDULING A FINAL HEARING; AND (4) GRANTING RELATED RELIEF [Docket No. 474]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **November 19, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **November 19, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 19, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT DELIVERY**
Honorable Martin R. Barash
U.S. Bankruptcy Court
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA  91367-6603

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 19, 2019 | Nancy H. Brown | /s/ *Nancy H. Brown* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVICE INFORMATION FOR CASE NO. 19-bk-11573-MB**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- Alicia Clough    aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com
- Marc S Cohen    mscohen@loeb.com, klyles@loeb.com
- Alec S DiMario    alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com
- Karl J Fingerhood    karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- H Alexander Fisch    Alex.Fisch@doj.ca.gov
- Don Fisher    dfisher@ptwww.com, tblack@ptwww.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Gisele M Goetz    gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu
- Karen L Grant    kgrant@silcom.com
- Ira S Greene    Ira.Greene@lockelord.com
- Matthew C. Heyn    Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- Brian L Holman    b.holman@musickpeeler.com
- Eric P Israel    eisrael@dgdk.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Alan H Katz    akatz@lockelord.com
- John C Keith    john.keith@doj.ca.gov
- Jeannie Kim    jkim@friedmanspring.com
- Michael Authur McConnell (TR)    Michael.mcconnell@kellyhart.com
- Brian M Metcalf    bmetcalf@omm.com
- David L Osias    dosias@allenmatkins.com, bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com
- Darren L Patrick    dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com
- Mitchell E Rishe    mitchell.rishe@doj.ca.gov
- Sonia Singh    ss@dgdk.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com
- Daniel A Solitro    dsolitro@lockelord.com, ataylor2@lockelord.com
- Ross Spence    ross@snowspencelaw.com, janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com
- Christopher D Sullivan    csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com
- Jennifer Taylor    jtaylor@omm.com
- John N Tedford    jtedford@dgdk.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com
- Salina R Thomas    bankruptcy@co.kern.ca.us
- Patricia B Tomasco    pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com
- Fred Whitaker    lshertzer@cwlawyers.com
- William E. Winfield    wwinfield@calattys.com, scuevas@calattys.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- Aaron E de Leest    aed@dgdk.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:326048.1 38336/002

