Law Offices of
**KAREN L. GRANT**
State Bar No. 122084
924 Anacapa Street, Ste 1M
Santa Barbara, CA 93101
Tel: (805) 962-4413
Fax: (805)568-1641
kgrant@silcom.com

Eric M. Van Horn
Texas Bar No. 24051465
**SPENCER FANE LLP**
2200 Ross Avenue, Ste 4800 West
Dallas, Texas, 75201
Tel: (214) 750-3610
Fax: (214) 750-3612
ericvanhorn@spencerfane.com

Philip W. Ganong
State Bar No. 88414
**GANONG LAW**
930 Truxtun Avenue Ste #102
Bakersfield, CA 93301
Tel: (616) 327-3337
Fax: (661) 327-3395
phil@ganonglaw.com

Attorneys for Buganko, LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re | ) CASE NO. 9:19-bk-11573-MB |
| | ) (Chapter 11) |
| HVI CAT CANYON, INC. | ) |
| | ) **LIMITED OBJECTION BY BUGANKO, LLC TO** |
| Debtor. | ) **MOTION OF CHAPTER 11 TRUSTEE FOR** |
| | ) **ORDER (1) ESTABLISHING PROCEDURES FOR** |
| | ) **THE PAYMENT OF INTERIM COMPENSATION** |
| | ) **AND REIMBURSEMENT OF EXPENSES (11** |
| | ) **U.S.C. §§ 105(A) AND 331), AND** |
| | ) **AUTHORIZING PAYMENT ON A MONTHLY** |
| | ) **BASIS (11 U.S.C. §328); DECLARATION** |
| | ) **OF PHILIP GANONG IN SUPPORT** |
| | ) |
| | ) Date:    December 4, 2019 |
| | ) Time:    11:30 a.m. |
| | ) Place:   1415 State St. CTR 201 |
| | )          Santa Barbara, CA |

Buganko, LLC ("Buganko), respectfully submits its limited objection to the Motion filed by Michael A. McConnel, the Chapter 11 Trustee ("Trustee") of the estate of HVI Cat Canyon, Inc. ("Debtor") for an order (1) establishing a procedure for monthly payment of compensation and reimbursement of expenses incurred by the Trustee and his professionals from October 21, 2019, and (2) authorizing the Trustee to pay the estate's professionals on a monthly basis effective October 21, 2019.

**REDU ROYALTY FUNDS ARE NOT PROPERTY OF THIS ESTATE**

**AND SHOULD NOT BE AVAILABLE TO PAY ESTATE'S PROFESSIONALS**

Buganko is a California LLC formed to manage and/or hold certain lease and contract rights for real property that the Ganong Trust owns in Orange County, California that is part of the real property tract commonly known as the Richfield East Dome Unit ("Redu Property"). Pursuant to a Community Oil and Gas lease (commonly known as the Richfield Consolidated Lease) executed in 1919, the owners of various parcels of lands and lots (including Ganong ancestors A.J. and Minnie Koch, and W.M. and Ida Bubach) leased their property for oil and gas exploration and development.

Pursuant to the terms of a Unit Agreement for the Redu Property ("Unit Agreement"), the Ganong Trust, as well as, other Redu royalty owners, are entitled to certain royalty payments each month from the Debtor from their portion of the oil produced from the Redu Property. A copy of the Unit Agreement is attached to the Declaration of Philip Ganong as Exhibit "A". Page 3 of the Unit Agreement specifically provides that "royalty interest means a right to or interest in any portion of the Unitized Substances or proceeds

Law Offices of
KAREN L. GRANT
924 Anacapa St. Ste 1M
Santa Barbara, CA 93101

thereof other than a Working Interest." As the oil that is being extracted from the Redu Property (as well as the other leased property in this case) is owned by the landowners, not the Debtor, the estate is only entitled to that portion of the oil proceeds from the sale of the "Working Interest" as defined under the Unit Agreement. The royalty interest is not liable to pay the costs of this bankruptcy estate as the bankruptcy estate has no claim to such interest.

The Debtor has failed to pay Royalty payments to the Ganong Trust since August of 2018. In addition, since August of 2018, the Debtor has failed to provide Ganong Trust the monthly production reports from which the amount of the royalty payments would be determined.

In order to safeguard Buganko and the Redu royalty owners from having their portion of the royalty interests comingled and consumed to pay the costs of this estate, Buganko believes that it is appropriate to have the Redu royalty portion of any sale of the oil produced from the Redu Property segregated into a separate account by the Chapter 11 Trustee until payment to the royalty owners. Buganko believes that this would be appropriate for all royalty proceeds owed by this estate. Accordingly, Buganko objects to the payment of interim compensation and expenses of the professionals of this estate on a monthly basis, unless this provision is included in any order approving the Chapter 11 Trustee's motion.

DATED: November 20, 2019        LAW OFFICES OF KAREN L. GRANT

By: _____
    Karen L. Grant
    Attorneys for Buganko, LLC

# DECLARATION OF PHILIP GANONG

I, PHILIP GANONG, state and declare as follows:

1.    I am an individual and a member of Buganko, LLC ("Buganko").  I am an attorney at law duly licensed to practice in the State of California and before the United States District Court for the Central District of California.  I have previously appeared on behalf of Ganong Trust in this proceeding.

2.    I have personal knowledge of the matters set forth herein.  If called as a witness in this action, I could and would testify competently to the matters contained herein from my personal knowledge or from information communicated to me in the ordinary course of business.

3.    Buganko is a California LLC formed by myself and my three siblings to manage and/or hold certain lease and contract rights for real property that the Ganong Trust owns in Orange County, California that is part of the real property tract commonly known as the Richfield East Dome Unit ("Redu Property"). My siblings and I are the beneficiaries of the Ganong Trust. Ganong Trust has given Buganko authority to act on its behalf in this proceeding.  Pursuant to a Community Oil and Gas lease (commonly known as the Richfield Consolidated Lease) executed in 1919, the owners of various parcels of lands and lots, including my great grandparents, A.J. and Minnie Koch, and W.M. and Ida Bubach,  leased their property for oil and gas exploration and development.  In conjunction with the lease, there is a Surface Rental Agreement in place that allows access to the surface for related activities.  The Richfield Consolidated

1    Lease and Rental Surface Agreement have been assigned to various

2    lessees over the years and are currently held by the Debtor.

3         4.    Pursuant to the terms of a Unit Agreement for the

4    Richfield East Dome Unit, Richfield Oil and Gas Field , Orange

5    County, California dated October 15, 1969, recorded on December 30,

6    1969, as Instrument No. 188862, in Book 9177, at Page 873 of the

7    Official Records of Orange County, California ("Unit Agreement"),

8    the Ganong Trust is currently entitled to certain royalty payments

9    for the Trust's royalty interest each month from the Debtor.  A copy

10   of the Unit Agreement is attached hereto as Exhibit "A".   The

11   Debtor has failed to pay royalty payments to the Ganong Trust since

12   August of 2018.  In addition, since August of 2018, through the date

13   of this declaration, the Debtor has failed to provide Ganong Trust

14   the monthly production reports from which the amount of the royalty

15   payments could be determined.

16        5.    The Debtor's failure to pay the Redu royalty to the

17   owners or otherwise provide production data to them is a serious

18   matter.  The royalty percentage of oil that is being extracted from

19   the Redu Property (as well as the other leased property in this

20   case) is owned by the mineral estate landowners, here the Ganong

21   Trust, not the Debtor.  The royalty owner's interest in the oil

22   being produced on the Redu Property, or the proceeds therefrom, is

23   the property of the royalty owners, not an asset of this estate and

24   is not liable to pay the costs of this estate.

25        6.    Accordingly, it is appropriate to have the Redu royalty

26   portion from any sale of the royalty oil produced from the Redu

27   Property segregated into a separate account by the Chapter 11

28

1    Trustee until payment to the royalty owners.  This would be

2    appropriate for all royalty proceeds owed by this estate.   Buganko

3    and the Ganong Trust object to the payment of interim compensation

4    and expenses of the professionals of this estate on a monthly basis,

5    unless this provision is included in any order approving the Chapter

6    11 Trustee's motion.

7         I declare under penalty of perjury pursuant to the laws of the

8    United States of America that the foregoing is true and correct.

9    Executed this 30th day of November, at Bakersfield, California.

_____
Philip Ganong

Law Offices of
KAREN L. GRANT
924 Anacapa St. Ste 1M
Santa Barbara, CA 93101

EXHIBIT "A"

MAIL TO:

*Texaco Inc.*
*Land Dept.*
*3350 Wilshire Blvd.*
*Los Angeles, Ca. 90005*

#226863

RECORDED AT REQUEST OF
*Texaco Inc*
IN OFFICIAL RECORDS OF
ORANGE COUNTY, CALIF.

1235 M DEC 30 1969
J. WYLIE CARLYLE, County Recorder

## UNIT AGREEMENT

## RICHFIELD EAST DOME UNIT

## RICHFIELD OIL AND GAS FIELD

## ORANGE COUNTY, CALIFORNIA

$51.60

THIS AGREEMENT, entered into as of the 15th day of October, 1969, by the parties who have signed the original of this instrument, a counterpart thereof, or other instrument agreeing to be bound by the provisions hereof;

### W I T N E S S E T H:

WHEREAS, in the interest of the public welfare and to promote conservation and increase the ultimate recovery of oil, gas and associated minerals from the Richfield East Dome Unit, Richfield Oil and Gas Field, Orange County, State of California, and to protect the rights of the owners of interests therein, it is deemed necessary and desirable to enter into this agreement to unitize the Oil and Gas Rights in and to the Unitized Formation in order to conduct a secondary recovery, pressure maintenance, or other recovery program as herein provided;

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, it is agreed as follows:

### ARTICLE 1

### DEFINITIONS

As used in this agreement, the terms herein contained shall have the following meaning:

1.1 UNIT AREA means the lands described and

12/22/69

EXHIBIT A - 1

enumerated by Tracts in Exhibit A, and is shown on Exhibit B as to which this agreement becomes effective or to which it may be extended as herein provided.

1.2  UNITIZED FORMATION means the subsurface portion of the Unit Area lying between the top of the Chapman sands and the base of the Lower Kraemer sands, to wit:  the zones known as Chapman, Faulted Chapman, Breen, Kraemer and Lower Kraemer.  Said zones can be delineated by correlation of the Electric Logs of the following wells:

| Co. Lse. Well | Top Chapman MD | Top Breen MD | Top U Kraemer MD | Bottom U. Kraemer MD | Top L. Kraemer MD | Bottom L. Kraemer MD |
|---|---|---|---|---|---|---|
| Conoco | | | | | | |
| Pyne "B" #3 | 3186 | | 4100 | | | |
| Nicolai & Son | | | | | | |
| Hagan #1 | 3033 | | 4480 | | | |
| Getty | | | | | | |
| LaPaloma #1 | | | 4074 | | 4433 | |
| Vincente #1 | | | 4107 | | 4505 | 5070 |
| Texaco | | | | | | |
| Isaac #4 | 2805 | | 3980 | 4600 | 4645 | |
| Rich. Con. #16* | 2980 | | 4073 | | | |
| Standard | | | | | | |
| AUW 1 - #3 | | 3445 | 4007 | | | |
| AUW 1 - #6 | 2971 | | 4251 | | 4740 | |
| AUW 2 - #4 | 2707 | 3345 | | | | |
| AUW 2 - #6 | 2904 | 3513 | 4292 | | | |
| Ed. Comm. #1 | 2875 | | 4227 | | | |
| State Expl. - Sinclair | | | | | | |
| Stern Apalategui #1 | | | | | 4970 | |
| Union | | | | | | |
| Trust #1 | | | 3832 | 4339 | 4367 | |

EXCEPTING THEREFROM the formation lying between the base of the Upper Kraemer sands and the base of the Lower Kraemer sands lying outside of the Boundary of Unitized Lower Kraemer Zone as delineated on said Exhibit B and the Chapman sands underlying the Tracts designated 34, 35 and 36 on said Exhibit B.

*The Chapman Zone in this well lies south of the Vejar Fault

— 2 —

EXHIBIT A   8

and is known as "Faulted Chapman".

1.3  UNITIZED SUBSTANCES means all oil, gas, gaseous substances, sulphur contained in gas, condensate, distillate, and all associated and constituent liquid or liquefiable hydrocarbons within or produced from the Unitized Formation.

1.4  WORKING INTEREST means an interest in Unitized Substances by virtue of a lease, operating agreement, fee title, or otherwise, including a carried interest, which interest is chargeable with and obligated to pay or bear, either in cash or out of production or otherwise, all or a portion of the cost of drilling, developing, producing, and operating the Unitized Formation.

1.5  ROYALTY INTEREST means a right to or interest in any portion of the Unitized Substances or proceeds thereof other than a Working Interest.

1.6  ROYALTY OWNER means a party hereto who owns a Royalty Interest.

1.7  WORKING INTEREST OWNER means a party hereto who owns a Working Interest.  The owner of oil and gas rights that are free of lease or other instrument conveying the Working Interest to another shall be regarded as a Working Interest Owner to the extent of seven-eighths (7/8) of his interest in Unitized Substances, and as a Royalty Owner with respect to his remaining one-eighth (1/8) interest therein.

1.8  TRACT means each parcel of land described or enumerated as such and given a Tract number in Exhibit A and shown on Exhibit B.

1.9  UNIT OPERATING AGREEMENT means the agreement entitled "Unit Operating Agreement, Richfield East Dome Unit, Richfield Oil and Gas Field, Orange County, California", of the same effective date as the effective date of this agreement, and which is entered into by Working Interest Owners.

- 3 -

EXHIBIT A  9

1.10  UNIT OPERATOR means the Working Interest Owner designated by Working Interest Owners under the Unit Operating Agreement to develop and operate the Unitized Formation, acting as operator and not as a Working Interest Owner.

1.11  PRIMARY PERIOD means that period of time commencing with the effective date hereof and ending on the first day of the month following the date there has been produced from the Unitized Formation from and after January 1, 1965, a total of 4,701,900 barrels of crude oil.

1.12  SECONDARY PERIOD means the period commencing with the expiration of the Primary Period and ending with the termination of this agreement.

1.13  PRIMARY TRACT PARTICIPATION means the percentage, shown as Primary Tract Value on Exhibit A, for allocating Unitized Substances to a Tract during the Primary Period under this agreement.

1.14  SECONDARY TRACT PARTICIPATION means the percentage, shown as Secondary Tract Value on Exhibit A, for allocating Unitized Substances to a Tract during the Secondary Period under this agreement.

1.15  PRIMARY UNIT PARTICIPATION of each Working Interest Owner means the sum of the percentages obtained by multiplying the Working Interest of such Working Interest Owner in each Tract by the Primary Tract Participation of such Tract.

1.16  SECONDARY UNIT PARTICIPATION of each Working Interest Owner means the sum of the percentages obtained by multiplying the Working Interest of such Working Interest Owner in each Tract by the Secondary Tract Participation of such Tract.

1.17  OUTSIDE SUBSTANCES means all substances obtained from any source other than the Unitized Formation and which are injected into the Unitized Formation.

- 4 -

1.18  OIL AND GAS RIGHTS means the right to explore, develop, and operate lands within the Unit Area for the production of Unitized Substances, or to share in the production so obtained or the proceeds thereof.

1.19  UNIT OPERATIONS means all operations conducted by Working Interest Owners or Unit Operator pursuant to this agreement and the Unit Operating Agreement for or on account of the development and operation of the Unitized Formation for the production of Unitized Substances.

1.20  UNIT EQUIPMENT means all personal property, lease and well equipment, plants, and other facilities and equipment taken over or otherwise acquired for the joint account for use in Unit Operations.

1.21  UNIT EXPENSE means all cost, expense, or indebtedness incurred by Working Interest Owners or Unit Operator pursuant to this agreement and the Unit Operating Agreement for or on account of Unit Operations.

1.22  WET GAS means all well gas, field tank vapors and drips as produced and saved from the Unitized Formation.

1.23  Unless the context otherwise clearly indicates, words used in the singular include the plural, the plural include the singular, and the neuter gender include the masculine and the feminine.

