1  O'MELVENY & MYERS LLP
   Evan M. Jones (S.B. # 115827)
2  Jennifer M. Taylor (S.B. # 241191)
   Darren L. Patrick (S.B. # 310727)
3  400 South Hope Street, 18th Floor
   Los Angeles, CA 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5  E-mail: ejones@omm.com
   E-mail: jtaylor@omm.com
6  E-mail: dpatrick@omm.com

7  Gary Svirsky (N.Y. SBN: 2899417)
   Samantha M. Indelicato (N.Y. SBN: 5598263)
8  (appearing *pro hac vice*)
   Seven Times Square
9  New York, NY 10036
   Telephone: (212) 326-2000
10 Facsimile: (212) 326-2061
   E-mail: gsvirsky@omm.com
11 E-mail: sindelicato@omm.com

12 *Attorneys for UBS AG, London Branch*
   *and UBS AG, Stamford Branch*

13

14                  **UNITED STATES BANKRUPTCY COURT**

15          **CENTRAL DISTRICT OF CALIFORNIA — NORTHERN DIVISION**

16 | In re: | Case No. 9:19-bk-11573-MB |

17 | HVI CAT CANYON, INC., | Chapter 11 |

18 | Debtor. | **UBS AG, LONDON BRANCH'S OMNIBUS** |

19 |  | **RESPONSE IN SUPPORT OF THE EMERGENCY MOTION FOR AN** |

20 |  | **ORDER: (1) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED** |

21 |  | **FINANCING; (2) AUTHORIZING CONTINUED USE OF CASH** |

22 |  | **COLLATERAL; (3) SCHEDULING A FINAL HEARING; AND (4) GRANTING** |

23 |  | **RELATED RELIEF [DOCKET NO. 474]** |

24 |  | Hearing |

25 |  | Date:    November 21, 2019 |

26 |  | Time:    2:30 p.m. |

27 |  | Place:   Courtroom 201 |
   |  |          1415 State Street |

28 |  |          Santa Barbara, California  93101 |

1    UBS AG, London Branch and UBS AG, Stamford Branch ("UBS") respectfully submit

2    this omnibus response to the Santa Barbara County Air Pollution Control District, County of Santa

3    Barbara, and Harry E. Hagen, Treasurer-Tax Collectors' Supplemental Brief [Docket No. 521]

4    (the "Supplemental Brief") and the Supplemental Objection of the Official Committee of

5    Unsecured Creditors to: Emergency Motion for an Order: (1) Authorizing the Trustee to Obtain

6    Secured Financing; (2) Authorizing Continued Use of Cash Collateral; (3) Scheduling a Final

7    Hearing; and (4) Granting Related Relief [Docket No. 525] (the "Supplemental Objection").

8    A final hearing should be an opportunity for parties who could not attend an interim

9    hearing, fully develop their arguments, or present evidence to do so.  It is not meant as a chance to

10   simply reargue the same well-ventilated points and hope the Court changes its mind.  Yet the

11   Supplemental Brief filed by the Santa Barbara County Tax Assessor simply repeats arguments

12   rejected by this Court, offers no new facts or law, and actually returns to Santa Barbara's absurd

13   factual position, taken at the telephonic emergency hearing, that it holds no equity cushion.  This

14   position was abandoned at the full interim hearing last Tuesday, as UBS noted at the time that

15   Santa Barbara must.  Yet Santa Barbara without explanation now returns to the same indefensible

16   position,.  UBS appreciates that Santa Barbara may disagree with findings of fact and conclusions

17   of law, but it must do so in good faith.  Continuing gamesmanship cannot be countenanced.  Court

18   time is wasted, attorney's fees incurred meaninglessly, and critical financing orders delayed

19   through this guerilla warfare.

20   On November 8, counsel for Santa Barbara suggested to this Court telephonically that it

21   held no equity cushion.  Counsel for UBS responded with incredulity.  On a more organized

22   presentation on November 12, faced with its own counsel's statement that the collateral exceeded

23   $70 million for $5.5 million in debt, and evidence that Santa Barbara itself had assessed the "cash

24   value" of the property at nearly identical numbers, Santa Barbara abandoned the position it had no

25   equity cushion.  Counsel for UBS observed in argument that Santa Barbara must abandon that

26   position, and allowed that perhaps he misapprehended Santa Barbara's position on the phone:

27   maybe Santa Barbara didn't say what it did.  But Santa Barbara's supplemental brief leaves no

28

UBS OMNIBUS RESPONSE IN SUPPORT OF TRUSTEE'S EMERGENCY FINANCING MOTION

1    question.  It disinters in its Paragraph 2 the untenable position that it has no equity cushion.  The

2    Court correctly found that this position lacked merit.

3    Santa Barbara continues in Paragraph 3 to argue that "even if there were evidence of an

4    equity cushion," such evidence does not satisfy the requirement of adequate protection.  Yet it

5    cites no new authority, and fails to address the numerous cases cited by UBS holding that an equity

6    cushion is, in the words of the Ninth Circuit, the "classic form" of adequate protection, Pistol v.

7    Mellor (In re Mellor), 734 F.2d 1396, 1400 (9th Cir. 1984), and the "preferred test" in determining

8    adequate protection for priming.  In re YL W. 87th Holdings I LLC, 423 B.R. 421, 441-442 (Bankr.

9    S.D.N.Y. 2010).  In short, Santa Barbara does nothing to challenge this Court's finding of fact that

10   Santa Barbara is "wildly oversecured" based on the real property value of more than $50 million

11   (based on the tax assessment) securing its claim of approximately $5.5 million, or its conclusion

12   of law that such an enormous equity cushion provides adequate protection for priming.

13   Apparently, Santa Barbara relies instead on the inability to obtain transcripts in time, and the hope

14   that this Court and all parties will forget what happened last week.

15   Santa Barbara again protests that it chooses not to sell its tax claims, but provides no

16   evidence this is anything more than choice.  It fails to rebut the primary assertion, that California

17   statute expressly permits Santa Barbara to sell its tax claim.  Cal. Rev. & Tax. Code §§ 4511[1],

18

19

---

[1] 4511.  Any county may, upon the recommendation of the tax collector, and by resolution of the board of supervisors of that county adopted during the fiscal year for which it is to first apply, sell tax certificates.  If the board orders the discontinuance of the procedures authorized by this part, all of the following shall occur:
   (a) All of the provisions of this part, other than Section 4521, shall remain in full force and effect until all tax certificates have been canceled.
   (b) The county shall maintain the Tax Certificate Redemption Fund until all tax certificates have been canceled.
   (c) After all tax certificates have been canceled, all funds on deposit in the Tax Certificate Redemption Fund shall be paid to the tax collector to be applied and distributed in the same manner as amounts received from the collection of taxes and assessments and any costs, fees, penalties, or other amounts related thereto.

Cal. Rev. & Tax. Code § 4511 (West) (Added by Stats.1995, c. 189 (A.B.946), § 7, eff. July 24, 1995. Amended by Stats.1995, c. 962 (S.B.724), § 2.).

- 3 -

4521[2].  If Santa Barbara chooses to run from this protection, it cannot complain to this Court that it has no protection.

Even more fundamentally, Santa Barbara's protest is essentially an attack on the scheme of secured credit and remedies present in any transaction.  The County protests that a foreclosure sale may be inadequate to return the excess equity cushion to its tax debt.  That risk is true whatever position Santa Barbara occupies.  Even if it were first – and Santa Barbara simply ignores the power of the Supremacy Clause to change that priority – there is always a risk that the market will not be efficient and value might be lost.  If Santa Barbara is owed $5 million and forecloses in first position, the sale may not bring that amount.  Santa Barbara may go partially or even wholly unpaid.  For this reason, as noted by UBS, courts do not find a single penny of cushion adequate.

But where the cushion is enormous – as the Court found – some market efficiency must be anticipated.  If Santa Barbara is first with a $5 million lien and the property is worth more than $50 million, someone will bid at Santa Barbara's sale.  Even if Santa Barbara chooses not to sell its debt – which the California legislature says it may – it is protected.  Similarly, if the property is subject to $8.5 million in aggregate liens, and still worth more than $50 million, someone will bid above the $8.5 million.  While no one suggests a perfectly efficient market (and accordingly a cushion is required beyond one dollar), the fundamental efficiency of the market underlies all secured transactions.  Thus, the Supreme Court has held that this anticipation of fundamental efficiency renders a regularly conducted foreclosure sale *per se* fair value.  BFP v. Resolution Tr. Corp., 511 U.S. 531, 536 (1994).  The fundamental presumption of market efficiency underlies all secured transactions, whether personal or real property, whether public obligations such as taxes or private.  If value is there, someone will bid to obtain it.

