ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@dgdk.com*
JOHN N. TEDFORD, IV (State Bar No. 205537)
*jtedford@dgdk.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@dgdk.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

*Proposed Attorneys for Michael A. McConnell,
Chapter 11 Trustee*

**FILED & ENTERED**

**NOV 27 2019**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY handy      DEPUTY CLERK

**CHANGES MADE BY COURT**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>HVI CAT CANYON, INC.,<br><br>      Debtor. | Case No. 9:19-bk-11573-MB<br><br>Chapter 11<br><br>**FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE**<br><br>Hearing<br>Date:   November 21, 2019<br>Time:   2:30 p.m.<br>Place:  Courtroom 201<br>         1415 State Street<br>         Santa Barbara, California |

This *Final Order for Emergency Priming and Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee* (this "<u>Final Order</u>") is entered as of November [21], 2019, with respect of the following facts:

On October 4, 2019 the Court denied the *Debtor's Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 Approving Use of Cash Collateral, Providing Adequate Protection and Setting Final Hearing Pursuant to Bankruptcy Rule 4001*[ECF No. 11] (the "<u>Cash Collateral Motion</u>") and the *Motion of the Debtor to Surcharge Collateral Pursuant to 11 U.S.C. §§ 506(c) and 552(b)* [ECF No. 55] (the "<u>Surcharge Motion</u>").

On October 8, 2019, the Court entered an *Agreed Order for Consensual Use of Cash Collateral* [ECF No. 375] (the "<u>Consensual Cash Collateral Order</u>"), whereby UBS AG, London Branch ("<u>UBS AG, London Branch</u>"), the debtor and debtor in possession (the "<u>Debtor</u>"), the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), and GIT, Inc. ("<u>GIT</u>"), in anticipation of a hearing on motions seeking appointment of a Chapter 11 trustee, agreed to use of cash collateral (as that phrase is defined in Section 363(a) of the Bankruptcy Code, "<u>Cash Collateral</u>") for an interim period ending October 25, 2019.  On October 16, 2019, the Court entered the *Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee* [ECF No. 409] and approved appointment of Michael McConnell as the Chapter 11 trustee in this case (the "<u>Trustee</u>") on October 22, 2019 [ECF No. 431].

Shortly before authority for use of Cash Collateral expired under the Consensual Cash Collateral Order, the Trustee and UBS AG, London Branch learned that the Debtor did not have sufficient cash to fund payroll and other operating expenses scheduled for payment.  To address the immediate cash need, on October 24, 2019, the Trustee filed his *Notice of Motion and Trustee's <u>Emergency</u> Motion for (1) Authority to Accept a Partial Prepayment of the Amount Owed by California Asphalt Production, Inc. to the Estate, or in the Alternative for Authority to Obtain*

- 2 -

*"Credit" in the Form of Such Prepayment, and (2) Waiver of any Stay Imposed by FRBP 6004(h);*

*and Memorandum of Points and Authorities, Declaration of Tim Skillman, and Request for Judicial*

*Notice in Support Thereof* [ECF No. 439] (the "Emergency Motion").  Following the October 25,

2019 emergency hearing, the Court entered the *Order Granting Trustee's Emergency Motion for*

*(1) Authority to Accept a Partial Prepayment of the Amount Owed by California Asphalt*

*Production, Inc. to the Estate, or in the Alternative for Authority to Obtain "Credit" in the Form*

*of Such Prepayment, and (2) Waiver of any Stay Imposed by FRBP 6004(h)* [ECF No. 449], granting

authorizing the Trustee to accept a partial prepayment from California Asphalt Production, Inc.

("CAP").

On November 7, 2019, the Trustee filed his *Emergency Motion for an Order: (1)*

*Authorizing the Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing The*

*Continued Use of Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief*

[ECF No. 474] (the "Motion") for authorization to obtain post-petition financing from UBS AG,

Stamford Branch ("UBS AG, Stamford Branch" and together with UBS AG, London Branch,

"UBS") and continue to use the Cash Collateral of UBS AG, London Branch.

On November 8, 2019, the Court conducted an initial interim hearing on the Motion and

entered the *Interim Order on Trustee's Emergency Motion for an Order: (1) Authorizing the*

*Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing Continued Use of*

*Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief* [ECF No. 480]

(the "Interim Order"), authorizing up to $267,317 borrowings through a further interim hearing on

November 12, 2019.

On November 12, 2019, the Court conducted the further interim hearing and authorized

post-petition financing on an interim basis.  On November 18, 2019, the Court entered the *Second*

*Interim Order on Trustee's Emergency Motion for an Order: (1) Authorizing the Trustee to Obtain*

- 3 -

*Secured Priming Superpriority Financing; (2) Authorizing Continued Use of Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief* [ECF No. 524] (the "<u>Second Interim Order</u>").

Based upon the Motion, and the financing pursuant to the credit agreement attached to the Motion and the Trustee's use of Cash Collateral, such use being found necessary to avoid immediate and serious harm to the estate and potential harm to the public health and safety as contemplated by Bankruptcy Rule 4001(b) and (c), a final hearing to consider approval of the Motion having been held on November 21, 2019 (the "<u>Final Hearing</u>"), notice and opportunity for hearing being sufficient under the circumstances, and upon the findings of fact and conclusions of law made by the Court at the interim hearings and the Final Hearing, all of which are incorporated herein by reference, and good cause appearing therefor,

**IT IS HEREBY FOUND AND ORDERED AS FOLLOWS:**

1.      <u>Motion Granted</u>.  The Motion is granted on a final basis and the Facility (as defined below) and the Credit Agreement attached as Exhibit 3 to the Trustee's Declaration (as amended, supplemented or otherwise modified from time to time, the "<u>Credit Agreement</u>") are approved subject to limitations expressly set forth herein.  Any objection to the Motion with respect to entry of this Final Order that have not been withdrawn, waived or settled, and any reservation of rights included therein, are hereby denied and overruled except as expressly set forth herein.  ~~Except as specifically amended, supplemented, or otherwise modified by this Final Order, all provisions of the Second Interim Order remain in full force and effect and are hereby ratified by this Final Order and incorporated herein by reference as though set forth fully below.~~

2.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief granted herein are section 364 of the Bankruptcy Code and Bankruptcy

- 4 -

Rule 4001(c).  Venue of this Chapter 11 proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

3.    <u>Hearing Held; Notice</u>.  The Final Hearing was held pursuant to Bankruptcy Rules 4001(c)(2).  Notice of the Final Hearing and the relief requested in the Motion was given as set forth in the proof of service filed by the Trustee.

4.    <u>No Credit Available on More Favorable Terms</u>.  The Trustee, on behalf of the Debtor and the Debtor's estate, is unable to find sufficient financing from sources other than UBS AG, Stamford Branch on terms more favorable than the terms for the term loan facility (the "<u>Facility</u>") described in the Credit Agreement.

5.    <u>Need for Post-Petition Financing and Use of Cash Collateral</u>.  This financing is critical for the Debtor to continue its operations in the ordinary course.  The Facility, the Trustee's entry into the Credit Agreement, and related relief is necessary to avoid immediate and irreparable harm to the Debtor's estate, its employees, and all parties-in-interest.  The Facility is the best source of financing available to the Debtor under the circumstances and was entered into in good faith and at arm's-length.

6.    <u>Protective Advances</u>.  The advances under the Facility shall constitute advances to protect and preserve the collateral under that certain First Lien Credit Agreement dated as of May 20, 2016 and that certain Second Lien Credit Agreement dated as of May 20, 2016 among the Debtor, Rincon Island Limited Partnership, GOGH, LLC and UBS AG, London Branch (collectively, the "<u>Prepetition Credit Agreements</u>" and the obligations arising thereunder the "<u>Prepetition Obligations</u>") and shall remain subject to any guarantee provided thereunder.  For the avoidance of doubt, all proceeds of the Facility shall constitute Cash Collateral.

7.    <u>Authorization for Emergency Financing</u>.  The Trustee is authorized on a final basis to borrow, and UBS AG, Stamford Branch is authorized to advance, up to $3 million in financing,

- 5 -

under the Credit Agreement, subject to the terms of this Final Order, and in accordance with the budget attached hereto as Exhibit 1 (including all terms and conditions set forth therein and as may be updated from time to time in accordance with the Credit Agreement, the "Budget"), subject to a line-item variance of ten percent (10%) of the expenses set forth in the Budget tested on a cumulative basis by disbursement categories contained in the Budget (the "Permitted Variance"). The Trustee and UBS AG, Stamford Branch are authorized to extend the availability period under the Credit Agreement by up to two weeks and increase the amount of financing by an aggregate amount of up to $500,000 upon mutual agreement of the Trustee and UBS AG, Stamford Branch without further order of this Court.  All advances provided by UBS AG, Stamford Branch under the Facility prior to the Final Hearing, including but not limited to the $197,516 advanced by UBS AG, Stamford Branch on an emergency basis pursuant to the Interim Order and the $994,346 advanced by UBS AG, Stamford Branch pursuant to the Second Interim Order, shall ~~be subject to the terms of the Second Interim Order~~ remain subject to the terms of those orders, ~~as incorporated into this Final Order and,~~ notwithstanding anything to the contrary in this Final Order~~., shall remain senior in priority to all other liens~~.  Any advances provided by UBS AG, Stamford Branch under the Facility after November 21, 2019 shall be subject to the terms of this Final Order and, to the extent Santa Barbara has valid, senior, perfected, and non-avoidable liens for ad valorem taxes under applicable law, shall be junior in priority and subject to such valid, senior, perfected, and non-avoidable ad valorem tax liens in favor of Santa Barbara.  Immediately upon entry of this Final Order, the Trustee shall, and is hereby authorized on a final basis to, execute and deliver to UBS AG, Stamford Branch the Credit Agreement and all other loan documents required to be executed and delivered under the Facility.  The Trustee and counsel acting on behalf of the Trustee are further authorized to take any such actions that may be necessary to implement the Facility and borrow funds under the Credit Agreement as approved in this Final Order, including without limitation to

