1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@DanningGill.com*
2  AARON E. DE LEEST (State Bar No. 216832)
   *adeleest@DanningGill.com*
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone:  (310) 277-0077
5  Facsimile:  (310) 277-5735

6  Attorneys for Michael A. McConnell,
   Chapter 11 Trustee
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    NORTHERN DIVISION

11

12 | In re | Case No.: 9:19-bk-11573-MB |
13 | HVI CAT CANYON, INC., | Chapter 11 |
14 |                 Debtor. | **TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING THE REJECTION OF ALL CONTRACTS AND AGREEMENTS WITH CALIFORNIA ASPHALT PRODUCTION, INC., FORMERLY KNOWN AS SANTA MARIA REFINING CO. AND GREKA REFINING COMPANY, AND GTL1, LLC, NOT PREVIOUSLY INCLUDED IN PRIOR MOTION TO REJECT (DOCKET NO. 573); MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF MICHAEL A. MCCONNELL, TIMOTHY SKILLMAN, ERIC P. ISRAEL, AARON E. DE LEEST AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** |
15 | | |
16 | | |
17 | | |
18 | | |
19 | | |
20 | | |
21 | | |
22 | | |
23 | | [Hearing to be Set] |

24

25

26

27

28

1568866.1  26932

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................4

I.    BACKGROUND FACTS .............................................................................................4

    A.    The Bankruptcy Case............................................................................................4

    B.    The Contracts .......................................................................................................4

    C.    Summary of Contracts with the Debtor's Affiliates ............................................5

    D.    The Debtor's Cash Management Motion ..............................................................6

    E.    CAP's Failures to Pay the Debtor .......................................................................6

    F.    The Trustee's Motion to Reject the Richfield Contracts and Belridge
        Contracts ...............................................................................................................7

    G.    Letters from CAP's Counsel.................................................................................8

    H.    The Urgent Need to Reject ...................................................................................9

    I.    Requested Relief...................................................................................................9

II.    ARGUMENT.............................................................................................................10

    A.    THE COURT SHOULD AUTHORIZE THE TRUSTEE TO REJECT THE
        CONTRACTS........................................................................................................10

    B.    Rejection as of the Date of the Motion is Appropriate ......................................12

III.    CONCLUSION..........................................................................................................13

DECLARATION OF MICHAEL A. MCCONNELL ...........................................................14

DECLARATION OF TIM SKILLMAN................................................................................18

DECLARATION OF ERIC P. ISRAEL ................................................................................20

DECLARATION OF AARON E. DE LEEST........................................................................21

REQUEST FOR JUDICIAL NOTICE...................................................................................23

**PLEASE TAKE NOTICE** that at a time and place to be set by the Court,[1] pursuant to an application for order shortening time, Michael A. McConnell, the Chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"), hereby moves (the "Motion"), for an order authorizing the Trustee to reject certain contracts with affiliates California Asphalt Production, Inc., formerly known as Santa Maria Refining Co. and Greka Refining Company ("CAP") and GTL1, LLC ("GTL1"), as follows:

(1)      CAP – Crude Oil Purchase Contract – Contract No. COP-002, and all amendments, for Santa Maria Valley crude oil;

(2)      CAP – Waste Gas Handling Agreement, and all amendments, for waste gas delivery;

(3)      CAP – Supply Agreement, and all amendments, for hot load supply;

(4)      CAP – Amended and Restated Agreement, and all amendments; for BS&W excess and cold oil;

(5)      CAP – Supply Agreement, and all amendments, for LCR (light crude);

(6)      GTL1 – Trucking Agreement.[2]

The Trustee requests that the rejection be effective as of November 27, 2019.  Out of an abundance of caution, the Trustee also requests that the Court confirm that the contracts and agreements are terminated.[3]

The Trustee reserves all of his rights, claims and remedies against CAP and GTL1 and nothing in the Motion is or shall be interpreted to be a waiver of any of such rights, claims or remedies.

This Motion is based upon the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Michael A. McConnell, Tim Skillman, Eric P. Israel,

---

[1] The Trustee requests that the Court set the hearing no later than Monday December 9, 2019.

[2] The Debtor does not identify any agreement with GTL1 as an executory contract on schedule G and the Trustee is not aware of any written agreement between the Debtor and GTL1 for trucking services.  However, out of an abundance of caution, the Trustee believes it is appropriate to reject any agreement between the Debtor and GTL1.

[3] The agreements with CAP provide for cancellation or termination on 30 days' notice.

1  Aaron E. de Leest and the Request for Judicial Notice, the papers and pleadings on file in this case,

2  and such other evidence that may be presented to the Court.

3       **PLEASE TAKE FURTHER NOTICE** that the Trustee is requesting that the Court set a

4  hearing on this Motion on shortened time because: (1) CAP has not paid the Trustee all the

5  amounts that are due for October 2019, and the Trustee can no longer ship oil and gas to CAP and

6  do business with CAP without being paid; (2) the Trustee can only store oil production for another

7  week or he will be forced to start shutting down wells; and (3) the Trustee is now forced to locate

8  other customers to purchase the Debtor's oil and his alternatives are limited.

9       **PLEASE TAKE FURTHER NOTICE** the Trustee is filing concurrently herewith an

10  application to shorten time for the hearing on this Motion.  After the Court rules on the

11  Application, the Trustee will serve this Motion with a notice of the hearing date, time and place,

12  and procedures to respond to the Motion.  Failure to respond may be deemed consent to the

13  granting of the Motion.

14

15  DATED:  December 4, 2019          DANNING, GILL, ISRAEL & KRASNOFF, LLP

16

17                      By: _____

18                      AARON E. DE LEEST
                          Attorneys for Michael A. McConnell,

19                      Chapter 11 Trustee

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### BACKGROUND FACTS

**A.      The Bankruptcy Case**

The Debtor is a Colorado corporation authorized to conduct business in the state of California.  It is the owner and operator of producing oil and gas wells in California.  The wells are located in Santa Barbara County, Orange County and Kern County.

On July 25, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The case was originally filed in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

On or about August 9, 2019, an Official Creditor's Committee was appointed.

The Debtor initially operated its business as a "debtor in possession," until on or about October 16, 2019, when the Court entered its Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee.

On or about October 22, 2019, the Court approved the appointment of Michael A. McConnell as the Chapter 11 trustee in this case.

**B.      The Contracts**

The Debtor's schedule G *(docket no. 171)* reflects that it is a party to certain executory contracts and unexpired leases with a number of entities, including its affiliate California Asphalt Production, Inc., formerly known as Santa Maria Refining Co. and Greka Refining Company ("CAP").  A copy of the Debtor's schedule G is attached as Exhibit "1" to the Request for Judicial Notice.  CAP is an affiliate of the Debtor that operates a certain refinery in Santa Maria, California (the "Refinery").

The Debtor's primary contracts with CAP are for CAP's purchase of crude oil, including marketing and handling fees, from the Debtor's leases in the Santa Maria Valley of Santa Barbara County, California ("SMV"), Richfield East Dome Unit in Orange County, California ("Richfield")

1    and in North Belridge in Kern County, California ("Belridge") as follows:

2        1.     Crude Oil Purchase Contract – Contract No. COP-002, and all amendments, for

3    Santa Maria Valley crude oil (collectively, the "SMV Contracts").

4        2.     Crude Oil Purchase Contract – Contract No. COP-003, and all amendments, for

5    Richfield crude oil (collectively, the "Richfield Contracts").

6        3.     Crude Oil Purchase Contract – Contract No. COP-004, and all amendments, for

7    Belridge heavy crude oil (collectively, the "Belridge Contracts").

8       The Debtor's other contracts with CAP are the following:

9        1.     Waste Gas Handling Agreement, and all amendments, for CAP's purchase of waste

10    gas (the "Waste Gas Agreement");

11        2.     Supply Agreement, and all amendments, for the Debtor's purchase of hot load

12    supply from CAP (the "Hot Load Supply Agreement");

13        3.     Amended and Restated Agreement, and all amendments; for CAP's purchase of

14    BS&W excess and cold oil from the Debtor (the "BS&W and Cold Crude Agreement"); and

15        4.     Supply Agreement, and all amendments, for the Debtor's puchase of LCR light

16    crude as a diluent from CAP (the "LCR Agreement").

17       Copies of the SMV Contracts, Richfield Contracts, and Belridge Contracts, Waste Gas

18    Agreement, Hot Load Supply Agreement, BS&W and Cold Crude Agreement, and LCR

19    Agreement, are attached as Exhibits "2" through "8" to the Trustee's Declaration.

20       The Debtor also uses the trucking services of its affiliate GTL1, LLC ("GTL1") to meet its

21    transportation needs. However, the Debtor's schedule G does not reflect that there is any executory

22    contract between the Debtor and GTL1 for such services, and the Trustee has been unable to locate

23    a written agreement between the Debtor and GTL1.

24

25    **C.**     **Summary of Contracts with the Debtor's Affiliates**

26       The Debtor sells crude oil and gas to CAP pursuant to the terms of the SMV Contracts,

27    Richfield Contracts, Belridge Contracts, Waste Gas Agreement and BS&W and Cold Crude

28    Agreement. The Debtor buys hot water and diluent (LCL) from CAP for use in the production of

1     its oil pursuant to the terms of the Hot Load Supply Agreement and LCL Agreement. The Debtor

2     also uses trucking and transportation services of GTL1, and administrative and office services

3     provided by GIT, Inc. ("GIT").

4          By way of this Motion and the First Rejection Motion, the Trustee seeks to reject all of the

5     contracts and agreements between the Debtor and CAP, and between the Debtor and GTL1. The

6     Trustee intends to reject the services agreement between the Debtor and GIT, effective December

7     31, 2019, which relief will be requested in a separately-filed motion.

8

9     **D.**    **The Debtor's Cash Management Motion**

10          On or about July 30, 2019, the Debtor filed the *Motion of Debtor Pursuant to 11 U.S.C. §§*

11     *105(A), 363(B), and 363(C) and Fed. R. Bankr. P. 6003 and 6004 For (I) Interim and Final*

12     *Authority to (A) Continue Existing Cash Management System, (B) Honor Certain Prepetition*

13     *Obligations Related Thereto, and (C) Maintain Business Forms and Existing Bank Accounts and*

14     *(II) Related Relief (docket no. 16)* (the "Cash Management Motion"). Copies of the Debtor's

15     contracts with CAP were attached to the Cash Management Motion collectively as Exhibit "D."

16          Among other relief, the Cash Management Motion sought relief to perform under the

17     contracts with CAP, among others disclosed in the Cash Management Motion (defined in the Cash

18     Management Motion as the "CAP Agreements"), in the ordinary course of business. *See* docket

19     no. 16 at pg. 9.

20          The final order approving the Cash Management Motion, entered on October 21, 2019

21     *(docket no. 416)*, specifically ordered that "nothing contained in the [Cash Management] Motion,

22     the Interim Order, this Final Order, or any payment made pursuant to the authority granted by this

23     Final Order, is intended to be or shall be construed as . . . (iii) approval or assumption of any

24     agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code." *See*

25     docket no. 416 at pg. 7.

26

27     **E.**    **CAP's Failures to Pay the Debtor**

28          Since the Petition Date, CAP has failed to pay the Debtor in full for the crude oil delivered

1  by the Debtor to CAP and has purported to set off pre-petition and post-petition amounts owed by

2  the Debtor to CAP against amounts owed by CAP to the Debtor.  CAP has also purported to set off

3  amounts owed by CAP to the Debtor for amounts the Debtor purportedly owes to its affiliates GIT

4  and GTL1.  The latter "triangular setoffs" have included payments to attorneys and insiders in

5  violation of the Bankruptcy Code.

6        On or about November 15, 2019, in anticipation of the November 20, 2019 payment due

7  from CAP, the Trustee's counsel sent a letter to CAP's counsel informing CAP that its prior setoffs

8  were violations of the automatic stay under 11 U.S.C. § 362(a) and demanding that CAP cease and

9  desist from any further setoffs from sums due the Trustee, including in relation to CAP's

10  November 20, 2019 payment that was coming due.  A copy of the November 15, 2019, letter is

11  attached as Exhibit "9" to the Israel Declaration.

12        Thereafter, on or about November 20, 2019, CAP paid the Trustee only $300,000 of the

13  $1,128,250 that was owed to the Debtor for the month of October 2019.  At that time, the Trustee's

14  CRO was told by Ernesto Olivares, CAP's CFO, that CAP was short on cash but that the balance

15  would be paid within the next week.  Even if all wrongful setoffs were credited, CAP still owed the

16  Debtor over $450,000.

17        On or about November 25, 2019, the Trustee's counsel sent a demand letter to counsel for

18  CAP demanding immediate payment of the $828,250 that was still due for October 2019.  A copy

19  of the November 25, 2019, letter is attached as Exhibit "10" to the de Leest Declaration.

20        On or about November 27, 2019, CAP did not pay the Trustee the outstanding amount of

21  $828,250 that was due for October 2019, or any other sum.

22        On or about November 27, 2019, Mr. Olivares informed the Trustee's CRO that CAP was

23  having a liquidity problem and that CAP would not be making any more payments to the Debtor

24  for deliveries to CAP in the month of October 2019.  As a result, the Trustee ceased virtually all

25  shipments to CAP on that day – November 27, 2019.

26

27  F.    **The Trustee's Motion to Reject the Richfield Contracts and Belridge Contracts**

28        On November 27, 2019, at about 2:30 p.m., the Trustee filed a *Motion for Order*

1  *Authorizing the Rejection of Oil Purchase Contracts (Contract No. COP-003 for Belridge Crude*

2  *Oil and All Amendments and Contract No. COP-004 for Richfield Heavy Crude Oil and All*

3  *Amendments) with California Asphalt Production, Inc., formerly known as Santa Maria Refining*

4  *Co. and Greka Refining Company (docket no. 573)* (the "First Rejection Motion") seeking to reject

5  the Richfield Contracts and Belridge Contracts.  A copy of the First Rejection Motion was emailed

6  to counsel for CAP at about that time.

7        The First Rejection Motion was set on regular notice for December 20, 2019, at 10:00 a.m.,

8  because an alternative purchaser for the Debtor's oil, located by the Trustee, informed the Trustee

9  that it would negotiate an agreement with the Trustee <u>after</u> the First Rejection Motion was filed.

10        The alternative purchaser has since advised the Trustee that it will not enter into a new

11  agreement with the Trustee until the Richfield Contracts and Belridge Contracts have actually been

12  rejected by the Trustee.

13

14  **G.**    **Letters from CAP's Counsel**

15        On or about November 27, 2019, at about 5:18 p.m. (after the First Rejection Motion had

16  been filed), counsel for CAP sent a letter to counsel for the Trustee advising, among other things,

17  that "the root" of CAP's "liquidity shortage" was due to the Debtor's "inability to deliver dry and

18  hot crude oil" and threatening to reject the Debtor's crude oil in the future.  A copy of the letter is

19  attached as Exhibit "11" to the de Leest Declaration.

20        Due to CAP's failure to pay for all the Debtor's oil that it received and the threats from

21  CAP's counsel, the Trustee has now stopped delivering all Santa Maria Valley oil and gas to CAP.

22        On or about November 27, 2019, at about 5:16 p.m., counsel for CAP also sent a demand

23  for payment to the Trustee for amounts alleged to be due to GTL1 for September and October

24  2019.  A copy of the letter is attached as Exhibit "12" to the de Leest Declaration.

25        On or about December 1, 2019, counsel for CAP sent a follow-up letter to counsel for the

26  Trustee asserting, again, that it was the Debtor's delivery of cold and "off-spec oil" that had

27  contributed to CAP's operation and liquidity issues <u>since month end July 2019</u>.  The Court will

28  note that the Trustee was only appointed on or about October 22, 2019, and CAP was apparently

1  able to operate the Refinery with the Debtor's "off-spec oil" and pay the Debtor prior to the

2  Trustee's appointment.

3  Although the December 1, 2019 letter took issue with some of the factual statements filed in

4  support of the First Rejection Motion, it advised that CAP "has no objection to the rejection of [the

5  Richfield Contracts and Belridge Contracts]" as set forth in the First Rejection Motion. A copy of

6  the letter is attached as Exhibit "13" to the de Leest Declaration.

7

8  **H.    The Urgent Need to Reject**

9  The Debtor is producing about 1,000 barrels of oil per day and only has storage for about

10 one-week of oil production. The Trustee is looking for other storage options and customers for the

11 Debtor's oil. However, once available storage capacity is reached, which is anticipated to be

12 during the week of December 9, 2019, the Trustee will have no other option other than to "shut-in"

13 the Debtor's wells, beginning in Santa Barbara, at significant cost and risk. The risk arises, in

14 particular, with respect to the Santa Maria Valley oil because that oil it is a cold viscous crude oil,

15 and stopping production may cause damage to the production equipment and which could require

16 significant expense to bring production back on line.

17 In addition, the Trustee is now forced to locate other customers for the Debtor's oil and his

18 alternatives are limited. In fact, the potential customer for the Richfield and Belridge oil has now

19 informed the Trustee that it will not sign a new agreement with the Trustee until the Richfield

20 Contracts and Belridge Contracts have been rejected. Accordingly, it is imperative that the First

21 Rejection Motion also be heard on shortened time with this Motion.

22

23 **I.    Requested Relief**

24 As discussed below, the Trustee now seeks authority to reject the remaining contracts and

25 agreements listed on schedule G between the Debtor and CAP, and all amendments thereto, as well

26 as any contract or agreement between the Debtor and GTL1. The Trustee also requests that the

27 Court confirm that all the contracts and agreements, including the Richfield Contracts and Belridge

28 Contracts referenced in the First Rejection Motion, are terminated.

1    Immediate relief is necessary because: (1) CAP has not paid the Trustee all the amounts that

2  are due for October 2019, and the Trustee can no longer ship oil and gas to CAP and do business

3  with CAP without being paid; (2) the Trustee can only store oil production for another week or he

4  will be forced to start shutting down wells; and (3) the Trustee is now forced to locate other

5  customers to purchase the Debtor's oil and his alternatives are limited.

6

7                                             II.

8                                         **ARGUMENT**

9  A.    **THE COURT SHOULD AUTHORIZE THE TRUSTEE TO REJECT THE**

10          **CONTRACTS**

11    Section 365(a) of the Bankruptcy Code provides in relevant part that with certain

12  exceptions under sections 765 and 766 and sections 365(b), (c), and (d) (all of which are not

13  applicable here), the Trustee, subject to the Court's approval, may reject any executory contract or

14  unexpired lease of the debtor. 11 U.S.C. § 365(a).

15    Rule 6006(a) of the Federal Rule of Bankruptcy Procedure provides in relevant part that a

16  proceeding to reject an executory contract or unexpired lease is governed by Fed. R. Bankr. P.

17  9014. Rule 6006(c) provides in relevant part that notice of a motion to reject a lease must be given

18  to the other party to the contract or lease, other parties in interest as the Court may direct, and the

19  United States Trustee.

20    The Bankruptcy Code does not set forth explicit guidelines for courts to apply in

21  determining whether to approve the decision of a trustee to reject an executory contract or

22  unexpired lease. Courts generally have applied the "business judgment" test when reviewing such

23  decisions. *See, e.g., Group of Institutional Investors v. Chicago, Mil., St. P.& P.R.R.*, 318 U.S.

24  523, 550 (1943); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir.

25  1985), *cert. den.*, 475 U.S. 1057 (1986); *In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043,

26  1046-47 (4th Cir. 1985); *In re Minger*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Tilco, Inc.*, 558 F.2d

27  1369, 1372 (10th Cir. 1977). In *Group of Institutional Inv. v. Chicago, MIL., St. P.& P.R.R.*, the

28  Supreme Court addressed the issue of the standards involving the assumptions of executory

1  contracts or unexpired leases, and stated that "the question whether a lease should be rejected and if

2  not on what terms it should be assumed is one of business judgment." *Group of Institutional Inv. v.*

3  *Chicago, Mil., St. P.& P.R.R.*, 318 U.S. at 550.

