1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@DanningGill.com*
2  AARON E. DE LEEST (State Bar No. 216832)
   *adeleest@DanningGill.com*
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone:   (310) 277-0077
5  Facsimile:   (310) 277-5735

6  Attorneys for Michael A. McConnell,
   Chapter 11 Trustee
7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        NORTHERN DIVISION

11

12  In re                              Case No.: 9:19-bk-11573-MB

13  HVI CAT CANYON, INC.,              Chapter 11

14            Debtor.                  **TRUSTEE'S NOTICE OF MOTION AND
                                       MOTION FOR ORDER AUTHORIZING
15                                     AND APPROVING INSURANCE
                                       PREMIUM FINANCE AGREEMENT;
16                                     MEMORANDUM OF POINTS AND
                                       AUTHORITIES, DECLARATION OF
17                                     MICHAEL A. MCCONNELL AND
                                       REQUEST FOR JUDICIAL NOTICE IN
18                                     SUPPORT THEREOF**

19                                     Date:    January 17, 2020
                                       Time:    10:00 a.m.
20                                     Place:   Courtroom 201
                                                1415 State Street
21                                              Santa Barbara, California

22

23

24

25

26

27

28

1570996.1  26932

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................8

I. BACKGROUND FACTS ...........................................................................................8

    A.    The Bankruptcy Case..................................................................................8

    B.    Insurance and the Premium Finance Agreement .......................................8

        1.    The Proposed Premium Financing.................................................9

        2.    Additional Protection Terms Under the PFA ...............................10

    C.    PRIOR FINANCING AND CASH COLLATERAL ORDERS ...............................11

II. ARGUMENT .........................................................................................................12

    A.    ENTERING INTO A FINANCING AGREEMENT AUTHORIZED BY
        THE BANKRUPTCY CODE AND RULES IS IN THE BEST INTEREST
        OF THE ESTATE.........................................................................................12

        1.    The Debtor Should be Authorized to Incur Secured and Unsecured
            Debt from Finance Company under the PFA Pursuant § 364 ...........12

            (a)    The Secured Debt Under the PFA is Authorized by § 364(c) ...........12

            (b)    The Unsecured Debt Under the PFA is Authorized by §
                 364(a) and (b) ......................................................................14

        2.    The Debtor Should Be Authorized to Provide the Requested
            Protections to Finance Company in the Event of a Default under the
            PFA Pursuant to Fed. R. Bankr. P. 4001(d) and § 503(b) ...............15

            (a)    The Finance Company's Authorization to Cancel the
                 Insurance Policies in the Event of a Default under the PFA is
                 Authorized by Rule 4001(d) .................................................15

            (b)    The Finance Company's Right to Receive an Administrative
                 Claim for Any Deficiency Under the PFA is Authorized by §
                 503(b).................................................................................15

            (c)    The Court Should Find that the Finance Company is a Bona
                 Fide Lender within the Meaning of Section 364(e). ..........................16

    B.    THE COURT SHOULD AUTHORIZE THE TRUSTEE TO USE CASH
        COLLATERAL PURSUANT TO THE SECOND BUDGET.................................17

III. CONCLUSION.....................................................................................................18

DECLARATION OF MICHAEL A. MCCONNELL ...............................................19

REQUEST FOR JUDICIAL NOTICE ....................................................................24

1570996.1  26932

i

# TABLE OF AUTHORITIES

Page

## CASES

*In re AAA Produce Co.*,
    58 B.R. 430, 432-34 (Bankr. E.D. Mo. 1986) ............................................................. 13

*In re Ames Dep't. Stores, Inc.*,
    115 B.R. 34, 35-38 (Bankr. S.D.N.Y. 1990) ............................................................. 13

*In re Gallegos Research Group*,
    193 B.R. 577 (Bankr. D. Colo. 1995) ........................................................................ 15

*In re Gamma Fishing Co.*,
    70 B.R. 949 (Bankr. S.D. Cal. 1987) ......................................................................... 16

*In re Los Angeles Dodgers LLC*,
    457 B.R. 308 (Bankr. D. Del. 2011) .......................................................................... 13

*In re Payless Cashways, Inc.*,
    305 B.R. 303 (Bankr. W.D. Mo. 2004) ..................................................................... 16

*In re Snow Shoe Company*,
    789 F.2d 1085, 1088 (4th Cir. 1986) ........................................................................ 13

*Potter v. CNA Ins. Co.*,
    106 F.3d 829 (8th Cir. 1997) ..................................................................................... 16

## STATUTES

11 U.S.C. § 1108 .................................................................................................................. 13

11 U.S.C. § 364(b) ......................................................................................................... 13, 14

11 U.S.C. § 364(c) ............................................................................................................... 13

11 U.S.C. § 503 .................................................................................................................... 10

11 U.S.C. § 503(b)(1)(A) .............................................................................................. 14, 15

11 U.S.C. § 503(b)(1)(A) ................................................................................................... 16

11 U.S.C. § 503(b)(l) .......................................................................................................... 14

11 U.S.C. § 506(a) .............................................................................................................. 17

## OTHER AUTHORITIES

3 Lawrence P. King, *Collier on Bankruptcy* § 364.04 (15th ed. rev. 2016) ..................... 13

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page

3

**RULES**

4

Fed. R. Bankr. P. 4001(d)(3) ................................................................................................ 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1570996.1  26932

**PLEASE TAKE NOTICE** that on January 17, 2020, at 10:00 a.m., Michael A. McConnell, the Chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"), will and hereby does move (the "Motion") for an order authorizing the Trustee to enter into a premium finance agreement (the "PFA") with South Bay Acceptance Corp., or another similar premium finance company (the "Finance Company"),[1] pursuant to which the Trustee will incur credit partially secured by a down payment and the unearned premiums held by the insurance companies whose policies are financed by the Finance Company.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Federal Rule of Bankruptcy Procedure 4001(b)(1)(A) and (c)(1)(A), the following table summarizes the significant terms of the proposed use of cash collateral and the Second Amendment to the Credit Agreement:[2]

| Material Term or Type of Provision | Summary of Provision(s) (Nearly all of the applicable provisions were approved in the Final Order and are made applicable to the additional advances under the Second Amendment) | Location in Loan Agreement and/or Loan Documents | Location in Proposed Interim Order |
|---|---|---|---|
| Amount | Net amount of premium after deposit. | Page 1 | N/A |
| Interest rate | 7.99% | Page 1 | N/A |
| Maturity date | Nine months | Page 1 | N/A |
| Events of default | Non-payment | Page 2 | N/A |
| A grant of priority or a lien on property of the estate under § 364(c) or (d) | lien on all unearned premiums and dividends which may become payable under the policies | Page 2 | N/A |

---

[1] If the Trustee obtains more favorable a quote(s), the Trustee will file a supplement to this motion and attach the proposed other agreement(s) before the hearing. The Trustee anticipates that the protections to be afforded above will not materially change.

[2] Because this table is provided, the Trustee requests that the Court waive the requirement in LBR 4001-2 that the Trustee file a separate *Statement Regarding Cash Collateral or Debtor in Possession Financing*.

| Material Term or Type of Provision | Summary of Provision(s)<br><br>(Nearly all of the applicable provisions were approved in the Final Order and are made applicable to the additional advances under the Second Amendment) | Location in Loan Agreement and/or Loan Documents | Location in Proposed Interim Order |
|---|---|---|---|
| The providing of adequate protection or priority for a claim that arose before the commencement of the case or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim | None | N/A | N/A |
| Cross-collateralization – i.e., clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law | None | N/A | N/A |
| Roll-up – i.e., provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | None | N/A | N/A |
| Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | None | N/A | N/A |
| A determination of the validity, enforceability, | None | N/A | N/A |

| Material Term or Type of Provision | Summary of Provision(s)<br><br>(Nearly all of the applicable provisions were approved in the Final Order and are made applicable to the additional advances under the Second Amendment) | Location in Loan Agreement and/or Loan Documents | Location in Proposed Interim Order |
|---|---|---|---|
| priority, or amount of a claim that arose before the commencement of the case, or of any lien security the claim | | | |
| A waiver or modification of Code provisions or applicable rules relating to the automatic stay | Authority to terminate the financed Insurance Policies, without requiring that the Finance Company seek relief from the automatic stay, in the event of a Default on the repayment obligations. | N/A | Order |
| Automatic relief from the automatic stay upon occurrence of certain events | Authority to terminate the financed Insurance Policies, without requiring that the Finance Company seek relief from the automatic stay, in the event of a Default on the repayment obligations. | N/A | Order |
| A waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364 | None | N/A | N/A |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on | None | N/A | N/A |

| Material Term or Type of Provision | Summary of Provision(s) (Nearly all of the applicable provisions were approved in the Final Order and are made applicable to the additional advances under the Second Amendment) | Location in Loan Agreement and/or Loan Documents | Location in Proposed Interim Order |
|---|---|---|---|
| confirmation, or for entry of a confirmation order | | | |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | None | N/A | N/A |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action | None | N/A | N/A |
| The indemnification of any entity | None | N/A | N/A |
| A release, waiver, or limitation of any right under § 506(c) | None | N/A | N/A |
| The granting of any lien on any claim or cause of action arising under § 506(c) | None | N/A | N/A |
| The granting of a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a) | None | N/A | N/A |
| With respect to a professional fee carve | None | N/A | N/A |

| Material Term or Type of Provision | Summary of Provision(s) (Nearly all of the applicable provisions were approved in the Final Order and are made applicable to the additional advances under the Second Amendment) | Location in Loan Agreement and/or Loan Documents | Location in Proposed Interim Order |
|---|---|---|---|
| out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | | |
| Pay down prepetition principal owed to a creditor | None | N/A | N/A |
| Findings of fact on matters extraneous to the approval process | None | N/A | N/A |
| Other | None. | N/A | N/A |

The Trustee reserves the right to enter into premium financing agreements in the future with the Financing Company or similar premium financing companies until the time of the hearing on this Motion. If the Trustee pursues that path, he will file a supplement to this motion and serve notice thereof upon the same parties served with this motion.

This Motion is based upon the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Michael A. McConnell and the Request for Judicial Notice, the papers and pleadings on file in this case, and such other evidence that may be presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(a)(7), any opposition to the Motion must be in writing in the format required by the Local Bankruptcy Rules, filed with the Clerk of the Court and served upon counsel for the Trustee, at the address in the upper left corner of the face of this Notice, upon the United States Trustee, 1415 State Street, Suite 148, Santa Barbara, California 93101, not less than fourteen (14) days

1  before the hearing.  Failure to comply with this procedure may be deemed consent to the granting

2  of the relief requested.

