1  MICHAEL McCONNELL
   *Michael.McConnell@kellyhart.com*
2  201 Main Street, Suite 2500
   Fort Worth, Texas 76102
3  Telephone:   (817) 878-3569
   Facsimile:   (817) 878-9769
4
   Chapter 11 Trustee
5
   ERIC P. ISRAEL (State Bar No. 132426)
6  *eisrael@DanningGill.com*
   AARON E. DE LEEST (State Bar No. 216832)
7  *adeleest@DanningGill.com*
   DANNING, GILL, ISRAEL & KRASNOFF, LLP
8  1901 Avenue of the Stars, Suite 450
   Los Angeles, California 90067-6006
9  Telephone:   (310) 277-0077
   Facsimile:   (310) 277-5735
10
   General Counsel for Michael A. McConnell,
11 Chapter 11 Trustee

12                    **UNITED STATES BANKRUPTCY COURT**

13                     **CENTRAL DISTRICT OF CALIFORNIA**

14                           **NORTHERN DIVISION**

15 | In re | Case No.: 9:19-bk-11573-MB |
16 | HVI CAT CANYON, INC., | Chapter 11 |
17 |   Debtor. | **CHAPTER 11 TRUSTEE'S NOTICE OF** |
18 | | **APPLICATION AND APPLICATION TO EMPLOY TENOAKS ENERGY** |
19 | | **PARTNERS, LLC AS HIS EXCLUSIVE MARKETING AGENT IN CONNECTION** |
20 | | **WITH THE SALE OF OIL AND GAS INTERESTS AND RELATED ASSETS;** |
21 | | **AND STATEMENT OF DISINTERESTEDNESS** |
22 | | [No Hearing Required] |

23 **TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY**

24 **JUDGE, AND INTERESTED PARTIES:**

25         PLEASE TAKE NOTICE THAT Michael A. McConnell, the Chapter 11 trustee (the

26 "Trustee" or "applicant") of the estate of HVI Cat Canyon, Inc. (the "debtor"), will and hereby does

27 move the Court for an order authorizing him to employ TenOaks Energy Partners, LLC

28

1577901.1  26932                              1

1  ("TenOaks") as his exclusive marketing agent and advisor in connection with the sale of the

2  estate's oil and gas interests and related assets (the "application").

3        The application is based upon this notice of application, the attached Statement of

4  Disinterestedness, the complete files and records of this case, and such other evidentiary matters as

5  may be presented to the Court.

6        **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013

7  1(o)(1)(A)(ii), any objection and request for hearing must be in writing and must be filed and

8  served within fourteen (14) days after of the date of mailing of this notice, plus an additional 3 days

9  if this notice of motion was served by mail or pursuant to Fed. R. Civ. P. 5(b)(2)(D) or (F).   The

10  response or opposition to the application shall be filed with the Bankruptcy Court and served on the

11  United States Trustee, at 1415 State Street, Suite 148, Santa Barbara, CA 93101, and counsel for

12  the Trustee, Aaron E. de Leest, at 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067.

13        If you fail to file a written response within fourteen days of the date of the service of this

14  notice, plus an additional 3 days if this notice of motion was served by mail or pursuant to Fed. R.

15  Civ. P. 5(b)(2)(D) or (F), the Court may treat such failure as a waiver of your right to oppose the

16  application and may grant the requested relief.

17

18  DATED:  February _27_, 2020           DANNING, GILL, ISRAEL & KRASNOFF, LLP

19

20                        By:  _____

21                           AARON E. DE LEEST

22                           Attorneys for Michael A. McConnell,
                         Chapter 11 Trustee

23

24  MAILING DATE: February _27,_ 2020

25

26

27

28

## APPLICATION

Michael A. McConnell, the Chapter 11 trustee (the "Trustee" or "applicant") for the estate of HVI Cat Canyon, Inc. (the "debtor"), hereby applies for authority to employ, under 11 U.S.C. § 327(a), TenOaks Energy Partners, LLC ("TenOaks") as his exclusive marketing agent and advisor in connection with the sale of the estate's oil and gas interests and related assets, and approve the proposed engagement agreement as follows:

### A.    The Bankruptcy Filing

On July 25, 2019 (the "Petition Date"), the debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The case was originally filed in the Southern District of New York. The case was transferred to the Northern District of Texas, and then later to the Central District of California.

The debtor initially operated its business as a "debtor in possession," allowing it to exercise substantially all rights of a trustee in the bankruptcy case. On or about October 16, 2019, the Court entered its *Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee*. On or about October 21, 2019, the U.S. Trustee appointed Michael A. McConnell as the Chapter 11 Trustee for the debtor's estate. On or about October 22, 2019, the Court entered an order approving the appointment of Michael A. McConnell as the Chapter 11 trustee in this case.

The debtor is a Colorado corporation authorized to conduct business in the State of California. It is the owner and operator of producing oil and gas interests in California. According to the debtor, it "owns an approximately 100% working interest and an average 85% net revenue interest in over 1,000 oil wells in the Santa Maria Valley of Santa Barbara County, North Belridge in Kern County, and Richfield East Dome Unit in Orange County."[1] The debtor employs approximately 50 individuals.

The assets of the estate include the debtor's oil and gas interests and related assets, including, without limitation, mineral rights, marketing agreements, contract rights, producing

---

[1] Docket no. 16, pp. 1-2, ¶ 2.

1  wells, permitted production facilities, pipelines, gathering systems, and processing and treatment

2  plants associated therewith (collectively, the "Properties").

