1  O'MELVENY & MYERS LLP
   Evan M. Jones (S.B. # 115827)
2  Brian M. Metcalf (S.B. # 205809)
   400 South Hope Street, 18th Floor
3  Los Angeles, CA 90071-2899
   Telephone: (213) 430-6000
4  Facsimile: (213) 430-6407
   E-mail: ejones@omm.com
5  E-mail: bmetcalf@omm.com

6  Samantha M. Indelicato (N.Y. SBN: 5598263)
   (appearing *pro hac vice*)
7  Seven Times Square
   New York, NY 10036
8  Telephone: (212) 326-2000
   Facsimile: (212) 326-2061
9  E-mail: sindelicato@omm.com

10 *Attorneys for UBS AG, London Branch*
   *and UBS AG, Stamford Branch*
11

12         **UNITED STATES BANKRUPTCY COURT FOR**

13    **THE CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

14

15 | In re:                | Case No. 9:19-bk-11573-MB |

16 | HVI CAT CANYON INC.,  | Chapter 11 |

17 |          Debtor.      | **REPLY OF UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO AND REQUEST FOR HEARING TO MODIFY CHAPTER 11 TRUSTEE'S FIFTH AMENDMENT TO CREDIT AGREEMENT** |

18

19

20

21

22 | | <u>Requested Hearing</u>
   Date:   April 17, 2020 |

23 | | Time:   10:00 a.m.
   Place:  Courtroom 201 |

24 | |          1415 State Street
           Santa Barbara, California 93101 |

25

26

27

28

OMM_US:77593458.4

The Objection[1] to the Fifth Credit Agreement reflects a misunderstanding concerning the amount that has been carved out for Committee counsel fees for March 2020. At a hearing on the prior Fourth Amendment, the Court specifically ordered that the budget filed with the motion be revised; "[t]he Budget amount for the Committee's professionals shall be $35,000 for February 2020 and $35,000 for March 2020 and shall be requested promptly by the Trustee and escrowed immediately upon receipt."[2] Because that full amount was already provided for the entire month of March -- indeed prepaid -- the New Budget attached to the Fifth Amendment which addressed only the last week of March and the first week of April did not reflect additional carveout for the Committee during the single week in April covered by the New Budget. When counsel for the Committee protested in correspondence with counsel for the Trustee and UBS that the New Budget did not reflect payment to the Committee in March, counsel for UBS advised that he understood the Trustee to have complied with the Order; i.e. the Committee was already "prepaid" the full $35,000 for March. Because UBS' counsel had no personal knowledge that the funds were in fact held by the Trustee in escrow, he asked that counsel for the Trustee so confirm. Without waiting for that confirmation, the Committee filed its Objection.[3] UBS is in fact now informed by the Trustee's professionals that the Chapter 11 Trustee has followed the Court's directive and escrowed $35,000 for Committee counsel fees for March 2020. Consequently, the Committee already has in escrow more than it now acknowledges is appropriate for the month of March.

Of course, the Fifth Amendment does cover the first week in April, and in the event UBS agrees to continue financing this case in April the appropriate carveout for the Committee in April will come before this Court. Accordingly, some guidance from the Court may be appropriate. The Trustee will presumably address detailed circumstances of the Estate in the manner appropriate to the Estate's interests, but the Court can take judicial notice of several key points. Since the Fourth Amendment was approved -- and the $35,000 carveout for the Committee set -- the Trustee was

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Notice of Objection to and Request for Hearing to Modify Chapter 11 Trustee's Fifth Amendment to Credit Agreement and Budget Amendment* [Docket No. 919] (the "Objection").

[2]   *Interim Order Approving Fourth Amendment to the Credit Agreement* [Docket No. 846] at ¶ 8.

[3]   Curiously, the Committee does not attach the exchanges -- which were all in email -- to its Objection. UBS assumes this is because they included discussion of the Estate's business operations that are inappropriate for public discussion and accordingly does not object to the Committee paraphrasing the discussion.