**F 9013-3.1.PROOF.SERVICE**

2.  **SERVED BY EMAIL**

| NAME | EMAIL |
|------|-------|
| AKIN GUMP STRAUS HAUER & FELD | SDDAVIS@AKINGUMP.COM |
| ALLEN MATKINS LECK GAMBLE | JMEEDER@ALLENMATKINS.COM |
| ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP | DOSIAS@ALLENMATKINS.COM;MMARINO@ALLENMATKINS.COM |
| ANDREW KURTH LLP | DZDUNKEWICZ@ANDREWSKURTH.COM |
| ATTORNEY GENERAL OF CALIFORNIA | MICHAEL.ZARRO@DOJ.CA.GOV |
| ATTORNEY GENERAL OF CALIFORNIA | MITCHELL.RISHE@DOJ.CA.GOV |
| BRIAN CORSON, IN HIS INDIVIDUAL CAPACITY | BRIAN@HUBMAC.COM |
| CA ATTORNEY GENERAL'S OFFICE | PIU@DOJ.CA.GOV |
| CALIFORNIA DEPARTMENT OF CONSERVATION | SHARON.ARMSTRONG@CONSERVATION.CA.GOV |
| CALIFORNIA DEPT. OF FISH & WILDLIFE 5 | ASKR5@WILDLIFE.CA.GOV |
| CALIFORNIA DIVISION OF OIL, GAS & | WEBMASTER@CONSERVATION.CA.GOV |
| CALIFORNIA EMPLOYMENT DEVELOPMENT DEPT | WOTCSUPPORT@EDD.CA.GOV |
| CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD | CENTRALCOAST@WATERBOARDS.CA.GOV |
| CALIFORNIA STATE CONTROLLER | EOINQUIRY@SCO.CA.GOV |
| CALIFORNIA STATE LANDS COMMISSION | JOHN.KEITH@DOJ.CA.GOV |
| CALIFORNIA WATER RESOURCES CONTROL BOARD | INFO@WATERBOARDS.CA.GOV |
| COLE SCHOTZ P.C. | MWARNER@COLESCHOTZ.COM |
| COLORADO DEPT OF PUBLIC HEALTH AND ENVIRONMENT | CDPHE.INFORMATION@STATE.CO.US |
| CONWAY MACKENZIE, INC. | JYOUNG@CONWAYMACKENZIE.COM;DFERTIG@CONWAYMACKENZIE.COM |
| CUMMINS & WHITE, LLP | FWHITAKER@CWLAWYERS.COM; ABOLDUC@CWLAWYERS.COM |
| DIAMOND MCCARTHY LLP | ADIAMOND@DIAMONDMCCARTHY.COM |
| DIAMOND MCCARTHY LLP | SGIUGLIANO@DIAMONDMCCARTHY.COM |
| DIAMOND MCCARTHY LLP | CSULLIVAN@DIAMONDMCCARTHY.COM;ADIAMOND@DIAMONDMCCARTHY.COM |
| EPA REGION 9 | R9.INFO@EPA.GOV |
| ESCOLLE TENANTS IN COMMON | VMARTINEZ@TWITCHELLANDRICE.COM |
| FRIEDMAN & SPRINGWATER LLP | EFRIEDMAN@FRIEDMANSPRING.COM; JKIM@FRIEDMANSPRING.COM |
| GANONG LAW | PHIL@GANONGLAW.COM; NANCY@GANONGLAW.COM |
| GIBSON, DUNN & CRUTCHER LLP | OADENDORFF@GIBSONDUNN.COM |
| GLR, LLC | VAB@GRERANGROUP.COM |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| NAME | EMAIL |
|------|-------|
| HANNA AND MORTON LLP | erenwick@hanmor.com |
| HVI CAT CANYON, INC. | RSG@GREKA.COM |
| HVI CAT CANYON, INC. | AGD@GREKA.COM |
| HVI CAT CANYON, INC. | MEO@GREKA.COM |
| LARSEN O'BRIEN LLP | PRIGALI@LARSONOBRIENLAW.COM; SBLEDSOE@LARSONOBRIENLAW.COM; HPARK@LARSONOBRIENLAW.COM; MVASQUEZ@LARSONOBRIENLAW.COM |
| LOCKE LORD LLP | IRA.GREENE@LOCKELORD.COM |
| LOEB & LOEB LLP | SROSENTHAL@LOEB.COM; MSCOHEN@LOEB.COM; ACLOUGH@LOEB.COM |
| LOEB & LOEB LLP | VRUBINSTEIN@LOEB.COM |
| MCDOWELL HETHERINGTON LLP | JARROD.MARTIN@MHLLP.COM |
| MUSICK, PEELER & GARRETT LLP | B.HOLMAN@MUSICKPEELER.COM |
| MUSICK, PEELER & GARRETT LLP | L.MCAVOY@MUSICKPEELER.COM |
| NEW YORK STATE DEPT OF ENVIRONMENTAL CONSERVATION | CONTACT@DEC.NY.GOV |
| O'MELVENY & MYERS LLP | DPATRICK@OMM.COM; EJONES@OMM.COM; BMETCALF@OMM.COM |
| O'MELVENY & MYERS LLP | JTAYLOR@OMM.COM |
| O'MELVENY & MYERS LLP | DCANTOR@OMM.COM; SINDELICATO@OMM.COM; GSVIRSKY@OMM.COM |
| PACHULSKI STANG ZIEHL & JONES LLP | SGOLDEN@PSZJLAW.COM;RFEINSTEIN@PSZJLAW.COM |
| PACHULSKI STANG ZIEHL & JONES LLP | JPOMERANTZ@PSZJLAW.COM;MLITVAK@PSZJLAW.COM |
| PACIFIC PETROLEUM CALIFORNIA, INC. | JOHN@PPCINC.BIZ |
| PG&E | PGEBANKRUPTCY@PGE.COM; MXTN@PGE.COM;MARCELLUS.TERRY@PGE.COM |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | PETERCALAMARI@QUINNEMANUEL.COM |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | DEVINVANDERHAHN@QUINNEMANUEL.COM; PATTYTOMASCO@QUINNEMANUEL.COM |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | RAZMIGIZAKELIAN@QUINNEMANUEL.COM |
| ROCHELLE MCCULLOUGH, LLP | KDM@ROMCLAW.COM; STHOMAS@ROMCLAW.COM |
| SANTA BARBARA COUNTY P&D | JZORO@CO.SANTA-BARBARA.CA.US |
| SANTA BARBARA COUNTY TREASURER-TAX COLLECTOR | SBTAXES@CO.SANTA-BARBARA.CA.US |
| SANTA BARBARA COUNTY TREASURER-TAX COLLECTOR | VMCISAA@CO.SANTA-BARBARA.CA.US |
| SHERRILL A. SCHOEPE | S.WETZLER@MUSICKPEELER.COM |
| SNOW SPENCE GREEN LLP | ROSS@SNOWSPENCELAW.COM; CAROLYNCAROLLO@SNOWSPENCELAW.COM |
| SPENCER FANE LLP | ERICVANHORN@SPENCERFANE.COM |
| STATE OF COLORADO ATTORNEY GENERAL | ATTORNEY.GENERAL@COAG.GOV |
| THE LAW OFFICE OF SUSAN M. WHALEN | SUSAN@WHALENATTORNEY.COM |
| UNITED STATES DEPARTMENT OF JUSTICE | KARL.FINGERHOOD@USDOJ.GOV |
| UNITED STATES DEPARTMENT OF JUSTICE - OUST | BRIAN.FITTIPALDI@USDOJ.GOV |
| VICTORY OIL | SMALLBUSINESSTEAM@WOLTERSKLUWER.COM |
| WEIL, GOTSHAL & MANGES LLP | RACHAEL.FOUST@WEIL.COM |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:326048.1 38336/002