ARTICLE 2

EXHIBITS

2.1  Exhibits.  Attached hereto are the following exhibits which are incorporated herein by reference:

2.1.1  Exhibits A and B, which are, respectively, a schedule that describes or enumerates each Tract in the Unit Area and shows its Primary Tract Participation and Secondary Tract Participation, each to become effective as herein provided and a map that shows such boundary and the Tracts therein.

- 5 -

2.1.2 Exhibit C, which is the "Approval and Determination" of the Oil and Gas Supervisor of the State of California.

2.2 Reference to Exhibits. When reference herein is made to an exhibit, such reference is to the exhibit as originally attached or, if revised, to the latest revision.

2.3 Exhibits considered Correct. An exhibit shall be considered to be correct until revised as herein provided.

2.4 Correcting Errors. The shapes and descriptions of the respective Tracts have been established by using the best information available. If it subsequently appears that any Tract, because of diverse royalty or working interest ownership on the effective date hereof, should be divided into more than one Tract, or that any mechanical miscalculation has been made, Unit Operator, with the approval of Working Interest Owners, may correct the mistake by revising the exhibits to conform to the facts. The revision shall not include any re-evaluation of engineering or geological interpretations used in determining Primary or Secondary Tract Participation. Each such revision of an exhibit shall be effective at 7:00 A.M. on the first day of the calendar month next following the filing for record of the revised exhibit or on such other date as may be determined by Working Interest Owners and set forth in the re-vised exhibit.

2.5 Filing Revised Exhibits. If an exhibit is re-vised pursuant to this agreement, Unit Operator shall certify and file the revised exhibit for record in the County in which this agreement is filed and shall send a copy of each such re-vised exhibit to each Working Interest Owner.

ARTICLE 3

CREATION AND EFFECT OF UNIT

3.1 Oil and Gas Rights Unitized. Subject to the

- 6 -

provisions of this agreement, all Oil and Gas Rights of Royalty Owners and all Oil and Gas Rights of Working Interest Owners in and to the Unitized Formation are hereby unitized so that operations may be conducted as if the Unitized Formation had been included in a single lease executed by all Royalty Owners, as Lessors, in favor of all Working Interest Owners, as Lessees, and as if the lease had been subject to all of the provisions of this agreement.

3.2 Personal Property Excepted. All lease and well equipment, materials, and other facilities heretofore or hereafter placed by any of the Working Interest Owners on the Unit Area shall be deemed to be and shall remain personal property belonging to and may be removed by the Working Interest Owners. The rights and interest therein as among Working Interest Owners are covered by the Unit Operating Agreement.

3.3 Amendment of Leases and Other Agreements. The provisions of the various leases, agreements, division and transfer orders, or other instruments covering the respective Tracts or the production therefrom are amended to the extent necessary to make them conform to the provisions of this agreement, but otherwise shall remain in effect.

3.4 Continuation of Leases and Term Royalties. Operations, including drilling operations, conducted with respect to the Unitized Formation on any part of the Unit Area, or production from any part of the Unitized Formation, except for the purpose of determining payments to Royalty Owners, shall be considered as operations upon or production from each Tract, and such operations or production shall continue in effect each lease or term royalty interest as to all lands covered thereby just as if such operations had been conducted and a well had been drilled on and was producing from each tract, and no

- 7 -

offset obligation shall accrue under any lease as a result of such operations or production. Each lease as described and identified in Exhibit A is hereby ratified as being in full force and effect and fully complied with and, if words of grant are necessary to recognize this fact, the same are hereby supplied.

3.5 **Title Unaffected by Unitization.** Nothing herein shall be construed to result in the transfer of title to the Oil and Gas Rights by any party hereto to any other party or to Unit Operator. The intention is to provide for the cooperative development and operation of the Tracts and for the sharing of Unitized Substances as herein provided.

3.6 **Injection Rights.** Royalty Owners hereby grant unto Working Interest Owners the right to inject into the Unitized Formation any substances in whatever amounts Working Interest Owners deem expedient for Unit Operations, including the right to drill and maintain injection and producing wells on the Unit Area and to use producing or abandoned oil or gas wells for such purposes, and to otherwise engage in such secondary recovery, pressure maintenance, or other recovery program as Working Interest Owners may determine appropriate to increase efficiently and economically the ultimate recovery of Unitized Substances.

3.7 **Easements and Rights of Way.** Each party subscribing, ratifying or consenting hereto, including Working Interest Owners and Royalty Owners and including both original and subsequent signatories hereto as to all Tracts within the Unit Area, does hereby, to the extent of any such interest, give and grant unto the Working Interest Owners for the term hereof all necessary and convenient easements and rights of way on, in and under the Unit Area and the subsurface thereof for the following purposes:

- 8 -

(a)  Surface easements and rights of way for roads, pipelines, telephone, telegraph and power lines, producing and injection well sites, pumping stations, water treatment plants and other equipment necessary or required for the purpose of carrying on operations hereunder together with the right of ingress and egress to, from and over the Unit Area for any or all of said purposes, and

(b) Subsurface easements and rights of way for flooding the Unitized Formation by injecting any substances into the Unitized Formation through any injection well on the Unit Area.

3.8  Development Obligation.  Nothing herein shall relieve Working Interest Owners from the obligation to develop reasonably as a whole the lands and leases committed hereto.

3.9  Border Agreements.  Unit Operator, after being authorized by Working Interest Owners, as provided in the Unit Operating Agreement, may enter into agreements with the Owners, Lessees, or Operators of property adjacent to the Unit Area as Working Interest Owners shall determine are necessary or desirable to provide for the injection of water, gas or other substances into the Unitized Formation in such manner as to minimize the migration of oil, gas or other hydrocarbon substances from the Unit Area to such adjacent property, or otherwise.

ARTICLE 4

PLAN OF OPERATIONS

4.1  Unit Operator.  Working Interest Owners are, as of the effective date of this agreement, entering into the Unit Operating Agreement, designating Texaco Inc. as Unit Operator.  Unit Operator shall have the exclusive right to conduct Unit Operations.  The operations shall conform to the provisions of this agreement and the Unit Operating Agreement.

- 9 -

If there is any conflict between such agreements, this agreement shall govern.

4.2 Operating Methods. To the end that the quantity of Unitized Substances ultimately recoverable may be increased and waste prevented, Working Interest Owners shall, with diligence and in accordance with good engineering and production practices, determine a program of Unit Operations, including such secondary recovery, pressure maintenance, or other recovery program, as Working Interest Owners may deem feasible, necessary or desirable to increase efficiently the ultimate economic recovery of Unitized Substances from the Unitized Formation.

4.3 Change of Operating Methods. Nothing herein shall prevent Working Interest Owners from discontinuing or changing in whole or in part any method of operation which, in their opinion, is no longer in accord with good engineering or production practices. Other methods of operation may be conducted or changes may be made by Working Interest Owners from time to time if determined by them to be feasible, necessary, or desirable to increase the ultimate recovery of Unitized Substances.

ARTICLE 5

TRACT PARTICIPATION

5.1 Tract Participation. The Primary Tract Participation and the Secondary Tract Participation of each Tract is shown in Exhibit A.

5.1.1 The Primary Tract Participation of each Tract is the ratio, expressed in percent, between the Primary Tract Participation of such Tract and the total Primary Tract Participations of all Tracts and shall remain in effect during the Primary Period.

5.1.2 The Secondary Tract Participation of

- 10 -

each Tract is the ratio, expressed in percent, between the
Secondary Tract Participation of such Tract and the total
Secondary Tract Participations of all Tracts and shall remain
in effect during the Secondary Period.  The Tract Participa-
tion assigned as Secondary Tract Participation in Exhibit A
shall be effective at 7:00 A.M. on the first day of the
calendar month following the day that the primary reserves
have been produced from the Unitized Formation.

5.2  Relative Tract Participations.  If the Unit
Area is enlarged or reduced, the revised Tract Participations
of the Tracts remaining in the Unit Area and which were with-
in the Unit Area prior to such enlargement or reduction shall
remain in the same ratio one to another.

ARTICLE 6

ALLOCATION OF UNITIZED SUBSTANCES

6.1  Allocation to Tracts.  All Unitized Substances
produced and saved shall be allocated to the several Tracts in
accordance with the respective Tract Participations effective
during the period that such Unitized Substances were produced.
The amount of Unitized Substances allocated to each Tract, re-
gardless of whether it is more or less than the actual produc-
tion of Unitized Substances from the well or wells, if any, on
such Tract, shall be deemed for all purposes to have been pro-
duced from such Tract.

6.2  Distribution Within Tracts.  The Unitized Sub-
stances allocated to each Tract shall be distributed among, or
accounted for to, the parties entitled to share in the produc-
tion from such Tract in the same manner, in the same propor-
tions, and upon the same condition as they would have partici-
pated and shared in the production from such Tract, or in the
proceeds thereof, had this agreement not been entered into,
and with the same legal effect.  If any Oil and Gas Rights in

- 11 -

a Tract hereafter become divided and owned in severalty as to
different parts of the Tract, the owners of the divided
interests, in the absence of an agreement providing for a
different division, shall share in the Unitized Substances
allocated to the Tract, or in the proceeds thereof, on a sur-
face acreage basis.

6.3  Taking Unitized Substances in Kind.  The
Unitized Substances allocated to each Tract shall be delivered
in kind to the respective parties entitled thereto by virtue
of the ownership of Oil and Gas Rights therein or by purchase
from such owners.  Such parties shall have the right to con-
struct, maintain and operate within the Unit Area all necessary
facilities for that purpose, provided they are so constructed,
maintained and operated as not to interfere with Unit Opera-
tions.  Any extra expenditures incurred by Unit Operator by
reason of the delivery in kind of any portion of the Unitized
Substances shall be borne by the receiving party.  If a Royalty
Owner has the right to take in kind a share of Unitized Sub-
stances, such share shall be delivered in kind to the Working
Interest Owner whose Working Interest is subject to such
Royalty Interest and such Working Interest Owner shall be res-
ponsible for delivering such share to such Royalty Owner.

6.4  Failure to Take in Kind.  To the extent any
party fails to take in kind or separately dispose of its share
of Unitized Substances currently as and when produced, Unit
Operator and/or Working Interest Owners shall have the right
(but not the obligation) for the time being and subject to re-
vocation at will by the party owning such share to purchase
for its or their own account or sell to others such share at
not less than the prevailing market price in the area; pro-
vided, however, that all such contracts of sale shall only be
for such reasonable periods of time as are consistent with the

- 12 -

minimum needs of the industry under the circumstances, but in no event shall such contract of sale be for a period exceeding one (1) year; provided, further, that no such contract of sale shall be affected by any subsequent revocation of the above granted authority, but each such contract of sale shall remain in effect until it terminates or expires pursuant to its terms and provisions. The net proceeds of the Unitized Substances so disposed of by Unit Operator and/or Working Interest Owners shall be paid to the party entitled thereto.

6.5 Responsibility for Royalty Settlements. Each Working Interest Owner shall be responsible for the payment of all royalties, overriding royalties, production payments or other payments chargeable against or payable out of Unitized Substances or the proceeds thereof, to which his Working Interest is subject and shall indemnify all other parties hereto against any liability for such payments.

6.6 Royalty on Outside Substances. If any Outside Substance is injected into the Unitized Formation, one hundred percent (100%) of any like substance contained in Unitized Substances subsequently produced and sold, or used for other than Unit Operations, shall be deemed to be the Outside Substance so injected until the total volume thereof equals the total volume of the Outside Substance so injected. No payments shall be due or payable to Royalty Onwers on Outside Substances.

6.7 Allocation of Royalty Owners Share of Taxes. If, by the terms of any lease or other agreement pertaining to a Tract, any Royalty Owner is required to pay, or any Working Interest Owner is entitled to deduct from any Royalty Owner's interest, a share of any tax, assessment or governmental charge; then, and in that event, such Royalty Owner's share of such tax, assessment or charge with respect to Unitized Substances underlying a Tract, or with respect to Unitized

- 13 -

Allows for payments of taxes out of R) excludes FII/pII

VI Owner responsible and indemnify all against payments

EXHIBIT A

Substances produced from such Tract, shall be deemed to be, and such Royalty Interest Owner shall pay or the Working Interest Owner may deduct from such Royalty Interest, as the case may be, a share of the total of all such taxes, assessments and charges pertaining to the entire Unitized Formation, and to the Unitized Substances produced therefrom which are apportioned to the Working Interest Owner with respect to such Tract under Article 9, Section 9.4, of the Unit Operating Agreement.

## ARTICLE 7

### PRODUCTION AS OF THE EFFECTIVE DATE

7.1  Oil in Lease Tanks.  Unit Operator shall gauge all lease and other tanks within the Unit Area to ascertain the amount of merchantable oil produced from the Unitized Formation in such tanks, above the pipeline connections, as of 7:00 A.M. on the effective date hereof.  All such oil shall remain the property of the parties entitled thereto the same as if the unit had not been formed.  Any such oil not promptly removed may be sold by the Unit Operator for the account of the parties entitled thereto, subject to the payment of all royalties, overriding royalties, production payments, and all other payments under the provisions of the applicable lease or other contracts.

## ARTICLE 8

### USE OR LOSS OF UNITIZED SUBSTANCES

8.1  Use of Unitized Substances.  Working Interest Owners may use as much of the Unitized Substances as they deem necessary for Unit Operations, including but not limited to the injection thereof into the Unitized Formation.

8.2  Royalty Payments.  No royalty, overriding royalty, production, or other payments shall be payable upon, or with respect to, Unitized Substances used or consumed in

- 14 -

*Allows for on-site fuel use*

Unit Operations, or which otherwise may be lost or consumed in the production, handling, treating, transportation, or storing of Unitized Substances.

## ARTICLE 9

## TRACTS TO BE INCLUDED IN UNIT

9.1 Qualification of Tracts. On and after the effective date hereof and until the enlargement or reduction thereof, the Unit Area shall be composed of the Tracts listed in Exhibit A that corner or have a common boundary (Tracts separated only by a public highway or a railroad right-of-way shall be considered to have a common boundary), and that otherwise qualify as follows:

9.1.1 Each Tract as to which Working Interest Owners owning one hundred percent (100%) of the Working Interest have become parties to this agreement and as to which Royalty Owners owning seventy percent (70%) or more of the Royalty Interest have become parties to this agreement.

9.1.2 Each Tract as to which Working Interest Owners owning one hundred percent (100%) of the Working Interest have become parties to this agreement, and as to which Royalty Owners owning less than seventy percent (70%) of the Royalty Interest have become parties to this agreement, and as to which (a) all Working Interest Owners in such Tract have joined in a request for the inclusion of such Tract in the Unit Area, and as to which (b) seventy-five percent (75%) of the combined voting interests of Working Interest Owners in all Tracts that meet the requirements of Section 9.1.1 have voted in favor of the inclusion of such Tract. For the purpose of this Section 9.1.2, the voting interest of a Working Interest Owner shall be equal to the ratio that its Secondary Unit Participation attributable to Tracts that qualify under Section 9.1.1 bears to the total Secondary Unit Participation of all

- 15 -

Working Interest Owners attributable to all Tracts that qualify
under Section 9.1.1.

9.1.3 Each Tract as to which Working Interest
Owners owning less than one hundred percent (100%) of the Work-
ing Interest have become parties to this agreement, regardless
of the percentage of Royalty Interest therein that is committed
hereto; and as to which (a) the Working Interest Owner who
operates the Tract and all of the other Working Interest Owners
in such Tract who have become parties to this agreement have
joined in a request for inclusion of such Tract in the Unit
Area, and have executed and delivered an indemnity agreement
indemnifying and agreeing to hold harmless the other Working
Interest Owners in the Unit Area, their successors and assigns,
against all claims and demands that may be made by the owners
of Working Interests in such Tract who are not parties to this
agreement, and which arise out of the inclusion of the Tract in
the Unit Area; and as to which (b) seventy-five percent (75%)
of the combined voting interests of Working Interest Owners in
all Tracts that meet the requirements of Sections 9.1.1 and 9.1.2
have voted in favor of the inclusion of such Tract and to
accept the indemnity agreement. For the purpose of this Sec-
tion 9.1.3, the voting interest of each Working Interest Owner
shall be equal to the ratio that its Secondary Unit Partici-
pation attributable to Tracts that qualify under Sections 9.1.1
and 9.1.2 bears to the total Secondary Unit Participation of
all Working Interest Owners attributable to all Tracts that
qualify under Sections 9.1.1 and 9.1.2. Upon the inclusion of
such a Tract in the Unit Area, the Primary Unit Participation
and Secondary Unit Participation that would have been attri-
buted to the nonsubscribing owners of the Working Interest in
such Tract, had they become parties to this agreement and the
Unit Operating Agreement, shall be attributed to the Working

- 16 -

Interest Owners in such Tract who have become parties to such
agreements, in proportion to their respective Working Interests
in the Tract.