---

[2] 4521.  Commencing no earlier than the date the property is declared in default, the tax collector may offer for sale as provided in Section 4511 tax certificates for those defaulted taxes in connection with that secured roll property or that property on the supplemental roll, along with any defaulted taxes for any previous year that have not previously been sold.

Cal. Rev. & Tax. Code § 4521 (West) (Added by Stats.1995, c. 189 (A.B.946), § 7, eff. July 24, 1995).

- 4 -

It may be true that Santa Barbara chooses to disavow the protection the California Tax Code provides it to sell its debt.  But the fundamental efficiency of markets when combined with the enormous equity cushion it enjoys – but apparently flips back and forth on admitting – provides it ample protection.  It is entitled to no more.

Finally, Santa Barbara raises complaints on the form of order.  It is noteworthy that at no time did Santa Barbara raise these in discussion or prior pleading.  Certainly, exigency may limit the ability to raise concerns with the order form in advance.  UBS however notes that Santa Barbara did the same at the October 8 hearing, where it requested and was readily granted drafting changes that had not been asked in advance.  Responding to Santa Barbara's specific requests:

- The form of order should be corrected to reflect that Santa Barbara did not agree to the Consensual Cash Collateral Order.  This was a relic from a prior precedent.

- Santa Barbara requests removal of two sentences in Paragraph 14 requiring Huron to approve payments to Santa Barbara.  That provision should remain, as initially decreed by Judge Wiles.  Budgeting provides general approved categories.  The review by Huron – which must be made within 48 hours – is a "quality control" matter to insure that specific payments are not only within the budget but have specific back-up.  As the Court heard testimony, Huron has exercised this quality control check only four times during the case.  One was an effort by the DIP to pay a two-year-old bill to Santa Barbara.  As this Court observed, even with an approved budget no one should be paying prepetition bills without Court approval.  A second was a duplicate payment by the DIP.  While UBS assumes the Trustee will be very careful with its payments, a second set of eyes is appropriate.  The proposed Order – as prior orders – provides for prompt Court resolution of any disagreement.

- Several of Santa Barbara's requests (Paragraph 20, Paragraph 21, Paragraph 34, and Paragraph 43) seek to establish the validity, perfection and priority of the Santa Barbara tax lien.  The proposed revisions are inappropriate before Santa Barbara provides evidence regarding its lien.  As the Court observed with regard to cash collateral, this

hearing is not the appropriate time to establish the priority of and find perfected Santa Barbara's liens.

- Santa Barbara asks the Court to remove findings of its adequate protection in Paragraph 19, but this is not a drafting request but a frontal assault on the Order.

- Santa Barbara requests changes to several provisions that were explicitly discussed and ordered by the Court during the November 12 interim hearing. Santa Barbara requests changes to Paragraph 31 regarding relief from stay upon default and Paragraph 34 regarding UBS' right to credit bid, but both are precisely in line with this Court's rulings. Again, Santa Barbara hides an effort to reargue points it lost as comments on the order. (Lest there be any question, the Committee, which is certainly diligent on these points, signed off on the precise language).

- There is no basis for Santa Barbara's request that the Order require a representation by UBS that no Event of Default exists.

- Santa Barbara requests that Paragraph 11 of the Order require UBS to seek recovery first from non-common collateral. Given restrictions on reaching the only new collateral – avoidance claims – this request presents untenable limitations where UBS is subject to conflicting requirement where it goes first. UBS would agree to observe any requirements of marshaling under applicable law.

- Finally, Santa Barbara requests that it receive notice of defaults and requests for relief, as to which UBS agrees. However, Santa Barbara also requests that it receive copies of reports rendered to UBS. While UBS would not object, it is advised the Trustee is concerned that Freedom of Information rules might put such reports in the public realm if received by Santa Barbara. UBS must defer to the Trustee in this reasonable concern.

### Committee Objection

The Committee's objection raises two issues: 1) a request to increase its fee allocation for the remaining one week of the advance period, and 2) an effort to surcharge UBS's collateral for accrued professional fees. UBS will address them in turn.

The Trustee Financing provides the estate and Trustee with funds during a five-week interim period.  At the interim hearing, the Committee argued with no evidence that it needed 60 days and $50,000 to conduct its investigation.  This position conflicted with the only testimony – that of the Trustee – that $15,000 was adequate.  Neither the Committee nor Trustee addressed the question of proportionality: is a "no stones left unturned" investigation appropriate when the Committee's constituents are well "out of the money."  And each apparently assumed that UBS must provide whatever funds are needed.  Nevertheless, at the Court's urging, UBS agreed to the Committee's time request and a $30,000 down-payment on the requested $50,000 for investigation.  The Court also suggested that it found the $50,000 amount reasonable and would look for that in future financing.  Instead, the Committee now returns and asks for more funding without attaching that request to anything the Committee may reasonable be expected to do in the next week.  Nevertheless, in an effort to resolve objection, UBS will agree to increase the Committee allocation during this period to $70,000, of which up to $50,000 may be used for investigation.  In doing so, UBS agrees to "prepay" the full amount the Committee suggested was needed for investigation.  Of course, the Committee's complaint it will have nothing for other activities through Thanksgiving is entirely in its own control; nothing requires it to use $50,000 for investigation during this period.  It has shown nothing it should reasonably anticipate (even assuming its statement is correct that it has used up the $20,000 allocation in contesting financing).  But the Committee should not anticipate it will be allowed to "double dip" for investigation costs if the inevitable further financing matures.  UBS is willing to fund the entire investigation budget the Committee requested, having already given the time the Committee asked.  Having agreed to the Committee's request to fund the full $50,000 investigation budget, UBS understands that no additional funds will be made available in the future for this purpose.

The Committee's second request, that UBS agree to surcharge of its prepetition collateral to pay accrued professional fees of the DIP and Committee, is not agreeable.  In its suggested mechanism, the Committee proposes that, after repayment of the Trustee Facility, five percent (5%) of every dollar that becomes distributable from the estate should be set aside for chapter 11

administrative expenses accrued prior to the appointment of the Trustee.  This is nothing more than a request to surcharge collateral without the label or any justification at law.  In each of the Circuits this case has pended, the law is well-established that a secured creditor's collateral cannot be surcharged for estate professional fees simply because the general administration of the case benefits the secured creditor.  In re Grimland, Inc., 243 F.3d 228, 232–33 (5th Cir. 2001); In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1068 (9th Cir. 2001); In re Flagstaff Foodservice Corp., 739 F.2d 73, 76–77 (2d Cir. 1984).  As the Court noted in ruling at the cash collateral trial, surcharge demands a primary, direct and quantifiable benefit to the lender.  The fees of DIP counsel and the Committee counsel, which in large part were incurred in fighting with UBS, can in no Orwellian world be called primarily for the benefit of UBS.  Even the actions of the Committee that were helpful to UBS – such as supporting venue motions and while contesting use of cash collateral and supporting an earlier effort to surcharge UBS's collateral, at least acknowledging that management must go – cannot be said to be primarily for UBS's benefit.  UBS would not impugn either counsel by submitting they acted primarily for UBS's benefit in violation of their ethical duties.

The role of Committee counsel in a case such as this is complex.  UBS was of course the only creditor to actually support retention of Committee professionals.  But everyone agrees they cannot "run amuck."  As UBS noted at the interim hearing, a recent article in the ABI Journal by the Chief Bankruptcy Judge in Delaware and Professor Grohsgal moderates the suggestion of the ABI Commission that committees be simply eliminated where unsecureds are "out of the money," by suggesting a requirement to prove benefit to the reorganization and provisional elimination of the Committee. Hon. Christopher S. Sontchi & Prof. Bruce Grohsgal, Should the Appointment of an Unsecured Creditors' Committee Be Made Optional in Chapter 11?, 38-NOV Am. Bankr. Inst. J. 12, 75 (Nov. 2019).  Of course, that is not established law.  DIP counsel and counsel for the Committee may have allowable claims.  If so, they would have administrative status and will be addressed in the future.  The rights of such creditors are well-established.  While UBS is prepared to "prepay" the investigation costs of the Committee, it is not prepared to agree at this time for the

1   DIP and Committee counsel to surcharge its collateral.  No authority is cited for the suggestion

2   that its post-petition financing must allow surcharge of its collateral for any administrative claim

3   that may be allowed.  Treatment of the accrued claims by counsel who to paraphrase the Second

4   Circuit's words in Flagstaff chose to get into this mess, need not be resolved today.  For the Court's

5   convenience, a redline of the existing Second Interim Order –  revised to reflect a final order and

6   changes UBS indicates it is prepared to make – is attached as Exhibit A.

7

8       For the reasons set forth, this Court should overrule the objections of Santa Barbara and

9   the Committee and grant final approval to the Trustee's financing motion.