- 6 -

issue, execute and deliver any such certificates, borrowing requests or other documents and directions that may be requested by UBS AG, Stamford Branch.  Nothing in this Final Order shall create any obligation of UBS to advance or lend any money to the Trustee or the Debtor, and any such advances or loans shall be made by UBS AG, Stamford Branch only in accordance with the terms and conditions of the Credit Agreement and this Final Order.  UBS respectfully notes that, should it agree to any additional financing beyond that provided pursuant to the terms of the Credit Agreement as in effect on the date hereof, and it undertakes no commitment to do so, it anticipates the interest rate for such financing will be higher than that provided hereunder to reflect limitations on the lien granted by this Order and the additional risk associated with such financing.  Any funds advanced or loaned by UBS AG, Stamford Branch shall constitute a bona fide extension of credit to a non-affiliated borrower for purposes of the secured creditor exemption under the Comprehensive Environmental Response, Compensation Liability Act and comparable federal, state and local law.  UBS AG, Stamford Branch shall not be deemed an operator or owner of the Debtor or any of its properties or incur any environmental or similar liabilities, including but not limited to, liability for environmental compliance, remediation, restoration or natural resource damages under any federal, state or local law solely as a result of providing funding, credit or advances to the Trustee.

8.      Based on the record before this Court, it appears (and the Trustee on behalf of the Debtor has stipulated) that the terms of the Facility, the Credit Agreement and this Final Order are fair and reasonable and are supported by reasonably equivalent value and fair consideration.  The Court further finds that the Trustee's agreement to the terms of the Facility and Credit Agreement on behalf of the Debtor is a sound exercise of business judgment and should be approved as set forth herein.

- 7 -

9.      <u>Amendment of the Credit Agreement</u>.  Following entry of this Final Order, the Trustee is authorized to enter into any non-material amendment or modification to the Credit Agreement and the loan documents entered into in connection therewith without further order of this Court.  The Trustee shall promptly provide notice of any such amendment or modification to the Court, the United States Trustee, the Committee and Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California ("<u>Santa Barbara</u>").  To the extent that such modification or amendment is material, such material modification or amendment shall only be permitted pursuant to an order of this Court on notice pursuant to Local Rule 2002-1(b) and a hearing.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the Credit Agreement shall be effective unless set forth in writing, signed by the Trustee and UBS AG, Stamford Branch.  For the avoidance of doubt, an amendment of the availability period of the Facility by up to two weeks and an increase of the amount of the Facility by up to $500,000 in accordance with paragraph 7 of this Final Order shall not constitute a material amendment.  Notwithstanding anything to the contrary in the Credit Agreement, UBS's prior consent to file a Chapter 11 plan is only required if the proposed Chapter 11 plan does not provide for payment of the Obligations in full in cash on the effective date.

10.     <u>Use of Funds</u>.  The Trustee may use funds advanced under the Facility, on the terms and conditions set forth herein and in the Credit Agreement, *provided that* all such funds are used to pay approved operating expenses solely in accordance with the Budget (including all terms and conditions set forth therein).  The Trustee is authorized to use funds advanced under the Facility to pay, or to fund a segregated account to pay, the reasonable fees and expenses for the Trustee's professionals and the Committee' professionals, only to the extent such fees and expenses for the Trustee's professional and the Committee's professionals are included in the Budget and accrued prior to an Event of Default.  The provisions for escrowing of funds shall differ for the Trustee's

- 8 -

professionals and for the Committee professionals, each of whom agrees to such difference. The Budget amount for the Committee professionals shall be $70,000 for the five-week period (which includes the total Investigation Budget (as defined below)) and shall be requested promptly by the Trustee and escrowed immediately upon receipt. Accordingly, once such funds are escrowed, the Committee professionals shall not enjoy the benefits of the Carve-Out set forth in paragraph 16 of this Final Order. The liens of UBS and GLR are subordinated in such escrow funds to the extent professional fees and expenses are awarded to the professionals. With regard to the Trustee's professionals, in addition to the escrowed fund, they shall enjoy the benefit of the Carve-Out set forth in paragraph 16 of this Final Order. For the avoidance of doubt, the funds advanced under the Facility shall not be used for payment of any expense not specifically included and/or not approved for payment under the Budget or otherwise authorized by this Final Order.

11. <u>Liens, Collateral and Obligations</u>. Without limiting the approval set forth above, the Court grants as follows:

(i)    Except as set forth below, pursuant to section 364(c) and 364(d) of the Bankruptcy Code, UBS AG, Stamford Branch is granted valid and perfected first priority priming and senior security interests and liens (the "<u>Financing Liens</u>") in all property of the estate of the Debtor, including, but not limited to all of the Debtor's rights in tangible and intangible assets, including without limitation, all prepetition and post-petition assets of the Debtor's estate, whether existing on or as of the Petition Date or thereafter acquired, including without limitation, the Debtor's interest in oil and gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating thereto), wells, accounts receivable, other rights to payment, any right to receive any residual of any retainer provided to any professionals after payment of such professional's allowed fees and expenses, cash, inventory, general intangibles, contracts, servicing rights, swap and hedge proceeds and termination payments, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under sections 510 or 542 through 553 of the Bankruptcy Code, except as noted below), commercial tort claims, and the proceeds of all of the foregoing (the "<u>Collateral</u>") or proceeds thereof. The Financing Liens granted to UBS AG, Stamford Branch are valid, perfected and enforceable first priority priming and senior liens on all the Collateral that are superior to all other prepetition or post-petition liens, claims or security

- 9 -

interests in favor of any other lienholder, other than the Carve-Out (as defined below) and any valid, senior, perfected and non-avoidable ad valorem tax liens in favor of Santa Barbara (subject to the limitation set forth in paragraph 38 below). For the avoidance of doubt, the Financing Liens granted to UBS AG, Stamford Branch under the Second Interim Order for funds advanced prior to the Final Hearing shall remain senior in priority to any valid and perfected ad valorem tax liens. Notwithstanding anything to the contrary herein, the Financing Liens granted herein shall not attach to (a) avoidance claims of the estate against any party other than the Debtor's current and former insiders and affiliates or (b) the proceeds thereof. The Financing Lien shall only secure the Obligations (as defined below). UBS agrees, for the benefit of the Trustee and the Committee, that it will not look to recover from avoidance claims or proceeds without first making a reasonable good faith effort to collect from Prepetition Collateral (as defined below) to satisfy the Obligations.

(ii)     The Financing Liens against the assets of the Debtor and the Collateral shall be, and hereby are, confirmed, and extend to and secure all obligations and indebtedness of the Trustee on behalf of the Debtor and the Debtor's estate to UBS AG, Stamford Branch under the Facility and the Credit Agreement (the "Obligations").  The Financing Liens shall be, and are hereby determined to be, first priority priming and senior liens that are superior to all other liens, claims or security interests, pre- or post-petition, other than the Carve-Out (as defined below) and any valid, senior, perfected and non-avoidable ad valorem tax liens in favor of Santa Barbara (subject to the limitation set forth in paragraph 38 below), except as specifically set forth in this Final Order.  This Final Order shall be deemed to grant and perfect, and be sufficient and conclusive evidence of the validity, perfection and priority of the Financing Liens.  UBS AG, Stamford Branch may, but shall not be required, to file or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Financing Liens granted to them pursuant to this Final Order, and the stay imposed under section 362 of the Bankruptcy Code is hereby modified solely to permit the same.  If UBS AG, Stamford Branch shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of and the Financing Liens, the Financing Liens granted herein shall be deemed perfected at the time and on the date of entry of this Final Order.  Upon request by UBS AG, Stamford Branch, the Trustee is authorized, without the further consent of any party, to take any actions and to execute and deliver such instruments as may be necessary to enable UBS AG, Stamford Branch to further perfect, preserve and enforce the Financing Liens granted to UBS AG, Stamford Branch by this Final Order.

(iii)    For all Obligations, UBS AG, Stamford Branch is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "Financing Superpriority Claim") having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Trustee on behalf of the Debtor and/or the Debtor, whether now in existence or incurred by the Trustee on behalf of the Debtor and/or the Debtor after the Petition Date, and over any and all

- 10 -

administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(b), 507(a), 364(c)(1), 564(c), or 726 of the Bankruptcy Code, other than the Carve-Out (as defined below). Notwithstanding anything to the contrary herein, the Financing Superpriority Claim granted herein shall not be payable from (a) avoidance claims of the estate against any party other than the Debtor's current and former insiders and affiliates or (b) the proceeds thereof. UBS agrees, for the benefit of the Trustee and the Committee, that it will not look to recover from avoidance claims or proceeds without first making a reasonable good faith effort to collect from Prepetition Collateral (as defined below) to satisfy the Obligations. UBS agrees to observe any requirements of marshaling under applicable law.

12.    <u>Use of Cash Collateral</u>. The Trustee may use Cash Collateral, on the terms and conditions set forth herein solely in accordance with the Budget until the date that is the earliest of (a) November 29, 2019, (b) the occurrence of an Event of Default (as defined in the Credit Agreement), and (c) the breach or failure of the Trustee or the Debtor to comply with the terms of this Final Order (the date of the occurrence of the earliest of (a), (b) and (c), the "<u>Termination Date</u>"). To the extent the Debtor holds an interest, all funds and cash investments of Debtor, including any funds on deposit at any banks or other institutions as of the Petition Date, are Cash Collateral of UBS AG, London Branch within the meaning of 11 U.S.C. § 363(a). In addition, all cash proceeds of the Prepetition Collateral (as defined below) (and investments thereof) received by the Debtor, the Trustee, or the estate of the Debtor after the Petition Date are Cash Collateral of UBS AG, London Branch within the meaning of 11 U.S.C. § 363(a). The Trustee shall not use any Cash Collateral except as permitted herein or as otherwise approved by this Court.