4        As the above authorities state, a trustee is granted wide latitude in determining whether to

5  assume or reject an unexpired lease or executory contract. "In any event, court approval under

6  Section 365(a), if required, except in extraordinary situations, should be granted as a matter of

7  course." *In re Summit Land Company*, 13 B.R. 310, 315 (Bankr. D. Utah 1981). The Court in

8  *Summit* explained that this rule, among other things, not only places responsibility for

9  administering the estate upon the trustee, not the court, and therefore furthers the policy of judicial

10 independence considered vital by the authors of the Bankruptcy Code, but also expedites the

11 administration of estates, another goal of the Bankruptcy Code. *Id.*

12        The Trustee's decision to reject the contracts and agreements is a sound exercise of his

13 business judgment. In particular, CAP has not paid the Trustee all the amounts that are due under

14 its contracts and agreements for October 2019, which were due on November 20, 2019. CAP has

15 also purported to improperly setoff from the amounts due thereunder for sums that are due to CAP

16 and may be due other affiliates, including GTL1 and GIT. The Trustee is also informed, as of

17 November 26, 2019, that CAP does not have the ability to pay the outstanding amounts ($828,250)

18 that are due the Debtor for October 2019. It is unclear the extent to which the Trustee will receive

19 further payments from CAP. However, as recently as November 27, 2019, CAP has made it clear

20 that it will not be making any more payments to the Trustee for oil and gas deliveries that CAP

21 received in the month of October 2019.

22        In light of CAP's failure to pay the Trustee for the amounts that are now due under its

23 contracts and agreements with the Debtor, the Trustee must look to other purchasers for the

24 Debtor's crude oil and can no longer sell such oil to CAP.[4] Therefore, the Trustee believes, in his

25 business judgment that it is now appropriate to reject all of the contracts and agreements between

26 _____

27 [4] Of course, the Trustee reserves all rights and remedies against CAP and other to collect sums due
   and unwind all avoidable transfer and setoffs, and otherwise.

28

1   the Debtor and CAP as of November 27, 2019.

2          Although the Trustee is looking at different storage options for the Debtor's oil, immediate

3   rejection of the contracts and agreements is necessary so that the Trustee can contract with such

4   new customers, begin shipping the Debtor's oil, and avoid any shut down in production and any

5   "shut-in" of the Debtor's wells.  Given CAP's unwillingness and/or inability to pay the Trustee for

6   all the oil that has been delivered in October 2019, the Trustee had no choice but to stop deliveries

7   to CAP.  The Trustee now, in his business judgment, believes that he must make a clean break from

8   CAP (and the Debtor's other affiliates) so that he can locate alternate customers for the Debtor's oil

9   and gas, as well as alternate suppliers of LCL diluent.  The Trustee also believes that he will be

10  able to locate an alternate source of diluent for the Debtor's crude that will net the debtor more per

11  barrel that the Debtor was receiving from CAP.  Rejection of any agreement with GTL1, if there is

12  one, is similarly appropriate because the Trustee no longer requires GTL1's services because he is

13  not currently shipping oil to CAP.

14         Finally, because rejection itself does not terminate the Debtor's agreements with CAP (and

15  any agreement with GTL1),[5] the Trustee requests that the Court confirm that all of the Debtor's

16  agreements with CAP (and any with GTL1) are terminated effective November 27, 2019.  To the

17  extent that any written notice is required under the contracts and agreements, the Trustee intends

18  this Motion and the First Rejection Motion to constitute such notice.

19

20  **B.     Rejection as of the Date of the Motion is Appropriate**

21         Under the circumstances of this case, the Court's order authorizing rejection of the contracts

22  and agreement should be made retroactive to November 27, 2019.  The Court may exercise its

23  equitable powers to approve the rejection under section 365(a) retroactively.  *See In re At Home*

24  *Corp.*, 392 F.3d 1064, 1067 (9th Cir. 2004).  Retroactive rejection is appropriate here because,

25  among other things, the Trustee has not been paid by CAP for most of the amounts that are now

26  _____

27  [5] *E.g. In re Austin Development Co.*, 19 F.3d 1077, 1082 (5th Cir. 1994) (rejection breaches rather
    than terminates the contract), cert. denied, 115 S. Ct. 201 (1994); *In re Continental Airlines*, 981
    F.2d 1450, 1459-61 (5th Cir. 1993) (rejection does not invalidate or extinguish contract).

28

1  due for October 2019 and the Trustee must look to other purchasers for the Debtor's oil and other

2  products. The Trustee also cannot continue to buy diluent LCL and hot water loads from CAP or

3  use GTL1's trucking services when CAP does not pay the Trustee for all the oil it has received

4  from the Debtor. Accordingly, the Trustee requests that the rejection be effective as of November

5  27, 2019.

6

7                                              III.

8                                          CONCLUSION

9          For the foregoing reasons, the Trustee requests that the Court enter the order authorizing the

10 Trustee to reject the contracts and agreements with CAP and GTL1 as of November 27, 2019. The

11 Trustee also requests such other and further relief as is just and proper under the circumstances.

12

13 DATED: December  1 , 2019         DANNING, GILL, ISRAEL & KRASNOFF, LLP

14

15                                 By:  _____

16                                      AARON E. DE LEEST
                                        Attorneys for Michael A. McConnell,
17                                      Chapter 11 Trustee

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION

## DECLARATION OF MICHAEL A. MCCONNELL

I, Michael A. McConnell, declare as follows:

1.    I am over eighteen years of age, and I have personal knowledge of the facts in this declaration and, if called as a witness, could testify competently that the facts stated in this declaration are true and correct to the best of my knowledge and information.

2.    I am the Chapter 11 Trustee of the Bankruptcy Estate of HVI Cat Canyon, Inc. (the "Debtor").

3.    The Debtor is a Colorado corporation authorized to conduct business in the state of California. It is the owner and operator of producing oil and gas interests in California. The wells are located in Santa Barbara County, Orange County, and Kern County. The Debtor is producing about 1,000 barrels of oil per day and only has storage for about one-week of oil production.

4.    On or about October 22, 2019, the Court approved my appointment as the Chapter 11 trustee in this case.

5.    The Debtor's schedule G reflects that it was a party to certain executory contracts and unexpired leases with a number of entities, including its affiliate California Asphalt Production, Inc., formerly known as Santa Maria Refining Co. and Greka Refining Company ("CAP"). CAP is an affiliate of the Debtor that operates a certain refinery in Santa Maria, California

6.    The Debtor's primary contracts with CAP are for CAP's purchase of crude oil, including marketing and handling fees, from the Debtor's leases in the Santa Maria Valley of Santa Barbara County, California ("SMV"), Richfield East Dome Unit in Orange County, California ("Richfield") and in North Belridge in Kern County, California ("Belridge") as follows:

a.    Crude Oil Purchase Contract – Contract No. COP-002, and all amendments, for Santa Maria Valley crude oil (collectively, the "SMV Contracts").

b.    Crude Oil Purchase Contract – Contract No. COP-003, and all amendments, for Richfield crude oil (collectively, the "Richfield Contracts").

c.    Crude Oil Purchase Contract – Contract No. COP-004, and all amendments, for Belridge heavy crude oil (collectively, the "Belridge Contracts").

7.    The Debtor's other contracts with CAP are the following:

a.    Waste Gas Handling Agreement, and all amendments, for CAP's purchase of waste gas (the "Waste Gas Agreement");

b.    Supply Agreement, and all amendments, for the Debtor's purchase of hot load supply from CAP (the "Hot Load Supply Agreement");

c.    Amended and Restated Agreement, and all amendments; for CAP's purchase of BS&W excess and cold oil from the Debtor (the "BS&W and Cold Crude Agreement"); and

d.    Supply Agreement, and all amendments, for the Debtor's puchase of LCR light crude as a diluent from CAP (the "LCR Agreement").

8.    True and correct copies of the SMV Contracts, Richfield Contracts, and Belridge Contracts, Waste Gas Agreement, Hot Load Supply Agreement, BS&W and Cold Crude Agreement, and LCR Agreement, are attached as Exhibits "2" through "8" hereto

9.    The Debtor also uses the trucking services of its affiliate GTL1, LLC ("GTL1") to meet its transportation needs.  However, the Debtor's schedule G does not reflect that there is any executory contract between the Debtor and GTL1 for such services, and I have been unable to locate a written agreement between the Debtor and GTL1.

10.    Based on my review of the contracts and agreements and knowledge of the Debtor's current operations, the Debtor sells crude oil and gas to CAP pursuant to the terms of the SMV Contracts, Richfield Contracts, Belridge Contracts, Waste Gas Agreement and BS&W and Cold Crude Agreement.  The Debtor buys hot water and diluent (LCL) from CAP for use in the production of its oil pursuant to the terms of the Hot Load Supply Agreement and LCL Agreement. The Debtor also uses trucking and transportation services of GTL1, and administrative and office services provided by GIT, Inc. ("GIT")

11.    Following my appointment, CAP has failed to pay the Debtor in full for the crude oil and gas delivered by the Debtor to CAP and has purported to set off prepetition and postpetition amounts owed by the Debtor to CAP against amounts owed by CAP to the Debtor.  CAP has also purported to set off amounts owed by CAP to Debtor amounts the Debtor purportedly owes to its affiliates GIT and GTL1, and had included payments to attorneys and insiders

12.    CAP has also failed to perform under the terms of its contracts and agreements with the Debtor.  In particular, CAP is not paying me for most of the amounts that are due under all of the agreements, including for October 2019.  On November 20, 2019, CAP paid me only $300,000 of the $1,128,250 that was owed to the Debtor for the month of October 2019.

13.    Due to CAP's failure to pay for all the Debtor's oil, I stopped delivering all Santa Maria Valley oil and gas to CAP on or about November 27, 2019.

14.    In light of CAP's failure to pay for the amounts that are now due under its contracts with the Debtor, I believe that I must look to other purchasers for the Debtor's crude oil and can no longer sell such oil to CAP.

15.    I believe my alternatives for new customers are limited.  However, I located a potential customer for the Richfield and Belridge oil and on November 27, 2019, I filed a *Motion for Order Authorizing the Rejection of Oil Purchase Contracts (Contract No. COP-003 for Belridge Crude Oil and All Amendments and Contract No. COP-004 for Richfield Heavy Crude Oil and All Amendments) with California Asphalt Production, Inc., formerly known as Santa Maria Refining Co. and Greka Refining Company (docket no. 573)* (the "First Rejection Motion") seeking to reject the Richfield Contracts and Belridge Contracts.

16.    The First Rejection Motion was set on regular notice for December 20, 2019, at 10:00 a.m., because the alternative purchaser for the Debtor's oil, informed me that it would negotiate an agreement with me after the First Rejection Motion was filed.

17.    After the First Rejection Motion was filed, I learned that the potential customer for the Richfield and Belridge oil will not sign a new agreement with me until the Richfield Contracts and Belridge Contracts have been rejected.  Accordingly, it is imperative that the First Rejection Motion also be heard on shortened time so that I may begin selling such oil to the new customer forthwith.

18.    With respect to the Santa Maria Valley oil, I am looking for other storage options and customers.  However, because I have stopped shipping to CAP due to CAP's non-payment, once the Debtor's available storage capacity is reached, which is anticipated to be during the week of December 9, 2019, I will have no other option other than to "shut-in" the Debtor's wells, at

1  significant cost and risk.  The risk arises, in particular, with respect to the Santa Maria Valley oil

2  because that oil it is a cold viscous crude oil and stopping production may cause damage to the

3  production equipment and it will require significant expense to bring production back on line.

4        19.    I believe, in my business judgment, that in light of CAP's failure to pay me for all of

5  the amounts that are now due under its contracts and agreements with the Debtor, I must look to

6  other purchasers for the Debtor's crude oil and can no longer sell such oil to CAP.  Therefore, I

7  believe, in my business judgment that it is now appropriate to immediately reject all of the

8  contracts and agreements between the Debtor and CAP as of November 27, 2019.

9        20.    I believe, in my business judgment, that I must make a clean break from CAP (and

10  the Debtor's other affiliates) so that I can locate alternate customers for the Debtor's oil and gas, as

11  well as alternate suppliers of LCL diluent.  I believe that I will be able to locate alternate suppliers,

12  including an alternate source of diluent for the Debtor's crude, that will net the Debtor more per

13  barrel than the Debtor was receiving from CAP.  I believe that rejection of any agreement with

14  GTL1, if there is one, is similarly appropriate because I no longer require GTL1's services because

15  I am not currently shipping oil to CAP or using GTL's services.

16

17        I declare under penalty of perjury under the laws of the United States that the foregoing is

18  true and correct to the best of my knowledge, information and belief.

19        Executed on December 4th, 2019 at Santa Maria, California.

20

21

22

23        MICHAEL A. MCCONNELL

24

25

26

27

28

1568866.1  26932                                    17

# DECLARATION

## **DECLARATION OF TIM SKILLMAN**

I, Tim Skillman, declare and state as follows:

1.      I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently with respect to such facts.

2.      I am a partner at CR3 Partners, LLC ("CR3").  CR3 is a national turnaround and performance improvement firm.  CR3 offers advisory services and our professionals often serve as officers to assist clients in need of crisis management and other turnaround services.  I have served as Chief Restructuring Officer to two companies, and as a C-level executive for other companies in need of someone to help navigate crises in and out of bankruptcy.

3.      I am working as, or in a capacity similar to, a Chief Restructuring Officer for Michael A. McConnell, the chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor") since the Trustee's appointment.

4.      On November 20, 2019, California Asphalt Production, Inc. ("CAP") paid the Trustee only $300,000 of the $1,128,250 that was owed to the Debtor for shipments in the month of October 2019.

5.      On or about November 20, 2019, I was told by Ernesto Olivares, the CFO of CAP and GIT, Inc., that CAP was short on cash but expected additional collection of receivables in the next several days.

6.      Thereafter, on November 26, 2019, Mr. Olivares told me that CAP does not have the ability to pay the outstanding amounts that are due the Debtor for October 2019.

7.      On November 27, 2019, Mr. Olivares told me that CAP was having a liquidity problem and that CAP will not be making any additional payments to the Debtor for deliveries to CAP in the month of October 2019.

1    8.    CAP has not made any further payments to the Trustee since the $300,000 payment

2    on November 20, 2019 and I do not expect that it will make any more.

3

4    I declare under penalty of perjury under the laws of the United States of America that the

5    foregoing is true and correct.

6    Executed on December ___, 2019, at Santa Maria, California.

7

8    _____
     Tim Skillman

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1568866.1  26932

# DECLARATION

## **DECLARATION OF ERIC P. ISRAEL**

I, Eric P. Israel, declare as follows:

1.    I am an attorney, duly licensed and entitled to practice in the State of California and before this Court.  I am the principal of a professional corporation which is a partner in the law firm Danning, Gill, Israel & Krasnoff, LLP, general counsel for Michael A. McConnell, Chapter 11 Trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor").

2.    I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

3.    On November 15, 2019, in anticipation of the November 20, 2019 payment due from California Asphalt Production, Inc., formerly known as Santa Maria Refining Co. and Greka Refining Company ("CAP"), I sent a letter to CAP's counsel, Susan M. Whalen, informing her that CAP prior setoffs were violations of the automatic stay under 11 U.S.C. § 362(a) and demanding that CAP cease and desist from any further setoffs from sums due the Trustee, including in relation to CAP's November 20, 2019 payment that was coming due.  A true and correct copy of the November 15, 2019, letter is attached as Exhibit "9" hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on December 4, 2019, at Los Angeles, California.

Eric P. Israel

# DECLARATION

## DECLARATION OF AARON E. DE LEEST

I, Aaron E. de Leest, declare and state as follows:

1.      I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently with respect to such facts.

2.      I am an attorney employed by the law firm of Danning, Gill, Israel & Krasnoff, LLP ("Danning Gill"), general bankruptcy counsel to Michael A. McConnell, the chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor").

3.      On November 25, 2019, I sent a letter to Susan M. Whalen, counsel for California Asphalt Production, Inc., formerly known as Santa Maria Refining Co. and Greka Refining Company ("CAP"), demanding immediate payment of the $828,250 that was still due for October 2019 from CAP to the Trustee.  A true and correct copy of the November 25, 2019, letter is attached as Exhibit "10" hereto.

4.      On November 27, 2019, at about 5:18 p.m., I received a letter from Ms. Whalen, via email, in response to my November 25, 2019, letter, advising, among other things, that "the root" of CAP's "liquidity shortage" was due to the Debtor's "inability to deliver dry and hot crude oil" and threatening to reject the Debtor's crude oil in the future.  A true and correct copy of the letter is attached as Exhibit "11" hereto.

5.      On November 27, 2019, at about 5:16 p.m., I also received a letter from Ms. Whalen, via email, demanding payment for amounts alleged to be due to GTL1, LLC ("GTL1") for September and October 2019.  A true and correct copy of the letter is attached as Exhibit "12" hereto.

6.      On December 1, 2019, Ms. Whalen sent a follow-up letter to me, via email, asserting, again, that it was the Debtor's delivery of cold and "off-spec oil" that had contributed to CAP's operation and liquidity issues since month end July 2019.  A true and correct copy of the letter is attached as Exhibit "13" hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December _____, 2019, at Los Angeles, California.

_____
Aaron E. de Leest

# REQUEST FOR JUDICIAL NOTICE

**REQUEST FOR JUDICIAL NOTICE**

Michael A. McConnell, the Chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"), requests that the Court take judicial notice of the following:

1.      On July 25, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code.

2.      The Debtor filed its petition in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

3.      The Debtor initially operated its business as a "debtor in possession."

4.      On or about July 30, 2019, the Debtor filed the *Motion Of Debtor Pursuant to 11 U.S.C. §§ 105(A), 363(B), and 363(C) and Fed. R. Bankr. P. 6003 and 6004 For (I) Interim and Final Authority to (A) Continue Existing Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Business Forms and Existing Bank Accounts and (II) Related Relief (docket no. 16)* (the "Cash Management Motion").

5.      On or about August 9, 2019, an Official Creditor's Committee was appointed.

6.      On or about September 9, 2019, the Debtor filed its schedule G *(docket no. 171)*, which includes the Debtor's interests as a lessee in numerous surface leases, and other types of leases.  A true and correct copy of the Debtor's Schedule G is attached hereto as Exhibit "1."

7.      On or about October 16, 2019, the Court entered its Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee.

8.      On October 21, 2019 *(docket no. 416)*, the Court entered the final order approving the Cash Management Motion, which specifically ordered that "nothing contained in the [Cash Management] Motion, the Interim Order, this Final Order, or any payment made pursuant to the authority granted by this Final Order, is intended to be or shall be construed as . . . (iii) approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code." *See* docket no. 416 at pg. 7.

1568866.1 26932

1        9.     On or about October 22, 2019, the Court approved the appointment of Michael A.

2  McConnell as the Chapter 11 trustee in this case.

3        10.    On or about November 27, 2019, at about 2:30 p.m., the Trustee filed a *Motion for*

4  *Order Authorizing the Rejection of Oil Purchase Contracts (Contract No. COP-003 for Belridge*

5  *Crude Oil and All Amendments and Contract No. COP-004 for Richfield Heavy Crude Oil and All*

6  *Amendments) with California Asphalt Production, Inc., formerly known as Santa Maria Refining*

7  *Co. and Greka Refining Company (docket no. 573).*

8

9  DATED: December __4__, 2019        DANNING, GILL, ISRAEL & KRASNOFF, LLP

10

11                  By:  _____

12                        AARON E. DE LEEST
                               Attorneys for Michael A. McConnell,

13                        Chapter 11 Trustee

# EXHIBIT "1"

**Fill in this information to identify the case:**

Debtor name __HVI Cat Canyon, Inc._____

United States Bankruptcy Court for the: __Northern_____ District of __TX__
(State)

Case number (If known): __19-32857_____ Chapter _____

☐ Check if this is an
amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases          12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

1. **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1** State what the contract or lease is for and the nature of the debtor's interest — See attachment | |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.2** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.3** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.4** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.5** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |

EXHIBIT                    1

Debtor: HVI Cat Canyon, Inc.