3

4  DATED:  December 24, 2019                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

5

6                                               By: _____

7                                               AARON E. DE LEEST
                                                Attorneys for Michael A. McConnell,
8                                               Chapter 11 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### BACKGROUND FACTS

**A.    The Bankruptcy Case**

The Debtor is a Colorado corporation authorized to conduct business in the State of California.  It is the owner and operator of producing oil and gas wells in California.  The wells are located in Santa Barbara County, Orange County and Kern County.

On July 25, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The case was originally filed in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

On or about August 9, 2019, an Official Creditor's Committee was appointed.

The Debtor initially operated its business as a "debtor in possession," until on or about October 16, 2019, when the Court entered its Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee.

On or about October 22, 2019, the Court approved the appointment of Michael A. McConnell as the Chapter 11 trustee in this case.

**B.    Insurance and the Premium Finance Agreement**

Prior to the Trustee's appointment, the Debtor's affiliate GIT, Inc. ("GIT") obtained insurance for the Debtor, including, but not limited to general liability, property, and workers' compensation (collectively the "Insurance Policies").  The Debtor paid GIT for the cost of such insurance as part of the services that GIT provided to the Debtor pursuant to the Amended and Restated General & Administrative Services Agreement, purportedly entered into on August 1, 2009, as amended, including, most recently on July 1, 2019 (collectively the "GIT Agreements").

Following the Trustee's appointment, the Debtor's Insurance Policies came up for renewal on December 1, 2019 and December 21, 2019, respectively, and the Trustee determined to renew the policies for the Debtor directly, rather than go through GIT.  That decision is part of the

Trustee's goal of disentangling the Debtor from its affiliates, which he anticipate will aid in the marketability of the Debtor.  Contemporaneously herewith, the Trustee is filing a motion to reject the GIT Agreements.  The Insurance Policies are required by the Office of the United States Trustee and are essential to the Debtor's operations and to the preservation of its property and assets.  A copy of the certificate of insurance for the Insurance Policies is attached as Exhibit "2" hereto.

The Trustee has decided to finance the renewal premiums using an independent third party and, in order to finance the premiums due under the Insurance Policies, the Trustee hereby seeks authority to enter into a Premium Finance Agreement ("PFA") with South Bay Acceptance Corp., and/or another premium finance company, on similar terms on terms (the "Finance Company").  A copy of the form PFA with the Finance Company is attached as Exhibit "3" to the Trustee's Declaration.  The attached agreement does not yet include payment of the premium for the workers' compensation policy.  However, the Trustee will file a supplement to this Motion, prior to the hearing, with a revised PFA or separate additional PFA, on similar terms, for the workers' compensation premium.

1.    **The Proposed Premium Financing**

With respect to the general liability, property, and excess liability policies[3] only, the PFA provides for the Trustee to borrow the funds necessary for the premiums on the following terms:

| Term | Amount |
| --- | --- |
| Total Premiums | $150,976.40 |
| Cash Down Payment | $46,013.90 |
| Amount Financed | $104,962.50 |
| Finance Charge | $3,525.30 |
| Total of Payments | $108,487.80 |

[3] A supplement will be filed prior to the hearing on the Motion with the terms relating to the PFA for the workers' compensation policy.

| Interest Rate (APR) | 7.99% |
|---|---|
| No. of Monthly Payments | 9 |
| Payment Amount | $12,054.20 |

**2.    Additional Protection Terms Under the PFA**

In addition to the payment terms described above, the Finance Company requires that it be provided certain security interests in exchange for the PFA. Accordingly, as is customary, the PFA requires that the Trustee submit a down payment (the "Down Payment") in order to secure future monthly payments and that the Trustee provide the Finance Company a security interest in any and all unearned premiums and dividends which may become payable under the Insurance Policies (the "Unearned Premiums").

Pursuant to the terms of the PFA, attached as Exhibit "3" to the Trustee's Declaration, as the Trustee understands is also customary, the Trustee is also appointing the Finance Company as its attorney-in-fact with the irrevocable power to cancel the Insurance Policies and collect the Unearned Premiums in the event of a default of its obligations under the PFA.

It is also likely, due to the Debtor's bankruptcy filing, that the Finance Company will request that: (1) it be authorized to apply for the cancellation of the financed Insurance Policies and obtain the return of the Unearned Premiums, in the event of a default (as set forth in more detail in the PFA) of any installment due under the PFA ("Default"), without further Court order or lifting of the automatic stay, to the extent permitted under applicable law; and (2) that any deficiency balance remaining under the PFA attributable to a Default, after application of the Unearned Premiums and Down Payment, be allowed in this case as an administrative expense against the Debtor's estate, under Bankruptcy Code section 503. The Trustee does not oppose these terms and seeks Court approval thereof as part of this Motion.

The Trustee believes that these the above terms and the terms of the PFA are commercially fair and reasonable including the granting of a lien on the Insurance Policies to the Finance Company. The estate is required to maintain adequate insurance coverage and, without it, would be forced to cease operations. The Trustee is informed and believes that the Debtor's affiliate, GIT,

1  may have in previous years financed the Debtor's insurance policies, which the Debtor paid for

2  monthly to GIT.  The Trustee is also informed and believes that such financing for large annual

3  insurance premiums is not unusual.

4       The Trustee submits that authorization of the PFA will ensure that the Debtor can continue

5  necessary operations, and will not prejudice the legitimate interests of creditors and other parties in

6  interest, including Debtor's secured creditors.  The Trustee respectfully requests that the Court

7  enter the order approving the PFA, substantially in the form of Exhibit "1" to the Trustee's

8  Declaration.

9

10  **C.**    **PRIOR FINANCING AND CASH COLLATERAL ORDERS**

11       Pursuant to the Court's *Final Order for Emergency Priming and Superpriority Financing*

12  *and Consensual Use of Cash Collateral by the Chapter 11 Trustee*  (docket no. 572) (the "Final

13  Order"), entered on or about November 27, 2019, the Trustee was authorized, pursuant to the terms

14  of the Final Order and a written loan facility set forth in a written credit agreement (the "Credit

15  Agreement"), to borrow funds from UBS AG, Stamford Branch ("UBS AG, Stamford") and use

16  the cash collateral of the Debtor's existing senior secured lender, UBS AG, London Branch ("UBS

17  AG, London"), among others.  UBS AG, Stamford and UBS AG, London, are, taken together,

18  referred to herein as "UBS. " Pursuant to the Final Order, to secure its new advances, UBS was

19  granted a Superpriority administrative expense claim and priming lien on all assets of the Debtor's

20  estate, both existing and future acquired assets, including lien on certain avoidance actions, but

21  junior to *ad valorem* tax lien of Santa Barbara County to the extent provided in the Final Order.

22       Thereafter, on or about December 20, 2019 (*docket no. 650*), the Court entered an order

23  authorizing the Trustee's continued postpetition borrowing and use of cash collateral on the same

24  terms as set forth in the Final Order, on an interim basis, in accordance with the Trustee's proposed

25  budget that is attached as Exhibit "4" to the Trustee's Declaration (the "Second Budget").

26       The Second Budget did not expressly include a line item for paying the Down Payment for

27  the Insurance Premiums or the payments to the Finance Company.  However, there is room in the

28  unallocated portion of the Second Budget to cover the Down Payment and monthly payments.

1    The Trustee has requested permission from UBS to use unallocated funds to pay the Down

2  Payment and monthly payments for the Insurance Premiums, and for its consent to grant the

3  Finance Company a first lien on the Unearned Premiums and Down Payment.

4

5                                           II.

6                                      **ARGUMENT**

7  A.    **ENTERING INTO A FINANCING AGREEMENT AUTHORIZED BY THE**

8         **BANKRUPTCY CODE AND RULES IS IN THE BEST INTEREST OF THE**

9         **ESTATE**

10    The Trustee requires insurance in order to operate the Debtor's business.  The Insurance

11  Policies at issues are for the Debtor's general liability, property, excess liability and workers'

12  compensation.  The maintenance of these Insurance Policies is necessary for the Debtor's ongoing

13  business operations, and pursuant to the Notice of Requirements for Chapter 11 Debtors in

14  Possession promulgated by the Office of the United States Trustee (the "UST Guidelines").

15

16         1.    **The Debtor Should be Authorized to Incur Secured and Unsecured Debt from**

17               **Finance Company under the PFA Pursuant § 364**

18                    (a)    **The Secured Debt Under the PFA is Authorized by § 364(c)**

19    The aggregate annual premiums for the general liability, property, and excess liability

20  policies total $150,976.40.  The Trustee has not yet received the final quote for the workers'

21  compensation policy.  The Trustee does not believe that it would be prudent to pay the full amount

22  of these premiums, in cash, at this time.  To the contrary, the Trustee believes as a matter of

23  business judgment that he should finance a substantial portion of these premiums.  Accordingly, the

24  Trustee seeks to enter into the PFA, which provides for certain security interests to be granted to

25  the Finance Company in the Unearned Premiums and Down Payment.

26    Sections 364(c) provides, in pertinent part, that

27    (c) If the trustee is unable to obtain unsecured credit allowable under section
       503(b)(1) of this title as an administrative expense, the court, after notice and a
28    hearing, may authorize the obtaining of credit or the incurring of debt—

1    (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; [or]

2

3    (2) secured by a lien on property of the estate that is not otherwise subject to a lien….

4    11 U.S.C. § 364(c).

5    Courts have uniformly recognized that a debtor (or trustee) may, in the exercise of business

6    judgment, incur secured debt where the debtor has been unable to obtain unsecured credit and the

7    borrowing is in the best interest of the estate. *See, e.g., In re Snow Shoe Company*, 789 F.2d 1085,

8    1088 (4th Cir. 1986); *In re Ames Dep't. Stores, Inc.*, 115 B.R. 34, 35-38 (Bankr. S.D.N.Y. 1990);

9    *In re AAA Produce Co.*, 58 B.R. 430, 432-34 (Bankr. E.D. Mo. 1986). *See also* 3 Lawrence P.

10    King, *Collier on Bankruptcy* § 364.04 (15th ed. rev. 2016).[4] The power of the debtor in possession

11    to incur secured debt follows necessarily from the general power of the debtor in possession to

12    operate its business in the exercise of its business judgment. *See* 11 U.S.C. § 1108; *Ames Dep't.*

13    *Stores*, 115 B.R. at 37-38. Without the ability to incur secured debt, the debtor in possession would

14    be placed at a significant competitive disadvantage and its efforts to reorganize could be seriously

15    impaired.

16    The extension of secured credit is authorized by Section 364(c). The Trustee has

17    determined that he is unable to obtain fully unsecured credit for the purposes of premium financing.