3      As set forth below, by this application, applicant seeks to employ TenOaks as his exclusive

4  marketing agent and advisor in connection with the sale of the Properties.

5

6  **B.      The Proposed Engagement and Scope of Services**

7      Applicant believes it will be necessary, in his business judgment, to sell the Properties in

8  order to comply with and discharge his duties as trustee.  Applicant has determined that the best

9  way to market and sell the Properties is with the assistance of TenOaks, a firm with extensive

10  experience in the sale of oil and gas assets.  Its breadth of experience is described in its resume, a

11  copy of which is attached as Exhibit "1" to the Statement of Disinterestedness, filed with this

12  application and incorporated herein.

13      TenOaks was founded in in January 2015 to provide independent divestiture advisory

14  services to oil and gas companies in the upstream, midstream, and oil field services sector across the

15  continental United States. The principals of TenOaks have over 50 years of combined energy

16  investment and commercial banking experience and have closed over 100 transactions with

17  aggregate consideration exceeding $6 billion.  TenOaks has extensive experience selling and

18  marketing oil and gas assets and maintains a diverse contact database to ensure broad distribution to

19  the appropriate contacts of qualified buyers.  In addition, TenOaks provides a comprehensive online

20  data room that identifies, captures, and markets the upside story of an asset to ultimately maximize

21  value.

22      TenOaks will render services to applicant upon the terms set forth in this application and the

23  letter agreement attached as Exhibit "2" hereto and incorporated herein (the "Agreement").  Those

24  services include: acting as the exclusive agent for the Trustee with respect to the sale of the

25  Properties; advising and assisting the Trustee in developing a strategy for the sale of the Properties;

26  preparing marketing materials and electronic information in connection with the sale; assisting with

27  presentations to and negotiations with prospective purchasers; and rendering such other services

28  reasonably associated with the sale.

1577901.1  26932                                        4

1    Applicant seeks to employ TenOaks pursuant to 11 U.S.C. § 327, and approval of its

2    compensation and reimbursement of its expenses, as described below, pursuant to 11 U.S.C. § 328.

3

4    **C.    The Proposed Compensation**

5    Applicant proposes to compensate TenOaks on the terms set forth in the Agreement.

6    Without limiting the terms thereof, the Agreement provides that, in the event of a Court approved

7    closing of a sale/transaction and receipt by the Trustee of the consideration from such a

8    sale/transaction, TenOaks will receive a success fee.

9    The Agreement provides as follows with respect to the success fee (the definitions are as set

10    forth in the Agreement):

11        **Success Fee.** In the event the Trustee, or the Company
          (excluding UBS), enters into definitive documentation calling for one
12        or more Transactions during the Primary Term (hereinafter defined)
          or Tail (hereinafter defined) of this Agreement, then upon the closing
13        of, and the receipt of the Aggregate Consideration (hereinafter
          defined) payable pursuant to, each such Transaction, subject to
14        Bankruptcy Court approval of this Agreement, the Trustee will pay or
          cause Advisor to be paid a cash **"Success Fee."** The Success Fee for
15        the Transaction(s) will be equal to the greater of: (i) $400,000 (four
          hundred thousand dollars), the **"Minimum Success Floor"**), and (ii)
16        2.0% (two percent) of that portion of the Aggregate Consideration
          payable pursuant to the Transaction(s) that is up to and including
17        $40,000,000, 2.5% (two and one half percent) of that portion of the
          Aggregate Consideration payable pursuant to the Transaction(s) that
18        is greater than $40,000,000 but less than $60,000,000, or 3.0% (three
          percent) of that portion of the Aggregate Consideration payable
19        pursuant to the Transaction(s) that is greater than $60,000,000.

20    In addition to the success fees that may be payable to TenOaks under the Agreement, the

21    Agreement also provides that the Trustee will also pay TenOaks a fully-earned and non-refundable

22    upfront expense fee of $100,000 (one hundred thousand dollars) to cover any expenses incurred by

23    TenOaks in connection with its engagement and payable in four monthly $25,000 installments

24    beginning on the date of the Agreement and continuing in four consecutive months. Such expenses

25    shall not exceed $100,000 in the aggregate without the Trustee's prior written approval. The

26    current carve-out and cash-collateral budget approved by the Court on an interim basis includes

27    those installments. *See* Docket no. 799, Exhibit "2", line 32.

28

1    The Trustee, in his professional business judgment, believes that the success fee and expense

2  deposit requested by TenOaks are reasonable.

3

4  **D.    Disinterestedness**

5    As of the date of the application, to the best of applicant's knowledge and after

6  consideration of the disclosures in the attached Statement of Disinterestedness, applicant believes

7  that TenOaks and all of its partners, employees and/or associates are disinterested persons as that

8  term is defined in section 101(14) of the Bankruptcy Code, and neither TenOaks nor any partners,

9  employees or associates are connected with applicant, the debtor, debtor's creditors, any other party

10  in interest, their respective attorneys and accountants, or to this estate, and have no relation to any

11  bankruptcy judge presiding in this district, the Clerk of the Court or any relation to the United States

12  Trustee in this district, or any person employed at the Court or the Office of the United States

13  Trustee, nor does TenOaks represent or hold an adverse interest with respect to the debtor, any

14  creditor, or to this estate.