2

ordered to shut down all of his drilling and production operations by state regulators.  Although some of the Debtor's crude production has returned, much remains offline.  Following on that, California and the world are suffering the COVID-19 pandemic, with nearly every state under some form of shelter in place order.  The worldwide demand for oil has been decimated overnight, and a price war between OPEC and Russia furthered the crisis.  As a result, the Midway Sunset pricing index on which the Trustee sells what he produces has suffered a catastrophic decline of over 50% since the beginning of 2020.  A chart showing that decline is attached as Exhibit A.  Oil and gas producers nationwide find buyers unwilling to take their product at any price, and are widely being forced to completely shut-in production.[4]  UBS is informed and believes that the Trustee's buyer for spot-sales has indicated it will suspend all purchases beginning in May.  And as a result of these combined unprecedented changes, some Chapter 11 cases are being formally suspended pursuant to Section 305 of the Bankruptcy Code to await what the "new normal" will be.[5]  Other cases have converted to Chapter 7 in the best interest of creditors.  And, of course, the Trustee's covenant to begin cash flow neutral operations in April is now but a fond dream.  Yet, the Trustee still holds valuable assets he must manage and ultimately liquidate.  UBS understands the Trustee to be weighing all these facts and options, and UBS and the Trustee are in ongoing and frequent discussions.  While there is no motion before the Court to approve any of these drastic steps, nor can one ignore these dramatic issues.

In its Objection, the Committee acknowledges that it is appropriate to reduce its March set-aside to $25,000.  UBS applauds that acknowledgment.  As $35,000 was already reserved and set-aside for the Committee for March, this leaves the Committee with $10,000 to carry-over into April.  UBS submits that under the extraordinary circumstances this is sufficient.  The Court will recall that when the Trustee was appointed, the State of California argued there was no proper need for Committee counsel.  UBS came to their defense, argued that there is a role -- albeit narrower -- for their participation.  Yet all agreed the Committee should not run amuck.  Since then, the Committee

---

4    See https://www.wsj.com/articles/north-americas-oil-industry-is-shutting-off-the-spigot-11586770200?mod=hp_lead_pos5. A copy of this article is attached as Exhibit B.

5    See, e.g., Order Temporarily Suspending the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305, In re Modell's Sporting Goods, Inc., Case No. 20-14179 (VFP) (Bankr. D.N.J. Mar. 27, 2020), ECF No. 166. A copy of this order is attached as Exhibit C.

1    has properly confined its activities.  The only Committee appearance since approval of the Trustee

2    financing has been on the question of counsel carve-outs.  The investigation of UBS' liens which

3    the Committee insisted would cost $50,000 came in approximately one quarter that amount.  The

4    actual monthly fees in 2020 have been approximately $25,000, $20,000 and $10,000 through

5    March.  To be clear, the Committee's economy and its recognition of its reduced role are to be

6    commended.  But, where the Trustee faces the disaster before him, it is inappropriate to demand

7    that more than $10,000 be reserved for Committee fees in the month of April.  While the Court has

8    made clear -- as the Committee puts it -- that UBS must "carry the freight" for the Chapter 11,

9    reasonable people may disagree what the appropriate freight is at this extraordinary moment.  UBS

10    respectfully submits that rolling over the $10,000 excess in March for the Committee's set-aside in

11    April is sufficient under the circumstances, and asks the Court to overrule the Objection.

12

13         Dated:   April 15, 2020

14                                   EVAN M. JONES
                                     BRIAN M. METCALF

15                                    SAMANTHA INDELICATO
                                   O'MELVENY & MYERS LLP

16

17                                    By:    /s/ Brian M. Metcalf

18                                                Brian M. Metcalf

19                                   *Attorneys for UBS AG, London Branch*
                                  *and UBS AG, Stamford Branch*

20

21

22

23

24

25

26

27

28

OMM_US:77593458.4

# EXHIBIT A



# EXHIBIT B

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/north-americas-oil-industry-is-shutting-off-the-spigot-11586770200

OIL MARKETS

# North America's Oil Industry Is Shutting Off the Spigot

Energy producers are resorting to the desperate measure of shutting in productive oil wells

*By [Ryan Dezember](#) and [Vipal Monga](#)*

Updated April 13, 2020 5:31 pm ET

President Trump promised the U.S. would curtail oil output in a pact with major producers over the weekend. There isn't much for him to do: The dismal economics and strained physics of the oil market are causing U.S. producers to shut down themselves.

Canceled orders were mounting amid the sharp drop in fuel demand when Texland Petroleum LP decided to shut in each of its 1,211 oil wells and cease production by May.

"We've never done this before," said Jim Wilkes, president of the 7,000-barrel-a-day Fort Worth, Texas, firm, which has weathered oil busts since 1973. "We've always been able to sell the oil, even at a crappy price."