**F 9013-3.1.PROOF.SERVICE**

| NAME | EMAIL |
|---|---|
| WELTMAN & MOSKOWITZ, LLP | REW@WELTMOSK.COM; MLM@WELTMOSK.COM; AW@WELTMOSK.COM |
| WEST COAST WELDING & CONSTR. I | MBARBEY@WESTCOASTWELDING.NET |
| WILLIAM W. JENNY JR. | CARAMEL@HOTMAIL.COM |

## 3. SERVED VIA U.S. FIRST CLASS MAIL

| | | |
|---|---|---|
| ANN JENNY SCHUPP<br>C/O M H WHITTIER CORP.<br>1600 HUNTINGTON DRIVE<br>SOUTH PASADENA, CA 91030 | BRUCE S. GELBER<br>DEPUTY ASST ATTORNEY GENERAL<br>ENVIRONMENT & NATURAL RESOURCES<br>DIVISION<br>950 PENNSYLVANIA AVE<br>WASHINGTON, DC 20530 | CALIFORNIA DEPT. OF TOXIC SUBSTANCE<br>CONTROL<br>(BERKLEY REGIONAL OFFICE)<br>700 HEINZ AVENUE SUITE 200<br>BERKELEY, CA 94710-2721 |
| CALIFORNIA FRANCHISE TAX BOARD<br>PO BOX 942857 | SACRAMENTO, CA 94257-0500<br>CALIFORNIA OSHA<br>1515 CLAY STREET, SUITE 1901<br>OAKLAND, CA 94612 | CALIFORNIA STATE CONTROLLER<br>BETTY T. YEE<br>TAX ADMINISTRATION SECTION<br>PO BOX 942850<br>SACRAMENTO, CA 94250-5880 |
| CHARLES C. ALBRIGHT TRUSTEE<br>729 WEST 16TH STREET #B8<br>COSTA MESA, CA 92627 | DIANE T. WALKER<br>748 OCEANVILLE ROAD<br>STONINGTON, ME 04681-9714 | FIRST AMERICAN TITLE INSURANCE<br>COMPANY<br>TRUSTEE FOR UBS AG LONDON BRANCH<br>4380 LA JOLLA VILLAGE DRIVE<br>SUITE 110<br>SAN DIEGO, CA 92122 |
| HVI CAT CANYON, INC.<br>P.O. BOX 5489<br>SANTA MARIA, CA 93456 | INTERNAL REVENUE SERVICE<br>CENTRALIZED INSOLVENCY OPERATIONS<br>PO BOX 7346<br>PHILADELPHIA, PA 19101-7346 | INTERNAL REVENUE SERVICE<br>(SMALL BUSINESS/SELF-EMPLOYMENT<br>DIV)<br>5000 ELLIN ROAD<br>LANHAM, MD 20706 |
| J. P. MORGAN-CHASE<br>MICHAEL KERNEY<br>450 WEST 33RD STREET, 15TH FLOOR<br>REF: 030057 NASSAU ASSOC-SABA<br>NEW YORK, NY 10041 | NORTHERN CALIFORNIA COLLECTION<br>SERVICE, INC.<br>700 LEISURE LANE<br>SACRAMENTO, CA 95815 | SANTA BARBARA COUNTY -APCD<br>AERON ARLIN GENET<br>260 NORTH SAN ANTONIO RD<br>SANTA BARBARA, CA 93110 |
| STATE OF NEW YORK ATTORNEY<br>GENERAL<br>ATTN: LETIA A. JAMES<br>DEPT. OF LAW<br>THE CAPITOL, 2ND FL<br>ALBANY, NY 12224 | STONER FAMILY TRUST<br>JAMES G. SANFORD TRUSTEE<br>100 WEST LIBERTY STREET. SUITE 900<br>RENO, NV 89501 | U.S. DEPARTMENT OF TRANSPORTATION<br>1200 NEW JERSEY AVE, SE<br>WASHINGTON, DC 20590 |
| UBS AG, LONDON BRANCH<br>JULIAN GOULD<br>600 WASHINGTON BLVD.<br>STAMFORD, CT 06901 | UNITED STATES ATTORNEY'S OFFICE<br>SOUTHERN DISTRICT OF NEW YORK<br>ATTN: ANTHONY SUN, ASST. UNITED<br>STATES ATTORNEY<br>TAX & BANKRUPTCY UNIT<br>86 CHAMBERS ST., 3RD FLOOR<br>NEW YORK, NY 10007 | W. J. KENNY CORP.<br>C/O ALLFIRST BANKCORP TRUST C/O<br>M&T BANK<br>ONE M&T PLAZA<br>BUFFALO, NY 14203 |
| WYATT SLOAN-TRIBE, ESQ.<br>OFFICE OF THE ATTORNEY GENERAL<br>300 S. SPRING STREET, SUITE 1702<br>LOS ANGELES, CA 90013 | OFFICE OF THE U.S. TRUSTEE<br>BRIAN FITTIPALDI<br>1415 STATE STREET, SUITE 148<br>SANTA BARBARA, CA  93101 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.