9.2 Subsequent Commitment of Interest to Unit.
After the effective date of this agreement, the commitment of
any interest in any Tract within the Unit Area shall be upon
such terms as may be negotiated by Working Interest Owners and
the owner of such interest; provided, however, that in the
event any party hereto acquires an uncommitted interest in any
Tract which is included in the Unit Area, such interest will be
subject to this agreement when so acquired on the same terms
and conditions applicable to such Tract and, in the event such
acquired interest is a Working Interest, it shall also be
subject to the Unit Operating Agreement.

9.3 Revision of Exhibits. If any of the Tracts
described in Exhibit A fail to qualify for inclusion in the
Unit Area, Unit Operator shall recompute, using the original
basis of computation, the Tract Participation of each of the
qualifying Tracts, and shall revise Exhibits A and B accord-
ingly. The revised exhibits shall be effective as of the
effective date hereof.

ARTICLE 10

TITLES

10.1 Removal of Tract from Unit Area. If a Tract
ceases to have sufficient Working Interest Owners or Royalty
Owners committed to this agreement to meet the conditions of
Article 9 because of failure of title of any party hereto, such
Tract shall be removed from the Unit Area effective as of the
first day of the calendar month in which the failure of title is
finally determined; however, the Tract shall not be removed
from the Unit Area if, within ninety (90) days of the date
of final determination of the failure of title, the Tract

- 17 -

EXHIBIT A  23

1 requalifies under a Section of Article 9.

2      10.2 Revision of Exhibits. If a Tract is removed
3 from the Unit Area because of the failure of title, Unit
4 Operator, subject to Section 5.2, shall recompute the Tract
5 Participation of each of the Tracts remaining in the Unit Area
6 and shall revise Exhibits A and B accordingly. The revised
7 exhibits shall be effective as of the first day of the calendar
8 month in which such failure of title is finally determined.

9      10.3 Working Interest Titles. If title to a Work-
10 ing Interest fails, the rights and obligations of Working
11 Interest Owners by reason of the failure of title shall be
12 governed by the Unit Operating Agreement.

13      10.4 Royalty Owner Titles. If title to a Royalty
14 Interest fails, but the Tract to which it relates is not re-
15 moved from the Unit Area, the party whose title failed shall
16 not be entitled to share hereunder with respect to such
17 interest and such failure of title shall not apply retroactively
18 to affect its previously allocated share of Unitized Substances.

19      10.5 Production Where Title is in Dispute. If the
20 title or right of any party claiming the right to receive in
21 kind all or any portion of the Unitized Substances allocated to
22 a Tract is in dispute, Unit Operator at the discretion of Work-
23 ing Interest Owners shall either:

24      (a) require that the party to whom such
25 Unitized Substances are delivered or to whom the proceeds there-
26 of are paid, furnish security for the proper accounting therefor
27 to the rightful owner if the title or right of such party fails
28 in whole or in part, or

29      (b) withhold and market the portion of Unitized
30 Substances with respect to which title or right is in dispute,
31 and impound the proceeds thereof until such time as the title
32 or right thereto is established by a final judgment of a court

- 18 -

1 of competent jurisdiction or otherwise to the satisfaction of
2 Working Interest Owners, whereupon the proceeds so impounded
3 shall be paid to the party rightfully entitled thereto.

4       10.6 Payment of Taxes to Protect Title.  The
5 owners of (1) the surface rights to lands within the Unit Area,
6 (2)  the several mineral or Royalty Interests in the lands, and
7 (3) the improvements located on the lands not utilized for Unit
8 Operations, shall individually be responsible for the rendition
9 and assessment for ad valorem tax purposes of all such property,
10 and for the payment of such taxes, except as otherwise provided
11 in any contract or agreement between such owners and a Working
12 Interest Owner.  If any ad valorem taxes are not paid by such
13 owner responsible therefor when due, Unit Operator may, with
14 approval of Working Interest Owners, at any time prior to tax
15 sale, or expiration of period of redemption after tax sale, pay
16 the same, redeem such property, and discharge such tax liens as
17 may arise through non-payment.  Any such payment shall be treated
18 as an item of Unit Expense.  Unit Operator shall, if possible,
19 withhold from any proceeds derived from the sale of Unitized
20 Substances otherwise due to any delinquent taxpayer or taxpayers
21 an amount sufficient to defray the costs of such payment or
22 redemption, such withholding to be credited to the joint account.
23 Such withholding shall be without prejudice to any other remedy,
24 either at law or at equity, which may be available for exercise
25 by the Unit Operator or by the Working Interest Owners.

26               ARTICLE 11

27           EASEMENTS OR USE OF SURFACE

28       11.1 Use of Water.  Working Interest Owners shall
29 have the right to explore for, drill for, produce and extract
30 non-potable water from the Unit Area at depths exceeding five
31 hundred (500) feet from the surface thereof and the right to
32 inject the same into the Unitized Formation for the purpose

- 19 -

1  of pressure maintenance or secondary recovery of Unitized
2  Substances.

3       11.2  Surface Damages.  Working Interest Owners
4  shall pay the owner for damages to growing crops, fences,
5  improvements, and structures on the Unit Area that result
6  from Unit Operations.

7       11.3  Subsurface or Well Damage.  Royalty Owners
8  hereby release and forever discharge Working Interest Owners,
9  and each of them, of and from any and all claims or demands
10 of any kind or nature for loss, loss of revenue, or compensation
11 for:

12      (a)  damage, detriment or injury to any well
13 or wells, either by the conversion or attempted conversion
14 thereof from production wells to injection wells or water
15 source wells or otherwise; and

16      (b)  damage, detriment or injury to the Unitized
17 Formation or the productive capacity thereof; and

18      (c)  loss of recovery of oil, gas, or other
19 hydrocarbons by reason of Unit Operations, or the migration
20 thereof from the Unit Area to adjacent areas, or otherwise;
21 caused by, resulting from, or in any way connected with, Unit
22 Operations or the operating methods employed by Working Interest
23 Owners pursuant to this agreement and the Unit Operating Agree-
24 ment.

25      ARTICLE 12
26      ENLARGEMENTS OF UNIT AREA

27      12.1  Enlargements of Unit Area.  The Unit Area and/
28 or the Unitized Formation may be enlarged within twenty (20)
29 years from the date hereof to include acreage and/or subsurface
30 formations reasonably proved to be productive, upon such terms
31 as may be determined by Working Interest Owners, including but
32 not limited to, the following:

- 20 -

12.1.1 The acreage or inclusion of additional subsurface portions of the Unit Area shall qualify under a Section of Article 9.

12.1.2 The participation to be allocated to the acreage or additional subsurface portions of the Unit Area shall be reasonable, fair, and based on all available information utilizing the same general principles employed in the original equity determination.

12.1.3 There shall be no retroactive allocation or adjustment of Unit Expense or of interests in the Unitized Substances produced, or proceeds thereof; however, this limitation shall not prevent an adjustment of investment by reason of the enlargement.

12.2 Determination of Tract Participation. Unit Operator, subject to Section 5.2, shall determine the Primary Tract Participation and/or Secondary Tract Participation of each Tract within the Unit Area and/or Unitized Formation as enlarged, and shall revise Exhibits A and B and modify the definition of Unitized Formation, if required, accordingly.

12.3 Effective Date. The effective date of any enlargement of the Unit Area and/or the Unitized Formation shall be 7:00 A.M. on the first day of the calendar month following compliance with conditions for enlargement as specified by Working Interest Owners, approval of the enlargement by the appropriate governmental authority, if required, and the filing for record of revised Exhibits A and B and a modification of the definition of Unitized Substances, if required, in the records of the County in which this agreement is recorded.

ARTICLE 13

CHANGE OF TITLE

13.1 Covenant Running With the Land. This agreement

- 21 -

1  shall extend to, be binding upon, and inure to the benefit of,
2  the respective heirs, devisees, legal representatives, successors,
3  and assigns of the parties hereto, and shall constitute a
4  covenant running with the lands, leases, and interests covered
5  hereby.

6      13.2  Notice of Transfer.  Any conveyance of all or
7  any part of any interest owned by any party hereto with respect
8  to any Tract shall be made expressly subject to this agreement.
9  No change of title shall be binding on the Unit Operator, or
10 upon any party hereto other than the party so transferring,
11 until the first day of the calendar month next succeeding the
12 date of receipt by Unit Operator of a photocopy or a certified
13 copy of the recorded instrument evidencing such change in
14 ownership.

15     13.3  Waiver of Rights to Partition.  Each party
16 hereto covenants that, during the existence of this agreement,
17 it will not resort to a partition of the Unit Area or the Unit
18 Equipment, and to that extent waives the benefits of all laws
19 authorizing such partition.

20                    ARTICLE 14

21              RELATIONSHIP OF PARTIES

22     14.1  No Partnership.  It is not intended by this
23 agreement to create nor shall this agreement be construed as
24 creating any relationship between the parties hereto of master
25 and servant, or employer and employe, or to impose any part-
26 nership duty, obligation, or liability with regard to any one
27 or more of the parties hereto, or mining partnership, or
28 association or corporation between the parties hereto and the
29 liability of the parties hereto shall be several and not joint
30 or collective and each party hereto shall be responsible only
31 for its proportionate share of the costs, expenses, debts,
32 obligations and liabilities as provided in the Unit Operating

                        - 22 -

Agreement.  Each party hereto hereby agrees that this agreement
shall not constitute a partnership as defined in the Internal
Revenue Code and specifically elects to be excluded from the
application of Subchapter K of Chapter 1 of Subtitle A of the
Internal Revenue Code of 1954, pursuant to Section 761 thereof,
and this agreement shall not constitute a partnership as de-
fined in the Revenue and Taxation Code of the State of
California and specifically elects to be excluded from the
application of Division 2, Part 10, Chapter 10 of said Revenue
and Taxation Code, pursuant to Section 17921 (a) thereof.

14.2  No Sharing of Market.  This agreement is not
intended to provide, and shall not be construed to provide,
directly or indirectly, for any cooperative refining, joint
sale, or marketing of Unitized Substances.

14.3  Royalty Owners Free of Costs.  This agreement
is not intended to impose, and shall not be construed to impose,
upon any Royalty Owner any obligation to pay for Unit Expense
unless such Royalty Owner is otherwise so obligated.

14.4  Information to Royalty Owners.  Each Royalty
Owner shall be entitled to all information in possession of
Unit Operator to which such Royalty Owner is entitled by an
existing agreement with any Working Interest Owner.

ARTICLE 15

LAWS AND REGULATIONS

15.1  Laws and Regulations.  This agreement shall
be subject to the conservation laws of the State of California;
to the valid rules, regulations, and orders of the Oil and Gas
Supervisor of the State of California; and to all other appli-
cable federal, state, and municipal laws, rules, regulations,
and orders.

- 23 -

EXHIBIT A

ARTICLE 16

FORCE MAJEURE

16.1 Force Majeure. All obligations imposed by this agreement on each party, except for the payment of money, shall be suspended while compliance is prevented, in whole or in part, by a strike, fire, war, civil disturbance, act of God; by federal, state, or municipal laws; by any rule, regulation, or order of a governmental agency; by inability to secure materials; or by any other cause or causes beyond reasonable control of the party. No party shall be required against its will to adjust or settle any labor dispute. Neither this agreement nor any lease or other instrument subject hereto shall be terminated by reason of suspension of Unit Operations due to any one or more of the causes set forth in this Article.

ARTICLE 17

EFFECTIVE DATE

17.1 Effective Date. This agreement shall become binding upon each party as of the date such party signs the instrument by which it becomes a party hereto, and, unless sooner terminated as provided in Section 17.2, shall become effective as to qualified Tracts at the time and date as determined by the Working Interest Owners in all qualified Tracts, and set forth in a certificate filed for record by Unit Operator in Orange County, California. The certificate shall also recite the percentage of the Unit Area represented by the Tracts qualified under Article 9, the book and page in which a counterpart of this agreement has been recorded, and the case number and order number of approval by Government authority, if obtained. The certificate shall not be filed until after the following requirements have been met:

17.1.1 Tracts comprising seventy-five percent (75%) of the Secondary Tract Participations as shown on the

- 24 -

original Exhibit A have qualified under the provisions of Article 9.

17.1.2 At least one counterpart of this agreement has been filed for record by Unit Operator in Orange County, California.

17.1.3 This agreement has been approved by the Oil and Gas Supervisor of the State of California.

17.2 Ipso Facto Termination. If the requirements of Section 17.1 are not accomplished on or before January 1, 1971, this agreement shall ipso facto terminate on that date (hereinafter called "termination date") and thereafter be of no further effect, unless prior thereto Working Interest Owners owning a combined Secondary Tract Participation of at least fifty-five percent (55%) have become parties to this agreement and have decided to extend the termination date for a period not to exceed six (6) months. If the termination date is so extended and the requirements of Section 17.1 are not accomplished on or before the extended termination date, this agreement shall ipso facto terminate on the extended termination date and thereafter be of no further effect. For the purpose of this section, Secondary Tract Participation shall be as shown on the original Exhibit A.

ARTICLE 18

TERM

18.1 Term. The term of this agreement shall be for the time that Unitized Substances are produced in paying quantities and as long thereafter as Unit Operations are conducted without a cessation of more than ninety (90) consecutive days, unless sooner terminated by Working Interest Owners in the manner herein provided.

18.2 Termination by Working Interest Owners. This agreement may be terminated by Working Interest Owners having

- 25 -

a combined Secondary Tract Participation of at least ninety percent (90%), provided not less than five (5) Working Interest Owners join in such determination, whenever such Working Interest Owners determine that Unit Operations are no longer profitable or feasible. Such determination shall be evidenced by a Certificate of Termination filed for record by Unit Operator in Orange County, California.

18.3 Effect of Termination. Upon termination of this agreement, the further development and operation of the Unitized Formation as a unit shall be abandoned, Unit Operations shall cease, and thereafter the parties shall be governed by the provisions of the leases and other instruments affecting the separate Tracts.

18.4 Salvaging Equipment Upon Termination. If not otherwise granted by the leases or other instruments affecting each Tract unitized under this agreement, Royalty Owners hereby grant Working Interest Owners a period of six (6) months after the date of termination of this agreement within which to salvage and remove Unit Equipment. *Too long*

ARTICLE 19

EXECUTION

19.1 Original, Counterpart, or Other Instrument. A person may become a party to this agreement by signing the original of this instrument, a counterpart thereof, or other instrument agreeing to be bound by the provisions hereof. The signing of any such instrument shall have the same effect as if all the parties had signed the same instrument.

19.2 Joinder in Dual Capacity. Execution as herein provided by any party as wither a Working Interest Owner or a Royalty Owner shall commit all interests that may be owned or controlled by such party.

- 26 -

ARTICLE 20

GENERAL

20.1  Amendments Affecting Working Interest Owners.
Amendments hereto relating wholly to Working Interest Owners
may be made if signed by all Working Interest Owners.

20.2  Action by Working Interest Owners.  Any action
or approval required by Working Interest Owners hereunder shall
be in accordance with the provisions of the Unit Operating
Agreement.

20.3  Lien of Unit Operator.  Unit Operator shall
have a lien upon the interests of Working Interest Owners in
the Unit Area to the extent provided in the Unit Operating
Agreement.

20.4  Carved-Out Interests subject to this Agreement.
In the event any Working Interest Owner shall, after executing
this agreement, create an overriding royalty, production pay-
ment, net profits, or carried interest, or any other interest
subject to this agreement out of its Working Interest then sub-
ject to this agreement, such carved-out interest shall be sub-
ject to the terms and provisions of this agreement.