10

11

12   Dated:  November 20, 2019                    Respectfully submitted,

13                                                O'MELVENY & MYERS LLP

14                                                /s/ Darren L. Patrick
                                                 Darren L. Patrick
15                                               400 South Hope Street, 18th Floor
                                                 Los Angeles, CA 90071-2899
16                                               Telephone: (213) 430-6000
                                                 Facsimile: (213) 430-6407
17                                               E-mail: dpatrick@omm.com

18                                               Attorneys for UBS AG, London Branch and
                                                 UBS AG, Stamford Branch
19

20

21

22

23

24

25

26

27

28                                       - 9 -

1

## **PROOF OF SERVICE OF DOCUMENT**

2

3

I am over the age of eighteen and not a party to this bankruptcy case or adversary proceeding.
My business address is **400 South Hope Street, Los Angeles, California 90071-2899**.

4

5

6

7

A true and correct copy of the foregoing document entitled **UBS AG, LONDON BRANCH'S
OMNIBUS RESPONSE IN SUPPORT OF THE EMERGENCY MOTION FOR AN
ORDER: (1) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED FINANCING; (2)
AUTHORIZING CONTINUED USE OF CASH COLLATERAL; (3) SCHEDULING A
FINAL HEARING; AND (4) GRANTING RELATED RELIEF** will be served or was served
**(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the
manner indicated below:

8

9

10

11

**I.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF"):**
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing
document will be served by the court via NEF and hyperlink to the document.  On **11/20/2019**, I
checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined
that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at
the email address(es) indicated below:

12

• **William C Beall**    will@beallandburkhardt.com, carissa@beallandburkhardt.com

13

• **Alicia Clough**    aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com

14

• **Marc S Cohen**    mscohen@loeb.com, mailto:klyles@loeb.com

15

• **Alec S DiMario**    alec.dimario@mhllp.com,

16

debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com

17

• **Karl J Fingerhood**    karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov

18

• **H Alexander Fisch**    Alex.Fisch@doj.ca.gov

19

• **Don Fisher**    dfisher@ptwww.com, tblack@ptwww.com

20

• **Brian D Fittipaldi**    brian.fittipaldi@usdoj.gov

21

• **Gisele M Goetz**    gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu

22

• **Karen L Grant**    kgrant@silcom.com

23

• **Ira S Greene**    Ira.Greene@lockelord.com

24

• **Matthew C. Heyn**    Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com

25

• **Brian L Holman**    b.holman@musickpeeler.com

26

• **Eric P Israel**    eisrael@dgdk.com,

27

danninggill@gmail.com;eisrael@ecf.inforuptcy.com

28

UBS OMNIBUS RESPONSE IN SUPPORT OF TRUSTEE'S EMERGENCY FINANCING MOTION

1    • **Razmig Izakelian    razmigizakelian@quinnemanuel.com**

2    • **Alan H Katz    akatz@lockelord.com**

3    • **John C Keith    john.keith@doj.ca.gov**

4    • **Jeannie Kim    jkim@friedmanspring.com**

5    • **Brian M Metcalf    bmetcalf@omm.com**

6    • **David L Osias    dosias@allenmatkins.com,**

7    **bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,**

8    **csandoval@allenmatkins.com**

9    • **Darren L Patrick    dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com**

10    • **Jeffrey N Pomerantz    jpomerantz@pszjlaw.com**

11    • **Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com**

12    • **Mitchell E Rishe    mitchell.rishe@doj.ca.gov**

13    • **Daniel A Solitro    dsolitro@lockelord.com, ataylor2@lockelord.com**

14    • **Ross Spence    ross@snowspencelaw.com,**

15    **janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecot**

16    **eau@snowspencelaw.com**

17    • **Christopher D Sullivan    csullivan@diamondmccarthy.com,**

18    **mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com**

19    • **Jennifer Taylor    jtaylor@omm.com**

20    • **John N Tedford    jtedford@dgdk.com,**

21    **danninggill@gmail.com;jtedford@ecf.inforuptcy.com**

22    • **Salina R Thomas    bankruptcy@co.kern.ca.us**

23    • **Patricia B Tomasco    pattytomasco@quinnemanuel.com,**

24    **barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com**

25    • **Fred Whitaker    lshertzer@cwlawyers.com**

26    • **William E. Winfield    wwinfield@calattys.com, scuevas@calattys.com**

27

28

• **Emily Young**    **pacerteam@gardencitygroup.com,**

**rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com**

## III. SERVED BY PERSONAL DELIVERY:

Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **11/20/2019** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

## JUDGE:

Hon. Martin R. Barash
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342
Courtroom 303
Woodland Hills, 91367

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of November, 2019, at Los Angeles, California.

_____/s/ Darren L. Patrick___
                              Darren L. Patrick

- 12 -

UBS OMNIBUS RESPONSE IN SUPPORT OF TRUSTEE'S EMERGENCY FINANCING MOTION

EXHIBIT A

1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@dgdk.com*
2  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *jtedford@dgdk.com*
3  AARON E. DE LEEST (State Bar No. 216832)
   *adeleest@dgdk.com*
4  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  *Proposed Attorneys for Michael A. McConnell,*
   *Chapter 11 Trustee*

8

9

10             **UNITED STATES BANKRUPTCY COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12                    **NORTHERN DIVISION**

13

14  In re:                                Case No. 9:19-bk-11573-MB

15  HVI CAT CANYON, INC.,                 Chapter 11

16        Debtor.                         ~~SECOND   INTERIM~~**FINAL  ORDER   FOR
                                          EMERGENCY      PRIMING      AND
17                                        SUPERPRIORITY    FINANCING    AND
                                          CONSENSUAL     USE     OF    CASH
18                                        COLLATERAL   BY  THE  CHAPTER  11
                                          TRUSTEE
19
                                          Hearing
20                                        Date:   November 21, 2019
                                          Time:   2:30 p.m.
21                                        Place:  Courtroom 201
                                                  1415 State Street
22                                                Santa Barbara, California

23

24         This ~~Second Interim~~*Final* Order for Emergency Priming and Superpriority Financing and

25  Consensual Use of Cash Collateral by the Chapter 11 Trustee (this "Final Order") is entered as of

26  November ~~12~~[21], 2019, with respect of the following facts:

27

28

On October 4, 2019 the Court denied the *Debtor's Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 Approving Use of Cash Collateral, Providing Adequate Protection and Setting Final Hearing Pursuant to Bankruptcy Rule 4001*[ECF No. 11] (the "Cash Collateral Motion") and the *Motion of the Debtor to Surcharge Collateral Pursuant to 11 U.S.C. §§ 506(c) and 552(b)* [ECF No. 55] (the "Surcharge Motion").

On October 8, 2019, the Court entered an *Agreed Order for Consensual Use of Cash Collateral* [ECF No. 375] (the "Consensual Cash Collateral Order"), whereby UBS AG, London Branch ("UBS AG, London Branch"), the debtor and debtor in possession (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), and GIT, Inc. ("GIT"), and Harry E. Hagen, as Treasurer Tax Collector of the County of Santa Barbara, California ("Santa Barbara"), in anticipation of a hearing on motions seeking appointment of a Chapter 11 trustee, agreed to use of cash collateral (as that phrase is defined in Section 363(a) of the Bankruptcy Code, "Cash Collateral") for an interim period ending October 25, 2019.  On October 16, 2019, the Court entered the *Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee* [ECF No. 409] and approved appointment of Michael McConnell as the Chapter 11 trustee in this case (the "Trustee") on October 22, 2019 [ECF No. 431].

Shortly before authority for use of Cash Collateral expired under the Consensual Cash Collateral Order, the Trustee and UBS AG, London Branch learned that the Debtor does not have sufficient cash to fund payroll and other operating expenses scheduled for payment.  To address the immediate cash need, on October 24, 2019, the Trustee filed his *Notice of Motion and Trustee's Emergency Motion for (1) Authority to Accept a Partial Prepayment of the Amount Owed by California Asphalt Production, Inc. to the Estate, or in the Alternative for Authority to Obtain "Credit" in the Form of Such Prepayment, and (2) Waiver of any Stay Imposed by FRBP 6004(h); and Memorandum of Points and Authorities, Declaration of Tim Skillman, and Request*

- 2 -

*for Judicial Notice in Support Thereof* [ECF No. 439] (the "<u>Emergency Motion</u>").  Following the October 25, 2019 emergency hearing, the Court entered the *Order Granting Trustee's Emergency Motion for (1) Authority to Accept a Partial Prepayment of the Amount Owed by California Asphalt Production, Inc. to the Estate, or in the Alternative for Authority to Obtain "Credit" in the Form of Such Prepayment, and (2) Waiver of any Stay Imposed by FRBP 6004(h)* [ECF No. 449], granting authorizing the Trustee to accept a partial prepayment from California Asphalt Production, Inc. ("<u>CAP</u>").