13.    <u>Compliance with the Budget</u>. Except as otherwise set forth herein, the Trustee is hereby authorized to use all Cash Collateral until the Termination Date to pay the ordinary course operating expenses of Debtor's estate solely in accordance with the Budget (including all terms and conditions set forth therein), subject to the Permitted Variance.

14.    <u>Limitations on Use of Proceeds and Cash Collateral</u>. The Trustee shall notify Huron Consulting Group ("<u>Huron</u>"), via email to both mkehl@huronconsultinggroup.com and

- 11 -

azughayer@huronconsultinggroup.com, of any payments that exceed $7,500 not less than 36 hours prior to initiating such payment (a "Proposed Payment"). If Huron does not object to the Proposed Payment within 36 hours by email to the Trustee at michael.mcconnell@kellyhart.com, the Trustee may proceed to make such payment. Should Huron object to the Proposed Payment, such payment shall not be made without further order of the Court. The Trustee and UBS consent to judicial intervention on an expedited basis to determine whether such Proposed Payment may proceed. Any payments to be made under the Budget to Santa Barbara, departments or agencies of the County of Santa Barbara, and the Santa Barbara County Air Pollution Control District (the "APCD") must be approved by Huron. If approved, such payments shall be made timely in accordance with the Budget. For the avoidance of doubt, no payments shall be made to GIT pursuant to this Final Order for prepetition work or claims other than reimbursement with regard to the Debtor's employees. None of the Cash Collateral or the proceeds of the Facility, subject only to the Investigation Budget (as defined below), shall be used (i) to challenge UBS's claims and/or liens or (ii) to prevent or hinder UBS from exercising its rights or remedies.

15.    Absent further order of the Court or written consent of UBS for payments specifically designated as a royalty payment or surface lease payment to an insider or affiliate, neither Debtor nor the Trustee shall make the following payments directly or indirectly: (i) any royalty payments or surface lease payments to insiders or affiliates of the Debtor or (ii) any payment of professional fees for the Debtor or any committee, but the Trustee shall hold any such payments provided for in the Budget in an interest-bearing escrow or segregated account. All such issues are expressly reserved for future determination. The Budget includes certain items for accounting purposes only; this Final Order does not permit payment of these items. Notwithstanding anything to the contrary, the proceeds of the Facility and Cash Collateral shall only be used to pay those items in the Budget that have been specifically approved by UBS or Huron and to escrow payments

- 12 -

as set forth above.  For the avoidance of doubt, neither the Debtor nor the Trustee has any authority

to make, directly or indirectly, any (i) insider or affiliate royalty payments; (ii) insider or affiliate

surface lease payments; (iii) professional fee payments, except payments authorized for the

Trustee's professionals or Committee's professionals under this Final Order; or (iv) other payments

which are listed below the line in the Budget for accounting purposes but not authorized by this

Final Order, regardless of whether any such payments listed in (i)-(iv) are included in the Budget.

      16.    <u>Carve-Out</u>.  There shall be a subordination of the Financing Liens and Financing

Superpriority Claim granted to UBS AG, Stamford Branch on the Collateral, and the Adequate

Protection Liens (as defined below) granted to UBS AG, London Branch on the Post-Petition

Collateral and GLR on the Prepetition Collateral, and Adequate Protection Superpriority Claim (as

defined below) granted to UBS AG, London Branch on the Post-Petition Collateral for the

aggregate amount of reasonable professional fees and expenses for the Trustee's professionals,

provided that such amount for the Trustee's professionals shall not exceed 25% of the amounts set

forth in the Budget and accrued prior to occurrence of an Event of Default (the "<u>Carve-Out</u>").  If,

for any reason, any portion of the sum of $70,000 budgeted for the Committee's professionals (up

to $50,000 of which is for the Committee's Investigation Budget (as defined below)) is not funded

to an escrowed account by the Trustee pursuant to paragraph 10 hereof, then such amount shall also

constitute a part of the Carve-Out.  Notwithstanding the foregoing, following the occurrence of an

Event of Default, the Carve-Out shall include any withheld portion of the fees and expenses for the

Trustee's professionals accrued prior to such date and set forth in the Budget, and an additional

amount not exceed $15,000 in the aggregate from and after a written notice of default.  It is the

intention of this Final Order that the combination of the escrowed amounts under paragraph 10 plus

the Carve-Out equals 100% of the Budgeted fees and expenses for the Committee's professionals

and 125% of the Budgeted fees and expenses for the Trustee's professionals accrued prior to an

- 13 -

Event of Default plus the $15,000 provided in the prior sentence after a written notice of default, if applicable.  All such professionals having consented to the differential mechanics.  Nothing in this Final Order shall be construed to impair the ability of UBS to object to any fees, expenses, reimbursements, or compensation sought by the Trustee.  The Carve-Out shall not be used to investigate or commence or continue any action or proceeding against UBS, subject only to the Investigation Budget (as defined below).

17.    <u>Reporting Requirements</u>.  As a condition to use funds advanced under the Facility and Cash Collateral, the Trustee shall provide to UBS and the Committee a variance report reasonably acceptable to UBS on a weekly basis during the period for which use of such funds and Cash Collateral is permitted under this Final Order and any subsequent order, which shall be delivered by the Wednesday of the following week.  Reporting of monthly sales revenue shall be no later than 5 business days following the end of the month.  In addition, the Trustee and its representatives and agents shall provide to UBS and the Committee weekly reports, oral and/or written, regarding the status of operations and financial matters as well as any additional information reasonably requested by UBS.

18.    <u>Additional Covenants</u>.

(i)    No later than November 18, 2019, the Trustee shall file an application in form and substance reasonably acceptable to UBS to retain persons acceptable to UBS on terms acceptable to UBS to provide a reserve report regarding the Debtor's hydrocarbon assets.

(ii)    No later than November 18, 2019, the Trustee shall file an application in form and substance reasonably acceptable to UBS to retain persons acceptable to UBS on terms acceptable to UBS to conduct a Phase I environmental study regarding the Debtor's hydrocarbon assets and operations.

(iii)    On or before November 18, 2019, the Trustee shall provide one or more reports to UBS as to the Trustee's efforts to stabilize and improve Debtor's operations and revenues, including efforts to maximize sale revenues for the benefit of the estate.

- 14 -

(iv)    No later than November 18, 2019, the Trustee shall provide UBS with a 13-week cash flow budget in form and substance reasonably acceptable to UBS.

(v)    The Debtor shall obtain and collect a minimum monthly sales revenue of $750,000, measured as of the last day of each month.

19.    <u>Adequate Protection</u>.  UBS AG, London Branch is entitled, pursuant to 11 U.S.C. §§ 361 and 363(e), to adequate protection from any diminution in value of its interests in the collateral securing the Prepetition Obligations, including the Cash Collateral (collectively, the "<u>Prepetition Collateral</u>"), including, without limitation, any such diminution resulting from use by Debtor or the Trustee of Cash Collateral and any other collateral, and the imposition of the automatic stay pursuant to 11 U.S.C. § 362 (such diminution in value the "<u>Adequate Protection Obligations</u>").  Based on the Court's prior findings regarding the value of Prepetition Collateral in connection with the Cash Collateral hearings, Santa Barbara is adequately protected for priming and use of Cash Collateral under this Final Order.

20.    <u>Adequate Protection – Replacement and Additional Liens</u>.  As partial adequate protection for the Adequate Protection Obligations, effective upon the commencement of this case and without the necessity of the execution by Debtor, the Trustee or UBS AG, London Branch of any mortgages, security agreements, pledge agreements, financing statements or otherwise, the following additional and replacement security interests and liens are hereby granted to UBS AG, London Branch (the "<u>Senior Adequate Protection Liens</u>"), subject only to (i) liens on the Collateral in favor of UBS AG, Stamford Branch to secure the Obligations, (ii) valid and perfected non-avoidable liens in existence on the Petition Date that are senior in priority to the liens securing the prepetition claims of UBS AG, London Branch, and (iii) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by 11 U.S.C. § 546(b) that are senior in priority to the liens securing the prepetition claims of UBS AG, London Branch (subject to the limitation set forth in paragraph 38 below) ((i)–(iii) collectively, the "<u>Permitted Liens</u>"):  (a)

- 15 -

to the full extent of any diminution in value of the Prepetition Collateral, a perfected first priority senior security interest in and lien upon all cash of Debtor and any investment of the funds of Debtor, whether existing on the Petition Date or thereafter acquired as of the date hereof and as of the Petition Date; and (b) to the full extent of any diminution in value of the Prepetition Collateral, a perfected first priority senior security interest in and lien upon all other pre- and post-petition property of Debtor, whether existing on the Petition Date or thereafter acquired, including, without limitation, all accounts, cash, Cash Collateral, deposit accounts, chattel paper, instruments, documents, investment property, supporting obligations, customer lists, letter of credit rights, inventory, fixtures, equipment, general intangibles, goods, patents, copyrights and trademarks as well as all products and proceeds of any of the foregoing and books and records relating to any of the foregoing and to Debtor's business and the proceeds of all of the foregoing (collectively, the "Post-Petition Collateral").  For the avoidance of doubt, in accordance with paragraph 24 of this Final Order, the Senior Adequate Protection Liens granted herein shall not attach to avoidance claims of the estate or proceeds thereof.  The Senior Adequate Protection Liens granted under this Final Order shall be junior only to the Permitted Liens and the Carve-Out.