Attachment to Schedule G (Page 1 of 2)

Case number (if known) 19-32857

| No. | Sale reference | Descriptions of contract or lease | Nature of Gov't interest in the contract or lease | Term remaining Government contract No. if | Counterparty Name | Counterparty address (1) |
|---|---|---|---|---|---|---|
| 2.1 | Santa Barbara County, CA | Crude Oil sales | Seller | 5/31/2020, evergreen | California Asphalt Production, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.2 | Santa Barbara County, CA | BS&W, Gold Crude delivery | Seller | evergreen | California Asphalt Production, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.3 | Santa Barbara County, CA | Water sales delivery | Transferor | evergreen | California Asphalt Production, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.4 | Santa Barbara County, CA | LOI supply | Buyer | evergreen | California Asphalt Production, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.5 | Santa Barbara County, CA | Hot Load supply | Buyer | evergreen | California Asphalt Production, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.6 | Kern County, CA | Crude Oil sales | Seller | evergreen | California Asphalt Production, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.7 | Kern County, CA | Crude Oil sales | Seller | evergreen | California Asphalt Production, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.8 | Orange County, CA | Crude Oil sales | Seller | evergreen | Aera Energy, LLC | 10000 Ming Ave, Bakersfield, CA 93311 |
| 2.9 | Orange County, CA | Oil & Gas well bond | Principal | evergreen | California Asphalt Production, Inc. | PO Box 1227, Baltimore, MD 21203 |
| 2.10 | Orange County, CA | Surety bond | Principal | evergreen | Fidelity & Deposit Company of Maryland | PO Box 1227, Baltimore, MD 21203 |
| 2.11 | Santa Barbara County, CA | Liability, umbrella insurance | Insured | 12/2/2019 | Market International Insurance Company Limited | c/o JH Blades, 510 Oak Blvd., Suite 250, Houston, TX 77027 |
| 2.12 | Santa Barbara County, CA | Property insurance | Insured | 12/2/2019 | Lloyd's London | c/o Worldwide Facilities, LLC 8 Greenway Plaza, Suite 404, Houston, TX 77046 |
| 2.13 | Santa Barbara County, CA | Workers Compensation | Insured | 12/2/2019 | State Compensation Insurance Fund | PO Box 8192, Pasadena, CA 91109-8192 |
| 2.14 | Kern County, CA | Insurance premium finance | Insured | 12/1/2019 | South Bay Acceptance Corp. | PO Box 639269, Cincinnati, OH 45263 |
| 2.15 | Kern County, CA | Settlement / Escrow | Depositor | evergreen | Unocal | c/o Todd Litchworth, 6001 Bollinger Canyon Rd., San Ramon, CA 94583 |
| 2.16 | Kern County, CA | Settlement / Escrow | Depositor | evergreen | Reef Oil Bartlett, LLP | 116 E. Sola St., Santa Barbara, CA 93101 |
| 2.17 | Santa Barbara County, CA | Settlement / Escrow | Depositor | evergreen | GIT, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.18 | Santa Barbara County, CA | Tax Sharing | Client | evergreen | GIT, Inc. | PO Box 5489, Santa Maria, CA 93456 |
| 2.19 | Santa Barbara County, CA | Settlement / Installment contract | Member | while in use group | West Coast Welding | 2201 Celsius Avenue, Building 9, Oxnard, CA 93030 |
| 2.20 | Orange County, CA | Unit Agreement | Payer | 16 installments | Included in Schedule E/F | |
| 2.21 | Orange County, CA | Unit Operating Agreement | Operator/Working Interest Owner | held by Unit Agreement | Included in Schedule E/F | |
| 2.22 | Orange County, CA | Commercial Modular Registration | Operator/Working Interest Owner | held by production | San Joaquin Valley Air Pollution Control District | 34046 Flyover Court, Bakersfield, CA 93308 |
| 2.23 | Kern County, CA | Generation of Haz Waste EPA-ID | Permittee | | Department of Housing & Community Development | 2700 M Street, Suite 300, Bakersfield, CA 93301-2370 |
| 2.24 | Kern County, CA | Approvals/Project Permits To Conduct Well Operations | Permittee | | Department of Toxic Substance Control | 21865 Copley Drive, Diamond Bar, CA 91765 |
| 2.25 | Kern County, CA | Permit To Operate Regulated Materials | Permittee | | Public Health Services Environmental Health Div. | 21865 Copley Drive, Diamond Bar, CA 91765 |
| 2.26 | Kern County, CA | Crude Oil Wells (X-28) | Permittee | | South Coast Air Quality Management District | 21865 Copley Drive, Diamond Bar, CA 91765 |
| 2.27 | Orange County, CA | Facility Air Permit To Operate | Permittee | | South Coast Air Quality Management District | 21865 Copley Drive, Diamond Bar, CA 91765 |
| 2.28 | Orange County, CA | Permit To Operate / Facility Fire Permit | Permittee | | City of Santa Maria | 110 E. Cook St., Santa Maria, CA 93454 |
| 2.29 | Orange County, CA | Oil Storage Tanks business License | Permittee | | Orange County Fire Authority | 1 Fire Authority Road, Irvine, CA 92602 |
| 2.30 | Orange County, CA | Oil Wells Business Certificate | Permittee | | Department of Conservation Division Of Oil, Gas and Geothermal | 801 K St., MS 24-02, Sacramento, CA 95814 |
| 2.31 | Orange County, CA | Fire Authority Permit | Permittee | | Department of Conservation Division Of Oil, Gas and Geothermal | 801 K St., MS 24-02, Sacramento, CA 95814 |
| 2.32 | Orange County, CA | Permit To Operate | Permittee | | Department of Toxic Substance Control | PO Box 806, Sacramento, CA 95812-0806 |
| 2.33 | Orange County, CA | Approvals/Project Permits To Conduct Well Operations | Permittee | | Orange County Health Care Agency | 1241 East Dyer Rd., Suite 120, Santa Ana, CA 92705 |
| 2.34 | Orange County, CA | Generation of Haz Waste EPA-ID | Permittee | | Department of Toxic Substance Control | 1515 Clay St., Suite 1302, Oakland, CA 94612 |
| 2.35 | Orange County, CA | Storm Water Permit/Waste Pile | Permittee | | State of California DOSH | 1515 Clay St., Suite 1302, Oakland, CA 94612 |
| 2.36 | Santa Barbara County, CA | CUPA Haz Mat Disclosure | Permittee | | State of California DOSH | 1515 Clay St., Suite 1302, Oakland, CA 94612 |
| 2.37 | Santa Barbara County, CA | Generation of Haz Waste EPA-ID | Permittee | | Santa Barbara County Fire Department | 4410 Cathedral Oaks Rd., Santa Barbara, CA 93110 |
| 2.38 | Orange County, CA | Permit To Operate Air Pressure Tank | Permittee | | Santa Barbara County Environmental Health Services | 2125 S. Centerpointe Parkway, Suite 333, Santa Maria, CA 93455 |
| 2.39 | Santa Barbara County, CA | Permit To Operate Air Pressure Tank | Permittee | | Santa Barbara County Hazmat/Environmental Health Services | 2125 S. Centerpointe Parkway, Suite 333, Santa Maria, CA 93455 |
| 2.40 | Santa Barbara County, CA | Hot Work Permit / Facility Fire Permit | Permittee | | State of California DOSH | 1515 Clay St., Suite 1302, Oakland, CA 94612 |
| 2.41 | Santa Barbara County, CA | Permit To Operate Air Pressure Tank | Permittee | | State of California DOSH | 1515 Clay St., Suite 1302, Oakland, CA 94612 |
| 2.42 | Santa Barbara County, CA | Permit To Operate Air Pressure Tank | Permittee | | State of California DOSH | 1515 Clay St., Suite 1302, Oakland, CA 94612 |
| 2.43 | Santa Barbara County, CA | Permit To Operate Air Pressure Tank | Permittee | | Santa Barbara County Air Pollution Control District | 260 North Antonio Road, Suite A, Santa Barbara, CA 93110 |
| 2.44 | Santa Barbara County, CA | Permit To Operate | Permittee | | Santa Barbara County Building & Safety Division | 123 E. Anapamu Street, Santa Barbara, CA 93101 |
| 2.45 | Santa Barbara County, CA | Electrical Maintenance Permit | Permittee | | Santa Barbara County Planning & Development Dept | 123 E. Anapamu Street, Santa Barbara, CA 93101 |
| 2.46 | Santa Barbara County, CA | Land Use Permit | Permittee | | Central Coast Regional Water Quality Control Board | 895 Aerovista Place, Suite 101, San Luis Obispo, CA 93401-7906 |
| 2.47 | Santa Barbara County, CA | Approvals/Project Permits To Conduct Well Operations | Permittee | | Department of Conservation Division Of Oil, Gas and Geothermal Resources | 801 K St., MS 24-02, Sacramento, CA 95814 |
| 2.48 | Santa Barbara County, CA | Approvals/Project Permits To Conduct Well Operations | Permittee | | | |

Case 9:19-bk-11573-MB   Doc 171   Filed 09/09/19   Entered 09/09/19 08:34:12   Desc
Main Document   Page 271 of 316

Debtor: HVI Cat Canyon, Inc.

Attachment to Schedule G (Page 2 of 2)

Case number (if known) 19-11857

| No. Sale reference | Description of contract or lease | Nature of HVI interest in the contract or lease | Term remaining / Government contract No. if any | Counterparty name | Counterparty address (1) |
|---|---|---|---|---|---|
| 2.49 Kern County, CA | Surface Lease 3/1/71, Book 9701, Page 381 | Lessee (Grantee) | | Frank and Sylvia Boisseranc | 10000 Aliso Ave., Bakersfield, CA 93311 |
| 2.50 Orange County, CA | Surface Lease 3/1/71, Book 9701, Page 381 | Lessee (Grantee) | | Bagamba | 300 W. Paseo De Cristobal, San Clemente, CA 92672 |
| 2.53 Orange County, CA | Surface Rental Agreement 12/31/71, Book 10006, Pages 1478 | Lessee (Grantee) | | Lois Elohassky | 140 Strada Pinna, Anaheim, CA 92807 |
| 2.53 Orange County, CA | Agreement 7/1/72 | Lessee (Grantee) | | Dominique C. Elohassky | 772 W. Town & Country Rd., Orange CA 92868 |
| 2.53 Orange County, CA | Agreement 7/1/72 | Lessee (Grantee) | | R.D. Elohassy Trustee | 315 S. Via Montmaro, Anaheim, CA 92807 |
| 2.53 Orange County, CA | Agreement 7/1/72 | Lessee (Grantee) | | State Colleges, LLC | 2345 NW Hayes Ave., Corvallis, OR 97330 |
| 2.56 Orange County, CA | MC-72022 Easement and Right of Way Agreement 12/19/83 | Lessee (Grantee) | | Guarantee Royalties, Inc. and Leor Liquidating Assoc. | 4640 Admiralty Way, Suite 700, Marina Del Rey, CA 90292 |
| 2.56 Orange County, CA | Surface Lease and Surface Use 3/1/09, 2000000145928 | Lessee (Grantee) | | | |
| 2.57 Orange County, CA | Surface Lease 2/9/71, Boo 10568, Page 53 | Lessee (Grantee) | | Frederick D. Thomson, Jr. | 824 Avalon Ct., San Diego, CA 92109 |
| 2.58 Santa Barbara County, CA | Surface Lease 2/9/71, Boo 10568, Page 53 | Lessee (Grantee) | | Leigh T. Medema | 3401 Cascia Circle Unit A, Highlands Ranch, CO 80126 |
| 2.59 Orange County, CA | Surface Lease 2/9/71, Boo 10568, Page 53 | Lessee (Grantee) | | Michael McLaughlin | 3840 N. Woodridge Way, Flagstaff, AZ 86004 |
| 2.60 Orange County, CA | Surface Lease 2/9/71, Boo 10568, Page 53 | Lessee (Grantee) | | Tim McLaughlin | 1127 Buckingham Dr., #F, Costa Mesa, CA 92626 |
| 2.61 Santa Barbara County, CA | Pipeline Lease | Lessee (Grantee) | | Sean McLaughlin | 17101 Springdale St., Apt. 126, Huntington Beach, CA 92649 |
| 2.62 Santa Barbara County, CA | License Agreement 9/5/2000 | Lessee (Grantee) | | Adam Family Trust | 2201 Simon Rd., Santa Maria, CA 93455 |
| 2.63 Santa Barbara County, CA | MC-70021 Easement and Right of Way Agreement 12/19/83 | Lessee (Grantee) | | Occidental, LLC | 1500 Orcutt Hill Rd., Orcutt, CA 93455 |
| 2.64 Santa Barbara County, CA | Surface Lease Agreement 3/19/64 | Lessee (Grantee) | | Marianne Friedl | 2003 A Street, Santa Maria, CA 93455 |
| 2.65 Santa Barbara County, CA | Letter of Authorization 7/20/43 | Lessee (Grantee) | | OKF, LLC | 865 Sage Crest Rd., Santa Maria, CA 93455 |
| 2.66 Santa Barbara County, CA | Right of Way Agreement 12/2/80 | Lessee (Grantee) | | Manfred Gander | PO Box 07835 Dallas, TX 75367 |
| 2.67 Santa Barbara County, CA | Right of Way Agreement 11/9/01 | Lessee (Grantee) | | E&B Natural Resources | 7476 Griciosa Rd., Santa Maria, CA 93455 |
| 2.68 Santa Barbara County, CA | Right of Way Agreement 11/9/01 | Lessee (Grantee) | | Grundoon, LLC | 1600 North Rd., Bakersfield, CA 93308 |
| 2.69 Santa Barbara County, CA | Right of Way Agreement 11/9/01 | Lessee (Grantee) | | Morgardi Ranch | 620 McKinley Rd., Buellton, CA 93427 |
| 2.70 Santa Barbara County, CA | Right of Way Agreement 11/9/01 | Lessee (Grantee) | | Righetti Management Company | PO Box 2075, Orcutt, CA 93457 |
| 2.71 Santa Barbara County, CA | Right of Way Agreement 11/9/01 | Lessee (Grantee) | | Paul A. Righetti, R. Fowler & Timothy Righetti, Trustees | 7476 Griciosa Rd., Santa Maria, CA 93455 |
| 2.72 Santa Barbara County, CA | Right of Way Agreement 12/2/92 | Lessee (Grantee) | | Pacita 2000 Trust | 7476 Griciosa Rd., Santa Maria, CA 93455 |
| 2.73 Santa Barbara County, CA | Right of Way Agreement 12/23/92 | Lessee (Grantee) | | Jim & A. Rogers | PO Box 234, Santa Maria, CA 93455 |
| 2.74 Santa Barbara County, CA | Right of Way Agreement 12/23/92 | Lessee (Grantee) | | Ronald H. Scotus, Jr. | PO Box 234, Santa Maria, CA 93455 |
| 2.75 Santa Barbara County, CA | Right of Way Agreement 12/23/92 | Lessee (Grantee) | | Michael J. Souza | PO Box 2337, Orcutt, CA 93457 |
| 2.76 Santa Barbara County, CA | MC-70033 Right of Way Agreement | Lessee (Grantee) | | Roland and Sally Miller | 3028 Sandy Hill Lane, Santa Maria, CA 93455 |
| 2.77 Santa Barbara County, CA | MC-70018 Right of Way Agreement | Lessee (Grantee) | | Bruce & Julie Gordon | 2955 E. Clark Ave., Santa Maria, CA 93455 |
| 2.78 Santa Barbara County, CA | MC-70018 Right of Way Agreement 11/14/92 | Lessee (Grantee) | | NuView, Inc. | PO Box 366, Santa Maria, CA 93456 |
| 2.79 Santa Barbara County, CA | MC0575-2 Right of Way Agreement | Lessee (Grantee) | | Jack & Georgette Girvin and George & Catherine Steele | 3501 Telephone Rd., Santa Maria, CA 93455 |
| 2.80 Santa Barbara County, CA | 12/19/91 VO-RW1 | Lessee (Grantee) | | Donald and Roland Vincent | 230 Winchester Canyon Rd., Goleta, CA 93117 |
| 2.81 Santa Barbara County, CA | VO-RW4 | Lessee (Grantee) | | | |
| 2.82 Santa Barbara County, CA | VO-RW-6 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.83 Santa Barbara County, CA | VO-RW-4 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.84 Santa Barbara County, CA | SAW C-6 Amend to ROW | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.85 Santa Barbara County, CA | MC-70170 ROW Agree dist | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.86 Santa Barbara County, CA | MC-6569-3ROW Agree dist | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.87 Santa Barbara County, CA | SAW C-8 & 28 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.88 Santa Barbara County, CA | MC-68315 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.89 Santa Barbara County, CA | MC-06562 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.90 Santa Barbara County, CA | MC-06559 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.91 Santa Barbara County, CA | MC-06559 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.92 Santa Barbara County, CA | MC-06562 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.93 Santa Barbara County, CA | MC-6541 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.94 Santa Barbara County, CA | MC-6688 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.95 Santa Barbara County, CA | MC-6688 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.96 Santa Barbara County, CA | Shell Letter Agreement MC-06589 | Lessee (Grantee) | | Bradley Land Company | PO Box 1932, Santa Maria, CA 93456 |
| 2.97 Santa Barbara County, CA | Lease Agreement 3/1/07 | Tenant | evergreen | GLR, LLC | 45 Rockefeller Plaza, Suite 2410, New York NY 10111 |
| 2.98 Santa Barbara County, CA | Settlement Agreement | Operator | 12/31/2019 Notice 0011 | California's Dept. of Conservation, Division Of Oil & Gas | 801 K St., MS 24-03, Sacramento, CA 95814 |
| 2.99 Santa Barbara County, CA | Settlement Agreement | Payor | 12 installments | Hanson Andrews Kurth LLP | 600 Travis Street, Suite 4200, Houston, TX 77002 |
| 2.102 | Settlement Agreement | Payor | 3 installments | Brian Corson | 2990 Lichen Place, Templeton, CA 93465 |
| 2.103 | Settlement Agreement | Payor | 2 installments | Pacific Petroleum Company | P.O. Box 2846, Orcutt, CA 93457 |

# EXHIBIT "2"

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA 93454

CRUDE OIL PURCHASE CONTRACT

Greka SMV, Inc.
Attn: Herb Miller
3201 Airpark Drive, Suite 201
Santa Maria, CA 93455

DATE: August 1, 1999                    CONTRACT NO. COP-002

When accepted by you in the manner hereinafter indicated this shall evidence the agreement between Santa Maria Refining Company, hereinafter "Buyer", and Greka SMV, Inc., hereinafter "Seller", under the terms of which Seller agrees to sell and deliver, and Buyer agrees to purchase and receive, the hereinafter described crude oil and/or condensate upon the following terms and conditions.

**Buyer Receives:**

I.      **TERM:**
        Effective, August 1, 1999 and continuing month-to-month thereafter subject to cancellation by thirty (30) days written notice by either party, to the other.

II.     **TYPE OF OIL:**
        Santa Maria Valley Crude Oil

III.    **QUANTITY:**
        All quantities.

IV.     **DELIVERY:**
        F.O.B. various Leases located in Santa Barbara County, California. Title shall pass from Seller to Buyer as crude oil passes through the last outlet flange of the lease tank manifold at designated Leases.

V.      **PRICE:**
        The price per barrel shall be posted prices but no less than twelve dollars ($12.00).

VI.     **MEASUREMENT:**
        Note: LACT meter will be used for measurement as well as cut and gravity, to be verified by refinery. Volume to be determined by LACT unit and verified by refinery, and will be reduced by the amount of BS&W determined to be present.

        LACT Tickets and any other notices or documents shall be mailed to the addresses below.

VII.    **PAYMENT:**
        Via Check, in US dollars on or before the 20th of the month following delivery.

This contract is subject to Buyer's general provision for crude oil sale/purchase/exchanges (as the same may be revised from time to time), which are being provided by Buyer to Seller herewith and which are incorporated herein by reference.

IN WITNESS WHEREOF, this contract has been executed as of the date first written above.