18    The Finance Company requires certain financial protections, as is the standard practice among

19    companies providing premium finance loans, including a security interest in the Unearned

20    Premiums.

21

22

23

24    [4] *Id.* ("Some courts apply a three-part test to assess [trustee or] debtor in possession financing requests under section 364(c), requiring a showing that (1) the debtor cannot obtain credit unsecured or without superpriority status under section 364(b), (2) the credit transactions are

25    necessary to preserve assets of the estate and (3) the terms of the transactions are fair, reasonable and adequate, given the circumstances of the [] borrower and the proposed lender.") (citing *In re*

26    *Los Angeles Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011)). Here, as demonstrated, unsecured or non-superpriority lending is unavailable, the transaction is necessary to maintain the

27    Debtor's business as a going concern, and the transaction is fair and reasonable, satisfying the three factors.

28

       (b)     **The Unsecured Debt Under the PFA is Authorized by § 364(a) and (b)**

In addition to granting the Finance Company certain postpetition security interests, the Trustee requests authority to incur unsecured debt as an administrative expense to the Finance Company for any remaining amounts due under the PFA as set forth above.

Section 364(a) and (b) provides, in pertinent part, that:

> (a) If the trustee is authorized to operate the business of the debtor under section…1108…of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503 (b) (1) of this title as an administrative expense.

> (b) The court, after notice and hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a) and (b).

Bankruptcy Code Section 503(b)(1)(A) provides, in pertinent part, that: "After notice and hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

The incurrence of unsecured debt is directly authorized by § 364.  The Trustee believes that the estate's incurrence of unsecured debt in connection with the PFA is in the ordinary course of the Debtor's business and is allowable under § 503(b)(l) as an administrative expense, as set forth more fully below.

Therefore, because entry into the PFA is in the ordinary course of business, the Trustee should be allowed to incur the unsecured debt under the PFA without the necessity of Court order pursuant to Bankruptcy Code Section 364(a).  Moreover, even if this Court were to determine that the incurrence of unsecured debt in connection with the PFA would not be in the ordinary course of the Debtor's business, the Trustee requests that the Court approve the incurrence of such unsecured debt pursuant to Section 364(b), as the maintenance of the Insurance Policies clearly provide the requisite benefit to the estate under Section 503(b)(1) as the Trustee cannot operate the Debtor's business without insurance.

2.    **The Debtor Should Be Authorized to Provide the Requested Protections to Finance Company in the Event of a Default under the PFA Pursuant to Fed. R. Bankr. P. 4001(d) and § 503(b)**

    (a)    **The Finance Company's Authorization to Cancel the Insurance Policies in the Event of a Default under the PFA is Authorized by Rule 4001(d)**

In addition to the approval of the incurrence of secured and unsecured debt in connection with the PFA, the Trustee requests that the Court grant the Finance Company the authority to terminate the financed Insurance Policies, without requiring that the Finance Company seek relief from the automatic stay, in the event of a Default on the repayment obligations under the PFA. Although the Bankruptcy Code does not expressly refer to agreements relating to relief from the automatic stay, "[t]hese types of agreements are subject to Fed. R. Bankr. P. 4001(d)(3) which by its express terms authorizes a bankruptcy court to approve or disapprove such agreements in the absence of an objection," or to hold a hearing to consider such agreement if an objection is filed. *In re Gallegos Research Group*, 193 B.R. 577, 583 (Bankr. D. Colo. 1995); Fed. R. Bankr. P. 4001(d). Therefore, the Bankruptcy Rules clearly contemplate the Court's consideration of such relief.

This form of relief is commonly included in relation to the extension of credit to a debtor or estate and is in the best interest of the estate for the reasons outlined above.

    (b)    **The Finance Company's Right to Receive an Administrative Claim for Any Deficiency Under the PFA is Authorized by § 503(b)**

The Trustee also requests that any deficiency balance remaining under the PFA, after application of the Unearned Premiums and down payment, be allowed in this case as an administrative expense against the Debtor's estate under Section 503(b)(1)(A) of the Bankruptcy Code.

Maintenance of the Insurance Policies is a necessary cost of preserving the estate, and is required by the UST Guidelines. Courts have recognized that the maintenance of insurance required for the operation of a business is an actual, necessary cost of preserving a debtor's estate,

1   and debt incurred in connection with such policies is therefore entitled to administrative priority for

2   such premiums. *See, e.g., In re Payless Cashways, Inc.*, 305 B.R. 303, 308 (Bankr. W.D. Mo.

3   2004) (providing insurance coverage postpetition entitles the insurer to an administrative expense

4   claim). This is the case, even where such insurance policies are merely a continuation of policies

5   entered into prior to the petition date, to the extent such insurance policies provide benefit to the

6   debtor during the postpetition period. In *Potter v. CNA Ins. Co.*, 106 F.3d 829, 832 (8th Cir. 1997),

7   the Eighth Circuit stated that:

8       [A]dministrative priority is limited to transactions with the debtor in possession. But
        in our view the absence of a 'positive post-petition act' by [the trustee or debtor in
9       possession] does not make the continued [insurance] coverage a pre-petition claim.
        [The] debtor in possession could have terminated the insurance . . . [but] did not do
10      so and thereby obtained an insurance product essential to its post-petition
        operations. In these circumstances, [the insurer] is entitled to administrative expense
11      priority for the pro rata share of the premium, during the period in which the estate
        received benefits from the [insurance] contract").
12

13  *Potter*, 106 F.3d 832. *See also In re Gamma Fishing Co.*, 70 B.R. 949, 955 (Bankr. S.D. Cal.

14  1987) (a debtor receiving necessary benefits from a prepetition executory insurance contract must

15  accord the non-debtor party an administrative expense priority for the pro rata share of the

16  premium, during the period in which the estate received benefits from the contract). Entitlement to

17  an administrative expense claim is even stronger here, where the Insurance Policies are renewed

18  postpetition.

19      Therefore, any deficiency under the PFA should be allowed by this Court as an

20  administrative expense pursuant to § 503(b)(1)(A).

21

22      (c)    **The Court Should Find that the Finance Company is a Bona Fide**

23             **Lender within the Meaning of Section 364(e).**

24      The Finance Company is a third-party finance company. The Trustee is not aware of any

25  relationship between the Debtor and the Finance Company, and the Trustee has no relationship

26  with the Finance Company. The PFA was obtained at arm's length and through an insurance

27  broker. Finding that the Finance Company is a good faith lender within the meaning of § 364(e)

28

1 will afford protection to the Finance Company and the Trustee in the event that there is an appeal.

2 The Trustee respectfully requests that the Court make that finding.

3

4 **B.**     **THE COURT SHOULD AUTHORIZE THE TRUSTEE TO USE CASH**

5          **COLLATERAL PURSUANT TO THE SECOND BUDGET**

6          As set forth above, the Court previously authorized the Trustee to use cash collateral

7 including, most recently, on an interim basis, within the limits of the Second Budget. The Second

8 Budget has sufficient room in the operating expense category to provide for payment of the Down

9 Payment and monthly payments to the Finance Company. To the extent necessary, the Trustee

10 requests that he be permitted to use cash collateral so that he may make the Down Payment and

11 monthly payments for the PFA under the Second Budget. UBS, and other secured creditors, are

12 adequately protected by the liens previously granted by the Court in the Final Order, further interim

13 order, and the preservation of the estate's assets and the business as an ongoing concern. In

14 addition, the Trustee has requested UBS' consent. The Debtor's junior secured creditors are not

15 entitled to adequate protection because their secured liens are "out of the money" in light of the $50

16 to $75 million valuation of the Debtor's assets and are entirely unsecured pursuant to 11 U.S.C. §

17 506(a). The counties (i.e., Santa Barbara, Orange and Kern Counties) real property tax liens are

18 entirely unaffected because their liens do not attach to the Down Payment and Unearned Premiums.

19

20

21

22

23

24

25

26

27

28

## III.

## <u>CONCLUSION</u>

For the foregoing reasons, the Trustee respectfully requests that the Court enter the order, substantially in the form of Exhibit "1" to the Trustee's Declaration, authorizing and approving the Trustee to enter into one or more PFAs with the Finance Company, as well as the other relief provided for therein.  The Trustee also requests such further relief as the Court deems just and proper.

DATED:  December 24, 2019            DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:  _____
     AARON E. DE LEEST
     Attorneys for Michael A. McConnell,
     Chapter 11 Trustee

## DECLARATION OF MICHAEL A. MCCONNELL

I, Michael A. McConnell, declare as follows:

1.    I am over eighteen years of age, and I have personal knowledge of the facts in this declaration and, if called as a witness, could testify competently that the facts stated in this declaration are true and correct to the best of my knowledge and information.

2.    I am the Chapter 11 Trustee of the Bankruptcy Estate of HVI Cat Canyon, Inc. (the "Debtor").

3.    The Debtor is a Colorado corporation authorized to conduct business in the state of California. It is the owner and operator of producing oil and gas interests in California. The wells are located in Santa Barbara County, Orange County, and Kern County.

4.    On or about October 22, 2019, the Court approved my appointment as the Chapter 11 trustee in this case.

5.    Prior to my appointment, the Debtor's affiliate GIT, Inc. ("GIT") obtained insurance for the Debtor, including, but not limited to general liability, property, excess liability, and workers' compensation (collectively the "Insurance Policies").

6.    The Debtor paid GIT for the cost of such insurance as part of the services that GIT provided to the Debtor pursuant to the Amended and Restated General & Administrative Services Agreement, purportedly entered into on August 1, 2009, as amended, including, most recently on July 1, 2019.

7.    Following my appointment, the Debtor's Insurance Policies came up for renewal on December 1, 2019 and December 21, 2019, respectively, and I determined to renew the policies for the Debtor directly, rather than go through GIT. The Insurance Policies are required by the Office of the United States Trustee and are essential to the Debtor's operations and to the preservation of its property and assets. A copy of the certificate of insurance for the Insurance Policies is attached as Exhibit "2" hereto.

8.    I have decided to finance the renewal premiums using an independent third party and, in order to finance the premiums due under the Insurance Policies, I believe, in my business judgement, that I must seek authority to enter into a Premium Finance Agreement ("PFA") with

19

1  South Bay Acceptance Corp., and/or another premium finance company, on similar terms on terms

2  (the "Finance Company").  A copy of the form PFA with the Finance Company is attached as

3  Exhibit "3" hereto.  The attached agreement does not yet include payment of the premium for the

4  workers' compensation policy.  However, I will file a supplement to this Motion, prior to the

5  hearing, with a revised PFA or separate additional PFAs, on similar terms, for the workers'

6  compensation premium.