15    To check and clear conflicts, and in preparing the Statement of Disinterestedness, TenOaks

16  utilized a set of procedures that it has developed to ensure compliance with the requirements of the

17  Bankruptcy Code and the Bankruptcy Rules regarding the retention of professionals in chapter 11

18  cases.  TenOaks' conflicts check resulted in no conflicts that would prevent TenOaks from

19  operating as a "disinterested party" as defined in section 101(14) of the Bankruptcy Code.  If

20  TenOaks subsequently discovers information that requires disclosure of potential conflicts or

21  connections, TenOaks will file a supplemental disclosure with the Court.  Moreover, TenOaks has

22  not entered into any agreements to share compensation as may be awarded to it for services

23  rendered in this case, except as permitted under section 504(b) of the Bankruptcy Code.

24

25  **G.    Prayer**

26    WHEREFORE, applicant prays for entry of an order authorizing him to employ TenOaks, as

27  the Trustee's exclusive marketing agent and advisor in connection with the sale of the estate's oil

28  and gas interests and related assets under 11 U.S.C. §§ 327 and 328, approve the Agreement

1    attached as Exhibit "2" hereto, and for such other and further relief as may be determined just and

2    proper.

3

4    DATED: February 27, 2020

5                                                        MICHAEL A. MCCONNELL
6                                                        Chapter 11 Trustee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1577901.1  26932                              7

## STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT
## OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014

1.    Name, address and telephone number of the professional ("the Professional" or "the Firm") submitting this Statement:

       TenOaks Energy Partners, LLC ("TenOaks")
       14180 N. Dallas Parkway, Suite 700
       Dallas, Texas 75254
       Tel: 214-420-2320

    Attached hereto as Exhibit "1" and incorporated by reference herein, is a copy of the Firm's bio.

2.    The services to be rendered by the Professional in this case are (specify): See page 4 of the within the Application.

3.    The terms and source of the proposed compensation and reimbursement of the Professional are (specify): See page 5 of the within Application and Exhibit "2."

4.    The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Professional are (specify):

    The Trustee will pay TenOaks a fully-earned and non-refundable upfront expense fee of $100,000 (one hundred thousand dollars) to cover any expenses incurred by TenOaks in connection with its engagement and payable in four monthly $25,000 installments beginning on the date of the Agreement and continuing in four consecutive months.

5.    The investigation of disinterestedness made by the Professional prior to submitting this Statement consisted of (specify): Conflicts check of 20 largest creditors and parties who have appeared in the case.

6.    The following is a complete description of all of the Professional's connections with the debtor, principals of the debtor, insiders, the debtor's creditors, any other party or parties in interest, and their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee (specify, attaching extra pages as necessary):

    None

7.    The Professional is not a creditor, an equity security holder or an insider of the debtor, except as follows (specify, attaching extra pages as necessary):

    None

8.    The Professional is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the debtor.

9.    The Professional neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason, except as follows (specify, attaching extra pages as necessary):

    None.

10.    Name, address and telephone number of the person signing this Statement on behalf of the Professional and the relationship of such person to the Professional (specify):

Lindsay Sherrer, Partner
TenOaks Energy Partners, LLC
14180 N. Dallas Parkway, Suite 700
Dallas, Texas 75254
Tel: 214-420-2320

11.    The Professional is not a relative or employee of the United States Trustee or a Bankruptcy Judge, except as follows (specify, attaching extra pages as necessary):

None

12.    Total number of attached pages of supporting documentation: 9

13.    After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 6 through 11 are stated on information and belief.

Executed on February 27, 2020, at Dallas, Texas.


Lindsay Sherrer

# EXHIBIT "1"



**Overview:**

- TenOaks Energy Advisors, LLC ("TenOaks") was founded in January 2015 by **Lindsay Sherrer**, **Jason Webb**, and **B.J. Brandenberger**

- Superior Technical team led by **Jeevak Mattamana**, Partner of Engineering.

- Focused on providing energy companies with independent, best-in-class divestiture and advisory services

- **70 years** of combined energy investment banking and energy commercial banking experience

- Aggregate transaction experience exceeds **$7 billion across >120 asset divestiture / financial advisory transactions since 2008** (including time at Energy Spectrum) with multiple repeat clients and carefully plan each engagement

- Track record of operated conventional assets sales and consistently in market with deals gaining real time buyer knowledge

**Leadership Bios:**

- *Lindsay Sherrer* **– Partner**

  Lindsay has spent 18 years working in the oil and gas industry, including upstream energy, midstream, and oilfield service. He has originated and executed transactions for publicly-traded, sponsor-owned, and privately-owned middle market companies in a variety of U.S. oil and gas basins. Projects include acquisitions, divestitures, equity/debt financings, and production payments. Lindsay is a founding partner of TenOaks Energy Advisors, LLC (TenOaks). Prior to TenOaks, Lindsay served as a Senior Vice-President and Principal of Energy Spectrum Advisors (ESA) with a primary focus on upstream and oilfield services divestitures. Prior to ESA, Lindsay served as the head of the Oklahoma City Energy Banking Group for BOK Financial and served in various banking roles for both Tulsa and the Appalachian regions. Lindsay was a student-athlete at Oklahoma State University and earned his BS and MBA from the Spears School of Business and graduated as the top MBA student of the class of 2001. He holds the Series 24, 79, 62, and 63 licenses.