Despite the agreement between Mr. Trump, Saudi Arabia and Russia aimed at buoying prices, West Texas Intermediate, the main U.S. price gauge, closed Monday 1.5% lower at $22.41 a barrel.

The U.S. benchmark is down 63% this year and prices have been even worse in Midland, Texas, where a lot of oil extracted from the Permian Basin is priced, and in western Canada, from which most of the country's output comes. Oil has traded below $10 a barrel in both markets.

For Texland, low prices and balking buyers gave it no choice but to shut in its wells. The company told state regulators its plans and applied for a loan through the Small Business Administration's Paycheck Protection Program to keep its 73 employees on payroll.

From the West Texas desert, where oil is blasted from deep shale formations, to the wilds of western Canada, where multibillion-dollar steam plants bubble thick crude from the earth's crust, energy producers are resorting to the desperate measure of shutting in productive wells.

SHARE YOUR THOUGHTS

*How do you think the North American oil industry will recover? Join the conversation below.*

The sharp drop in fuel consumption caused by the coronavirus pandemic and exacerbated by the feud between the world's largest producers has limited options for North American oil companies. Pipelines, refiners and storage facilities are filling up. Even when there is somewhere to send oil, low prices mean that many barrels lose money.

Since mid-March, producers ranging from Exxon Mobil Corp. and Royal Dutch Shell PLC to Oklahoma City's Devon Energy Corp. and Cenovus Energy Inc. of Calgary, Alberta, collectively have announced spending cuts totaling some $50 billion.

The number of rigs drilling in the U.S. has fallen to about 600, down from nearly 800 a month ago, according to Baker Hughes Co. Drilling is always down in Canada this time of year, when the spring thaw hinders accessibility, but the 35 rigs operating there are the fewest Baker Hughes has ever counted.

Baker Hughes said Monday that it would cut spending and approved a restructuring plan that would cut earnings by $1.5 billion in the first quarter. The company also took a $15 billion write down due to reduced business activity.

It can take months for the flow from new wells to taper off, so production has only begun to reflect the austerity. U.S. production has declined about 5% from March's record levels, according to the Energy Information Administration.

The drop in demand has been steeper, with factories idled, flights grounded and billions of people around the world under stay-at-home orders to fight the spread of the deadly virus. Analysts forecast oil consumption declining by at least 20 million barrels a day, representing roughly 20% of global demand.

Daily consumption of petroleum products in the U.S. fell 19% during the week ended April 3 to what is at least a 30-year low, the EIA said. Domestic crude inventories swelled by the biggest weekly increase on record.

At that rate, the world would run out of places to put oil within about 60 days, analysts with Houston's Simmons Energy estimate. Some analysts think the world's storage caverns, tank farms, pipelines, refineries and ships will fill even faster.

Alberta's energy minister, Sonya Savage, said Sunday's pact by major producers could slow the march to an eventual topping out of storage tanks, which are close to full in Canada. "It's getting close," she said, adding that the status quo that existed before these talks was "unsustainable."

Canada has room for fewer than four days' worth of production, energy data provider Genscape Inc. estimates. In the U.S., there is much more storage capacity, but it isn't evenly available to producers.

A refiner teeming with, say, jet fuel, may not be able to take in more crude from its suppliers even if there is demand for other products, like diesel. Backed-up pipelines could strand barrels.

"We've been told by two of my markets they won't take my production in May because there's nowhere to put it," said Russell Gordy, a Texas oilman with wells in his home state, Colorado, Wyoming and the Gulf of Mexico. "We won't have to shut in everything, but we'll have to shut in most of our production."

Larger companies are shutting in wells too. Continental Resources Inc., which drills in Oklahoma and North Dakota, said it would reduce output in April and May by about 30%. In West Texas, Parsley Energy Inc. has shut in about 150 older wells that together produced about 400 barrels a day, and were no longer worth the expense of powering the equipment inside, daily maintenance and paying out royalties, said Chief Executive Matt Gallagher.

Output from newer shale wells can be reduced without shutting them in entirely. But those big wells, with horizontal bores that stretch for miles, usually produce oil at the lowest costs, which makes choking them back unappetizing to producers scratching for every penny.

Canadian producers have eliminated roughly 325,000 barrels of daily output, according to consulting firm Rystad Energy, which predicts ultimate declines of about 1 million barrels, or nearly 25%. Suncor Energy Inc. has shut down one of two production lines at its 200,000-barrel-a-day Fort Hills oil sands mine in northern Alberta. Others have capped smaller wells.