20.5  Prior Agreement Superseded and Cancelled.  The
Unit Agreement, Richfield East Dome Unit, Richfield Oil and Gas
Field, Orange County, California, dated May 1, 1969, and recorded
May 13, 1969, as Instrument No. 8332, in Book 8955, page 546,
of Official Records of Orange County, California, shall be, and
the same hereby is, superseded and cancelled by this agreement
and from and after the date hereof said Unit Agreement, Richfield
East Dome Unit, dated May 1, 1969, shall be null and void and
of no further force and effect.

IN WITNESS WHEREOF, the parties hereto have executed
this agreement on the dates opposite their respective signatures.

Date of Execution: DEC 11 1969

TEXACO Inc.

Address:  3350 Wilshire Blvd.

By T. R. Kunkel

Its Attorney in Fact

Los Angeles, CA 90005

Attest

Assistant Secretary

- 27 -

EXHIBIT A  33

STATE OF CALIFORNIA,

COUNTY OF LOS ANGELES } ss.

ON THIS _15th_ day of _December_, in the year 19 _69_

before me, _ROSE QUINT_, a Notary Public in and for

the said County and State, residing therein, duly commissioned and sworn, personally appeared

_T. L. Kunkel_

known to me to be the person who executed the within instrument on behalf of TEXACO Inc., a Delaware corporation,

the corporation therein named, and whose name is subscribed to the within instrument as the Attorney-in-Fact of said

corporation, and acknowledged to me that he subscribed the name of said corporation thereto as principal, and his

own name as Attorney-in-Fact, and acknowledged to me that such corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this

certificate first above written.

OFFICIAL SEAL
ROSE QUINT
NOTARY PUBLIC   CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY
My Commission Expires March 16, 1973

My Commission expires:

_Rose Quint_
Notary Public in and for said County and State
ROSE QUINT

EXHIBIT A   34

# UNIT AGREEMENT, RICHFIELD OIL & GAS FIELD

## RICHFIELD EAST DOME UNIT

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 1 | Francis | That portion of Lot 35 of Hazard's Subdivision, as shown on Amended Map of Richfield filed in Book 1, Page 26 of Record of Surveys, in the office of the County Recorder in the County of Orange, State of California, more particularly described as follows: <br><br> Beginning at a point 256.23 feet North of the Southeast corner of said Block 35, thence Northerly along the Easterly boundary line of said Block 35, 256.24 feet; thence Westerly parallel to the Southerly line of said Block 35, 850 feet; thence Southerly parallel to the Easterly boundary line of said Block 35, 256.24 to a point; thence Easterly 850 feet to the point of beginning. | 1 and 1A | |
| A | Lee | That portion of Block 35 of Hazard's Subdivision, as shown on amended Map of Richfield filed in Book 1, Page 26 of Record, of Surveys in the office of the County Recorder of Orange County, California, described as follows: <br><br> Beginning at the Southeast corner of said Block 35; thence Northerly along the East boundary of said Block 35, 256.23 feet; thence West 850 feet parallel to the Southerly boundary of said Block 35; thence Southerly 256.23 feet parallel to the Easterly boundary of said Block 35 to a point in the Southerly line of said Block 35; thence Easterly 850 feet along the South boundary of said Block 35 to beginning. | 2.72140 | 1.15895 |
| | Stern Realty | Block Forty-four of the Town of Richfield, as shown on a Map filed in Book 1, Page 26 of Record of Surveys in the office of the County Recorder of Orange County, California. <br><br> Excepting therefrom the Northerly 100 feet. <br><br> That portion of Lot Thirty-five of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows: <br><br> Beginning at the Southwest corner of Block Forty-four of the Town of Richfield, as shown on said Map; running thence South and parallel to the Easterly line of said Lot Thirty-five, 218.22 feet to the Northwest corner of the land conveyed by Stern Realty Company, a corporation, to B. F. Christner and others by deed recorded July 6th, 1919 in Book 340, page 331 of Deeds; thence Easterly, along the Northerly line of said land conveyed to B. F. Christner and others, 850 feet to a point in the Easterly line of said Lot Thirty-five; thence Northerly, along the Easterly line of said Lot Thirty-five, 218.22 feet to the Southeast corner of said Block | | |

Cont'd on next page......

EXHIBIT A 35

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | | |
|---|---|---|---|---|
| 2 | (Cont'd.) | Forty-four; thence Westerly, along the Southerly line of said Block Forty-four 850 feet to point of beginning. | | |
| 3 | Bradford Bros. Inc. | The Southerly 252.50 feet of the easterly 350.00 feet of the easterly 9.68 acres of Lot 34 of Hazard's Subdivision as per map recorded in Book 1, Page 26 of Licensed Surveyor's Map, records of Orange County. | ------- | .13655 |
| 4 | Stern Realty. | Lots 16, 17 and 18, Block 25 as shown on amended map of Richfield, filed in Book 1; page 26 of Licensed Surveyor's Maps, Records of Orange County, California. | .93811 | |
| | | Also, Lot 11, Block 26, as shown on said amended map of Richfield. | | |
| 5 | Stern Realty | Lots 17, 20, 21, 22, 23 & 25 in Block 22; Lot 17 in Block 21; Lots 27, 28, 29, 30, 31 & 32 in Block 24; Lots 1, 2, 3, 4 & 5 in Block 26; All as shown on Map of Town of Richfield, recorded in Book 3, page 61, Miscellaneous Records of Los Angeles County and also in Record of Survey in Book 1, Page 26, Records of Orange County, California. | ------- | .51129 |
| 5-1 | Jesson | Lot 11, Block 22, Town of Richfield as per Map recorded in Book 31, Page 61 of Miscellaneous Records of Los Angeles County, and Amended Map recorded in Book 1, page 26 of Licensed Surveyor's Maps, Records of Orange County, California. | 1.11320 | .04482 |
| 6 | Gatewood | Lot 24 of Block 22 as shown on an amended map of Richfield filed in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County, California. | .30910 | .02273 |
| 7 | Stern Realty | Lots 18 and 19 of Block 22 as shown on an Amended Map of Richfield filed in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County, California. | 1.01161 | .06012 |
| 8 | L. H. Sadd | Lot 16 in Block 21 of the Town of Richfield, as shown on a Map recorded in Book 31, page 61 of Miscellaneous Records of Los Angeles County, California, and also shown on the Amended Map of Richfield, filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California. | ------- | .04454 |
| 10 | Guarantee Royalties Inc. | Commencing at a point 130 feet South of the intersection of the centerlines of the Placentia Yorba Paved Road and Jefferson Street, as shown on amended map of Richfield filed in Book 1, page 26 of Licensed Surveyor's Maps records of Orange County; thence easterly along South line | | |

Page 2, EXHIBIT A

37

| TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|
| (Cont'd) | of Atchison, Topeka and Santa Fe Railway Company's 100 foot right of way 880.31 feet to an intersection with the East line of Lot 36 as shown on above mentioned map; thence South along lot line 141.03 feet to an intersection with the Northwesterly line of the Atchison, Topeka and Santa Fe Railway Company's 100 foot right of way; thence Southwesterly along the Northwesterly line of said Atchison, Topeka and Santa Fe Railway Company's 100 foot right of way to an intersection with the center line of Jefferson Street; thence North along the centerline of Jefferson Street to the point of beginning. | 2.78408 | 2.93640 |
| A.T.&S.F.R.R. | A strip of land 100 feet in width located partly in the Town of Richfield as shown on a Map recorded in Book 31, page 61 and following of Miscellaneous Records of Los Angeles County, California and partly in the Hazard subdivision of the Shanklin Tract, as shown on a Map recorded in Book 16, page 7 of Miscellaneous Records of Los Angeles County, California, as described in the deed from Richfield Land and Water Company to the Southern California Railway Company, dated May 11, 1893 and recorded August 11, 1893 in Book 81, page 346 of Deeds, the center line of strip of land being described as follows:<br><br>Commencing at the Eastern boundary of said Town of Richfield at a point 130.3 feet South of the North line of Elder Street as said Elder Street is shown on said Map recorded in Book 31, pages 61 and following of Miscellaneous Records of Los Angeles County, California; thence South 83° 52' West, 625.5 feet; thence Southwesterly on a 3° curve a distance of 2736.7 feet; thence on a tangent South 1046' West 1638.6 feet to a point in the North boundary of Section 5, Township 4 South, Range 9 West, S. B. B. & M., distant 534.5 feet West of the corner common to Sections 4 and 5 of said Township and Sections 32 and 33 of Township 3 South of said Range.<br><br>Accepting therefrom the portion thereof lying within the North 100 feet of Block 37 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California; also excepting therefrom the portion thereof lying within lots 42 and 43 of said Hazard's Subdivision.<br><br>ALSO: The North 100 feet of Blocks 36 and 37 of Hazard's Subdivision as shown on a Map filed in Book 1, page 26 of Record of Surveys and the North 100 feet of Block 44 of the Town of Richfield, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California. | .61820 | 3.62707 |
| Stern Realty | That portion of Lot 36 and that portion of the North half of the North half (N½N½) of Lot 41 of Hazard's subdivision as shown on Licensed Surveyor's Map filed in Book 1, page 26 of Record of Surveys in the office of the Recorder of Orange County, California, described as:<br><br>lying South and East of the Southeasterly line of the right of way conveyed to the Southern California Railway Company by deed recorded August 12, 1893 in Book 81, page 346 of Deeds. | 4.57817 | 2.18073 |

Page 3, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 13 | Stearn-Apaletequi | The South 1/2 of the North 1/2 of Lot 41 of Hazard's Subdivision as shown on an Amended Map of Richfield, filed in Book 1, page 26 of Licensed Surveyor's Maps in the Office of the County Recorder of Orange County, California. | .79978 | .21614 |
| 14 | Basin-Stern | The South half of the South half of Lot 37 and the North half of the North half of lot 40 of Hazard's Subdivision, as shown on an amended Map of Richfield filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California. | .97270 | .60864 |
| 15 | Ross-Schlacter | The north one half of the south one half and the south one half of the north one half of Lot 37 of Hazards subdivision as shown on the map filed in Book 1, page 26 of the licensed surveyor's maps, records of Orange County, California. | .16644 | 2.16960 |
| 16 | J. Mondotte | That portion of the North one half of Lot 37 of "Hazard's Subdivision," as per amended map of Richfield filed in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County, California, lying Southerly of the strip of land 100 feet wide, being the right of way of the Southern California Railway, as shown on said map and conveyed to said Railway Company by deed recorded in Book 81, page 346 of Deeds, records of Orange County, California.<br><br>Excepting therefrom the South one half of the North one half of said Lot. | .50148 | 1.48665 |
| 17 | Vincente | PARCEL 1:<br>All that portion of Lot 38 of Hazard's Subdivision, as shown on a Licensed Surveyor's Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 459.02 feet North of and North 89°52' East 170.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96.02 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96.02 feet to the point of beginning.<br><br>ALSO Beginning at a point 459.02 feet North of and North 89° 52' East 130.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96.02 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96.02 feet to the point of beginning.<br><br>ALSO beginning at a point 459.02 feet North of and North 89°52' East 90.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96.02 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96.02 feet to the point of beginning. | | |

Cont'd on next page......

Page 4, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 7 | (Cont'd.) | ALSO beginning at a point 459.02 feet North of the Southwest corner of said Lot 38; thence North 89°52' East 90.48 feet to a point; thence South 48.02 feet to a point; thence North 48.02 feet to the point of beginning. | | |
| | | ALSO beginning at a point 411 feet North of the Southwest corner of said Lot 38; thence North 89°52' East 90.48 feet to a point; thence South 48 feet to a point; thence North 48 feet to the point of beginning. | | |
| | | ALSO beginning at a point 363 feet North of the Southwest corner of said Lot 38; thence North 89°52' East, 90.48 feet to a point; thence South 48 feet to a point; thence North 48 feet to the point of beginning. | | |
| | | ALSO beginning at a point 315 feet North of and 50.48 feet East of the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 48 feet to a point; thence North 48 feet to the point of beginning. | | |
| | | ALSO beginning at a point 315 feet North of the Southwest corner of said Lot 38; thence North 89°52' East 50.48 feet to a point; thence South 48 feet to a point; thence North 48 feet to the point of beginning. | | |
| | | ALSO beginning at a point 363 feet North of and North 89°52' East 90.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence North 96 feet to the point of beginning. | | |
| | | ALSO beginning at a point 217 feet North of and North 89°52' East 130.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence North 96 feet to the point of beginning. | | |
| | | ALSO beginning at a point 217 feet North of and North 89°52' East 90.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence North 96 feet to the point of beginning. | | |
| | | ALSO beginning at a point 217 feet North of the Southwest corner of said Lot 38; thence North 89°52' East 90.48 feet to a point; thence South 96 feet to a point; thence North 96 feet to the point of beginning. | | |
| | | ALSO beginning at a point 169 feet North of the Southwest corner of said Lot 38; thence North 89°52' East 90.48 feet to a point; thence South 48 feet to a point; thence North 48 feet to the point of beginning. | | |
| | | ALSO beginning at a point 169 feet North of the Southwest corner of said Lot 38; thence North 89°52' East 90.48 feet to a point; thence South 48 feet to a point; thence North 48 feet to the point of beginning. | | |

Page 5, EXHIBIT A

Cont'd on next page......

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 17 | (Cont'd.) | | | |

ALSO beginning at a point 73 feet North of the Southwest corner of said Lot 38; thence North 89°52' East 90.48 feet to a point; thence South 48 feet to a point; thence North 90.48 feet to a point; thence North 48 feet to the point of beginning.

ALSO beginning at a point 121 feet North of and North 89°52' East 90.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point, thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning.

PARCEL 2:

All that portion of Lot 38 of Hazard's Subdivision, as shown on a Licensed Surveyor's Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:

Beginning at a point 459.02 feet North of and North 89°52' East 210.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 120 feet to a point; thence South 96.02 feet to a point; thence South 89°52' West 120 feet to a point; thence North 96.02 feet to the point of beginning.

ALSO beginning at a point 363 feet North of and North 89°52' East, 210.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West, 40 feet to a point; thence North 96 feet to the point of beginning.

ALSO beginning at a point 363 feet North of and North 89°52' East, 290.48 feet from the Southwest corner of Lot 38; thence North 89°52' East 80 feet to a point; thence South 96 feet to a point; thence South 89°52' West 80 feet to a point; thence North 96 feet to the point of beginning.

ALSO beginning at a point 363 feet North of and North 89°52' East 250.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning.

ALSO beginning at a point 363 feet north of and North 89°52' East 370.48 feet from the Southwest corner of Lot 38; thence North 89° 52' East 80 feet to a point; thence South 96 feet to a point; thence South 89°52' West 80 feet to a point; thence North 96 feet to the point of beginning.

ALSO beginning at a point 363 feet North of and North 89°52' East 130.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East, 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West, 40 feet to a point thence North 96 feet to the point of beginning.

Cont'd on next page......