On November 7, 2019, the Trustee filed his *Emergency Motion for an Order: (1) Authorizing the Trustee to Obtain Secured Priming Superpriority Financing; (2) ~~authorizing~~Authorizing The Continued Use of Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief* [ECF No. 474] (the "<u>Motion</u>") for authorization to obtain post-petition financing from UBS AG, Stamford Branch ("<u>UBS AG, Stamford Branch</u>" and together with UBS AG, London Branch, "<u>UBS</u>") and continue to use the Cash Collateral of UBS AG, London Branch.

On November 8, 2019, the Court conducted an initial interim hearing on the Motion and entered the *Interim Order on Trustee's Emergency Motion for an Order: (1) Authorizing the Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing Continued Use of Cash Collateral; (3) ~~Schedule~~Scheduling a Final Hearing; and (4) Granting Related Relief* [ECF No. 480] (the "<u>Interim Order</u>"), authorizing up to $267,317 borrowings through a further interim hearing on November 12, 2019.

On November 12, 2019, the Court conducted the further interim hearing and authorized post-petition financing on ~~the terms set forth herein.~~an interim basis.  On November 18, 2019, the Court entered the *Second Interim Order on Trustee's Emergency Motion for an Order: (1) Authorizing the Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing*

- 3 -

*Continued Use of Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief* [ECF No. 524) (the "Second Interim Order").

Based upon the Motion, and the financing pursuant to the credit agreement attached to the Motion and the Trustee's use of Cash Collateral, such use being found necessary to avoid immediate and serious harm to the estate and potential harm to the public health and safety as contemplated by Bankruptcy Rule 4001(b) and (c), a final hearing to consider approval of the Motion having been held on November 8, 2019 and November 1221, 2019 (the "Final Hearing"), notice and opportunity for hearing being sufficient under the circumstances, and upon the findings of fact and conclusions of law made by the Court at the interim hearings and the Final Hearing, all of which are incorporated herein by reference, and good cause appearing therefor,

**IT IS HEREBY FOUND AND ORDERED AS FOLLOWS:**

1.    Motion Granted.  The Motion is granted on a final basis and the Facility (as defined below) and the Credit Agreement attached as Exhibit 3 to the Trustee's Declaration (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement") are approved.  Any objection to the Motion with respect to entry of this Final Order that have not been withdrawn, waived or settled, and any reservation of rights included therein, are hereby denied and overruled.  Except as specifically amended, supplemented, or otherwise modified by this Final Order, all provisions of the Second Interim Order remain in full force and effect and are hereby ratified by this Final Order and incorporated herein by reference as though set forth fully below.

2.    Jurisdiction and Venue.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief granted herein are section 364 of the Bankruptcy Code and

- 4 -

Bankruptcy Rule 4001(c).  Venue of this Chapter 11 proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

3.  <u>Hearing Held; Notice</u>.  The Hearing was held pursuant to Bankruptcy Rules 4001(c)(2).  Notice of the <u>Final</u> Hearing and the relief requested in the Motion was given as set forth in the proof of service filed by the Trustee.

4.  <u>No Credit Available on More Favorable Terms</u>.  The Trustee, on behalf of the Debtor and the Debtor's estate, is unable to find sufficient financing from sources other than UBS AG, Stamford Branch on terms more favorable than the terms for the term loan facility (the "<u>Facility</u>") described in the Credit Agreement.

5.  <u>Need for Post-Petition Financing and Use of Cash Collateral</u>.  ~~Immediate~~This financing is critical for the Debtor to continue its operations in the ordinary course.  The Facility, the Trustee's entry into the Credit Agreement, and related relief is necessary to avoid immediate and irreparable harm to the Debtor's estate, its employees, and all parties-in-interest.  The Facility is the best source of financing available to the Debtor under the circumstances and was entered into in good faith and at arm's-length.

6.  <u>Protective Advances</u>.  The advances under the Facility shall constitute advances to protect and preserve the collateral under that certain First Lien Credit Agreement dated as of May 20, 2016 and that certain Second Lien Credit Agreement dated as of May 20, 2016 among the Debtor, Rincon Island Limited Partnership, GOGH, LLC and UBS AG, London Branch (collectively, the "<u>Prepetition Credit Agreements</u>") and the obligations arising thereunder the "<u>Prepetition Obligations</u>") and shall remain subject to any guarantee provided thereunder.  For the avoidance of doubt, all proceeds of the Facility shall constitute Cash Collateral.

7.  <u>Authorization for Emergency Financing</u>.  The Trustee is authorized <u>on a final basis</u> to borrow, and UBS AG, Stamford Branch is authorized to advance, up to $3 million in financing

- 5 -

1   ~~on an interim basis prior to the final hearing set forth below~~, under the Credit Agreement, subject

2   to the terms of this Final Order, and in accordance with the budget attached hereto as Exhibit 1

3   (including all terms and conditions set forth therein and as may be updated from time to time in

4   accordance with the Credit Agreement, the "Budget"), subject to a line-item variance of ten

5   percent (10%) of the expenses set forth in the Budget tested on a cumulative basis by

6   disbursement categories contained in the Budget (the "Permitted Variance").  The Trustee and

7   UBS AG, Stamford Branch are authorized to extend the availability period under the Credit

8   Agreement by up to two weeks and increase the amount of financing by an aggregate amount of

9   up to $500,000 upon mutual agreement of the Trustee and UBS AG, Stamford Branch without

10  further order of this Court.  All advances provided by UBS AG, Stamford Branch under the

11  Facility, including but not limited to the $197,516 advanced by UBS AG, Stamford Branch on an

12  emergency basis pursuant to the Interim Order and the [$_____] advanced by UBS AG, Stamford

13  Branch pursuant to the Second Interim Order, shall be subject to the terms of this Final Order.

14  Immediately upon entry of this Final Order, the Trustee shall, and is hereby authorized on a final

15  basis to, execute and deliver to UBS AG, Stamford Branch the Credit Agreement and all other

16  loan documents required to be executed and delivered under the Facility.  The Trustee and

17  counsel acting on behalf of the Trustee are further authorized to take any such actions that may be

18  necessary to implement the Facility and borrow funds under the Credit Agreement as approved in

19  this Final Order, including without limitation to issue, execute and deliver any such certificates,

20  borrowing requests or other documents and directions that may be requested by UBS AG,

21  Stamford Branch.  Nothing in this Final Order shall create any obligation of UBS to advance or

22  lend any money to the Trustee or the Debtor, and any such advances or loans shall be made by

23  UBS AG, Stamford Branch only in accordance with the terms and conditions of the Credit

24  Agreement and this Final Order.  Any funds advanced or loaned by UBS AG, Stamford Branch

- 6 -

shall constitute a bona fide extension of credit to a non-affiliated borrower for purposes of the secured creditor exemption under the Comprehensive Environmental Response, Compensation Liability Act and comparable federal, state and local law.  UBS AG, Stamford Branch shall not be deemed an operator or owner of the Debtor or any of its properties or incur any environmental or similar liabilities, including but not limited to, liability for environmental compliance, remediation, restoration or natural resource damages under any federal, state or local law solely as a result of providing funding, credit or advances to the Trustee.

8.      Based on the record before this Court, it appears (and the Trustee on behalf of the Debtor has stipulated) that the terms of the Facility, the Credit Agreement and this Final Order are fair and reasonable and are supported by reasonably equivalent value and fair consideration.  The Court further finds that the Trustee's agreement to the terms of the Facility and Credit Agreement on behalf of the Debtor is a sound exercise of business judgment and should be approved as set forth herein.

9.      Amendment of the Credit Agreement.  Following entry of this Final Order, the Trustee is authorized to enter into any non-material amendment or modification to the Credit Agreement and the loan documents entered into in connection therewith without further order of this Court, provided that the.  The Trustee providesshall promptly provide notice of any such amendment or modification to the Court, the United States Trustee, the Committee and Harry E. Hagen, as Treasurer Tax Collector of the County of Santa Barbara, California ("Santa Barbara"). To the extent that such modification or amendment is material, such material modification or amendment shall only be permitted pursuant to an order of this Court on notice pursuant to Local Rule 2002-1(b) and a hearing.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the Credit Agreement shall be effective unless set forth in writing, signed by the Trustee and UBS AG, Stamford Branch.  For the avoidance of doubt, an

amendment of the availability period of the Facility by up to two weeks and an increase of the amount of the Facility by up to $500,000 in accordance with paragraph 7 of this Final Order shall not constitute a material amendment. Notwithstanding anything to the contrary in the Credit Agreement, UBS's prior consent to file a Chapter 11 plan is only required if the proposed Chapter 11 plan does not provide for payment of the Obligations in full in cash on the effective date.