21.    GLR, LLC ("GLR") shall be entitled to, as adequate protection for its interest in Prepetition Collateral, effective upon the appointment of the Trustee and without the necessity of the execution by Debtor, the Trustee or GLR of any mortgages, security agreements, pledge agreements, financing statements or otherwise, the following additional and replacement security interests and liens which are hereby granted to GLR (the "Junior Adequate Protection Liens" and together with the Senior Adequate Protection Liens, the "Adequate Protection Liens"), subject only to the Permitted Liens to the full extent of any diminution in value of the Prepetition Collateral, and only to the extent of the validity, priority, and enforceability of GLR's prepetition lien in the Prepetition Collateral, a perfected replacement security interest in and lien upon the Prepetition

- 16 -

Collateral and all proceeds thereof, whether existing on the Petition Date or thereafter acquired. For the avoidance of doubt, in accordance with paragraph 24 of this Final Order, the Junior Adequate Protection Liens granted herein shall not attach to avoidance claims of the estate or proceeds thereof. The Junior Adequate Protection Liens shall be junior only to the Permitted Liens, the Carve-Out, and the Senior Adequate Protection Liens.

22.    <u>Adequate Protection for the Use of Cash Collateral – Superpriority Claim</u>. To the extent the Post-Petition Collateral granted to UBS AG, London Branch herein does not provide adequate protection of its interests in the Cash Collateral, the Adequate Protection Obligations shall constitute a super-priority administrative expense claim under Section 507(b) of the Bankruptcy Code ("<u>Adequate Protection Superpriority Claim</u>"). The Adequate Protection Superpriority Claim shall have priority over all administrative expenses of any kind or any subsequently filed bankruptcy case under any Chapter of the Bankruptcy Code in any court of competent jurisdiction, including such administrative expenses of the kinds specified in, or allowable under, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code, subject only to the Financing Superpriority Claim and the Carve-Out. Additionally, no:  (i) costs or expenses of administration which have been or may be incurred (a) in the Chapter 11 Case; (b) after conversion of the Chapter 11 Case to a case proceeding under Chapter 7 of the Bankruptcy Code, or (c) in any other proceeding related hereto; and/or (ii) priority claims as defined in Section 507(a) of the Bankruptcy Code are, or will be, senior to or *pari passu* with the Adequate Protection Superpriority Claim other than the Financing Superpriority Claim and the Carve-Out. For the avoidance of doubt, in accordance with paragraph 24 of this Final Order, the Adequate Protection Superpriority Claims granted herein shall not attach to avoidance claims of the estate or proceeds thereof.

23.    <u>Perfection of Adequate Protection Liens</u>. This Final Order shall be deemed to grant and perfect, and be sufficient and conclusive evidence of the validity, perfection and priority of the

- 17 -

Adequate Protection Liens as of the Petition Date.  UBS AG, London Branch may, but shall not be required, to file or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Adequate Protection Liens granted to them pursuant to this Final Order, and the stay imposed under section 362 of the Bankruptcy Code is hereby modified solely to permit the same.  If UBS AG, London Branch shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of and the Adequate Protection Liens, the Adequate Protection Liens granted herein shall be deemed perfected at the time and on the date of entry of this Final Order.  Upon request by UBS AG, London Branch, the Trustee is authorized, without the further consent of any party, to take any actions and to execute and deliver such instruments as may be necessary to enable UBS AG, London Branch to further perfect, preserve and enforce the Adequate Protection Liens granted to UBS AG, London Branch by this Final Order.

24.    The Adequate Protection Liens granted by this Final Order and the Adequate Protection Superpriority Claim granted by this Final Order shall not attach to avoidance claims of the estate or proceeds thereof.  For the avoidance of doubt, nothing in this Final Order shall prevent UBS from asserting claims against or participating in such claims or proceeds under any other basis, including with respect to the Financing Liens.  Without limiting the foregoing, this provision shall not be retroactive, such that nothing in the Final Order shall alter or change the status of, or impose any limitation or agreement on, any lien or claim against such avoidance actions of proceeds thereof with regard to use of Prepetition Collateral or Cash Collateral granted by any order entered in this case prior to the date hereof.  Nothing herein shall impair or modify UBS AG, London Branch's rights to seek additional adequate protection pursuant to section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to UBS AG, London Branch hereunder is

- 18 -

insufficient to compensate for any diminution in value of its interests in the Cash Collateral or any other Prepetition Collateral during this case or any successor case.

25.    <u>Termination of Cash Collateral Use</u>.  On the Termination Date, the Trustee's right to use the Cash Collateral on the terms and conditions set forth in this Final Order shall terminate automatically.  By written agreement, UBS AG, London Branch may agree to waive such termination in full or permit only limited use of Cash Collateral in any manner following such event.

26.    <u>Budget Amendments</u>.  UBS may, but is not required to, by written agreement, amend the Budget, including to, among other things, extend the date through which Cash Collateral may be used and to increase the amount of Cash Collateral that may be used thereunder; *provided, however*, that any amendment to the Budget made pursuant to the authority set forth in this Final Order shall be subject to the following conditions and limitations:

(a) any such amendment shall not alter the nature and types of payments that were authorized under this Final Order; and

(b) any such amendment shall require the consent of the Trustee.

The foregoing conditions and limitations are intended to apply only to consensual changes to the Budget that are made pursuant to the authority of this Final Order.

27.    Upon entry of a written amendment in compliance with the foregoing, the new agreed budget shall constitute the Budget for all purposes under this Final Order and the Credit Agreement.

28.    Promptly following the amendment of the Budget in accordance with the foregoing, the Trustee shall promptly file notice with this Court, and provide notice of such entry to all parties entitled to notice.

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

29.    <u>Reservation of Rights</u>.  The right of the Trustee to seek additional or different use of Cash Collateral is specifically preserved, *provided that* upon filing of any such request, UBS AG, London Branch may by written notice terminate authorization to use Cash Collateral pursuant to this Final Order, or may agree to permit only use of Cash Collateral in any limited manner following such event; *provided, however*, any action seeking additional or different use of Cash Collateral without the express written consent of UBS shall immediately result in the occurrence of the Termination Date.

30.    <u>Remedies on Event of Default</u>.  If an Event of Default occurs, UBS AG, Stamford Branch shall have the right without any notice of further order of the Court to take any and all actions and pursue all remedies permitted under the Credit Agreement and applicable law in response to such Event of Default, subject to the requirements of paragraph 31 below.  UBS AG, Stamford Branch shall have the right to exercise any remedies under the Credit Agreement and applicable law on five days' notice to the Trustee, the Committee, the United States Trustee, and Santa Barbara.

31.    The automatic stay of section 362(a) of the Bankruptcy Code shall be and hereby is modified and vacated without further order, notice or application to the Court to the extent necessary to allow UBS to perform any act authorized by this Final Order.  If an Event of Default occurs, UBS AG, Stamford Branch shall have the right to seek an order on five days' notice to the Trustee, the Committee, the United States Trustee, and Santa Barbara lifting the automatic stay to permit UBS AG, Stamford Branch to foreclose on the Collateral or alternatively, compelling the Trustee to sell the Collateral pursuant to section 363(b) of the Bankruptcy Code.  Such motion may be accompanied by an affidavit on behalf of UBS AG, Stamford Branch stating that an Event of Default has occurred and setting forth the facts of such Event of Default.  Any party opposing the

- 20 -

relief requested by UBS AG, Stamford Branch shall have the burden of proof why the automatic

stay should not be lifted with respect to the Collateral.

32.    <u>Further Assurances</u>.  No further actions shall be required to reflect the Financing

Liens or Adequate Protection Liens granted to UBS or the Obligations or Adequate Protection

Obligations incurred by the Trustee or the Debtor.  Notwithstanding the foregoing, the Trustee and

UBS are granted authority to take any such actions and execute any such documents as they may

deem appropriate to reflect the Financing Liens and the Adequate Protection Liens granted to UBS

or the Obligations incurred by the Trustee or the Debtor, including without limitation execution

and delivery of one or more notes, deeds of trust, financing agreements and all other actions as

UBS may reasonably request.

33.    <u>Section 506(c) Waiver</u>.  All rights of the Debtor, the Trustee, and the estate to

surcharge the collateral of UBS are hereby waived for rights accruing during the period that the

Trustee receives advances or is authorized to use Cash Collateral pursuant to this Final Order or

the Credit Agreement, provided that, as consideration for such waiver, the Trustee shall be

authorized to obtain advances and use Cash Collateral for expenses in the Budget prior to any Event

of Default or Termination Date, and further provided that the waiver shall apply whether or not the

Trustee actually uses such advance or Cash Collateral for a specific expense set forth in the Budget

or uses them for another purpose so long as such funds are actually disbursed by the Trustee.

34.    <u>Right to Credit Bid</u>.  UBS shall have the right to credit bid up to the full amount of

its outstanding Obligations and Prepetition Obligations in connection with any sale of the Debtor's

assets, the Prepetition Collateral, the Post-Petition Collateral or the Collateral under section 363 of

the Bankruptcy Code.  If UBS transfers all or any portion of its claims, the right of the transferee

to credit bid shall remain subject to a challenge "for cause" under section 363(k) of the Bankruptcy

Code solely based upon the transfer, the actions of the transferee, or events arising after such

- 21 -

transfer.  All defenses to any such challenge to the credit bid rights of a transferee are preserved.

Nothing herein shall constitute consent by UBS to any sale of such assets, Prepetition Collateral,

the Post-Petition Collateral or the Collateral.

35.    Successors and Assigns.  The provisions of this Final Order shall be binding upon

UBS, the Debtor, the Trustee and their respective successors and assigns (including any other

trustee hereinafter appointed or elected for the Debtor's estate) and inure to the benefit of UBS, the

Trustee and the Debtor and their respective successors and assigns.