SANTA MARIA REFINING COMPANY                GREKA SMV, INC.
BY: *Brent Stromberg*                       BY: *Herb Miller*
    Brent Stromberg, General Manager            Herb Miller, GM-SMV Production
    1660 Sinton Road                            3201 Airpark Drive, Suite 201
    Santa Maria, CA 93454                       Santa Maria, CA 93455

EXHIBIT

2

**SANTA MARIA REFINING COMPANY**
1660 Sinton Road • Santa Maria, CA 93454

CRUDE OIL PURCHASE CONTRACT AMENDMENT

Greka SMV, Inc.
Attn: Herb Miller
3201 Airpark Drive, Suite 201
Santa Maria, CA 93455

DATE: October 21, 1999

AMENDED
CONTRACT NO. COP-002/A1

Upon full execution hereof by the parties, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999 by and between Santa Maria Refining Company (hereinafter "Buyer") and Greka SMV, Inc. (hereinafter "Seller") are hereby amended in their entirety as follows:

I. **TERM:**
Effective August 1, 1999 and continuing for five (5) years thereafter, expiring on July 31, 2004.

All other terms of Contract No. COP-002 remain unchanged and are in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

SANTA MARIA REFINING COMPANY

By: _Brent Stromberg_
Brent Stromberg, General Manager
1660 Sinton Road
Santa Maria, CA 93454

GREKA SMV, INC.

By: _Herb Miller_
Herb Miller, GM-SMV Production
3201 Airpark Drive, Suite 201
Santa Maria, CA 93455

OSMV.amend crude oil lk

31

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

CRUDE OIL PURCHASE CONTRACT AMENDMENT
AMENDED CONTRACT NO.  COP-002/A2

Effective July 1, 2002, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended by deleting the text in their entirety and replacing same with the following text:

    V.    **PRICE:**

The price per barrel shall be posted prices but no less than twelve dollars ($12.00); *except that* the price per barrel for the crude oil produced from the leases described in Exhibit "A" attached hereto and incorporated herein by this reference (individually a "Lease", and collectively the "Leases") shall be no less than twenty dollars ($20.00) per barrel notwithstanding the posted price of crude oil as provided in the Leases at the time the royalty is due, *provided, however,* that (1) Greka SMV, Inc. ("Greka"), or an assignee as permitted under the terms of that certain Consent To Assignment from Bradley Land Company consenting to the assignment by Vintage Petroleum, Inc. to Vintage Petroleum California, Inc. (collectively "Vintage") and then to Greka, owns and continues to own all the interests in a Lease and the related easements, rights-of-way, surface agreements, and other agreements, if any, acquired by Greka from Vintage, (2) the Santa Maria Asphalt Refinery continues to be owned, operated and controlled without interruption by an affiliate of Greka, and (3) the rate of $20.00 per barrel does not become known to any third party other than Greka, Vintage, Bradley Land Company or any of their respective affiliates, directors, officers, employees, agents, consultants, legal counsel and financial advisors.

The parties expressly agree that the amended PRICE terms of Contract No. COP-002 are strictly confidential and that no disclosure to Greka's detriment is permitted.  If the amended PRICE terms of Contract No. COP-002 become void, they shall be stricken from Contract No. COP-002 without effect on the remaining provisions thereof.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                          SELLER:

SANTA MARIA REFINING COMPANY    GREKA SMV, INC.

BY: _Brent Stromberg_           BY: _____
    Brent Stromberg                  Randeep S. Grewal
    VP-Downstream Operations       Chairman, CEO & President

32

# EXHIBIT "A"

LIST OF LEASES AND AGREEMENTS SUBJECT TO Contract No. COP-002/A2
BY AND BETWEEN
SANTA MARIA REFINING COMPANY AND GREKA SMV, INC.

| LIST OF LEASES AND AGREEMENTS | ORIGINAL LESSEE | ACREAGE |
|---|---|---|
| *CA-40001:* OIL, GAS & MINERAL LEASE<br>DTD 7/1/70, REC'D- BK 2317 PG 975 | SHELL | 180 |
| *CA-40109:* OIL, GAS & MINERAL LEASE<br>DTD 2/17/72, REC'D- BK 2390 PG 581 | SHELL | 120 |
| *CA-40014:* OIL AND GAS LEASE<br>DTD 10/3/56, REC'D- BK 1411 PG 162 | UNION | 720 |
| *CA-40015:* OIL AND GAS LEASE<br>DTD 4/4/56, REC'D- BK 1375 PG 210 | BASENBERG | 410 |
| *CA-40016:* OIL AND GAS LEASE<br>DTD 6/12/57, REC'D- BK 1469 PG 489 | BASENBERG | 10 |
| *CA-40159:* OIL AND GAS LEASE<br>DTD 1/16/69, REC'D- BK 2266 PG 307 | STANDARD | 160 |
| *CA-40161:* OIL AND GAS LEASE<br>DTD 12/1/65, REC'D- BK 2204 PG 922 | STANDARD | 320 |
| *CA-70206:* OIL AND GAS LEASE<br>DTD 5/2/79, REC'D- DOC # 80-13008 | CHEVRON | 60 |
| *246073:* OL, GAS, & MINERAL LEASE<br>DTD 3/1/76, REC'D- BK 2192 PG 12 | TEXACO | 570 |
| *VO-RW-1.4:* CENTRALIZED FACILITIES AGRMT<br>DTD 11/10/92, UNREC'D | VINTAGE | |

PLUS ANY AND ALL OTHER ASSOCIATED RIGHTS OF WAY, EASEMENTS, AND
AGREEMENTS, RECORDED OR UNRECORDED

## SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

### CRUDE OIL PURCHASE CONTRACT AMENDMENT
### AMENDED CONTRACT NO.  COP-002/A3

Effective January 1, 2003, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended by deleting the text in their entirety and replacing same with the following text:

**I.**     **TERM:**

Effective August 1, 1999 and continuing for five (5) years thereafter, *except from January 1, 2003 through February 28, 2003*, expiring on July 31, 2004.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                                    SELLER:

SANTA MARIA REFINING COMPANY          GREKA SMV, INC.

BY:  _Brent Stromberg_                           BY: _____
     Brent Stromberg                                   Randeep S. Grewal
     VP-Operations                                     Chairman, CEO & President

**SANTA MARIA REFINING COMPANY**
1660 Sinton Road - Santa Maria, CA  93454

<u>CRUDE OIL PURCHASE CONTRACT AMENDMENT</u>
AMENDED CONTRACT NO.  COP-002/A4

Effective January 1, 2004, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended by adding the following text:

<u>VIII.</u>    <u>FEES:</u>
In addition to the price per barrel, a $0.50 per barrel marketing and handling fee and a $1.00 per barrel transportation charge.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                    SELLER:

SANTA MARIA REFINING COMPANY             GREKA OIL & GAS, INC.

BY: _Brent Stromberg_                    BY: _____
    Brent Stromberg                          Susan M. Whalen
    VP Downstream Operations                 VP Asset Management

35

SANTA MARIA REFINING COMPANY
1660 Sinton Road – Santa Maria, CA  93454

CRUDE OIL PURCHASE CONTRACT AMENDMENT
AMENDED CONTRACT NO.  COP-002/A5

Effective July 31, 2004, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended by deleting the text in their entirety and replacing same with the following text:

I.    TERM:
Effective July 31, 2004 and continuing month-to-month thereafter subject to cancellation by thirty (30) days written notice by either party to the other.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                         SELLER:

SANTA MARIA REFINING COMPANY                   GREKA OIL & GAS, INC.

BY:  _____                   BY: _____
     Susan M. Whalen                               Randeep S. Grewal
     VP Asset Management and General Counsel       Chairman, CEO & President

36

**SANTA MARIA REFINING COMPANY**
1660 Sinton Road - Santa Maria, CA  93454

## CRUDE OIL PURCHASE CONTRACT AMENDMENT
AMENDED CONTRACT NO.  COP-002/A6

Effective January 1, 2007, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended as follows:

V.    PRICE:
All references to posted prices shall be the average of Chevron Texaco, Shell Trading, Union76, and Exxon Mobil posting for Midway Sunset in effect for the month of delivery, adjusted for actual gravity delivered less $5.00 per barrel market differential..

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                          SELLER:

SANTA MARIA REFINING COMPANY                    EUREKA OIL & GAS, INC.

BY: _____               BY: _____
    Susan M. Whalen                                 Randeep S. Grewal
    VP Asset Management and General Counsel         Chairman, CEO & President

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

CRUDE OIL PURCHASE CONTRACT AMENDMENT
AMENDED CONTRACT NO.  COP-002/A7

Effective November 1, 2007, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended as follows:

V.    PRICE:
It being contemplated during the term of this Contract that Greka Oil & Gas, Inc. will sell its crude oil to buyers other than Santa Maria Refining Company ("Buyer"), at any and all times that said crude oil may not meet the specifications of said buyers, Buyer shall purchase said crude oil at a price of NYMEX less $30.00 per barrel, not to exceed $20.00 per barrel.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                         SELLER:

SANTA MARIA REFINING COMPANY          GREKA OIL & GAS, INC.

BY:  _____            BY: _____
     Susan M. Whalen                         Randeep S. Grewal
     Sr. VP and General Counsel               Chairman, CEO & President

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA 93454

<u>CRUDE OIL PURCHASE CONTRACT AMENDMENT</u>
AMENDED CONTRACT NO. COP-002/A8

Effective June 1, 2010, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended as follows:

I.     <u>TERM</u>:
       Effective June 1, 2010 and continuing for ten (10) years thereafter, expiring on May 31, 2020, and continuing month-to-month thereafter subject to cancellation by thirty (30) days written notice by either party to the other.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                    SELLER:

SANTA MARIA REFINING COMPANY              GREKA OIL & GAS, INC.

BY: _____            BY: _____
        Susan M. Whalen                          Andrew DeVegvar
        SVP and General Counsel                  President

39

SANTA MARIA REFINING COMPANY

1660 Sinton Road - Santa Maria, CA  93454

**CRUDE OIL PURCHASE CONTRACT AMENDMENT**

AMENDED CONTRACT NO.  COP-002/A9

Effective March 1, 2011, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended as follows:

IV.    **DELIVERY:**
F.O.B. Santa Maria Refinery located at 1660 Sinton Road, Santa Maria, CA. Title shall pass from Seller to Buyer as crude oil passes through the crude oil unloading area at the refinery.

V.    **PRICE:**
The price per barrel shall be based on WTI less $14.00 per barrel, adjusted for actual gravity delivered.

VIII.    **FEES:**
There shall be no fees payable in addition to the price per barrel.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                      SELLER:

SANTA MARIA REFINING COMPANY               GREKA OIL & GAS, INC.

BY: _____                BY: _____
Susan M. Whalen                            Andrew DeVegvar
SVP and General Counsel                    President

40

SANTA MARIA REFINING COMPANY
1660 Sinton Road ~ Santa Maria, CA  93454

CRUDE OIL PURCHASE CONTRACT AMENDMENT
AMENDED CONTRACT NO.  COP-002/A10

Effective January __1__, 2012, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended as follows:

V.    PRICE:
The price per barrel shall be based on WTI less $8.00 per barrel, adjusted for actual gravity delivered.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                          SELLER:

SANTA MARIA REFINING COMPANY                     HVI CAT CANYON, INC.

BY: _____                       BY: _____
      Susan M. Whalen                                  Andrew DeVegvar
      SVP and General Counsel                          President

41

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

## CRUDE OIL PURCHASE CONTRACT AMENDMENT
### AMENDED CONTRACT NO.  COP-002/A11

Effective July 1, 2012, the following term(s) of that certain Contract No. COP-002 entered into as of August 1, 1999, as amended, by and between the undersigned are hereby amended as follows:

V.   PRICE:
The price per barrel shall be based on Greka's posting for Santa Maria Valley crude, adjusted for actual gravity delivered.

All other terms and conditions of Contract No. COP-002, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                            SELLER:

SANTA MARIA REFINING COMPANY                      HVI CAT CANYON, INC.

BY                                                BY:
    Susan M. Whalen                                   Andrew DeVegvar
    SVP and General Counsel                           President

42

# EXHIBIT "3"

*Original
file in NY.*

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

## CRUDE OIL PURCHASE CONTRACT
### CONTRACT NO.  COP-003

Upon full execution hereof by the parties, this contract ("Contract") shall evidence the agreement between Santa Maria Refining Company, hereinafter "Buyer", and Greka SMV, Inc. as operator of the interests owned by Greka AM, Inc. ("Greka") and Sabacol, Inc. ("Sabacol"), hereinafter collectively "Seller", under the terms of which Seller agrees to sell and deliver, and Buyer agrees to purchase and receive, the hereinafter described crude oil and/or condensate upon the following terms and conditions.

**Buyer Receives:**

I.     **TERM:**
       Effective August 1, 2000, and continuing for five (5) years thereafter.
       Further, Buyer has the option to renew this Contract for an additional five (5) year term
       by providing notice of same to Seller prior to expiration.

II     **TYPE OF OIL:**
       Belridge Heavy Crude Oil

III.   **QUANTITY:**
       All quantities from production of Leases (Belridge, Gibson and McPhail).

IV.    **DELIVERY:**
       F.O.B. various Leases (Belridge, Gibson and McPhail) located in Kern County,
       California.  Title shall pass from Seller to Buyer as crude oil passes through the last outlet
       flange of the lease tank manifold at designated Leases.

V.     **PRICE:**
       The price per barrel shall be the average of Chevron, Mobil, Union and Equiva posted
       prices for Belridge Heavy Crude Oil, adjusted for actual gravity delivered.

VI.    **MEASUREMENT:** *BY TANK GAUGE, TO BE VERIFIED BY RECEIVING SCALE* ~~BS~~
       Note: ~~LACT meter will be used for measurement as well as cut and gravity, to be~~ *OR METER.*
       ~~verified by refinery.  Volume to be determined by LACT unit and verified by refinery,~~
       ~~and will be reduced by the amount of BS&W determined to be present.~~
       *GAUGE BS*
       ~~LACT~~ Tickets and any other notices or documents shall be mailed to the addresses
       below.

VII.   **PAYMENT:**
       Via Check, in US dollars on or before the 20th of the month following delivery.

VIII.  **SUCCESSORS AND ASSIGNS:**
       Nothing in this Contract shall limit Greka's or Sabacol's right to sell, exchange, or
       otherwise dispose of any interest in a Lease subject to this Contract or any interest in
       production therefrom.  Seller will notify Buyer promptly following any sale, exchange or
       other disposition of interests in any of the Leases subject to this Contract. With respect to
       any interests that are sold, exchanged or otherwise disposed of, this Contract shall be



EXHIBIT

3

44

binding on Buyer and the successors in interest to Greka and Sabacol of such interests in the Leases without the prior written consent of Buyer.

IX.    **ENTIRE AGREEMENT:**
This Contract constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the parties hereto with respect to the subject matter hereof, and no party shall be liable or bound to the other in any manner by any representations or warranties not set forth herein.

X.    **COUNTERPARTS:**
This Contract may be executed in one or more counterparts by person or by facsimile, each of which shall for all purposes be deemed to be an original and all of which shall constitute the same instrument.

XI.    **MODIFICATION AND WAIVER:**
Any of the terms or conditions of this Contract may be waived in writing at any time by the party which is entitled to the benefits thereof, and this Contract may be modified or amended by a written instrument executed by all of the parties hereto. No supplement, modification or amendment of this Contract shall be binding unless executed in writing by all of the parties hereto. No waiver of any of the provisions of this Contract shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar) nor shall such waiver constitute a continuing waiver.

XI.    **GOVERNING LAW; CONSENT TO JURISDICTION:**
This Contract shall be construed in accordance with the laws of the State of California. The parties hereto expressly consent and agree that any dispute, controversy, legal action or other proceeding that arises under, results from, concerns or relates to this Contract shall be brought in the federal or state courts in and of the State of California in the Central District of California or the County of Santa Barbara, respectively. The parties hereto hereby acknowledge that said courts have exclusive jurisdiction over any such dispute or controversy, and that they hereby waive any objection to personal jurisdiction or venue in these courts or that such courts are an inconvenient forum.

XII.    **TIME:**
Time is of the essence with respect to this Contract.

XIII.    **REFORMATION AND SEVERABILITY:**
In case any provision of this Contract shall be invalid, illegal or unenforceable, it shall, to the extent possible, be modified in such manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Contract, and in either case the validity, legality and enforceability of the remaining provisions of this Contract shall not in any way be affected or impaired thereby.

This contract is subject to Buyer's general provision for crude oil sale/purchase/exchanges (as the same may be revised from time to time), which are being provided by Buyer to Seller herewith and which are incorporated herein by reference.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, this Contract has been executed as of the date first written above.

SANTA MARIA REFINING COMPANY          GREKA SMV, INC.

BY: _Brent Stromberg_                  BY: _____
    Brent Stromberg, General Manager      Randeep S. Grewal, Ch., CEO & Pres.
    1660 Sinton Road                      3201 Airpark Dr., Suite 201
    Santa Maria, CA  93454                Santa Maria, CA  93455

                                      GREKA AM, INC.

                                      BY: _____
                                        Randeep S. Grewal, Ch., CEO & Pres.
                                        3000 Wilcrest Dr., Suite 220
                                        Houston, TX  77042

                                      SABACOL, INC.

                                        BY: _____
                                        Randeep S. Grewal, Ch., CEO & Pres.
                                        3201 Airpark Dr., Suite 201
                                        Santa Maria, CA  93455

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

## CRUDE OIL PURCHASE CONTRACT AMENDMENT
AMENDED CONTRACT NO.  COP-003/A1

Effective February 1, 2002, the following term(s) of that certain Contract No. COP-003 entered into as of August 1, 2000 by and between the undersigned are hereby amended in their entirety as follows:

V.    **PRICE:**
       The price per barrel shall be the average of Chevron, Mobil, Union and Equiva posted prices for Belridge Heavy Crude Oil, adjusted for actual gravity delivered; provided, however, that, notwithstanding the foregoing, in no event shall the price per barrel be less than fifteen dollars ($15.00).

All other terms and conditions of Contract No. COP-003 shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER
SELLER:

SANTA MARIA REFINING COMPANY          OPERATOR:

                                       GREKA SMV, INC.

BY: _Brent Stromberg_                  BY: _____
Brent Stromberg                        Susan M. Whalen
VP-Downstream Operations               Secretary

                                       OWNER:

                                       GREKA AM, INC.

                                       BY: _____
                                       Susan M. Whalen
                                       Secretary

SANTA MARIA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

## CRUDE OIL PURCHASE CONTRACT AMENDMENT
### AMENDED CONTRACT NO.  COP-003/A2

Effective January 1, 2004, the following term(s) of that certain Contract No. COP-003 entered into as of August 1, 2000, as amended, by and between the undersigned are hereby amended by adding the following text:

    **XIV.**   **FEES:**
        In addition to the price per barrel, a $0.50 per barrel marketing and handling fee and a $2.00 per barrel transportation charge.

All other terms and conditions of Contract No. COP-003, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                                         SELLER:

SANTA MARIA REFINING COMPANY          GREKA OIL & GAS, INC.

BY: _____          BY: _____
     Brent Stromberg                                        Susan M. Whalen
     VP Downstream Operations                       VP Asset Management

48

SANTA MARIA REFINING COMPANY
1660 Sinton Road – Santa Maria, CA  93454

CRUDE OIL PURCHASE CONTRACT AMENDMENT
AMENDED CONTRACT NO.  COP-003/A3

Effective August 1, 2005, the following term(s) of that certain Contract No. COP-003 entered into as of August 1, 2000, as amended, by and between the undersigned are hereby amended by deleting the text in their entirety and replacing same with the following text:

    I.    **TERM:**
        Effective August 1, 2005 and continuing month-to-month thereafter subject to cancellation by thirty (30) days written notice by either party to the other.

All other terms and conditions of Contract No. COP-003, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                                          SELLER:

SANTA MARIA REFINING COMPANY             GREKA OIL & GAS, INC.

BY:                                                              BY:
    Susan M. Whalen                                        Randeep S. Grewal
    VP Asset Management and General Counsel        Chairman, CEO & President

SANTA MARIA REFINING COMPANY
1660 Sinton Road – Santa Maria, CA  93454

## CRUDE OIL PURCHASE CONTRACT AMENDMENT
### AMENDED CONTRACT NO.  COP-003/A4

Effective January 1, 2007, the following term(s) of that certain Contract No. COP-003 entered into as of August 1, 2000, as amended, by and between the undersigned are hereby amended as follows:

V. **PRICE:**
All references to posted prices shall be the average of Chevron Texaco, Shell Trading, Union76, and Exxon Mobil posting for Midway Sunset in effect for the month of delivery, adjusted for actual gravity delivered.