7      9.    With respect to the general liability, property, and excess liability policies, only, the

8  PFA provides for the estate to borrow the funds necessary for the premiums on the following terms:

| Term | Amount |
|---|---|
| Total Premiums | $150,976.40 |
| Cash Down Payment | $46,013.90 |
| Amount Financed | $104,962.50 |
| Finance Charge | $3,525.30 |
| Total of Payments | $108,487.80 |
| Interest Rate (APR) | 7.99% |
| No. of Monthly Payments | 9 |
| Payment Amount | $12,054.20 |

20      10.    In addition to the payment terms described above, the Finance Company may

21  require that it be provided certain security interests in exchange for the PFA.  Accordingly, the PFA

22  requires that the Debtor submit a down payment (the "Down Payment") in order to secure future

23  monthly payments and that the Debtor provide the Finance Company a security interest in any and

24  all unearned premiums and dividends which may become payable under the Insurance Policies (the

25  "Unearned Premiums").

26      11.    Pursuant to the terms of the PFA, the Finance Company is also being appointed as

27  an attorney-in-fact with the irrevocable power to cancel the Insurance Policies and collect the

28  Unearned Premiums in the event of a default of its obligations under the PFA.

12.     It is also likely, due to the Debtor's bankruptcy filing, that the Finance Company will request that: (1) it be authorized to apply for the cancellation of the financed Insurance Policies and obtain the return of the Unearned Premiums, in the event of a default (as set forth in more detail in the PFA) of any installment due under the PFA ("Default"), without further Court order or lifting of the automatic stay, to the extent permitted under applicable law; and (2) that any deficiency balance remaining under the PFA attributable to a Default, after application of the Unearned Premiums and Down Payment, be allowed in this case as an administrative expense against the Debtor's estate, under Bankruptcy Code section 503.  I do not oppose these terms and seeks Court approval thereof as part of the underlying motion.

13.     I believe that these terms and the terms of the PFA are commercially fair and reasonable including the granting of a lien on the Insurance Policies to the Finance Company.  I have been unable to obtain unsecured credit to fund the Insurance Policies and believe the terms in the PFA are reasonable.  I am informed and believe that such premium financing is not unusual.

14.     Furthermore, the estate is required to maintain adequate insurance coverage and, without it, I would be forced to cease operations of the Debtor.  I am informed and believe that the Debtor's affiliate, GIT, may have in previous years financed the Debtor's insurance policies, which the Debtor paid for monthly to GIT.

15.     I submit that authorization of the PFA or PFAs on similar terms will ensure that the Debtor can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including Debtor's secured creditors.

16.     I am not aware of any relationship between the Debtor and the Finance Company, and I have no relationship with the Finance Company.  The PFA was obtained at arm's length and through an insurance broker.  I believe that it is appropriate for the Court to find that FIRST are good faith lenders within the meaning of 11 U.S.C. § 364(e).

17.     Finally, I was previously authorized to use cash collateral including, in the Court's *Final Order for Emergency Priming and Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee (docket no. 572)* (the "Final Order"), entered on or about November 27, 2019, and, again, on an interim basis, in the Court's *Interim Order Approving*

21

1  *Second Amendment to the Credit Agreement* (*docket no. 650*), entered on or about December 20,

2  2019, within the limits of the Second Budget.   A true and correct copy of the Second Budget

3  approved by the Court on an interim basis is attached as Exhibit "4" hereto.

4          18.      The Second Budget did not expressly include a line item for paying the Down

5  Payment for the Insurance Premiums or the payments to the Finance Company.  However, I believe

6  there is room in the unallocated portion of the Second Budget to cover the Down Payment and

7  monthly payments.

8          19.      I have requested permission from the Debtor's senior secured lender and

9  postpetition lender, UBS, to use unallocated funds in the Second Budget to pay the Down Payment

10  and monthly payments for the Insurance Premiums, and for its consent to grant the Finance

11  Company a first lien on the Unearned Premiums and Down Payment.  Pursuant to the Final Order

12  UBS was granted a Superpriority administrative expense claim and priming lien to secure the new

13  advances on all assets existing and future acquired of the Debtor's estate, including lien on certain

14  avoidance actions, but junior to *ad valorem* tax lien of Santa Barbara County to the extent provided

15  in the Final Order.

16          20.      To the extent necessary, I request that I be permitted to use cash collateral so that I

17  may pay the Down Payment and monthly payments for the PFA under the Second Budget.  I

18  believe that UBS, and other secured creditors, are  adequately protected by the liens previously

19  granted by the Court in the Final Order, further interim order, and the preservation of the estate's

20  assets and the business as an ongoing concern.  I do not believe that the Debtor's junior secured

21  creditors are entitled to adequate protection because their secured liens are "out of the money" in

22  light of the $50 to $75 million valuation of the Debtor's assets and are entirely unsecured pursuant

23  to 11 U.S.C. § 506(a).

24  ///

25  ///

26  ///

27  ///

28  ///

21.     Based on my business judgment and prior experience as a chapter 11 trustee, I believe that entry into a PFA is necessary and appropriate under the circumstances, and respectfully request that I may do so.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on December 24, 2019 at Fort Worth, Texas.

MICHAEL A. MCCONNELL

## **REQUEST FOR JUDICIAL NOTICE**

Michael A. McConnell, the Chapter 11 trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"), requests that the Court take judicial notice of the following:

1.     On July 25, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code.

2.     The Debtor filed its petition in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

3.     The Debtor initially operated its business as a "debtor in possession."

4.     On or about August 9, 2019, an Official Creditor's Committee was appointed.

5.     On or about September 9, 2019, the Debtor filed its schedule G *(docket no. 171)*, which

6.     On or about October 16, 2019, the Court entered its Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee.

7.     On or about October 22, 2019, the Court approved the appointment of Michael A. McConnell as the Chapter 11 trustee in this case.

8.     On or about November 27, 2019, the Court entered its *Final Order for Emergency Priming and Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee* *(docket no. 572)*.

9.     On or about December 20, 2019, the Court entered its *Interim Order Approving Second Amendment to the Credit Agreement (docket no. 650)*.

DATED: December 2⁴, 2019          DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:  _____
AARON E. DE LEEST
Attorneys for Michael A. McConnell,
Chapter 11 Trustee

24

EXHIBIT 1

1  ERIC P. ISRAEL (State Bar No. 132426)
   eisrael@DanningGill.com
2  AARON E. DE LEEST (State Bar No. 216832)
   adeleest@DanningGill.com
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone:   (310) 277-0077
5  Facsimile:   (310) 277-5735

6  Attorneys for Michael A. McConnell,
   Chapter 11 Trustee

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    NORTHERN DIVISION

11  In re                              Case No.: 9:19-bk-11573-MB

12  HVI CAT CANYON, INC.,              Chapter 11

13          Debtor.                    ORDER GRANTING TRUSTEE'S
                                       MOTION FOR ORDER AUTHORIZING
14                                     AND APPROVING INSURANCE
                                       PREMIUM FINANCE AGREEMENT
15
                                       Date:    January 17, 2020
16                                     Time:    10:00 a.m.
                                       Place:   Courtroom 201
17                                              1415 State Street
                                                Santa Barbara, California
18

19
          On January 17, 2020, at 10:00 a.m., there came before the Court for hearing the motion
20
   (docket no. ___) (the "Motion") filed by Michael A. McConnell, the Chapter 11 trustee (the
21
   "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor"), for an order authorizing the
22
   Trustee to enter into a premium finance agreement (the "PFA") with South Bay Acceptance Corp.,
23
   or similar premium finance company (the "Finance Company").
24
          Eric P. Israel of Danning, Gill, Israel & Krasnoff, LLP appeared on behalf of the Trustee.
25
   Other appearances were as noted on the record.
26
          The Court having read and considered the Motion and all papers filed in support thereof,
27
   having found that notice of the Motion was adequate and proper, and good cause appearing,  it is
28

ORDERED THAT:

1.    The Motion is granted in its entirety.

2.    Without limiting the generality of the foregoing:

    a.    The Trustee, solely in his capacity as the Trustee for the Debtor's estate, is authorized to:

        i.    enter into the PFA or PFAs, substantially similar to the form attached as Exhibit "2" to the Motion;

        ii.    grant the Finance Company or their successors or assigns a first priority lien on and security interest in the down payment and unearned premiums as described in the PFA;

        iii.    timely make all payments due under the PFA.

    b.    The lien granted to the Finance Company in the down payment and unearned premiums is senior to the lien of any other secured parties in this case in the down payment and unearned premiums.

    c.    If additional premiums become due to insurance companies under the policies financed under the PFA, the Trustee, or any successor trustee, and the Finance Company or their successors or assigns are authorized to modify the PFA as necessary to pay the additional premiums without the necessity of further hearing or order of this Court.

    d.    In the event that the Trustee does not make any of the payments under this order or the PFA as they become due, the automatic stay shall automatically be lifted to enable the Finance Company and/or any insurance companies providing the protection under the Insurance Policies, to take all steps necessary and appropriate to cancel the Insurance Policies, collect the collateral and apply such collateral to the indebtedness owed to the Finance Company.

    e.    In the event that returned or unearned premiums or other amounts due under the Insurance Policies are insufficient to pay the total amount owing to the Finance Company, any remaining amount owing to the Finance Company, shall be an allowed claim in this case with priority as an administrative expense pursuant to Section 503(b)(1) of the Bankruptcy Code.

1            f.       The PFA and the liens and any security interests in the down payment and

2 unearned premiums granted pursuant hereto shall continue in full force and effect, and the

3 indebtedness due under the PFA shall remain due and owing from the Debtor notwithstanding: (i)

4 the dismissal or closure of this bankruptcy, or (ii) the confirmation of a plan of reorganization.