- *B.J. Brandenberger* **– Partner**

  BJ has spent 15 years working in oil and gas investment banking with a concentration on the upstream and midstream energy sectors. He has originated and/or executed over $4.5 billion in transactions for publicly-traded, sponsor-owned, and privately-owned lower middle market companies in a variety of U.S. oil and gas basins. BJ is a founding partner of TenOaks. Prior to TenOaks, BJ served as Vice President of Energy Spectrum Advisors with a primary focus on upstream and midstream acquisitions, divestitures, equity/debt financings, and valuation opinions. His A&D engagements have spanned the

U.S. and included operated, non-operated, royalty, and mineral divestitures.  In 2014, Mr. Brandenberger was recognized as one of the "Top 20 under 40 in A&D" by Oil & Gas Investor Magazine.  Mr. Brandenberger earned his BBA in Finance with high honors from the University of Texas in Arlington, where he also played NCAA Division I baseball.  Mr. Brandenberger is a member of various industry groups including the Dallas Wildcat Committee, Independent Petroleum Association of America, and the ADAM Energy Forum.  He holds the Series 24, 79 and 63 licenses.

- ▪ *Jason B. Webb* – **Partner**

  Jason has over 17 years as an advisor in oil and gas energy finance and investment banking, helping capitalize public and private oil & gas companies including upstream and midstream entities.  He has facilitated debt transactions for publicly-traded, sponsor-owned, and privately-held companies across multiple U.S. oil and gas basins. His A&D engagements have spanned the U.S. and included operated, non-operated, royalty, and mineral divestitures.  Jason is a founding partner of TenOaks.  Prior to TenOaks, he served as a Vice President of Energy Spectrum Advisors with a primary focus on upstream divestitures.  Prior to Energy Spectrum, Jason served in various energy banking roles with Bank of Oklahoma. Jason earned a B.S. in Finance from Oklahoma State University.  He is a member in IPAA and the ADAM Energy Forum and holds the Series 24, 79, 62, and 63 licenses.

- ▪ *Jeevak Mattamana* – **Partner, Engineering**

  Jeevak joined TenOaks in July of 2015. Prior to joining TenOaks, Jeevak worked for Apache Corporation dating back to 2007. Jeevak held multiple petroleum engineering roles within Apache including reservoir, production, and drilling engineering experiences in multiple basins. Most recently, Jeevak worked with Apache's Mid-Continent team generating conventional and unconventional prospects and analyzing acquisition targets in the Cherokee, Cottage Grove, Marmaton Lime, Tonkawa, and Woodford Shale formations. Prior to his work in Apache's Mid-Continent group, Jeevak was active in various groups including time in Midland working with the Apache Permian team where he drilled multiple wells and implemented various recompletion projects. Jeevak also worked in the Apache Corporate Engineering Group establishing reserve evaluations for internal budgeting, external auditing, and SEC reporting purposes. Jeevak earned a B.S. in Petroleum Engineering from the Colorado School of Mines.

- ▪ *David Carter* – **Managing Director (RedOaks)**

  David has spent 10 years working in the oil and gas industry primarily focusing on debt capitalization of oil and gas companies. David is the Managing Director of RedOaks Energy Advisors, LLC ("RedOaks"). Prior to joining RedOaks, he served as Senior Vice President – Energy Finance at LegacyTexas Bank ("LTB"). At LTB, he focused on facilitating debt financing for both E&P and midstream oil and gas companies. His clients included publicly traded and privately held organizations that covered multiple U.S. oil and gas basins. He earned a B.S. in Finance from the University of Oklahoma and a MS in Accounting from the University of Virginia.

EXHIBIT "2"



February 27, 2020

HVI Cat Canyon, Inc.
2601 Skyview Drive.
Santa Maria, CA 93455
Attention: Michael McConnell, Trustee

The purpose of this letter (including, without limitation, the exhibits and attachments hereto, collectively, this "**Agreement**") is to confirm the exclusive engagement of TenOaks Energy Partners, LLC ("**Advisor**") by Michael A. McConnell, solely in his capacity as the Chapter 11 trustee (the "**Trustee**") for HVI Cat Canyon, Inc., currently a debtor under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in In re HVI Cat Canyon, Inc. (individually, the "**Company**"), et al., Bankruptcy Case Number 9:19-bk-11573-MB, et seq. (the "**Bankruptcy Case**") pending in the United States Bankruptcy Court for the Central District of California (Northern Division) (the "**Bankruptcy Court**"), to assist in facilitating one or more transactions resulting in the direct or indirect sale or monetization of all or a portion of the Company's oil and gas interests and related assets (including, without limitation, leaseholds, marketing agreements, contract rights, producing wells, production facilities, pipelines, gathering systems, and processing and treatment plants associated therewith) described in **Exhibit A** to this Agreement (collectively, the "**Properties**") whether by sale, lease, farm out, joint venture, re-capitalization or any other transaction (excluding any abandonment of assets by the Trustee) (each such event being a "**Transaction**"). The parties acknowledge that the intent of this Agreement is to cover transactions involving a change in ownership of, or control over, the Properties or any part thereof or material interest therein, and the foregoing definitions shall be broadly construed consistent with this intent. Advisor and the Company may be referred to herein individually as a "**Party**" or collectively as the "**Parties.**"

1.      **Advisor Obligations, Nature of Services**. Advisor and the Company agree that Advisor shall perform the following transaction-related services (the "**Facilitating Services**") during the Primary Term (hereinafter defined) of this Agreement.

(a)      Advisor will serve as the exclusive agent to the Company for the Transaction(s).

(b)      Advisor will familiarize itself to the extent it deems appropriate and feasible with the Properties, it being understood that Advisor shall, in the course of such familiarization, rely entirely upon information supplied by the Company and its agents without independent investigation.