"We have small companies that have shut every drop in," said Kent McDougall, chief commercial officer at Alberta oil trucker Torq Energy Logistics.

RELATED

- [U.S., Saudis, Russia Agree to Cut Output](#)

- [Trump: OPEC Is Looking to Cut by 20 Million Barrels a Day](#)

- [U.S. Stocks Slide, Oil Falters](#)

- [Heard on the Street: The Art of the Oil Deal](#)

- [Baker Hughes Pursues Restructuring Plan](#)

Producers are doing so without knowing what will happen when they try to resume production.

Canadian crude is often called bitumen, which is as thick as peanut butter unless it is heated. Producers shovel up reserves close to the surface, but deeper deposits are coaxed out by injecting steam underground. Shutting down such operations is risky and expensive. Restarting them is touchy. It can take a long time to warm up the wells to resume flow, and there's no guarantee they will be as productive.

In the U.S., the risks usually have to do with water. It can flood reservoirs, alter pressure and, since deep groundwater is salty, corrode components downhole.

That is what worries Texland's Mr. Wilkes. The company has no experience restarting its wells and he can only guess what problems might arise once the artificial lift systems in its wells are powered down.

"Some wells may take time to recover to their previous production rate," he said. "Some may never recover."

**Write to** Ryan Dezember at [ryan.dezember@wsj.com](mailto:ryan.dezember@wsj.com) and Vipal Monga at [vipal.monga@wsj.com](mailto:vipal.monga@wsj.com)

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

# EXHIBIT C

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
msirota@coleschotz.com
David M. Bass, Esq.
dbass@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile

*Proposed Attorneys for Debtors in Possession*

In RE:

MODELL'S SPORTING GOODS, INC., *et al.,*

Debtors.[1]

**Order Filed on March 27, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

Chapter 11
Case No. 20-14179 (VFP)
Jointly Administered
**Hearing Date and Time:**
March 25, 2020, at 3:00 p.m. (ET)

## ORDER TEMPORARILY SUSPENDING THE DEBTORS'
## CHAPTER 11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

The relief set forth on the following pages, numbered two (2) through eight (8), is hereby **ORDERED**.

**DATED: March 27, 2020**

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Modell's Sporting Goods, Inc. (9418), Modell's II, Inc. (9422), Modell's NY II, Inc. (9434), Modell's NJ II, Inc. (9438), Modell's PA II, Inc. (9426), Modell's Maryland II, Inc. (9437), Modell's VA II, Inc. (9428), Modell's DE II, Inc. (9423), Modell's DC II, Inc. (9417), Modell's CT II, Inc. (7556), MSG Licensing, Inc. (8971), Modell's NH, Inc. (4219), Modell's Massachusetts, Inc. (6965) and Modell's Online, Inc. (2893). The Debtors' corporate headquarters is located at 498 Seventh Avenue, 20th Floor, New York, New York 10018.

Page (2)
Debtors:                    MODELL'S SPORTING GOODS, INC., *et al.*
Case No.                    20-14179 (VFP)
Caption of Order:           ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                            11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

Upon the verified application (the "**Application**")[2] of Modell's Sporting Goods, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105 and 305 of the Bankruptcy Code and Bankruptcy Rule 1017 for entry of an order approving the Bankruptcy Suspension, as more fully set forth in the Application; and the Court having jurisdiction to decide the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been given as provided in the Application, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Application need be provided; and the Court having held a hearing (the "**Hearing**") to consider the relief requested; and upon the *Declaration of Robert J. Duffy in Support of Debtors' Chapter 11 Petitions and First Day Pleadings*, the records of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application and granted herein is in the best interests of the Debtors and their creditors, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

-2-

Page (3)
Debtors:             MODELL'S SPORTING GOODS, INC., *et al.*
Case No.             20-14179 (VFP)
Caption of Order:    ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                     11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