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 17 | (Cont'd.) | ALSO beginning at a point 363 feet North of and North 89°52' East 170.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning. | | |
| | | PARCEL 3: | | |
| | | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the recorder of Orange County, California, described as follows: | | |
| | | Beginning at a point 459.02 feet North of and North 89°52' East 330.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East, 200 feet; thence South 96.02 feet; thence South 89°52' West, 200 feet; thence North 96.02 feet to the point of beginning. | .99864 | .53048 |
| 19 | A.T.&S.F.R.R. | Lots 12 to 16 inclusive in Block 22; Lots 1 to 10 inclusive, 16 to 27, inclusive, and 42 to 51, inclusive, in Block 23 of the Townsite of Richfield, as per map thereof recorded June 15, 1888, in Book 31, Pages 61 to 66, miscellaneous records of Los Angeles County, except such portions of the above described land as is included within the railway right of way of the Atchison, Topeka and Santa Fe Railway Company. | 1.29477 | .98811 |
| L9A | E. W. Pyne | Lots 40 and 41, Block 23 in the Townsite of Richfield, as per map recorded in Book 31 at page 61, miscellaneous Records recorded in Book 1 at page 26, Records of Orange County, California. | .36314 | .09022 |
| 10 | A.T.&S.F.R.R. | All those portions of Blocks 22, 23, 25 and 27 of the Town of Richfield, as per Map thereof recorded in Book 31, pages 61 to 66, inclusive, Miscellaneous Records of Los Angeles County, California, lying within strips of land, 50 feet in width, said strips being parallel and/or concentric with and distant twenty-five (25) feet measured at right angles and/or radially from and on each side of the center-lines of the Atchison, Topeka and Santa Fe Railway Company's wye tracks, identified as Track No. 5 and Track No. 11 in the Records of said Railway Company. | | |
| | | All that portion of Block 24, as shown on said Map of Town of Richfield lying between a line that is parallel and/or concentric with and distant Easterly 25 feet measured at right angles and/or radially from said centerline of Track No. 11 and a line that is parallel and/or concentric with and distant Westerly 25 feet measured at right angles and/or radially from said centerline of Tract No. 5. | | |
| | | All that portion of Lots 12 and 13, Block 26, as shown on said Map of Town of Richfield which lies Westerly of a line that is parallel with and distant Easterly 25 feet measured at right angles from said center line of Tract No. 11. | ------- | .54680 |

EXHIBIT A

41

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 21 | Mosley | Lots Eleven (11), Twelve (12), Thirteen (13), Fourteen (14) and Fifteen (15), Block 23, Richfield Townsite, as per map recorded in Book 31, page 61 of Miscellaneous Records of Los Angeles County, California. | 1.39853 | .1395 |
| 22 | J. W. Stout | Lots 28 to 32, inclusive, of Block 23, Townsite of Richfield, as shown on map recorded in Book 31 at Page 61, Miscellaneous Records of Los Angeles County, and in records of Survey, Book 1 at Page 26, Records of Orange County, California. | ------- | .2018 |
| 23 | Mullen | Lots 33, 34, 35, 36, 37, 38 in Block 23 of "the Town of Richfield", as shown on a map recorded in Book 31, page 61 et seq of Misc. Records of Los Angeles County, California and also as shown on amended map of Richfield filed in Book 1, page 26 of Licensed Surveyor's Maps, Records of Orange County, California. | ------- | .1966 |
| 24 | J. H. Wents | Lot 10 in Block 24, of the Town of Richfield, as per Map recorded in Book 31, page 61 and following, of Miscellaneous Records of Los Angeles County, California, and also shown on an amended map of Richfield filed in Book 1, page 26 of Record of Surveys, Orange County, California. | .31075 | .05144 |
| 25 | H. M. Bergen et al | Lot 39 in Block 23, of the Town of Richfield, as per Map recorded in Book 31, page 61 and following, of Miscellaneous Records of Los Angeles County, California, and also shown on an amended map of Richfield filed in Book 1, page 26 of Record of Surveys, Orange County, California. | .25558 | .0613 |
| 26 | J. W. Stout | Lots 1, 2, 3, 4, 5 and 6, Block 37 and Lots 14, 15, 16, 17, 18, and 19, Block 24, Richfield, shown on amended map of Richfield filed in Book 1, at page 26 of Licensed Surveyor's Map, Records of Orange County. | ------- | .68359 |
| 27 | Superior Fee | Lots 1 to 5 inclusive in Block Twenty-four (24) of the Town of Richfield, as shown on a Map recorded in Book 31, pages 61, et seq. of Miscellaneous Records of Los Angeles County, and also shown on the amended map of Richfield, filed for record in Book 1, page 26 of Licensed Surveyor's Maps, Records of Orange County, California. | 1.40069 | .18542 |
| 28 | C.W.O.D. | Those certain lots and portions of Lots in the Town of Richfield, County of Orange, State of California, portions of a line parallel with and 25 feet Easterly from the center line of the main track of the Olinda Branch of the Atchison, Topeka and Santa Fe Railway Company; those portions of Lots 6, 7, 25 and 26 of said Block 24 lying Westerly of a line 25 feet Westerly from and parallel with the center line of said Railway Company's wye track of said Olinda Branch; | | |

Lot 23 and those portions of Lots 9 and 24 in Block 24 and those portions of Lots 10 and 11 in Block 25 lying Easterly of a line parallel with and 25 feet Easterly from the center line of the main track of the Olinda Branch of the Atchison, Topeka and Santa Fe Railway Company, particularly described as follows:

Cont'd on next page.....

Page 8, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY PARTICIPATION |
|---|---|---|---|---|
| 28 (Cont'd.) | | Lot 8 and those portions of Lots 9, 10, 22, and 23 of Block 25 lying Westerly of a line parallel with and 25 feet Westerly from said center line of main track. | ------- | .2811 |
| 29 | Etchandy | Lots 1 to 16 inclusive and Lots 18 to 27 inclusive in Block 21. Lots 1 to 11 inclusive and Lots 26 to 32 inclusive in Block 22. Lots 1 to 7 inclusive and 24 to 32 inclusive in Block 25. Lots 7 to 16 inclusive, in Block 20, as shown on an Amended Map filed for record in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County, California. | .84517 | 1.0583 |
| 30 | Pedco | Lots 12, 13 and 14 in Block 27 except from said Block 27 that portion lying within the 50 foot right of way of the Atchison, Topeka and Santa Fe Railway Company; Lot 20 and those portions of Lots 21 and 22 in Block 25, lying Easterly of said right of way, all in the Town of Richfield, County of Orange, State of California, as per map thereof recorded June 15, 1888, in Book 31, pages 61 to 66 of Miscellaneous Records of Los Angeles County. | .62253 | .1398 |
| 30A | A.T.&S.F.R.R. | Lots 12 and 13, Block 25, RICHFIELD TRACT, as per map filed in Book 3, pages 15, 16 and 17 of Maps, records of Los Angeles County. | ------- | .0769 |
| 32 | Mullen | Lots 1 to 6 inclusive in Block 35; Lots 1 to 6 inclusive in Block 36; Lots 14, 15 and 19 in Block 25; Lots 9, 10 and "the Easterly part" of Lots 12 and 13 in Block 26; all in the Town of Richfield, as shown on a Map recorded in Book 31, page 61 of Miscellaneous Records of Los Angeles County, California, and also shown on the amended Map of Richfield filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California. | 2.16804 | .9197 |
| 34 | Richfield Lease | PARCEL 1: Lots 6, 7, 8 and 14 in Block 26, Lots 1 to 6 inclusive in Block 33, and Lots 1 to 4 inclusive in Block 34, of Richfield, as per map thereof recorded in Book 31, at pages 61 to 66 inclusive, of Miscellaneous Records, of Los Angeles County, California.<br><br>PARCEL 2: That portion of Lot 21 of Hazzard's Subdivision, as per map thereof recorded in Book 1, at page 26 of Record of Surveys, in the office of the County Recorder of said Orange County, lying within Lots 1 to 15 inclusive, and Lots 21 to 29 inclusive in Block 31 of Richfield, as per map thereof recorded in Book 31, at pages 61 to 66 inclusive, of Miscellaneous Records of Los Angeles County, California.<br><br>PARCEL 3: Beginning at the Northwest corner of Lot 1 in Block 34, of Richfield, as per map thereof recorded in Book 31, at pages 61 to 66 inclusive of Miscellaneous Records of Los Angeles County, California, and running thence Northeasterly to the Southwest corner of Lot 1, in Block 33 of said Richfield; thence Easterly along the South line of said Lot 1 in Block 33, 184.63 feet to the Southeast corner of said Lot 1 in Block 33; thence South at right angles to said South line 30 feet to the center line of Orange Street (vacated) thence West along said center line to the Northerly extension of the East line of said Lot 1 in Block 34; thence South along said Northerly extension 30 feet to the Northeast corner of said Lot 1 in Block 34, 150 feet to the point of beginning. | | |

Cont'd on next page......

Page 9. EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY T PARTICIPAT |
|---|---|---|---|---|
| 34 | (Cont'd.) | PARCEL 4: Beginning at the Northwest corner of Lot 6 in Block 33 of Richfield, as per map thereof recorded in Book 31, at pages 61 to 66 of Miscellaneous Records of Los Angeles County, California; and running thence Northeasterly to the Southwest corner of Lot 1 in Block 31 of said Richfield; thence Easterly along the South line of said Lot 1, 184.63 feet to the Southeast corner of said Lot 1; thence South, at right angles to said South Line, 25 feet; to the center line of Pine Street (vacated) thence West, along said center line, to a line extending North from the Northeast corner of said Lot 6 at right angles with the North line of said Lot 6; thence South 25 feet to the Northeast corner of said Lot 6; thence West along the North line of said Lot 6, 184.63 feet to the point of beginning. | | .2884 |
| 35 | Thompson-Goodwin | All that part of Block 21, lying on the Easterly side of the Santa Fe Railroad, excepting therefrom Lots 21 to 29, inclusive, and Lots 1 to 15, inclusive, of Block 31, of the Town of Richfield all in Hazard's Subdivision, as recorded in Book 1, page 26, Licensed Surveyor's Maps, Records of Orange County, California. | .37179 | .0475 |
| 36 | Hugo | Lot "A" of Tract No. 80, as shown on a map recorded in Book 10, page 30 of Miscellaneous Maps, Records of Orange County, California. | ------- .39989 | .7269 |
| 37 37A 37B | Pyne Pyne | Lot "B" of Tract No. 80, as shown on map recorded in Book 10, Page 30, Miscellaneous Maps, Records of Orange County; also Lots 7, 8 and 9 in Block 37 of Richfield, as shown on map recorded in Book 31, Pages 61 et seq. of Miscellaneous Records of Los Angeles County, and also shown on amended map of Richfield filed in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County. | .66144 5.30662 | .63194 4.88155 |
| 38 | Richfield Community | Lots 1 to 11, inclusive, and Lots 24 to 33 inclusive, of Tract #67 as shown on a map recorded in Book 10, Page 9, of Miscellaneous Records of Orange County, California, and Lots 1 to 9, inclusive, in Block 38 of Richfield, as shown on a map recorded in Book 31, page 61, et seq. of Miscellaneous Records of Los Angeles County, California, and also shown on the amended map of Richfield filed in Book 1, Page 26 of Licensed Surveyors' Maps, Records of Orange County, California. | .63766 | 1.04846 |
| 39 | Richfield Community | Lots 34 to 56 inclusive, of Tract No. 67, as per map recorded in Miscellaneous Map Book 10, at page 9, of the Official Records of Orange County, California. | .83868 | .78628 |
| 40 | Navarro | Lots 25, 26, 27, 28 and 29 in Block 39 of the Town of Richfield as shown on the Amended Map of original filed in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County. | .40637 | .39031 |
| 41 | United California Bank | All of Lot 30 and the North 50 feet of Lot 31 in Block 39 of "Town of Richfield" as shown on a Licensed Survey's Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California. | 1.16075 | .13311 |

Page 10, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 42 | Pullen | Lots 20, 21 and 22 in Block Twenty-four (24) of Richfield, as per map thereof recorded in Book 31, at pages 61 et seq, of Miscellaneous Records of Los Angeles County, California, and also shown on the amended map of Richfield filed in Book 1 at page 26, of Licensed Surveyors Map records of Orange County. | -------- | .1263 |
| 42A | Stern et al | Lots 11, 12 and 13 in Block Twenty-four (24) of Richfield, as per map thereof recorded in Book 31, at pages 61 et seq, of Miscellaneous Records of Los Angeles County, California, and also shown on the amended map of Richfield filed in Book 1 at page 26, of Licensed Surveyors Map records of said Orange County. | -------- | .1421 |
| 43 U 43L | Lypps De Vries | Lots number 22 and 23 of Tract 67 as per map thereof recorded in Book 10 at page 9 of Miscellaneous Records of the County Recorder's Office of Orange County, California. | 43U .33504 43L .17292 | .0434 .1947 |
| 44 | J: W. Stout | Lots 12 to 21 inclusive, Tract No. 67 as per map recorded in Miscellaneous Records, Book 10 at page 9, Official Records of Orange County, California. | -------- | .3374 |
| 46 | Zuckerman | Lots 1, 2, 4 and that portion of Lot 5 lying north of south-easterly extension of the southerly line of said Lot 2, all in Block A or Tract No. 144, Richfield Garden Plat, being a resubdivision of Lot 38, Hazards Subdivision shown on a map thereof recorded in Book 1, page 26, Record of Surveys, Orange County, California – the map of Tract No. 144 being recorded in Book 12, page 3 of Miscellaneous Maps, Records of Orange County, California. | .62685 | .1367 |
| 47 | Winnam | Lot 3 except the Easterly 4 feet; Lots 6 through 12, inclusive; Lot 14, Lot 16, Lot 18 through 37, inclusive; Lots 56 through 61, inclusive of Block A; Lots 1 through 6, inclusive; the West one half of Lot 7; Lots 11 through 18, inclusive; Lots 26 through 31, inclusive of Block B; all in Tract No. 144 according to map of Richfield Garden Tract, being a resubdivision of Lot 48, Hazard's Subdivision, as shown on map thereof recorded in Book 1, page 26, Record of Surveys, Orange County, said Map of Tract No. 144 being recorded in Book 12, page 3 of Miscellaneous Maps, records of Orange County; ALSO that 25 foot street known as Lincoln Street, vacated, as shown on said Map recorded in Book 12, page 3, Miscellaneous Maps, records of Orange County. | | |
| 47A | R. L. Arias | The Easterly 4 feet of Lot 3 and that portion of Lot 5 lying Southerly of the Easterly extension of the Northerly line of Lot 3, all in Tract No. 144, Richfield Garden Plat, as shown on a map recorded in Book 12, page 3, Miscellaneous Maps, records of Orange County, California. | 1.14995 | 1.04004 |
| 47B | R. Scott et al | Lots 13, 15 and 17 in Block "A" of Tract No. 144, as shown on a Map recorded in Book 12, page 3 of Miscellaneous Maps, records of Orange County, California. | -------- | .0110 |
| | | | | .05067 |

Page 11, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 47C | Hathaway Company | Lots 38, 40, 42 and 44 in Block A of Tract No. 144, Richfield Garden Plat, as shown on a Map recorded in Book 12, page 3 of Miscellaneous Maps, records of Orange County, California. | ------- | .0685 |
| 47D | R. E. Gatewood | Lots 39, 41, 43 and 45 in Block A of Tract 144, Richfield Garden Plat, as shown on a Map recorded in Book 13, page 3 of Miscellaneous Maps, records of Orange County, California. | ------- | .0622 |
| 48 | H.H.O. | Lots 46, 47, 48, 49, 50, 51, 52, 53, 54 and 55 of Block A, Tract No. 144, Richfield Garden Plat as shown on map recorded in Book 12, page 3 of Miscellaneous Maps, Records of Orange County, California. | .16428 | .1563 |
| 49 | Krause | That portion of Lot Thirty-eight (38) of "Hazard's Subdivision", as shown on a Map filed in Book 1, page 26 of Licensed Surveyor's Maps, in the office of the County Recorder of Orange County, California, lying within a radius of 100 feet from an oil well known as Continental Oil Company Well No. "Krause" 1, said oil well being located approximately 305 feet East of the center line of Van Buren Street, and approximately 30.42 feet South of the Southerly line of Block "B" of Tract No. 144, as shown on a Map of the Richfield Garden Plat, recorded in Book 12, page 3 of Miscellaneous Maps, records of Orange County, California . | .36746 | .1339 |
| 49A | D. J. Griffith | Lots 9 and 10, in Block "B", of Tract No. 144, Richfield Garden Plat, as shown on the Map recorded in Book 12, page 3 of Miscellaneous Maps, records of Orange County, California. | ------- | .0467 |
| 49B | R. E. Singer | Lot 20 in Blk. "B" of Tract No. 144, Richfield Garden Plat, as shown on a map recorded in Book 12, page 3 of Miscellaneous Maps, Records of Orange County, California. | ------- | .0180 |
| 49C | J. S. Boller | Lot 8 and the East half of Lot 7 in Block B of Tract No. 144, Richfield Garden Plat, as shown on a Map recorded in Book 12, page 3 of Miscellaneous Maps, Records of Orange County, California. | ------- | .0235 |
| 19D | J. S. Zuckerman | Lot 19 in Block "B" of Tract No. 144, Richfield Garden Plat, as shown on a Map recorded in Book 12, page 3 of Miscellaneous Maps, Records of Orange County, California. | ------- | .0159 |
| 49E | P. H. Mirelez | Lots 21 to 25 inclusive, in Block B, Tract No. 144, as per Map recorded in Book 12, page 3, Miscellaneous Maps, records of said Orange County. | ------- | .0731 |
| 50 | Industrial Royalties Co. | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point on the East line of said Lot 38, South 82°25' East 25.25 feet from the Southeast corner of Lot 31 in Block B of Tract No. 144, as shown on map of the Richfield Garden Plat, recorded in Book 12, page 3 of Miscellaneous Maps, records of Orange County, California; thence from said point of beginning South 0°32' East 85.50 feet to a point in the South line of the North half of that portion of said Lot 38 of Hazard's Subdivision, lying South of the | | |

Cont'd on next page.....