10.    <u>Use of Funds</u>.  The Trustee may use funds advanced under the Facility, on the terms and conditions set forth herein and in the Credit Agreement, *provided that* all such funds are used to pay approved operating expenses solely in accordance with the Budget (including all terms and conditions set forth therein).  The Trustee is authorized to use funds advanced under the Facility to pay, or to fund a segregated account to pay, the reasonable fees and expenses for the Trustee's professionals and the Committee' professionals, only to the extent such fees and expenses for the Trustee's professional and the Committee's professionals are included in the Budget and accrued prior to an Event of Default.  The provisions for escrowing of funds shall differ for the Trustee's professionals and for the Committee professionals, each of whom agrees to such difference.  The Budget amount for the Committee professionals shall be $~~50,000~~70,000 for the five-week period (which includes the total Investigation Budget (as defined below)) and shall be requested promptly by the Trustee and escrowed immediately upon receipt.  Accordingly, once such funds are escrowed, the Committee professionals shall not enjoy the benefits of the Carve-Out set forth in paragraph 16 of this Final Order.  The liens of UBS and GLR are subordinated in such escrow funds to the extent professional fees and expenses are awarded to the professionals.  With regard to the Trustee's professionals, in addition to the escrowed fund, they shall enjoy the benefit of the Carve-Out set forth in paragraph 16 of this Final Order.  For the avoidance of doubt, the funds advanced under the Facility shall not be used for payment of any

- 8 -

expense not specifically included and/or not approved for payment under the Budget or otherwise authorized by this Final Order.

11.    Liens, Collateral and Obligations. Without limiting the approval set forth above, the Court grants as follows:

(i)    Pursuant to section 364(c) and 364(d) of the Bankruptcy Code, UBS AG, Stamford Branch is granted valid and perfected first priority priming and senior security interests and liens (the "Financing Liens") in all property of the estate of the Debtor, including, but not limited to all of the Debtor's rights in tangible and intangible assets, including without limitation, all prepetition and post-petition assets of the Debtor's estate, whether existing on or as of the Petition Date or thereafter acquired, including without limitation, the Debtor's interest in oil and gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating thereto), wells, accounts receivable, other rights to payment, any right to receive any residual of any retainer provided to any professionals after payment of such professional's allowed fees and expenses, cash, inventory, general intangibles, contracts, servicing rights, swap and hedge proceeds and termination payments, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under sections 510 or 542 through 553 of the Bankruptcy Code, except as noted below), commercial tort claims, and the proceeds of all of the foregoing (the "Collateral") or proceeds thereof.  The Financing Liens granted to UBS AG, Stamford Branch are valid, perfected and enforceable first priority priming and senior liens on all the Collateral that are superior to all other prepetition or post-petition liens, claims or security interests in favor of any other lienholder, other than the Carve-Out (as defined below).  Notwithstanding anything to the contrary herein, the Financing Liens granted herein shall not attach to (a) avoidance claims of the estate against any party other than the Debtor's current and former insiders and affiliates or (b) the proceeds thereof.  The Financing Lien shall only secure the Obligations (as defined below).  UBS agrees, for the benefit of the Trustee and the Committee, that it will not look to recover from avoidance claims or proceeds without first making a reasonable good faith effort to collect from Prepetition Collateral (as defined below) to satisfy the Obligations.  UBS agrees to observe any requirements of marshaling under applicable law.

(ii)    The Financing Liens against the assets of the Debtor and the Collateral shall be, and hereby are, confirmed, and extend to and secure all obligations and indebtedness of the Trustee on behalf of the Debtor and the Debtor's estate to UBS AG, Stamford Branch under the Facility and the Credit Agreement (the "Obligations").  The Financing Liens shall be, and are hereby determined to be, first priority priming and senior liens that are superior to all other liens, claims or security interests, pre- or post-petition, other than the Carve-Out (as defined

- 9 -

below), except as specifically set forth in this Final Order.  This Final Order shall be deemed to grant and perfect, and be sufficient and conclusive evidence of the validity, perfection and priority of the Financing Liens.  UBS AG, Stamford Branch may, but shall not be required, to file or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Financing Liens granted to them pursuant to this Final Order, and the stay imposed under section 362 of the Bankruptcy Code is hereby modified solely to permit the same.  If UBS AG, Stamford Branch shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of and the Financing Liens, the Financing Liens granted herein shall be deemed perfected at the time and on the date of entry of this Final Order.  Upon request by UBS AG, Stamford Branch, the Trustee is authorized, without the further consent of any party, to take any actions and to execute and deliver such instruments as may be necessary to enable UBS AG, Stamford Branch to further perfect, preserve and enforce the Financing Liens granted to UBS AG, Stamford Branch by this Final Order.

(iii)   For all Obligations, UBS AG, Stamford Branch is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "Financing Superpriority Claim") having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Trustee on behalf of the Debtor and/or the Debtor, whether now in existence or incurred by the Trustee on behalf of the Debtor and/or the Debtor after the Petition Date, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(b), 507(a), 364(c)(1), 564(c), or 726 of the Bankruptcy Code, other than the Carve-Out (as defined below).   Notwithstanding anything to the contrary herein, the Financing Superpriority Claim granted herein shall not be payable from (a) avoidance claims of the estate against any party other than the Debtor's current and former insiders and affiliates or (b) the proceeds thereof.  UBS agrees, for the benefit of the Trustee and the Committee, that it will not look to recover from avoidance claims or proceeds without first making a reasonable good faith effort to collect from Prepetition Collateral (as defined below) to satisfy the Obligations.  UBS agrees to observe any requirements of marshaling under applicable law.

12.   Use of Cash Collateral.  The Trustee may use Cash Collateral, on the terms and conditions set forth herein solely in accordance with the Budget until the date that is the earliest of (a) November 29, 2019, (b) the occurrence of an Event of Default (as defined in the Credit Agreement), and (c) the breach or failure of the Trustee or the Debtor to comply with the terms of this Final Order (the date of the occurrence of the earliest of (a), (b) and (c), the "Termination Date").  To the extent the Debtor holds an interest, all funds and cash investments of Debtor,

- 10 -

including any funds on deposit at any banks or other institutions as of the Petition Date, are Cash Collateral of UBS AG, London Branch within the meaning of 11 U.S.C. § 363(a).  In addition, all cash proceeds of the Prepetition Collateral (as defined below) (and investments thereof) received by the Debtor, the Trustee, or the estate of the Debtor after the Petition Date are Cash Collateral of UBS AG, London Branch within the meaning of 11 U.S.C. § 363(a).  The Trustee shall not use any Cash Collateral except as permitted herein or as otherwise approved by this Court.

13.    <u>Compliance with the Budget</u>.  Except as otherwise set forth herein, the Trustee is hereby authorized to use all Cash Collateral until the Termination Date to pay the ordinary course operating expenses of Debtor's estate solely in accordance with the Budget (including all terms and conditions set forth therein), subject to the Permitted Variance.

14.    <u>Limitations on Use of Proceeds and Cash Collateral</u>.  The Trustee shall notify Huron Consulting Group ("<u>Huron</u>"), via email to both mkehl@huronconsultinggroup.com and azughayer@huronconsultinggroup.com, of any payments that exceed $7,500 not less than 36 hours prior to initiating such payment (a "<u>Proposed Payment</u>").  If Huron does not object to the Proposed Payment within 36 hours by email to the Trustee at michael.mcconnell@kellyhart.com, the Trustee may proceed to make such payment.  Should Huron object to the Proposed Payment, such payment shall not be made without further ~~Order~~order of the Court.  The Trustee and UBS consent to judicial intervention on an expedited basis to determine whether such Proposed Payment may proceed.  Any payments to be made under the Budget to Santa Barbara, departments or agencies of the County of Santa Barbara, and the Santa Barbara County Air Pollution Control District (the "<u>APCD</u>") must be approved by Huron.  If approved, such payments shall be made timely in accordance with the Budget.  For the avoidance of doubt, no payments shall be made to GIT pursuant to this <u>Final</u> Order for prepetition work or claims other than reimbursement with regard to the Debtor's employees.  None of the Cash Collateral or the

- 11 -

proceeds of the Facility, subject only to the Investigation Budget (as defined below), shall be used (i) to challenge UBS's claims and/or liens or (ii) to prevent or hinder UBS from exercising its rights or remedies.