36.    Compliance with Laws.  Nothing in this Final Order or the Budget shall permit the

Debtor or the Trustee to violate 28 U.S.C. § 959(b), and nothing in this Final Order or the Budget

shall in any way diminish the obligation of any entity, including the Debtor and the Trustee, to

comply with environmental laws.

37.    Priority.  Except as set forth herein with respect to the Financing Liens, nothing in

this Final Order shall determine or effect the relative priority of any senior prepetition lien or post-

petition lien, and all rights are expressly reserved in that regard.  All rights are expressly reserved

with respect to whether any asset is cash collateral for any entity other than UBS and thus any

entitlement of such other entities to adequate protection, including without limitation any

superpriority claim.

38.    To the extent Santa Barbara has valid, senior, perfected, and non-avoidable liens for

ad valorem taxes, penalties, interest, and attorneys' fees under applicable law, the Financing Liens

and Adequate Protection Liens granted to secure Obligations incurred under the Facility after the

Final Hearing on November 21, 2019 in accordance with this Final Order shall be junior in priority

and subject to such valid, senior, perfected, and non-avoidable ad valorem tax liens in favor of

Santa Barbara only to the extent of such lien on the Collateral.  For the avoidance of doubt, the

Financing Liens, Financing Superpriority Claim, Adequate Protection Liens, and the Adequate

- 22 -

Protection Superpriority Claim granted to UBS AG, Stamford Branch under the Second Interim Order to secure all Obligations advanced by UBS AG, Stamford Branch pursuant to the Interim Order and Second Interim Order prior to November 21, 2019 are valid, perfected and enforceable first priority priming and senior liens on all the Collateral that are superior to all other prepetition or post-petition liens, claims or security interests in favor of any other lienholder (including any valid, perfected, enforceable and non-avoidable ad valorem tax liens), other than the Carve-Out. Nothing in this Final Order shall determine the priority, amount, and extent of the Santa Barbara ad valorem tax liens or claims. All rights with regard to priority, amount, and extent of the Santa Barbara tax liens or claims are fully preserved.

39.     <u>Effect of Final Order</u>. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay, shall not affect (i) the validity of any Adequate Protection Obligations incurred before the actual receipt of written notice by UBS AG, London Branch of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby. Notwithstanding any such reversal, modification, vacatur or stay, any use of the Facility proceeds or Cash Collateral or Obligations or Adequate Protection Obligations incurred by Debtor or the Trustee to UBS before the actual receipt of written notice by UBS of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the original provisions of this Final Order, and UBS shall be entitled to all the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and this Final Order with respect to all uses of the Facility proceeds or Cash Collateral and the Obligations or Adequate Protection Obligations.

40.     Except as expressly provided in this Final Order, the Financing Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of UBS granted by the provisions of this Final Order shall survive,

- 23 -

and shall not be modified, impaired or discharged by (i) the entry of an order converting the case to a case under chapter 7, dismissing of the case, or by any other act or omission or (ii) the entry of an order confirming a plan in the case. The terms and provisions of this Final Order shall continue in this case, or in any superseding chapter 7 case under the Bankruptcy Code, and the Financing Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of UBS granted by the provisions of this Final Order shall continue in full force and effect until the Obligations and the Adequate Protection Obligations are indefeasibly paid in full.

41.     _Findings of Fact and Conclusions of Law_. This Final Order shall constitute findings of fact and conclusions of law of the Court and shall take effect immediately upon execution hereof.

42.     _Filing_. This Final Order may be filed in any state or local jurisdiction in order to evidence and perfect UBS's liens and security interests, as granted and confirmed herein. At the request of UBS's counsel, the clerk of court shall issue a certified copy of this Final Order and shall execute such other certificates or affidavits of authenticity as may be reasonably necessary to put this Final Order in a form that may be accepted by the applicable filing office.

43.     _Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code_. The terms of the Facility, Credit Agreement, and this Final Order were negotiated in good faith and at arms' length among the Trustee and UBS. Financing provided under the Facility and the Credit Agreement shall be deemed to have been extended in good faith and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code.

44.     _Stipulations_. Effective upon the expiration of the Challenge Period (as defined below), the Trustee will be deemed to have admitted, acknowledged, agreed and stipulated that: (i) the amount due to UBS under the Prepetition Credit Agreements, as of June 30, 2019, is approximately $127 million, plus such allowable interest, fees and charges as may accrue

- 24 -

thereafter; (ii) the Prepetition Obligations constitute legal, valid, enforceable and binding obligations of the Debtor; (iii) no offsets, defenses or counterclaims to the Prepetition Obligations exist; (iv) no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (v) the Prepetition Credit Agreements are valid and enforceable by UBS AG, London Branch against the Debtor; (vi) the liens and security interests in the Prepetition Collateral securing the Prepetition Obligations (the "Prepetition Liens") were perfected as of the Petition Date and constitute legal, valid, binding, enforceable and perfected liens in and to the Prepetition Collateral and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and such liens had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens expressly permitted by the Prepetition Credit Agreements (to the extent any such permitted liens were legal, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date or thereafter pursuant to section 546(b) of the Bankruptcy Code); (vii) the Prepetition Obligations constitute allowed secured claims against the Debtor's estate to the extent of the Collateral; and (viii) the Debtor and its estate have no claim, objection, challenge or cause of action against UBS or any of its affiliates, parents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), in connection with any of the Prepetition Credit Agreements (or the transactions contemplated thereunder), the Prepetition Obligations or the Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery.

- 25 -

45.    <u>Effect of Stipulations on Third Parties</u>.  The stipulations, admissions, agreements and releases contained in this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in this case, and any other person or entity acting or seeking to act on behalf of the Debtor's estate, including the Trustee in all circumstances and for all purposes unless:  (a) any party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court or, in the case of the Committee, upon the filing of a motion seeking such standing, has timely and properly filed an adversary proceeding, contested matter, or as to the Committee, motion seeking standing (subject to the limitations contained herein) by no later than a date that is the later of (i) January 13, 2020; (ii) any later date agreed to by UBS AG, London Branch in writing in its sole discretion; and (iii) any such later date ordered by the Court for good cause shown after notice and an opportunity to be heard, *provided that* the motion seeking such relief is filed before the expiration of any applicable period as set forth in clauses (i)–(iii) of this sentence (the "<u>Challenge Period</u>"), (A) objecting to or challenging the validity, perfection, enforceability, priority or extent of the Prepetition Obligations, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims through or on behalf of the Debtor's estate against UBS AG, London Branch (collectively, the "<u>Challenge Proceeding</u>"); and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge Proceeding; *provided, however*, that any pleadings filed in connection with any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, such filing shall immediately result in the occurrence of the Termination Date.

- 26 -

46.     If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding:  (i) any and all Challenge Proceedings or potential Challenge Proceedings shall be deemed to be forever waived and barred; (ii) all stipulations, admissions, agreements and releases contained in this Final Order shall be irrevocably and forever binding on all parties in interest; (iii) the Prepetition Liens shall be deemed to constitute valid, binding, and enforceable encumbrances, and not subject to avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtor shall be deemed to have released, waived and discharged UBS AG, London Branch from any and all obligations and liabilities to the Debtor and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date.

47.     If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order shall nonetheless remain binding and preclusive on all persons and entities, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  UBS AG, London Branch reserves all of its rights to contest on any grounds any Challenge Proceeding. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in this case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate.

48.     The Trustee may use the funds advanced under the Facility to investigate (i) the claims and liens of UBS AG, London Branch and (ii) potential claims, counterclaims, causes of action or defenses against UBS AG, London Branch; *provided that* no more than an aggregate of $5,000 of the funds advanced under the Facility may be used by the Trustee in respect of any such investigation (the "Trustee's Investigation Budget") and $50,000 of the funds advanced under the

- 27 -

Facility may be used by the Committee in respect of any such investigation (the "Committee's Investigation Budget" and together with the Trustee's Investigation Budget, the "Investigation Budget").  The Committee's Investigation Budget represents the total amount of funds advanced under the Facility that may be used by the Committee in respect of any such investigation during this bankruptcy case.

49.    <u>No Stay</u>.  There is no stay of this Final Order, including no stay pursuant to Federal Rule of Bankruptcy Procedure 6004(h) (to the extent applicable).

# # #

Date: November 27, 2019

Martin R Barash
United States Bankruptcy Judge

- 28 -

1

###

2

**Agreed as to form only:**

3

**PACHULSKI STANG ZIEHL & JONES LLP**

4

By: _[signature]_

5

Jeffrey N. Pomerantz

6
Maxim B. Litvak
10100 Santa Monica Blvd., 13th Floor

7
Los Angeles, California 90067
(310) 277-6910

8
Email: jpomerantz@pszjlaw.com

9
        mlitvak@pszjlaw.com

10

**COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

11

**SNOW SPENCE GREEN LLP**

12

13
By:_____
W. Ross Spence

14
2929 Allen Parkway, Suite 2800
Houston, Texas 77019

15
(713) 335-4800
Email: ross@snowspencelaw.com

16

17
**ATTORNEYS FOR THE COUNTY OF SANTA BARBARA, CALIFORNIA; HARRY E.
HAGEN, AS TREASURER-TAX COLLECTOR OF THE COUNTY OF SANTA**

18
**BARBARA, CALIFORNIA; AND THE SANTA BARBARA COUNTY AIR POLLUTION
CONTROL DISTRICT**

19

20
**Agreed as to form only, and shall not indicate that this Final Order satisfies condition under**

21
**the Credit Agreement nor that the condition is waived:**

22
**O'MELVENY & MYERS LLP**

23
By:_____

24
Evan M. Jones
400 South Hope Street, 18th Floor

25
Los Angeles, California 90071-2899
(213) 430-6000

26
Email: ejoines@omm.com

27
**ATTORNEYS FOR UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH**

28
- 28 -

1                                      ###

2      Agreed as to form only:

3
       PACHULSKI STANG ZIEHL & JONES LLP
4
       By:_____
5      Jeffrey N. Pomerantz
6      Maxim B. Litvak
       10100 Santa Monica Blvd., 13th Floor
7      Los Angeles, California 90067
       (310) 277-6910
8      Email: jpomerantz@pszjlaw.com
9             mlitvak@pszjlaw.com