All other terms and conditions of Contract No. COP-003, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:

SANTA MARIA REFINING COMPANY

BY: _____
Susan M. Whalen
VP Asset Management and General Counsel

SELLER:

GREKA OIL & GAS, INC.

BY: _____
Randeep S. Grewal
Chairman, CEO & President

**SANTA MARIA REFINING COMPANY**
1660 Sinton Road - Santa Maria, CA 93454

<u>CRUDE OIL PURCHASE CONTRACT AMENDMENT</u>
AMENDED CONTRACT NO. COP-003/A5

Effective October 1, 2007 the following term(s) of that certain Contract No. COP-003 entered into as of August 1, 2000, as amended, by and between the undersigned were amended, and are hereby ratified as amended, as follows:

**V.    PRICE:**
All references to posted prices shall be the average of Chevron Texaco, Shell Trading, Union76, and Exxon Mobil posting for Buena Vista in effect for the month of delivery, adjusted for actual gravity delivered; Less $.075 per barrel transportation differential.

**XIV.    FEES:**
Less $0.50 per barrel marketing and handling fee.

All other terms and conditions of Contract No. COP-003, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                              SELLER:

SANTA MARIA REFINING COMPANY                        HVI CAT CANYON, INC.

BY:                                                 BY:
_____                             _____
Susan M. Whalen                                     Randeep S. Grewal
SVP and General Counsel                             Chairman and CEO

Belridge

51

EXHIBIT "4"

**SANTA MARIA REFINING COMPANY**
1660 Sinton Road - Santa Maria, CA  93454

<u>CRUDE OIL PURCHASE CONTRACT</u>
**CONTRACT NO.  COP-004**

Upon full execution hereof by the parties, this contract ("Contract") shall evidence the agreement between Santa Maria Refining Company, hereinafter "Buyer", and Greka Oil & Gas, Inc., hereinafter "Seller", under the terms of which Seller agrees to sell and deliver, and Buyer agrees to purchase and receive, the hereinafter described crude oil and/or condensate upon the following terms and conditions.

I.  **TERM:**
Effective June 1, 2009 and continuing month-to-month thereafter subject to cancellation by thirty (30) days written notice by either party to the other.

II   **TYPE OF OIL:**
Richfield crude oil

III.  **QUANTITY:**
All quantities of production from the leases within the Richfield East Dome Unit

IV.  **DELIVERY:**
Into third party pipeline facilities at the lease. Title shall pass from Seller to Buyer as crude oil passes through the last outlet flange on the leases into the third party pipeline.

V.  **PRICE:**
The price per barrel shall be the average of ChevronTexaco, Union76, & ExxonMobil postings for Buena Vista Hills, adjusted for actual gravity delivered.

VI.  **MEASUREMENT:**
All measurement equipment, procedures, calculations and practices shall conform to the most current API Manual of Petroleum Measurement Standards (MPMS) and the latest revision of the ASTM Standards.

Seller will not be required to invoice Buyer. Instead, Buyer will use third party run tickets to determine remittance amount.

VII.  **PAYMENT:**
Via wire transfer or check, in US dollars on or before the 20th of the month following delivery, unless otherwise accounted for between the parties.

VIII.  **SUCCESSORS AND ASSIGNS:**
Nothing in this Contract shall limit Seller's right to sell, exchange, or otherwise dispose of any interest in a Lease subject to this Contract or any interest in production therefrom.  Seller will notify Buyer promptly following any sale, exchange or other disposition of interests in any of the Leases subject to this Contract. With respect to any interests that are sold, exchanged or otherwise disposed of, this Contract shall be binding on Buyer and the successors in interest to Seller of such interests in the Leases without the prior written consent of Buyer.

IX.  **ENTIRE AGREEMENT:**
This Contract constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, between the parties hereto with respect to the subject matter hereof, and no party shall be liable or bound to the other in any manner by any representations or warranties not set forth herein.

EXHIBIT    4

53

**X.    COUNTERPARTS:**

This Contract may be executed in one or more counterparts by person or by facsimile, each of which shall for all purposes be deemed to be an original and all of which shall constitute the same instrument.

**XI.    MODIFICATION AND WAIVER:**

Any of the terms or conditions of this Contract may be waived in writing at any time by the party which is entitled to the benefits thereof, and this Contract may be modified or amended by a written instrument executed by all of the parties hereto.  No supplement, modification or amendment of this Contract shall be binding unless executed in writing by all of the parties hereto.  No waiver of any of the provisions of this Contract shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar) nor shall such waiver constitute a continuing waiver.

**XI.    GOVERNING LAW; CONSENT TO JURISDICTION:**

This Contract shall be construed in accordance with the laws of the State of California. The parties hereto expressly consent and agree that any dispute, controversy, legal action or other proceeding that arises under, results from, concerns or relates to this Contract shall be brought in the federal or state courts in and of the State of California in the Central District of California or the County of Santa Barbara, respectively. The parties hereto hereby acknowledge that said courts have exclusive jurisdiction over any such dispute or controversy, and that they hereby waive any objection to personal jurisdiction or venue in these courts or that such courts are an inconvenient forum.

**XII.    TIME:**

Time is of the essence with respect to this Contract.

**XIII.    REFORMATION AND SEVERABILITY:**

In case any provision of this Contract shall be invalid, illegal or unenforceable, it shall, to the extent possible, be modified in such manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Contract, and in either case the validity, legality and enforceability of the remaining provisions of this Contract shall not in any way be affected or impaired thereby.

**XIV.    FEES:**

In addition to the price per barrel, a $0.05 per barrel marketing and handling fee.

This contract is subject to Buyer's general provision for crude oil sale/purchase/exchanges (as the same may be revised from time to time), which are being provided by Buyer to Seller herewith and which are incorporated herein by reference.

IN WITNESS WHEREOF, this Contract has been executed as of the date first written above.

SANTA MARIA REFINING COMPANY          GREKA OIL & GAS, INC.

BY:                                   BY:

Susan M. Whalen,                      Andrew DeVegvar
SVP and General Counsel               COO and President
1660 Sinton Road                      PO Box 5489
Santa Maria, CA  93454                Santa Maria, CA  93456

**SANTA MARIA REFINING COMPANY**
1660 Sinton Road - Santa Maria, CA  93454

<u>CRUDE OIL PURCHASE CONTRACT AMENDMENT</u>
AMENDED CONTRACT NO.  COP-004/A1

Effective September 1, 2010 the following term(s) of that certain Contract No. COP-004 entered
into as of June 1, 2009 by and between the undersigned were amended, and are hereby ratified as
amended, as follows:

<u>V.</u>   <u>PRICE:</u>
All references to posted prices shall be the average of ChevronTexaco, Union76,
& ExxonMobil postings for Buena Vista in effect for the month of delivery,
adjusted for actual gravity delivered; Less $2.13 per barrel market differential.

<u>XIV.</u>   <u>FEES:</u>
Less $0.05 per barrel marketing and handling fee.

All other terms and conditions of Contract No. COP-004, as amended, shall remain unchanged
and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                          SELLER:

SANTA MARIA REFINING COMPANY                     RVI CAP CANYON, INC.

BY:_____                     BY:_____
Justin M. Whalen                                Randeep S. Grewal
SVP and General Counsel                          Chairman and CEO

55

EAU

GREKA REFINING COMPANY
1660 Sinton Road - Santa Maria, CA  93454

## CRUDE OIL PURCHASE CONTRACT AMENDMENT
### AMENDED CONTRACT NO.  COP-004/A2

Effective December 1, 2013 the following term(s) of that certain Contract No. COP-004 entered into as of June 1, 2009 by and between the undersigned were amended, and are hereby ratified as amended, as follows:

    <u>V.</u>    **PRICE:**
    All references to posted prices shall be the average of ChevronTexaco, Union76, STUSCO, & ExxonMobil postings for Buena Vista in effect for the month of delivery, adjusted for actual gravity delivered; Less $5.75 per barrel market differential.

All other terms and conditions of Contract No. COP-004, as amended, shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, this amendment has been executed as of the date first written above.

BUYER:                                                          SELLER:

GREKA REFINING COMPANY                    HVI CAT CANYON, INC.

BY: _____                  BY: _____
    Steve J. Demott, President                       Alex G. Dimitrijevic, President

EXHIBIT "5"

<u>WASTE GAS HANDLING AGREEMENT</u>

THIS AGREEMENT ("Agreement") shall memorialize the agreement that has been in place since on or about February 2013 by and between Greka Refining Company, a California corporation ("GRC") and HVI Cat Canyon, Inc., a Colorado corporation ("GOG").  GRC and GOG may hereinafter be referred to individually as a "Party", or collectively as the "Parties".

RECITALS

WHEREAS, GOG is the owner and operator of certain oil and gas leases located within Santa Barbara County, California (collectively, the "Leases");

WHEREAS, GRC is the owner and operator of an asphalt plant located within Santa Barbara County, California (the "Refinery"); and

WHEREAS, the Parties desire to memorialize the terms and conditions of their agreement that has been in practice for several years whereby waste gas from the Leases has been and is delivered to the Refinery.

**NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises and the terms and provisions set forth below, GRC and GOG agree as follows:**

1. Subject to the terms and conditions herein, GOG shall deliver and GRC shall receive and dispose of all waste gas produced from the Leases, including without limitation associated gas liquids, hereinafter "Waste Gas", excepting therefrom only that gas which shall be utilized by GOG, to the extent, and only to the extent, that GRC has capacity over and above its own and other existing requirements.

2. All Waste Gas deliveries to GRC hereunder shall be made to GRC's meter at the Refinery (currently meter #2900 which number may change from time to time by GRC)("Point of Delivery"). Title to, liability for, and risk of loss of all gas delivered and received hereunder shall pass from GOG to GRC at the Points of Delivery. GOG shall be responsible for the cost and risk of installing, owning and maintaining the pipelines necessary to transport the Waste Gas from the Leases to the Point of Delivery. GRC shall be responsible for the cost and risk of installing, owning and maintaining the meter at the Point of Delivery. For any pipelines and meters that require installation, GOG and GRC shall cooperate in good faith with each other to implement said installation, including without limitation providing reasonable notice.

3. GOG acknowledges that GRC is taking the Waste Gas as an accommodation to GOG and that by entering into this Agreement GRC makes no representation or warranty as to GRC's ability or capacity to receive and dispose of Waste Gas at the Refinery, and that such receipt and disposition of the Waste Gas shall be without recourse against GRC. In addition, nothing in this Agreement shall be construed as creating an obligation on the part of GRC to provide GOG with a continuous and uninterrupted source for disposing of its Waste Gas and associated liquids. GRC shall not be liable for any failure or refusal whatsoever kind or nature, at any time or from time to time, either with or without notice, to accept delivery of said Waste Gas. In particular, but not by way of limitation, GRC shall not be obligated to accept delivery of Waste Gas tendered hereunder which contains sand, oil, water, sulphur, hydrogen sulphide, air, carbon dioxide, nitrogen or other impurities in quantities which, in GRC's sole judgment, may be injurious to its pipeline, plants, or facilities; provided, however, that GRC shall use commercially reasonable efforts to give GOG prior notice of any discontinuance or limitation in taking Waste Gas.

EXECUTION COPY FINAL                                       1

EXHIBIT
5

Initials Initials

This paragraph 3 shall survive the expiration and/or earlier termination of this Agreement.

4. (a)    GRC shall pay GOG, at the rate of SoCal NGI (National Gas Index), adjusted for quality (as applicable) per thousand cubic feet (mcf), for all Waste Gas delivered to GRC at the Point of Delivery and metered by GRC, payable monthly, on or before the 25th day of each month ("Due Date") following receipt of an invoice or such other documentation acceptable to the Parties for the amounts which accrued during the immediate preceding calendar month. Each monthly invoice shall include documentation that is standard and customary in the industry supporting the amount of mcf invoiced. Any and all invoices shall be deemed received three (3) days after the invoice is deposited in the United States Mail. The Parties shall have the right to audit the invoice and meter documentation for thirty (30) days following payment.

(b)    If any payment due under this Agreement is not received within thirty (30) days after the Due Date, GRC, in addition to the payment due, shall pay GOG interest at the higher of the rate established by California State law for the payment of prejudgment interest, or at the rate of two and one half percent (2-1/2%) over the prime rate of interest charged by the **Bank of America**, or its successors, which higher interest rate is in effect on the first day of the month in which the payment is due. Interest shall be payable from Due Date to and including the date the payment is made.

5. GOG warrants title to all Waste Gas delivered to GRC hereunder and its right to deliver the same, and agrees to hold GRC, its directors, officers, affiliates, and employees harmless for and indemnify them against any and all loss, damage, cost, expense (including attorney's fees), and liability of whatsoever kind arising out of claims or demands of third persons with respect to title to such gas. Except as otherwise provided herein, GOG makes no warranties, expressed or implied, as to the Waste Gas including any warranty of merchantability or of fitness for a particular purpose. GRC acknowledges and agrees that it is taking the Waste Gas "as is, where is" as an accommodation to GOG.

6. Subject to the terms and condition hereof, the term of this Agreement shall continue month to month subject to termination at any time for any reason, with or without cause, by either Party hereto, upon thirty (30) days prior written notice thereof by one Party to the other; provided, however, that in the event of an upset in either Party's Leases or Refinery, prompt notice to the other Party shall be delivered. For purposes of this Agreement, all notices required hereunder shall be given or served in writing by U.S. Certified or Registered mail, return receipt requested, to GOG or GRC at the following addresses:

To GRC:
Attn: President and COO
1660 Sinton Road
Santa Maria, CA 93458

To GOG:
Attn: President and COO
2617 Clark Ave.
Santa Maria, CA 93454

Any party hereto may, from time to time, by written notice to the other, designate a different address which shall be substituted for the one above specified.

7. (a) GOG shall indemnify and hold GRC, its directors, officers, affiliates, and employees harmless from any and all damages, costs, expenses, fines, penalties, demands, claims or liabilities of any kind or nature whatsoever relating to damage to property (real or personal) and/or injury or death to person(s) which may arise out of or in connection with (1) GOG's acts or omission under the terms and provisions of this Agreement, and (2) the presence, release or threatened release of hazardous substances (as specified and defined by valid and applicable Federal, State, and local laws or regulations) or other environmental contamination (including but not by way of limitation, any contamination which gives rise to an obligation or liability pursuant to the Comprehensive Environmental Response Compensation and Liability Act or any other Federal, State or local laws, rules, order, regulations, or common law applicable

to gas, or any chemical or waste material) into or upon land or any water course or body of water, including groundwater, or into the atmosphere, relating to or arising out of the presence, release or threatened release of Waste Gas occurring before the Point of Delivery. This paragraph 7(a) shall survive the expiration and/or termination of this Agreement.

(b)  GRC shall indemnify and hold GOG, its directors, officers, affiliates, and employees harmless from any and all damages, costs, expenses, fines, penalties, demands, claims or liabilities of any kind or nature whatsoever relating to damage to property (real or personal) and/or injury or death to person(s) which may arise out of or in connection with (1) GRC's acts or omission under the terms and provisions of this Agreement, and (2) the presence, release or threatened release of hazardous substances (as specified and defined by valid and applicable Federal, State, and local laws or regulations) or other environmental contamination (including but not by way of limitation, any contamination which gives rise to an obligation or liability pursuant to the Comprehensive Environmental Response Compensation and Liability Act or any other Federal, State or local laws, rules, order, regulations, or common law applicable to gas, or any chemical or waste material) into or upon land or any water course or body of water, including groundwater, or into the atmosphere, relating to or arising out of the presence, release or threatened release of Waste Gas occurring after the Point of Delivery. This paragraph 7(b) shall survive the expiration and/or termination of this Agreement.

8.  In the event either Party is rendered unable wholly or in part by force majeure to carry out its obligations under this Agreement, such obligation(s), insofar as they are affected by such force majeure, shall be suspended during the continuance of any inability so caused, but for no longer period, an such cause shall insofar as possible, be remedied with reasonable dispatch. The term "force majeure", as used herein, shall mean acts of God, acts of the public enemy, inevitable accidents, labor disturbances, interference or regulation by public bodies or officers acting under claims of authority, or any other cause whether or not similar to the foregoing, beyond the reasonable control of a Party to perform. Neither Party hereto shall be required against its will to adjust or settle any labor dispute in order to meet any obligation imposed hereunder.

9.  This agreement shall not constitute, be interpreted, construed or used as evidence of any admission of liability, law, or fact, nor a waiver of any right or defense, nor an estoppel against either Party or Parties as among themselves or by other person not a party. Nothing in this paragraph is intended or should be construed to limit, bar, or otherwise impede the enforcement of any terms or conditions of this Agreement against any Party to this Agreement. Nothing in this Agreement shall be construed to create a right or benefit in favor of any person or entity not a Party to this Agreement.

10. The term "GRC" shall include its parent, subsidiaries, and affiliate organizations, and its officers, directors, employees, contractors, subcontractors, and agents.

11. The term "GOG" shall include its parent, subsidiaries, and affiliate organizations, and its officers, directors, employees, contractors, subcontractors, and agents.

12. This Agreement contains the entire agreement of the Parties hereto with respect to the matter contained herein and no prior agreement or understanding, written or oral, pertaining to any such matter shall be effective for any purpose. This Agreement shall be binding upon and inure to the benefit of each Parties' heirs, successors, and permitted assigns. No provision in this Agreement may be amended except by an agreement in writing signed by the Parties hereto or their respective successors in interest or permitted assigns. If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions or application; and to this end the provisions of this Agreement are declared to be severable.

EXECUTION COPY FINAL                                      3                               Initials Initials

13. This Agreement is made and entered into in California.  This Agreement shall in all respects by interpreted, enforced and governed by and under the laws of the State of California.  Should any party to this Agreement institute any legal action or administrative proceeding against the other to enforce any of the terms and conditions of this Agreement, the prevailing party in such action or proceeding shall be entitled to recover all costs, expenses and attorneys' fees incurred in such action or proceeding.  The parties further agree that exclusive jurisdiction and venue of such action or proceeding shall be Santa Barbara County Superior Court.

14. This Agreement may be executed in counterparts and via electronic or facsimile signature, and if so executed and delivered, all of the counterparts together shall constitute one and the same agreement.

IN WITNESS WHEREOF, this Agreement is executed by the Parties this 27th day of May, 2015 but effective as of the date first hereinabove written.

GREKA REFINING COMPANY
a California corporation

By: _____
    Steve Demott
    President and COO

HVI CAT CANYON, INC.,
a Colorado corporation

By: _____
    Alex Dimitrijevic
    President and COO

FIRST AMENDMENT
TO
WASTE GAS HANDLING AGREEMENT

THIS FIRST AMENDMENT TO WASTE GAS HANDLING AGREEMENT
("Amendment") is made and entered into effective as of the 1st day of August, 2017 by and
between California Asphalt Production, Inc., a California corporation f/k/a Greka Refining
Company ("CAP"), and HVI Cat Canyon, Inc., a Colorado corporation ("HVI").  Capitalized
terms used herein not otherwise defined shall have the meaning set forth in the Waste Gas
Handling Agreement entered into between CAP and HVI effective February 2013
("Agreement").

RECITALS

WHEREAS, CAP and HVI entered into the Agreement for the delivery of waste gas from
the Leases to the Refinery;

WHEREAS, the Agreement references the rate of SoCal NGI (National Gas Index) as
part of the calculation for the price to be paid by CAP to HVI, but which rate was changed by the
Parties as of August 2017 to NYMEX - Natural Gas Contract Settlement Price; and

WHEREAS, the Parties desire to memorialize the revised rate as part of the terms and
conditions of their Agreement that has been in effect since August 2017.

**NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises and the
terms and provisions set forth below, CAP and HVI agree as follows:**

1. Amendment. Section 4(a) of the Agreement is hereby amended to modify the rate by
replacing reference to "the rate of SoCal NGI (National Gas Index)" with "the rate of NYMEX -
Natural Gas Contract Settlement Price".