5           3.       The Court finds that the indebtedness incurred and lien afforded to secure that

6 indebtedness, have been obtained in good faith within the meaning of  Section 364(e) of the

7 Bankruptcy Code.

8                                   ####

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD®**

| DATE (MM/DD/YYYY) |
|---|
| 12/19/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Robert Burns | | |
|---|---|---|---|
| AMA Insurance Services | PHONE (A/C, No, Ext): 951-538-0227 | | FAX (A/C, No): 888-231-1392 |
| 8300 Utica Ave Suite 193 | E-MAIL ADDRESS: ROBERTBURNS@RBRISK.COM | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Rancho Cucamonga            CA 91730 | INSURER A: Markel International Ins. Co. | | 38970 |
| INSURED | INSURER B: Markel International Ins. Co. | | 38970 |
| HVI CAT Canyon, Inc. | INSURER C: Underwriters at Lloyd's | | AA1122000 |
| 2617 Clark Ave | INSURER D: State Compensation Insurance fund | | 35076 |
| | INSURER E: | | |
| Santa Maria            CA 93455 | INSURER F: | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** [X]  COMMERCIAL GENERAL LIABILITY  [ ] CLAIMS-MADE [X] OCCUR | | | JCGL101324-01 | 12/01/2019 | 12/01/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** [ ] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [ ] HIRED AUTOS [ ] NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | [X] **UMBRELLA LIAB** [X] OCCUR  [X] **EXCESS LIAB** [ ] CLAIMS-MADE  DED [X] RETENTION $ 100,000 | | | JUMB100555-01 | 12/01/2019 | 12/01/2020 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | | | | | | | Personal & Adv Injury | $ 5,000,000 |
| D | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**    Y/N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [ ] N/A (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | | 9223783-19 | 12/01/2019 | 12/01/2020 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| C | Property Insurance | | | E170915-01 | 12/21/2019 | 12/21/2020 | Property Schedule | $ 4,800,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Certificate holder is an Additional Interest party.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| United States Trustee | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| 725 S. Figueroa Street Los Angeles            CA 90017 | AUTHORIZED REPRESENTATIVE  *[signature]* |

ACORD 25 (2010/05)

© 1988-2010 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

028    EXHIBIT    2

EXHIBIT 3

**South Bay Acceptance Corp.**

License No. 1851

PO Box 639299
Cincinnati, OH 45263-9299

Tel:    800-393-2012
Fax:    888-328-6747
Account Type:    Commercial

SBAC-FF-1 (11/93)    **PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT**    Page 1 of 6

Subject to the acceptance of this agreement at    PO Box 639299 Cincinnati, OH , by South Bay Acceptance Corp., herein referred to as "The Finance Company" the creditor in this transaction, and in consideration of the premium payments to be made by The Finance Company the undersigned, jointly and severally, promise to pay to The Finance Company at its office in    PO Box 639299 Cincinnati, OH the total of payments in accordance with the payment schedule shown below.

INSURED - NAME AND ADDRESS - GIVE ALL NAMES IN POLICIES

HVI CAT CANYON INC
2617 E CLARK AVE.
SANTA MARIA, CA 93455-5815

AGENT - NAME AND ADDRESS

A McNERNEY & ASSOC. INS. SERVICES (7878)
8300 UTICA AVE., SUITE# 194
RANCHO CUCAMONGA, CA 91730

**PHONE:** 909-483-9900    **FAX:** 909-483-9949

| Inception Date | Expiration Date | Policy Prefix/ Number | Type of Coverage | Insurance Company, General Agent & Address | Premium Details | |
|---|---|---|---|---|---|---|
| 12/1/2019 | 12/1/2020 | TBD | COMMERCIAL LIABILITY | MARKEL INTERNATIONAL INS. CO. (MARKEL) 1821 WALDEN SQUARE #210 SCHAUMBERG, IL 60173 CRC (CRC) PO BOX 95236 GRAPEVINE, TX 76099 | Premium: Policy Fee: Broker Fee: Tax/Stamp: Inspection: | $87,405.00 $750.00 $1,000.00 $2,820.96 $1,500.00 |

ADDITIONAL POLICIES CAN BE FOUND ON PAGE 3

Total Premium:    $150,976.40
Down Payment:    $46,013.90
Amount Financed:    $104,962.50

FEDERAL TRUTH-IN-LENDING STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS | YOUR PAYMENT SCHEDULE WILL BE | | |
|---|---|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you on your behalf | The amount you will have paid after you have made all payments as scheduled | NUMBER OF PAYMENTS | AMOUNT OF PAYMENT | WHEN PAYMENTS ARE DUE |
| 7.99% | $3,525.30 | $104,962.50 | $108,487.80 | 9 | $12,054.20 | 21st |
| | | | | FIRST PAYMENT DUE | | 1/21/2020 |

The Amount Financed consists of entirely of the amount of credit that will be paid on your behalf for the policies listed in Schedule of Policies.

Security: You are giving a security interest in the policy(ies) listed here.
Late Charge: See SBAC-FF-2, Item number (6) six.
Prepayment: If you pay off early, you may be entitled to a refund of part of the finance charge. See page SBAC-FF-2 following.
Page SBAC-FF-2 contains the terms of the note and agreement. I agree to all provisions above and on page SBAC-FF-2.

NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 4. INSURED WARRANTS: (A) TO HAVE EXECUTED THIS AGREEMENT AND RECEIVED A COPY THEREOF; (B) IF THE INSURED IS A CORPORATION, THAT THE UNDERSIGNED IS AN OFFICER OF SAID CORPORATION AUTHORIZED TO SIGN THIS AGREEMENT; (C) IF THE INSURED IS NOT A CORPORATION, AUTHORIZED INSURED(S) HAVE SIGNED. 5. THE UNDERSIGNED HEREBY REPRESENTS AND WARRANTS THAT IT IS NOT A DEBTOR OR DEBTOR-IN-POSSESSION PURSUANT TO 11 U.S.C 101 ET. SEQ. (THE BANKRUPTCY CODE) AND THAT THE EXECUTION OF THIS AGREEMENT DOES NOT REQUIRE COURT OR GOVERNMENTAL APPROVAL OR AUTHORIZATION. THE UNDERSIGNED FURTHER REPRESENTS AND WARRANTS THAT IT IS SOLVENT AND NOT A PARTY TO ANY INSOLVENCY PROCEEDING.

_____    _____    _____    _____
Signature-Insured or Duly Authorized Agent    Date    Signature-Insured    Date

NOTICE: SEE PAGE SBAC-FF-2 FOR ADDITIONAL PROVISIONS SPECIFICALLY INCLUDED IN THE AGREEMENT

WARRANTY AND AGREEMENT
The undersigned warrants that: 1. That the insured received a copy of this agreement. 2. That this agreement evidences a bona fide legal indebtedness. 3. This agreement is made without recourse on the Producer unless amended by a duly executed Letter of Responsibility. 4. Producer warrants that the insurance described above has been ordered by the Insured Buyer, has been placed with the insurance company(ies), the information shown in the schedule of policies is correct, the cash down payment indicated above has been collected (in good funds) and the Producer has paid or will pay that down payment plus any funds advanced by The Finance Company to the insurance company(ies) in order to assure that the policy(ies) listed herein are put into effect on the dates as indicated. 5. If Insured Buyer has not signed the agreement, Producer certifies that he/she has been fully and lawfully authorized to sign this agreement by and on behalf of Insured Buyer. 6. The undersigned Producer will receive from LENDER $    $0.00    for aiding in administration of premium finance agreement relating to the above premiums. (Quote Q936224.1 ) Type: Renewal

_____
**(PRODUCER'S) SIGNATURE AND DATE**



SBAC-FF-2        **TERMS AND CONDITIONS**        Page 2 of 6

WITNESSETH: That in consideration of the payment by the Finance Company to the respective insurance companies, or their agents, of the balance of the premiums upon the policies of insurance herein before described on page SBAC-FF-1 (which policies have been issued and delivered to the Assured at his request), the Assured promises to pay the Finance Company the amount shown in the completed schedule on page SBAC-FF-1 under the caption "Total of Payments," with Finance Charge (service charge) thereon as in said Schedule provided; and the Assured agrees with the Finance Company as follows:

1. The Assured assigns as security for the total amount payable hereunder any and all unearned premiums and dividends which may become payable under the policies listed on page SBAC-FF-1.
2. The Assured hereby irrevocably appoints the Finance Company its attorney-in-fact with full authority to cancel the policies listed on page SBAC-FF-1, for nonpayment.
The insurance companies listed on page SBAC-FF-1 are hereby authorized and directed, upon the request of the Finance Company, to cancel said policies and to pay the Finance Company the unearned or return premiums thereon without proof of default hereunder or breach hereof or of the amount owing hereunder. The Assured appoints the Finance Company its attorney-in-fact to endorse its name to any check or draft for all monies that may become due from the insuring company(ies) and any sum received from an insurance company shall be credited to the balance due hereunder and if there is any excess of at least one dollar ($1.00) over the balance due, it should be paid to the Assured. The Assured shall remain liable for any deficiency together with interest thereon at the highest allowable legal rate.
3. If policy is not issued at the time this agreement is executed, the Assured gives the Finance Company authority to fill in the name of the insuring company, policy number and the due date of the first payment. The Assured understands and agrees that if the actual premiums are other than as indicated, this agreement may be amended to reflect the actual premiums, amount financed and finance charge, and that the Assured will make an additional down payment, if required, with ten (10) days notice thereof.
4. The Assured agrees that default in payment of any installment hereof for a period of ten (10) days shall be deemed a default in the contract, and the total amount due under the contract shall be due and payable. The Assured agrees to pay a reasonable attorney fee not to exceed 20% of the amount due and payable under this agreement if it is referred for collection to any attorney not a salaried employee of the Finance Company.
5. No waiver by the Finance Company of any default shall be construed as a waiver for any other subsequent default nor impair or affect any rights or for non-payment. The insurance companies listed on page SBAC-FF-1 are hereby authorized and directed, upon the request of the Finance Company, to cancel said policies and to pay the
Finance Company the unearned or return premiums thereon without proof of default hereunder or breach hereof or of the amount owing hereunder. The Assured appoints the Finance Company its attorney-in-fact to endorse its name to any check or draft for all monies that may become due from the insuring company(ies) and any sum received from an insurance company shall be credited to the balance due hereunder and if there is any excess of at least one dollar ($1.00) over the balance due, it should be paid to the Assured. The Assured shall remain liable for any deficiency together with interest thereon at the highest allowable legal rate.
6. Time being the essence of this contract, upon default in any payment hereunder, and such default continuing for ten (10) days, the Assured agrees to pay a delinquency and collection charge of 5% of scheduled payment, but never less than on dollar ($1.00) on each installment in default. The Assured understands and agrees that default in payment of any installment hereof for a period of ten (10) days shall be deemed to be a request for cancellation of the policies listed on page SBAC-FF-1.
7. The assured will receive a refund credit of part of the finance charge if the assured voluntarily prepays the outstanding debt in full before the last installment due date according to Section 18629 of the Financial Code. The assured will also receive a refund credit of part of the finance charge if the maturity of the loan is accelerated for any reason according to Section 19642 of the Financial Code. The methods for computing these refund credits are stated below.
a) Voluntary Prepayment -
(i) If prepayment in full is made during the first three months and 15 days after the earliest insurance policy effective date as shown on the front of the contract, South Bay Acceptance corporation will compute a finance charge by multiplying the agreed rate of charge as stated at the end of this Agreement by the unpaid principal balances for the number of days from the earliest policy effective date to the date of prepayment in full, South Bay Acceptance will apply each payment made by the assured first to finance charge then to principal. South Bay Acceptance will then subtract this actual finance charge from the finance charge shown in the finance charge box on page 1 of this agreement to obtain a refund credit.
(ii) If prepayment in full is made more than three months and 15 days after the earliest insurance policy effective date, the refund credit shall be computed by the Rule of 78s method.
(iii) All contracts shall be subject to a minimum finance charge of $25.00.
(b) Acceleration of Maturity -
If payment of the unpaid balance of the loan to South Bay Acceptance is accelerated for any reason, South Bay Acceptance Corp. shall make the same refund as if this loan contract was paid in full on the date of acceleration. Paragraph 7(a) states the method of computing the refund or credit. The unpaid balance remaining after subtracting the refund or credit shall be treated as the unpaid principal balance. The assured agrees to pay South Bay Acceptance Corp. on the unpaid principal balance interest computed at the agreed rate of charge stated at the end of this Agreement until South Bay Acceptance Corp. is actually paid in full.
8. The Assured hereby releases and discharges and agrees to hold harmless the Finance Company and each holder hereof, their officers, agents and employees from any liability or cause of action by reason of any cancellation, when such cancellation is in conformance with the provisions of the Statutes of the State in which contract was issued. The Assured agrees that any payment received after cancellation will be applied to reduce the indebtedness and will not reinstate the policy where cancellation notice has been mailed by the Finance Company. Finance Company, at its option, may request reinstatement of the policies when such payments are received, however reinstatement is up to the insurance company, at its sole discretion.
9. In the event that a payment made by check or draft is returned because of insufficient funds to pay it, the Assured agrees to pay the Finance Company a charge of fifteen dollars ($15.00) and such amount will be added to the stated amount of the contract and shall become subject to all provisions herein.
10. This contract is subject to approval and acceptance by the Finance Company and if not approved and accepted it is to be promptly returned. Issuing checks for the policies listed on page SBAC-FF-1 to the agent or insurer or paying a draft will be considered acceptance.
11. This contract may be assigned and the holder or assignee has the same rights as the Finance Company.
12. Please take notice that the Premium Finance Company named on the front of the contract, in consideration of premium advances made or to be made, holds an assignment of all unearned premiums on the above described policy, including power of attorney to cancel if Premium Finance Company is not notified within five (5) days by Insurance Company. Premium Finance Company assumes that this Notice of Assignment is acceptable and the information on the front of the contract is correct.