(c)      Advisor will advise and assist the Company in and developing a strategy for accomplishing the Transaction(s), including the possible terms and conditions of the Transaction(s).

(d)      Advisor will work with the Company to prepare marketing materials and electronic information, as necessary in connection with the Transaction(s) and Advisor's services. Before distribution to prospective counterparties, Advisor shall deliver or make available to the Company a copy of all marketing materials and other written information to be delivered or made available to prospective counterparties, with the expectation that the Company

will review such marketing materials and other information for accuracy and completeness and approve same for delivery to prospective counterparties.

        (e)     Advisor will make itself available to assist the Company in connection with the Company's presentations to and negotiations with prospective counterparties.

        (f)     Advisor will render such other services reasonably associated with the Transaction(s) as may from time to time be agreed upon by the Parties, subject to the remainder hereof.

       2.     **Nature of the Facilitating Services**. The Parties agree that in providing the Facilitating Services, Advisor is acting pursuant to a contractual relationship entered into on an arm's length basis and not as a fiduciary or financial advisor. In no event do the Parties intend for Advisor, in connection with the Facilitating Services or the Transaction(s), to act or be responsible as a fiduciary to the Trustee or any of its affiliates or any of their respective subsidiaries, owners, investors, creditors, officers, directors or employees with respect to any action taken before or after the date of this letter and Advisor disclaims any fiduciary or similar obligation to any such person in connection therewith. Any review by Advisor of information or transaction-related documentation, including information to be provided to third parties on behalf of the Trustee, shall be solely for the benefit of Advisor and shall not be on behalf of the Company or any third party. The Trustee shall be solely responsible for making his own independent judgments with respect to the Transaction(s) and the terms thereof in reliance upon its own legal counsel and/or other professionals other than Advisor. Without limiting the generality of the foregoing, Advisor is not advising the Trustee or any other person as to legal, accounting or regulatory matters in any jurisdiction, nor will it be responsible for due diligence for or providing factual bases for reliance by any person associated with the Transaction(s). The Facilitating Services are being provided to and for the exclusive benefit of the Company, and no benefit is intended to be conferred upon any third party.

       3.     **Certain Trustee Obligations**. The Trustee covenants as follows:

        (a)     It is understood that the Trustee is a third party fiduciary appointed to administer the affairs of the Company. The Trustee has limited personal knowledge of the Properties and obligations of the Company. Any sale will be (i) "as is" and "where is" with no representation or warrantee by the Trustee, unless expressly provided otherwise in a writing signed by the Trustee and approved by the Bankruptcy Court and (ii) conditioned on approval by the Bankruptcy Court and the Company's provider of post-petition financing. It is also understood that Michael A. McConnell is a party to this agreement solely in his capacity as trustee and not personally.

        (b)     The Trustee shall be responsible to the best of his information and belief, for assuring that oral and written information presented by the Trustee to Advisor or any prospective counterparty, including all marketing materials prepared by or with the assistance of Advisor, is complete and will not contain any untrue statement of a material fact or omit to state a material fact necessary to make such information not misleading.

        (c)     The Trustee shall assure to the best of his information and belief, that delivery of oral and written information by the Trustee to Advisor or any prospective counterparty, and any offering of securities utilized by the Trustee in connection with the Transaction(s), is in compliance with the Bankruptcy Code and the Company's contractual and legal obligations.

        (d)     The Trustee shall be responsible to the best of his information and belief, for updating, to the extent required by applicable law or contractual obligations, the oral and written

information regarding the Company or the Properties provided to prospective counterparties by the Trustee or Advisor.

(e)     The Trustee shall cooperate with Advisor in connection with Advisor's provision of the Facilitating Services, making its personnel, properties and information reasonably available. Without limiting the obligation of cooperation, the Trustee will refer any prospective counterparties to the Transaction(s) to Advisor and will not seek, directly or indirectly, to avoid its obligations under this Agreement.

(f)     The Trustee shall be responsible for providing a Purchase and Sale Agreement with appropriate completed exhibits in connection with any Transaction.

4.     **Success Fee.** In the event the Trustee, or the Company (excluding UBS), enters into definitive documentation calling for one or more Transactions during the Primary Term (hereinafter defined) or Tail (hereinafter defined) of this Agreement, then upon the closing of, and the receipt of the Aggregate Consideration (hereinafter defined) payable pursuant to, each such Transaction, subject to Bankruptcy Court approval of this Agreement, the Trustee will pay or cause Advisor to be paid a cash "**Success Fee.**" The Success Fee for the Transaction(s) will be equal to the greater of: (i) $400,000 (four hundred thousand dollars), the "**Minimum Success Floor**"), and (ii) 2.0% (two percent) of that portion of the Aggregate Consideration payable pursuant to the Transaction(s) that is up to and including $40,000,000, 2.5% (two and one half percent) of that portion of the Aggregate Consideration payable pursuant to the Transaction(s) that is greater than $40,000,000 but less than $60,000,000, or 3.0% (three percent) of that portion of the Aggregate Consideration payable pursuant to the Transaction(s) that is greater than $60,000,000.