### IT IS HEREBY ORDERED THAT:

1.      The Application is **GRANTED** as set forth herein.

2.      The Bankruptcy Suspension, including the Operational Suspension, is hereby authorized and the Debtors' chapter 11 cases are hereby suspended through and including April 30, 2020 (the "**Suspension Period**"), pursuant to 11 U.S.C. §§ 305 and 105, without prejudice to the Debtors' right to seek, on shortened notice, a further extension by further Order of this Court. A hearing shall be conducted on April 30, 2020 at 10:00 a.m. to consider, among other things, a further extension of the Bankruptcy Suspension or alternative orders for relief as the Court deems just. Any requests for alternative relief or objections to a further extension of the Suspension Period shall be filed on or before April 24, 2020 at 5:00 p.m. and any responses thereto shall be filed on or before April 28, 2020 at 5:00 p.m. Specifically:

    a.      The Debtors are authorized to implement the Operational Suspension. To the extent any of the terms of the Operational Suspension or any action taken by the Debtors in order to effectuate same conflict with relief previously ordered by the Court or their duties as debtors in possession, this Order shall govern.

    b.      All deadlines that would otherwise occur during the Bankruptcy Suspension are hereby extended until further notice, as set forth in more detail in paragraph 5 below and the discussions on the record before the Court. All parties shall be permitted to seek relief from this Court with respect to exigent and unforeseen circumstances not otherwise inconsistent with this Order and which the Debtors (in consultation with the pre-petition lenders and the official committee of unsecured creditors (the "**Committee**")) and such parties are unable to resolve consensually.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

Page (4)

| | |
|---|---|
| Debtors: | MODELL'S SPORTING GOODS, INC., *et al*. |
| Case No. | 20-14179 (VFP) |
| Caption of Order: | ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER 11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305 |

Based on the Court's assessment of exigency, the Court will make itself available in its own discretion and as circumstances may permit or warrant. Notice of any such request for relief during the Bankruptcy Suspension shall be filed with the Court and served by email on the following parties: (i) counsel to the Debtors, Cole Schotz P.C. (Attn: Michael D. Sirota, Esq. (MSirota@coleschotz.com), David M. Bass, Esq. (DBass@coleschotz.com) and Felice R. Yudkin, Esq. (FYudkin@coleschotz.com));(ii) the Office of the United States Trustee (Attn: Mitchell Hausman, Esq. (Mitchell.B.Hausman@usdoj.gov) and Peter J. D'Auria, Esq. (Peter.J.D'Auria@usdoj.gov)); (iii) counsel for the Committee, Lowenstein Sandler LLP (Attn: Jeffrey Cohen, Esq. (JCohen@lowenstein.com), Nicole Fulfree, Esq. (nfulfree@lowenstein.com) and Michael Papandrea, Esq. (MPapandrea@lowenstein.com)); (iv) counsel for the Prepetition Administrative Agent, Otterbourg P.C. (Attn: Daniel F. Fiorillo, Esq. (dfiorillo@otterbourg.com) and Chad B. Simon, Esq. (CSimon@otterbourg.com); (v) counsel for the Prepetition Term Agent, Riemer & Braunstein LLP (Attn: Steven E. Fox, Esq. (SFox@riemerlaw.com)); and (vi) local counsel for the Prepetition Administrative Agent and Prepetition Term Agent, Norris McLaughlin, P.A. (Attn: Morris S. Bauer, Esq. (mabuer@norris-law.com)).

    c.    All payments of expenses other than those essential expenses set forth in the Modified Budget are hereby deferred, provided that all parties reserve all rights to argue that obligations allegedly accrued during the Operational Suspension and/or Bankruptcy Suspension are or are not waived, abated, or otherwise not subject to payment. Further, for the avoidance of doubt, the $100,000 weekly consent fee indicated in line item 35 of the Modified Budget shall be accrued and not paid during the Bankruptcy Suspension and all rights to challenge the propriety of making this payment are expressly reserved.

    d.    The automatic stay shall remain in full force and effect during the pendency of the Bankruptcy Suspension, subject to the relief procedures set forth in ¶ 2(b) herein.

    e.    The retentions of Cole Schotz and A&G are conditionally approved.

    f.    Upon the filing of a retention application, the retention of Lowenstein Sandler LLP as counsel for the Committee, as well as any additional

-4-

Page (5)
Debtors:                    MODELL'S SPORTING GOODS, INC., *et al*.
Case No.                    20-14179 (VFP)
Caption of Order:           ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                            11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

professional retained by the Committee, if any, shall be conditionally approved. During the Bankruptcy Suspension, the Committee is permitted to continue to operate in the proper exercise of its fiduciary duties in a manner not inconsistent with the terms of this Order.