Page 12, EXHIBIT A

EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 50 (Cont'd.) | | Southerly line of the right of way of the Southern California Railway as shown on said map of Hazard's Subdivision; thence West along a line parallel with the South line of said Lot 38, 879.95 feet to a point in the center line of Van Buren Street; thence North 0°32' West 211.25 feet to the intersection of the Westerly extension of the Southerly line of Block B of said Tract No. 144; thence South 82°25' East 889.75 feet to the point of beginning. <br><br>Excepting therefrom, to the extent applicable, an area with the Continental Oil Company Well Krause No. 1 as the center and bounded by a circumference with a radius of 100 feet from the Krause No. 1 Well and the rights in connection therewith as reserved by Continental Oil Company in Quitclaim Deed dated November 30, 1929, recorded August 7, 1953, in Book 626, page 87 of said Official Records and Partial Surrender of Oil and Gas Lease dated September 21, 1949, recorded October 5, 1949, in Book 1912, page 135 of said Official Records. | | |
| 51-1 | P. Solomon | All that portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26, of Licensed Surveyor's Maps, records of Orange County, California, described as follows: <br><br>Beginning at a point 459.02 feet North of and North 89°52' East 797.98 feet from the Southwest corner of said Lot 38; thence North 89°52' East 27.50 feet; thence South 96.02 feet; thence South 89°52' West 27.50 feet; thence North 96.02 feet to the point of beginning. <br><br>ALSO beginning at a point 459.02 feet North of and North 89°52' East 770.48 from the Southwest corner of said Lot 38; thence North 89°52' East 27.50 feet to a point; thence South 96.02 feet to a point; thence South 89°52' West 27.50 feet; thence North 96.02 feet to the point of beginning. | .70899 | .63845 |
| 51-2 | P. A. Walworth | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26, Records of Survey, in the office of the County Recorder of Orange County, California, described as follows: <br><br>Beginning at a point 450.02 feet North of and North 89°52' East 730.48 feet from the Southwest corner of said Lot 38, thence North 89°52' East 40 feet; thence South 96.02 feet; thence South 89°52' West 40 feet; thence North 96.02 feet to the point of beginning. | ---------- | .09361 |
| 51-3 | J. P. Martinez | Those portions of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows: <br><br>Parcel 1. Beginning at a point 459.02 feet North of and North 89°52' East 690.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96.02 feet; thence South 89°52' West 40 feet; thence North 96.02 feet to the point of beginning. | Included in 51-1 | |

Page 13, EXHIBIT A

Cont'd on next page......

EXHIBIT A

47

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY T PARTICIPAT |
|---|---|---|---|---|
| 51-3 | (Cont'd.) | Parcel 2. Beginning at a point 363 feet North of and North 89°52' East 690.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 51-1 |
| 51-4 | E. C. Savala | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Records of Survey in the office of the Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 459.02 feet North of and North 89°52' East 650.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence, North 89°52' East 40 feet; thence, South 96.02 feet; thence, South 89°52' West 40 feet; thence North 96.02 feet to the point of beginning. | | Included in 51-1 |
| 51-5 | J. G. Joseph | All that portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26, Records of Survey, office of the Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 459.02 feet North of and North 89°52' East 610.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet; thence South 96.02 feet; thence South 89°52' West 40 feet; thence North 96.02 feet to the point of beginning. | | Included in 51-1 |
| 51-6 | T. R. Mirelez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 459.02 feet North of and North 89°52' East 570.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96.02 feet; thence South 89°52' West 40 feet; thence North 96.02 feet to the point of beginning.<br><br>ALSO beginning at a point 459.02 feet North of and North 89°52' East 530.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96.02 feet; thence South 89°52' West 40 feet; thence North 96.02 feet to the point of beginning. | | Included in 51-1 |
| 51-7 | S. Porras | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 363 feet North of and North 89°52' East 450.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 51-1 |

Page 14, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 51-8 | T. R. Mirelez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 363 feet North of and North 89°52' East 490.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 51-1 |
| 51-9 | A. C. Hernandez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 363 feet North of and North 89°52' East 530.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning. | | Included in 51-1 |
| 51-10 | Bank of America | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Records of Survey, records of Orange County, California, described as follows:<br><br>Beginning at a point 363 feet North and North 89°52' East 570.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence, North 89°52' East 40 feet to a point, thence, South 96 feet to a point; thence, South 89°52' West 40 feet to a point; thence, North 96 feet to the point of beginning. | | Included in 51-1 |
| 51-11 | A. Moreno | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Records of Survey in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 363 feet North of and North 89°52' East 610.48 feet from the Southwest cprner of said Lot 38 of Hazard's Subdivision; thence, North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 51-1 |
| 51-12 | F. J. Yslas | That portion of Lot 38 of Hazard's Subdivision as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 363 feet North and North 89°52' East 650.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to the point of beginning. | | Included in 51-1 |

Page 15, EXHIBIT A

EXHIBIT A

49

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 51-14 | E. Podleck | All that portion of Lot 38 of Hazard's Subdivision as shown on a Licensed Surveyors' Map filed in Book 1, page 26 of Records of Surveys in the Office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 363 feet North of and North 89°52' East 730.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision, thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning. | | .00492 |
| 51-15 | L. O. Dorado, Jr. | Parcel 1: That portion of Lot 38 of Hazard's Subdivision as shown on a Map filed in Book 1, page 26 of Records or Survey, described as follows:<br><br>Beginning at a point 363 feet North of and North 89°52' East 770.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 27.50 feet; thence South 96 feet; thence South 89°52' West 27.50 feet; thence, North 96 feet to the point of beginning.<br><br>Parcel 2: That portion of Lot 38 of Hazard's Subdivision as shown on a Map filed in Book 1, page 26 of Records of Survey, described as follows:<br><br>Beginning at a point 363 feet North of and North 89°52' East 797.98 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence, North 89°52' East 27.50 feet; thence South 96 feet; thence, South 89°52' West 27.50 feet; thence, North 96 feet to the point of beginning. | -------- | |
| 51-1? | | | Included in 51-1? | |
| 52-1 | M. G. Olivares | All that portion of Lot 38 of Hazard's Subdivision, as shown on a map filed in Book 1, page 26 of Records of Survey, records of said Orange County, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 690.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | -------- | .07383 |
| 52-2 | Freda Joseph | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26 of Records of Survey, in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 650.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-1 |

Page 16, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 52-3 | Family Plan Mortgage Co. | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26 of Records of Survey in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 610.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-4 | V. E. Buckmaster | That portion of Lot 38 of Hazard's Subdivision, as shown on a map recorded in Book 1, page 26, Records of Survey, in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 570.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-5 | T. R. Mirelez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 530.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-6 | J. Barragon | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 490.48 feet from the Southwest corner of Lot 38; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of Beginning. | | Included in 52-1 |
| 52-7 | C. R. Anguiana | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Records of Survey, records of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East, 450.48 feet from the Southwest corner of Lot 38 of Hazard's Subdivision; thence, North 89°52' East, 40 feet; thence, South 96 feet; thence, South 89°52' West, 40 feet; thence, North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-8 | A. Ramirez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26 of Records of Survey, records of Orange County, California, described as follows:<br><br>Cont'd on next page..... | | |

Page 17, EXHIBIT A

EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 52-8 | (Cont'd.) | Beginning at a point 217 feet North of and North 89° 52' East, 410.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East, 40 feet; thence South 96 feet; thence South 89°52' West, 40 feet; thence North 96 feet to the point of beginning. | Included in 52-1 | |
| 52-9 | Mexican Methodist Church | All that portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 370.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning. | ------------ | .01883 |
| 52-10 | A. Gomez et al | All that portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Licensed Surveyor's Maps, records of Orange County, California, described as follows, to-wit:<br><br>Beginning at a point 217 feet North of and North 89°52' East 330.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the South point of beginning. | Included in 52-9 | |
| 52-11 | C. Zaballa | All that portion of Lot 38 of Hazard's Subdivision as shown on a map filed in Book 1, page 26 of Licensed Surveyors' Maps, records of Orange County, California, described as follows, to-wit:<br><br>Beginning at a point 217 feet North of and North 89°52' East 290.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning.<br><br>ALSO beginning at a point 121 feet North of and North 89°52' East 290.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning. | Included in 52-9 | |
| 52-12 | F. J. Ysias | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 250.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to the point of beginning. | ------------ | .05376 |
| 52-13 | E. A. Vega et al | All that portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 | | |

Page 18, EXHIBIT A

Cont'd on next page

EXHIBIT A 52

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 52-13 | (Cont.d.) | of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows: | | |
| 52-14 | E. R. Schmitt | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 170.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-12 |
| 52-15 | T. R. Sandoval | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Records of Survey in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°92' East 130.48 feet from the Southwest corner of said Lot 38; thence, North 89°52' East 80 feet; thence, South 96 feet; thence, South 89°52' West 80 feet; thence, North 96 feet to the point of beginning. | | Included in 52-12 |
| 52-16 | M. Pinedo | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map thereof recorded in Book 1, page 26, Licensed Surveyor's Maps, in the office of the County Recorder of said Orange County, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 210.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West, 40 feet to a point; thence North 95 feet to the point of beginning. | | Included in 52-12 |
| 52-17 | L. Recendez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 250.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-12 |
| 52-18 | E. Gonzalez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows: | | |

Page 19, EXHIBIT A

...Cont'd on next page......

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 52-18 | (Cont'd.) | Beginning at a point 121 feet North of and North 89°52' East 330.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-19 | J. E. Hathaway et al | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 370.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 120 feet; thence South 96 feet; thence South 89°52' West 120 feet and thence North 96 feet to the point of beginning. | | |
| 52-20 | W. C. McCall et al | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of a point which is North 89°52' East 490.48 feet from the Southwest of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-21 | R. P. Tovar | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 530.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-22 | P. E. Duarte | That portion of Lot 38 of Hazard's Subdivision, as shown on a Licensed Surveyor's Map recorded in Book 1, page 26, Record of Surveys, in the office of the County Recorder of said Orange County, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 570.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning. | | Included in 52-1 |
| 52-23 | L. Vargas | All that portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 26 of Records of Survey in the office of the County Recorder of Orange County, California, described as follows:<br><br>Cont'd on next page...... | | 1 |

Page 20, EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 52-23 | (Cont'd.) | Beginning at a point 217 feet North of and North 89°52' East 770.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 55 feet; thence South 96 feet; thence South 89°52' West 55 feet; thence North 96 feet to the point of beginning. | ------ | ---- |
| 52-24 | R. T. Ruiz | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, Page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 217 feet North of and North 89°52' East 730.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89° 52' West 40 feet to a point; thence North 96 feet to the point of beginning. | ------ | .00018 |
| 52-25 | A. H. Rangel | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Licensed Surveyors' Maps, records of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 610.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence; thence, North 89°52' East 40 feet to a point; thence, South 96 feet to a point; thence, South 89°52' West 40 feet to a point; thence, North 96 feet to the point of beginning. | Included in 52-1 | |
| 52-26 | R. Garcia | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 650.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence North 96 feet to the point of beginning. | Included in 52-1 | |
| 52-27 | R. Flores | All that portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, described as follows:<br><br>Beginning at a point 121 feet North of and North 89°52' East 730.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 40 feet; thence South 96 feet; thence South 89°52' West 40 feet; thence North 96 feet to the point of beginning. | Included in 52-1 | |
| 52-28 | E. Rodriguez | Those portions of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Surveys in the office of the County Recorder of Orange County, California, described as follows: | Included in 52-1 | |

Page 21, EXHIBIT A

Cont'd on next page.....

EXHIBIT A

56

| NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 52-28 (cont'd.) | | Beginning at a point 121 feet North of and North 89°52' East 770.48 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 27.50 feet to a point; thence South 96 feet to a point; thence South 89°52' West 27.50 feet to a point; thence North 96 feet to the point of beginning. | | |
| | | Also beginning at a point 121 feet North of and North 89°52' East 797.98 feet from the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 27.50 feet to a point; thence South 96 feet to a point; thence South 89°52' West 27.50 feet to a point; thence North 96 feet to the point of beginning. | | |
| F-29 | A. Jimenez | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 36 of licensed Surveyors Maps, records of Orange County, California, described as follows: | ------ | |
| | | Beginning at a point 121 feet North of and North 89°52' East 690.48 feet from the Southwest corner of said Lot 38; thence North 89°52' East 40 feet to a point; thence South 96 feet to a point; thence South 89°52' West 40 feet to a point; thence North 96 feet to the point of beginning. | | |
| 24 | Superior Fee | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Records of Surveys in the office of the County Recorder of Orange County, California, described as follows: | Included in 52-1 | |
| | | Beginning at the Southwesterly corner of said Lot 38; thence North 25.00 feet; thence North 89°52'00" East, 825.48 feet; thence North 192.00 feet; thence South 89°52'00" West, 825.48 feet; thence North 50.00 feet; thence North 89°52'00" East, 825.48 feet; thence North 192.02 feet; thence South 89°52'00" West, 825.48 feet; thence North 192.02 feet; thence North 89°52'00" West, 825.48 feet; thence North 20.98 feet to the Southerly line of the land described in a Deed to F. C. Krause and wife, recorded June 5, 1928 in book 170, page 147 of Official Records; thence Easterly along said Southerly line to the Easterly line of said Lot 38; thence Southerly to the Southeasterly corner of said Lot 38; thence Westerly along the Southerly line of said Lot 38 to the point of beginning. | | .17373 |
| A-1 | Roman Catholic Archbishop of Los Angeles | That portion of Lot 38 of Hazard's Subdivision, as shown on a Map recorded in Book 1, page 36 of Records of Survey in the office of the County Recorder of Orange County, California, described as follows: | ------ | |
| | | Beginning at a point 121 feet North of the Southwest corner of said Lot 38 of Hazard's Subdivision; thence North 89°52' East 90.48 feet; thence South 48 feet to a point; thence South 89°52' West 90.48 feet; thence North 48 feet to the point of beginning. | | .00801 |