15.    Absent further order of the Court or written consent of UBS for payments specifically designated as a royalty payment or surface lease payment to an insider or affiliate, neither Debtor nor the Trustee shall make the following payments:  (i) any royalty payments or surface lease payments to insiders or affiliates of the Debtor or (ii) any payment of professional fees for the Debtor or any committee, but the Trustee shall hold any such payments provided for in the Budget in an interest-bearing escrow or segregated account.  All such issues are expressly reserved for future determination.  The Budget includes certain items for accounting purposes only; this Final Order does not permit payment of these items.  Notwithstanding anything to the contrary, the proceeds of the Facility and Cash Collateral shall only be used to pay those items in the Budget that have been specifically approved by UBS or Huron and to escrow payments as set forth above.  For the avoidance of doubt, neither the Debtor nor the Trustee has any authority to make any (i) insider or affiliate royalty payments; (ii) insider or affiliate surface lease payments; (iii) professional fee payments, except payments authorized for the Trustee's professionals or Committee's professionals under this Final Order; or (iv) other payments which are listed below the line in the Budget for accounting purposes but not authorized by this Final Order, regardless of whether any such payments listed in (i)-(iv) are included in the Budget.

16.    Carve-Out.  There shall be a subordination of the Financing Liens and Financing Superpriority Claim granted to UBS AG, Stamford Branch on the Collateral, and the Adequate Protection Liens (as defined below) granted to UBS AG, London Branch on the Post-Petition Collateral and GLR on the Prepetition Collateral, and Adequate Protection Superpriority Claim (as defined below) granted to UBS AG, London Branch on the Post-Petition Collateral for the

- 12 -

aggregate amount of reasonable professional fees and expenses for the Trustee's professionals, provided that such amount for the Trustee's professionals shall not exceed 25% of the amounts set forth in the Budget and accrued prior to occurrence of an Event of Default (the "Carve-Out"). If, for any reason, any portion of the sum of $~~50,000~~70,000 budgeted for the Committee's professionals ($50,000 of which is for the Committee's Investigation Budget (as defined below)) is not funded to an escrowed account by the Trustee pursuant to paragraph 10 hereof, then such amount shall also constitute a part of the Carve-Out.  Notwithstanding the foregoing, following the occurrence of an Event of Default, the Carve-Out shall include any withheld portion of the fees and expenses for the Trustee's professionals accrued prior to such date and set forth in the Budget, and an additional amount not exceed $15,000 in the aggregate from and after a written notice of default.  It is the intention of this Final Order that the combination of the escrowed amounts under paragraph 10 plus the Carve-Out equals 100% of the Budgeted fees and expenses for the Committee's professionals and 125% of the Budgeted fees and expenses for the Trustee's professionals accrued prior to an Event of Default plus the $15,000 provided in the prior sentence after a written notice of default, if applicable.  All such professionals having consented to the differential mechanics.  Nothing in this Final Order shall be construed to impair the ability of UBS to object to any fees, expenses, reimbursements, or compensation sought by the Trustee. The Carve-Out shall not be used to investigate or commence or continue any action or proceeding against UBS, subject only to the Investigation Budget (as defined below).

17.    Reporting Requirements.  As a condition to use funds advanced under the Facility and Cash Collateral, the Trustee shall provide to UBS and the Committee a variance report reasonably acceptable to UBS on a weekly basis during the period for which use of such funds and Cash Collateral is permitted under this Final Order and any subsequent order, which shall be delivered by the Wednesday of the following week.  Reporting of monthly sales revenue shall be

- 13 -

SECOND INTERIM FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

no later than 5 business days following the end of the month.  In addition, the Trustee and its representatives and agents shall provide to UBS and the Committee weekly reports, oral and/or written, regarding the status of operations and financial matters as well as any additional information reasonably requested by UBS.

18.    <u>Additional Covenants</u>.

(i)    No later than November 18, 2019, the Trustee shall file an application in form and substance reasonably acceptable to UBS to retain persons acceptable to UBS on terms acceptable to UBS to provide a reserve report regarding the Debtor's hydrocarbon assets.

(ii)    No later than November 18, 2019, the Trustee shall file an application in form and substance reasonably acceptable to UBS to retain persons acceptable to UBS on terms acceptable to UBS to conduct a Phase I environmental study regarding the Debtor's hydrocarbon assets and operations.

(iii)    On or before November 18, 2019, the Trustee shall provide one or more reports to UBS as to the Trustee's efforts to stabilize and improve Debtor's operations and revenues, including efforts to maximize sale revenues for the benefit of the estate.

(iv)    No later than November 18, 2019, the Trustee shall provide UBS with a 13-week cash flow budget in form and substance reasonably acceptable to UBS.

(v)    The Debtor shall obtain and collect a minimum monthly sales revenue of $750,000, measured as of the last day of each month.

19.    <u>Adequate Protection</u>.  UBS AG, London Branch is entitled, pursuant to 11 U.S.C. §§ 361 and 363(e), to adequate protection from any diminution in value of its interests in the collateral securing the Prepetition Obligations, including the Cash Collateral (collectively, the "<u>Prepetition Collateral</u>"), including, without limitation, any such diminution resulting from use by Debtor or the Trustee of Cash Collateral and any other collateral, and the imposition of the automatic stay pursuant to 11 U.S.C. § 362 (such diminution in value the "<u>Adequate Protection Obligations</u>").  Based on the Court's prior findings regarding the value of Prepetition Collateral in connection with the Cash Collateral hearings, Santa Barbara is adequately protected for priming and use of Cash Collateral under this <u>Final</u> Order.

- 14 -

20.    <u>Adequate Protection – Replacement and Additional Liens</u>.  As partial adequate

protection for the Adequate Protection Obligations, effective upon the commencement of this

case and without the necessity of the execution by Debtor, the Trustee or UBS AG, London

Branch of any mortgages, security agreements, pledge agreements, financing statements or

otherwise, the following additional and replacement security interests and liens are hereby

granted to UBS AG, London Branch (the "<u>Senior Adequate Protection Liens</u>"), subject only to (i)

liens on the Collateral in favor of UBS AG, Stamford Branch to secure the Obligations, (ii) valid

and perfected non-voidable liens in existence on the Petition Date that are senior in priority to the

liens securing the prepetition claims of UBS AG, London Branch and (iii) valid liens in existence

on the Petition Date that are perfected subsequent to the Petition Date as permitted by 11 U.S.C. §

546(b) that are senior in priority to the liens securing the prepetition claims of UBS AG, London

Branch ((i), (ii), and (iii) collectively, the "<u>Permitted Liens</u>"):   (a) to the full extent of any

diminution in value of the Prepetition Collateral, a perfected first priority senior security interest

in and lien upon all cash of Debtor and any investment of the funds of Debtor, whether existing

on the Petition Date or thereafter acquired as of the date hereof and as of the Petition Date; and

(b) to the full extent of any diminution in value of the Prepetition Collateral, a perfected first

priority senior security interest in and lien upon all other pre- and post-petition property of

Debtor, whether existing on the Petition Date or thereafter acquired, including, without limitation,

all accounts, cash, Cash Collateral, deposit accounts, chattel paper, instruments, documents,

investment property, supporting obligations, customer lists, letter of credit rights, inventory,

fixtures, equipment, general intangibles, goods, patents, copyrights and trademarks as well as all

products and proceeds of any of the foregoing and books and records relating to any of the

foregoing and to Debtor's business and the proceeds of all of the foregoing (collectively, the

"<u>Post-Petition Collateral</u>").  For the avoidance of doubt, in accordance with paragraph 24 of this

- 15 -

Final Order, the Senior Adequate Protection Liens granted herein shall not attach to avoidance claims of the estate or proceeds thereof.  The Senior Adequate Protection Liens shall be junior only to the Permitted Liens and the Carve-Out.

21.     GLR, LLC ("GLR") shall be entitled to, as adequate protection for its interest in Prepetition Collateral, effective upon the appointment of the Trustee and without the necessity of the execution by Debtor, the Trustee or GLR of any mortgages, security agreements, pledge agreements, financing statements or otherwise, the following additional and replacement security interests and liens which are hereby granted to GLR (the "Junior Adequate Protection Liens" and together with the Senior Adequate Protection Liens, the "Adequate Protection Liens"), subject only to the Permitted Liens to the full extent of any diminution in value of the Prepetition Collateral, and only to the extent of the validity, priority, and enforceability of GLR's prepetition lien in the Prepetition Collateral, a perfected replacement security interest in and lien upon the Prepetition Collateral and all proceeds thereof, whether existing on the Petition Date or thereafter acquired.  For the avoidance of doubt, in accordance with paragraph 24 of this Final Order, the Junior Adequate Protection Liens granted herein shall not attach to avoidance claims of the estate or proceeds thereof.  The Junior Adequate Protection Liens shall be junior only to the Permitted Liens, the Carve-Out, and the Senior Adequate Protection Liens.