10     COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

11
       SNOW SPENCE GREEN LLP
12
13     By:_____
       W. Ross Spence
14     2929 Allen Parkway, Suite 2800
       Houston, Texas 77019
15     (713) 335-4800
       Email: ross@snowspencelaw.com
16
17     ATTORNEYS FOR THE COUNTY OF SANTA BARBARA, CALIFORNIA; HARRY E.
       HAGEN, AS TREASURER-TAX COLLECTOR OF THE COUNTY OF SANTA
18     BARBARA, CALIFORNIA; AND THE SANTA BARBARA COUNTY AIR POLLUTION
       CONTROL DISTRICT
19

20     Agreed as to form only, and shall not indicate that this Final Order satisfies condition under
21     the Credit Agreement nor that the condition is waived:

22     O'MELVENY & MYERS LLP

23     By:_____
24     Evan M. Jones
       400 South Hope Street, 18th Floor
25     Los Angeles, California 90071-2899
       (213) 430-6000
26     Email: ejoines@omm.com

27     ATTORNEYS FOR UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH
                                        - 28 -
28     _____
       FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
       CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

# EXHIBIT 1

| Notes | HVI CAT CANYON INC. weeks 14-18 budget week starting | Forecast Week 14 28-Oct-19 | Forecast Week 15 4-Nov-19 | Forecast Week 16 11-Nov-19 | Forecast Week 17 18-Nov-19 | Forecast Week 18 25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | Beginning Cash Balance | 36,784 | - | - | - | - | 36,784 |
| | | | | | | | |
| 2 | Cash Inflows | | | | | | |
| 3 | SMV | - | 12,000 | - | 1,460,858 | - | 1,472,858 |
| | Redu | - | - | - | 49,917 | - | 49,917 |
| | Belridge | - | - | - | 58,155 | - | 58,155 |
| | Total Cash Inflows | - | 12,000 | - | 1,568,931 | - | 1,580,931 |
| | | | | | | | |
| 4 | Royalties | - | (118,392) | - | (141,171) | - | (259,562) |
| 5 | Escrow Royalties | - | (27,690) | - | (27,148) | - | (54,838) |
| | Total Net Cash Inflows | - | (134,081) | - | 1,400,611 | - | 1,266,530 |
| | | | | | | | |
| | Cash Outflows | | | | | | |
| 6 | Operating Expenses | | | | | | |
| 7 | Payroll Checks | - | 76,000 | - | 76,000 | - | 152,000 |
| 8 | Payroll Taxes | 28,763 | - | 29,000 | - | 29,000 | 86,763 |
| | Garnishment & Child Support | - | 2,011 | - | 1,006 | - | 3,017 |
| 9 | Surface Rents | - | 75,634 | - | - | - | 75,634 |
| 10 | Consultants | - | 9,008 | - | 9,008 | - | 18,015 |
| 11 | Phones | - | 2,500 | - | 2,000 | - | 4,500 |
| 12 | Power PG&E | - | 30,000 | - | 170,000 | - | 200,000 |
| 13 | Power SoCalEdison | - | 20,000 | - | - | - | 20,000 |
| | Waste Management | - | 2,100 | - | - | 2,100 | 4,200 |
| | Water | - | 1,000 | 2,000 | - | - | 3,000 |
| | SouthernCalGas | - | 75 | 75 | - | 75 | 225 |
| | Portable Restrooms | - | 1,100 | - | 1,500 | - | 2,600 |
| | Alarms | - | - | 500 | - | - | 500 |
| | Cafeteria | - | - | - | 250 | - | 250 |
| | Copies | - | - | - | 250 | - | 250 |
| 14 | Chemicals | - | 10,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| 15 | Pumps | - | 25,000 | 10,000 | 10,000 | 10,000 | 55,000 |
| 16 | Gasoline | - | 25,000 | 12,500 | 12,500 | 12,500 | 62,500 |
| 17 | Transportation | - | - | - | 150,000 | - | 150,000 |
| 18 | Vacuum Trucks | - | - | - | 56,000 | - | 56,000 |
| 19 | LCR | - | - | - | 575,000 | - | 575,000 |
| 20 | Electricians | - | 10,000 | 5,000 | 10,000 | 5,000 | 30,000 |
| 21 | Welders | - | 5,000 | 2,500 | 2,500 | 2,500 | 12,500 |
| 22 | Supplies (Belts-Parts) | - | 2,000 | 1,500 | 1,500 | 1,500 | 6,500 |

EXHIBIT "1"

HVI Cat Canyon Week 14-18 Draft Cash Collateral Budget - 11.14.19 - vOrder.xlsx

| Notes | **HVI CAT CANYON INC.**<br>weeks 14-18 budget<br>week starting | Forecast<br>Week 14<br>28-Oct-19 | Forecast<br>Week 15<br>4-Nov-19 | Forecast<br>Week 16<br>11-Nov-19 | Forecast<br>Week 17<br>18-Nov-19 | Forecast<br>Week 18<br>25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|---|
| 23 | Parts (Compressor, Pipe, others) | - | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| 24 | Clean Chemical towers | - | 3,000 | 1,500 | 1,500 | 1,500 | 7,500 |
| 25 | Vehicle maintenance | - | 16,000 | - | 8,000 | - | 24,000 |
| | Drink Water | - | 150 | - | 150 | - | 300 |
| 26 | Weed abatement | - | 15,000 | 10,000 | 10,000 | 10,000 | 45,000 |
| 27 | Well Analysis | - | 3,000 | - | 3,000 | - | 6,000 |
| 28 | Compliance | - | 25,000 | - | 25,000 | - | 50,000 |
| | Fire Department | - | - | - | - | - | - |
| 29 | APCD | - | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 |
| 30 | SBP - APCD | - | - | - | 146,436 | - | 146,436 |
| 31 | SBP - P&D | - | - | - | 159,843 | - | 159,843 |
| 32 | SBP - FD | - | - | - | 16,440 | - | 16,440 |
| 33 | SBP - EHS | - | - | - | 10,475 | - | 10,475 |
| | SBP - Tax | - | - | - | - | - | - |
| 34 | Escrow - Surface Rents | - | 7,500 | - | - | - | 7,500 |
| 35 | Netherland and Sewell Reserve Report | - | - | - | - | 25,000 | 25,000 |
| | **Total Operating Expenses** | **28,763** | **373,078** | **86,575** | **1,470,357** | **111,175** | **2,069,948** |
| | **G&A Expenses** | | | | | | |
| | Bank Charges & fees | 100 | 100 | 100 | 100 | 100 | 500 |
| 36 | Insurances | - | 9,000 | 9,000 | 19,000 | - | 37,000 |
| 37 | Chapter 11 Trustee Professionals | 228,834 | 108,894 | 108,894 | 108,894 | 108,894 | 664,410 |
| 38 | Unsecured Creditor Committee Professionals | - | - | - | 50,000 | - | 50,000 |
| 39 | U.S. Trustee Payment | - | 25,000 | - | - | - | 25,000 |
| 40 | Backoffice & Administrative | - | - | - | 156,000 | - | 156,000 |
| | Interest | - | - | - | - | - | - |
| | **Total G&A** | **228,934** | **142,994** | **117,994** | **333,994** | **108,994** | **932,910** |
| 41 | **Health and Safety** | | | | | | |
| 42 | SMV Health and Safety | - | 28,000 | 88,000 | 56,000 | 16,000 | 188,000 |
| 43 | Belridge Health and Safety | - | 4,500 | 5,000 | 20,000 | 3,000 | 32,500 |
| 44 | Redu Health and Safety | - | 31,047 | 3,000 | 16,000 | 40,000 | 90,047 |
| | **Total Health and Safety** | **-** | **63,547** | **96,000** | **92,000** | **59,000** | **310,547** |
| 45 | **Total Cash Outflows** | **257,697** | **579,618** | **300,569** | **1,896,351** | **279,169** | **3,313,405** |
| | Net Cash Flow | (257,697) | (713,699) | (300,569) | (495,740) | (279,169) | (2,046,875) |
| | Beginning Cash Balance | 36,784 | - | - | - | - | 36,784 |

| Notes | HVI CAT CANYON INC. weeks 14-18 budget week starting | Forecast Week 14 28-Oct-19 | Forecast Week 15 4-Nov-19 | Forecast Week 16 11-Nov-19 | Forecast Week 17 18-Nov-19 | Forecast Week 18 25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|---|
| | Net Cash Flow | (257,697) | (713,699) | (300,569) | (495,740) | (279,169) | (2,046,875) |
| | Net Borrowing/(Pay Down) | 220,913 | 713,699 | 300,569 | 495,740 | 279,169 | 2,010,091 |
| | Ending Cash Balance | - | - | - | - | - | - |
| 46 | Loan Balance | 220,913 | 934,613 | 1,235,182 | 1,730,922 | 2,010,091 | 2,010,091 |

| | | |
|---|---|---|
| 1 | Book Bank Balance Reconciliation | |
| | Starting Balance 10/24/19 | 18,022 |
| | Transfer for net amount for Sept Revenue | 23,810 |
| | Transfer #1 against October Revenue | 60,000 |
| | Transfer #2 against October Revenue | 20,000 |
| | Balance as of 10/25/19 | 121,832 |
| | Total Check Disbursements on 10/25/19 | 85,048 |
| | Net Available book balance 10/28/19 | 36,784 |

2   Forecast dependent on actual volume of delivered barrels, price and gravity adjustments.
The price per barrel is calculated for Santa Maria Valley using the average price per barrel posted by Chevron, Union 76, Exxon and Shell for Midway Sunset crude less $7.
The price per barrel for Redu is calculated using the average price per barrel posted by the same 4 corporations for Buena Vista crude less $5.75.
The price per barrel for Belridge is calculated using the average price per barrel posted by the same 4 corporations for Buena Vista crude less $0.75.
All pricing is subject to adjustments based upon the gravity of the oil produced. The prior month's revenue is collected on the 20th of the following month. See the October 2019 Revenue Projection schedule for a detailed build up of the forecasted revenue.