2. No Other Changes. Except as otherwise set forth herein, all of the terms and conditions
of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, this Amendment is executed by the Parties this 25th day of
April, 2019 but effective as of the day and year first hereinabove written.

California Asphalt Production, Inc.          HVI Cat Canyon, Inc.

By: _____          By: _____
     Ernesto Olivares, CFO                    Alex Dimitrijevic, President

EXHIBIT "6"

<u>SUPPLY AGREEMENT</u>

THIS AGREEMENT is made and entered into effective as of the 1st day of October, 2010 by and between Santa Maria Refining Company, a California corporation ("SMRC") and Greka Oil and Gas, Inc., a Colorado corporation ("GOG"). SMRC and GOG may hereinafter be referred to individually as a "Party", or collectively as the "Parties".

RECITALS

WHEREAS, SMRC is the owner and operator of that certain refinery commonly referred to as the Santa Maria Asphalt Refinery located at 1660 Sinton Rd., Santa Maria, California ("Refinery");

WHEREAS, as part of SMRC's Refinery operations, water is produced and maintained at very hot temperatures;

WHEREAS, GOG is the owner and operator of certain oil and gas leases located in Santa Barbara County, California (the "Leases");

WHEREAS, as part of GOG's oilfield operations on the Leases, hot water may be used as a treatment of an oil well to heat the heavy oil and enhance oil recovery ("Hot Load");

WHEREAS, the fluid used in Hot Load treatments is recovered by GOG in its oilfield operations; and

WHEREAS, GOG desires to purchase from SMRC, and SMRC desires to sell to GOG, Hot Loads on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises and the terms and provisions set forth below, SMRC and GOG agree as follows:**

1. SMRC shall sell and deliver to GOG and GOG shall purchase and receive from SMRC Hot Loads, on an as needed basis pursuant to purchase orders presented by GOG to SMRC from time to time, to the extent, and only to the extent, that SMRC has Hot Loads available.

2. All deliveries of Hot Loads hereunder shall be made F.O.B. Refinery. Title shall pass from SMRC to GOG once the Hot Loads leave the Refinery ("Point of Delivery") and all liability and risk, except as otherwise provided in this Agreement, shall follow title. The Hot Loads sold hereunder are purchased by GOG "AS IS" and SMRC

EXHIBIT 6

does not warrant that they are of merchantable quality or that they can be used for any particular purpose.

    3. (a) Nothing in this Agreement shall be construed as creating an obligation on the part of SMRC to provide GOG with a continuous and uninterrupted source for Hot Loads. SMRC shall not be liable for any failure or refusal whatsoever kind or nature, at any time or from time to time, either with or without notice, to accept a purchase order from GOG for Hot Loads.

    (b)    GOG shall hold SMRC, its directors, officers, affiliates, and employees (including but not limited to third party claims) harmless and does hereby expressly waive, release, and agrees to indemnify SMRC, its directors, officers, affiliates, and employees (including but not limited to third party claims) for any and all claims, costs, expenses (including attorney fees), damages, fines, penalties, and liabilities of any kind or nature whatsoever against SMRC, its directors, officers, affiliates, and employees (including but not limited to third party claims), regardless of whether such claims, costs, expenses, damages, fines, penalties, and liabilities are known or unknown or may be anticipated or not, which arise out of, relate to, or are in connection with SMRC's delivery to GOG of Hot Loads, and SMRC's inability or failure to accept a purchase order from GOG for Hot Loads, either on a temporary or permanent basis (including without limitation emergencies or operational requirements which call for the immediate shut down of facilities). GOG acknowledges that it has read and waives the benefit of the following provision of California Civil Code Section 1542:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

GOG understands and acknowledges the significance and consequence of such a specific waiver of Section 1542 of the California Civil Code and hereby assumes full responsibility for any injury, damage or loss which it may incur in connection with matters covered by the above waiver and release.

This paragraph 3 shall survive the expiration and/or earlier termination of this Agreement.

4. (a)    GOG shall pay SMRC, at the rate of fifteen cents ($0.15) per gallon, for all Hot Loads delivered to GOG at the Point of Delivery, payable monthly, on or before the 25th day of each month ("Due Date") following GOG's receipt of an invoice for the amounts which accrued during the immediate preceding calendar month. Any and all invoices shall be deemed received by GOG upon hand delivery or three days after the invoice is deposited in the United States Mail addressed to GOG, if mailed. This fee shall be increased, but not decreased, on thirty (30) days prior notice, to reflect an adjusted rate commensurate with SMRC's costs incurred in selling Hot Loads.

(b)    If any payment due from GOG to SMRC under this Agreement is not received within thirty (30) days after the Due Date, GOG, in addition to the payment due, shall pay SMRC interest at the higher of the rate established by California State law for the payment of prejudgment interest, or at the rate of two and one half percent (2-1/2%) over the prime rate of interest charged by the **Bank of America**, or its successors, which higher interest rate is in effect on the first day of the month in which the payment is due. Interest shall be payable from Due Date to and including the date the payment is made.

5. SMRC warrants title to all Hot Loads delivered to GOG hereunder and its right to sell and deliver the same, and agrees to hold GOG harmless for and indemnify it against any and all loss, damage, cost, expense (including attorney's fees), and liability of whatsoever kind arising out of claims or demands of third persons with respect to title to such Hot Loads.

6. Notwithstanding any other provision contained herein to the contrary, this Agreement may be terminated at any time for any reason, with or without cause, by either Party hereto, upon thirty (30) days prior written notice thereof by one Party to the other. For purposes of this Agreement, all notices required hereunder shall be given or served in writing either by hand delivery or by U.S. certified or registered mail, return receipt requested, to GOG or SMRC at the following addresses:

TO SMRC:                                    TO GOG:

1660 Sinton Rd.                                    2617 Clark Ave.
Santa Maria, CA 93458                              Santa Maria, CA 93454
Attn: Refinery-General Manager                     Attn: Production-General Manager

Any party hereto may, from time to time, by written notice to the other, designate
a different address which shall be substituted for the one above specified.

7. (a) SMRC shall indemnify and hold GOG, its directors, officers, affiliates, and
employees (including but not limited to third party claims) harmless from any and all
damages, costs, expenses, fines, penalties, demands, claims or liabilities of any kind or
nature whatsoever relating to damage to property (real or personal) and/or injury or death
to person(s) which may arise out of or in connection with (1) SMRC's acts or omission
under the terms and provisions of this Agreement, and (2) the presence, release or
threatened release of hazardous substances (as specified and defined by valid and
applicable Federal, State, and local laws or regulations) or other environmental
contamination (including but not by way of limitation, any contamination which gives
rise to an obligation or liability pursuant to the Comprehensive Environmental Response
Compensation and Liability Act or any other Federal, State or local laws, rules, order,
regulations, or common law applicable to Hot Loads, or any chemical or waste material)
into or upon land or any water course or body of water, including groundwater, or into
the atmosphere, relating to or arising out of the presence, release or threatened release of
Hot Loads, but only to the extent that such presence, release, or threatened release occurs
before the Point of Delivery. This paragraph 7 shall survive the expiration and/or earlier
termination of this Agreement.

(b) GOG shall indemnify and hold SMRC, its directors, officers, affiliates, and
employees (including but not limited to third party claims) harmless from any and all
damages, costs, expenses, fines, penalties, demands, claims or liabilities of any kind or
nature whatsoever relating to damage to property (real or personal) and/or injury or death
to person(s) which may arise out of or in connection with (1) GOG's acts or omission
under the terms and provisions of this Agreement, and (2) the presence, release or
threatened release of hazardous substances (as specified and defined by valid and
applicable Federal, State, and local laws or regulations) or other environmental
contamination (including but not by way of limitation, any contamination which gives

4

rise to an obligation or liability pursuant to the Comprehensive Environmental Response
Compensation and Liability Act or any other Federal, State or local laws, rules, order,
regulations, or common law applicable to Hot Loads, or any chemical or waste material)
into or upon land or any water course or body of water, including groundwater, or into
the atmosphere, relating to or arising out of the presence, release or threatened release of
Hot Loads, but only to the extent that such presence, release, or threatened release occurs
after the Point of Delivery. This paragraph 7 shall survive the expiration and/or earlier
termination of this Agreement.

8. Without in any way limiting the Parties' mutual obligation under paragraph 7,
or any other provision hereof, the Parties shall secure and maintain, at their sole cost, and
during the entire term of this Agreement, insurance in coverage and amounts customary
in the industry and all other insurance that may be required under the laws, ordinances,
and regulations of any governmental authority, naming each other as an additional
insured thereunder. For applicable policies, the Parties shall be provided with thirty (30)
day written notice prior to the effective date of any cancellation or material change of the
insurance. Before commencing and throughout the term of this Agreement, the Parties
shall provide one another with certificates or other documentary evidence of the above
insurance, satisfactory to the other Party. In the event either Party receives a notice of
insurance cancellation, this Agreement shall terminate, without notice, effective on the
expiration date of the insurance for which a Party received said thirty (30) day notice
unless said Party receives certificates of insurance showing the extension of the subject
policy beyond the termination date set out in said notice of cancellation.

9. In the event SMRC is rendered unable wholly or in part by force majeure to
carry out its obligations under this Agreement, such obligation(s), insofar as they are
affected by such force majeure, shall be suspended during the continuance of any
inability so caused, but for no longer period, an such cause shall insofar as possible, be
remedied with reasonable dispatch. The term "force majeure", as used herein, shall mean
acts of God, acts of the public enemy, inevitable accidents, labor disturbances,
interference or regulation by public bodies or officers acting under claims of authority, or
any other cause whether or not similar to the foregoing, beyond the reasonable control of

SMRC to perform. Neither party hereto shall be required against its will to adjust or settle any labor dispute in order to meet any obligation imposed hereunder.

10. Neither Party shall assign any rights or delegate any duty under this Agreement or any interest herein without the previous consent of the other Party, which consent is within the sole discretion of each Party. Any such assignment without the other Party's prior written consent shall be null and void.

11. This agreement shall not constitute, be interpreted, construed or used as evidence of any admission of liability, law, or fact, nor a waiver of any right or defense, nor an estoppel against either Party or Parties as among themselves or by other person not a party. Nothing in this paragraph is intended or should be construed to limit, bar, or otherwise impede the enforcement of any terms or conditions of this Agreement against any Party to this Agreement. Nothing in this Agreement shall be construed to create a right or benefit in favor of any person or entity not a Party to this Agreement.

12. This Agreement contains the entire agreement of the Parties hereto with respect to the matter contained herein and no prior agreement or understanding, written or oral, pertaining to any such matter shall be effective for any purpose. This Agreement shall be binding upon and inure to the benefit of each Parties' heirs, successors, and permitted assigns. No provision in this Agreement may be amended or added except by an agreement in writing signed by the Parties hereto or their respective, successors in interest, or permitted assigns.

IN WITNESS WHEREOF, this Agreement is executed by the Parties effective as of the day and year first hereinabove written.

SANTA MARIA REFINING COMPANY
a California corporation

By: _____
Susan M. Whalen
Senior Vice President & General Counsel

GREKA OIL & GAS INC.,
a Colorado corporation

By: _____
Andrew deVegvar
President

6

<u>FIRST AMENDMENT
TO
SUPPLY AGREEMENT</u>

THIS FIRST AMENDMENT TO SUPPLY AGREEMENT ("Amendment") is made and entered into effective as of the 1st day of September, 2013 by and between Greka Refining Company f/k/a Santa Maria Refining Company, a California corporation ("GRC"), and HVI Cat Canyon, Inc. DBA Greka Oil and Gas, a Colorado corporation ("GOG").  Capitalized terms used herein not otherwise defined shall have the meaning set forth in the Supply Agreement entered into between GRC and GOG effective October 1, 2010 ("Agreement").

RECITALS

WHEREAS, GRC and GOG entered into the Agreement for the sale and purchase of Hot Loads; and

WHEREAS, GRC and GOG desire to amend the Agreement to provide for a change in the price for the Hot Loads sold and delivered to GOG.

**NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises and the terms and provisions set forth below, GRC and GOG agree as follows:**

1. <u>Amendment</u>. Section 4(a) of the Agreement is hereby amended to modify the price by replacing reference to "the rate of fifteen cents ($0.15) per gallon" with "one dollar ($1.00) per barrel" for all Hot Loads delivered to GOG.

2. <u>No Other Changes</u>. Except as otherwise set forth herein, all of the terms and conditions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, this Amendment is executed by the Parties effective as of the day and year first hereinabove written.

GREKA REFINING COMPANY                    GREKA OIL & GAS

By: _____                    By: _____
Steve Demott                                              Alex Dimitrijevic
President                                                      President

70

EXHIBIT "7"

## AMENDED AND RESTATED AGREEMENT

THIS AMENDED AND RESTATED AGREEMENT is made and entered into effective as of the 1st day of May, 2014 by and between Greka Refining Company, a California corporation ("GRC") and HVI Cat Canyon, Inc., a Colorado corporation doing business as Greka Oil & Gas ("GOG"). GRC and GOG may hereinafter be referred to individually as a "Party", or collectively as the "Parties".

## RECITALS

WHEREAS, GRC is the owner and operator of that certain refinery commonly referred to as the Santa Maria Asphalt Refinery located at 1660 Sinton Rd., Santa Maria, California ("Refinery");

WHEREAS, GOG is the owner and operator of certain oil and gas leases located in Santa Barbara, Kern, and Orange Counties, California (collectively, the "Leases");

WHEREAS, GOG sells to GRC, and GRC purchases from GOG, the crude oil produced from the Leases which terms of sale include the industry custom and practice not to accept crude shipments (a) whose bottoms, sediment and water levels exceed 3% ("BS&W Excess"), and/or (b) whose temperature is below 100 degrees Fahrenheit ("Cold Oil").

WHEREAS, effective October 1, 2010 GRC and GOG entered into that certain Water Handling Agreement ("Original "Agreement") governing the terms and conditions of BS&W Excess that may be delivered by GOG to GRC; and

WHEREAS, the Parties desire to amend and restate the Original Agreement to provide for the terms and conditions set forth in this Agreement as the basis upon which GRC may take delivery from time to time at the Refinery by GOG of the crude produced from the Leases with BS&W Excess and/or Cold Oil.

**NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises and the terms and provisions set forth below, GRC and GOG agree as follows:**

1. GOG shall deliver and GRC shall receive and process all BS&W Excess and/or Cold Oil produced from the Leases to the extent, and only to the extent, that GRC has capacity and processing availability.

2. All deliveries of BS&W Excess and/or Cold Oil to GRC hereunder shall be made F.O.B. Refinery. Title shall pass from GOG to GRC as BS&W Excess and/or Cold Oil passes through the crude oil unloading area at the Refinery ("Point of Delivery") and all liability and risk, except as otherwise provided in this Agreement, shall follow title.

3. (a)   GOG acknowledges that GRC is taking the BS&W Excess and/or Cold Oil as an accommodation to GOG and that such receipt and processing of the BS&W Excess and/or Cold

1

**EXHIBIT**    **7**

72

Oil shall be without recourse against GRC. In addition, nothing in this Agreement shall be construed as creating an obligation on the part of GRC to provide GOG with a continuous and uninterrupted source for processing its BS&W Excess and/or Cold Oil. GRC shall not be liable for any failure or refusal whatsoever kind or nature, at any time or from time to time, either with or without notice, to accept delivery of said BS&W Excess and/or Cold Oil. In particular, but not by way of limitation, GRC shall not be obligated to accept delivery of GOG's BS&W Excess and/or Cold Oil at the Refinery if same contains impurities in quantities which, in GRC's sole judgment, may be injurious to the Refinery's plant, equipment, or facilities.

(b)    GOG shall hold GRC, its directors, officers, affiliates, and employees (including but not limited to third party claims) harmless and does hereby expressly waive, release, and agrees to indemnify GRC, its directors, officers, affiliates, and employees (including but not limited to third party claims) for any and all claims, costs, expenses (including attorney fees), damages, fines, penalties, and liabilities of any kind or nature whatsoever against GRC, its directors, officers, affiliates, and employees (including but not limited to third party claims), regardless of whether such claims, costs, expenses, damages, fines, penalties, and liabilities are known or unknown or may be anticipated or not, which arise out of, relate to, or are in connection with GRC's refusal, inability or failure to receive GOG's BS&W Excess and/or Cold Oil at the Refinery and/or process said BS&W Excess and/or Cold Oil through GRC's Refinery, either on a temporary or permanent basis (including without limitation emergencies or operational requirements which call for the immediate shut down of facilities). GOG acknowledges that it has read and waives the benefit of the following provision of California Civil Code Section 1542:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

GOG understands and acknowledges the significance and consequence of such a specific waiver of Section 1542 of the California Civil Code and hereby assumes full responsibility for any injury, damage or loss which it may incur in connection with matters covered by the above waiver and release.

This paragraph 3 shall survive the expiration and/or earlier termination of this Agreement.

4. (a)    GOG shall pay GRC at the rates set forth in Schedule A attached hereto and incorporated herein by this reference for all BS&W Excess and Cold Oil delivered to GRC at the

Point of Delivery and metered by GRC, payable monthly, on or before the 25th day of each month ("Due Date") following GOG's receipt of an invoice for the amounts which accrued during the immediate preceding calendar month. Any and all invoices shall be deemed received by GOG upon hand delivery or three days after the invoice is deposited in the United States Mail addressed to GOG, if mailed. This handling fee shall be increased, but not decreased, on thirty (30) days prior notice, to reflect an adjusted rate commensurate with GRC's costs incurred in handling the BS&W Excess and/or Cold Oil.

(b)    If any payment due from GOG to GRC under this Agreement is not received within thirty (30) days after the Due Date, GOG, in addition to the payment due, shall pay GRC interest at the higher of the rate established by California State law for the payment of prejudgment interest, or at the rate of two and one half percent (2-1/2%) over the prime rate of interest charged by the **Bank of America**, or its successors, which higher interest rate is in effect on the first day of the month in which the payment is due. Interest shall be payable from Due Date to and including the date the payment is made.

5. GOG warrants title to all BS&W Excess and Cold Oil delivered to GRC hereunder and its right to deliver the same, and agrees to hold GRC harmless for and indemnify it against any and all loss, damage, cost, expense (including attorney's fees), and liability of whatsoever kind arising out of claims or demands of third persons with respect to title to such BS&W Excess and Cold Oil.

6. Notwithstanding any other provision contained herein to the contrary, this Agreement may be terminated at any time for any reason, with or without cause, by either Party hereto, upon thirty (30) days prior written notice thereof by one Party to the other. For purposes of this Agreement, all notices required hereunder shall be given or served in writing either by hand delivery or by U.S. certified or registered mail, return receipt requested, to GOG or GRC at the following addresses:

TO GRC                                    TO GOG:

1660 Sinton Rd.                           2617 Clark Ave.
Santa Maria, CA 93458                     Santa Maria, CA 93454
Attn: Refinery-General Manager            Attn: Production-General Manager

Any party hereto may, from time to time, by written notice to the other, designate a different address which shall be substituted for the one above specified.

7. (a) GOG shall indemnify and hold GRC, its directors, officers, affiliates, and employees (including but not limited to third party claims) harmless from any and all damages,

costs, expenses, fines, penalties, demands, claims or liabilities of any kind or nature whatsoever relating to damage to property (real or personal) and/or injury or death to person(s) which may arise out of or in connection with (1) GOG's acts or omission under the terms and provisions of this Agreement, and (2) the presence, release or threatened release of hazardous substances (as specified and defined by valid and applicable Federal, State, and local laws or regulations) or other environmental contamination (including but not by way of limitation, any contamination which gives rise to an obligation or liability pursuant to the Comprehensive Environmental Response Compensation and Liability Act or any other Federal, State or local laws, rules, order, regulations, or common law applicable to BS&W Excess and Cold Oil, or any chemical or waste material) into or upon land or any water course or body of water, including groundwater, or into the atmosphere, relating to or arising out of the presence, release or threatened release of BS&W Excess and Cold Oil, but only to the extent that such presence, release, or threatened release occurs before the Point of Delivery. This paragraph 7 shall survive the expiration and/or earlier termination of this Agreement.