**The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of sex or marital status. The Federal agency which administers compliance with this law concerning this Premium Finance Company is the Federal Trade Commission, 11000 Wilshire Boulevard, Suite 13209, Los Angeles, CA 90024.**

**FOR INFORMATION, CONTACT THE DEPARTMENT OF FINANCIAL INSTITUTIONS STATE OF CALIFORNIA. NOTICE: SEE PAGE SBAC-FF-1 FOR IMPORTANT INFORMATION.**

SBAC-FF-3

**South Bay Acceptance Corp.**

PO Box 639299
Cincinnati, OH 45263-9299

Page 3 of 6

**ADDITIONAL POLICIES**

Tel:   800-393-2012
Fax:   888-328-6747

Account Type:   Commercial

INSURED - NAME AND ADDRESS - GIVE ALL NAMES IN POLICIES

HVI CAT CANYON INC
2617 E CLARK AVE.
SANTA MARIA, CA 93455-5815

AGENT - NAME AND ADDRESS

A McNERNEY & ASSOC. INS. SERVICES (7878)
8300 UTICA AVE., SUITE# 194
RANCHO CUCAMONGA, CA 91730

PHONE:  909-483-9900      FAX:  909-483-9949

| Inception Date | Expiration Date | Policy Prefix/ Number | Type of Coverage | Insurance Company, General Agent & Address | Premium Details | |
|---|---|---|---|---|---|---|
| 12/1/2019 | 12/1/2020 | TBD | EXCESS LIABILITY | MARKEL INTERNATIONAL INS. CO. (MARKEL) 1821 WALDEN SQUARE #210 SCHAUMBERG, IL 60173<br><br>CRC (CRC) PO BOX 95236 GRAPEVINE, TX 76099 | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | $25,545.00<br>$750.00<br>$0.00<br>$841.44<br>$0.00 |
| 12/21/2019 | 12/21/2020 | | COMMERCIAL PROPERTY | Lloyds of London (22) 3560 Daventry Lane Kennesaw, GA 30144<br><br>WORLDWIDE FACILITIES INC.-IRVINE (WORLDWIDE) 725 S. FIGUEROA ST. 19TH FL LOS ANGELES, CA 90017 | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | $27,000.00<br>$1,000.00<br>$0.00<br>$864.00<br>$1,500.00 |
| | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | |
| | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | |
| | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | |
| | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | |
| | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | |
| | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | |
| | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: | |

031

Quote  Q936224.1

EXHIBIT 4

| HVI CAT CANYON INC. *WORKING DRAFT* 6-Week Cash Flow Forecast *week starting* | Forecast Week 21 16-Dec-19 | Forecast Week 22 23-Dec-19 | Forecast Week 23 30-Dec-19 | Forecast Week 24 6-Jan-20 | Forecast Week 25 13-Jan-20 | Forecast Week 26 20-Jan-20 | 6-Week TOTAL |
|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | - | - | - | - | - | - | |
| **1 Cash Inflows (*)** | | | | | | | |
| SMV | - | - | - | - | - | 673,139 | 673,139 |
| Redu | - | - | - | - | - | 53,361 | 53,361 |
| Belridge | - | - | - | - | - | 40,041 | 40,041 |
| **Total Cash Inflows** | - | - | - | - | - | 766,541 | 766,541 |
| **2 Royalties** | | | | | | (41,150) | (41,150) |
| **3 Escrow Royalties(**)** | | | | | | (7,914) | (7,914) |
| **Total Net Cash Inflows** | - | - | - | - | - | 717,477 | 717,477 |
| **Cash Outflows** | | | | | | | |
| **Operating Expenses** | | | | | | | |
| Payroll Checks | 76,000 | - | 76,000 | - | 76,000 | - | 228,000 |
| Payroll Taxes | - | 26,000 | - | 26,000 | - | 26,000 | 78,000 |
| Garnishment & Child Supports | 1,500 | - | 1,500 | - | 1,500 | - | 4,500 |
| 4 Surface Rents | 5,600 | - | 62,548 | - | - | - | 68,148 |
| 5 Consultants | 15,100 | - | 15,100 | - | 15,100 | - | 45,300 |
| 6 Phones | 2,500 | - | 2,500 | - | 2,500 | - | 7,500 |
| 7 Power PG&E | 155,000 | - | - | 183,333 | - | - | 338,333 |
| 8 Power SoCalEdison | - | - | - | 17,500 | - | - | 17,500 |
| Waste Management | 500 | - | 1,500 | 500 | 1,500 | 500 | 4,500 |
| Water | 2,500 | 2,000 | 1,500 | 1,000 | 2,500 | 2,000 | 11,500 |
| SouthernCalGas | 150 | 75 | - | - | 150 | 75 | 450 |
| Portable Restrooms | 1,500 | 1,500 | - | - | 1,500 | 1,500 | 6,000 |
| Alarms | 425 | - | - | - | 425 | - | 850 |
| Cafeteria | 250 | - | - | - | 250 | - | 500 |
| Copies | 250 | - | - | - | 250 | - | 500 |
| 9 Chemicals | 10,000 | 5,000 | 10,000 | 5,000 | 10,000 | 5,000 | 45,000 |
| 10 Pumps | 5,000 | 10,000 | 5,000 | 10,000 | 5,000 | 10,000 | 45,000 |
| 11 Gasoline | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 75,000 |
| 12 Transportation | 22,400 | - | 26,900 | 12,000 | 22,400 | 4,500 | 88,200 |
| 13 Vacuum Trucks | 25,000 | - | 25,000 | - | 25,000 | - | 75,000 |
| 14 LCR | 104,000 | - | - | - | - | 450,000 | 554,000 |
| 15 Electricians | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 30,000 |
| 16 Welders | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 30,000 |
| 17 Supplies (Belts-Parts, Labor) | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 24,000 |
| 18 Parts (Compressor, Pipe, others) | 2,500 | 5,000 | 2,500 | 5,000 | 2,500 | 5,000 | 22,500 |
| 19 Clean Chemical towers | - | - | 3,000 | - | 3,000 | - | 6,000 |
| 20 Vehicle maintenance | 5,000 | 5,000 | - | 5,000 | - | 5,000 | 20,000 |
| Drink Water | - | - | - | 500 | - | - | 500 |
| 21 Weed abatement | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 60,000 |
| 22 Well Analysis | - | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 30,000 |
| 23 Compliance | 15,000 | 10,000 | 15,000 | 10,000 | 15,000 | 10,000 | 75,000 |
| 24 SBP - APCD | | | 85,000 | | | | 85,000 |
| 25 SBP - P&D | | | - | | | | |
| 26 SBP - FD | | | - | | | | |
| 27 SBP - EHS | | | - | | | | |
| SBP - Tax | - | - | - | - | - | - | |
| OC - Tax | | | | | | | |
| KC - Tax | | | | | | | |
| 28 Escrow - Surface Rents(**) | - | - | 7,500 | - | - | - | 7,500 |
| 29 Netherland and Sewell Reserve Report | 25,000 | 20,000 | - | - | - | - | 45,000 |
| 30 GSI Phase 1 Environmental Study | 46,000 | - | - | - | - | - | 46,000 |
| 31 Backoffice & Administrative | 90,000 | - | - | 60,000 | - | - | 150,000 |
| **Total Operating Expenses** | 647,675 | 127,075 | 383,048 | 378,333 | 227,075 | 562,075 | 2,325,281 |
| **Net Operating Profit** | $ (647,675) | $ (127,075) | $ (383,048) | $ (378,333) | $ (227,075) | $ 155,402 | (1,607,804) |