(a)     If multiple Transactions are consummated or contracted for, subject to Bankruptcy Court approval of this Agreement, the Success Fee payable upon the closing of the first Transaction (and receipt of the Aggregate Consideration with respect to such Transaction) will be the greater of the Minimum Success Floor or the fee called for by clause (ii) above solely with respect to such Transaction. If the Minimum Success Floor has been paid to Advisor for the first closed Transaction and such Minimum Success Floor is in excess of the fee that would have been calculated in (ii) above, then the difference between the Minimum Success Floor and the fee that would have been calculated in (ii) above for the first Transaction will be applied as a credit against the Success Fee(s) due for subsequently closed Transactions until fully applied. For the purposes of clarity, the Success Fee for all Transactions resulting in a Success Fee under this Agreement shall be the amount calculated in the preceding paragraph, as if the Aggregate Consideration in each Transaction were aggregated and all such Transactions treated as a single transaction.

(b)     Each Success Fee is calculated and due and payable in cash to Advisor, subject to Bankruptcy Court approval of this Agreement, upon the Trustee's receipt of consideration or proceeds actually received, in connection with the Transaction(s).  Success Fees shall be paid by wire transfer to Advisor in accordance with its written instructions to the Trustee.

(c)     For the purpose of calculating the Success Fee, the term "**Aggregate Consideration**" from a Transaction shall be defined as the total valuable consideration received by the Company, directly or indirectly (including payments made to equity interest holders or the payment or the assumption or satisfaction of obligations to third parties), in connection with a closed Transaction. Such "Aggregate Consideration" received from the counterparty is expected to be more completely defined in the purchase and sale agreement or other definitive agreement executed by the Company and the counterparty for a Transaction (the "**Purchase and Sale Agreement**"). The Parties agree that Aggregate Consideration shall include all consideration paid or received at, or to be paid or received after closing, in connection with a Transaction, including, without limitation (and without any duplication), cash, notes, securities, properties-related debt paid or assumed by the counterparty, reimbursement of capital expenditures, and other property received or to be

received by the Company; deferred non-contingent payments, such as installment payments; contingent payments or amounts paid into escrow, which shall be deemed paid or received only when actually received by the Company.

(d)    For the purpose of calculating the consideration received or receivable in connection with a Transaction, noncash consideration shall be valued as set forth in, or determined in accordance with, the Purchase and Sale Agreement under which the Transaction is effected; except that only to the extent that the value of non-cash consideration is not addressed in any such definitive agreement, then any securities will be valued at the time of the closing of the Transaction (without regard to any restrictions on transferability) as follows: (i) if such securities are traded on a stock exchange, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the closing of the Transaction; (ii) if such securities are traded primarily in over-the-counter markets, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the closing of the Transaction; and (iii) if such securities have not been traded prior to the closing of the Transaction, such securities shall be valued at the fair market value thereof on the date of the closing of the Transaction in question as determined in good faith by the Trustee.

(e)    If UBS or its successor shall make a successful credit bid for all or substantially all the assets of the Company, or shall determine to recapitalize the Company as declared by UBS and the Trustee, then Advisor shall receive the Minimum Success Floor in full satisfaction of all claims hereunder.

5.    **Expenses.** In addition to any Success Fees that may be payable to Advisor under Section 4 above, subject to Bankruptcy Court approval of this Agreement, the Trustee agrees to pay Advisor a fully-earned and non-refundable upfront expense fee of $100,000 (one hundred thousand dollars) to cover any expenses incurred by Advisor in connection with its engagement hereunder and payable in four monthly $25,000 installments beginning on the date of this Agreement and continuing in four consecutive months. Such expenses shall not exceed $100,000 in the aggregate without the Trustee's prior written approval.

6.    **Termination of Engagement.** The term of this Agreement shall commence as of the date hereof and shall terminate on December 31, 2020 ("Primary Term"), provided that the Trustee shall pay a Success Fee to Advisor in accordance with the provisions of Section 4 hereof for Transaction(s) entered into or consummated during the twelve-month (12) period following the Primary Term (the "Tail") with any person/entity contacted by Advisor or the Trustee, or any person/entity who contacted Advisor or the Trustee during the Primary Term of this Agreement, provided further that if the Advisor has been paid the Minimum Success Floor with respect to a credit bid or recapitalization then the term of this Agreement shall terminate immediately and there shall be no Tail. At the end of the Primary Term, Advisor shall provide to the Company a list identifying any person/entity contacted by Advisor or the Trustee, or who contacted Advisor or the Trustee for the purpose of facilitating a Transaction within the scope of this Agreement. The provisions of Sections 3 through 5 shall survive any termination of this Agreement.

7.    **Competing Clients.** The Trustee recognizes and agrees that Advisor has in the past and can be expected in the future to provide services, including services substantially similar to the Facilitation Services, to third parties with respect to properties in the geographic vicinity of the Properties. Advisor agrees to disclose in writing all such current efforts in the same geographic vicinity of the Properties and to obtain the Trustee's written consent of any such future proposed engagement.

8.    **Authority, No Breach.** Each of the Parties represents and warrants to the other that its execution, delivery and performance of this Agreement have been duly and validly authorized

and do not and will not solely as a result of the passage of time constitute a breach under any material agreement or obligation to which the Company or the Properties are bound or subject; provided that, in the case, of the Company, the effectiveness of this agreement is subject to the entry of an order of the Bankruptcy Court approving the retention of Advisor, this Agreement and its terms.