g.    The Debtors' professionals are authorized to draw on their respective retainers to pay themselves 80% of their fees and 100% of their expenses during the Bankruptcy Suspension but are not obligated to file and serve monthly fee statements or interim compensation applications during the Bankruptcy Suspension. Notwithstanding the foregoing, (i) at least five business days prior to making any such draw, a professional shall serve a statement reflecting the number of hours worked and amount billed by such professional, broken down by timekeeper, on the Debtors' pre-petition lenders, the Office of the United States Trustee for Region 3, and counsel for the Committee and (ii) any funds the professionals draw against their retainers during the Bankruptcy Suspension shall remain subject to the entry of a final order approving the award of such compensation. Any amounts which remain unspent from the Debtors' professionals' respective retainers as of the conclusion of the chapter 11 cases shall be designated to pay the professional fees and expenses incurred by the Committee during the chapter 11 cases prior to any conversion or dismissal of these chapter 11 cases.

h.    Counsel to the Debtors shall consult with the counsel to the pre-petition lenders and Committee on an as-needed basis and shall provide counsel to the Committee with such information as is reasonable and practicable under the circumstances.

3.    The Operational Suspension may be enacted on the following terms:

a.    To the extent they have not already done so, the Debtors may immediately (i) cease operations, including Store Closing Sales, at all 134 of their retail stores as well as fulfillment of orders on their e-commerce site, (ii) terminate store-level and distribution center employees, without severance, and (iii) cease all in-person operations at their corporate headquarters and terminate most corporate employees, without severance.

b.    The Debtors may continue to employ certain critical employees responsible for human relations, finance, and infrastructure technology

Page (6)
Debtors:           MODELL'S SPORTING GOODS, INC., *et al*.
Case No.           20-14179 (VFP)
Caption of Order:  ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                   11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

functions during the Operational Suspension, as well as to provide for security, maintenance and repairs for the Debtors' stores. Landlords shall be granted reasonable access to inspect their subject leased premises.

4.       Notwithstanding the foregoing, should COVID-19 abate before the Bankruptcy Suspension has expired, the Debtors may file a notice with the Bankruptcy Court informing it of the termination of the Bankruptcy Suspension. In the event the Debtors file any such notice, they shall provide counsel to the pre-petition lenders and Committee with as much notice as is reasonably practicable under the circumstances.

5.       Once the Bankruptcy Suspension has terminated, the Debtors shall coordinate with the Court, the Office of the United States Trustee for Region 3, the Debtors' pre-petition lenders, and the Committee to set appropriate hearing dates and objection deadlines and shall provide such notice of all deadlines as is practicable under the circumstances.

6.       The Cash Collateral Order is hereby amended to replace the Budget (as defined therein) with the Modified Budget, a copy of which is attached as Exhibit A to the Application only with respect to the Suspension Period. For the avoidance of doubt, and subject to the reservation of rights referenced in Section 9 hereof, the Cash Collateral Order, as amended by the Modified Budget, and all protections granted thereunder, including adequate protection of the pre-petition lenders, shall remain in full force and effect during the Operational Suspension and the Bankruptcy Suspension. Moreover, for the avoidance of doubt, references in the Cash Collateral Order to "line item 20" of the Budget ("Memo: Total Disbursements") shall be deemed to refer to "line item 26" of the Modified Budget and references in the Cash Collateral

-6-

Page (7)
Debtors:                    MODELL'S SPORTING GOODS, INC., *et al*.
Case No.                    20-14179 (VFP)
Caption of Order:           ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
                            11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

Order to "line item 28" of the Budget ("Memo: Operating Account Balance") shall be deemed to refer to "line item 32" of the Modified Budget.

7.      Notwithstanding anything to the contrary herein, the *Order Authorizing and Approving Procedures for Rejection of Executory Contracts and Unexpired Leases* (the "**Lease Rejection Procedures Order**") [Docket No. 68] and procedures approved thereunder shall continue to be applicable in these Chapter 11 cases during the duration of the Bankruptcy Suspension.

8.      Nothing in this Order shall prevent the Debtors from presenting to the Court consensual agreements with respect to the rejection of any executory contract or unexpired lease of real property and the surrender of any premises, with the consent of the pre-petition lenders and the Committee, and for the Court to enter consent orders with respect thereto.

9.      For the avoidance of doubt, all parties reserve all rights with respect to the entry of any final orders approving the relief granted by the interim orders entered by this Court on March 13, 2020, including without limitation the Cash Collateral Order and the Lease Rejection Procedures Order (to the extent permitted by the Court at the March 13, 2020 hearing).