Page 22, EXHIBIT A

EXHIBIT A

57

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 53 | I. Kellogg | That portion of Lot Thirty-seven of Hazard's Subdivision, as shown on a Map filed in Book 1, page 26 of Record of Surveys in the office of the County Recorder of Orange County, California, lying Southerly of the Southerly line of the 100-foot right of way as conveyed to the Southern California Railway Company by deed recorded March 18, 1905, in Book 113, page 315, of Deeds, and Northerly of the Northwesterly line of the right of way as conveyed to the Southern California Railway Company by deed recorded August 12, 1893, in Book 81, page 246 of Deeds. | | .15636 |
| 55 | Lypps | That portion of Lot 1 in Block 36 lying North of the South 84.32 feet thereof the "Yorba Linda Tract" in the Rancho Canon de Santa Anna, County of Orange, State of California as per map thereof recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, Records of said Orange County. | .50364 | .66434 |
| C | A.T. & S.F.R.R. | Being a strip of land of the uniform width of 100 feet, 50 feet on each side of and parallel to the center line of location of the California Central Railway, on that portion of the line formerly known as Riverside, Santa Ana and Los Angeles Railway, said center line being more fully described as follows:  Commencing at the intersection of aforemented center line of said Railway and the Northerly extension of the center line of a sixty foot street known as Fee Ana, thence North 83°53' West a distance of 1520 feet, more or less, to a point known as Station 1879 / 43.8 of the said center line of location, said point being on the Western boundary line of Rancho Canon de Santa Ana. | .94028 | .60819 |
| 57 | D. K. | All that portion of Lots 13 and 14, Block 35, of the Yorba Linda Tract as per Map of said Tract recorded in Book 5, pages 17 & 18 of Miscellaneous Maps. Records of Orange County, California, which lies Southerly of a line which line is parallel to and 300' equidistant from said south line of said Lots 13 and 14. | ----- | 1.61196 |
| 58 | Kammerer | Lots 1, 2, 13 and 14 of Block 35, Yrba Linda Tract, per map recorded in Book 5, pages 17 and 18 of Miscellaneous Records of Orange County, State of California.  Except the Southerly 300 feet of said Block 35, measured at right angles to the Southerly line of said block. | 2.09022 | 6.66819 |
| 59 | Thomson | Lot 6, Block 31 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 & 18 of Miscellaneous Maps, records of Orange County, California. | 2.57873 | 2.63694 |
| 60-A | Bayha | Lot 5, Block 31 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. | 2.67817 | 2.28228 |
| 60-1 | Curtin Estate et al | The South half of Lot 4 in Block 31 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. | 4.20855 | ----- |
| 61-1 | R. M. Cook | PARCEL 1:  Lot 3 in Block 31 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California.  (contd on next page) | ----- | .46968 |

Page 23, EXHIBIT A

| TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|
| -1 (cont'd.) | EXCEPTING THEREFROM those portions included within the following:<br><br>(a) Beginning at a point in the West line of said Lot 3 in Block 31, distant South 0°26'00" East 10.00 feet from the Northwest corner of said Lot 3; thence North 89°30'40" East, parallel to the North line of said Lot 3, 129.45; thence South 0°26'00" East 6.00 feet; thence North 89°30'40" East 144.65 feet; thence South 2°52'20" East 169.57 feet; thence South 23°29'20" East 54.00 feet; thence South 68°30'40" West 58.20 feet; thence South 89°30' 40" West 84.00 feet; thence North 56°29'20" West 93.00 feet; thence South 89°30'40" West 87.00 feet to a point in the West line of said Lot 3; thence North 0°26'00" West along said West line 194.00 feet to the point of beginning.<br><br>(b) Beginning at a point on the Westerly line of said Lot 3, which point is 210 feet South of the Northwest corner of said Lot 3; thence in an Easterly direction at right angles to said Westerly line of Lot 3, a distance of 290 feet; thence in a Southerly direction parallel to the Westerly line of said Lot 3, a distance of 160 feet; thence in a Westerly direction at right angles to said last mentioned course, a distance of 290 feet to the Westerly line of said Lot 3; thence in a Northerly direction along said Westerly line of Lot 3 a distance of 160 feet to the point of beginning.<br><br>(c) That portion lying Southerly of the Southerly line of the land described in Parcel (a) and lying Northerly of the Northerly line of the parcel of land described in Parcel (b) above.<br><br>(d) Five acres around the producing well known as Page No. 1.<br><br>(e) E/2 of said Lot 3.<br><br>(f) That portion lying Northerly of a line running Easterly, parallel with the South line of said Lot 3, from the Southeast corner of Lot 21 of Hazard's Subdivision, per Book 1, page 26, Record of Surveys, records of said county.<br><br>PARCEL 2: The northerly half of Lot 4 in Block 31 of the Yorba Linda Tract, as shown on a map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, Records of Orange County.<br><br>Beginning at a point in the West line of Lot 3, Block 31, Yorba Linda Tract, as shown on a map thereof recorded in Book 5, pages 17 and 18, Miscellaneous Maps, records of said Orange County, distant South 0°26'00" East, 10.00 feet from the Northwest corner of said Lot 3, running thence North 89°30'40" East, parallel to the North line of said Lot 3, 129.45 feet; thence South 0°26' 00" East 6.00 feet; thence North 89°30'40" East 144.65 feet; thence South 2°52'20" East 169.57 feet; thence South 23°29'20" East, 54.00 feet; thence South 68°30'40" West, 58.20 feet; thence South 89°30'40" West, 84.00 feet; thence North 56°29'20" West, 93.00 feet; thence South 89°30' 40" West, 87.00 feet in the West line of said Lot 3; thence North 0°26'00" West, along said West line 194.00 feet to the point of beginning. |  |  |
| 2 J. M. Battle |  | ------ | .42755 |

Cont'd on next page......

EXHIBIT A

59

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 61-2 | (Cont'd.) | Excepting therefrom that portion included within the following described Parcel of land: Beginning at a point on the Westerly line of said Lot 3, which point is 210 feet South of the Northwest corner of said Lot 3; thence in an Easterly direction at right angle to said Westerly line of Lot 3, a distance of 290 feet; thence in a Southerly direction parallel to the Westerly line of said Lot 3, a distance of 160 feet; thence in a Westerly direction at right angle to said last mentioned course, a distance of 290 feet to the Westerly line of said Lot 3; thence in a Northerly direction along said Westerly line of Lot 3, a distance of 160 feet to the point of beginning. | ----- | .03785 |
| | | Also except that portion lying Northerly of a line running Easterly, parallel with the South line of said Lot 3, from the Southeast corner of Lot 21 of Hazard's Subdivision, per Book 1, page 26, Record of Surveys, records of said county. | | |
| 61-A | Breen | That portion of Lot (3) in Block Thirty-One (31) of "Yorba Linda Tract" as shown on a Map record in Book 5, pages 17 and 18 of Miscellaneous Maps, record of Orange County, California, described as follows: | | |
| | | Beginning at a point on the Westerly line of said Lot Three (3), which point is 210 feet South of the North-west corner of said Lot Three (3); thence Easterly at right angles to said Westerly line of Lot Three (3), a distance of 290 feet; thence Southerly, parallel to the Westerly line of Lot Three (3), a distance of 160 feet; thence Westerly at right angles to said last mentioned course, a distance of 290 feet to the Westerly line of Lot Three (3); thence Northerly along said Westerly line of Lot Three (3), a distance of 160 feet to the point of beginning. | .53174 | .04926 |
| 61-B | Superior Fee | The Easterly half of Lot 3 in Block 31 of the Yorba Linda Tract as shown on a Map of said Tract recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. | | |
| | | Except that portion lying Northerly of a line running Easterly, parallel with the South line of said Lot 3, from the Southeast corner of Lot 21 of Hazard's Subdivision, per Book 1, page 26, Record of Surveys, records of said county. | ----- | .14416 |
| 62 | Wardman | Lot 9 in Block 30 of "Yorba Linda Tract", as shown on a map recorded in Book 5, Pages 17 and 18 of Miscellaneous Maps, Records of Orange County, California. | 3.65086 | 2.77872 |
| 63 | Krug | Lot One (1), Block Thirty-two (32); Lots Three (3) and Twelve (12), Block Thirty-five (35) of the "Yorba Linda Tract", as shown on map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. | | |
| | | EXCEPT therefrom the following described land: | | |
| | | Beginning at the intersection of the center line of that 50 foot unnamed street between Lots Twelve (12) and Thirteen (13) in Block Thirty-five (35) of the "Yorba Linda Tract", as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California, and commonly known as Richfield Road with the center line of the 50 foot right of way | | |

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 53 | (Cont'd.) | of Placentia-Yorba Road, as laid out and paved by the County of Orange in 1916, and running thence North 0°20' West 374.55 feet to a point on the center line of Richfield Road; thence South 80° 13½' East 280.87 feet to the Northeasterly corner of that certain parcel of land conveyed to the Placentia Richfield School District of Orange County, by deed recorded in Book 346, page 26 of Deeds, records of Orange County, California; thence South 81°02'05" East 294.89 feet to a point on the Easterly line of Lot Twelve (12) in Block Thirty-five (35) of the "Yorba Linda Tract", as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California; thence South 0°29'05" East 360.64 feet along said Easterly line to a point on the center line of the Placentia Yorba Road; thence North 82°24'05" West 294.13 feet to the Southeasterly corner of said parcel conveyed to said School District; thence North 82°16' West along said center line 279.65 feet to the point of beginning. | | |
| | Isaacs | The West 219.40 feet of Lot 2, Block 32, Yorba Linda Tract, per map recorded in Book 5, page 17 of Miscellaneous Maps, records of Orange County, California. | 6.07829 | 7.68780 |
| | Danker | That portion of Lot Twelve in Block Thirty-five of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California, described as follows: Beginning at the Northeasterly corner of that certain parcel of land in said Lot Twelve conveyed to the Placentia-Richfield School District of Orange County by Deed recorded December 2, 1919, in Book 346, page 26 of Deeds; thence South 81°02'05" East 294.89 feet to a point on the Easterly line of said Lot Twelve; thence South 0°29'05" East 360.64 feet along said Easterly line to a point on the center line of the Placentia-Yorba Road; thence North 82°24'05" West along the center line of said road, 294.13 feet to the Southeasterly corner of said parcel conveyed to the said School District; thence North 0°29'05" West 367.77 feet along the Easterly line of said parcel to the point of beginning. | 1.78761 | 1.72677 |
| | Placentia Unified School District | That portion of Lot Twelve (12) in Block Thirty-five (35) of the Yorba Linda Tract, in the County of Orange, State of California, as per map thereof recorded in Book 5, Pages 17 and 18 of the Miscellaneous Maps, records of Orange County, California, included within the following:<br><br>Beginning at the intersection of the center line of that 50 foot unnamed street between Lots 12 and 13 in Block 35 of said Yorba Linda Tract, commonly known as Richfield Road, with the center line of the 50 foot right of way of the Placentia - Yorba Road, as laid out and paved by the County of Orange in 1916; thence North 0°20' West 374.55 feet to a point on the center line of Richfield Road; thence South 80° 13-1/2' East 280.87 feet to a point; thence South 81°02'05" East 367.77 feet to an intersection with the center line of the right of way of the said Placentia - Yorba Road; thence North 82°16' West, along said center line, 279.65 feet to the point of beginning.<br><br>EXCEPTING therefrom the Southerly 30 feet conveyed to Orange County for road by deed recorded January 6, 1916, in Book 280, page 151 of Deeds. | .24426 | .60477 |

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 18 | Meyer | The North half of that portion of Lot 2 in Block 36 of the Yorba Linda Tract, as shown on a map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California, lying North of the South 57.60 feet thereof. | .10130 | |
| 9 | Richfield Consolidated | Lot 4 in Block 33 and Lots 4 to 11 inclusive in Block 35 of the Yorba Linda Tract, per map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. Also that portion of the Rancho Canon de Santa Ana described as follows: Beginning at the Northeast corner of Trinidad Yorba's First Class land, thence N. 70° E., 11.68 chains; thence N. 8¾° W., 16.94 chains; thence N. 8¼° W., 8.56 chains to the East line of Block 35 of said Yorba Linda Tract; thence Northerly along said East line of Block 35 to the point of beginning. | .29181  *[handwritten: 0.00636 × 8.77159 = 0.17835 % U.I.+]* | |
| 5 | A. A. Adams | Lot 2 in Block 33 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, Pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. Except the West 219.40 thereof. | 8.77159  *[handwritten: 0.00636 × 11.4152 = 0.07261 % of U.I.+]* | 11.41520 |
| | Hagan | Lot 10, Block 30 of Yorba Linda Tract, as per map recorded in Book 5, pages 17 and 18 of the Miscellaneous Maps in the office of the Recorder of Orange County, California; | .47986 | 2.07399 |
| . | Municipal Securities Co. | Lot 3, Block 32 of Yorba Linda Tract, as per map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, in the office of the Recorder of Orange County California. | .80410 | 1.99306 |
| 2 | A. A. Adams | Lot Four in Block 32 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. | 1.19197 | 2.68488 |
| | Phillips Community Lease | All of Lot 1 in Block 33 of "Yorba Linda Tract", as shown on the Map recorded in Book 5, Pages 17 and 18 of Miscellaneous Maps, Records of Orange County, California. | .70804 | 1.99591 |
| | Edwards Community Lease | The East 1.96 acres of Lot 1 and all of Lot 2 in Block 33 of the "Yorba Linda Tract", as shown on the Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. Adams | ------ | 1.49537 |

EXHIBIT A

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 74 | E. W. Naess | Lot 9 in Block 29 of the "Yorba Linda Tract", as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California.<br><br>Excepting therefrom the West 213 feet of the North 321 feet of said Lot 9.<br><br>Also excepting the Northerly 157.40 feet of the remainder of said Lot 9. | ------- | .30208 |
| 74A | M. E. Morrison | The South 56.60 feet of the West 214 feet of the West 213 feet of Lot 9 in Block 29 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. | ------- | .00477 |
| 74B | J. R. Roberts | The South 107 feet of the North 321 feet of the West 213 feet of Lot 9 in Block 29 of the Yorba Linda Tract, as shown on a Map recorded in Book 5, pages 17 and 18 of Miscellaneous Maps, records of Orange County, California. | ------- | .03456 |
| 75 | Mill Community | Lot 10 in Block 29 of the Yorba Linda Tract, as shown on a map thereof recorded in Book 5, pages 17 and 18, Miscellaneous Maps, records of the County of Orange, State of California.<br><br>Excepting therefrom the Northerly 157.40 feet. | ------- | .18302 |
| 6 | Richards | Lot 3 of Block 33, of Yorba Linda Tract, as per map recorded in Book 5, pages 17 and 18, Miscellaneous Maps, of Orange County, California. | ------- | 2.84568 |
| 77 | Anaheim Union Water Co. | That certain parcel of land situated in Orange County, California, as shown on a map of survey of Yorba Reservoir and parts of Yorba Linda Tract, included therein, recorded in Book 11, at Page 16 of Miscellaneous Maps, Records of said Orange County, described as follows:<br><br>Beginning at a point designated as Station No. 1 on said map, which point is located North 30° West 150 feet distant from the North Boundary of the M. Yorba Allotment of first class land in the Decree of Partition of the Rancho Canon de Santa Ana, by order of the Seventeenth Judicial District Case No. 1976, said point on said North Boundary being North 76-3/4° East 600 feet distant from the Northwest corner of said M. Yorba allotment; thence North 74°24' West 468.12 feet; thence North 11°22' West 139.42 feet; thence North 46°54' West 115.40 feet; thence North 69°31' West 243.14 feet; thence North 85°14' West 67 feet; thence North 09°45' West 130 feet; thence North 64°50' East 376.11 feet; thence North 24°23'30" West 115 feet; thence leaving said survey line and running easterly to the terminus of that certain course in said survey having a bearing and distance of South 13°09' West 364.63 feet; thence South 61°43'30" West 143.10 feet; thence South 4°59'30" East 195.25 feet; thence North 69°16'30" East 187.34 feet; thence North 84°15' East 260.20 feet; thence North 42°27'30" East 205 feet; thence North 58°46'30" East 100 feet; thence leaving said survey and running Southerly to a point in the course in said survey having a bearing and distance of South 75°17'30" West 312.60 feet, said point being westerly 150 feet from the beginning of said course; thence South 75°17'30" West 162.60 feet; thence South | 3.73517 | |

EXHIBIT A

63

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 77 | (Cont'd.) | 75°17'30" West 1060.94 feet; thence North 31°11' West 202.66 feet to point of beginning; | 8.81914 | 4.48369 |
| 78 | A. Schoepe | That portion of that certain 57 acre parcel of first class land marked "Ramona De La Guerra" on the Map showing partition of the M. Yorba Estate, filed in Book 1, page 27 of Record of Surveys, in the office of the County Recorder of Orange County, California, and that portion of Tract No. 5988 as shown on a Map recorded in Book 224, pages 48, 49 and 50 of Miscellaneous Maps, records of said County, California, described as follows:<br><br>Beginning at the most Northerly corner of said 57 acre parcel; thence South 10°55'14" East along the Easterly line of said parcel 666.64 feet to the Northeasterly corner of the land described in a Deed to Butler and Harbour, Inc. a corporation, recorded April 12, 1965, in Book 7479, page 458 of Official Records; thence South 75°09'10" West along the Northerly line of said land of Butler and Harbour, Inc. 1136.28 to the Easterly line of that certain parcel lying adjacent to and Northerly of the center line of Orangethorpe Avenue, as shown on a Map filed in Book 48, page 34 of Record of Surveys, in the office of the County Recorder or Orange County, California; thence North 33°8'24" West along said Easterly line 337.77 feet to the Southeasterly corner of the land described in Parcel 1 of a Modification of Lease and Partial Surrender Agreement, re- corded March 17, 1966, in Book 7871, page 556 of Official Records; thence North 75°09'10" East to the Southeasterly corner of said Parcel 1; thence North 14°09'10" West 344.73 feet along the Easterly line of said Parcel 1, a distance of 344.73 feet to the Northerly line of said 57 acre Parcel; thence North 75°09'10" East along said Northerly line to the point of beginning. | ------ | .61763 |
| 79 | Locke | All that portion of the M. Yorba Homestead as shown on a map of partition of the M. Yorba Estate filed in Book 1, Page 27 of Licensed Surveyors' Map Records of Orange County, California, more particularly described as follows:<br><br>Beginning at a point on the northerly line of said homestead, distant therein North 75°10' East 626.80 feet from the northwesterly corner of that certain 57-acre tract of land marked Ramona de la Guerra upon said map filed in Book 1, page 27; thence from said point of beginning North 75°10' East along the northerly line of said homestead 574.12 feet to a point; thence South 14° 50' East 344.73 feet; thence South 75°10' West 689.46 feet to a point on the agreed boundary line between the land of Laurie Vejar, et al, and Rosa Yorba Locke, as described in that certain agreement recorded in Book 502, page 216 of Deeds, Records of said County; thence northerly along said agreed boundary line 363.92 feet more or less to the point of beginning. | | |
| 80 | Schoepe | A portion of that certain tract of first-class land, con- taining fifty-seven (57) acres, marked Ramona de la Guerra upon the map showing partition of M. Yorba estate filed in Book 1, Page 27, of Licensed Surveyors' Maps in the office of the County Recorder of said Orange County, being more particularly described as: Beginning at the north- westerly corner of said fifty-seven (57) acre tract, said corner being the most northern terminus of the boundary line agreed upon between Laurie Vejar, et al., A. J. Koch, et ux., and Ida L. M. Bubach by agreement dated September 29th, 1923, running thence from said point of beginning | 1.29693 | 1.35695 |

Page 29, EXHIBIT A

Cont'd on next page.....