22.     Adequate Protection for the Use of Cash Collateral – Superpriority Claim.  To the extent the Post-Petition Collateral granted to UBS AG, London Branch herein does not provide adequate protection of its interests in the Cash Collateral, the Adequate Protection Obligations shall constitute a super-priority administrative expense claim under Section 507(b) of the Bankruptcy Code ("Adequate Protection Superpriority Claim").   The Adequate Protection Superpriority Claim shall have priority over all administrative expenses of any kind or any subsequently filed bankruptcy case under any Chapter of the Bankruptcy Code in any court of

- 16 -

competent jurisdiction, including such administrative expenses of the kinds specified in, or allowable under, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code, subject only to the Financing Superpriority Claim and the Carve-Out.  Additionally, no:  (i) costs or expenses of administration which have been or may be incurred (a) in the Chapter 11 Case; (b) after conversion of the Chapter 11 Case to a case proceeding under Chapter 7 of the Bankruptcy Code, or (c) in any other proceeding related hereto; and/or (ii) priority claims as defined in Section 507(a) of the Bankruptcy Code are, or will be, senior to or *pari passu* with the Adequate Protection Superpriority Claim other than the Financing Superpriority Claim and the Carve-Out.  For the avoidance of doubt, in accordance with paragraph 24 of this Final Order, the Adequate Protection Superpriority Claims granted herein shall not attach to avoidance claims of the estate or proceeds thereof.

23.    Perfection of Adequate Protection Liens.  This Final Order shall be deemed to grant and perfect, and be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens as of the Petition Date.  UBS AG, London Branch may, but shall not be required, to file or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Adequate Protection Liens granted to them pursuant to this Final Order, and the stay imposed under section 362 of the Bankruptcy Code is hereby modified solely to permit the same.  If UBS AG, London Branch shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of and the Adequate Protection Liens, the Adequate Protection Liens granted herein shall be deemed perfected at the time and on the date of entry of this Final Order.  Upon request by UBS AG, London Branch, the Trustee is authorized, without the further consent of any party, to take any actions and to execute and deliver such instruments as may be necessary to enable UBS AG,

- 17 -

London Branch to further perfect, preserve and enforce the Adequate Protection Liens granted to UBS AG, London Branch by this _Final_ Order.

24.    The Adequate Protection Liens granted by this _Final_ Order and the Adequate Protection Superpriority Claim granted by this _Final_ Order shall not attach to avoidance claims of the estate or proceeds thereof.  For the avoidance of doubt, nothing in this _Final_ Order shall prevent UBS from asserting claims against or participating in such claims or proceeds under any other basis, including with respect to the Financing Liens.  Without limiting the foregoing, this provision shall not be retroactive, such that nothing in the _Final_ Order shall alter or change the status of, or impose any limitation or agreement on, any lien or claim against such avoidance actions of proceeds thereof with regard to use of Prepetition Collateral or Cash Collateral granted by any order entered in this case prior to the date hereof.  Nothing herein shall impair or modify UBS AG, London Branch's rights to seek additional adequate protection pursuant to section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to UBS AG, London Branch hereunder is insufficient to compensate for any diminution in value of its interests in the Cash Collateral or any other Prepetition Collateral during this case or any successor case.

25.    _Termination of Cash Collateral Use_.  On the Termination Date, the Trustee's right to use the Cash Collateral on the terms and conditions set forth in this _Final_ Order shall terminate automatically.  By written agreement, UBS AG, London Branch may agree to waive such termination in full or permit only limited use of Cash Collateral in any manner following such event.

26.    _Budget Amendments_.  UBS may, but is not required to, by written agreement, amend the Budget, including to, among other things, extend the date through which Cash Collateral may be used and to increase the amount of Cash Collateral that may be used

- 18 -

thereunder; *provided, however*, that any amendment to the Budget made pursuant to the authority set forth in this <u>Final</u> Order shall be subject to the following conditions and limitations:

> (a) any such amendment shall not alter the nature and types of payments that were authorized under this <u>Final</u> Order; and

> (b) any such amendment shall require the consent of the Trustee.

The foregoing conditions and limitations are intended to apply only to consensual changes to the Budget that are made pursuant to the authority of this <u>Final</u> Order.

27.    Upon entry of a written amendment in compliance with the foregoing, the new agreed budget shall constitute the Budget for all purposes under this <u>Final</u> Order and the Credit Agreement.

28.    Promptly following the amendment of the Budget in accordance with the foregoing, the Trustee shall promptly file notice with this Court, and provide notice of such entry to all parties entitled to notice.

29.    <u>Reservation of Rights</u>.  The right of the Trustee to seek additional or different use of Cash Collateral is specifically preserved, *provided that* upon filing of any such request, UBS AG, London Branch may by written notice terminate authorization to use Cash Collateral pursuant to this <u>Final</u> Order, or may agree to permit only use of Cash Collateral in any limited manner following such event; *provided, however*, any action seeking additional or different use of Cash Collateral without the express written consent of UBS shall immediately result in the occurrence of the Termination Date.

30.    <u>Remedies on Event of Default</u>.  If an Event of Default occurs, UBS AG, Stamford Branch shall have the right without any notice of further order of the Court to take any and all actions and pursue all remedies permitted under the Credit Agreement and applicable law in response to such Event of Default, subject to the requirements of paragraph 31 below.  UBS AG,

- 19 -

Stamford Branch shall have the right to exercise any remedies under the Credit Agreement and applicable law on five days' notice to the Trustee, the Committee, ~~and~~ the United States Trustee, and Santa Barbara.

31.    The automatic stay of section 362(a) of the Bankruptcy Code shall be and hereby is modified and vacated without further order, notice or application to the Court to the extent necessary to allow UBS to perform any act authorized by this Final Order.  If an Event of Default occurs, UBS AG, Stamford Branch shall have the right to seek an order on five days' notice to the Trustee, the Committee, ~~and~~ the United States Trustee, and Santa Barbara

32.    lifting the automatic stay to permit UBS AG, Stamford Branch to foreclose on the Collateral or alternatively, compelling the Trustee to sell the Collateral pursuant to section 363(b) of the Bankruptcy Code.  Such motion may be accompanied by an affidavit on behalf of UBS AG, Stamford Branch stating that an Event of Default has occurred and setting forth the facts of such Event of Default.  Any party opposing the relief requested by UBS AG, Stamford Branch shall have the burden of proof why the automatic stay should not be lifted with respect to the Collateral.

33.    ~~32.~~ Further Assurances.  No further actions shall be required to reflect the Financing Liens or Adequate Protection Liens granted to UBS or the Obligations or Adequate Protection Obligations incurred by the Trustee or the Debtor.  Notwithstanding the foregoing, the Trustee and UBS are granted authority to take any such actions and execute any such documents as they may deem appropriate to reflect the Financing Liens and the Adequate Protection Liens granted to UBS or the Obligations incurred by the Trustee or the Debtor, including without limitation execution and delivery of one or more notes, deeds of trust, financing agreements and all other actions as UBS may reasonably request.

~~SECOND INTERIM~~FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

34.    ~~33.~~ Section 506(c) Waiver.  All rights of the Debtor, the Trustee, and the estate to surcharge the collateral of UBS are hereby waived for rights accruing during the period that the Trustee receives advances or is authorized to use Cash Collateral pursuant to this Final Order or the Credit Agreement, provided that, as consideration for such waiver, the Trustee shall be authorized to obtain advances and use Cash Collateral for expenses in the Budget prior to any Event of Default or Termination Date, and further provided that the waiver shall apply whether or not the Trustee actually uses such advance or Cash Collateral for a specific expense set forth in the Budget or uses them for another purpose so long as such funds are actually disbursed by the Trustee.

35.    ~~34.~~ Right to Credit Bid.  UBS shall have the right to credit bid up to the full amount of its outstanding Obligations and Prepetition Obligations in connection with any sale of the Debtor's assets, the Prepetition Collateral, the Post-Petition Collateral or the Collateral under section 363 of the Bankruptcy Code.  If UBS transfers all or any portion of its claims, the right of the transferee to credit bid shall remain subject to a challenge "for cause" under section 363(k) of the Bankruptcy Code solely based upon the transfer, the actions of the transferee, or events arising after such transfer.  All defenses to any such challenge to the credit bid rights of a transferee are preserved.  Nothing herein shall constitute consent by UBS to any sale of such assets, Prepetition Collateral, the Post-Petition Collateral or the Collateral.

36.    ~~35.~~ Successors and Assigns.  The provisions of this Final Order shall be binding upon UBS, the Debtor, the Trustee and their respective successors and assigns (including any other trustee hereinafter appointed or elected for the Debtor's estate) and inure to the benefit of UBS, the Trustee and the Debtor and their respective successors and assigns.

37.    ~~36.~~ Compliance with Laws.  Nothing in this Final Order or the Budget shall permit the Debtor or the Trustee to violate 28 U.S.C. § 959(b), and nothing in this Final Order or the

- 21 -

Budget shall in any way diminish the obligation of any entity, including the Debtor and the Trustee, to comply with environmental laws.