3   Affiliate California Asphalt Production, Inc. advanced $80k of the forecasted revenue for October to HVI in week 13 and an additional $12k in week 15 to cover a surface lease payment to Boisseranc.

4   In aggregate, monthly royalties are approximately 13% of production which is approximately 1 month's revenue less the LCR shipments.

5   Escrow Royalties are based upon an insider's 2.5% overriding royalty on 1 month's production which is approximately 1 month's revenue less the LCR shipments.

6   Due to cash flow constraints in Week 14, the majority of forecasted disbursements for the week were rolled into the forecasted disbursements for week 15.

7   Bi-weekly payroll for HVI's 41 employees, including insider Alex Dimitrijevic's compensation that, as the President and COO of HVI, is subject to a 15 day objection period prior to disbursement.

31

| Notes | HVI CAT CANYON INC.<br>weeks 14-18 budget<br>*week starting* | Forecast<br>Week 14<br>28-Oct-19 | Forecast<br>Week 15<br>4-Nov-19 | Forecast<br>Week 16<br>11-Nov-19 | Forecast<br>Week 17<br>18-Nov-19 | Forecast<br>Week 18<br>25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|---|

**8** Schedule of payroll taxes due to State and Federal Taxing Authorities due on week 13:

| | |
|---|---|
| Federal Income Tax Withholding | 8,999.87 |
| Social Security Tax Withholding | 12,284.18 |
| Medicare Tax Withholding | 2,872.94 |
| Total Form 941 Liability | 24,156.99 |
| Federal Unemployment Insurance Liability | 35.30 |
| State Income Tax Withholding | 3,215.65 |
| CA SDI Tax Withholding | 990.69 |
| State Unemployment Insurance | 364.81 |
| Total Form DE-9 Liability | 4,571.15 |
| Total Liability for 10-25-2019 Payroll | 28,763.44 |

**9** Surface Rent Sub schedule

| Surface Lease Owner: | Amount | Timing |
|---|---|---|
| Boisseranc | $ 11,956 | Due on the 1st of each month |
| Buganko | $ 41,878 | Due on the 1st of the month.  This amount includes $27k for unpaid surface lease payments from prior post-petition budgets. |
| Medema (1/2) Thomson (1/4) (- McLaughlin (1/4) | $ 7,500 | Due on the 1st of each month |
| (3) Etchandy family members | $ - | Lease to be rejected, no amount due |
| State College, LLC (Evelyn Roper) | $ - | $1,5851.33 due on an annual basis - has been paid for 2019. |
| Adam Family Trust | $ - | No amount due |
| Orcutt Fee, LLC | $ - | $5,000 due on Annual - paid for 2019 |
| Marianne Friedl | $ - | $3,700 due on Annual - paid for 2019 |
| C.M.T LLC | $ - | $100 will be due in January 2020. |
| Manfred Sander | $ 6,800 | Due before the end of October 2019 |
| E & B Natural Resources | $ - | Under review, no amount currently due |
| Grundoon, LLC (Firestone) | $ 7,500 | Due on the 1st of each month |
| Morganti Ranch | $ - | $5,500 on a monthly basis but lease is currently shut-in so no amount due. |
| Morganti Ranch | $ - | Under review, no amount currently due |
| Morganti Ranch | $ - | Under review, no amount currently due |
| Railroad | $ - | $454 due in December 2019 |
| (4) Righetti family members | $ - | $3,000 per quarter, next payment due in December 2020 |
| (3) Judy A. Rogers, Ronald H. Souza, Jr., Michael J. Souza | $ - | $750 due in January 2020 |
| Roland and Sandy Miller | $ - | $300 due in December 2019 |
| Multiple Bradley Lands | $ - | No amount due in October or November 2019 |
| **Total amount due in week 14** | $ 75,634 | |

**10** HVI pays the following 3 consultants on a biweekly basis:

Name and Description:                    Amount:

HVI Cat Canyon Week 14-18 Draft Cash Collateral Budget - 11.14.19 - vOrder.xlsx

| | HVI CAT CANYON INC. | Forecast | Forecast | Forecast | Forecast | Forecast | TOTAL |
|---|---|---|---|---|---|---|---|
| | weeks 14-18 budget | Week 14 | Week 15 | Week 16 | Week 17 | Week 18 | |
| Notes | week starting | 28-Oct-19 | 4-Nov-19 | 11-Nov-19 | 18-Nov-19 | 25-Nov-19 | |
| | i) William LaFleur - Landman | $ 3,000 | | | | | |
| | ii) Innovative Consulting Solutions - production accountant | $ 1,923 | | | | | |
| | iii) Alliance-Hydro - Geologist | $ 4,085 | | | | | |
| | Total Amount due to Consultants | $ 9,008 | | | | | |

| | |
|---|---|
| 11 | Amounts include HVI's office line at their East Clarke office and cell phones for all field employees. |
| 12 | Per adequate assurance order, $30k deposit due in Week 15 and $170k due in Week 17 (prior to the 20th). |
| 13 | Amount due for prior month's power usage. |
| 14 | Chemicals used for H2S removal that are critical to production - currently on COD terms with chemicals vendor |
| 15 | Pump maintenance and rework costs that are critical to production. |
| 16 | HVI makes daily gasoline purchases for the tankers used to haul oil and gas production with a weekly run rate of approximately $12,500.  Week 15 assumes weekly run rate and payment of approximately $12.5k of overdue invoices. |
| 17 | Amount due to affiliate GTL1 for transportation costs for hauling crude and LCR, vehicle leasing and insurance costs and demurrage charges.  GTL1 pays drivers $17.50/hr. for demurrage but charges HVI $80/hr. |
| 18 | Amount due to affiliate GTL1 for vacuum trucks, HVI pays $80/hr., has a monthly run rate between 600-700 hours, and week 17 assumes a 700 hour month. |
| 19 | Per Ernesto Olivares, as of 10/27/19, HVI has received 7,476 BBLs of Light Crude ("LCR") deliveries priced at $76.50 per BBL.  Approximately 100 additional BBLs are estimated to be delivered before month's end. |
| 20 | The weekly run rate for electricians is approximately $5k and week 15 assumes payment of approximately $5k of overdue invoices. |
| 21 | The weekly run rate for welders is approximately $2.5k and week 15 assumes payment of approximately $2.5k of overdue invoices. |
| 22 | Assumes a weekly run rate of $1.5k with an additional approximately $1k of overdue invoices to be paid in week 15. |
| 23 | Assumes a weekly run rate of $5k. |
| 24 | Assumes a weekly run rate of $1.5k for H2S fluid and week 15 assumes payment of $1.5k of invoices due in week 14. |
| 25 | Assumes $8k bi-weekly run rate for the maintenance costs for all oil field service vehicles, including rigs.  Week 15 assumes payment of an overdue invoice for approximately $8k for rig maintenance. |
| 26 | Weekly run rate for critical safety and fire protection for HVI's 700+ wells and reduction of Notice of Violation ("NOV") fines.  Currently understaffed in this area and run rate assumes increasing team size from 1 to approximately 2 five man teams. |
| 27 | Per Alex D, up to date on well inspections through week 14 so run rate assumes bi-weekly maintenance needed in November 2019. |
| 28 | Weekly run rate for 3rd party consultants for critical compliance requirements such as SPC ("Spill Prevention and Countermeasure") plans and APCD ("Air Pollution and Control District") plans that need to be submitted before year-end to mitigate future fines and penalties from regulatory bodies. |
| 29 | Related to administrative invoicing for APCD post-petition inspections related to 35 permits necessary to mitigate potential fines and penalties. |
| 30 | Passed due post-petition Permit to Operate ("PTO") fees from the APCD for the following 13 HVI leases, excluding 1 lease quitclaimed to an insider.  Subject to revision if additional permit fees for quitclaimed leases to insiders are identified: |