(b) GRC shall indemnify and hold GOG, its directors, officers, affiliates, and employees (including but not limited to third party claims) harmless from any and all damages, costs, expenses, fines, penalties, demands, claims or liabilities of any kind or nature whatsoever relating to damage to property (real or personal) and/or injury or death to person(s) which may arise out of or in connection with (1) GRC's acts or omission under the terms and provisions of this Agreement, and (2) the presence, release or threatened release of hazardous substances (as specified and defined by valid and applicable Federal, State, and local laws or regulations) or other environmental contamination (including but not by way of limitation, any contamination which gives rise to an obligation or liability pursuant to the Comprehensive Environmental Response Compensation and Liability Act or any other Federal, State or local laws, rules, order, regulations, or common law applicable to BS&W Excess and Cold Oil, or any chemical or waste material) into or upon land or any water course or body of water, including groundwater, or into the atmosphere, relating to or arising out of the presence, release or threatened release of BS&W and Cold Oil, but only to the extent that such presence, release, or threatened release occurs after the Point of Delivery. This paragraph 7 shall survive the expiration and/or earlier termination of this Agreement.

8. Without in any way limiting the Parties' mutual obligation under paragraph 7, or any other provision hereof, the Parties shall secure and maintain, at their sole cost, and during the entire term of this Agreement, insurance in coverage and amounts customary in the industry and all other insurance that may be required under the laws, ordinances, and regulations of any

governmental authority, naming each other as an additional insured thereunder. For applicable policies, the Parties shall be provided with thirty (30) day written notice prior to the effective date of any cancellation or material change of the insurance. Before commencing and throughout the term of this Agreement, the Parties shall provide one another with certificates or other documentary evidence of the above insurance, satisfactory to the other Party. In the event either Party receives a notice of insurance cancellation, this Agreement shall terminate, without notice, effective on the expiration date of the insurance for which a Party received said thirty (30) day notice unless said Party receives certificates of insurance showing the extension of the subject policy beyond the termination date set out in said notice of cancellation.

9.  In the event GRC is rendered unable wholly or in part by force majeure to carry out its obligations under this Agreement, such obligation(s), insofar as they are affected by such force majeure, shall be suspended during the continuance of any inability so caused, but for no longer period, an such cause shall insofar as possible, be remedied with reasonable dispatch. The term "force majeure", as used herein, shall mean acts of God, acts of the public enemy, inevitable accidents, labor disturbances, interference or regulation by public bodies or officers acting under claims of authority, or any other cause whether or not similar to the foregoing, beyond the reasonable control of GRC to perform. Neither party hereto shall be required against its will to adjust or settle any labor dispute in order to meet any obligation imposed hereunder.

10. Neither Party shall assign any rights or delegate any duty under this Agreement or any interest herein without the previous consent of the other Party, which consent is within the sole discretion of each Party. Any such assignment without the other Party's prior written consent shall be null and void.

11. This agreement shall not constitute, be interpreted, construed or used as evidence of any admission of liability, law, or fact, nor a waiver of any right or defense, nor an estoppel against either Party or Parties as among themselves or by other person not a party. Nothing in this paragraph is intended or should be construed to limit, bar, or otherwise impede the enforcement of any terms or conditions of this Agreement against any Party to this Agreement. Nothing in this Agreement shall be construed to create a right or benefit in favor of any person or entity not a Party to this Agreement.

12. This Agreement contains the entire agreement of the Parties hereto with respect to the matter contained herein and no prior agreement or understanding, written or oral, pertaining to any such matter shall be effective for any purpose. This Agreement shall be binding upon and inure to the benefit of each Parties' heirs, successors, and permitted assigns. No provision in this

Agreement may be amended or added except by an agreement in writing signed by the Parties hereto or their respective, successors in interest, or permitted assigns.

IN WITNESS WHEREOF, this Agreement is executed by the Parties effective as of the day and year first hereinabove written.

GREKA REFINING COMPANY            HVI CAT CANYON, INC.,
a California corporation                a Colorado corporation

By: _____            By: _____
    Steve Demott                        Alex Dimitrijevic
    President                        President

Agreement may be amended or added except by an agreement in writing signed by the Parties hereto or their respective, successors in interest, or permitted assigns.

IN WITNESS WHEREOF, this Agreement is executed by the Parties effective as of the day and year first hereinabove written.

GREKA REFINING COMPANY                    HVI CAT CANYON, INC.,
a California corporation                          a Colorado corporation

By: _____              By: _____
    Steve Demott                                   Alex Dimitrijevic
    President                                        President

Schedule A

## Merchantable Oil

- All crude oil delivered to the Refinery shall contain BS&W at a level of 3% or less, and shall have a temperature of no less than 100 degrees Fahrenheit.

- Any crude oil accepted by GRC in excess of these limitations shall be assessed a handling fee set forth below.

- Measurements shall be performed at the Refinery through a lact unit and onsite lab testing verification.

- GRC shall calibrate (according to standard industry practice) each the BS&W meter and temperature gauge on the lact unit at the Refinery no less than monthly, and shall provide GOG with a report of the results verified by GRC.

|  | Increment of BS&W in excess of 3% | Cost per Barrel |
|---|---|---|
| **BS&W:** |  |  |
|  | 0.1 to 1.5% | $ 3.80 |
|  | 1.6 to 3.0% | $ 5.50 |
|  | 3.1 to 5.0% | $ 8.75 |
|  | 5.1 to 8.0% | $11.50 |
|  | 8.1 to 12.0% | $18.00 |
|  | 12.1% and above | $27.00 |

|  | Increment of Cold Oil below 100°F | Cost per Barrel |
|---|---|---|
| **Temperature:** |  |  |
|  | Below 100° | $1.50 |

7

EXHIBIT "8"

## SUPPLY AGREEMENT - LCR

THIS AGREEMENT shall memorialize the agreement that has been in place since on or about December 2011 by and between Greka Refining Company, a California corporation ("GRC") and HVI Cat Canyon, Inc., a Colorado corporation ("GOG"). GRC and GOG may hereinafter be referred to individually as a "Party", or collectively as the "Parties".

### RECITALS

WHEREAS, GRC is the owner and operator of that certain refinery commonly referred to as the Santa Maria Asphalt Refinery located at 1660 Sinton Rd., Santa Maria, California ("Refinery");

WHEREAS, as part of GRC's Refinery operations, light crude is produced at 27 API gravity with a flash point of no less than $130^{\circ}F$ and sulphur content of no more than 3.2% ("LCR") .

WHEREAS, GOG is the owner and operator of certain oil and gas leases located in Santa Barbara County, California (the "Leases");

WHEREAS, as part of GOG's oilfield operations on the Leases, LCR may be used as a diluent in an oil well to enhance oil recovery; and

WHEREAS, GOG desires to purchase from GRC, and GRC desires to sell to GOG, LCR on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE, FOR AND IN CONSIDERATION of the premises and the terms and provisions set forth below, GRC and GOG agree as follows:**

1. GRC shall sell and deliver to GOG and GOG shall purchase and receive from GRC LCR, on an as needed basis pursuant to purchase orders presented by GOG to GRC from time to time, to the extent, and only to the extent, that GRC has LCR available.

2. All deliveries of LCR hereunder shall be made F.O.B. Refinery. Title shall pass from GRC to GOG once the LCR leaves the Refinery ("Point of Delivery") and all liability and risk, except as otherwise provided in this Agreement, shall follow title.

3. Nothing in this Agreement shall be construed as creating an obligation on the part of GRC to provide GOG with a continuous and uninterrupted source for LCR. GRC shall not be liable for any failure or refusal whatsoever kind or nature, at any time or from

EXECUTION COPY FINAL

1

Initials Initials

EXHIBIT

8

LCR 81

time to time, either with or without notice, to accept a purchase order from GOG for
LCR.

This paragraph 3 shall survive the expiration and/or earlier termination of this
Agreement.

4. (a)    GOG shall pay GRC, at the rate of **West Coast Prompt ULS No. 2 LA**
**posting for Ultra Low Sulfur Diesel, Less $0.32/gallon,** for all LCR delivered to GOG
at the Point of Delivery, payable monthly, on or before the 25th day of each month ("Due
Date") following GOG's receipt of an invoice for the amounts which accrued during the
immediate preceding calendar month. Any and all invoices shall be deemed received by
GOG upon hand delivery or three days after the invoice is deposited in the United States
Mail addressed to GOG, if mailed. This fee shall be increased, but not decreased, on
thirty (30) days prior notice, to reflect an adjusted rate commensurate with GRC's costs
incurred in selling LCR.

(b)    If any payment due from GOG to GRC under this Agreement is not
received within thirty (30) days after the Due Date, GOG, in addition to the payment due,
shall pay GRC interest at the higher of the rate established by California State law for the
payment of prejudgment interest, or at the rate of two and one half percent (2-1/2%) over
the prime rate of interest charged by the **Bank of America**, or its successors, which
higher interest rate is in effect on the first day of the month in which the payment is due.
Interest shall be payable from Due Date to and including the date the payment is made.

5. GRC warrants title to all LCR delivered to GOG hereunder and its right to sell
and deliver the same, and agrees to hold GOG harmless for and indemnify it against any
and all loss, damage, cost, expense (including attorney's fees), and liability of whatsoever
kind arising out of claims or demands of third persons with respect to title to such LCR.

6. Notwithstanding any other provision contained herein to the contrary, this
Agreement may be terminated at any time for any reason, with or without cause, by
either Party hereto, upon thirty (30) days prior written notice thereof by one Party to the
other. For purposes of this Agreement, all notices required hereunder shall be given or
served in writing either by hand delivery or by U.S. certified or registered mail, return
receipt requested, to GOG or GRC at the following addresses:

EXECUTION COPY FINAL                    2                    Initials Initials

LCR    82

TO GRC:

1660 Sinton Rd.
Santa Maria, CA 93458
Attn: Refinery-General Manager

TO GOG:

2617 Clark Ave.
Santa Maria, CA 93454
Attn: Production-General Manager

Any party hereto may, from time to time, by written notice to the other, designate a different address which shall be substituted for the one above specified.

7. (a) GRC shall indemnify and hold GOG, its directors, officers, affiliates, and employees (including but not limited to third party claims) harmless from any and all damages, costs, expenses, fines, penalties, demands, claims or liabilities of any kind or nature whatsoever relating to damage to property (real or personal) and/or injury or death to person(s) which may arise out of or in connection with (1) GRC's acts or omission under the terms and provisions of this Agreement, and (2) the presence, release or threatened release of hazardous substances (as specified and defined by valid and applicable Federal, State, and local laws or regulations) or other environmental contamination (including but not by way of limitation, any contamination which gives rise to an obligation or liability pursuant to the Comprehensive Environmental Response Compensation and Liability Act or any other Federal, State or local laws, rules, order, regulations, or common law applicable to LCR, or any chemical or waste material) into or upon land or any water course or body of water, including groundwater, or into the atmosphere, relating to or arising out of the presence, release or threatened release of LCR, but only to the extent that such presence, release, or threatened release occurs before the Point of Delivery. This paragraph 7 shall survive the expiration and/or earlier termination of this Agreement.

(b) GOG shall indemnify and hold GRC, its directors, officers, affiliates, and employees (including but not limited to third party claims) harmless from any and all damages, costs, expenses, fines, penalties, demands, claims or liabilities of any kind or nature whatsoever relating to damage to property (real or personal) and/or injury or death to person(s) which may arise out of or in connection with (1) GOG's acts or omission under the terms and provisions of this Agreement, and (2) the presence, release or threatened release of hazardous substances (as specified and defined by valid and applicable Federal, State, and local laws or regulations) or other environmental

Initials Initials

LCR

83

contamination (including but not by way of limitation, any contamination which gives
rise to an obligation or liability pursuant to the Comprehensive Environmental Response
Compensation and Liability Act or any other Federal, State or local laws, rules, order,
regulations, or common law applicable to LCR, or any chemical or waste material) into
or upon land or any water course or body of water, including groundwater, or into the
atmosphere, relating to or arising out of the presence, release or threatened release of
LCR, but only to the extent that such presence, release, or threatened release occurs after
the Point of Delivery. This paragraph 7 shall survive the expiration and/or earlier
termination of this Agreement.

   8. Without in any way limiting the Parties' mutual obligation under paragraph 7,
or any other provision hereof, the Parties shall secure and maintain, at their sole cost, and
during the entire term of this Agreement, insurance in coverage and amounts customary
in the industry and all other insurance that may be required under the laws, ordinances,
and regulations of any governmental authority, naming each other as an additional
insured thereunder. For applicable policies, the Parties shall be provided with thirty (30)
day written notice prior to the effective date of any cancellation or material change of the
insurance. Before commencing and throughout the term of this Agreement, the Parties
shall provide one another with certificates or other documentary evidence of the above
insurance, satisfactory to the other Party. In the event either Party receives a notice of
insurance cancellation, this Agreement shall terminate, without notice, effective on the
expiration date of the insurance for which a Party received said thirty (30) day notice
unless said Party receives certificates of insurance showing the extension of the subject
policy beyond the termination date set out in said notice of cancellation.

   9. In the event GRC is rendered unable wholly or in part by force majeure to
carry out its obligations under this Agreement, such obligation(s), insofar as they are
affected by such force majeure, shall be suspended during the continuance of any
inability so caused, but for no longer period, an such cause shall insofar as possible, be
remedied with reasonable dispatch. The term "force majeure", as used herein, shall mean
acts of God, acts of the public enemy, inevitable accidents, labor disturbances,
interference or regulation by public bodies or officers acting under claims of authority, or
any other cause whether or not similar to the foregoing, beyond the reasonable control of

Initials Initials

LCR

GRC to perform. Neither party hereto shall be required against its will to adjust or settle any labor dispute in order to meet any obligation imposed hereunder.

10. Neither Party shall assign any rights or delegate any duty under this Agreement or any interest herein without the previous consent of the other Party, which consent is within the sole discretion of each Party. Any such assignment without the other Party's prior written consent shall be null and void.

11. This agreement shall not constitute, be interpreted, construed or used as evidence of any admission of liability, law, or fact, nor a waiver of any right or defense, nor an estoppel against either Party or Parties as among themselves or by other person not a party. Nothing in this paragraph is intended or should be construed to limit, bar, or otherwise impede the enforcement of any terms or conditions of this Agreement against any Party to this Agreement. Nothing in this Agreement shall be construed to create a right or benefit in favor of any person or entity not a Party to this Agreement.

12. This Agreement contains the entire agreement of the Parties hereto with respect to the matter contained herein and no prior agreement or understanding, written or oral, pertaining to any such matter shall be effective for any purpose. This Agreement shall be binding upon and inure to the benefit of each Parties' heirs, successors, and permitted assigns. No provision in this Agreement may be amended or added except by an agreement in writing signed by the Parties hereto or their respective, successors in interest, or permitted assigns.

IN WITNESS WHEREOF, this Agreement is executed by the Parties this 27th day of May, 2015 but effective as of the date first hereinabove written.

GREKA REFINING COMPANY
a California corporation

By: _____
Steve Demott
President and COO

HVI CAT CANYON, INC.,
a Colorado corporation

By _____
Alex Dimitrijevic
President and COO

Initials Initials

LCF          85

EXHIBIT "9"



ERIC P. ISRAEL
A PROFESSIONAL CORPORATION
PARTNER

E-MAIL ADDRESS:
EISRAEL@DANNINGGILL.COM

1901 AVENUE OF THE STARS
SUITE 450
LOS ANGELES, CALIFORNIA 90067-6006

(310) 277-0077 – TEL
(310) 277-5735 – FAX

November 15, 2019

**VIA E-MAIL (susan@whalenattorney.com) AND U.S. MAIL**

Susan M. Whalen, Esq.
2806 Alta Street, PO Box 938
Los Olivos, CA 93441

Re:    HVI Cat Canyon, Inc., Debtor
      Bankr. No. 9-bk-19-11573-MB
      <u>Cease and Desist Demand</u>

Dear Susan:

As you will recall, this office represents Michael A. McConnell, the Chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "debtor").

On November 20, 2019, the Trustee is due a large payment from California Asphalt Production, Inc. ("CAP") of approximately $1.8 million, for CAP's purchase of crude oil from the debtor during the month of October 2019. The Trustee has been advised that CAP intends to setoff for sums that may be due affiliates against the payment due the Trustee from CAP.

Please be advised that 11 U.S.C. § 362(a) provides that the commencement of a bankruptcy case effects an automatic stay protecting the debtor and the estate from various actions. Among other things, the stay bars any attempt "to obtain possession of property of the estate or of property of the estate or to exercise control over property of the estate". 11 U.S.C. § 362(a)(3). Effecting a setoff against a payment due the estate violates the automatic stay. *See In re Silicon Valley Telecom Exch., LLC*, 284 B.R. 700, 709 (Bankr. N.D. Cal. 2002); *In re Treasures, Inc.*, No. BAP NO. SC-13-1304, 2015 WL 925957, at *21 (B.A.P. 9th Cir. Mar. 3, 2015) ("To assert the right to setoff or pursue satisfaction of his or her claim, a creditor must seek relief from the automatic stay. § 362(d)(1)."); *In re Lehman Bros. Inc.*, 458 B.R. 134, 143 (Bankr. S.D.N.Y. 2011) ("The Bankruptcy Code expressly prohibits exercising a setoff without first seeking relief from the automatic stay."); *Hal Inc. v. United States (In re Hal, Inc.)*, 122 F.3d 851, 854 (9th Cir.1997) ("[t]he decision to award setoff rests squarely within the discretion of the Bankruptcy Court"). A party violating the automatic stay can be liable for actual damages including attorneys' fees, and, in appropriate cases, punitive damages. 11 U.S.C. § 362(k).

DANNING, GILL, ISRAEL & KRASNOFF, LLP

Susan Weyland, Esq.
November 15, 2019
Page 2

Although it may have done so in the past before his appointment, any setoff by CAP against sums due the Trustee would be a violation of the automatic stay. The Trustee hereby demands that CAP cease and desist from any setoffs against the sums due the Trustee. The Trustee reserves all of his rights and remedies against all parties.

Very truly yours,

Eric P. Israel

EPI:EPI

cc:    Michael A. McConnell, Trustee (via email)
       Mr. Tim Skillman (via email)
       Mr. James Baring (via email)
       Aaron E. deLeest, Esq. (i/o)
       Sonia Singh, Esq. (i/o)

**EXHIBIT "10"**

AARON E. DE LEEST
ASSOCIATE

E-MAIL ADDRESS:
ADELEEST@DANNINGGILL.COM



1901 AVENUE OF THE STARS
SUITE 450
LOS ANGELES, CALIFORNIA 90067-6006

(310) 277-0077 – TEL
(310) 277-5735 – FAX

November 25, 2019

**VIA E-MAIL (susan@whalenattorney.com) AND U.S. MAIL**

Susan M. Whalen, Esq.
2806 Alta Street, PO Box 938
Los Olivos, CA 93441

Re:   HVI Cat Canyon, Inc., Debtor
      Bankr. No. 9-bk-19-11573-MB
      <u>Payment Demand</u>

Dear Susan:

As you know, this office represents Michael A. McConnell, the Chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc.

On November 20, 2019, your client California Asphalt Production, Inc. ("CAP") paid the Trustee only $300,000 of the $1,128,250 million that was due for the month of October 2019. Demand is hereby made for immediate payment of the $828,250 that is now due.

In the event that payment is not received by the Trustee by <u>Wednesday, November 27, 2019</u>, the Trustee will take all necessary and appropriate action against CAP, which may include, without limitation, the filing of a lawsuit against CAP in the United States Bankruptcy Court.

The Trustee reserves all of his rights, claims and remedies, and nothing herein is to be interpreted as a waiver of any rights, claims or remedies.

Please do not hesitate to contact Eric P. Israel or me if you would like to discuss this matter further.