EXHIBIT  4

| | HVI CAT CANYON INC.<br>*WORKING DRAFT* 6-Week Cash Flow Forecast<br>*week starting* | Forecast<br>Week 21<br>16-Dec-19 | Forecast<br>Week 22<br>23-Dec-19 | Forecast<br>Week 23<br>30-Dec-19 | Forecast<br>Week 24<br>6-Jan-20 | Forecast<br>Week 25<br>13-Jan-20 | Forecast<br>Week 26<br>20-Jan-20 | 6-Week<br>TOTAL |
|---|---|---|---|---|---|---|---|---|
| | Beginning Cash Balance | - | - | - | - | - | - | - |
| | **Total Health and Safety & Deferred Maintenance** | | | | | | | |
| 32 | Health and Safety | | | | | | | |
| | SMV Health and Safety | 56,000 | 16,000 | 33,000 | 40,000 | 12,000 | - | 157,000 |
| | Belridge Health and Safety | 20,000 | 3,000 | 3,000 | - | - | 30,000 | 56,000 |
| | Redu Health and Safety | 16,000 | 40,000 | 1,000 | 25,000 | - | 65,000 | 147,000 |
| | **Total Health and Safety** | 92,000 | 59,000 | 37,000 | 65,000 | 12,000 | 95,000 | 360,000 |
| 33 | Deferred Maintenance | 60,000 | - | - | - | - | - | 60,000 |
| | **Total Health and Safety & Deferred Maintenance** | 152,000 | 59,000 | 37,000 | 65,000 | 12,000 | 95,000 | 420,000 |
| | Bank Charges & fees | 100 | - | 100 | - | 100 | - | 300 |
| 34 | Insurances | - | - | - | 9,879 | - | - | 9,879 |
| | Chapter 11 Trustee and his Professionals | 131,994 | 127,544 | 114,894 | 118,994 | 93,994 | 91,894 | 679,314 |
| 35 | Unsecured Creditor Committee Professionals | - | - | 50,000 | - | 35,000 | - | 85,000 |
| | U.S. Trustee Payment | - | - | 25,000 | - | - | - | 25,000 |
| 36 | Interest | - | - | - | - | - | - | - |
| | **Bankruptcy Related Expenses** | 132,094 | 127,544 | 189,994 | 128,873 | 129,094 | 91,894 | 799,493 |
| | **Total Cash Outflows** | 931,769 | 313,619 | 610,042 | 572,207 | 368,169 | 748,969 | 3,544,775 |
| | **Net Cash Flow** | (931,769) | (313,619) | (610,042) | (572,207) | (368,169) | (31,492) | (2,827,297) |
| | Beginning Cash Balance | - | - | - | - | - | - | - |
| | Net Cash Flow | (931,769) | (313,619) | (610,042) | (572,207) | (368,169) | (31,492) | (2,827,297) |
| | Net Borrowing/(Pay Down) | 931,769 | 313,619 | 610,042 | 572,207 | 368,169 | 31,492 | 2,827,297 |
| | **Ending Cash Balance** | | | | | | | |
| | **Loan Balance** | 4,342,041 | 4,655,660 | 5,265,702 | 5,837,908 | 6,206,077 | 6,237,569 | 6,237,569 |

(*)Forecast depend on actual delivered barrels and price
(**) Not approved under Interim Cash Collateral Order

1. Forecast dependent on actual volume of delivered barrels, price and gravity adjustments.
The price per barrel is calculated for Santa Maria Valley using the average price per barrel posted by Chevron, Union 76, Exxon and Shell for Midway Sunset crude less $5.
The price per barrel for Redu is calculated using the average price per barrel posted by the same 4 corporations for Buena Vista crude less $5.75.
The price per barrel for Belridge is calculated using the average price per barrel posted by the same 4 corporations for Buena Vista crude less $0.75.
All pricing is subject to adjustments based upon the gravity of the oil produced. The prior month's revenue is collected on the 20th of the following month.

2. In aggregate, monthly royalties are approximately 13% of production which is approximately 1 month's revenue less the LCR shipments.

3. Escrow Royalties are based upon an insider's 2.5% overriding royalty on 1 month's production which is approximately 1 month's revenue less the LCR shipments.

4. Surface Rent Sub schedule

| Surface Lease Owner: | Amount | Timing |
|---|---|---|
| Boisseranc | $ 11,956 | Due on the 1st of each month |
| Buganko | $ 14,878 | Due on the 1st of the month. |
| Medema (1/2) Thomson (1/4) (- McLaughlin (1/4) | $ 7,500 | Due on the 1st of each month |
| (3) Etchandy family members | $ - | Lease to be rejected, no amount due |
| State College, LLC (Evelyn Roper) | $ 1,581 | $1,5851.33 due on an annual basis - has been paid for 2019. |
| Adam Family Trust | $ - | No amount due |
| Orcutt Fee, LLC | $ 5,000 | $5,000 due on an annual basis - has been paid for 2019. |
| Marianne Friedl | $ 3,700 | $3,700 due on an annual basis - has been paid for 2019. |
| C.M.T LLC | $ 100 | $100 will be due in January 2020. |
| Manfred Sander | $ 6,800 | Due before the end of October 2019 |
| E & B Natural Resources | $ - | Under review, no amount currently due |
| Grundoon, LLC (Firestone) | $ 7,500 | Due on the 1st of each month |
| Morganti Ranch | $ 5,500 | $5,500 on a monthly basis- lease is currently shut-in, no amount due. |
| Morganti Ranch | $ - | Under review, no amount currently due |
| Morganti Ranch | $ - | Under review, no amount currently due |
| Railroad | $ 454 | $454 due in December 2019 |
| (4) Righetti family members | $ 3,000 | $3,000 per quarter, next payment due in December 2020 |
| (3) Judy A. Rogers, Ronald H. Souza, Jr., Michael J. Souza | $ 750 | $750 due in January 2020 |

| HVI CAT CANYON INC.<br>*WORKING DRAFT* 6-Week Cash Flow Forecast<br>*week starting* | Forecast<br>Week 21<br>16-Dec-19 | Forecast<br>Week 22<br>23-Dec-19 | Forecast<br>Week 23<br>30-Dec-19 | Forecast<br>Week 24<br>6-Jan-20 | Forecast<br>Week 25<br>13-Jan-20 | Forecast<br>Week 26<br>20-Jan-20 | 6-Week<br>TOTAL |
|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | - | - | - | - | - | - | |

| | | |
|---|---|---|
| Roland and Sandy Miller | $ 300 | $300 due in December 2019 |
| Multiple Bradley Lands | $ - | No amount due in October or November 2019 |
| | $ 69,019 | |

5 HVI pays the following 3 consultants on a biweekly basis including a $3k increase to William LaFleur and a catch
up payment for unpaid amounts due to him in week 21. In process of potentially engaging another consultant
to vet Deferred Maintenance projects for $3k on a bi-weekly basis starting in week 23:

| Name and Description: | Amount: |
|---|---|
| i) William LaFleur - Landman | $ 6,000 |
| ii) Innovative Consulting Solutions - production accountant | $ 1,923 |
| iii) Alliance-Hydro - Geologist | $ 4,085 |
| **Total Amount due to Consultants** | $ 12,008 |

6 Amounts include HVI's office line at their East Clarke office and cell phones for all field employees.
7 Per adequate assurance order, $28.3k deposit due in Weeks 20 and 24 and $155k due prior to the 20th each month
8 Amount due for prior month's power usage.
9 Chemicals used for H2S removal that are critical to production - currently on COD terms with chemicals vendor
10 Pump maintenance and rework costs that are critical to production.
11 HVI makes daily gasoline purchases for the tankers used to haul
oil and gas production with a weekly run rate of approximately
$12,500.
12 Include 10,000 BBLs of Crude Storage per month and insurance
and vehicle leasing costs for new trucks.
13 Amount due to 2 new vacuum truck vendors recently employed
to replace affiliate GTL1
14 Assumes reduced LCR usage at $75 per BBL while the initiatives
to dehydrate crude are underway.
15 The weekly run rate for electricians is approximately $5k.
16 The weekly run rate for welders is approximately $5k.
17 Assumes a weekly run rate of $4k for supplies
18 Assumes a weekly run rate of $5k for parts
19 Assumes a bi-weekly run rate of $3k for H2S fluid starting week 23
20 Assumes $12-$20kk monthly run rate for the maintenance costs
for all oil field service vehicles, including rigs.
21 Weekly run rate for critical safety and fire protection for HVI's
700+ wells and reduction of Notice of Violation ("NOV") fines.
Currently understaffed in this area and run rate assumes
increasing team size from 1 to approximately 2 five man teams.
22 Targeted ongoing wellhead testing of highest production wells to better understand native gravity and water cut.
23 Weekly run rate for critical compliance requirements such as
SPC ("Spill Prevention and Countermeasure") plans and APCD
("Air Pollution and Control District") plans that need to be
submitted before year-end to mitigate future fines and
penalties from regulatory bodies.
24 **PAID IN WEEK 19 -** Passed due post-petition Permit to Operate
("PTO") fees from the APCD for the following 13 HVI leases,
excluding 1 lease quitclaimed to an insider. The following is
subject to revision if additional permit fees for quitclaimed
leases to insiders are identified:

| Facility | Fee |
|---|---|
| Armelin Lease PTO No. 07775 - R8 | $ 7,895 |
| Battles Lease PTO No. 08219 - R11 | $ 7,323 |
| Bradley Lands/Bradely Consolidated Lease PTO No. 07053 - R11 | $ 41,123 |
| Continental Lease PTO No. 08222 - R11 | $ 5,425 |
| Cross Development Lease PTO No. 08863 - R9 | $ 458 |
| East Valley Farms Lease PTO No. 08864 - R9 | $ 458 |
| Fullerton Lease PTO No. 08868 - R13 | $ 7,551 |
| Jim Hopkins Lease PTO No. 09310 - R8 | $ 13,796 |
| Lakeview Gas Plant PTO No. 10108 - R8 | $ 38,032 |
| Lakeview Lease PTO No. 10096 - R8 | $ 7,385 |
| Los Flores PTO No. 07307 - R12 | $ 16,074 |
| McKenzie Lease PTO No. 10079 - R8 | $ 458 |
| Olean Lease PTO No. 10080 - R8 | $ 458 |
| **Total due for APCD PTOs** | $ 146,436 |

Excluded PTO fee due to a quitclaimed lease to an insider.

| | |
|---|---|
| Golco Lease PTO No. 10078 - R8 | $ 4,679 |

25 **PAID IN WEEK 19 -** Amount is based upon the following County
of Santa Barbara Planning and Development post-petition
facility and lease inspection fees. Subject to revision if
additional permit fees for quitclaimed leases to insiders are
identified:

| HVI CAT CANYON INC. *WORKING DRAFT* 6-Week Cash Flow Forecast *week starting* | Forecast Week 21 16-Dec-19 | Forecast Week 22 23-Dec-19 | Forecast Week 23 30-Dec-19 | Forecast Week 24 6-Jan-20 | Forecast Week 25 13-Jan-20 | Forecast Week 26 20-Jan-20 | 6-Week TOTAL |
|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | | | | | | | |
| Account Number/Permit ID Number: | Amount: | | | | | | |
| Permit ID # 19ACB-00000-00914 for 500 post-petition un-inspected facilities | $  110,452 | | | | | | |
| 19ACT-00880 | $      210 | | | | | | |
| 19ACT-00922 | $    6,560 | | | | | | |
| 19ACT-00920 | $       10 | | | | | | |
| 19ACT-00914 | $      350 | | | | | | |
| 19ACT-00921 | $    6,280 | | | | | | |
| 19ACT-00926 | $   12,640 | | | | | | |
| 19ACT-00928 | $    9,032 | | | | | | |
| 19ACT-00938 | $      108 | | | | | | |
| 19ACT-00930 | $       10 | | | | | | |
| 19ACT-00932 | $       10 | | | | | | |
| 19ACT-00934 | $      108 | | | | | | |
| 19ACT-00936 | $      108 | | | | | | |
| 19ACT-00887 | $      262 | | | | | | |
| 19ACT-00878 | $      420 | | | | | | |
| 19ACT-00877 | $      210 | | | | | | |
| 19ACT-00879 | $      210 | | | | | | |
| 19ACT-00881 | $      220 | | | | | | |
| 19ACT-00924 | $   12,640 | | | | | | |
| **Total due to P&D for inspection fees** | $  159,843 | | | | | | |