9.      **Bankruptcy Approvals**.  The Trustee agrees that he will, at the Company's sole and exclusive cost and expense, seek and obtain entry of a final, non-appealable order approving the retention of Advisor under the terms and conditions of this Agreement (including, without limitation, approval of the Success Fee) from the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code. Such retention shall be prior to the consummation of any Transaction. The Trustee shall seek authorization to compensate Advisor as provided in this Agreement, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable orders of this Court, but if possible, (a) Advisor shall be compensated and reimbursed pursuant to Bankruptcy Code section 328(a) and such compensation not to be evaluated under the standard set forth in Section 330 of the Bankruptcy Code, except as required by the Bankruptcy Court, and (b) none of the fees payable to Advisor should constitute a "bonus" or fee enhancement under applicable law.

10.     **Bankruptcy Plan and/or Order Approving a Transaction**.  The Trustee shall include in any plan and confirmation order of such plan proposed by the Trustee or that receives the support of the Trustee and/or the Company in connection with a Chapter 11 proceeding, and use his best efforts to ensure confirmation and entry of such plan and confirmation order, provisions whereby Advisor is treated as a "released party" and an "exculpated party" thereunder to the extent that such parties receive, under such plan and confirmation order, the benefits of any and all plan releases and injunctions, as well as the benefit of the following, or a substantially similar, language to be included in an exculpation provision: "[e]xculpation. The Released Parties or shall have no liability whatsoever to any holder or purported holder of an administrative claim, claim, or interest for any act or omission in connection with, or arising out of, the formulation, negotiation, preparation, dissemination, implementation, confirmation or consummation of the chapter 11 case, the plan, the disclosure statement, and the other agreements or documents created or entered into, or any other action taken or omitted to be taken in connection with or related to the Plan, the pursuit of approval of the disclosure statement or the solicitation of votes for confirmation of the plan and the marketing, sale and/or disposition of assets during the pendency of the chapter 11 case, except for willful misconduct or gross negligence as determined by a final order, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such released parties from liability." Moreover, any order approving a Transaction shall similarly contain provisions whereby Advisor is afforded releases thereunder, in addition to receiving the benefits of any and all plan releases and injunctions as required above.

11.     **Rejection of Agreement**.  In the event that the Agreement is subsequently rejected pursuant to Section 365 of the Bankruptcy Code, subject to Bankruptcy Court approval of this Agreement, the Parties stipulate that Advisor shall be entitled to full payment of each Success Fee as set forth in paragraph 4(b) above, and that the Advisor shall be released from any further obligations under this Agreement.

12.     **Choice of Law, Jurisdiction and Venue**.  This Agreement has been negotiated, is being executed in whole or in part and delivered, and will be performed in whole or in part, in the state of California and the substantive laws of such state, without regard to conflicts of laws principles that would require the application of any other law, shall govern the validity, construction, enforcement and interpretation of this Agreement. The Parties hereby irrevocably submit to the non-exclusive jurisdiction of the Bankruptcy Court in any action or proceeding arising out of or relating to this Agreement and the Company hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in any such court and irrevocably waives any objection it may now or hereafter have as to the venue of any such suit, action or proceeding brought in such a court or that such court is an inconvenient forum.

13.    **Assignment**. The services to be rendered by Advisor hereunder are personal to the Trustee. The Trustee may not assign any of its respective rights or obligations under this Agreement without the prior written consent of Advisor, which consent may be withheld for any reason or no reason. Advisor may not assign any of its respective rights or obligations under this Agreement without the prior written consent of the Trustee, which consent may be withheld for any reason or no reason. Subject to the preceding sentence, this Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and permitted assigns of the Parties.

14.    **Amendments**. This Agreement may not be amended or modified except by a written agreement executed by the Parties and approved by the Bankruptcy Court, and specifically referencing the provisions hereof to be so amended or modified.

If the foregoing is in accordance with the Trustee's understanding, kindly confirm the acceptance and agreement by signing and returning the enclosed duplicate of this letter, and it will thereupon constitute a binding agreement between the undersigned parties. This Agreement is intended to be executed in multiple counterparts and delivered by facsimile or electronic transmission. When accepted, this Agreement shall be deemed effective as of the date set forth above.

Very truly yours,

**TenOaks Energy Partners, LLC**


By: Lindsay Sherrer
Title: Partner




ACCEPTED AND AGREED:

**HVI Cat Canyon, Inc.**




By: Michael McConnell
Title: Trustee

EXHIBIT A
DESCRIPTION OF PROPERTIES



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 11 TRUSTEE'S NOTICE OF APPLICATION AND APPLICATION TO EMPLOY BUYNAK, FAUVER, ARCHIBALD & SPRAY, LLP AS SPECIAL ENVIRONMENTAL COUNSEL; AND STATEMENT OF DISINTERESTEDNESS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 27, 2020 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**: On February 27, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
HVI Cat Canyon, Inc.
c/o Capitol Corporate Services, Inc.
36 S. 18th Avenue, Suite D
Brighton, CO 80601

Debtor
HVI Cat Canyon, Inc.
630 Fifth Avenue
Suite 2410
New York, NY 10111

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 27, 2020 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Served by Personal Delivery to be delivered by February 28, 2020
The Honorable Martin R. Barash
U.S. Bankruptcy Court
21041 Burbank Boulevard, Bin on 1st Floor outside entry to Intake Section
Woodland Hills, CA 91367

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| February 27, 2020 | Vivian Servin | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION** (if needed):