10.     The requirement set forth in Local Rule 9013-1(a)(2) that any motion be accompanied by a certification containing the facts supporting the relief requested in compliance with Local Bankruptcy Rule 7007-1 is deemed satisfied by the contents of the verified Application or otherwise waived.

Page (8)
Debtors: MODELL'S SPORTING GOODS, INC., *et al.*
Case No. 20-14179 (VFP)
Caption of Order: ORDER TEMPORARILY SUSPENDING THE DEBTORS' CHAPTER
11 CASES PURSUANT TO 11 U.S.C. §§ 105 AND 305

---

11. The requirement set forth in Local Rule 9013-1(a)(3) that any motion be
accompanied by a memorandum of law stating the legal basis of the relief requested is deemed
satisfied by the contents of the Application or otherwise waived.

12. Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order
shall be immediately effective and enforceable upon its entry.

13. The Debtors are authorized to take all actions necessary to effectuate the relief
granted pursuant to this Order, including to effectuate the intent of the Operational Suspension
and the Bankruptcy Suspension, in accordance with the Application.

14. This Court shall retain jurisdiction to hear and determine all matters arising from
or related to the implementation, interpretation, and/or enforcement of this Order.

55008/0002-20074498v7

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:400 S Hope St, Los Angeles, CA 90071

A true and correct copy of the foregoing document entitled (*specify*): **REPLY OF UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO AND REQUEST FOR HEARING TO MODIFY CHAPTER 11 TRUSTEE'S FIFTH AMENDMENT TO CREDIT AGREEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 04/15/20, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**see attached page**

☒ Service information continued on

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 04/15/20, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**see attached page**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 04/15/20, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/15/20 | Lee Lattin | /s/ Lee Lattin |
|----------|------------|----------------|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL SERVICE INFORMATION

## 1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

- William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- Alicia Clough    aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com
- Marc S Cohen    mscohen@loeb.com, klyles@loeb.com
- Alec S DiMario    alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com
- Karl J Fingerhood    karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- H Alexander Fisch    Alex.Fisch@doj.ca.gov
- Don Fisher    dfisher@ptwww.com, tblack@ptwww.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Gisele M Goetz    gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu
- Karen L Grant    kgrant@silcom.com
- Ira S Greene    Ira.Greene@lockelord.com
- Matthew C. Heyn    Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- Brian L Holman    b.holman@musickpeeler.com
- Eric P Israel    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Alan H Katz    akatz@lockelord.com
- John C Keith    john.keith@doj.ca.gov
- Jeannie Kim    jkim@friedmanspring.com
- Maxim B Litvak    mlitvak@pszjlaw.com
- Michael Authur McConnell (TR)    Michael.mcconnell@kellyhart.com
- Brian M Metcalf    bmetcalf@omm.com
- David L Osias    dosias@allenmatkins.com, bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com
- Darren L Patrick    dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com
- Mitchell E Rishe    mitchell.rishe@doj.ca.gov
- Sonia Singh    ssingh@DanningGill.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com
- Daniel A Solitro    dsolitro@lockelord.com, ataylor2@lockelord.com
- Ross Spence    ross@snowspencelaw.com, janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com
- Christopher D Sullivan    csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com
- Jennifer Taylor    jtaylor@omm.com
- John N Tedford    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com
- Salina R Thomas    bankruptcy@co.kern.ca.us

- Patricia B Tomasco    pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com

- Fred Whitaker    lshertzer@cwlawyers.com
- William E. Winfield    wwinfield@calattys.com, scuevas@calattys.com
- Richard Lee Wynne    richard.wynne@hoganlovells.com,
  tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com
- Emily Young    pacerteam@gardencitygroup.com,
  rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- Aaron E de Leest    adeleest@DanningGill.com,
  danninggill@gmail.com;adeleest@ecf.inforuptcy.com

## 2. SERVED BY UNITED STATES MAIL

Debtor
HVI Cat Canyon, Inc.
c/o Capitol Corporate Services, Inc.
36 S. 18th Avenue, Suite D
Brighton, CO 80601

Debtor
HVI Cat Canyon.Inc.
630 Fifth Avenue, Suite 2410
New York, NY 10111

SNOW SPENCE GREEN LLP
Ross Spence
2929 Allen Parkway, Suite 2800
Houston, Texas 77019

LAW OFFICE OF SUSAN WHALEN
Susan Whalen
2806 Alta St.
Los Olivos, CA  93441