EXHIBIT A

63

| TRACT NO. | TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|---|
| 80 | (Cont'd.) | 'South 3°54' West along an old fence line being along the above mentioned boundary line 271.68 feet; thence South 86°06' East, at right angles to said boundary line, 594.87 feet, more or less, to a point in the easterly line of said westerly 19 acres; thence North 3°44'43" East, along the easterly line of said westerly 19 acres, 472.99 feet, more or less, to a point in the northerly line of said 57 acre tract at the most northerly corner of said westerly 19 acres; thence South 75°10' West, along said northerly boundary line of said 57 acre tract, 626.80 feet to the point of beginning. | | 1.33288 |
| 80A | Schoepe | All that certain real property situated in the Rancho Canon de Santa Ana, County of Orange, State of California, described as follows:<br><br>The westerly nineteen (19) acres of that certain tract of first-class land, containing fifty-seven (57) acres, marked Ramona de la Guerra upon the map showing partition of M. Yorba estate filed in Book 1, Page 27, of Licensed Surveyors' Maps in the office of the County Recorder of said Orange County, said nineteen acres being more particularly described as beginning at the north-westerly corner of said fifty-seven (57) acre tract, said corner being the most northern terminus of the boundary line agreed upon between Laurie Vejar, et al., A. J. Koch, et ux., and Ida L. M. Bubach by agreement dated September 29th, 1923, running thence from said point of beginning South 3°54' West along an old fence line being along the above mentioned boundary line 1254.24 feet to an old three inch by four inch (3" x 4") stake marked in monogram H.C.K.; thence South 86° East along the southerly boundary of said fifty-seven (57) acre track 601.1 feet to a four inch by four inch (4" x 4") stake marked in monogram H.C.K.; thence North 3°44'43" East 1519.43 feet to an intersection with the northerly boundary of said fifty-seven (57) acre tract at a point which is North 75°10' East 626.8 feet from the point of beginning; thence South 75°10' West along the northerly boundary line of said fifty-seven (57) acre tract 626.8 feet to the point of beginning.<br><br>EXCEPTING therefrom that portion thereof described as follows:<br><br>Beginning at said northwesterly corner of said 57 acre tract; thence South 3°54' West, along said fence line, being along the above mentioned boundary line, 271.68 feet; thence South 86° 06' East, at right angles to said boundary line, 594.87 feet, more or less, to a point in the easterly line of said Westerly 19 acres; thence North 3°44'43" East, along the easterly line of said westerly 19 acres, 472.99 feet, more or less, to a point in the northerly line of said 57 acre tract at the most northerly corner of said westerly 19 acres; thence South 75°10' West, along said northerly boundary line of said 57 acre tract, 626.80 feet to the point of beginning. | .94676 | |
| 81 | Schoepe | Those certain portions of the M. Yorba Homestead as shown on a map of the partition of the M. Yorba Estate, filed in Book 1, Page 27, of Licensed Surveyor's Map, Records of Orange County, California, described as follows: | ------- | .44794 |

Page 30, EXHIBIT A

Cont'd on next page......

| TRACT NAME | LEGAL DESCRIPTION | PRIMARY TRACT PARTICIPATION | SECONDARY TRACT PARTICIPATION |
|---|---|---|---|
| (Cont'd.) | Commencing at a point marked by a 4" x 4" stake on the southerly line of said M. Yorba Homestead, 601.1 feet from South 80° East along said southerly line from an old 3" x 4" stake marked in monogram H.C.K. at the Southwest corner of the land now owned by Laurie Vejar and others; thence from said point of beginning North 3°44'43" East along the agreed boundary line between the lands of Laurie Vejar and others and Rosa Yorba Locke, as described in an agreement recorded in Book 502, Page 216 of Deeds of Orange County, California, 1519.43 feet to the northerly line of said M. Yorba Homestead; thence easterly along the northerly line of said Homestead 529.4 feet to a point marked by a stake; thence in a southerly direction on a course South 4° West 1775.5 feet to a point marked by a 4" x 4" stake in the southerly line of said Homestead marked by a 4" x 4" stake; thence westerly along the southerly line of said Homestead 507.5 feet more or less to the point of beginning.

ALSO: Beginning at the Northeast corner of the third class land allotted to M. Yorba in the decree of partition of said Rancho rendered February 3, 1874, by the District Court of the 17th Judicial District, in Case #1878, and running thence North 05-3/4° West 884.50 feet to a sycamore tree marked "M.Y."; thence North 88-1/2° East 350.00 feet to a sycamore tree, the same being a recognized corner between the lands of V. Yorba and M. Yorba; thence North 10-3/4° West 1043 feet to a post marked "M.Y."; thence South 76-1/4° West 424.80 feet to a stake set by H. Clay Kellogg upon a survey of said property in October 1914; thence South 04° West 1775.50 feet to a stake in the Southern boundary of said Homestead; thence South 80° East along said southerly boundary 479.40 feet to beginning.

EXCEPT from the whole above the following described land:

Beginning at the most Northerly corner of the 57 acre parcel marked "Ramona De La Guerra" shown on said Map in Book 1, Page 27, Record of Surveys; thence South 10°55'14" East along the Easterly line of said parcel, 665.64 feet to the Northeasterly corner of the land described in a Deed to Butler and Harbour, Inc., a corporation, recorded April 12, 1965, in Book 7479 page 458 of Official Records; thence South 75°09'10" West along the Northerly line of said land of Butler and Harbour, Inc., 1136 feet to the Easterly line of that certain parcel lying adjacent to and Northerly of the center line of Orangethorpe Avenue, as shown on a Map filed in Book 48, Page 34 of Record of Surveys in the office of the County Recorder of Orange County, California; thence North 3°32'24" West along said Easterly line to the Northerly line of said 57 acre parcel; thence Easterly along said Northerly line of the 57 acre parcel to the point of beginning. | ------ | •19009 |

* * *

EXHIBIT C

APPROVAL AND DETERMINATION OF UNIT AGREEMENT

RICHFIELD EAST DOME UNIT

RICHFIELD OIL AND GAS FIELD

ORANGE COUNTY, CALIFORNIA

#226863

Pursuant to the statutory authority vested in the Oil and Gas Supervisor of the State of California under Section 3301 of the Public Resources Code of the State of California, I, F. E. KASLINE, Oil and Gas Supervisor of the State of California, do hereby:

1. Approve the Unit Agreement for the Richfield East Dome Unit, Richfield Oil and Gas Field, Orange County, California, dated October 15, 1969, to which this Exhibit C is attached.

2. Determine that it is in the interest of the protection of oil and gas from unreasonable waste that the foregoing agreement be entered into by the parties thereto in accordance with the purposes set forth in Section 3301 of the Public Resources Code of the State of California.

_Dec 22, 1969_
Dated

_F E. Kasline_
F. E. KASLINE
Oil and Gas Supervisor of
the State of California

66

STATE OF CALIFORNIA, }
_____ County of _____ Sacramento } ss.        BOOK 9177 PAGE 935

On this 22nd day of December in the year one thousand nine hundred and sixty nine before me, Adelaide V. Grubbs a Notary Public, State of California, duly commissioned and sworn, personally appeared F. E. Kasline

_____

known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my official seal in the _____ County of Sacramento the day and year in this certificate first above written.



ADELAIDE V. GRUBBS
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
SACRAMENTO COUNTY
MY COMMISSION EXPIRES 12-22-71

*Adelaide V. Grubbs*
Notary Public, State of California.
My Commission Expires December 22, 1971

Cowdery's Form No. 36—(Acknowledgment—General)
(C. C. Sec. 1189) (Printed 1-30-66) 61-0421

EXHIBIT A        67

RATIFICATION AND JOINDER OF UNIT AGREEMENT

RICHFIELD EAST DOME UNIT

RICHFIELD OIL AND GAS FIELD

ORANGE COUNTY, CALIFORNIA

The undersigned owner or owners of ROYALTY INTEREST hereby acknowledge receipt of a copy of that certain Unit Agreement for the Richfield East Dome Unit, Richfield Oil and Gas Field, Orange County, California, dated October 15, 1969, an executed copy of which was recorded in the office of the County Recorder of Orange County, California, on the 30th day of December, 1969, as Instrument No. 18862, in Book 9177, at Page 873, of Official Records, and do hereby ratify the same and join therein as to all the terms, covenants and conditions thereof applicable to the owners of ROYALTY INTEREST subject to and as modified by that Surface Rental Agreement between the undersigned Owner and Texaco Inc. dated and effective as of the 31st day of December, 1971, to the same extent as if the undersigned had signed said Unit Agreement for the Richfield East Dome Unit. This Ratification and Joinder of Unit Agreement shall be effective as of the 31st day of December, 1971.

Tract No. 69

ROYALTY INTEREST OWNER

_Janet K. Ganong_
Janet K. Ganong
Executrix of the Estate of
Myrtle Koch, Deceased

_Janet K. Ganong_
Janet K. Ganong, a married
woman dealing with her
separate property

1/21/75

EXHIBIT A    68

STATE OF CALIFORNIA
County of __Kern_____ } ss.

On this __21st__ day of __January_____, in the year nineteen hundred and __Seventy Five__,

before me, _____Inez L. Agnew_____, a Notary Public in and for

the County of _____Kern_____, State of California, residing therein, duly commissioned and sworn,

personally appeared __Janet K. Ganong_____

_____

known to me to be the person____ whose name__is_____ subscribed to the within instrument, and acknowledged

to me that __she_____ executed the same. Individually and as Executrix

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first
above written.

_____Inez L. Agnew_____
Notary Public in and for the County of ____Kern____
State of California.

My Commission expires __February 12, 1978__

INEZ L. AGNEW
NOTARY PUBLIC - CALIFORNIA
BOND FILED IN
KERN COUNTY
MY COMMISSION EXPIRES FEBRUARY 12, 1978

EXHIBIT A  69

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 924 Anacapa Street, Suite 1M, Santa Barbara, CA 93101

A true and correct copy of the foregoing document entitled (*specify*): LIMITED OBJECTION BY BUGANKO, LLC TO MOTION OF CHAPTER 11 TRUSTEE FOR ORDER (1) ESTABLISHING PROCEDURES FOR THE PAYMENT OF INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES (11 U.S.C. §§ 105(A) AND 331), AND AUTHORIZING PAYMENT ON A MONTHLY BASIS (11 U.S.C. §328); DECLARATION OF PHILIP GANONG IN SUPPORT

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/20/19, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) 11/20/19, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**Honorable Martin R. Barash**
**United States Bankruptcy Court**
**Central District of California**
**21041 Burbank Boulevard, Suite 342 / Courtroom 303**
**Woodland Hills, CA 91367**

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/20/19 | Karen L. Grant | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ADDITIONAL SERVICE INFORMATION

1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **William C Beall**   will@beallandburkhardt.com, carissa@beallandburkhardt.com
- **Alicia Clough**   aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com
- **Marc S Cohen**   mscohen@loeb.com, klyles@loeb.com
- **Alec S DiMario**   alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com
- **Karl J Fingerhood**   karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- **H Alexander Fisch**   Alex.Fisch@doj.ca.gov
- **Don Fisher**   dfisher@ptwww.com, tblack@ptwww.com
- **Brian D Fittipaldi**   brian.fittipaldi@usdoj.gov
- **Gisele M Goetz**   gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu
- **Karen L Grant**   kgrant@silcom.com
- **Ira S Greene**   Ira.Greene@lockelord.com
- **Matthew C. Heyn**   Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- **Brian L Holman**   b.holman@musickpeeler.com
- **Eric P Israel**   eisrael@dgdk.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Razmig Izakelian**   razmigizakelian@quinnemanuel.com
- **Alan H Katz**   akatz@lockelord.com
- **John C Keith**   john.keith@doj.ca.gov
- **Jeannie Kim**   jkim@friedmanspring.com
- **Maxim B Litvak**   mlitvak@pszjlaw.com
- **Michael Authur McConnell (TR)**   Michael.mcconnell@kellyhart.com
- **Brian M Metcalf**   bmetcalf@omm.com
- **David L Osias**   dosias@allenmatkins.com, bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com
- **Darren L Patrick**   dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Todd C. Ringstad**   becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Mitchell E Rishe**   mitchell.rishe@doj.ca.gov
- **Sonia Singh**   ss@dgdk.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com
- **Daniel A Solitro**   dsolitro@lockelord.com, ataylor2@lockelord.com

- **Ross Spence**    ross@snowspencelaw.com,
  janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittany
  Decoteau@snowspencelaw.com
- **Christopher D Sullivan**    csullivan@diamondmccarthy.com,
  mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com
- **Jennifer Taylor**    jtaylor@omm.com
- **John N Tedford**    jtedford@dgdk.com,
  danninggill@gmail.com;jtedford@ecf.inforuptcy.com
- **Salina R Thomas**    bankruptcy@co.kern.ca.us
- **Patricia B Tomasco**    pattytomasco@quinnemanuel.com,
  barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com
- **Fred Whitaker**    lshertzer@cwlawyers.com
- **William E. Winfield**    wwinfield@calattys.com, scuevas@calattys.com
- **Richard Lee Wynne**    richard.wynne@hoganlovells.com,
  tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com
- **Emily Young**    pacerteam@gardencitygroup.com,
  rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- **Aaron E de Leest**    aed@dgdk.com,
  danninggill@gmail.com;adeleest@ecf.inforuptcy.com

**SERVED BY UNITED STATES MAIL:**

**<u>Attorneys for Eller Family Trust</u>**
**Cummins & White,  LLP**
**Attn: Fred M. Whitaker,  P.C.**
**Ashley Bolduc**
**2424 S.E. Bristol Street, Suite 300**
**Newport Beach, CA 92660**

**William Winfield**
**Nelson Comis Kettle & Kinney LLP**
**300 E. Esplanade Drive, Ste 1170**
**Oxnard, CA 93036**