38.    37. Priority.    Except as set forth herein with respect to the Financing Liens, nothing in this Final Order shall determine or effect the relative priority of any senior prepetition lien or post-petition lien, and all rights are expressly reserved in that regard.    All rights are expressly reserved with respect to whether any asset is cash collateral for any entity other than UBS and thus any entitlement of such other entities to adequate protection, including without limitation any superpriority claim.

39.    38. Effect of Final Order.    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay, shall not affect (i) the validity of any Adequate Protection Obligations incurred before the actual receipt of written notice by UBS AG, London Branch of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby.    Notwithstanding any such reversal, modification, vacatur or stay, any use of the Facility proceeds or Cash Collateral or Obligations or Adequate Protection Obligations incurred by Debtor or the Trustee to UBS before the actual receipt of written notice by UBS of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the original provisions of this Final Order, and UBS shall be entitled to all the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and this Final Order with respect to all uses of the Facility proceeds or Cash Collateral and the Obligations or Adequate Protection Obligations.

40.    39. Except as expressly provided in this Final Order, the Financing Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of UBS granted by the provisions of this Final Order

shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the case to a case under chapter 7, dismissing of the case, or by any other act or omission or (ii) the entry of an order confirming a plan in the case.  The terms and provisions of this Final Order shall continue in this case, or in any superseding chapter 7 case under the Bankruptcy Code, and the Financing Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of UBS granted by the provisions of this Final Order shall continue in full force and effect until the Obligations and the Adequate Protection Obligations are indefeasibly paid in full.

41.    40. Findings of Fact and Conclusions of Law. This Final Order shall constitute findings of fact and conclusions of law of the Court and shall take effect immediately upon execution hereof.

42.    41. Filing. This Final Order may be filed in any state or local jurisdiction in order to evidence and perfect UBS's liens and security interests, as granted and confirmed herein.  At the request of UBS's counsel, the clerk of court shall issue a certified copy of this Final Order and shall execute such other certificates or affidavits of authenticity as may be reasonably necessary to put this Final Order in a form that may be accepted by the applicable filing office.

43.    42. Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.  The terms of the Facility, Credit Agreement, and this Final Order were negotiated in good faith and at arms' length among the Trustee and UBS.  Financing provided under the Facility and the Credit Agreement shall be deemed to have been extended in good faith and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code.

44.    43. Stipulations.  Effective upon the expiration of the Challenge Period (as defined below), the Trustee will be deemed to have admitted, acknowledged, agreed and stipulated that:

- 23 -

(i) the amount due to UBS under the Prepetition Credit Agreements, as of June 30, 2019, is approximately $127 million, plus such allowable interest, fees and charges as may accrue thereafter; (ii) the Prepetition Obligations constitute legal, valid, enforceable and binding obligations of the Debtor; (iii) no offsets, defenses or counterclaims to the Prepetition Obligations exist; (iv) no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (v) the Prepetition Credit Agreements are valid and enforceable by UBS AG, London Branch against the Debtor; (vi) the liens and security interests in the Prepetition Collateral securing the Prepetition Obligations (the "Prepetition Liens") were perfected as of the Petition Date and constitute legal, valid, binding, enforceable and perfected liens in and to the Prepetition Collateral and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and such liens had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens expressly permitted by the Prepetition Credit Agreements (to the extent any such permitted liens were legal, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date or thereafter pursuant to section 546(b) of the Bankruptcy Code); (vii) the Prepetition Obligations constitute allowed secured claims against the Debtor's estate to the extent of the Collateral; and (viii) the Debtor and its estate have no claim, objection, challenge or cause of action against UBS or any of its affiliates, parents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), in connection with any of the Prepetition Credit

SECOND INTERIMFINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

1  Agreements (or the transactions contemplated thereunder), the Prepetition Obligations or the

2  Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery.

3       45.    44.  Effect of Stipulations on Third Parties.    The stipulations, admissions,

4  agreements and releases contained in this Final Order shall be binding upon all other parties in

5  interest, including, without limitation, any statutory or non-statutory committees appointed or

6  formed in this case, and any other person or entity acting or seeking to act on behalf of the

7  Debtor's estates, including the Trustee in all circumstances and for all purposes unless:  (a) any

8  party in interest (subject in all respects to any agreement or applicable law that may limit or affect

9  such entity's right or ability to do so), in each case, with requisite standing granted by the Court

10  or, in the case of the Committee, upon the filing of a motion seeking such standing, has timely

11  and properly filed an adversary proceeding, contested matter, or as to the Committee, motion

12  seeking standing (subject to the limitations contained herein) by no later than a date that is the

13  later of (i) January 13, 2020; (ii) any later date agreed to by UBS AG, London Branch in writing

14  in its sole discretion; and (iii) any such later date ordered by the Court for good cause shown after

15  notice and an opportunity to be heard, *provided that* the motion seeking such relief is filed before

16  the expiration of any applicable period as set forth in clauses (i)–(iii) of this sentence (the

17  "Challenge Period"), (A) objecting to or challenging the validity, perfection, enforceability,

18  priority or extent of the Prepetition Obligations, or (B) otherwise asserting or prosecuting any

19  action for preferences, fraudulent transfers or conveyances, other avoidance power claims through

20  or on behalf of the Debtor's estate against UBS AG, London Branch (collectively, the "Challenge

21  Proceeding"); and (b) there is a final non-appealable order in favor of the plaintiff sustaining any

22  such Challenge Proceeding; *provided, however*, that any pleadings filed in connection with any

23  Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any

24  challenges or claims not so specified prior to the expiration of the Challenge Period shall be

- 25 -

deemed forever, waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, such filing shall immediately result in the occurrence of the Termination Date.

46.    45.  If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding:  (i) any and all Challenge Proceedings or potential Challenge Proceedings shall be deemed to be forever waived and barred; (ii) all stipulations, admissions, agreements and releases contained in this Final Order shall be irrevocably and forever binding on all parties in interest; (iii) the Prepetition Liens shall be deemed to constitute valid, binding, and enforceable encumbrances, and not subject to avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtor shall be deemed to have released, waived and discharged UBS AG, London Branch from any and all obligations and liabilities to the Debtor and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date.

47.    46.  If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order shall nonetheless remain binding and preclusive on all persons and entities, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  UBS AG, London Branch reserves all of its rights to contest on any grounds any Challenge Proceeding.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in this case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estates.

- 26 -

48.    47. The Trustee may use the funds advanced under the Facility to investigate (i)
the claims and liens of UBS AG, London Branch and (ii) potential claims, counterclaims, causes
of action or defenses against UBS AG, London Branch; *provided that* no more than an aggregate
of $5,000 of the funds advanced under the Facility may be used by the Trustee in respect of any
such investigation (the "Trustee's Investigation Budget") and $30,00050,000 of the funds
advanced under the Facility may be used by the Committee in respect of any such investigation
(the "Committee's Investigation Budget" and together with the Trustee's Investigation Budget,
the "Investigation Budget"). The Committee's Investigation Budget represents the total amount
of funds advanced under the Facility that may be used by the Committee in respect of any such
investigation during this bankruptcy case.

49.    48. No Stay.  There is no stay of this Final Order, including no stay pursuant to
Federal Rule of Bankruptcy Procedure 6004(h) (to the extent applicable).

49. Final Hearing.  The Motion is set for a final hearing to be held at 2:30 p.m. (prevailing
Pacific Time), on November 21, 2019, in Santa Barbara, CA (the "Final Hearing").
Advancement of any funds under the Facility prior to the Final Hearing shall be governed by the
terms and conditions of the Credit Agreement and entitled to the full protections granted under
this Order, the Credit Agreement, the Bankruptcy Code, and any other applicable law.

### 

**Agreed as to form only:**

**PACHULSKI STANG ZIEHL & JONES LLP**

By: /s/_____
Jeffrey N. Pomerantz
Maxim B. Litvak
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
(310) 277-6910

- 27 -

1  Email: jpomerantz@pszjlaw.com
          mlitvak@pszjlaw.com
2
3  **COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

4

5  **Agreed as to form only, and shall not indicate that this <span style="color:blue">Final</span> Order satisfies condition under
   the Credit Agreement nor that the condition is waived:**
6
7  **O'MELVENY & MYERS LLP**

8  By: _/s/_____
   Evan M. Jones
9  400 South Hope Street, 18th Floor
   Los Angeles, California 90071-2899
10 (213) 430-6000
   Email: ejoines@omm.com
11
12 **ATTORNEYS FOR UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                        - 28 -

| Summary report: Litera® Change-Pro for Word 10.8.0.80 Document comparison done on 11/20/2019 1:45:56 PM | |
|---|---|
| **Style name:** OMM Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://OMM_US/77302719/1 | |
| **Modified DMS:** dm://OMM_US/77302719/2 | |
| **Changes:** | |
| Add | 122 |
| Delete | 40 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 1 |
| Table Delete | 1 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 166 |