| Facility | Fee |
|---|---|
| Armelin Lease PTO No. 07775 - R8 | $ 7,895 |

33

| Notes | HVI CAT CANYON INC.<br>weeks 14-18 budget<br>week starting | Forecast<br>Week 14<br>28-Oct-19 | Forecast<br>Week 15<br>4-Nov-19 | Forecast<br>Week 16<br>11-Nov-19 | Forecast<br>Week 17<br>18-Nov-19 | Forecast<br>Week 18<br>25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|---|
| | Battles Lease PTO No. 08219 - R11 | $ 7,323 | | | | | |
| | Bradley Lands/Bradely Consolidated Lease PTO No. 07( | $ 41,123 | | | | | |
| | Continental Lease PTO No. 08222 - R11 | $ 5,425 | | | | | |
| | Cross Development Lease PTO No. 08863 - R9 | $ 458 | | | | | |
| | East Valley Farms Lease PTO No. 08864 - R9 | $ 458 | | | | | |
| | Fullerton Lease PTO No. 08868 - R13 | $ 7,551 | | | | | |
| | Jim Hopkins Lease PTO No. 09310 - R8 | $ 13,796 | | | | | |
| | Lakeview Gas Plant PTO No. 10108 - R8 | $ 38,032 | | | | | |
| | Lakeview Lease PTO No. 10096 - R8 | $ 7,385 | | | | | |
| | Los Flores PTO No. 07307 - R12 | $ 16,074 | | | | | |
| | McKenzie Lease PTO No. 10079 - R8 | $ 458 | | | | | |
| | Olean Lease PTO No. 10080 - R8 | $ 458 | | | | | |
| | Total due for APCD PTOs | $ 146,436 | | | | | |
| | Excluded PTO fee due to a quitclaimed lease to an insider. | | | | | | |
| | Golco Lease PTO No. 10078 - R8 | $ 4,679 | | | | | |
| 31 | Amount is based upon the following County of Santa Barbara Planning and Development post-petition facility and lease inspection fees. Subject to revision if | | | | | | |
| | additional permit fees for quitclaimed leases to insiders are identified: | | | | | | |
| | Account Number/Permit ID Number: | Amount: | | | | | |
| | Permit ID # 19ACB-00000-00914 for 500 post-petition | | | | | | |
| | un-inspected facilities | $ 110,452 | | | | | |
| | 19ACT-00880 | $ 210 | | | | | |
| | 19ACT-00922 | $ 6,560 | | | | | |
| | 19ACT-00920 | $ 10 | | | | | |
| | 19ACT-00914 | $ 350 | | | | | |
| | 19ACT-00921 | $ 6,280 | | | | | |
| | 19ACT-00926 | $ 12,640 | | | | | |
| | 19ACT-00928 | $ 9,032 | | | | | |
| | 19ACT-00938 | $ 108 | | | | | |
| | 19ACT-00930 | $ 10 | | | | | |
| | 19ACT-00932 | $ 10 | | | | | |
| | 19ACT-00934 | $ 108 | | | | | |
| | 19ACT-00936 | $ 108 | | | | | |
| | 19ACT-00887 | $ 262 | | | | | |
| | 19ACT-00878 | $ 420 | | | | | |
| | 19ACT-00877 | $ 210 | | | | | |
| | 19ACT-00879 | $ 210 | | | | | |
| | 19ACT-00881 | $ 220 | | | | | |

| Notes | HVI CAT CANYON INC. weeks 14-18 budget week starting | Forecast Week 14 28-Oct-19 | Forecast Week 15 4-Nov-19 | Forecast Week 16 11-Nov-19 | Forecast Week 17 18-Nov-19 | Forecast Week 18 25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|---|
| | 19ACT-00924 | $ 12,640 | | | | | |
| | **Total due to P&D for Inspection fees** | $ 159,843 | | | | | |
| 32 | Amount is based upon the following Santa Barbara County Fire Department Post-Petition California Fire Code Inspection Permit Fees. Subject to revision if | | | | | | |
| | permits for additional quitclaimed leases to insiders are identified: | | | | | | |
| | Site Name | Amount: | | | | | |
| | Battles | $ 1,370 | | | | | |
| | Blochman | $ 1,370 | | | | | |
| | Bell Gas Compressor | $ 1,370 | | | | | |
| | Bell Lease | $ 1,370 | | | | | |
| | Casmalia/Morganti | $ 1,370 | | | | | |
| | Chamberlin B | $ 1,370 | | | | | |
| | Chamberlin | $ 1,370 | | | | | |
| | Davis B | $ 1,370 | | | | | |
| | Davis | $ 1,370 | | | | | |
| | Fullerton Lease | $ 1,370 | | | | | |
| | Jim Hopkins | $ 1,370 | | | | | |
| | Los Flores | $ 1,370 | | | | | |
| | **Total due for Fire Department CFC Permits** | $ 16,440 | | | | | |
| 33 | Per Docket #308, Declaration of James Ray, California Unified Program Agency Supervisor for the Santa Barbara County Environmental Health Services ("EHS"), | | | | | | |
| | amounts due for the following Santa Barbara Post-petition Environmental Health Services Permit Fees - *originally forecast to be distributed in week 2* : | | | | | | |
| | Permit ID: | Permit Fee for 2020: | | | | | |
| | FA0010063 | $ 1,857 | | | | | |
| | FA0010325 | $ 555 | | | | | |
| | FA0010326 | $ 555 | | | | | |
| | FA0011176 | $ 555 | | | | | |
| | FA0011177 | $ 555 | | | | | |
| | FA0012015 | $ 555 | | | | | |
| | FA0012328 | $ 555 | | | | | |
| | FA0012329 | $ 555 | | | | | |
| | FA0012330 | $ 555 | | | | | |
| | FA0012495 | $ 555 | | | | | |
| | FA0013065 | $ 555 | | | | | |
| | FA0013112 | $ 555 | | | | | |
| | FA0013113 | $ 555 | | | | | |
| | FA0013114 | $ 555 | | | | | |
| | FA0013136 | $ 555 | | | | | |

| Notes | HVI CAT CANYON INC.<br>weeks 14-18 budget<br>*week starting* | Forecast<br>Week 14<br>28-Oct-19 | Forecast<br>Week 15<br>4-Nov-19 | Forecast<br>Week 16<br>11-Nov-19 | Forecast<br>Week 17<br>18-Nov-19 | Forecast<br>Week 18<br>25-Nov-19 | | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | FA0015899 | $        848 | | | | | | |
| | Total amount due for EHS permits | $     10,475 | | | | | | |
| 34 | Rent due on HVI East Clarke office - not approved under Interim Cash Collateral Order | | | | | | | |
| 35 | Chapter 11 Trustee negotiated a progress payment plan with Netherland & Sewell for a 2019 Reserve Report.  The $100-$120k total fee can be paid on weekly basis for $25k a week once they start work. | | | | | | | |
| 36 | Per Ernesto Olivares, a total of $18k for worker's comp insurance to be paid in weeks 15 and 16 and $19k to renew $1MM bond due in week 17. | | | | | | | |
| 37 | Chapter 11 Trustee professionals agree to a 20% deferral of professional fees incurred during this 5-week period, assuming the bank agrees to carve out the remaining 20%.  Per Professional Fee Budget, weekly payments for Chapter 11 Trustee, Counsel and Financial Advisor will be put in escrow during this 5-week budget.  Payments to professionals to be made only after employment applications are approved and payments authorized. | | | | | | | |
| 38 | Per Professional Fee Budget, Unsecured Creditors Committee Counsel has a forecasted $50k monthly run rate and payments will be put in escrow during this 5-week budget. | | | | | | | |
| 39 | Per Professional Fees budget, US Trustee payment for Q3 2019 forecasted for week 15 based upon 1% of debtors disbursements in Q3 2019 of approximately $2.5M per August and September Monthly Operating Reports ("MOR"). | | | | | | | |
| 40 | Per Ernesto Olivares on 10/30/2019, affiliate GIT's October 2019 invoice for back office and administrative services will be approximately $156k.  GIT allocates expenses among the affiliated entities based upon headcount of each respective entity.  Per Cost and Sale Summary schedule, GIT's allocation and the Legal Fee summary schedule details of the pre-petition invoices offset against revenue due to HVI in Week 13. | | | | | | | |
| 41 | Per the draft 13-week Health and Safety Budget to be presented in 2-weeks. | | | | | | | |
| 42 | The amounts reflected here reflect the first 4-weeks of the draft 13-week total SMV Health and Safety Budget.  Over the full 13-week period forecasted expenses are approximately $275k but should reduce compliance violation fines and environmental risks. | | | | | | | |
| 43 | The amounts reflected here reflect the first 4-weeks of the draft 13-week total Belridge Health and Safety Budget.  Over the full 13-week period forecasted expenses are approximately $66k but should reduce compliance violation fines, environmental risks and, by reducing these liabilities, potentially make the field more attractive to prospective buyers. | | | | | | | |
| 44 | The amounts reflected here reflect the first 4-weeks of the draft 13-week total Redu Health and Safety Budget.  Over the full 13-week period forecasted expenses are approximately $337k but should reduce compliance violation fines, environmental risks, and, by reducing these liabilities, potentially make the field more attractive to prospective buyers. | | | | | | | |
| 45 | Total Cash Outflows for Operating, General and Administrative, and Health and Safety Expenses but not including royalties. | | | | | | | |
| 46 | Estimated Funding required for the 5-week period ending week 18, excluding interest, is approximately $2M.  Interest to be added to the 13-week budget to be presented in 2-weeks. | | | | | | | |

1

2

3

4

5

6

7

8

9

10

11

12

13 **Agreed as to form only:**

14 **PACHULSKI STANG ZIEHL & JONES LLP**

15 By:_____
Jeffrey N. Pomerantz
16 Maxim B. Litvak
10100 Santa Monica Blvd., 13th Floor
17 Los Angeles, California 90067
(310) 277-6910
18 Email: jpomerantz@pszjlaw.com
          mlitvak@pszjlaw.com
19

20 **COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

21

22 **SNOW SPENCE GREEN LLP**

23 By:_____
W. Ross Spence
24 2929 Allen Parkway, Suite 2800
Houston, Texas 77019
25 (713) 335-4800
Email: ross@snowspencelaw.com
26

27 **ATTORNEYS FOR THE COUNTY OF SANTA BARBARA, CALIFORNIA; HARRY E. HAGEN, AS TREASURER-TAX COLLECTOR OF THE COUNTY OF SANTA**

28

- 29 -

1 | **BARBARA, CALIFORNIA; AND THE SANTA BARBARA COUNTY AIR POLLUTION CONTROL DISTRICT**

2

3 | <u>**Agreed as to form only, and shall not indicate that this Final Order satisfies condition under**</u>

4 | <u>**the Credit Agreement nor that the condition is waived:**</u>

5 | **O'MELVENY & MYERS LLP**

6 | By:_____

7 | Evan M. Jones
400 South Hope Street, 18th Floor

8 | Los Angeles, California 90071-2899
(213) 430-6000

9 | Email: ejoines@omm.com

10 | **ATTORNEYS FOR UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 30 -