Very truly yours,

Aaron E. de Leest

AED:EPI

cc:   Michael A. McConnell, Trustee
      Mr. Tim Skillman

1566786.1  26932

**EXHIBIT**            **10**            90

DANNING, GILL, ISRAEL & KRASNOFF, LLP

Susan Weyland, Esq.
November 25, 2019
Page 2


    Mr. James Baring
    Aaron E. de Leest, Esq.
    Sonia Singh, Esq.
    Will Beall (via email Will@beallandburkhardt.com)
    Patty Tomasco (via email pattytomasco@quinnemanuel.com)

EXHIBIT "11"

*The Law Office of Susan M. Whalen*

## A PROFESSIONAL LAW CORPORATION

_Transmitted via email and U.S. Mail_

November 27, 2019

Aaron E. de Leest, Esq.
Danning Gill
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
adeleest@danninggill.com

     Re:   HVI Cat Canyon, Inc., Debtor
           Bankr. No. 9-bk-19-11573-MB
           CAP:  Crude Purchase; BS&W and Cold Crude; LCR Supply

Dear Mr. de Leest:

Reference is made to your November 25, 2019 demand of my client, California Asphalt Production, Inc. ("CAP"), to immediately pay the $828,250 balance due to HVI Cat Canyon, Inc., Debtor ("HVI").

As the CRO has been previously advised, CAP's revenue receipts have been adversely impacted by HVI's delivery of significant volumes of wet and cold crude to CAP's refinery. This wet crude has created mechanical problems in the CAP equipment and facilities.  In particular, the process unit is unable to produce on-spec PG grade asphalt. As a result, the crude is stuck in inventory and is unable to be processed into finished product and sold. Currently, CAP has over 20,000 barrels of crude stuck in its tanks which, at $55/bbl, creates a liquidity shortage of over $1 million.

For your reference, attached are reports of the crude transfers to the refinery for October and November (month to date), 2019. The column entitled "Temperature" shows the cold crude deliveries below 100°, and the column entitled "Actual Cut" shows the excess water. HVI has been aware of this problem for two months, as CAP had to stop accepting this crude under the terms of the _Amended and Restated Agreement_ between the parties entered into as of May 1, 2014 (the "Agreement").

The Agreement provides, at Paragraph 1, that "[CAP] shall receive and process all BS&W Excess and/or Cold Oil produced from the Leases to the extent, and only to the extent, that [CAP] has capacity and processing availability." The Agreement further provides, at Paragraph 3(a), that "[HVI] acknowledges that [CAP] is taking the BS&W Excess and/or Cold Oil as an accommodation to [HVI] and that such receipt and processing of the BS&W Excess and/or Cold Oil shall be without recourse against [CAP]. In addition, nothing in this Agreement shall be construed as creating an obligation on the part of [CAP] to provide [HVI] with a continuous and uninterrupted source for processing its BS&W Excess and/or Cold Oil. [CAP] shall not be liable for any failure or refusal whatsoever kind or nature, at any time or from time to time, either with or without notice, to accept delivery of said BS&W Excess and/or Cold Oil. In particular, but not by way of limitation, [CAP] shall not be obligated to accept delivery of [HVI]'s BS&W Excess and/or Cold Oil at the Refinery if same contains impurities in quantities which, in [CAP]'s sole judgment, may be injurious to the Refinery's plant, equipment, or facilities."

 

EXHIBIT 11

93

CELL 805-350-9017         SUSAN@WHALENATTORNEY.COM         2806 ALTA STREET
TEL. 805-693-2101         WWW.WHALENATTORNEY.COM        PO BOX 938
FAX 805-693-2102                                LOS OLIVOS, CA 93441

Aaron E. de Leest, Esq.
November 27, 2019
Page 2

     HVI's inability to deliver dry and hot crude oil according to the parties' crude contract is the root problem. While CAP has accommodated HVI's field issues to date, CAP is unable to sustain its own operations as a result and thus will have to start rejecting crude in the near future if this off-spec crude problem continues.

     CAP's liquidity shortage due to this dead inventory that CAP has been unable to convert to cash has been compounded by HVI's failure to pay CAP $590,903.46 when due on November 25, 2019 for the LCR deliveries that HVI received. HVI was required to make this payment under the terms of the parties' Supply Agreement – LCR executed on May 27, 2015.

     We trust that the foregoing puts into perspective the issues at hand.   We suggest that exchanging demand letters will not solve the issue and a meeting to discuss next steps to resolve the technical issues makes more sense.

     This letter is without admission or waiver by CAP that reserves all rights.

Sincerely,

Susan M. Whalen

cc:   Eric P. Israel, Esq. (via email)
      Will Beall (via email)
      Patty Tomasco (via email)
      Ernesto Olivares, CAP (via email)

**EXHIBIT "12"**

## The Law Office of Susan M. Whalen

### A PROFESSIONAL LAW CORPORATION

_Transmitted via email and U.S. Mail_

November 27, 2019

Aaron E. de Leest, Esq.
Danning Gill
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
adeleest@danninggill.com

      Re:    HVI Cat Canyon, Inc., Debtor
             Bankr. No. 9-bk-19-11573-MB
             GTL1: Transportation Demand

Dear Mr. de Leest:

Please be advised that HVI Cat Canyon, Inc. ("HVI") currently owes $268,649 to my client, GTL1, LLC ("GTL1"), for the September insurance payment as well as the entire month of October, 2019.

The current payable became due to GTL1 pursuant to the following invoices presented to HVI and acknowledged by the Debtor's CRO, Tim Skillman, in a Memorandum addressed to GTL1's CFO, Ernesto Olivares:

| | |
|---|---|
| October transportation | $247,689 |
| September auto insurance | $ 10,480 |
| October auto insurance | $ 10,480 |
| | $468,649 |

The total sum of $268,649 must be paid for services rendered by GTL1 to HVI, notwithstanding any reconciliation issues that HVI may have with affiliates of GTL1. If payment is not received by Monday, December 2, 2019, GTL1 will need to seek relief from the Bankruptcy Court for adequate assurance of performance, and other remedies as allowed.

This letter is without admission or waiver by GTL1 that reserves all rights.

Sincerely,

Susan M. Whalen

cc:    Eric P. Israel, Esq. (via email)
       Will Beall (via email)
       Patty Tomasco (via email)
       Ernesto Olivares, CAP (via email)

**EXHIBIT    12**

CELL 805-350-9017
TEL. 805-693-2101
FAX 805-693-2102

susan@whalenattorney.com
www.whalenattorney.com

2806 ALTA STREET
PO BOX 938
Los Olivos, CA 93441

96

# EXHIBIT "13"

## The Law Office of Susan M. Whalen

### A PROFESSIONAL LAW CORPORATION

*Transmitted via email*

December 1, 2019

Aaron E. de Leest, Esq.
Danning Gill
1901 Avenue of the Stars, Suite 450
Los Angeles, CA  90067
adeleest@danninggill.com

> Re:   HVI Cat Canyon, Inc., Debtor
>         Bankr. No. 9-bk-19-11573-MB
>         CAP:  Crude Purchase; BS&W and Cold Crude; LCR Supply

Dear Mr. de Leest:

Please share with your clients, Messrs. McConnell and Skillman, the following information and attachment that provides further clarity of the business issues between my client, California Asphalt Production, Inc. ("CAP"), and HVI Cat Canyon, Inc. ("HVI").

Issues causing material harm to CAP's operation and liquidity since month end July 2019:

1.   HVI's deliveries of cold oil (less than 100°F) have risen to 39% in November and averaged 24% prior to November 26th.

2.   HVI's deliveries of off-spec oil (greater than 3% BS&W) rose to 73% in November and averaged 54% prior to November 26th.

3.   HVI increased its request for LCR from 3,514 barrels in July to a high of 6,729 barrels in October. This number represents an increase from 43% to 63% of total CAP sales and rose even further to 76% in November (through 26th). Other customers pay CAP for this product in 7 days whereas HVI pays within 55 days.

The above-listed issues created the following serious operational challenges in the Refinery's plant and equipment, including CAP's processing availability:

1.   HVI delivered a large quantity of off-spec oil that CAP had to store and is stuck as crude inventory because it could not be processed.  As a result, CAP's crude inventory rose from 9,764 barrels at July month end to 30,513 barrels, a 213% increase in November.

2.   HVI delivered cold and high BS&W oil that caused the crude processing at the CAP plant to yield off-spec asphalt product. CAP's Process Operators were unable to produce on-spec PG Grade asphalt during this period. The suspended water in the cold crude delivered by HVI caused significant problems in CAP's operations, forcing the Process Unit into circulation as a safety precaution.  The high water content caused the process temperatures at the plant to be the highest ever witnessed by the operators.

**EXHIBIT     13**

Aaron E. de Leest, Esq.
December 1, 2019
Page 2

3. CAP is unable to maintain normal, steady process operation and make on-spec material for its clients with the material increase in HVI's deliveries of off-spec crude compounded by it being cold.

In accordance with the terms of the Amended and Restated Agreement between the parties entered into as of May 1, 2014 (the "Agreement"), CAP has attempted to accept, as an accommodation to HVI, off-spec and cold deliveries of oil. However, it cannot do so to the detriment of the Refinery's plant and equipment as provided in the Agreement and at the volumes that HVI is delivering. HVI's loss of control over its crude specifications for the last 50 days caused this breakdown in processing capacity, increased crude inventory, and CAP's inability to meet its customer specifications.

Contrary to the Trustee's professionals' representations, CAP provided its commercially best assistance to accommodate HVI's delivery of off-spec material.

The Trustee and CRO proffer erroneous statements of fact to support the Trustee's motion for an order authorizing the rejection of the REDU and Belridge crude contracts. While CAP has no objection to the rejection of these contracts, it takes serious issue with the misstatements in the Declarations signed under penalty of perjury as the basis for rejection. Specifically:

(A) It is factually incorrect that CAP did not make any payments to HVI for October crude deliveries. Rather and as your clients know, CAP paid to HVI $300,000.00 on November 20, 2019.

(B) It is also factually incorrect that CAP did not pay in full for the Richfield and Belridge crude. To the contrary and as your clients are aware, CAP paid to HVI all revenue due under the Richfield and Belridge contracts and on the same days that CAP received proceeds from Phillips 66. In sum from August through November, CAP received $614,455.68 in proceeds from Phillips 66 and CAP paid to HVI $1,450,000.00 which more than covers the net proceeds payable to HVI for the Richfield and Belridge crude sales through October. Of these amounts, (i) for crude sales through September, by way of an accounting reconciliation delivered to the CRO by Mr. Olivares and acknowledged in a Memorandum dated 11/19/2019 delivered to Mr. Olivares by the CRO, no monies were owed by CAP to HVI, and (ii) for October crude sales, CAP received $149,796.23 in proceeds from Phillips 66 and on the same day CAP paid to HVI $300,000.00 covering at least the net proceeds payable to HVI for Richfield and Belridge.

(C) Lastly, it is misleading that CAP does not have the ability to pay the outstanding amounts that are due to HVI for October 2019. Instead, the accommodations made by CAP to assist HVI with its material limitations in its field operations by taking delivery of HVI's off-spec and cold crude have caused material harm to CAP's operation and liquidity as outlined above.

You are urged to correct these misstatements in the record which will facilitate good faith discussions between the parties, as my client is eager to work cooperatively with the Trustee and the CRO to resolve their issues.

Aaron E. de Leest, Esq.
December 1, 2019
Page 3

Additionally, as the energy sector knows, IMO 2020 goes into effect on January 1, 2020. In order to comply to this regulation, CAP's capacity to provide any accommodation for accepting HVI's off-spec and high sulfur crudes will be materially limited. In order to determine which crudes will qualify for possible acceptance under the parties' contract, please have HVI provide to CAP a current MSDS sheet on each crude type. CAP understands that HVI has recently tested each of its crudes, so CAP expects that HVI is able to provide such specifications immediately, but no later than December 5, 2019, so that such determination can be concluded by CAP promptly.

Finally, as per my previous letter of November 27, 2019, CAP welcomes a conference call to attempt determining a collaborative path forward on the issues. These affiliates have successfully operated for two decades through close cooperation of its personnel. The current segregation will further cripple both 24/7 operating businesses to the detriment of all stakeholders.

This letter is without admission or waiver by CAP that reserves all rights.

Sincerely,

Susan M. Whalen

cc:     Eric P. Israel, Esq. (via email)
        Will Beall (via email)
        Patty Tomasco (via email)
        Ernesto Olivares, CAP (via email)

## HVI CAT CANYON

| | JULY | AUG | SEPT | OCT | NOV (26TH) | TOTAL |
|---|---|---|---|---|---|---|
| LOADS DELIVERED | 117 | 279 | 219 | 260 | 171 | 1046 |
| LOADS DELIVERED - OFF SPEC >3% BS&W | 75 | 130 | 129 | 117 | 125 | 576 |
| | 64% | 47% | 59% | 45% | 73% | 55% |
| LOADS DELIVERED - COLD <100F | 32 | 91 | 41 | 49 | 67 | 280 |
| | 27% | 33% | 19% | 19% | 39% | 27% |
| OIL DELIVERED | 15,592 | 38,377 | 28,119 | 34,442 | 22,539 | 139,070 |
| OIL DELIVERED-OFF SPEC >3% BS&W | 9,848 | 17,665 | 16,733 | 14,987 | 15,953 | 75,185 |
| | 63% | 46% | 60% | 44% | 71% | 54% |
| OIL DELIVERED - COLD <100F | 4,103 | 12,429 | 5,412 | 6,504 | 8,445 | 36,893 |
| | 26% | 32% | 19% | 19% | 37% | 27% |
| TEMPERATURE FEES | $6,154.71 | $18,642.76 | $8,118.03 | $9,756.70 | $12,667.19 | $55,339.39 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING THE REJECTION OF ALL CONTRACTS AND AGREEMENTS WITH CALIFORNIA ASPHALT PRODUCTION, INC., FORMERLY KNOWN AS SANTA MARIA REFINING CO. AND GREKA REFINING COMPANY, AND GTL1, LLC, NOT PREVIOUSLY INCLUDED IN PRIOR MOTION TO REJECT (DOCKET NO. 573); MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF MICHAEL A. MCCONNELL, TIMOTHY SKILLMAN, ERIC P. ISRAEL, AARON E. DE LEEST AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  December 4, 2019  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.   SERVED BY UNITED STATES MAIL**: On December 4, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
HVI Cat Canyon, Inc.
c/o Capitol Corporate Services, Inc.
36 S. 18th Avenue, Suite D
Brighton, CO 80601

Debtor
HVI Cat Canyon, Inc.
630 Fifth Avenue, Suite 2410
New York, NY 10111

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 4, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

BY OVERNIGHT MAIL
The Honorable Martin R. Barash
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 342
Woodland Hills, CA 91367

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| December 4, 2019 | Vivian E. Servin | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

William C Beall on behalf of Creditor GLR, LLC
will@beallandburkhardt.com, carissa@beallandburkhardt.com

Alicia Clough on behalf of Creditor California State Lands Commission
aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com

Marc S Cohen on behalf of Creditor California State Lands Commission
mscohen@loeb.com, klyles@loeb.com

Alec S DiMario on behalf of Creditor Direct Energy Business Marketing, LLC d/b/a Direct Energy Business
alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com

Alec S DiMario on behalf of Creditor Direct Energy Business, LLC
alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com

Karl J Fingerhood on behalf of Interested Party United States of America on behalf of USEPA and US Coast Guard
karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov

H Alexander Fisch on behalf of Interested Party California Department of Fish & Wildlife
Alex.Fisch@doj.ca.gov

H Alexander Fisch on behalf of Interested Party California Regional Water Quality Control Board, Central Coast
Alex.Fisch@doj.ca.gov

Don Fisher on behalf of Interested Party Interested Party    dfisher@ptwww.com, tblack@ptwww.com

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee    brian.fittipaldi@usdoj.gov

Gisele M Goetz on behalf of Interested Party Courtesy NEF gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu

Karen L Grant on behalf of Creditor BUGANKO, LLC    kgrant@silcom.com

Ira S Greene on behalf of Interested Party CTS Properties, Ltd.    Ira.Greene@lockelord.com

Matthew C. Heyn on behalf of Creditor Department of Conservation, Division of Oil, Gas and Geothermal Reources
Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com

Brian L Holman on behalf of Creditor Bradley Land Company    b.holman@musickpeeler.com

Eric P Israel on behalf of Attorney Courtesy NEF
eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Michael Authur McConnell (TR)
eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Razmig Izakelian on behalf of Creditor GIT, Inc.    razmigizakelian@quinnemanuel.com

Alan H Katz on behalf of Interested Party CTS Properties, Ltd.    akatz@lockelord.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE

John C Keith on behalf of Creditor California State Lands Commission     john.keith@doj.ca.gov

Jeannie Kim on behalf of Interested Party Pacific Gas and Electric Company
jkim@friedmanspring.com

Maxim B Litvak on behalf of Creditor Committee Official Committee of Unsecured Creditors
mlitvak@pszjlaw.com

Michael Authur McConnell (TR)     Michael.mcconnell@kellyhart.com

Brian M Metcalf on behalf of Interested Party UBS AG, London Branch     bmetcalf@omm.com

David L Osias on behalf of Creditor Allen Matkins Leck Gamble Mallory & Natsis LLP
dosias@allenmatkins.com,
bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com

Darren L Patrick on behalf of Interested Party UBS AG, London Branch
dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com

Jeffrey N Pomerantz on behalf of Creditor Committee Official Committee of Unsecured Creditors
jpomerantz@pszjlaw.com

Todd C. Ringstad on behalf of Interested Party Interested Party
becky@ringstadlaw.com, arlene@ringstadlaw.com

Mitchell E Rishe on behalf of Creditor California Department of Conservation, Division of Oil, Gas &
Geothermal Resources
mitchell.rishe@doj.ca.gov

Mitchell E Rishe on behalf of Creditor Department of Conservation, Division of Oil, Gas and Geothermal
Reources
mitchell.rishe@doj.ca.gov

Sonia Singh on behalf of Trustee Michael Authur McConnell (TR)
ssingh@DanningGill.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com

Daniel A Solitro on behalf of Interested Party CTS Properties, Ltd.
dsolitro@lockelord.com, ataylor2@lockelord.com

Ross Spence on behalf of Interested Party County of Santa Barbara, California
ross@snowspencelaw.com,
janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.co
m

Ross Spence on behalf of Interested Party Harry E. Hagen, as Treasurer-Tax Collector of the County of
Santa Barbara, California
ross@snowspencelaw.com, janissherrill@snowspencelaw.com;
donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com

Ross Spence on behalf of Interested Party Santa Barbara Air Pollution Control District
ross@snowspencelaw.com, janissherrill@snowspencelaw.com;
donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com

Christopher D Sullivan on behalf of Creditor Diamond McCarthy LLP

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                        F 9013-3.1.PROOF.SERVICE

csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com

Jennifer Taylor on behalf of Interested Party UBS AG, London Branch    jtaylor@omm.com

John N Tedford, IV on behalf of Trustee Michael Authur McConnell (TR)
jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

Salina R Thomas on behalf of Interested Party Courtesy NEF      bankruptcy@co.kern.ca.us

Salina R Thomas on behalf of Interested Party Kern County Treasurer Tax Collector
bankruptcy@co.kern.ca.us

Patricia B Tomasco on behalf of Creditor GIT, Inc.
pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com

Fred Whitaker on behalf of Interested Party Eller Family Trust      lshertzer@cwlawyers.com

William E. Winfield on behalf of Attorney Courtesy NEF
wwinfield@calattys.com, scuevas@calattys.com

Richard Lee Wynne on behalf of Interested Party NewBridge Resources, LLC
richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com

Emily Young on behalf of Creditor Epiq Corporate Restructuring, LLC Claims Agent
pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

Aaron E de Leest on behalf of Trustee Michael Authur McConnell (TR)
adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com


## 2. **SERVED BY UNITED STATES MAIL**:

Capital Asphalt Production, Inc.
Capitol Corporate Services, Inc., Agent
for Service of Process
206 E. 9th Street, Suite 1300
Austin, TX 78701

Capital Asphalt Production, Inc.
Capitol Corporate Services, Inc., Agent
for Service of Process
PO Box 1831
Austin, TX 78767

Capital Asphalt Production, Inc.
and other affiliates of the Debtor
Susan M. Whalen, Esq.
The Law Office of Susan M. Whalen
2806 Alta St./P. O. Box 938
Los Olivos, CA 93441


## 3. SERVED BY EMAIL:

Susan M. Whalen, Esq.   *susan@whalenattorney.com*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                         F 9013-3.1.PROOF.SERVICE