26 PAID IN WEEK 19 - Amount is based upon the following Santa Barbara County Fire Department Post-Petition California Fire Code Inspection Permit Fees. Subject to revision if permits for additional quitclaimed leases to insiders are identified:

| Site Name | Amount: |
|---|---|
| Battles | $    1,370 |
| Blochman | $    1,370 |
| Bell Gas Compressor | $    1,370 |
| Bell Lease | $    1,370 |
| Casmalia/Morganti | $    1,370 |
| Chamberlin B | $    1,370 |
| Chamberlin | $    1,370 |
| Davis B | $    1,370 |
| Davis | $    1,370 |
| Fullerton Lease | $    1,370 |
| Jim Hopkins | $    1,370 |
| Los Flores | $    1,370 |
| **Total due for Fire Department CFC Permits** | $   16,440 |

27 PAID IN WEEK 19 - Per Docket #308, Declaration of James Ray, California Unified Program Agency Supervisor for the Santa Barbara County Environmental Health Services ("EHS"), amounts due for the following Santa Barbara Post-petition Environmental Health Services Permit Fees - *originally forecast to be distributed in week 2* :

| Permit ID: | Permit Fee for 2020: |
|---|---|
| FA0010063 | $    1,857 |
| FA0010325 | $      555 |
| FA0010326 | $      555 |
| FA0011176 | $      555 |
| FA0011177 | $      555 |
| FA0012015 | $      555 |
| FA0012328 | $      555 |
| FA0012329 | $      555 |
| FA0012330 | $      555 |
| FA0012495 | $      555 |
| FA0013065 | $      555 |
| FA0013112 | $      555 |
| FA0013113 | $      555 |
| FA0013114 | $      555 |
| FA0013136 | $      555 |
| FA0015899 | $      848 |
| **Total amount due for EHS permits** | $   10,475 |

28 Rent due on HVI East Clarke office - not approved under Interim Cash Collateral Order

29 Chapter 11 Trustee negotiated a progress payment plan with Netherland & Sewell for a 2019 Reserve Report. The $100-$120k total fee can be paid on weekly basis for $25k a week.

30 Phase 1 Environmental Study per Credit Agreement forecasted to be completed in week 21.

| HVI CAT CANYON INC. *WORKING DRAFT* 6-Week Cash Flow Forecast *week starting* | Forecast Week 21 16-Dec-19 | Forecast Week 22 23-Dec-19 | Forecast Week 23 30-Dec-19 | Forecast Week 24 6-Jan-20 | Forecast Week 25 13-Jan-20 | Forecast Week 26 20-Jan-20 | 6-Week TOTAL |
|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | - | - | - | - | - | - | - |

| 31 | CGI will begin providing Backoffice support and this line item includes deposits and monthly dues per their contract. |
|---|---|
| 32 | 13- weeks of Health and Safety Projects as defined in the 13-week health and safety budget.  Week 1 of that budget is reforecast to begin in week 19 |
| 33 | Deferred Maintenance projects to Dehydrate crude at 3 leases |
| 34 | Still waiting for confirmation on pricing for insurance on leased vehicles but the amount in week 24 represents the first installment of the HVI only renewed insurance plans. |
| 35 | Forecasted Fees for the Unsecured Creditors Committee Professionals in December is $50k and $35k a month going forward. |
| 36 | The Interest Rate for this portion of the DIP facility is still being determined |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): <u>TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING AND APPROVING INSURANCE PREMIUM FINANCE AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF MICHAEL A. MCCONNELL AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>December 24, 2019</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

&#x2612; Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**: On <u>December 24, 2019</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

&#x2612; Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>December 24, 2019</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

&#x2610; Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 24, 2019 | Beverly Lew | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                 **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

William C Beall on behalf of Creditor GLR, LLC
will@beallandburkhardt.com, carissa@beallandburkhardt.com

Alicia Clough on behalf of Creditor California State Lands Commission
aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com

Marc S Cohen on behalf of Creditor California State Lands Commission
mscohen@loeb.com, klyles@loeb.com

Alec S DiMario on behalf of Creditor Direct Energy Business Marketing, LLC d/b/a Direct Energy Business
alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com

Alec S DiMario on behalf of Creditor Direct Energy Business, LLC
alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com

Karl J Fingerhood on behalf of Interested Party United States of America on behalf of USEPA and US Coast Guard
karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov

H Alexander Fisch on behalf of Interested Party California Department of Fish & Wildlife
Alex.Fisch@doj.ca.gov

H Alexander Fisch on behalf of Interested Party California Regional Water Quality Control Board, Central Coast
Alex.Fisch@doj.ca.gov

Don Fisher on behalf of Interested Party Interested Party
dfisher@ptwww.com, tblack@ptwww.com

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee
brian.fittipaldi@usdoj.gov

Gisele M Goetz on behalf of Interested Party Courtesy NEF
gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu

Karen L Grant on behalf of Creditor BUGANKO, LLC
kgrant@silcom.com

Ira S Greene on behalf of Interested Party CTS Properties, Ltd.
Ira.Greene@lockelord.com

Matthew C. Heyn on behalf of Creditor Department of Conservation, Division of Oil, Gas and Geothermal Reources
Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com

Brian L Holman on behalf of Creditor Bradley Land Company
b.holman@musickpeeler.com

Eric P Israel on behalf of Attorney Courtesy NEF
eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Attorney Danning, Gill, Israel & Krasnoff, LLP
eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Michael Authur McConnell (TR)
eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Razmig Izakelian on behalf of Creditor GIT, Inc.
razmigizakelian@quinnemanuel.com

Alan H Katz on behalf of Interested Party CTS Properties, Ltd.
akatz@lockelord.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

John C Keith on behalf of Creditor California State Lands Commission
john.keith@doj.ca.gov

Jeannie Kim on behalf of Interested Party Pacific Gas and Electric Company
jkim@friedmanspring.com

Maxim B Litvak on behalf of Creditor Committee Official Committee of Unsecured Creditors
mlitvak@pszjlaw.com

Michael Authur McConnell (TR)
Michael.mcconnell@kellyhart.com

Brian M Metcalf on behalf of Interested Party UBS AG, London Branch
bmetcalf@omm.com

David L Osias on behalf of Creditor Allen Matkins Leck Gamble Mallory & Natsis LLP
dosias@allenmatkins.com, bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com

Darren L Patrick on behalf of Interested Party UBS AG, London Branch
dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com

Jeffrey N Pomerantz on behalf of Creditor Committee Official Committee of Unsecured Creditors
jpomerantz@pszjlaw.com

Todd C. Ringstad on behalf of Interested Party Interested Party
becky@ringstadlaw.com, arlene@ringstadlaw.com

Mitchell E Rishe on behalf of Creditor California Department of Conservation, Division of Oil, Gas & Geothermal Resources
mitchell.rishe@doj.ca.gov

Mitchell E Rishe on behalf of Creditor Department of Conservation, Division of Oil, Gas and Geothermal Reources
mitchell.rishe@doj.ca.gov

Sonia Singh on behalf of Trustee Michael Authur McConnell (TR)
ssingh@DanningGill.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com

Daniel A Solitro on behalf of Interested Party CTS Properties, Ltd.
dsolitro@lockelord.com, ataylor2@lockelord.com

Ross Spence on behalf of Interested Party County of Santa Barbara, California
ross@snowspencelaw.com,
janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com

Ross Spence on behalf of Interested Party Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California
ross@snowspencelaw.com,
janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com

Ross Spence on behalf of Interested Party Santa Barbara Air Pollution Control District
ross@snowspencelaw.com,
janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com

Christopher D Sullivan on behalf of Creditor Diamond McCarthy LLP
csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com

Jennifer Taylor on behalf of Interested Party UBS AG, London Branch
jtaylor@omm.com

John N Tedford, IV on behalf of Trustee Michael Authur McConnell (TR)
jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

Salina R Thomas on behalf of Interested Party Courtesy NEF
bankruptcy@co.kern.ca.us

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Salina R Thomas on behalf of Interested Party Kern County Treasurer Tax Collector
bankruptcy@co.kern.ca.us

Patricia B Tomasco on behalf of Creditor GIT, Inc.
pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com

Fred Whitaker on behalf of Interested Party Eller Family Trust
lshertzer@cwlawyers.com

William E. Winfield on behalf of Attorney Courtesy NEF
wwinfield@calattys.com, scuevas@calattys.com

Richard Lee Wynne on behalf of Interested Party NewBridge Resources, LLC
richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com

Emily Young on behalf of Creditor Epiq Corporate Restructuring, LLC Claims Agent
pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

Aaron E de Leest on behalf of Trustee Michael Authur McConnell (TR)
adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

## 2. SERVED BY U.S. MAIL

| Debtor | Debtor | Brian Fittipaldi, Esq. |
|---|---|---|
| HVI Cat Canyon, Inc. | HVI Cat Canyon,Inc. | Office of the United States Trustee |
| c/o Capitol Corporate Services, Inc. | 630 Fifth Avenue, Suite 2410 | 1415 State Street, Ste 148 |
| 36 S. 18th Avenue, Suite D | New York, NY 10111 | Santa Barbara, CA 93101-2511 |
| Brighton, CO 80601 | | |

Leon J. Page, County Counsel
Office of the Orange County Counsel
10 Civic Center Plaza
Suite 407
Santa Ana, CA 92702

Margo A. Raison, County Counsel
Kern County Counsel
1115 Truxtun Ave, 4th Floor
Bakersfield, CA 93301-4617

Kern County Treasurer Tax Collector
1115 Truxtun Avenue, 2nd Floor
Bakersfield, CA 93301-4639

Atty. for California Asphalt Production,
Inc. and GTL1, LLC
Susan M. Whalen, Esq.
The Law Offices of Susan M. Whalen
2806 Alta Street, PO Box 938
Los Olivos, CA 93441

California State Controller Tax
Administration Section
Richard J. Chivaro, Chief Counsel for
California State Controller
300 Capitol Mall, Suite 1850
Sacramento, CA 95814

Northern California Collection Service,
Inc.
Steven D. Cribb, In-House Counsel
Lawrence H. Cassidy, Agent for Service
of Process
700 Leisure Lane
Sacramento, CA 95815

The Honorable Martin R. Barash
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 342
Woodland Hills, CA 91367

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.