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **William C Beall**   will@beallandburkhardt.com, carissa@beallandburkhardt.com
- **Alicia Clough**   aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com
- **Marc S Cohen**   mscohen@loeb.com, klyles@loeb.com
- **Alec S DiMario**   alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com
- **Karl J Fingerhood**   karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- **H Alexander Fisch**   Alex.Fisch@doj.ca.gov
- **Don Fisher**   dfisher@ptwww.com, tblack@ptwww.com
- **Brian D Fittipaldi**   brian.fittipaldi@usdoj.gov
- **Gisele M Goetz**   gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu
- **Karen L Grant**   kgrant@silcom.com
- **Ira S Greene**   Ira.Greene@lockelord.com
- **Matthew C. Heyn**   Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- **Brian L Holman**   b.holman@musickpeeler.com
- **Eric P Israel**   eisrael@dgdk.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Razmig Izakelian**   razmigizakelian@quinnemanuel.com
- **Alan H Katz**   akatz@lockelord.com
- **John C Keith**   john.keith@doj.ca.gov
- **Jeannie Kim**   jkim@friedmanspring.com
- **Brian M Metcalf**   bmetcalf@omm.com
- **David L Osias**   dosias@allenmatkins.com,
  bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com
- **Darren L Patrick**   dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com
- **Jeffrey N Pomerantz**   jpomerantz@pszjlaw.com
- **Todd C. Ringstad**   becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Mitchell E Rishe**   mitchell.rishe@doj.ca.gov
- **Daniel A Solitro**   dsolitro@lockelord.com, ataylor2@lockelord.com
- **Ross Spence**   ross@snowspencelaw.com,
  janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com
- **Christopher D Sullivan**   csullivan@diamondmccarthy.com,
  mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Jennifer Taylor**    jtaylor@omm.com

- **John N Tedford**    jtedford@dgdk.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

- **Salina R Thomas**    bankruptcy@co.kern.ca.us

- **Patricia B Tomasco**    pattytomasco@quinnemanuel.com,
  barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com

- **Fred Whitaker**    lshertzer@cwlawyers.com

- **William E. Winfield**    wwinfield@calattys.com, scuevas@calattys.com

- **Emily Young**    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

## 2. SERVED BY UNITED STATES MAIL:

## 20 LARGEST CREDITORS

| | | |
|---|---|---|
| Santa Barbara County Treasurer-Tax Collector<br>105 E. Anapamu St., Suite 109<br>Santa Barbara, CA 93102 | Allen Matkins Leck Gamble<br>865 South Figueroa Street<br>Suite 800<br>Los Angeles, CA 90017-2543 | Diamond McCarthy LLP<br>909 Fannin Street<br>37th Floor Two Houston Center<br>Houston, Texas 77010 |
| Santa Barbara County-APCD<br>260 NORTH SAN ANTONIO RD.,<br>SANTA BARBARA, CA 93110 | Akin Gump Straus Hauer & Feld<br>1999 Avenue of the Stars<br>Suite 600<br>Los Angeles, CA 90067 | Santa Barbara County P&D<br>123 East Anapamu Street<br>Santa Barbara, CA 93101 |
| W. J. Kenny Corp.<br>C/O Allfirst Bankcorp Trust do M&T Bank<br>One M&T Plaza<br>Buffalo, NY 14203 | PG&E<br>77 Beale St<br>San Francisco, CA 94177 | Ann Jenny Schupp<br>CIO M H Whittier Corp.<br>1600 Huntington Drive<br>South Pasadena, CA 91030 |
| William W. Jenny Jr.<br>5101 East Camino Alisa<br>Tucson, AZ 85718 | J. P. Morgan-Chase<br>Attn: Michael Kemey<br>450 West 33rd Street, 15th Floor<br>Ref: 030057 Nassau Assoc-Saba<br>New York, NY 10041 | WEST COAST WELDING &<br>CONSTR. I<br>2201 Celsius Avenue Suite B<br>Oxnard, CA 93030 |
| Sherrill A. Schoepe<br>14974 Adams Dr.<br>Pauma Valley, CA 92061 | Andrew Kurth LLP<br>600 Travis Suite 4200<br>Houston, TX 77002 | Larsen O'Brien LLP<br>555 South Flower<br>Suite 4400<br>Los Angeles, CA 90071 |
| Victory Oil<br>222 West 6th Street. Suite 1010<br>San Pedro, CA 90731 | California Department of Conservation<br>801 K Street<br>Sacramento, CA 95814 | Diane T. Walker<br>748 Oceanville Road<br>Stonington, ME 04681-9714 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

Stoner Family Trust
James G. Sanford Trustee
100 West Liberty Street. Suite 900
Reno, NV 89501

Charles C. Albright Trustee
729 West 16th Street #B8
Costa Mesa, CA 92627

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Brian Corson
2990 Lichen Place
Templeton, CA 93465

Escolle Tenants in Common
215 N. Lincoln Street
Santa Maria, CA 93458
Attn: Vincent T. Martinez

Pacific Petroleum California, Inc.
POB 2646
Santa Maria, CA 93457

## REQUESTS FOR SPECIAL NOTICE

Attorneys for Buganko
Philip W. Ganong
Ganong Law
930 Trustun Avenue, Suite 102
Bakersfield, CA 93301

Attorneys for Eller Family Trust
Cummins & White, LLP
Attn: Fred M. Whitaker, P.C.
Ashley Bolduc
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660

William Winfield
Nelson Comis Kettle & Kinney LLP
300 e. Esplanade Drive, Suite 1170
Oxnard, CA 93036

Frank and Sylvia Boisseranc
300 W. Paseo de Cristobal
San Clemente, CA 92672

Rob Thomson
1920 Wilbur Avenue
San Diego, CA 92109

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.