ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
GEORGE E. SCHULMAN (State Bar No. 64572)
*gschulman@DanningGill.com*
ZEV SHECHTMAN (State Bar No. 266280)
*zs@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Michael A. McConnell,
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re | Case No. 9:19-bk-11573-MB |
| HVI CAT CANYON, INC., | Chapter 11 |
| Debtor. | **TRUSTEE'S NOTICE OF OPPOSITION AND OPPOSITION TO MOTION FOR APPROVAL AND PAYMENT OF ADMINISTRATIVE CLAIMS FILED BY GIT, INC., CALIFORNIA ASPHALT PRODUCTION, INC., AND GTL1, LLC [CASE DOC. NO. 946]; MEMORANDUM OF POINTS AND AUTHORITIES, REQUEST FOR JUDICIAL NOTICE, AND DECLARATIONS OF MICHAEL A. MCCONNELL, TIM SKILLMAN, AND JAMES BARING IN SUPPORT THEREOF** |
| | Date:    May 19, 2020<br>Time:    10:30 a.m.<br>Crtrm.:    201<br>        1415 State Street<br>        Santa Barbara, CA 93101 |

1588870.1  26932

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 6

I. INTRODUCTION ........................................................................................... 6

II. STATEMENT OF FACTS ............................................................................. 7

    A.    The Bankruptcy Filing, Cash Collateral Orders, and Trustee
        Appointment........................................................................................ 7

    B.    The Debtor's Insiders and Affiliates ................................................ 8

    C.    The Avoidance Action Against GRL and GLR ................................ 10

    D.    The Section 365 Declaratory Relief Action....................................... 11

    E.    GLR's Motion for Payment of Administrative Rent ......................... 11

    F.    The Trustee's Factual Disputes Regarding the Insiders' Administrative
        Claims Motion.................................................................................... 11

III. DISCUSSION .............................................................................................. 13

    A.    The Dispute is Not Ripe for Adjudication and the Motion Should
        therefore be Denied without Prejudice .............................................. 13

    B.    The Dispute Should be Adjudicated, if at All, in an Adversary
        Proceeding.......................................................................................... 15

    C.    If Not Denied, the Motion Should be Treated as a Contested Matter with
        all Adversary Proceeding Rules Applied, or Consolidated with the
        Avoidance Action............................................................................... 17

    D.    It is Premature to Argue the Merits.................................................... 18

    E.    The Insiders Have Not Met Their Burden .......................................... 20

IV. CONCLUSION ............................................................................................ 22

REQUEST FOR JUDICIAL NOTICE................................................................. 23

DECLARATION OF MICHAEL A. MCCONNELL ........................................... 26

DECLARATION OF TIM SKILLMAN................................................................ 32

DECLARATION OF JAMES BARING................................................................ 34

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bear v. Coben* (*In re Golden Plan of Cal., Inc.*)
  829 F.2d 705 (9th Cir. 1986) ................................................................ 16

*Czyzewski v. Jevic Holding Corp*
  137 S. Ct. 973 (2017) ............................................................................ 14

*General Electric Credit Corporation v. Levin & Weintraub* (*In re Flagstaff Foodservice Corp.*)
  739 F.2d 73 (2d Cir. 1984) .................................................................... 14

*Golden v. Zwickler*
  394 U.S. 103, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969)........................... 15

*In re AWTR Liquidation Inc.*
  548 B.R. 300 (Bankr. C.D. Cal. 2016) ................................................... 20

*In re Hanna*
  168 B.R. 386 (B.A.P. 9th Cir. 1994) ..................................................... 20

*In re Khachikyan*
  335 B.R. 121 (B.A.P. 9th Cir. 2005) ..................................................... 16

*In re Loloee*
  241 B.R. 655 (B.A.P. 9th Cir. 1999) ..................................................... 16

*In re Pizza of Hawaii*, Inc.
  69 B.R. 60 (Bankr. D. Haw. 1986) ........................................................ 19

*In re TransAmerican Nat. Gas Corp.*
  978 F.2d 1409 (5th Cir. 1992) .............................................................. 16

*In re Van Ness*
  399 B.R. 897 (Bankr. E.D. Cal. 2009).................................................... 15

*In re Visual Indus.*, Inc.
  57 F.3d 321 (3d Cir. 1995) ............................................................. 13, 14

*Malcolm v. Nat'l Gypsum Co.*
  995 F.2d 346 (2d Cir. 1993) .................................................................. 18

*Pepper v. Litton*
  308 U.S. 295,  60 S. Ct. 238 (1939)....................................................... 20

*Stoumbos v. Kilimnik*
  988 F.2d 949 (9th Cir. 1993) ................................................................ 20

*United States v. Armstrong*
  621 F.2d 951 (9th Cir. 1980) ................................................................ 18

## Statutes

11 U.S.C. § 363 ................................................................................................ 19

11 U.S.C. § 364 ................................................................................................ 19

11 U.S.C. § 364(c)(1) ....................................................................................... 13

11 U.S.C. § 502 ................................................................................................ 20

11 U.S.C. § 503 ................................................................................. 14, 16, 20

11 U.S.C. § 503(b) ........................................................................................... 14

11 U.S.C. § 510 ................................................................................................ 19

11 U.S.C. § 542 ................................................................................................ 10

11 U.S.C. § 547 ................................................................................................ 10

11 U.S.C. § 548 ................................................................................................ 10

11 U.S.C. § 550 ................................................................................................ 10

## Other Authorities

Klein, Christopher, Bankruptcy Rules Made Easy (2001): A Guide to the Federal
  Rules of Civil Procedure that Apply in Bankruptcy, 75 AM. BANKR. L.J. 35, 38
  (Winter 2001) ............................................................................................... 15

## Rules

Fed. R. Bankr. P. 3001(f) ................................................................................ 20

Fed. R. Bankr. P. 7001 ............................................................................. 15, 20

Fed. R. Bankr. P. 7001(1) ............................................................................... 15

Fed. R. Bankr. P. 7001(9) ............................................................................... 15

Fed. R. Bankr. P. 7001-7087 .......................................................................... 15

Fed. R. Bankr. P. 7013 .................................................................................... 16

Fed. R. Bankr. P. 7042 .................................................................................... 18

Fed. R. Bankr. P. 9014 ............................................................... 15, 16, 17, 20

Fed. R. Bankr. P. 9014(c) .................................................................... 16, 17, 18

Fed. R. Civ. P. 42(a) ............................................................................... 17, 18

Michael A. McConnell, as Chapter 11 Trustee (the "Trustee") for the estate of HVI Cat Canyon Inc. (the "Debtor") hereby opposes the *Motion for Approval of Payment of Administrative Claims* (case doc. no. 946) (the "Insiders' Administrative Claims Motion") filed by GIT, Inc. ("GIT"), California Asphalt Production, Inc. ("CAP"), and GTL1, LLC ("GTL1") (collectively the "Insiders").

The Insiders are and always have been, affiliates and insiders of the Debtor, controlled by the Debtor's former principal, Randeep S. Grewal.  The Insiders' Administrative Claims Motion is premature because there is no money available to pay their claims.  Further, the Insiders' Administrative Claims Motion should be litigated in an adversary proceeding.  If the Insiders' Administrative Claims Motion is not denied outright, the Court should continue the hearing, implement contested matter procedures to treat the proceeding the same as an adversary proceeding, or consolidate with a pending adversary proceeding, and set a status conference for a time after the server documents are finally produced by GIT.  Finally, the Insiders have not met the high burden applicable to insider administrative claims.

The Trustee's opposition is based on this opposition, the memorandum of points and authorities, declarations of Michael A. McConnell, Tim Skillman and James Baring, the request for judicial notice, separately filed evidentiary objections, and such other evidence as may be properly submitted to the Court.

Any reply is due not less than seven days before the hearing on the motion pursuant to LBR 9013-1.

DATED:  May 5, 2020

DANNING, GILL, ISRAEL &
KRASNOFF, LLP


By:      /s/ Zev Shechtman
          GEORGE E. SCHULMAN
          ZEV SHECHTMAN
          Attorneys for Michael A. McConnell,
          Chapter 11 Trustee

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

3

## I.

4

## INTRODUCTION

5      The Insiders request allowance of administrative claims and payment of

6  $737,424 for GIT, $2,240,686.86 for CAP, as $979,717.20 for GTL1.  That's about

7  $4 million the Insiders want not only approved but paid.  The Insiders totally ignore

8  the fact that they owe money to the estate.  For example, the Trustee billed CAP $1.8

9  million for delivered oil in October 2019, but CAP only paid the estate $300,000.

10  See McConnell declaration, ¶18.  In addition, 20,393 barrels of oil were shipped to

11  CAP in November 2019 that were never paid for at value estimated to be $1,235,000.

12  Id.  Before resolving these Insider claims, let alone paying them, the Trustee needs to

13  thoroughly investigate the Debtor's affairs.  But GIT, one of the Insiders demanding

14  payment, won't let the Trustee image the Debtor's own documents on the server GIT

15  controls.

16      The Insiders are and always have been, affiliates and insiders of the Debtor,

17  controlled by the Debtor's former principal, Randeep S. Grewal.  The Insiders'

18  Administrative Claims Motion is premature because there is no money available to

19  pay their claims.  In light of substantial disputes, the relief requested in the Insiders'

20  Administrative Claims Motion should be brought by adversary proceeding.  If the

21  Insiders' Administrative Claims Motion is not denied outright, the Court should

22  continue the hearing, require the claimants to commence an adversary proceeding,

23  and allow the Trustee thorough and complete discovery, scheduling a status

24  conference for sometime after the Trustee finally receives the server documents from

25  GIT.  In any such proceeding, if not already covered by a pending adversary, the

26  Trustee will bring crossclaims and third party claims against these Insiders and the

27  people responsible for the Debtor's dire financial position.  Finally, the Insiders'

28

1  Administrative Claims Motion does not meet the high burden of proof applicable to

2  administrative claims, and the even higher burden applicable to insider claims.

3

4                                    II.

5                          **STATEMENT OF FACTS**

6  **A.     The Bankruptcy Filing, Cash Collateral Orders, and Trustee**

7          **Appointment**

8          On July 25, 2019, the Debtor filed its voluntary Chapter 11 petition

9  commencing this bankruptcy case.  The case was originally filed in the Southern

10 District of New York.  The case was transferred to the Northern District of Texas,

11 and then later to the Central District of California.

12         On August 14, 2019, the presiding court in this case (then in New York)

13 entered an interim cash collateral order authorizing use of cash collateral pursuant to

14 a budget.  Case doc. no. 43.  The order provided, among other terms:

15         The Cash Collateral Superpriority Claim shall have priority over all
           administrative expenses of any kind or any subsequently filed
16         bankruptcy case under any Chapter of the Bankruptcy Code in any court
           of competent jurisdiction, including such administrative expenses of the
17         kinds specified in, or allowable under, Sections 105, 326, 330, 331,
           503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code.

18

19 Case doc. no. 43 at paragraph 6.

20         The Insiders supported the initial use of UBS's cash collateral.  Case doc. no.

21 274.  Now that the Insiders no longer control the Debtor-in-Possession, they

22 apparently regret that choice.

23         On October 8, 2019, this Court entered its agreed order on consensual use of

24 cash collateral.  Case doc. no. 375.  That order also expressly provided for

25 superpriorty status for UBS, ahead of section 503(b) administrative claims.  Case

26 doc. no. 375, paragraph 6.

27

28

1    On October 16, 2019, the Court entered its order directing the United States

2 Trustee to appoint a Chapter 11 trustee. Case doc. no. 409. The order approving the

3 Trustee's appointment was entered on October 22, 2019. Case doc. no. 431.

4    On November 27, 2019, this Court entered its *Final Order for Emergency*

5 *Priming and Superpriority Financing and Consensual Use of Cash Collateral by the*

6 *Chapter 11 Trustee.* Case doc. no. 572. That order provided for superpriority over

7 section 503(b) claims, the Trustee's expenditures pursuant to a budget, in addition to

8 a carve out for the estate's professional fees. A copy of that order is attached to the

9 Request for Judicial Notice as Exhibit "1." Thus, at least three orders have been

10 entered giving UBS superpriority and allowing the Trustee to use cash collateral

11 pursuant to an approved budget.

12

13 **B.    The Debtor's Insiders and Affiliates**

14    The order directing the appointment of a trustee (Case doc. no. 409) granted

15 the motions of two creditors, who alleged a variety of problems with the Debtor

16 including, but not limited to, the Debtor's transactions with affiliates and insiders.

17 Case doc. nos. 356, 363.

18    According to the Debtor, all of the following entities are insiders and affiliates

19 of the Debtor:

20    a.    California Asphalt Production, Inc., formerly known as Greka Refining

21 Company, formerly known as Santa Maria Mining Company, a California

22 corporation ("CAP"), operating in Santa Barbara County, California. Case doc. no.

23 171, ECF p. 296 (identifying CAP as an insider and affiliate). RJN Exhibit "2."

24    b.    GIT, Inc., a Colorado corporation ("GIT"), operating Santa Barbara

25 County, California. Case doc. no. 171, ECF p. 295 (identifying GIT as an insider

26 and affiliate). RJN Exhibit "2." According to the Debtor, GIT is the 100% owner of

27 GOGH, LLC, which is the 100% owner of the Debtor. See initial cash collateral

28 motion, Case doc. no. 11, page 3, ¶9.

c.    GTL1, LLC, a Colorado limited liability company ("GTL1"),  operating
in Santa Barbara County, California.  Case doc. no. 171,  ECF p. 295 (identifying
GTL1 as an insider and affiliate).  RJN Exhibit "2."

d.    GLR, LLC, a Delaware limited liability company ("GLR").  Case doc.
no. 171, ECF p. 294, 296 (identifying GLR as an insider and affiliate).  RJN Exhibit
"2."

e.    GRL, LLC, a Delaware limited liability company ("GRL").  Case doc.
no. 171, ECF p. 294, 295 (identifying GRL as an insider and affiliate).  RJN Exhibit
"2."

CAP operates a refinery in Santa Maria, California.  The Debtor had multiple
written agreements with CAP until the Trustee rejected those agreements.  Case doc.
nos. 573, 613.  Prior to rejection, the Debtor and then the Trustee delivered and sold
crude oil and natural gas to the CAP refinery and third parties through CAP.

The Debtor had an agreement with GIT for GIT to provide administrative
services to the Debtor, until the Trustee rejected that agreement.  Case doc. nos. 658,
782.  That included the Debtor storing its electronic documents on GIT's server, as to
which GIT has, for the time being, blocked the Trustee's access to the server to copy
those documents.  A continued hearing on the Trustee's attempt to simply recover
the Debtor's own records is set contemporaneously with the hearing on the Insiders'
Administrative Claims Motion.

The Debtor had an arrangement with GTL1 whereby GTL1 provided product
transportation services to the Debtor, until the Trustee rejected the transportation
agreement.  Case doc. nos. 658, 782.

Randeep S. Grewal signed the Debtor's Statement of Financial Affairs
identifying himself as Chairman of the Debtor.  Case doc. no. 171, ECF p. 288.  RJN
Exhibit "2."

Prior to the Trustee's appointment, the Debtor and the Insiders shared
management.  Ernesto Olivares signed the declaration in support of the Insiders'

Administrative Claims Motion, as the CFO of GIT, CAP, and GTL1.  Case doc. no. 946 at page 13.  However, Mr. Olivares left out of his declaration that he was CFO of the Debtor prior to the Trustee's appointment.  For example, Mr. Olivares was CFO of the Debtor when, six days before the Debtor's petition was filed, the Debtor transferred property to another company at which Mr. Olivares was also an officer. The Trustee has sued to unwind those transfers.  Adversary proceeding number 9:20-ap-01006-MB (the Avoidance Action discussed below).  All of the evidence provided by Mr. Olivares and the Insiders must be viewed as the products of transactions that were not at arm's length, requiring heightened scrutiny.

## C.    The Avoidance Action Against GRL and GLR

On January 9, 2020, the Trustee filed a complaint against GRL and GLR seeking turnover, and avoidance of preferential and/or fraudulent transfers under 11 U.S.C. §§ 542, 547, 548 and 550, commencing adversary proceeding number 9:20-ap-01006-MB (the "Avoidance Action").  By the Avoidance Action, the Trustee is seeking to recover property, including oil and gas, interests which the Debtor transferred to the defendants 6 days before the Debtor's bankruptcy filing.

On February 3, 2020, GRL and GLR filed an answer and counterclaim in the Avoidance Action seeking both payment of the royalties to GRL and payment on account of the Lakeview rents to GLR.  The Status Conference in the Avoidance Action was held on April 17, 2020.

The Trustee is preparing to amend his complaint in the Avoidance Action, and the Trustee is also investigating additional claims and factual issues which may be raised in an amended complaint in the Avoidance Action.  The defendants in that adversary refused to stipulate to let the Trustee amend.

**D.    The Section 365 Declaratory Relief Action**

On January 21, 2020, the Trustee filed a complaint for declaratory relief, commencing adversary proceeding number 9:20-ap-01011-MB (the "365 Action"). In the 365 Action, the Trustee is seeking a judgment determining that the Debtor's Oil and Gas Leases and the rights under them and are not the subjects of executory contracts or unexpired leases under section 365.  GRL is one of over 400 named defendants.

**E.    GLR's Motion for Payment of Administrative Rent**

On February 14, 2020, GLR filed a motion for payment of administrative rent (case doc. no. 801), seeking payment from the estate of $7,500 per month for the Debtor's rental of facilities at the Debtor's Lakeview property (one of the properties which the Debtor had quitclaimed to GLR six days before the bankruptcy filing). The motion sought payment of a total of $52,500 for the months of August 2019 to February 2020.

The Trustee ultimately stipulated, together with UBS and the California State Lands Commission, on one hand, with GLR, on the other hand, to maintain $52,500 in the Insider Escrow Deposit Account, on account of the alleged Lakeview rents (doc. no. 841), resulting in order dismissing of GLR's administrative rent request (doc. no. 851).

**F.    The Trustee's Factual Disputes Regarding the Insiders' Administrative Claims Motion**

CAP owes the Debtor at least $3,649,524.20 for postpetition crude oil sales from August to November, 2019.  See McConnell declaration, ¶18; Skillman declaration, ¶7; Baring declaration, ¶7.  Despite numerous attempts to obtain payment from CAP, the payments were never made.  See McConnell declaration, ¶19; Skillman declaration, ¶8;  Baring declaration, ¶7.  Indeed Mr. Skillman

1  negotiated with Mr. Olivares the attached payment agreement dated November 19,

2  2019, which was never signed.  See Exhibit "3" to Skillman declaration; Skillman

3  declaration, ¶8.

4       Mr. Olivares has issued multiple versions of invoices from GIT and GTL1 to

5  the Debtor.  See Baring declaration, ¶8.  When the Trustee received a new invoice,

6  the amount due often increased.  For example, compare GTL1's September 30, 2019

7  invoice attached to the Insiders' Administrative Claims Motion with the version the

8  Trustee has.  Id.  See also Exhibit "4" to Baring declaration.  The new version

9  attached to the Insiders' Administrative Claims Motion at page 98 demands $15,000

10  more than the earlier version.  Id.  Many of the invoices attached to the motion have

11  different formatting than the versions previously received by the Trustee.  Id.

12       The GIT invoices contain myriad unexplained, suspicious, charges for Travel,

13  Professional Fees, Legal Fees, Taxes, Employee relations.  See McConnell

14  declaration, ¶21; Baring declaration, ¶10.   All of these charges changed significantly

15  from month to month.  Id.  See, e.g., GIT invoice at Exhibit "4," PDF page 12 of 18.

16  Attached as Exhibit "5" to the James Baring declaration is an email Mr. Baring sent

17  to Mr. Olivares dated November 15, 2019 requesting supporting documentation for

18  line items in a $242,987.21 GIT invoice that Mr. Olivares previously estimated at

19  $156,000. See McConnell declaration, ¶23; Baring declaration, ¶9.

20       Since the Trustee has taken over operations, the Trustee has re-sourced back

21  office support for approximately $120,000 less per month than the administrative

22  services purportedly provided by GIT.  See McConnell declaration, ¶23; Baring

23  declaration, ¶11.

24       The Trustee is also investigating whether GTL1 was overcharging, given the

25  close proximity of the HVI and CAP facilities.  See McConnell declaration, ¶24;

26  Baring declaration, ¶12.

27

28

1  The CAP invoices for hot loads and temperature fees were not presented to the
2  Trustee in until the Trustee decided to reject the contracts with the Insiders.  See
3  McConnell declaration, ¶25; Baring declaration, ¶13.

4  The Debtor's and Insiders' record keeping was so weak that there were no
5  controls in place to confirm whether services were in fact provided.  See McConnell
6  declaration, ¶26; Baring declaration, ¶14.  More investigation into the billing
7  practices of the Insiders is necessary.  See McConnell declaration, ¶27; Baring
8  declaration, ¶15.

9

10  **III.**

11  **DISCUSSION**

12  **A.**  **The Dispute is Not Ripe for Adjudication and the Motion Should**
13  **therefore be Denied without Prejudice**

14  The Insiders are asking for allowance and payment of administrative expenses
15  even though the estate has no money to pay such claims.  The only reason this estate
16  has funds to pay to keep the lights on is because the Debtor's secured creditor, UBS,
17  has given the Trustee a budget to fund operations.

18  Litigating over the allowance and payment of the Insiders' claim now is a
19  waste of estate and judicial resources, and the request should be denied without
20  prejudice to being considered by this Court if, at a later date, circumstances
21  drastically change, making payment of non-budgeted administrative claims possible.

22  11 U.S.C. § 364(c)(1) authorizes the trustee to obtain "superpriority" credit,
23  that is, "with priority over any or all administrative expenses of the kind specified in
24  section 503(b) or 507(b)" of the Bankruptcy Code.  11 U.S.C. § 364(c)(1).

25  Requests for administrative expense under section 503 are not charged against
26  secured collateral.  *In re Visual Indus.*, Inc., 57 F.3d 321, 324 (3d Cir. 1995) ("The
27  general rule is that post-petition administrative expenses and the general costs of
28  reorganization ordinarily may not be charged to or against secured collateral") (citing

*General Electric Credit Corporation v. Levin & Weintraub* (*In re Flagstaff Foodservice Corp.*), 739 F.2d 73, 76 (2d Cir. 1984)).  Section 503 claims are "normally chargeable only against the unburdened assets of the estate, 11 U.S.C. § 503, thus preserving for secured creditors the collateral securing the debtor's obligations."  *Visual Indus., Inc.*, 57 F.3d at 324.  The courts do not have discretion to vary from the priorities of the Bankruptcy Code over an affected party's objection. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017).  Thus, absent available funds, it is impermissible to award payment of administrative expenses.

Here, the Court's cash collateral order (Case doc. no. 572) expressly gives UBS superpriority over administrative expense claims under section 503(b).  UBS has a secured claim of over $127,000,000 as of the petition date plus at least $9,088,210, excluding accrued interest, incurred postpetition pursuant to a credit agreement and six amendments to the credit agreement.  See, e.g., Proof of Claim No. 83.  The Trustee currently has no free and clear cash with which to cover operational expenses, let alone make distributions to lower priority claimants. McConnell declaration at ¶10.

The Trustee is looking for a buyer for the assets of the Debtor.  The Trustee is looking for a responsible, competent buyer who will comply with applicable law and pay lessors and royalty claimants what they are owed going forward.  The Court previously found that the value of the company is between $50 and $75 million. Clearly, UBS is undersecured.  The current economic and market limitations are a further drag on the value of the company.  It is unclear at this time whether there will be funds for unsecured creditors at the end of this case.

Thus, the Insiders' Administrative Claims Motion is an academic exercise at best.  Indeed, it appears that this motion can be characterized as a request for an advisory opinion, which is impermissible in federal courts.  As the Supreme Court has opined:

14

"[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, `concrete legal issues, presented in actual cases, not abstractions,' are requisite. This is as true of declaratory judgments as any other field." *United Public Workers of America v. Mitchell*, 330 U. S. 75, 89 (1947). "The difference between an abstract question and a `controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U. S. 270, 273 (1941).

*Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959, 22 L. Ed. 2d 113 (1969).

For this reason, the Insiders' Administrative Claims Motion should be denied.

## B.    The Dispute Should be Adjudicated, if at All, in an Adversary Proceeding

Proceedings to "recover money or property" from a bankruptcy estate or "to obtain an injunction or other equitable relief" are adversary proceedings under Federal Rule of Bankruptcy Procedure ("FRBP") 7001.  *See* FRBP 7001(1) and (9). Adversary proceedings are lawsuits in bankruptcy, and are subject to the notice, discovery and other procedural due process attributes of a federal civil action, set forth in the Bankruptcy Rules.  See FRBP 7001-7087.  As one court has observed: "An adversary proceeding under Federal Rule of Bankruptcy Procedure 7001 is essentially indistinguishable from a civil action under the Federal Rules of Civil Procedure." *In re Van Ness*, 399 B.R. 897, 904 (Bankr. E.D. Cal. 2009) (citing Christopher Klein, Bankruptcy Rules Made Easy (2001): A Guide to the Federal Rules of Civil Procedure that Apply in Bankruptcy, 75 AM. BANKR. L.J. 35, 38 (Winter 2001)).

In contrast, requests for payment of administrative expenses are allowed after "notice and a hearing," giving rise to "contested matters" governed by FRBP 9014.

[A] contested matter under [FRBP] 9014 is a motion procedure susceptible of more expeditious resolution than an adversary

> proceeding. In particular, the pleading rules that entail complaint, answer, counterclaim, crossclaim, and third-party practice are dispensed with in favor of a simple motion procedure.

*Id.* (internal citations omitted).  Contested matters are summary proceedings encompassing limited issues.  As one court has noted:

> Unlike adversary proceedings, which we have described as "full blown federal lawsuits within the larger bankruptcy case," and which are governed by all of the rules in Part VII of the Bankruptcy Rules, contested matters are "subject to the less elaborate procedures specified in Bankruptcy Rule 9014." In re Wood & Locker, Inc., 868 F.2d 139, 142 (5th Cir. 1989). Contested matter proceedings are generally designed for the adjudication of simple issues, often on an expedited basis. 9 Collier on Bankruptcy, ¶ 9014.05 (15th ed. 1992).

*In re TransAmerican Nat. Gas Corp.,* 978 F.2d 1409, 1416 (5th Cir. 1992) (addressing contested matters involving administrative expense requests under section 503).

Further, "[a] motion procedure cannot be used to circumvent the requirement of an adversary proceeding."  *In re Loloee*, 241 B.R. 655, 660 (B.A.P. 9th Cir. 1999) (citing *Bear v. Coben* (*In re Golden Plan of Cal., Inc*.), 829 F.2d 705, 711–12 (9th Cir. 1986)).

To the extent that the Movants are entitled to any claim, the estate has setoff rights and other defenses and counterclaims creating disputes which are also only appropriately litigated in the context of an adversary proceeding.  *See* FRBP 9014(c) (excluding FRBP 7013, encompassing counterclaims and cross-claims, from contested matters); *In re Khachikyan*, 335 B.R. 121, 125 (B.A.P. 9th Cir. 2005) ("In a contested matter, there is no summons and complaint, pleading rules are relaxed, counterclaims and third-party practice do not apply, and much pre-trial procedure is either foreshortened or dispensed with in the interest of time and simplicity."). Indeed, the Trustee is pursuing claims against insiders and affiliates of the Debtor, GLR and GRL, in two pending actions.  The Trustee's affirmative defenses for setoff

1  in the Avoidance Action arise from the failure of CAP to pay at least $3,649,524.20

2  for postpetition crude oil shipments.

3      The Insiders' Administrative Claims Motion should be denied without

4  prejudice to litigation in an adversary proceeding.

5

6  **C.    If Not Denied, the Motion Should be Treated as a Contested Matter with**

7      **all Adversary Proceeding Rules Applied, or Consolidated with the**

8      **Avoidance Action**

9      If the Insiders' Administrative Claims Motion is not denied outright, adversary

10  proceeding procedures should be implemented under Rule 9014 or the proceeding

11  should be consolidated with the Avoidance Action.

12      Rule 9014(c) provides:

13      Application of Part VII Rules. Except as otherwise provided in this rule,
        and unless the court directs otherwise, the following rules shall apply:

14      7009, 7017, 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–
        7056, 7064, 7069, and 7071. The following subdivisions of Fed. R. Civ.

15      P. 26, as incorporated by Rule 7026, shall not apply in a contested
        matter unless the court directs otherwise: 26(a)(1) (mandatory

16      disclosure), 26(a)(2) (disclosures regarding expert testimony) and
        26(a)(3) (additional pre-trial disclosure), and 26(f) (mandatory meeting

17      before scheduling conference/discovery plan). An entity that desires to
        perpetuate testimony may proceed in the same manner as provided in

18      Rule 7027 for the taking of a deposition before an adversary proceeding.
        The court may at any stage in a particular matter direct that one or more

19      of the other rules in Part VII shall apply. The court shall give the parties
        notice of any order issued under this paragraph to afford them a

20      reasonable opportunity to comply with the procedures prescribed by the
        order.

21

22  Given the range of disputes and relationships with other issues subject to litigation in

23  an adversary proceeding, the Trustee requests that the full range of civil litigation

24  rules apply here, and that a status conference be scheduled once GIT delivers the

25  Debtor's discovery documents.

26      Additionally, given the overlap of issues, if the Court is not prepared to deny

27  the Insiders' Administrative Claims Motion outright, it may be most efficient to

28  consolidate this contested matter with the Avoidance Action.  FRCP 42(a), made

1  applicable by 7042, and which could be implemented in contested matters by Court

2  order under FRBP 9014(c), provides as follows:

> 3  (a) Consolidation. If actions before the court involve a common
> question of law or fact, the court may:
> 4      (1) join for hearing or trial any or all matters at issue in the
> actions;
> 5      (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

6

7  FRCP 42(a).  If the Court does not dismiss the Motion, the Court should consolidate

8  this contested matter with the Avoidance Action or, at the very least, put it on the

9  same litigation schedule.  Such determinations are within the Court's sound

10 discretion.  *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980) (regarding

11 joinder); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) ("The trial

12 court has broad discretion to determine whether consolidation is appropriate.")

13 (internal citations omitted).

14

15 **D.    It is Premature to Argue the Merits**

16     In a civil action, including adversary proceedings, the defendant is afforded an

17 opportunity to answer, take discovery to develop the case, among several other

18 procedural steps before trial.  The Trustee denies the Insiders' allegations and, to the

19 extent the Insiders' Administrative Claims Motion is not denied outright now, this

20 opposition should be treated like an answer.

21     The Trustee requires time to develop the record, an opportunity that is

22 unavailable if the decision on the Insiders' Administrative Claims Motion is to be

23 made on May 19, 2020.  In further litigation, the Trustee intends to develop the

24 following defenses and counterarguments:

25

26

27

28

1)     The Insiders are not entitled to administrative priority because their purported extension of credit was not approved by the Court. *In re Pizza of Hawaii*, Inc., 69 B.R. 60, 61 (Bankr. D. Haw. 1986).[1]

2)     The Insiders are not entitled to administrative priority because their conduct was, on a net basis, not beneficial to the estate.  That is, the Insiders, collectively, owe more to the Debtor than the Debtor owes to them.  The Debtor has setoff claims against the Insiders.

3)     The Insiders are not entitled to payment pro rata with approved administrative expenses, because the approved administrative expenses were budgeted and expressly authorized by the Court's cash collateral orders.  The Trustee and his professionals should not be penalized for administering a case fraught with insider entanglements and commingling by the Debtor and the Insiders.[2]

4)     Any funds available to the Trustee are cash collateral of UBS and the Trustee is not authorized to pay the Insiders with such funds.[3]

5)     The estate may have substantial other claims against the Insiders, beyond offsets.

To develop this case, the Trustee intends to depose at least two individuals: Ernesto Olivares and Randeep S. Grewal, depose the Persons Most Knowledgeable of each of the Insiders, and propound written discovery.  The Trustee still has not

---

[1] Despite the Insiders arguments, the Court did not approve prepayment by CAP as a form of credit under section 364.  See Case doc. no. 449 at page 2, lines 15-16 (stating that the prepayment should be characterized as "use of estate property governed by 11 U.S.C. § 363 and not a credit transaction governed by 11 U.S.C. § 364.").

[2] The pending fight over the Debtor's documents on the Insiders' server is an illustration of the difficulties created by the entanglement of these entities.

[3] Indeed, GIT and CAP executed a subordination agreement, agreeing to subordinate their claims to those of UBS.  Such subordination agreement is enforceable under 11 U.S.C. § 510.

1  obtained the Debtor's own documents, which are necessary to move to the next

2  phase of his investigation.  The facts provided in this opposition should be enough to

3  overcome summary adjudication, allowing the Trustee to move forward and make

4  his case with the full panoply of procedural due process, whether pursuant to FRBP

5  7001 or 9014.

6

7  **E.    The Insiders Have Not Met Their Burden**

8       Requests for administrative claims have a higher burden of proof than ordinary

9  claims.  While a proof of claim under section 502 enjoys prima facie validity under

10  FRBP 3001(f), an administrative claimant under section 503 must prove its claim by

11  a preponderance of the evidence.  *In re Hanna*, 168 B.R. 386, 388 (B.A.P. 9th Cir.

12  1994) ("We construe § 503(b)(1)(A) strictly.").

13       Insider administrative claims require an even higher level of scrutiny.  Indeed,

14  courts employ "rigorous scrutiny" when evaluating insider claims. *Pepper v. Litton*,

15  308 U.S. 295, 306, 60 S. Ct. 238, 245 (1939); *In re Club Dev. & Mgmt. Corp.*, 27

16  B.R. 610, 612 (B.A.P. 9th Cir. 1982) ("The standards for authorizing claims against a

17  bankruptcy estate are especially strict when the claimant is a fiduciary.").  As the

18  Supreme Court has opined, when an insider's transaction with the debtor

19       is challenged the burden is on the [insider] not only to prove the good
     faith of the transaction but also to show its inherent fairness from the

20       viewpoint of the corporation and those interested therein. [] The essence
     of the test is whether or not under all the circumstances the transaction

21       carries the earmarks of an arm's length bargain. If it does not, equity will
     set it aside.

22

23  *Pepper*, 308 U.S. at 306–07; *see also Stoumbos v. Kilimnik*, 988 F.2d 949, 959 (9th

24  Cir. 1993) (citing *Pepper*); *In re AWTR Liquidation Inc.*, 548 B.R. 300, 318 (Bankr.

25  C.D. Cal. 2016) (citing *Pepper*).

26       Among other deficiencies in the evidence supplied by the Insiders, there is not

27  a scintilla of evidence regarding the prepetition transactions between the Debtor and

28  the Insiders.  The invoices attached to the Olivares declaration are all postpetition

1   invoices, so there is no way to compare prepetition versus postpetition practices as

2   the motion and declaration suggest that we do.  A comparison of the postpetition

3   invoices that the Trustee received from the Insiders to the postpetition invoices

4   attached to the Insiders' Administrative Claims Motion shows discrepancies and

5   changes in formatting suggesting accounting irregularities.  Moreover, the Trustee

6   has not been able to confirm that the charges are correct or fair.  And, again, the

7   Trustee's setoffs against the Insiders exceed their legitimate claims.

8       As to the heightened scrutiny for insider claims, the Insiders do not even begin

9   to address this issue.  Indeed, they attempt to hide their status.  Mr. Olivares

10  completely ignores the fact that he was the CFO of the Debtor at the same time that

11  he was CFO of the Insiders, pre and postpetition.  It is vital to understand the

12  accounting system that existed for these jointly operated and managed entities both

13  pre and postpetition.  Instead, the declarant pretends as if these transactions are third

14  party, arm's length arrangements, eliminating any basis for credibility.  Separate

15  evidentiary objections will be filed.  But, even if the evidence were accepted at face

16  value, the Insiders have not met their steep burden.

17

18

19

20

21

22

23

24

25

26

27

28

# IV.

## **CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that the Court enter an order denying the Insiders' Administrative Claims Motion and enter all other just and proper relief.

DATED:  May 5, 2020

DANNING, GILL, ISRAEL &
KRASNOFF, LLP


By:    /s/ Zev Shechtman
GEORGE E. SCHULMAN
ZEV SHECHTMAN
Attorneys for Michael A. McConnell,
Chapter 11 Trustee

22

# REQUEST FOR JUDICIAL NOTICE

Michael A. McConnell, as Chapter 11 Trustee (the "Trustee") for the estate of HVI Cat Canyon Inc. (the "Debtor") hereby requests that the Court take judicial notice of the following facts pursuant to Fed. R. Evid. 201:

1.      On July 25, 2019, the Debtor filed its voluntary Chapter 11 petition commencing this bankruptcy case.  The case was originally filed in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

2.      On August 14, 2019, the presiding court in this case (then in New York) entered an interim cash collateral order authorizing use of cash collateral pursuant to a budget.  Case doc. no. 43.  The Insiders supported the initial use of UBS's cash collateral.  Case doc. no. 274.

3.      On October 8, 2019, this Court entered its agreed order on consensual use of cash collateral.  Case doc. no. 375.

4.      On October 16, 2019, the Court entered its order directing the United States Trustee to appoint a Chapter 11 trustee. Case doc. no. 409.  The order approving the Trustee's appointment was entered on October 22, 2019.  Case doc. no. 431.

5.      On November 27, 2019, this Court entered its Final Order for Emergency Priming and Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee.  Case doc. no. 572.  A copy of that order is attached hereto as Exhibit "1."

6.      The order directing the appointment of a trustee (Case doc. no. 409) granted the motions of two creditors.  Case doc. nos. 356, 363.

7.      According to the Debtor, all of the following entities are insiders and affiliates of the Debtor:

a.      California Asphalt Production, Inc., formerly known as Greka Refining Company, formerly known as Santa Maria Mining Company, a California

1    corporation ("CAP"), operating in Santa Barbara County, California.  Case doc. no.

2    171, ECF p. 296 (identifying CAP as an insider and affiliate).  Exhibit "2."

3            b.      GIT, Inc., a Colorado corporation ("GIT"), operating Santa

4    Barbara County, California.  Case doc. no. 171, ECF p. 295 (identifying GIT as an

5    insider and affiliate).  Exhibit "2."  According to the Debtor, GIT is the 100% owner

6    of  GOGH, LLC, which is the 100% owner of the Debtor.  See initial cash collateral

7    motion, Case doc. no. 11, page 3, ¶9.

8            c.      GTL1, LLC, a Colorado limited liability company ("GTL1"),

9    operating in Santa Barbara County, California.  Case doc. no. 171,  ECF p. 295

10   (identifying GTL1 as an insider and affiliate).  Exhibit "2."

11           d.      GLR, LLC, a Delaware limited liability company ("GLR").  Case

12   doc. no. 171, ECF p. 294, 296 (identifying GLR as an insider and affiliate).  Exhibit

13   "2."

14           e.      GRL, LLC, a Delaware limited liability company ("GRL").  Case

15   doc. no. 171, ECF p. 294, 295 (identifying GRL as an insider and affiliate).  Exhibit

16   "2."

17       8.      Randeep S. Grewal signed the Debtor's Statement of Financial Affairs

18   identifying himself as Chairman of the Debtor.  Case doc. no. 171, ECF p. 288.

19   Exhibit "2."

20       9.      On January 9, 2020, the Trustee filed a complaint against GRL and GLR

21   seeking turnover, and avoidance of preferential and/or fraudulent transfers under 11

22   U.S.C. §§ 542, 547, 548 and 550, commencing adversary proceeding number 9:20-

23   ap-01006-MB (the "Avoidance Action").

24       10.      On February 3, 2020, GRL and GLR filed an answer and counterclaim

25   in the Avoidance Action seeking both payment of the royalties to GRL and payment

26   on account of the Lakeview rents to GLR.  The Status Conference in the Avoidance

27   Action was held on April 17, 2020.

28

11.     On January 21, 2020, the Trustee filed a complaint for declaratory relief, commencing adversary proceeding number 9:20-ap-01011-MB (the "365 Action").

12.     On February 14, 2020, GLR filed a motion for payment of administrative rent (case doc. no. 801).

13.     The Trustee ultimately stipulated, together with UBS and the California State Lands Commission, on one hand, with GLR, on the other hand, to maintain $52,500 in the Insider Escrow Deposit Account, on account of the alleged Lakeview rents (doc. no. 841), resulting in order dismissing of GLR's administrative rent request (doc. no. 851).

14.     UBS has filed a secured claim in the amount of $128,378,918.00, as Proof of Claim No. 83.

DATED:  May 5, 2020                     DANNING, GILL, ISRAEL &
                                        KRASNOFF, LLP


                              By:     /s/ Zev Shechtman
                                      GEORGE E. SCHULMAN
                                      ZEV SHECHTMAN
                                      Attorneys for Michael A. McConnell,
                                      Chapter 11 Trustee

## **DECLARATION OF MICHAEL A. MCCONNELL**

I, Michael A. McConnell, declare and state as follows:

1.    I am the Chapter 11 trustee ("Trustee") of HVI Cat Canyon, Inc. ("Debtor").  I was appointed as Trustee by order of this Court (doc. no. 431) entered on October 22, 2019 .

2.    I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently with respect to such facts.

3.    I make this declaration in support of the above opposition to the *Motion for Approval of Payment of Administrative Claims* (case doc. no. 946) (the "Insiders' Administrative Claims Motion") filed by GIT, Inc. ("GIT"), California Asphalt Production, Inc. ("CAP"), and GTL1, LLC ("GTL1") (collectively the "Insiders").

### **The Bankruptcy Filing, Cash Collateral Orders, and Trustee Appointment**

4.    On July 25, 2019, the Debtor filed its voluntary Chapter 11 petition commencing this bankruptcy case.  The case was originally filed in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

5.    On August 14, 2019, the presiding court in this case (then in New York) entered an interim cash collateral order authorizing use of cash collateral pursuant to a budget.  Case doc. no. 43.  The order provided, among other terms:

> The Cash Collateral Superpriority Claim shall have priority over all administrative expenses of any kind or any subsequently filed bankruptcy case under any Chapter of the Bankruptcy Code in any court of competent jurisdiction, including such administrative expenses of the kinds specified in, or allowable under, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code.

Case doc. no. 43 at paragraph 6.

1588870.1  26932

6.      The Insiders supported the initial use of UBS's cash collateral.  Case doc. no. 274.

7.      On October 8, 2019, this Court entered its agreed order on consensual use of cash collateral.  Case doc. no. 375.  That order also expressly provided for superpriorty status for UBS, ahead of section 503(b) administrative claims.  Case doc. no. 375, paragraph 6.

8.      On October 16, 2019, the Court entered its order directing the United States Trustee to appoint a Chapter 11 trustee.  Case doc. no. 409.  The order approving my appointment was entered on October 22, 2019.  Case doc. no. 431.

9.      On November 27, 2019, this Court entered its Final Order for Emergency Priming and Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee.  Case doc. no. 572.  That order provided for superpriority over section 503(b) claims, my estate's expenditures pursuant to a budget, in addition to a carve out for the estate's professional fees.  A copy of that order is attached to the Request for Judicial Notice as Exhibit "1."  Thus, at least three orders have been entered giving UBS superpriority and allowing my estate to use cash collateral pursuant to an approved budget.

10.      UBS has a secured claim of over $127,000,000 as of the petition date plus at least $9,088,210, excluding accrued interest, incurred postpetition pursuant to a credit agreement and six amendments to the credit agreement.  See, e.g., Case doc. no. 11; Proof of Claim No. 83.  The estate currently has no free and clear cash with which to cover operational expenses, let alone make distributions to lower priority claimants.

**The Debtor's Insiders and Affiliates**

11.      The order directing the appointment of a trustee (Case doc. no. 409) granted the motions of two creditors, who alleged a variety of problems with the

1  Debtor including, but not limited to, the Debtor's transactions with affiliates and

2  insiders.  Case doc. nos. 356, 363.

3      12.    According to the Debtor, all of the following entities are insiders and

4  affiliates of the Debtor:

5          a.    California Asphalt Production, Inc., formerly known as Greka

6  Refining Company, formerly known as Santa Maria Mining Company, a California

7  corporation ("CAP"), operating in Santa Barbara County, California.  Case doc. no.

8  171, ECF p. 296 (identifying CAP as an insider and affiliate).  RJN Exhibit "2."

9          b.    GIT, Inc., a Colorado corporation ("GIT"), operating Santa

10  Barbara County, California.  Case doc. no. 171, ECF p. 295 (identifying GIT as an

11  insider and affiliate).  RJN Exhibit "2."  According to the Debtor, GIT is the 100%

12  owner of  GOGH, LLC, which is the 100% owner of the Debtor.  See initial cash

13  collateral motion, Case doc. no. 11, page 3, ¶9.

14          c.    GTL1, LLC, a Colorado limited liability company ("GTL1"),

15  operating in Santa Barbara County, California.  Case doc. no. 171,  ECF p. 295

16  (identifying GTL1 as an insider and affiliate).  RJN Exhibit "2."

17          d.    GLR, LLC, a Delaware limited liability company ("GLR").  Case

18  doc. no. 171, ECF p. 294, 296 (identifying GLR as an insider and affiliate).  RJN

19  Exhibit "2."

20          e.    GRL, LLC, a Delaware limited liability company ("GRL").  Case

21  doc. no. 171, ECF p. 294, 295 (identifying GRL as an insider and affiliate).  RJN

22  Exhibit "2."

23      13.    CAP operates a refinery in Santa Maria, California.  The Debtor had

24  multiple written agreements with CAP until I rejected those agreements.  Case doc.

25  nos. 573, 613.  Prior to rejection, the Debtor, and then I, as Trustee, delivered and

26  sold crude oil and natural gas to the CAP refinery and third parties through CAP.

27      14.    The Debtor had an agreement with GIT, until I rejected that agreement.

28  Case doc. nos. 658, 782.  That included the Debtor storing its electronic documents

1  on GIT's server, as to which GIT has, for the time being, blocked my access to the

2  server to copy those documents.

3       15.     The Debtor had an arrangement with GTL1 whereby GTL1 transported

4  the Debtor's crude oil, until I rejected that agreement.  Case doc. nos. 658, 782.

5       16.     Randeep S. Grewal signed the Debtor's Statement of Financial Affairs

6  identifying himself as Chairman of the Debtor.  Case doc. no. 171, ECF p. 288.  RJN

7  Exhibit "2."

8       17.     Prior to my appointment, the Debtor and the Insiders shared

9  management.  Ernesto Olivares signed the declaration in support of the Insiders'

10  Administrative Claims Motion, as the CFO of GIT, CAP, and GTL1.  Case doc. no.

11  946 at page 13.  However, Mr. Olivares left out of his declaration that he was CFO of

12  the Debtor prior to my appointment.  For example, Mr. Olivares was CFO of the

13  Debtor when, six days before the Debtor's petition was filed, the Debtor transferred

14  property to two entities, GLR and GRL.  I have sued to unwind those transfers.

15  Adversary proceeding number 9:20-ap-01006-MB (the Avoidance Action discussed

16  below).

17            **Factual Disputes Regarding the Insiders' Administrative Claims Motion**

18       18.     CAP owes the Debtor at least $3,649,524.20 for postpetition crude oil

19  sales from August to November, 2019. Among other amounts owed to the estate, I

20  billed CAP $1.8 million for delivered oil in October 2019, but CAP only paid the

21  estate $300,000.  In addition, 20,393 barrels of oil were shipped to CAP in

22  November 2019 that were never paid for, at a value estimated to be $1,235,000.

23       19.     Despite numerous attempts to obtain payment from CAP, the payments

24  were never made.  Indeed my Financial Advisor and Chief Operating Officer, Tim

25  Skillman negotiated with Mr. Olivares the attached payment agreement dated

26  November 19, 2019, which was never signed.  See Exhibit "3" to declaration of Tim

27  Skillman.

28

20.     Mr. Olivares has issued multiple versions of invoices from GIT and GTL1 to the Debtor, for their purported services to the Debtor.  When I received a new invoice, the amount due often increased.  For example, compare GTL1's September 30, 2019 invoice attached to the Insiders' Administrative Claims Motion with the version I have.  See Exhibit "4" to James Baring declaration.  The new version attached to the Insiders' Administrative Claims Motion at page 98 demands $15,000 more than the earlier version.  Many of the invoices attached to the motion have different formatting than the versions previously received by me, as the Trustee.

21.     The GIT invoices contain myriad unexplained, suspicious, charges for Travel, Professional Fees, Legal Fees, Taxes, Employee relations.  All of these charges changed significantly from month to month and supporting documentation was not produced.

22.     The GIT invoices varied significantly from month to month and contain charges for services that GIT did not provide to HVI such as travel expenses, Professional Fees, Legal Fees, Taxes, and Employee relations.  All of these charges changed significantly from month to month.  See, e.g., GIT invoice at Exhibit "4," PDF page 12 of 18.  Attached as Exhibit "5" to the Declaration of James Baring is an email Mr. Baring sent to Mr. Olivares dated November 15, 2019 requesting supporting documentation for line items in a $242,987.21 GIT that Mr. Olivares previously estimated at $156,000.

23.     Since I have taken over operations, we have re-sourced back office support for approximately $120,000 less per month than charged by GIT.

24.     We also are investigating whether GTL1 was overcharging, given the close proximity of the HVI and CAP facilities.

25.     The CAP invoices for hot loads and temperature fees were not shared with the estate until I decided to reject the contracts with the Insiders.

26.     The Debtor's and Insiders' record keeping was so weak that there were no controls in place to confirm whether the services were in fact provided.

1       27.    We believe that further investigation into the billing practices of the

2  Insiders is needed.

3

4       I declare under penalty of perjury under the laws of the United States of

5  America that the foregoing is true and correct.

6       Executed on this 5th day of May, 2020, at Fort Worth, Texas.

7

8                   Michael A. McConnell

## DECLARATION OF TIM SKILLMAN

I, Tim Skillman, declare and state as follows:

1.      I am a partner at CR3 Partners, LLC ("CR3").  CR3 is a national turnaround and performance improvement firm.  CR3 offers advisory services and our professionals often serve as officers to assist clients in need of crisis management and other turnaround services.  I have served as Chief Restructuring Officer to two companies, and as a C-level executive for other companies in need of someone to help navigate crises in and out of bankruptcy.

2.      Since the Trustee's appointment I have been working as, or in a capacity similar to, a Chief Operating Officer for Michael A. McConnell, the Chapter 11 Trustee (the "Trustee") for the estate of HVI Cat Canyon, Inc. (the "Debtor").

3.      I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently with respect to such facts.

4.      I make this declaration in support of the above opposition to the *Motion for Approval of Payment of Administrative Claims* (case doc. no. 946) (the "Insiders' Administrative Claims Motion") filed by GIT, Inc. ("GIT"), California Asphalt Production, Inc. ("CAP"), and GTL1, LLC ("GTL1") (collectively the "Insiders").

5.      I have been working continuously on this case since my firm was engaged on October 21, 2019.  For most of that period, I have been working at the Debtor's Santa Maria Valley offices.

6.      As the financial advisor, I have been reviewing the Debtor's books and records and have been dealing with the overall business and strategic affairs of the Debtor, together with James Baring, also of CR3, the Trustee, the Trustee's other professionals, and the employees of the Debtor.

7.      CAP owes the Debtor at least $3,649,524.20 for postpetition crude oil sales from August to November, 2019.

8.    Despite numerous attempts to obtain payment from CAP, the payments were never made.  Indeed I negotiated with Mr. Olivares a payment agreement dated November 19, 2019, which was never signed.  Attached as Exhibit "3" hereto is a copy of an email from me to Mr. Olivares dated November 19, 2019, attached to which was the proposed settlement as well as another email from HVI's counsel to the Insiders' counsel describing our concerns regarding the Insiders' improper setoffs.  The Excel chart that was attached to Mr. Israel's November 19, 2019 email to Insiders' counsel is also attached.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of May, 2020, at Santa Maria, California.

_____/s/ Tim Skillman_____
Tim Skillman

## DECLARATION OF JAMES BARING

I, James Baring, declare and state as follows:

1.    I am a director at CR3 Partners, the restructuring/financial advisors, duly employed by Michael A. McConnell, as Chapter 11 trustee ("Trustee") of HVI Cat Canyon, Inc. ("Debtor").

2.    I am a Certified Turnaround Professional (CTP), and have over ten years' experience as a financial advisor and turnaround consultant in bankruptcy and other insolvency matters.

3.    I have personal knowledge of each of the facts herein, except those set forth on information and belief and, as to those matters, I believe them to be true. If called as a witness, I could and would testify competently with respect to such facts.

4.    I make this declaration in support of the above opposition to the Motion for Approval of Payment of Administrative Claims (case doc. no. 946) (the "Insiders' Administrative Claims Motion") filed by GIT, Inc. ("GIT"), California Asphalt Production, Inc. ("CAP"), and GTL1, LLC ("GTL1") (collectively the "Insiders").

5.    I have been working continuously on this case since my firm was engaged on October 21, 2019. For most of that period, I have been working at the Debtor's Santa Maria Valley offices.

6.    As the financial advisor, I have been reviewing the Debtor's books and records and have been dealing with the overall business and strategic affairs of the Debtor, together with Tim Skillman, also of CR3, the Trustee, the Trustee's other professionals, and the employees of the Debtor.

7.    CAP owes the Debtor at least $3,649,524.20 for postpetition crude oil sales from August to November, 2019. Despite numerous attempts to obtain payment from CAP, the payments were never made. Indeed Mr. Skillman negotiated with Mr. Olivares a payment agreement dated November 19, 2019, which was never signed. Attached as Exhibit "3" to the declaration of Tim Skillman is a copy of an email

from Mr. Skillman to Mr. Olivares dated November 19, 2019, attached to which was the proposed settlement as well as another email from HVI's counsel to the Insiders' counsel describing our concerns regarding the Insiders' improper setoffs. The Excel chart that was attached to Mr. Israel's November 19, 2019 email to Insiders' counsel is also attached.

8.    Mr. Olivares has issued multiple versions of invoices from GIT and GTL1 to the Debtor. When I received and reviewed a new invoice, the amount due often increased. For example, compare GTL1's September 30, 2019 invoice attached to the Insiders' Administrative Claims Motion with the version I have. See Exhibit "4" hereto, July-September 2019 Affiliate Invoices, at PDF page 15 of 18. The new version attached to the Insiders' Administrative Claims Motion at ECF page 98 demands $15,000 more than the earlier version. Many of the invoices attached to the motion have different formatting than the versions we previously received.

9.    The GIT invoices varied significantly from month to month and contain charges for services that GIT did not provide to HVI such as travel expenses, Professional Fees, Legal Fees, Taxes, and Employee relations. All of these charges changed significantly from month to month. See, e.g., GIT invoice at Exhibit "4," PDF page 12 of 18. Attached as Exhibit "5" hereto is an email I sent to Mr. Olivares dated November 15, 2019 requesting supporting documentation for line items in a $242,987.21 GIT invoice that Mr. Olivares previously estimated at $156,000.

10.    The GIT invoices contain myriad unexplained, suspicious, charges for Travel, Professional Fees, Legal Fees, Taxes, Employee relations. All of these charges changed significantly from month to month and supporting documentation was not produced.

11.    Since the Trustee has taken over operations, we have re-sourced back office support for approximately $120,000 less per month than GIT.

12.    We also are investigating whether GTL1 was overcharging, given the close proximity of the HVI and CAP facilities.

13.    The CAP invoices for hot loads and temperature fees were not shared with the estate until the Trustee decided to reject the contracts with the Insiders.

14.    The Debtor's and Insiders' record keeping was so weak that there were no controls in place to confirm whether the services were in fact provided.

15.    We believe that further investigation into the billing practices of the Insiders is needed.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of May, 2020, at Santa Maria, California.

_____
James Baring

# EXHIBIT "1"

1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@dgdk.com*
2  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *jtedford@dgdk.com*
3  AARON E. DE LEEST (State Bar No. 216832)
   *adeleest@dgdk.com*
4  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  *Proposed Attorneys for Michael A. McConnell,*
   *Chapter 11 Trustee*

8

9

10

11

12

13

**FILED & ENTERED**

**NOV 27 2019**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY handy     DEPUTY CLERK

**CHANGES MADE BY COURT**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

14  In re:

15  HVI CAT CANYON, INC.,

16          Debtor.

17

18

19

20

21

22

23

Case No. 9:19-bk-11573-MB

Chapter 11

**FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE**

Hearing
Date:    November 21, 2019
Time:    2:30 p.m.
Place:   Courtroom 201
         1415 State Street
         Santa Barbara, California

24

25

26

27

28

**0038**

This *Final Order for Emergency Priming and Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee* (this "<u>Final Order</u>") is entered as of November [21], 2019, with respect of the following facts:

On October 4, 2019 the Court denied the *Debtor's Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 Approving Use of Cash Collateral, Providing Adequate Protection and Setting Final Hearing Pursuant to Bankruptcy Rule 4001*[ECF No. 11] (the "<u>Cash Collateral Motion</u>") and the *Motion of the Debtor to Surcharge Collateral Pursuant to 11 U.S.C. §§ 506(c) and 552(b)* [ECF No. 55] (the "<u>Surcharge Motion</u>").

On October 8, 2019, the Court entered an *Agreed Order for Consensual Use of Cash Collateral* [ECF No. 375] (the "<u>Consensual Cash Collateral Order</u>"), whereby UBS AG, London Branch ("<u>UBS AG, London Branch</u>"), the debtor and debtor in possession (the "<u>Debtor</u>"), the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), and GIT, Inc. ("<u>GIT</u>"), in anticipation of a hearing on motions seeking appointment of a Chapter 11 trustee, agreed to use of cash collateral (as that phrase is defined in Section 363(a) of the Bankruptcy Code, "<u>Cash Collateral</u>") for an interim period ending October 25, 2019.  On October 16, 2019, the Court entered the *Agreed Order Granting Motion for Appointment of a Chapter 11 Trustee* [ECF No. 409] and approved appointment of Michael McConnell as the Chapter 11 trustee in this case (the "<u>Trustee</u>") on October 22, 2019 [ECF No. 431].

Shortly before authority for use of Cash Collateral expired under the Consensual Cash Collateral Order, the Trustee and UBS AG, London Branch learned that the Debtor did not have sufficient cash to fund payroll and other operating expenses scheduled for payment.  To address the immediate cash need, on October 24, 2019, the Trustee filed his *Notice of Motion and Trustee's <u>Emergency</u> Motion for (1) Authority to Accept a Partial Prepayment of the Amount Owed by California Asphalt Production, Inc. to the Estate, or in the Alternative for Authority to Obtain*

- 2 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0039

*"Credit" in the Form of Such Prepayment, and (2) Waiver of any Stay Imposed by FRBP 6004(h);*
*and Memorandum of Points and Authorities, Declaration of Tim Skillman, and Request for Judicial*
*Notice in Support Thereof* [ECF No. 439] (the "Emergency Motion").  Following the October 25,
2019 emergency hearing, the Court entered the *Order Granting Trustee's Emergency Motion for*
*(1) Authority to Accept a Partial Prepayment of the Amount Owed by California Asphalt*
*Production, Inc. to the Estate, or in the Alternative for Authority to Obtain "Credit" in the Form*
*of Such Prepayment, and (2) Waiver of any Stay Imposed by FRBP 6004(h)* [ECF No. 449], granting
authorizing the Trustee to accept a partial prepayment from California Asphalt Production, Inc.
("CAP").

On November 7, 2019, the Trustee filed his *Emergency Motion for an Order: (1)*
*Authorizing the Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing The*
*Continued Use of Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief*
[ECF No. 474] (the "Motion") for authorization to obtain post-petition financing from UBS AG,
Stamford Branch ("UBS AG, Stamford Branch" and together with UBS AG, London Branch,
"UBS") and continue to use the Cash Collateral of UBS AG, London Branch.

On November 8, 2019, the Court conducted an initial interim hearing on the Motion and
entered the *Interim Order on Trustee's Emergency Motion for an Order: (1) Authorizing the*
*Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing Continued Use of*
*Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related Relief* [ECF No. 480]
(the "Interim Order"), authorizing up to $267,317 borrowings through a further interim hearing on
November 12, 2019.

On November 12, 2019, the Court conducted the further interim hearing and authorized
post-petition financing on an interim basis.  On November 18, 2019, the Court entered the *Second*
*Interim Order on Trustee's Emergency Motion for an Order: (1) Authorizing the Trustee to Obtain*

- 3 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0040

*Secured Priming Superpriority Financing; (2) Authorizing Continued Use of Cash Collateral; (3)*

*Scheduling a Final Hearing; and (4) Granting Related Relief* [ECF No. 524] (the "<u>Second Interim</u>

<u>Order</u>").

Based upon the Motion, and the financing pursuant to the credit agreement attached to the

Motion and the Trustee's use of Cash Collateral, such use being found necessary to avoid

immediate and serious harm to the estate and potential harm to the public health and safety as

contemplated by Bankruptcy Rule 4001(b) and (c), a final hearing to consider approval of the

Motion having been held on November 21, 2019 (the "<u>Final Hearing</u>"), notice and opportunity for

hearing being sufficient under the circumstances, and upon the findings of fact and conclusions of

law made by the Court at the interim hearings and the Final Hearing, all of which are incorporated

herein by reference, and good cause appearing therefor,

**IT IS HEREBY FOUND AND ORDERED AS FOLLOWS:**

~~1.~~      <u>Motion Granted</u>.  The Motion is granted on a final basis and the Facility (as defined

below) and the Credit Agreement attached as Exhibit 3 to the Trustee's Declaration (as amended,

supplemented or otherwise modified from time to time, the "<u>Credit Agreement</u>") are approved

subject to limitations expressly set forth herein.  Any objection to the Motion with respect to entry

of this Final Order that have not been withdrawn, waived or settled, and any reservation of rights

included therein, are hereby denied and overruled except as expressly set forth herein.  ~~Except as~~

~~specifically amended, supplemented, or otherwise modified by this Final Order, all provisions of~~

~~the Second Interim Order remain in full force and effect and are hereby ratified by this Final Order~~

~~and incorporated herein by reference as though set forth fully below.~~

2.      <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory

predicates for the relief granted herein are section 364 of the Bankruptcy Code and Bankruptcy

- 4 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0041

Rule 4001(c). Venue of this Chapter 11 proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

3.    <u>Hearing Held; Notice</u>.  The Final Hearing was held pursuant to Bankruptcy Rules 4001(c)(2).  Notice of the Final Hearing and the relief requested in the Motion was given as set forth in the proof of service filed by the Trustee.

4.    <u>No Credit Available on More Favorable Terms</u>.  The Trustee, on behalf of the Debtor and the Debtor's estate, is unable to find sufficient financing from sources other than UBS AG, Stamford Branch on terms more favorable than the terms for the term loan facility (the "<u>Facility</u>") described in the Credit Agreement.

5.    <u>Need for Post-Petition Financing and Use of Cash Collateral</u>.  This financing is critical for the Debtor to continue its operations in the ordinary course.  The Facility, the Trustee's entry into the Credit Agreement, and related relief is necessary to avoid immediate and irreparable harm to the Debtor's estate, its employees, and all parties-in-interest.  The Facility is the best source of financing available to the Debtor under the circumstances and was entered into in good faith and at arm's-length.

6.    <u>Protective Advances</u>.  The advances under the Facility shall constitute advances to protect and preserve the collateral under that certain First Lien Credit Agreement dated as of May 20, 2016 and that certain Second Lien Credit Agreement dated as of May 20, 2016 among the Debtor, Rincon Island Limited Partnership, GOGH, LLC and UBS AG, London Branch (collectively, the "<u>Prepetition Credit Agreements</u>" and the obligations arising thereunder the "<u>Prepetition Obligations</u>") and shall remain subject to any guarantee provided thereunder.  For the avoidance of doubt, all proceeds of the Facility shall constitute Cash Collateral.

7.    <u>Authorization for Emergency Financing</u>.  The Trustee is authorized on a final basis to borrow, and UBS AG, Stamford Branch is authorized to advance, up to $3 million in financing,

- 5 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0042

under the Credit Agreement, subject to the terms of this Final Order, and in accordance with the

budget attached hereto as Exhibit 1 (including all terms and conditions set forth therein and as may

be updated from time to time in accordance with the Credit Agreement, the "Budget"), subject to a

line-item variance of ten percent (10%) of the expenses set forth in the Budget tested on a

cumulative basis by disbursement categories contained in the Budget (the "Permitted Variance").

The Trustee and UBS AG, Stamford Branch are authorized to extend the availability period under

the Credit Agreement by up to two weeks and increase the amount of financing by an aggregate

amount of up to $500,000 upon mutual agreement of the Trustee and UBS AG, Stamford Branch

without further order of this Court. All advances provided by UBS AG, Stamford Branch under

the Facility prior to the Final Hearing, including but not limited to the $197,516 advanced by UBS

AG, Stamford Branch on an emergency basis pursuant to the Interim Order and the $994,346

advanced by UBS AG, Stamford Branch pursuant to the Second Interim Order, shall be subject to

the terms of the Second Interim Order remain subject to the terms of those orders, as incorporated

into this Final Order and, notwithstanding anything to the contrary in this Final Order., shall remain

senior in priority to all other liens. Any advances provided by UBS AG, Stamford Branch under

the Facility after November 21, 2019 shall be subject to the terms of this Final Order and, to the

extent Santa Barbara has valid, senior, perfected, and non-avoidable liens for ad valorem taxes

under applicable law, shall be junior in priority and subject to such valid, senior, perfected, and

non-avoidable ad valorem tax liens in favor of Santa Barbara. Immediately upon entry of this Final

Order, the Trustee shall, and is hereby authorized on a final basis to, execute and deliver to UBS

AG, Stamford Branch the Credit Agreement and all other loan documents required to be executed

and delivered under the Facility. The Trustee and counsel acting on behalf of the Trustee are further

authorized to take any such actions that may be necessary to implement the Facility and borrow

funds under the Credit Agreement as approved in this Final Order, including without limitation to

- 6 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0043

issue, execute and deliver any such certificates, borrowing requests or other documents and directions that may be requested by UBS AG, Stamford Branch. Nothing in this Final Order shall create any obligation of UBS to advance or lend any money to the Trustee or the Debtor, and any such advances or loans shall be made by UBS AG, Stamford Branch only in accordance with the terms and conditions of the Credit Agreement and this Final Order. UBS respectfully notes that, should it agree to any additional financing beyond that provided pursuant to the terms of the Credit Agreement as in effect on the date hereof, and it undertakes no commitment to do so, it anticipates the interest rate for such financing will be higher than that provided hereunder to reflect limitations on the lien granted by this Order and the additional risk associated with such financing. Any funds advanced or loaned by UBS AG, Stamford Branch shall constitute a bona fide extension of credit to a non-affiliated borrower for purposes of the secured creditor exemption under the Comprehensive Environmental Response, Compensation Liability Act and comparable federal, state and local law. UBS AG, Stamford Branch shall not be deemed an operator or owner of the Debtor or any of its properties or incur any environmental or similar liabilities, including but not limited to, liability for environmental compliance, remediation, restoration or natural resource damages under any federal, state or local law solely as a result of providing funding, credit or advances to the Trustee.

8.      Based on the record before this Court, it appears (and the Trustee on behalf of the Debtor has stipulated) that the terms of the Facility, the Credit Agreement and this Final Order are fair and reasonable and are supported by reasonably equivalent value and fair consideration. The Court further finds that the Trustee's agreement to the terms of the Facility and Credit Agreement on behalf of the Debtor is a sound exercise of business judgment and should be approved as set forth herein.

- 7 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0044

9.      Amendment of the Credit Agreement.  Following entry of this Final Order, the Trustee is authorized to enter into any non-material amendment or modification to the Credit Agreement and the loan documents entered into in connection therewith without further order of this Court.  The Trustee shall promptly provide notice of any such amendment or modification to the Court, the United States Trustee, the Committee and Harry E. Hagen, as Treasurer-Tax Collector of the County of Santa Barbara, California ("Santa Barbara").  To the extent that such modification or amendment is material, such material modification or amendment shall only be permitted pursuant to an order of this Court on notice pursuant to Local Rule 2002-1(b) and a hearing.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the Credit Agreement shall be effective unless set forth in writing, signed by the Trustee and UBS AG, Stamford Branch.  For the avoidance of doubt, an amendment of the availability period of the Facility by up to two weeks and an increase of the amount of the Facility by up to $500,000 in accordance with paragraph 7 of this Final Order shall not constitute a material amendment.  Notwithstanding anything to the contrary in the Credit Agreement, UBS's prior consent to file a Chapter 11 plan is only required if the proposed Chapter 11 plan does not provide for payment of the Obligations in full in cash on the effective date.

10.     Use of Funds.  The Trustee may use funds advanced under the Facility, on the terms and conditions set forth herein and in the Credit Agreement, *provided that* all such funds are used to pay approved operating expenses solely in accordance with the Budget (including all terms and conditions set forth therein).  The Trustee is authorized to use funds advanced under the Facility to pay, or to fund a segregated account to pay, the reasonable fees and expenses for the Trustee's professionals and the Committee' professionals, only to the extent such fees and expenses for the Trustee's professional and the Committee's professionals are included in the Budget and accrued prior to an Event of Default.  The provisions for escrowing of funds shall differ for the Trustee's

- 8 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0045

professionals and for the Committee professionals, each of whom agrees to such difference. The

Budget amount for the Committee professionals shall be $70,000 for the five-week period (which

includes the total Investigation Budget (as defined below)) and shall be requested promptly by the

Trustee and escrowed immediately upon receipt. Accordingly, once such funds are escrowed, the

Committee professionals shall not enjoy the benefits of the Carve-Out set forth in paragraph 16 of

this Final Order. The liens of UBS and GLR are subordinated in such escrow funds to the extent

professional fees and expenses are awarded to the professionals. With regard to the Trustee's

professionals, in addition to the escrowed fund, they shall enjoy the benefit of the Carve-Out set

forth in paragraph 16 of this Final Order. For the avoidance of doubt, the funds advanced under

the Facility shall not be used for payment of any expense not specifically included and/or not

approved for payment under the Budget or otherwise authorized by this Final Order.

11.    <u>Liens, Collateral and Obligations</u>. Without limiting the approval set forth above, the

Court grants as follows:

(i)    Except as set forth below, pursuant to section 364(c) and 364(d) of the Bankruptcy
Code, UBS AG, Stamford Branch is granted valid and perfected first priority
priming and senior security interests and liens (the "<u>Financing Liens</u>") in all property
of the estate of the Debtor, including, but not limited to all of the Debtor's rights in
tangible and intangible assets, including without limitation, all prepetition and post-
petition assets of the Debtor's estate, whether existing on or as of the Petition Date
or thereafter acquired, including without limitation, the Debtor's interest in oil and
gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating
thereto), wells, accounts receivable, other rights to payment, any right to receive any
residual of any retainer provided to any professionals after payment of such
professional's allowed fees and expenses, cash, inventory, general intangibles,
contracts, servicing rights, swap and hedge proceeds and termination payments,
servicing receivables, securities, chattel paper, owned real estate, real property
leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights,
trademarks, trade names, rights under license agreements and other intellectual
property, claims and causes of action (including those arising under sections 510 or
542 through 553 of the Bankruptcy Code, except as noted below), commercial tort
claims, and the proceeds of all of the foregoing (the "<u>Collateral</u>") or proceeds
thereof. The Financing Liens granted to UBS AG, Stamford Branch are valid,
perfected and enforceable first priority priming and senior liens on all the Collateral
that are superior to all other prepetition or post-petition liens, claims or security

- 9 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0046

interests in favor of any other lienholder, other than the Carve-Out (as defined below) and any valid, senior, perfected and non-avoidable ad valorem tax liens in favor of Santa Barbara (subject to the limitation set forth in paragraph 38 below). For the avoidance of doubt, the Financing Liens granted to UBS AG, Stamford Branch under the Second Interim Order for funds advanced prior to the Final Hearing shall remain senior in priority to any valid and perfected ad valorem tax liens. Notwithstanding anything to the contrary herein, the Financing Liens granted herein shall not attach to (a) avoidance claims of the estate against any party other than the Debtor's current and former insiders and affiliates or (b) the proceeds thereof. The Financing Lien shall only secure the Obligations (as defined below). UBS agrees, for the benefit of the Trustee and the Committee, that it will not look to recover from avoidance claims or proceeds without first making a reasonable good faith effort to collect from Prepetition Collateral (as defined below) to satisfy the Obligations.

(ii)     The Financing Liens against the assets of the Debtor and the Collateral shall be, and hereby are, confirmed, and extend to and secure all obligations and indebtedness of the Trustee on behalf of the Debtor and the Debtor's estate to UBS AG, Stamford Branch under the Facility and the Credit Agreement (the "Obligations").  The Financing Liens shall be, and are hereby determined to be, first priority priming and senior liens that are superior to all other liens, claims or security interests, pre- or post-petition, other than the Carve-Out (as defined below) and any valid, senior, perfected and non-avoidable ad valorem tax liens in favor of Santa Barbara (subject to the limitation set forth in paragraph 38 below), except as specifically set forth in this Final Order.  This Final Order shall be deemed to grant and perfect, and be sufficient and conclusive evidence of the validity, perfection and priority of the Financing Liens.  UBS AG, Stamford Branch may, but shall not be required, to file or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Financing Liens granted to them pursuant to this Final Order, and the stay imposed under section 362 of the Bankruptcy Code is hereby modified solely to permit the same.  If UBS AG, Stamford Branch shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of and the Financing Liens, the Financing Liens granted herein shall be deemed perfected at the time and on the date of entry of this Final Order. Upon request by UBS AG, Stamford Branch, the Trustee is authorized, without the further consent of any party, to take any actions and to execute and deliver such instruments as may be necessary to enable UBS AG, Stamford Branch to further perfect, preserve and enforce the Financing Liens granted to UBS AG, Stamford Branch by this Final Order.

(iii)    For all Obligations, UBS AG, Stamford Branch is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "Financing Superpriority Claim") having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Trustee on behalf of the Debtor and/or the Debtor, whether now in existence or incurred by the Trustee on behalf of the Debtor and/or the Debtor after the Petition Date, and over any and all

- 10 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0047

administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(b), 507(a), 364(c)(1), 564(c), or 726 of the Bankruptcy Code, other than the Carve-Out (as defined below). Notwithstanding anything to the contrary herein, the Financing Superpriority Claim granted herein shall not be payable from (a) avoidance claims of the estate against any party other than the Debtor's current and former insiders and affiliates or (b) the proceeds thereof. UBS agrees, for the benefit of the Trustee and the Committee, that it will not look to recover from avoidance claims or proceeds without first making a reasonable good faith effort to collect from Prepetition Collateral (as defined below) to satisfy the Obligations. UBS agrees to observe any requirements of marshaling under applicable law.

12.    Use of Cash Collateral.  The Trustee may use Cash Collateral, on the terms and conditions set forth herein solely in accordance with the Budget until the date that is the earliest of (a) November 29, 2019, (b) the occurrence of an Event of Default (as defined in the Credit Agreement), and (c) the breach or failure of the Trustee or the Debtor to comply with the terms of this Final Order (the date of the occurrence of the earliest of (a), (b) and (c), the "Termination Date").  To the extent the Debtor holds an interest, all funds and cash investments of Debtor, including any funds on deposit at any banks or other institutions as of the Petition Date, are Cash Collateral of UBS AG, London Branch within the meaning of 11 U.S.C. § 363(a).  In addition, all cash proceeds of the Prepetition Collateral (as defined below) (and investments thereof) received by the Debtor, the Trustee, or the estate of the Debtor after the Petition Date are Cash Collateral of UBS AG, London Branch within the meaning of 11 U.S.C. § 363(a).  The Trustee shall not use any Cash Collateral except as permitted herein or as otherwise approved by this Court.

13.    Compliance with the Budget.  Except as otherwise set forth herein, the Trustee is hereby authorized to use all Cash Collateral until the Termination Date to pay the ordinary course operating expenses of Debtor's estate solely in accordance with the Budget (including all terms and conditions set forth therein), subject to the Permitted Variance.

14.    Limitations on Use of Proceeds and Cash Collateral.  The Trustee shall notify Huron Consulting Group ("Huron"), via email to both mkehl@huronconsultinggroup.com and

- 11 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0048

azughayer@huronconsultinggroup.com, of any payments that exceed $7,500 not less than 36 hours

prior to initiating such payment (a "Proposed Payment").  If Huron does not object to the Proposed

Payment within 36 hours by email to the Trustee at michael.mcconnell@kellyhart.com, the Trustee

may proceed to make such payment.  Should Huron object to the Proposed Payment, such payment

shall not be made without further order of the Court.  The Trustee and UBS consent to judicial

intervention on an expedited basis to determine whether such Proposed Payment may proceed.  Any

payments to be made under the Budget to Santa Barbara, departments or agencies of the County of

Santa Barbara, and the Santa Barbara County Air Pollution Control District (the "APCD") must be

approved by Huron.  If approved, such payments shall be made timely in accordance with the

Budget.  For the avoidance of doubt, no payments shall be made to GIT pursuant to this Final Order

for prepetition work or claims other than reimbursement with regard to the Debtor's employees.

None of the Cash Collateral or the proceeds of the Facility, subject only to the Investigation Budget

(as defined below), shall be used (i) to challenge UBS's claims and/or liens or (ii) to prevent or

hinder UBS from exercising its rights or remedies.

15.    Absent further order of the Court or written consent of UBS for payments

specifically designated as a royalty payment or surface lease payment to an insider or affiliate,

neither Debtor nor the Trustee shall make the following payments directly or indirectly:  (i) any

royalty payments or surface lease payments to insiders or affiliates of the Debtor or (ii) any payment

of professional fees for the Debtor or any committee, but the Trustee shall hold any such payments

provided for in the Budget in an interest-bearing escrow or segregated account.  All such issues are

expressly reserved for future determination.  The Budget includes certain items for accounting

purposes only; this Final Order does not permit payment of these items.  Notwithstanding anything

to the contrary, the proceeds of the Facility and Cash Collateral shall only be used to pay those

items in the Budget that have been specifically approved by UBS or Huron and to escrow payments

- 12 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0049

as set forth above.  For the avoidance of doubt, neither the Debtor nor the Trustee has any authority to make, directly or indirectly, any (i) insider or affiliate royalty payments; (ii) insider or affiliate surface lease payments; (iii) professional fee payments, except payments authorized for the Trustee's professionals or Committee's professionals under this Final Order; or (iv) other payments which are listed below the line in the Budget for accounting purposes but not authorized by this Final Order, regardless of whether any such payments listed in (i)-(iv) are included in the Budget.

16.    <u>Carve-Out</u>.  There shall be a subordination of the Financing Liens and Financing Superpriority Claim granted to UBS AG, Stamford Branch on the Collateral, and the Adequate Protection Liens (as defined below) granted to UBS AG, London Branch on the Post-Petition Collateral and GLR on the Prepetition Collateral, and Adequate Protection Superpriority Claim (as defined below) granted to UBS AG, London Branch on the Post-Petition Collateral for the aggregate amount of reasonable professional fees and expenses for the Trustee's professionals, provided that such amount for the Trustee's professionals shall not exceed 25% of the amounts set forth in the Budget and accrued prior to occurrence of an Event of Default (the "<u>Carve-Out</u>").  If, for any reason, any portion of the sum of $70,000 budgeted for the Committee's professionals (up to $50,000 of which is for the Committee's Investigation Budget (as defined below)) is not funded to an escrowed account by the Trustee pursuant to paragraph 10 hereof, then such amount shall also constitute a part of the Carve-Out.  Notwithstanding the foregoing, following the occurrence of an Event of Default, the Carve-Out shall include any withheld portion of the fees and expenses for the Trustee's professionals accrued prior to such date and set forth in the Budget, and an additional amount not exceed $15,000 in the aggregate from and after a written notice of default.  It is the intention of this Final Order that the combination of the escrowed amounts under paragraph 10 plus the Carve-Out equals 100% of the Budgeted fees and expenses for the Committee's professionals and 125% of the Budgeted fees and expenses for the Trustee's professionals accrued prior to an

- 13 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0050

Event of Default plus the $15,000 provided in the prior sentence after a written notice of default, if applicable. All such professionals having consented to the differential mechanics. Nothing in this Final Order shall be construed to impair the ability of UBS to object to any fees, expenses, reimbursements, or compensation sought by the Trustee. The Carve-Out shall not be used to investigate or commence or continue any action or proceeding against UBS, subject only to the Investigation Budget (as defined below).

17.    <u>Reporting Requirements</u>. As a condition to use funds advanced under the Facility and Cash Collateral, the Trustee shall provide to UBS and the Committee a variance report reasonably acceptable to UBS on a weekly basis during the period for which use of such funds and Cash Collateral is permitted under this Final Order and any subsequent order, which shall be delivered by the Wednesday of the following week. Reporting of monthly sales revenue shall be no later than 5 business days following the end of the month. In addition, the Trustee and its representatives and agents shall provide to UBS and the Committee weekly reports, oral and/or written, regarding the status of operations and financial matters as well as any additional information reasonably requested by UBS.

18.    <u>Additional Covenants</u>.

(i)    No later than November 18, 2019, the Trustee shall file an application in form and substance reasonably acceptable to UBS to retain persons acceptable to UBS on terms acceptable to UBS to provide a reserve report regarding the Debtor's hydrocarbon assets.

(ii)    No later than November 18, 2019, the Trustee shall file an application in form and substance reasonably acceptable to UBS to retain persons acceptable to UBS on terms acceptable to UBS to conduct a Phase I environmental study regarding the Debtor's hydrocarbon assets and operations.

(iii)    On or before November 18, 2019, the Trustee shall provide one or more reports to UBS as to the Trustee's efforts to stabilize and improve Debtor's operations and revenues, including efforts to maximize sale revenues for the benefit of the estate.

- 14 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0051

(iv)    No later than November 18, 2019, the Trustee shall provide UBS with a 13-week cash flow budget in form and substance reasonably acceptable to UBS.

(v)    The Debtor shall obtain and collect a minimum monthly sales revenue of $750,000, measured as of the last day of each month.

19.   <u>Adequate Protection</u>.  UBS AG, London Branch is entitled, pursuant to 11 U.S.C. §§ 361 and 363(e), to adequate protection from any diminution in value of its interests in the collateral securing the Prepetition Obligations, including the Cash Collateral (collectively, the "<u>Prepetition Collateral</u>"), including, without limitation, any such diminution resulting from use by Debtor or the Trustee of Cash Collateral and any other collateral, and the imposition of the automatic stay pursuant to 11 U.S.C. § 362 (such diminution in value the "<u>Adequate Protection Obligations</u>").  Based on the Court's prior findings regarding the value of Prepetition Collateral in connection with the Cash Collateral hearings, Santa Barbara is adequately protected for priming and use of Cash Collateral under this Final Order.

20.   <u>Adequate Protection – Replacement and Additional Liens</u>.  As partial adequate protection for the Adequate Protection Obligations, effective upon the commencement of this case and without the necessity of the execution by Debtor, the Trustee or UBS AG, London Branch of any mortgages, security agreements, pledge agreements, financing statements or otherwise, the following additional and replacement security interests and liens are hereby granted to UBS AG, London Branch (the "<u>Senior Adequate Protection Liens</u>"), subject only to (i) liens on the Collateral in favor of UBS AG, Stamford Branch to secure the Obligations, (ii) valid and perfected non-avoidable liens in existence on the Petition Date that are senior in priority to the liens securing the prepetition claims of UBS AG, London Branch, and (iii) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by 11 U.S.C. § 546(b) that are senior in priority to the liens securing the prepetition claims of UBS AG, London Branch (subject to the limitation set forth in paragraph 38 below) ((i)–(iii) collectively, the "<u>Permitted Liens</u>"):  (a)

- 15 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0052

to the full extent of any diminution in value of the Prepetition Collateral, a perfected first priority

senior security interest in and lien upon all cash of Debtor and any investment of the funds of

Debtor, whether existing on the Petition Date or thereafter acquired as of the date hereof and as of

the Petition Date; and (b) to the full extent of any diminution in value of the Prepetition Collateral,

a perfected first priority senior security interest in and lien upon all other pre- and post-petition

property of Debtor, whether existing on the Petition Date or thereafter acquired, including, without

limitation, all accounts, cash, Cash Collateral, deposit accounts, chattel paper, instruments,

documents, investment property, supporting obligations, customer lists, letter of credit rights,

inventory, fixtures, equipment, general intangibles, goods, patents, copyrights and trademarks as

well as all products and proceeds of any of the foregoing and books and records relating to any of

the foregoing and to Debtor's business and the proceeds of all of the foregoing (collectively, the

"Post-Petition Collateral").  For the avoidance of doubt, in accordance with paragraph 24 of this

Final Order, the Senior Adequate Protection Liens granted herein shall not attach to avoidance

claims of the estate or proceeds thereof.  The Senior Adequate Protection Liens granted under this

Final Order shall be junior only to the Permitted Liens and the Carve-Out.

21.    GLR, LLC ("GLR") shall be entitled to, as adequate protection for its interest in

Prepetition Collateral, effective upon the appointment of the Trustee and without the necessity of

the execution by Debtor, the Trustee or GLR of any mortgages, security agreements, pledge

agreements, financing statements or otherwise, the following additional and replacement security

interests and liens which are hereby granted to GLR (the "Junior Adequate Protection Liens" and

together with the Senior Adequate Protection Liens, the "Adequate Protection Liens"), subject only

to the Permitted Liens to the full extent of any diminution in value of the Prepetition Collateral, and

only to the extent of the validity, priority, and enforceability of GLR's prepetition lien in the

Prepetition Collateral, a perfected replacement security interest in and lien upon the Prepetition

- 16 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0053

Collateral and all proceeds thereof, whether existing on the Petition Date or thereafter acquired. For the avoidance of doubt, in accordance with paragraph 24 of this Final Order, the Junior Adequate Protection Liens granted herein shall not attach to avoidance claims of the estate or proceeds thereof. The Junior Adequate Protection Liens shall be junior only to the Permitted Liens, the Carve-Out, and the Senior Adequate Protection Liens.

22.    <u>Adequate Protection for the Use of Cash Collateral – Superpriority Claim</u>.  To the extent the Post-Petition Collateral granted to UBS AG, London Branch herein does not provide adequate protection of its interests in the Cash Collateral, the Adequate Protection Obligations shall constitute a super-priority administrative expense claim under Section 507(b) of the Bankruptcy Code ("<u>Adequate Protection Superpriority Claim</u>").  The Adequate Protection Superpriority Claim shall have priority over all administrative expenses of any kind or any subsequently filed bankruptcy case under any Chapter of the Bankruptcy Code in any court of competent jurisdiction, including such administrative expenses of the kinds specified in, or allowable under, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), or 507(b) of the Bankruptcy Code, subject only to the Financing Superpriority Claim and the Carve-Out.  Additionally, no:  (i) costs or expenses of administration which have been or may be incurred (a) in the Chapter 11 Case; (b) after conversion of the Chapter 11 Case to a case proceeding under Chapter 7 of the Bankruptcy Code, or (c) in any other proceeding related hereto; and/or (ii) priority claims as defined in Section 507(a) of the Bankruptcy Code are, or will be, senior to or *pari passu* with the Adequate Protection Superpriority Claim other than the Financing Superpriority Claim and the Carve-Out.  For the avoidance of doubt, in accordance with paragraph 24 of this Final Order, the Adequate Protection Superpriority Claims granted herein shall not attach to avoidance claims of the estate or proceeds thereof.

23.    <u>Perfection of Adequate Protection Liens</u>.  This Final Order shall be deemed to grant and perfect, and be sufficient and conclusive evidence of the validity, perfection and priority of the

- 17 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0054

Adequate Protection Liens as of the Petition Date.  UBS AG, London Branch may, but shall not be required, to file or record financing statements, mortgages, notices of lien, or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Adequate Protection Liens granted to them pursuant to this Final Order, and the stay imposed under section 362 of the Bankruptcy Code is hereby modified solely to permit the same.  If UBS AG, London Branch shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of and the Adequate Protection Liens, the Adequate Protection Liens granted herein shall be deemed perfected at the time and on the date of entry of this Final Order.  Upon request by UBS AG, London Branch, the Trustee is authorized, without the further consent of any party, to take any actions and to execute and deliver such instruments as may be necessary to enable UBS AG, London Branch to further perfect, preserve and enforce the Adequate Protection Liens granted to UBS AG, London Branch by this Final Order.

24.    The Adequate Protection Liens granted by this Final Order and the Adequate Protection Superpriority Claim granted by this Final Order shall not attach to avoidance claims of the estate or proceeds thereof.  For the avoidance of doubt, nothing in this Final Order shall prevent UBS from asserting claims against or participating in such claims or proceeds under any other basis, including with respect to the Financing Liens.  Without limiting the foregoing, this provision shall not be retroactive, such that nothing in the Final Order shall alter or change the status of, or impose any limitation or agreement on, any lien or claim against such avoidance actions of proceeds thereof with regard to use of Prepetition Collateral or Cash Collateral granted by any order entered in this case prior to the date hereof.  Nothing herein shall impair or modify UBS AG, London Branch's rights to seek additional adequate protection pursuant to section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to UBS AG, London Branch hereunder is

- 18 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0055

insufficient to compensate for any diminution in value of its interests in the Cash Collateral or any other Prepetition Collateral during this case or any successor case.

25.    <u>Termination of Cash Collateral Use</u>.  On the Termination Date, the Trustee's right to use the Cash Collateral on the terms and conditions set forth in this Final Order shall terminate automatically.  By written agreement, UBS AG, London Branch may agree to waive such termination in full or permit only limited use of Cash Collateral in any manner following such event.

26.    <u>Budget Amendments</u>.  UBS may, but is not required to, by written agreement, amend the Budget, including to, among other things, extend the date through which Cash Collateral may be used and to increase the amount of Cash Collateral that may be used thereunder; *provided, however*, that any amendment to the Budget made pursuant to the authority set forth in this Final Order shall be subject to the following conditions and limitations:

(a) any such amendment shall not alter the nature and types of payments that were authorized under this Final Order; and

(b) any such amendment shall require the consent of the Trustee.

The foregoing conditions and limitations are intended to apply only to consensual changes to the Budget that are made pursuant to the authority of this Final Order.

27.    Upon entry of a written amendment in compliance with the foregoing, the new agreed budget shall constitute the Budget for all purposes under this Final Order and the Credit Agreement.

28.    Promptly following the amendment of the Budget in accordance with the foregoing, the Trustee shall promptly file notice with this Court, and provide notice of such entry to all parties entitled to notice.

- 19 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0056

29.    <u>Reservation of Rights</u>.  The right of the Trustee to seek additional or different use of Cash Collateral is specifically preserved, *provided that* upon filing of any such request, UBS AG, London Branch may by written notice terminate authorization to use Cash Collateral pursuant to this Final Order, or may agree to permit only use of Cash Collateral in any limited manner following such event; *provided, however*, any action seeking additional or different use of Cash Collateral without the express written consent of UBS shall immediately result in the occurrence of the Termination Date.

30.    <u>Remedies on Event of Default</u>.  If an Event of Default occurs, UBS AG, Stamford Branch shall have the right without any notice of further order of the Court to take any and all actions and pursue all remedies permitted under the Credit Agreement and applicable law in response to such Event of Default, subject to the requirements of paragraph 31 below.  UBS AG, Stamford Branch shall have the right to exercise any remedies under the Credit Agreement and applicable law on five days' notice to the Trustee, the Committee, the United States Trustee, and Santa Barbara.

31.    The automatic stay of section 362(a) of the Bankruptcy Code shall be and hereby is modified and vacated without further order, notice or application to the Court to the extent necessary to allow UBS to perform any act authorized by this Final Order.  If an Event of Default occurs, UBS AG, Stamford Branch shall have the right to seek an order on five days' notice to the Trustee, the Committee, the United States Trustee, and Santa Barbara lifting the automatic stay to permit UBS AG, Stamford Branch to foreclose on the Collateral or alternatively, compelling the Trustee to sell the Collateral pursuant to section 363(b) of the Bankruptcy Code.  Such motion may be accompanied by an affidavit on behalf of UBS AG, Stamford Branch stating that an Event of Default has occurred and setting forth the facts of such Event of Default.  Any party opposing the

- 20 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0057

relief requested by UBS AG, Stamford Branch shall have the burden of proof why the automatic

stay should not be lifted with respect to the Collateral.

32.    <u>Further Assurances</u>.  No further actions shall be required to reflect the Financing

Liens or Adequate Protection Liens granted to UBS or the Obligations or Adequate Protection

Obligations incurred by the Trustee or the Debtor.  Notwithstanding the foregoing, the Trustee and

UBS are granted authority to take any such actions and execute any such documents as they may

deem appropriate to reflect the Financing Liens and the Adequate Protection Liens granted to UBS

or the Obligations incurred by the Trustee or the Debtor, including without limitation execution

and delivery of one or more notes, deeds of trust, financing agreements and all other actions as

UBS may reasonably request.

33.    <u>Section 506(c) Waiver</u>.  All rights of the Debtor, the Trustee, and the estate to

surcharge the collateral of UBS are hereby waived for rights accruing during the period that the

Trustee receives advances or is authorized to use Cash Collateral pursuant to this Final Order or

the Credit Agreement, provided that, as consideration for such waiver, the Trustee shall be

authorized to obtain advances and use Cash Collateral for expenses in the Budget prior to any Event

of Default or Termination Date, and further provided that the waiver shall apply whether or not the

Trustee actually uses such advance or Cash Collateral for a specific expense set forth in the Budget

or uses them for another purpose so long as such funds are actually disbursed by the Trustee.

34.    <u>Right to Credit Bid</u>.  UBS shall have the right to credit bid up to the full amount of

its outstanding Obligations and Prepetition Obligations in connection with any sale of the Debtor's

assets, the Prepetition Collateral, the Post-Petition Collateral or the Collateral under section 363 of

the Bankruptcy Code.  If UBS transfers all or any portion of its claims, the right of the transferee

to credit bid shall remain subject to a challenge "for cause" under section 363(k) of the Bankruptcy

Code solely based upon the transfer, the actions of the transferee, or events arising after such

- 21 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0058

transfer.  All defenses to any such challenge to the credit bid rights of a transferee are preserved.

Nothing herein shall constitute consent by UBS to any sale of such assets, Prepetition Collateral,

the Post-Petition Collateral or the Collateral.

35.    <u>Successors and Assigns</u>.  The provisions of this Final Order shall be binding upon

UBS, the Debtor, the Trustee and their respective successors and assigns (including any other

trustee hereinafter appointed or elected for the Debtor's estate) and inure to the benefit of UBS, the

Trustee and the Debtor and their respective successors and assigns.

36.    <u>Compliance with Laws</u>.  Nothing in this Final Order or the Budget shall permit the

Debtor or the Trustee to violate 28 U.S.C. § 959(b), and nothing in this Final Order or the Budget

shall in any way diminish the obligation of any entity, including the Debtor and the Trustee, to

comply with environmental laws.

37.    <u>Priority</u>.  Except as set forth herein with respect to the Financing Liens, nothing in

this Final Order shall determine or effect the relative priority of any senior prepetition lien or post-

petition lien, and all rights are expressly reserved in that regard.  All rights are expressly reserved

with respect to whether any asset is cash collateral for any entity other than UBS and thus any

entitlement of such other entities to adequate protection, including without limitation any

superpriority claim.

38.    To the extent Santa Barbara has valid, senior, perfected, and non-avoidable liens for

ad valorem taxes, penalties, interest, and attorneys' fees under applicable law, the Financing Liens

and Adequate Protection Liens granted to secure Obligations incurred under the Facility after the

Final Hearing on November 21, 2019 in accordance with this Final Order shall be junior in priority

and subject to such valid, senior, perfected, and non-avoidable ad valorem tax liens in favor of

Santa Barbara only to the extent of such lien on the Collateral.  For the avoidance of doubt, the

Financing Liens, Financing Superpriority Claim, Adequate Protection Liens, and the Adequate

- 22 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0059

Protection Superpriority Claim granted to UBS AG, Stamford Branch under the Second Interim

Order to secure all Obligations advanced by UBS AG, Stamford Branch pursuant to the Interim

Order and Second Interim Order prior to November 21, 2019 are valid, perfected and enforceable

first priority priming and senior liens on all the Collateral that are superior to all other prepetition

or post-petition liens, claims or security interests in favor of any other lienholder (including any

valid, perfected, enforceable and non-avoidable ad valorem tax liens), other than the Carve-Out.

Nothing in this Final Order shall determine the priority, amount, and extent of the Santa Barbara

ad valorem tax liens or claims.  All rights with regard to priority, amount, and extent of the Santa

Barbara tax liens or claims are fully preserved.

39.    Effect of Final Order.  If any or all of the provisions of this Final Order are hereafter

reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay, shall not affect

(i) the validity of any Adequate Protection Obligations incurred before the actual receipt of written

notice by UBS AG, London Branch of the effective date of such reversal, modification, vacatur or

stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby.

Notwithstanding any such reversal, modification, vacatur or stay, any use of the Facility proceeds

or Cash Collateral or Obligations or Adequate Protection Obligations incurred by Debtor or the

Trustee to UBS before the actual receipt of written notice by UBS of the effective date of such

reversal, modification, vacatur or stay, shall be governed in all respects by the original provisions

of this Final Order, and UBS shall be entitled to all the rights, remedies, privileges and benefits

granted in section 363(m) of the Bankruptcy Code and this Final Order with respect to all uses of

the Facility proceeds or Cash Collateral and the Obligations or Adequate Protection Obligations.

40.    Except as expressly provided in this Final Order, the Financing Liens, the

Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims

and all other rights and remedies of UBS granted by the provisions of this Final Order shall survive,

- 23 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0060

and shall not be modified, impaired or discharged by (i) the entry of an order converting the case

to a case under chapter 7, dismissing of the case, or by any other act or omission or (ii) the entry of

an order confirming a plan in the case.  The terms and provisions of this Final Order shall continue

in this case, or in any superseding chapter 7 case under the Bankruptcy Code, and the Financing

Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection

Superpriority Claims, and all other rights and remedies of UBS granted by the provisions of this

Final Order shall continue in full force and effect until the Obligations and the Adequate Protection

Obligations are indefeasibly paid in full.

41.    Findings of Fact and Conclusions of Law. This Final Order shall constitute findings

of fact and conclusions of law of the Court and shall take effect immediately upon execution hereof.

42.    Filing. This Final Order may be filed in any state or local jurisdiction in order to

evidence and perfect UBS's liens and security interests, as granted and confirmed herein.  At the

request of UBS's counsel, the clerk of court shall issue a certified copy of this Final Order and shall

execute such other certificates or affidavits of authenticity as may be reasonably necessary to put

this Final Order in a form that may be accepted by the applicable filing office.

43.    Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy

Code.  The terms of the Facility, Credit Agreement, and this Final Order were negotiated in good

faith and at arms' length among the Trustee and UBS.  Financing provided under the Facility and

the Credit Agreement shall be deemed to have been extended in good faith and for valid business

purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code.

44.    Stipulations.  Effective upon the expiration of the Challenge Period (as defined

below), the Trustee will be deemed to have admitted, acknowledged, agreed and stipulated that: (i)

the amount due to UBS under the Prepetition Credit Agreements, as of June 30, 2019, is

approximately $127 million, plus such allowable interest, fees and charges as may accrue

- 24 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0061

thereafter; (ii) the Prepetition Obligations constitute legal, valid, enforceable and binding

obligations of the Debtor; (iii) no offsets, defenses or counterclaims to the Prepetition Obligations

exist; (iv) no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction

or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (v) the

Prepetition Credit Agreements are valid and enforceable by UBS AG, London Branch against the

Debtor; (vi) the liens and security interests in the Prepetition Collateral securing the Prepetition

Obligations (the "Prepetition Liens") were perfected as of the Petition Date and constitute legal,

valid, binding, enforceable and perfected liens in and to the Prepetition Collateral and are not

subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or

subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and such liens

had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens

expressly permitted by the Prepetition Credit Agreements (to the extent any such permitted liens

were legal, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens

as of the Petition Date or thereafter pursuant to section 546(b) of the Bankruptcy Code); (vii) the

Prepetition Obligations constitute allowed secured claims against the Debtor's estate to the extent

of the Collateral; and (viii) the Debtor and its estate have no claim, objection, challenge or cause

of action against UBS or any of its affiliates, parents, subsidiaries, partners, controlling persons,

agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under

applicable state or federal law (including, without limitation, any recharacterization, subordination,

avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the

Bankruptcy Code), in connection with any of the Prepetition Credit Agreements (or the transactions

contemplated thereunder), the Prepetition Obligations or the Prepetition Liens, including without

limitation, any right to assert any disgorgement or recovery.

- 25 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0062

1    45.    Effect of Stipulations on Third Parties.  The stipulations, admissions, agreements

2    and releases contained in this Final Order shall be binding upon all other parties in interest,

3    including, without limitation, any statutory or non-statutory committees appointed or formed in this

4    case, and any other person or entity acting or seeking to act on behalf of the Debtor's estate,

5    including the Trustee in all circumstances and for all purposes unless:  (a) any party in interest

6    (subject in all respects to any agreement or applicable law that may limit or affect such entity's

7    right or ability to do so), in each case, with requisite standing granted by the Court or, in the case

8    of the Committee, upon the filing of a motion seeking such standing, has timely and properly filed

9    an adversary proceeding, contested matter, or as to the Committee, motion seeking standing

10    (subject to the limitations contained herein) by no later than a date that is the later of (i) January

11    13, 2020; (ii) any later date agreed to by UBS AG, London Branch in writing in its sole discretion;

12    and (iii) any such later date ordered by the Court for good cause shown after notice and an

13    opportunity to be heard, *provided that* the motion seeking such relief is filed before the expiration

14    of any applicable period as set forth in clauses (i)–(iii) of this sentence (the "Challenge Period"),

15    (A) objecting to or challenging the validity, perfection, enforceability, priority or extent of the

16    Prepetition Obligations, or (B) otherwise asserting or prosecuting any action for preferences,

17    fraudulent transfers or conveyances, other avoidance power claims through or on behalf of the

18    Debtor's estate against UBS AG, London Branch (collectively, the "Challenge Proceeding"); and

19    (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge

20    Proceeding; *provided, however*, that any pleadings filed in connection with any Challenge

21    Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges

22    or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever,

23    waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge

24    Period, such filing shall immediately result in the occurrence of the Termination Date.

- 26 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0063

46.    If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding: (i) any and all Challenge Proceedings or potential Challenge Proceedings shall be deemed to be forever waived and barred; (ii) all stipulations, admissions, agreements and releases contained in this Final Order shall be irrevocably and forever binding on all parties in interest; (iii) the Prepetition Liens shall be deemed to constitute valid, binding, and enforceable encumbrances, and not subject to avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtor shall be deemed to have released, waived and discharged UBS AG, London Branch from any and all obligations and liabilities to the Debtor and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date.

47.    If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order shall nonetheless remain binding and preclusive on all persons and entities, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. UBS AG, London Branch reserves all of its rights to contest on any grounds any Challenge Proceeding. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in this case, standing or authority to pursue any claim or cause of action belonging to the Debtor or its estate.

48.    The Trustee may use the funds advanced under the Facility to investigate (i) the claims and liens of UBS AG, London Branch and (ii) potential claims, counterclaims, causes of action or defenses against UBS AG, London Branch; *provided that* no more than an aggregate of $5,000 of the funds advanced under the Facility may be used by the Trustee in respect of any such investigation (the "Trustee's Investigation Budget") and $50,000 of the funds advanced under the

- 27 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0064

Facility may be used by the Committee in respect of any such investigation (the "Committee's Investigation Budget" and together with the Trustee's Investigation Budget, the "Investigation Budget"). The Committee's Investigation Budget represents the total amount of funds advanced under the Facility that may be used by the Committee in respect of any such investigation during this bankruptcy case.

49. No Stay. There is no stay of this Final Order, including no stay pursuant to Federal Rule of Bankruptcy Procedure 6004(h) (to the extent applicable).

# # #

Date: November 27, 2019

Martin R Barash
United States Bankruptcy Judge

- 28 -

0065

1                                    ###

2   <u>Agreed as to form only:</u>

3
    **PACHULSKI STANG ZIEHL & JONES LLP**
4
    By: _____
5   Jeffrey N. Pomerantz
    Maxim B. Litvak
6   10100 Santa Monica Blvd., 13th Floor
    Los Angeles, California 90067
7   (310) 277-6910
8   Email: jpomerantz@pszjlaw.com
            mlitvak@pszjlaw.com
9

10  **COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

11
    **SNOW SPENCE GREEN LLP**
12
13  By:_____
    W. Ross Spence
14  2929 Allen Parkway, Suite 2800
    Houston, Texas 77019
15  (713) 335-4800
16  Email: ross@snowspencelaw.com

17  **ATTORNEYS FOR THE COUNTY OF SANTA BARBARA, CALIFORNIA; HARRY E.
    HAGEN, AS TREASURER-TAX COLLECTOR OF THE COUNTY OF SANTA**
18  **BARBARA, CALIFORNIA; AND THE SANTA BARBARA COUNTY AIR POLLUTION
    CONTROL DISTRICT**
19

20  <u>Agreed as to form only, and shall not indicate that this Final Order satisfies condition under
    the Credit Agreement nor that the condition is waived:</u>
21

22  **O'MELVENY & MYERS LLP**

23  By:_____
24  Evan M. Jones
    400 South Hope Street, 18th Floor
25  Los Angeles, California 90071-2899
    (213) 430-6000
26  Email: ejoines@omm.com

27  **ATTORNEYS FOR UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH**
28                                - 28 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0066

1                                          ###

2

3   <u>Agreed as to form only:</u>

4   **PACHULSKI STANG ZIEHL & JONES LLP**

5   By:_____
    Jeffrey N. Pomerantz

6   Maxim B. Litvak
    10100 Santa Monica Blvd., 13th Floor

7   Los Angeles, California 90067
    (310) 277-6910

8   Email: jpomerantz@pszjlaw.com

9           mlitvak@pszjlaw.com

10  **COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

11

12  **SNOW SPENCE GREEN LLP**

13  By:_____
    W. Ross Spence

14  2929 Allen Parkway, Suite 2800
    Houston, Texas 77019

15  (713) 335-4800
    Email: ross@snowspencelaw.com

16

17  **ATTORNEYS FOR THE COUNTY OF SANTA BARBARA, CALIFORNIA; HARRY E.
    HAGEN, AS TREASURER-TAX COLLECTOR OF THE COUNTY OF SANTA**

18  **BARBARA, CALIFORNIA; AND THE SANTA BARBARA COUNTY AIR POLLUTION
    CONTROL DISTRICT**

19

20  <u>Agreed as to form only, and shall not indicate that this Final Order satisfies condition under</u>

21  <u>the Credit Agreement nor that the condition is waived:</u>

22  **O'MELVENY & MYERS LLP**

23  By:_____

24  Evan M. Jones
    400 South Hope Street, 18th Floor

25  Los Angeles, California 90071-2899
    (213) 430-6000

26  Email: ejoines@omm.com

27  **ATTORNEYS FOR UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH**
                                          - 28 -

28
    ─────────────────────────────────────────────────────────────────
    FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
    CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

# EXHIBIT 1

| HVI CAT CANYON INC. | Forecast | Forecast | Forecast | Forecast | Forecast | TOTAL |
|---|---|---|---|---|---|---|
| weeks 14-18 budget | Week 14 | Week 15 | Week 16 | Week 17 | Week 18 | |
| Notes | week starting | 28-Oct-19 | 4-Nov-19 | 11-Nov-19 | 18-Nov-19 | 25-Nov-19 | |
| 1 | Beginning Cash Balance | 36,784 | - | - | - | - | 36,784 |
| 2 | **Cash Inflows** | | | | | | |
| 3 | SMV | - | 12,000 | - | 1,460,858 | - | 1,472,858 |
| | Redu | - | - | - | 49,917 | - | 49,917 |
| | Belridge | - | - | - | 58,155 | - | 58,155 |
| | Total Cash Inflows | - | 12,000 | - | 1,568,931 | - | 1,580,931 |
| 4 | Royalties | - | (118,392) | - | (141,171) | - | (259,562) |
| 5 | Escrow Royalties | - | (27,690) | - | (27,148) | - | (54,838) |
| | Total Net Cash Inflows | - | (134,081) | - | 1,400,611 | - | 1,266,530 |
| | **Cash Outflows** | | | | | | |
| 6 | Operating Expenses | | | | | | |
| 7 | Payroll Checks | - | 76,000 | - | 76,000 | - | 152,000 |
| 8 | Payroll Taxes | 28,763 | - | 29,000 | - | 29,000 | 86,763 |
| | Garnishment & Child Support | - | 2,011 | - | 1,006 | - | 3,017 |
| 9 | Surface Rents | - | 75,634 | - | - | - | 75,634 |
| 10 | Consultants | - | 9,008 | - | 9,008 | - | 18,015 |
| 11 | Phones | - | 2,500 | - | 2,000 | - | 4,500 |
| 12 | Power PG&E | - | 30,000 | - | 170,000 | - | 200,000 |
| 13 | Power SoCalEdison | - | 20,000 | - | - | - | 20,000 |
| | Waste Management | - | 2,100 | - | - | 2,100 | 4,200 |
| | Water | - | 1,000 | 2,000 | - | - | 3,000 |
| | SouthernCalGas | - | 75 | 75 | - | 75 | 225 |
| | Portable Restrooms | - | 1,100 | - | 1,500 | - | 2,600 |
| | Alarms | - | - | 500 | - | - | 500 |
| | Cafeteria | - | - | - | 250 | - | 250 |
| | Copies | - | - | - | 250 | - | 250 |
| 14 | Chemicals | - | 10,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| 15 | Pumps | - | 25,000 | 10,000 | 10,000 | 10,000 | 55,000 |
| 16 | Gasoline | - | 25,000 | 12,500 | 12,500 | 12,500 | 62,500 |
| 17 | Transportation | - | - | - | 150,000 | - | 150,000 |
| 18 | Vacuum Trucks | - | - | - | 56,000 | - | 56,000 |
| 19 | LCR | - | - | - | 575,000 | - | 575,000 |
| 20 | Electricians | - | 10,000 | 5,000 | 10,000 | 5,000 | 30,000 |
| 21 | Welders | - | 5,000 | 2,500 | 2,500 | 2,500 | 12,500 |
| 22 | Supplies (Belts-Parts) | - | 2,000 | 1,500 | 1,500 | 1,500 | 6,500 |

29

**EXHIBIT "1"**

| Notes | HVI CAT CANYON INC.<br>weeks 14-18 budget<br>week starting | Forecast<br>Week 14<br>28-Oct-19 | Forecast<br>Week 15<br>4-Nov-19 | Forecast<br>Week 16<br>11-Nov-19 | Forecast<br>Week 17<br>18-Nov-19 | Forecast<br>Week 18<br>25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|---|
| 23 | Parts (Compressor, Pipe, others) | - | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 |
| 24 | Clean Chemical towers | - | 3,000 | 1,500 | 1,500 | 1,500 | 7,500 |
| 25 | Vehicle maintenance | - | 16,000 | - | 8,000 | - | 24,000 |
| | Drink Water | - | 150 | - | 150 | - | 300 |
| 26 | Weed abatement | - | 15,000 | 10,000 | 10,000 | 10,000 | 45,000 |
| 27 | Well Analysis | - | 3,000 | - | 3,000 | - | 6,000 |
| 28 | Compliance | - | 25,000 | - | 25,000 | - | 50,000 |
| | Fire Department | - | - | - | - | - | - |
| 29 | APCD | - | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 |
| 30 | SBP - APCD | - | - | - | 146,436 | - | 146,436 |
| 31 | SBP - P&D | - | - | - | 159,843 | - | 159,843 |
| 32 | SBP - FD | - | - | - | 16,440 | - | 16,440 |
| 33 | SBP - EHS | - | - | - | 10,475 | - | 10,475 |
| | SBP - Tax | - | - | - | - | - | - |
| 34 | Escrow - Surface Rents | - | 7,500 | - | - | - | 7,500 |
| 35 | Netherland and Sewell Reserve Report | - | - | - | - | 25,000 | 25,000 |
| | Total Operating Expenses | 28,763 | 373,078 | 86,575 | 1,470,357 | 111,175 | 2,069,948 |
| | **G&A Expenses** | | | | | | |
| | Bank Charges & fees | 100 | 100 | 100 | 100 | 100 | 500 |
| 36 | Insurances | - | 9,000 | 9,000 | 19,000 | - | 37,000 |
| 37 | Chapter 11 Trustee Professionals | 228,834 | 108,894 | 108,894 | 108,894 | 108,894 | 664,410 |
| 38 | Unsecured Creditor Committee Professionals | - | - | - | 50,000 | - | 50,000 |
| 39 | U.S. Trustee Payment | - | 25,000 | - | - | - | 25,000 |
| 40 | Backoffice & Administrative | - | - | - | 156,000 | - | 156,000 |
| | Interest | - | - | - | - | - | - |
| | Total G&A | 228,934 | 142,994 | 117,994 | 333,994 | 108,994 | 932,910 |
| 41 | **Health and Safety** | | | | | | |
| 42 | SMV Health and Safety | - | 28,000 | 88,000 | 56,000 | 16,000 | 188,000 |
| 43 | Belridge Health and Safety | - | 4,500 | 5,000 | 20,000 | 3,000 | 32,500 |
| 44 | Redu Health and Safety | - | 31,047 | 3,000 | 16,000 | 40,000 | 90,047 |
| | Total Health and Safety | - | 63,547 | 96,000 | 92,000 | 59,000 | 310,547 |
| 45 | Total Cash Outflows | 257,697 | 579,618 | 300,569 | 1,896,351 | 279,169 | 3,313,405 |
| | Net Cash Flow | (257,697) | (713,699) | (300,569) | (495,740) | (279,169) | (2,046,875) |
| | Beginning Cash Balance | 36,784 | - | - | - | - | 36,784 |

| HVI CAT CANYON INC. | Forecast | Forecast | Forecast | Forecast | Forecast | TOTAL |
|---|---|---|---|---|---|---|
| weeks 14-18 budget | Week 14 | Week 15 | Week 16 | Week 17 | Week 18 | |
| Notes | *week starting* | 28-Oct-19 | 4-Nov-19 | 11-Nov-19 | 18-Nov-19 | 25-Nov-19 | |
| Net Cash Flow | (257,697) | (713,699) | (300,569) | (495,740) | (279,169) | (2,046,875) |
| Net Borrowing/(Pay Down) | 220,913 | 713,699 | 300,569 | 495,740 | 279,169 | 2,010,091 |
| Ending Cash Balance | - | - | - | - | - | - |
| 46 | Loan Balance | 220,913 | 934,613 | 1,235,182 | 1,730,922 | 2,010,091 | 2,010,091 |

| | | |
|---|---|---|
| 1 | Book Bank Balance Reconciliation | |
| | Starting Balance 10/24/19 | 18,022 |
| | Transfer for net amount for Sept Revenue | 23,810 |
| | Transfer #1 against October Revenue | 60,000 |
| | Transfer #2 against October Revenue | 20,000 |
| | Balance as of 10/25/19 | 121,832 |
| | Total Check Disbursements on 10/25/19 | 85,048 |
| | Net Available book balance 10/28/19 | 36,784 |

2  Forecast dependent on actual volume of delivered barrels, price and gravity adjustments.
The price per barrel is calculated for Santa Maria Valley using the average price per barrel posted by Chevron, Union 76, Exxon and Shell for Midway Sunset crude less $7.
The price per barrel for Redu is calculated using the average price per barrel posted by the same 4 corporations for Buena Vista crude less $5.75.
The price per barrel for Belridge is calculated using the average price per barrel posted by the same 4 corporations for Buena Vista crude less $0.75.
All pricing is subject to adjustments based upon the gravity of the oil produced. The prior month's revenue is collected on the 20th of the following month. See the October 2019 Revenue Projection schedule for a detailed build up of the forecasted revenue.

3  Affiliate California Asphalt Production, Inc. advanced $80k of the forecasted revenue for October to HVI in week 13 and an additional $12k in week 15 to cover a surface lease payment to Boisseranc.

4  In aggregate, monthly royalties are approximately 13% of production which is approximately 1 month's revenue less the LCR shipments.

5  Escrow Royalties are based upon an insider's 2.5% overriding royalty on 1 month's production which is approximately 1 month's revenue less the LCR shipments.

6  Due to cash flow constraints in Week 14, the majority of forecasted disbursements for the week were rolled into the forecasted disbursements for week 15.

7  Bi-weekly payroll for HVI's 41 employees, including insider Alex Dimitrijevic's compensation that, as the President and COO of HVI, is subject to a 15 day objection period prior to disbursement.

| | HVI CAT CANYON INC. | Forecast | Forecast | Forecast | Forecast | Forecast | TOTAL |
|---|---|---|---|---|---|---|---|
| | weeks 14-18 budget | Week 14 | Week 15 | Week 16 | Week 17 | Week 18 | |
| Notes | week starting | 28-Oct-19 | 4-Nov-19 | 11-Nov-19 | 18-Nov-19 | 25-Nov-19 | |

**8** Schedule of payroll taxes due to State and Federal Taxing Authorities due on week 13:

| | |
|---|---|
| Federal Income Tax Withholding | 8,999.87 |
| Social Security Tax Withholding | 12,284.18 |
| Medicare Tax Withholding | 2,872.94 |
| Total Form 941 Liability | 24,156.99 |
| | |
| Federal Unemployment Insurance Liability | 35.30 |
| | |
| State Income Tax Withholding | 3,215.65 |
| CA SDI Tax Withholding | 990.69 |
| State Unemployment Insurance | 364.81 |
| Total Form DE-9 Liability | 4,571.15 |
| | |
| Total Liability for 10-25-2019 Payroll | 28,763.44 |

**9** Surface Rent Sub schedule

| Surface Lease Owner: | Amount | Timing |
|---|---|---|
| Boisseranc | $ 11,956 | Due on the 1st of each month |
| Buganko | $ 41,878 | Due on the 1st of the month. This amount includes $27k for unpaid surface lease payments from prior post-petition budgets. |
| Medema (1/2) Thomson (1/4) (- McLaughlin (1/4) | $ 7,500 | Due on the 1st of each month |
| (3) Etchandy family members | $  - | Lease to be rejected, no amount due |
| State College, LLC (Evelyn Roper) | $  - | $1,5851.33 due on an annual basis - has been paid for 2019. |
| Adam Family Trust | $  - | No amount due |
| Orcutt Fee, LLC | $  - | $5,000 due on Annual - paid for 2019 |
| Marianne Friedl | $  - | $3,700 due on Annual - paid for 2019 |
| C.M.T LLC | $  - | $100 will be due in January 2020. |
| Manfred Sander | $ 6,800 | Due before the end of October 2019 |
| E & B Natural Resources | $  - | Under review, no amount currently due |
| Grundoon, LLC (Firestone) | $ 7,500 | Due on the 1st of each month |
| Morganti Ranch | $  - | $5,500 on a monthly basis but lease is currently shut-in so no amount due. |
| Morganti Ranch | $  - | Under review, no amount currently due |
| Morganti Ranch | $  - | Under review, no amount currently due |
| Railroad | $  - | $454 due in December 2019 |
| (4) Righetti family members | $  - | $3,000 per quarter, next payment due in December 2020 |
| (3) Judy A. Rogers, Ronald H. Souza, Jr., Michael J. Souza | $  - | $750 due in January 2020 |
| Roland and Sandy Miller | $  - | $300 due in December 2019 |
| Multiple Bradley Lands | $  - | No amount due in October or November 2019 |
| **Total amount due in week 14** | $ 75,634 | |

**10** HVI pays the following 3 consultants on a biweekly basis:

| Name and Description: | Amount: |
|---|---|

32

| HVI CAT CANYON INC.<br>weeks 14-18 budget<br>Notes *week starting* | Forecast<br>Week 14<br>28-Oct-19 | Forecast<br>Week 15<br>4-Nov-19 | Forecast<br>Week 16<br>11-Nov-19 | Forecast<br>Week 17<br>18-Nov-19 | Forecast<br>Week 18<br>25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|
| i) William LaFleur - Landman | $ 3,000 | | | | | |
| ii) Innovative Consulting Solutions - production accountant | $ 1,923 | | | | | |
| iii) Alliance-Hydro - Geologist | $ 4,085 | | | | | |
| Total Amount due to Consultants | $ 9,008 | | | | | |

11  Amounts include HVI's office line at their East Clarke office and cell phones for all field employees.

12  Per adequate assurance order, $30k deposit due in Week 15 and $170k due in Week 17 (prior to the 20th).

13  Amount due for prior month's power usage.

14  Chemicals used for H2S removal that are critical to production - currently on COD terms with chemicals vendor

15  Pump maintenance and rework costs that are critical to production.

16  HVI makes daily gasoline purchases for the tankers used to haul oil and gas production with a weekly run rate of approximately $12,500. Week 15 assumes weekly run rate and payment of approximately $12.5k of overdue invoices.

17  Amount due to affiliate GTL1 for transportation costs for hauling crude and LCR, vehicle leasing and insurance costs and demurrage charges. GTL1 pays drivers $17.50/hr. for demurrage but charges HVI $80/hr.

18  Amount due to affiliate GTL1 for vacuum trucks, HVI pays $80/hr., has a monthly run rate between 600-700 hours, and week 17 assumes a 700 hour month.

19  Per Ernesto Olivares, as of 10/27/19, HVI has received 7,476 BBLs of Light Crude ("LCR") deliveries priced at $76.50 per BBL. Approximately 100 additional BBLs are estimated to be delivered before month's end.

20  The weekly run rate for electricians is approximately $5k and week 15 assumes payment of approximately $5k of overdue invoices.

21  The weekly run rate for welders is approximately $2.5k and week 15 assumes payment of approximately $2.5k of overdue invoices.

22  Assumes a weekly run rate of $1.5k with an additional approximately $1k of overdue invoices to be paid in week 15.

23  Assumes a weekly run rate of $5k.

24  Assumes a weekly run rate of $1.5k for H2S fluid and week 15 assumes payment of $1.5k of invoices due in week 14.

25  Assumes $8k bi-weekly run rate for the maintenance costs for all oil field service vehicles, including rigs. Week 15 assumes payment of an overdue invoice for approximately $8k for rig maintenance.

26  Weekly run rate for critical safety and fire protection for HVI's 700+ wells and reduction of Notice of Voilation ("NOV") fines. Currently understaffed in this area and run rate assumes increasing team size from 1 to approximately 2 five man teams.

27  Per Alex D, up to date on well inspections through week 14 so run rate assumes bi-weekly maintenance needed in November 2019.

28  Weekly run rate for 3rd party consultants for critical compliance requirements such as SPC ("Spill Prevention and Countermeasure") plans and APCD ("Air Pollution and Control District") plans that need to be submitted before year-end to mitigate future fines and penalties from regulatory bodies.

29  Related to administrative invoicing for APCD post-petition inspections related to 35 permits necessary to mitigate potential fines and penalties.

30  Passed due post-petition Permit to Operate ("PTO") fees from the APCD for the following 13 HVI leases, excluding 1 lease quitclaimed to an insider. Subject to revision if additional permit fees for quitclaimed leases to insiders are identified:

| Facility | Fee |
|---|---|
| Armelin Lease PTO No. 07775 - R8 | $ 7,895 |

| HVI CAT CANYON INC. weeks 14-18 budget | Forecast Week 14 | Forecast Week 15 | Forecast Week 16 | Forecast Week 17 | Forecast Week 18 | TOTAL |
|---|---|---|---|---|---|---|
| Notes | week starting | 28-Oct-19 | 4-Nov-19 | 11-Nov-19 | 18-Nov-19 | 25-Nov-19 | |
| | Battles Lease PTO No. 08219 - R11 | $ 7,323 | | | | | |
| | Bradley Lands/Bradely Consolidated Lease PTO No. 07 | $ 41,123 | | | | | |
| | Continental Lease PTO No. 08222 - R11 | $ 5,425 | | | | | |
| | Cross Development Lease PTO No. 08863 - R9 | $ 458 | | | | | |
| | East Valley Farms Lease PTO No. 08864 - R9 | $ 458 | | | | | |
| | Fullerton Lease PTO No. 08868 - R13 | $ 7,551 | | | | | |
| | Jim Hopkins Lease PTO No. 09310 - R8 | $ 13,796 | | | | | |
| | Lakeview Gas Plant PTO No. 10108 - R8 | $ 38,032 | | | | | |
| | Lakeview Lease PTO No. 10096 - R8 | $ 7,385 | | | | | |
| | Los Flores PTO No. 07307 - R12 | $ 16,074 | | | | | |
| | McKenzie Lease PTO No. 10079 - R8 | $ 458 | | | | | |
| | Olean Lease PTO No. 10080 - R8 | $ 458 | | | | | |
| | Total due for APCD PTOs | $ 146,436 | | | | | |
| | Excluded PTO fee due to a quitclaimed lease to an insider. | | | | | | |
| | Golco Lease PTO No. 10078 - R8 | $ 4,679 | | | | | |
| 31 | Amount is based upon the following County of Santa Barbara Planning and Development post-petition facility and lease inspection fees. Subject to revision if | | | | | | |
| | additional permit fees for quitclaimed leases to insiders are identified: | | | | | | |
| | Account Number/Permit ID Number: | Amount: | | | | | |
| | Permit ID # 19ACB-00000-00914 for 500 post-petition | | | | | | |
| | un-inspected facilities | $ 110,452 | | | | | |
| | 19ACT-00880 | $ 210 | | | | | |
| | 19ACT-00922 | $ 6,560 | | | | | |
| | 19ACT-00920 | $ 10 | | | | | |
| | 19ACT-00914 | $ 350 | | | | | |
| | 19ACT-00921 | $ 6,280 | | | | | |
| | 19ACT-00926 | $ 12,640 | | | | | |
| | 19ACT-00928 | $ 9,032 | | | | | |
| | 19ACT-00938 | $ 108 | | | | | |
| | 19ACT-00930 | $ 10 | | | | | |
| | 19ACT-00932 | $ 10 | | | | | |
| | 19ACT-00934 | $ 108 | | | | | |
| | 19ACT-00936 | $ 108 | | | | | |
| | 19ACT-00887 | $ 262 | | | | | |
| | 19ACT-00878 | $ 420 | | | | | |
| | 19ACT-00877 | $ 210 | | | | | |
| | 19ACT-00879 | $ 210 | | | | | |
| | 19ACT-00881 | $ 220 | | | | | |

| HVI CAT CANYON INC.<br><br>weeks 14-18 budget<br>Notes week starting | Forecast<br>Week 14<br>28-Oct-19 | Forecast<br>Week 15<br>4-Nov-19 | Forecast<br>Week 16<br>11-Nov-19 | Forecast<br>Week 17<br>18-Nov-19 | Forecast<br>Week 18<br>25-Nov-19 | TOTAL |
|---|---|---|---|---|---|---|
| 19ACT-00924 | $ 12,640 | | | | | |
| **Total due to P&D for Inspection fees** | $ 159,843 | | | | | |

32 Amount is based upon the following Santa Barbara County Fire Department Post-Petition California Fire Code Inspection Permit Fees. Subject to revision if permits for additional quitclaimed leases to insiders are identified:

| Site Name | Amount: |
|---|---|
| Battles | $ 1,370 |
| Blochman | $ 1,370 |
| Bell Gas Compressor | $ 1,370 |
| Bell Lease | $ 1,370 |
| Casmalia/Morganti | $ 1,370 |
| Chamberlin B | $ 1,370 |
| Chamberlin | $ 1,370 |
| Davis B | $ 1,370 |
| Davis | $ 1,370 |
| Fullerton Lease | $ 1,370 |
| Jim Hopkins | $ 1,370 |
| Los Flores | $ 1,370 |
| **Total due for Fire Department CFC Permits** | $ 16,440 |

33 Per Docket #308, Declaration of James Ray, California Unified Program Agency Supervisor for the Santa Barbara County Environmental Health Services ("EHS"), amounts due for the following Santa Barbara Post-petition Environmental Health Services Permit Fees - *originally forecast to be distributed in week 2* :

| Permit ID: | Permit Fee for 2020: |
|---|---|
| FA0010063 | $ 1,857 |
| FA0010325 | $ 555 |
| FA0010326 | $ 555 |
| FA0011176 | $ 555 |
| FA0011177 | $ 555 |
| FA0012015 | $ 555 |
| FA0012328 | $ 555 |
| FA0012329 | $ 555 |
| FA0012330 | $ 555 |
| FA0012495 | $ 555 |
| FA0013065 | $ 555 |
| FA0013112 | $ 555 |
| FA0013113 | $ 555 |
| FA0013114 | $ 555 |
| FA0013136 | $ 555 |

| | **HVI CAT CANYON INC.** | Forecast | Forecast | Forecast | Forecast | Forecast | **TOTAL** |
|---|---|---|---|---|---|---|---|
| | weeks 14-18 budget | Week 14 | Week 15 | Week 16 | Week 17 | Week 18 | |
| Notes | week starting | 28-Oct-19 | 4-Nov-19 | 11-Nov-19 | 18-Nov-19 | 25-Nov-19 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | FA0015899 | $ 848 | | | | | |
| | Total amount due for EHS permits | $ 10,475 | | | | | |

| Note | |
|---|---|
| 34 | Rent due on HVI East Clarke office - not approved under Interim Cash Collateral Order |
| 35 | Chapter 11 Trustee negotiated a progress payment plan with Netherland & Sewell for a 2019 Reserve Report.  The $100-$120k total fee can be paid on weekly basis for $25k a week once they start work. |
| 36 | Per Ernesto Olivares, a total of $18k for worker's comp insurance to be paid in weeks 15 and 16 and $19k to renew $1MM bond due in week 17. |
| 37 | Chapter 11 Trustee professionals agree to a 20% deferral of professional fees incurred during this 5-week period, assuming the bank agrees to carve out the remaining 20%.  Per Professional Fee Budget, weekly payments for Chapter 11 Trustee, Counsel and Financial Advisor will be put in escrow during this 5-week budget.  Payments to professionals to be made only after employment applications are approved and payments authorized. |
| 38 | Per Professional Fee Budget, Unsecured Creditors Committee Counsel has a forecasted $50k monthly run rate and payments will be put in escrow during this 5-week budget. |
| 39 | Per Professional Fees budget, US Trustee payment for Q3 2019 forecasted for week 15 based upon 1% of debtors disbursements in Q3 2019 of approximately $2.5M per August and September Monthly Operating Reports ("MOR"). |
| 40 | Per Ernesto Olivares on 10/30/2019, affiliate GIT's October 2019 invoice for back office and administrative services will be approximately $156k.  GIT allocates expenses among the affiliated entities based upon headcount of each respective entity.  Per Cost and Sale Summary schedule, GIT's allocation and the Legal Fee summary schedule details of the pre-petition invoices offset against revenue due to HVI in Week 13. |
| 41 | Per the draft 13-week Health and Safety Budget to be presented in 2-weeks. |
| 42 | The amounts reflected here reflect the first 4-weeks of the draft 13-week total SMV Health and Safety Budget.  Over the full 13-week period forecasted expenses are approximately $275k but should reduce compliance violation fines and environmental risks. |
| 43 | The amounts reflected here reflect the first 4-weeks of the draft 13-week total Belridge Health and Safety Budget.  Over the full 13-week period forecasted expenses are approximately $66k but should reduce compliance violation fines, environmental risks and, by reducing these liabilities, potentially make the field more attractive to prospective buyers. |
| 44 | The amounts reflected here reflect the first 4-weeks of the draft 13-week total Redu Health and Safety Budget.  Over the full 13-week period forecasted expenses are approximately $337k but should reduce compliance violation fines, environmental risks, and, by reducing these liabilities, potentially make the field more attractive to prospective buyers. |
| 45 | Total Cash Outflows for Operating, General and Administrative, and Health and Safety Expenses but not including royalties. |
| 46 | Estimated Funding required for the 5-week period ending week 18, excluding interest, is approximately $2M.  Interest to be added to the 13-week budget to be presented in 2-weeks. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Agreed as to form only:**

**PACHULSKI STANG ZIEHL & JONES LLP**

By:_____
Jeffrey N. Pomerantz
Maxim B. Litvak
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
(310) 277-6910
Email: jpomerantz@pszjlaw.com
        mlitvak@pszjlaw.com

**COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**SNOW SPENCE GREEN LLP**

By:_____
W. Ross Spence
2929 Allen Parkway, Suite 2800
Houston, Texas 77019
(713) 335-4800
Email: ross@snowspencelaw.com

**ATTORNEYS FOR THE COUNTY OF SANTA BARBARA, CALIFORNIA; HARRY E.
HAGEN, AS TREASURER-TAX COLLECTOR OF THE COUNTY OF SANTA**

- 29 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

0076

1    **BARBARA, CALIFORNIA; AND THE SANTA BARBARA COUNTY AIR POLLUTION**
     **CONTROL DISTRICT**

2

3    <u>**Agreed as to form only, and shall not indicate that this Final Order satisfies condition under**</u>
     <u>**the Credit Agreement nor that the condition is waived:**</u>

4

5    **O'MELVENY & MYERS LLP**

6    By:_____

7    Evan M. Jones
     400 South Hope Street, 18th Floor

8    Los Angeles, California 90071-2899
     (213) 430-6000

9    Email: ejoines@omm.com

10    **ATTORNEYS FOR UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 30 -

FINAL ORDER FOR EMERGENCY PRIMING AND SUPERPRIORITY FINANCING AND
CONSENSUAL USE OF CASH COLLATERAL BY THE CHAPTER 11 TRUSTEE

**0077**

# EXHIBIT "2"

**Fill in this information to identify the case:**

Debtor name: HVI Cat Canyon, Inc.

United States Bankruptcy Court for the: Northern District of
TX          19-32857

☐ Check if this is an
   amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:    Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ■ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand**    $ 5,000.00

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

   | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
   |---|---|---|---|
   | 3.1. See Attachment | | | $ 48,448.73 |
   | 3.2. | | | $ |

4. **Other cash equivalents** *(Identify all)*

   | 4.1. | $ |
   |---|---|
   | 4.2. | $ |

5. **Total of Part 1**    $ 53,448.73
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

## Part 2:    Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

   ☐ No. Go to Part 3.
   ■ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

   | 7.1. See Attachment | $ 728,828.58 |
   |---|---|
   | 7.2. | $ |

Debtor   HVI Cat Canyon, Inc.
         _____         Case number (if known)  19-32857
         Name

---

**Name and address of recipient**

30.2    _____
        Name

        _____
        Street

        _____

        _____
        City                State      ZIP Code

        **Relationship to debtor**

        _____

---

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**
   - ☐ No
   - ☐ X Yes. Identify below.

   | Name of the parent corporation | Employer Identification number of the parent corporation |
   |---|---|
   | GIT, Inc. | EIN: 91-1986286 |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**
   - ☐ X No
   - ☐ Yes. Identify below.

   | Name of the pension fund | Employer Identification number of the pension fund |
   |---|---|
   | _____ | EIN: __ __ - __ __ __ __ __ __ __ |

---

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   09/06/2019
              MM / DD / YYYY

X _____         Printed name   Randeep S. Grewal
  Signature of individual signing on behalf of the debtor

  Position or relationship to debtor   Chairman

---

Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?
   - ☐ No
   - ☐ X Yes

---

Attachment to Part 2

Official Form 207

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**          04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form.
On the top of any additional pages, write the debtor's name and case number (if known).

Debtor name: HVI CAT Canyon, Inc.                          Case number: 19-32857

---

**Part 2:**  List Certain Transfers Made Before Filing for Bankruptcy

4.      **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing
this case on debts owed to an insider or guaranteed or cosigned by an insider unless the
aggregate value of all property transferred to or for the benefit of the insider is less than $6,825.
(This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases
filed on or after the date of adjustment.) Do not include any payments listed in line 3.
Insiders include officers, directors, and anyone in control of a corporate debtor and their
relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and
insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

| Insider's Name and address | Dates | Total amount of value | Reason for payment or transfer |
|---|---|---|---|
| 4.1 | | | |
| GLR, LLC<br>45 Rockefeller Plaza, Suite 2410<br>New York, NY 10111 | 8/6/2018<br>4/19/2019 | $112,500 | Payment of Rent |
| **Relationship to debtor** | | | |
| Affiliate | | | |
| 4.2 | | | |
| GRL, LLC<br>45 Rockefeller Plaza, Suite 2410<br>New York, NY 10111 | 7/31/2018<br>Through<br>10/26/2018 | $330,346 | Royalty Payments |
| **Relationship to debtor** | | | |
| Affiliate | | | |
| 4.3 | | | |
| Greka Construction, LLC<br>2617 Clark Avenue<br>Santa Maria, CA 93454 | 8/1/2018<br>Through<br>1/18/2019 | $108,000 | Construction/Maintenance Services |
| **Relationship to debtor** | | | |
| Affiliate | | | |

**0081**

Attachment to Part 2

Official Form 207

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**    04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form.
On the top of any additional pages, write the debtor's name and case number (if known).

Debtor name: HVI CAT Canyon, Inc.                    Case number: 19-32857

**Part 2:** **List Certain Transfers Made Before Filing for Bankruptcy**

4.    **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing
this case on debts owed to an insider or guaranteed or cosigned by an insider unless the
aggregate value of all property transferred to or for the benefit of the insider is less than $6,825.
(This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases
filed on or after the date of adjustment.) Do not include any payments listed in line 3.
Insiders include officers, directors, and anyone in control of a corporate debtor and their
relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and
insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

4.4
| GTL1, LLC | 7/30/2018 | $1,808,000 | Transportation Services |
| 1700 Sinton Road | Through | . | |
| Santa Maria, CA 93458 | 4/1/2019 | | |

**Relationship to debtor**
Affiliate

4.5
| GIT, Inc. | 7/30/2018 | $2,292,000 | Admin Services |
| 1700 Sinton Road | Through | | |
| Santa Maria, CA 93458 | 7/19/2019 | | |

**Relationship to debtor**
Affiliate

4.6
| GRL, LLC | Jan-19 | Returned defaulted, | Lease Termination due to |
| 45 Rockefeller Plaza, Suite 2410 | | non-producing property | non-payment of shut in |
| New York, NY | | | royalties |

**Relationship to debtor**
Affiliate

**0082**

Attachment to Part 2

Official Form 207

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**                04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form.
On the top of any additional pages, write the debtor's name and case number (if known).

Debtor name: HVI CAT Canyon, Inc.                    Case number: 19-32857

**Part 2:** List Certain Transfers Made Before Filing for Bankruptcy

4.    **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing
this case on debts owed to an insider or guaranteed or cosigned by an insider unless the
aggregate value of all property transferred to or for the benefit of the insider is less than $6,825.
(This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases
filed on or after the date of adjustment.) Do not include any payments listed in line 3.
Insiders include officers, directors, and anyone in control of a corporate debtor and their
relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and
insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

4.7
|  |  |  |  |
|---|---|---|---|
| GLR, LLC | Jan-19 | Returned defaulted, | Lease Termination due to |
| 45 Rockefeller Plaze, Suite 2410 |  | non-producing property | non-payment of shut in |
| New York, NY |  |  | royalties |

**Relationship to debtor**
Affiliate

4.8
|  |  |  |  |
|---|---|---|---|
| California Asphalt Production, Inc. | 7/26/2018 | $7,176,390 | Supplier |
| 1660 Sinton Road | Through |  |  |
| Santa Maria, CA 93458 | 7/25/2019 |  |  |

**Relationship to debtor**
Affiliate

Fill in this information to identify the case and this filing:

Debtor Name  HVI Cat Canyon, Inc.

United States Bankruptcy Court for the:  **Northern**   District of  **TX**
                                                                    (State)

Case number (*If known*):  19-32857

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☑ *Schedule H: Codebtors* (Official Form 206H)

☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  09/06/2019          ✗ _____
             MM / DD / YYYY              Signature of individual signing on behalf of debtor

                                    Randeep S. Grewal
                                    Printed name

                                    Chairman
                                    Position or relationship to debtor

**0084**

**EXHIBIT "3"**

**From:** Tim Skillman <tim.skillman@cr3partners.com>
**Sent:** Tuesday, November 19, 2019 12:33 PM
**To:** Ernesto <meo@greka.com>
**Cc:** James Baring <james.baring@cr3partners.com>; Michael McConnell <michael.mcconnell@kellyhart.com>; Eric Israel <EPI@dgdk.com>
**Subject:** Monthly settlement procedures

Hi Ernesto,

Thank you for meeting with James and me this morning on the intercompany bills for October, 2019.  As promised, I have attached a memorandum to you summarizing the discussion.

I have also attached an email sent to your counsel from Eric Israel addressing the same issues.  I thought this might be helpful, as well.

I had asked you for details on the travel expenses and to reissue the GIT bill to HVI and the  HVI bill to GIT to reflect the bankruptcy requirements.  Upon receipt of those, we will be ready to fund payments to GIT and GTL1 and ready to receive payment from CAP on the 20th, per the agreement.

Please call me if you have any questions on this note.

**Tim Skillman**
Partner
6171 W. Century Blvd, Suite 350, Los Angeles, CA 90045
**Office:** +1 **(**800) 728-7176 | **Direct:** +1 (213) 393-6337
**Bio** | **Website** | **LinkedIn**

1

**0086**



**0087**

**Memorandum**

| | |
|---|---|
| To: | Ernesto Olivares |
| From: | Tim Skillman |
| Date: | 11/19/20192 |
| Subject: | **Payment Agreement between HVI and Affiliates for October Revenue and Services** |

As discussed in our meeting today, below you'll find a reconciliation of the amounts due to HVI for October production and amounts due to GTL1 and GIT for October services.  As you are aware, HVI Cat Canyon commenced a reorganization effort on July 25th, 2019 under Chapter 11 of the US Bankruptcy Code.  Please be advised that 11 U.S.C. § 362(a) provides that the commencement of a bankruptcy case effects an automatic stay protecting the debtor and the estate from various actions.  Among many other rules the automatic stay prohibits payment of any pre-petition debts, setoffs, requires that all officers comply with the insider compensation procedures in order to receive compensation or reimbursement of expenses, and, similarly, all professionals are subject to retentions orders to receive compensation for their services.  Under this context, the reconciliations below reflect the amounts due to HVI and to affiliates GTL1 and GIT for October Revenue and Services.

| Amount CAP owes HVI for October Production | | |
|---|---|---|
| HVI owes CAP | $ | 1,811,154 |
| CAP Advances to HVI | $ | (92,000) |
| CAP Diluent Deliveries | $ | (590,903) |
| | $ | 1,128,250 Net amount CAP to remit to HVI on November 20, 2019 |

| Amount HVI owes GTL1, LLC for October Transportation | | |
|---|---|---|
| October Tansportation | $ | 247,689 |
| September Auto Insurance | $ | 10,480 |
| October Auto Insurance | $ | 10,480 |
| | $ | 268,649 Amount HVI to remit to GTL1 |

| Net amount HVI owes GIT for October Backoffice and Administrative Invoice | | |
|---|---|---|
| GIT October Invoice | $ | 242,987 |
| Professional Fees | $ | (29,205) |
| Legal Fees | $ | (70,934) |
| Estimated Insider Payroll | $ | (40,000) |
| | $ | 102,848 Net amount HVI to remit to GIT |

I would ask that you reissue the bill from HVI to CAP (reflecting the prepayment) and reissue the bill from GIT to HVI (reflecting the bankruptcy requirements) and detailed invoice support for all line items on the GIT invoice.  Please remit payment for October Production on October 20th and the Debtor will remit payments to GTL1 and GIT thereafter for the amounts detailed above.

Sincerely,


Tim Skillman

Chief Restructuring Officer of HVI Cat Canyon, Inc., Debtor

Bankruptcy Case No. 9-bk-19-11573-MB

**0088**

## Zev Shechtman

| | |
|---|---|
| **From:** | Eric Israel <EPI@DanningGill.com> |
| **Sent:** | Tuesday, November 19, 2019 11:36 AM |
| **To:** | Patty Tomasco |
| **Cc:** | michael.mcconnell@kellyhart.com; Will Beall; Susan M. Whalen; Aaron E. de Leest; Michael McConnell; Tim Skillman; James Baring; Razmig Izakelian; Brian Campbell |
| **Subject:** | HVI -- Improper Setoffs |
| **Attachments:** | July through September Affiliate Reconciliation from Ernesto.xlsx |
| | |
| **Importance:** | High |

Patty, Susan and Will:  So that we are all on the same page here, the current situation is that the debtor sells crude oil and gas to CAP, and the debtor buys diluent from CAP.  The debtor uses shipping services of GTL1, and administrative and office services provided by GIT.  Attached is a chart provided by Ernesto covering the post-petition period through September 30, 2019.  Although GIT and GTL1 are separate legal entities, CAP is unilaterally setting off not only for the diluent but also the invoices from GLT1 and GIT.  The Trustee believes that all of these setoffs, but particularly the triangular setoffs, are improper and violate the automatic stay.  This has been going on since the commencement of the case by the DIP, but now that a trustee is in place, things need to be handled properly in accord with a normal customer-vendor relationship and the dictates of the Bankruptcy Code.  CAP should pay the Trustee the full amount it owes.  GIT and GTL1 should provide proper invoices to the Trustee, and if he has questions or issues, the Trustee will ask.  If not, he will pay the bills.  The approved cash collateral budget includes items for diluent, shipping and operating/administrative services.

Compounding the problem is that the setoffs, some of which are not supported by detailed invoices, have included items specifically forbidden for payment in a bankruptcy case.  The GIT invoice includes salary for Randeep Grewal and Ernesto Olivares.  Both are insiders, and neither complied with the insider compensation procedures.  Moreover, the cash collateral and other orders forbid payments to insiders.  Invoices have also included pre-petition bills and  bills for attorneys' fees for professionals that were never employed by the estate.  At some point, those back items will need to be addressed too.

In any event, the next payment to the Trustee from CAP is due tomorrow.  Please talk with your clients and ensure that the proper payment is made without setoffs and that we restore a normal customer-vendor relationship here.  I am advised that the CRO of HVI Cat Canyon met with Ernesto Oliveres this morning and conveyed this same message to him.  Please confirm this process with him at your earliest convenience.  Of course, the Trustee reserves all of his rights and remedies.

thanks

---

**From:** Patty Tomasco <pattytomasco@quinnemanuel.com>
**Sent:** Monday, November 18, 2019 8:07 PM
**To:** Eric Israel <EPI@DanningGill.com>
**Cc:** michael.mcconnell@kellyhart.com; Will Beall <Will@beallandburkhardt.com>; Susan M. Whalen
<susan@whalenattorney.com>; Aaron E. de Leest <adeleest@DanningGill.com>; Michael McConnell
<michael.mcconnell@kellyhart.com>; Tim Skillman <tim.skillman@cr3partners.com>; James Baring
<james.baring@cr3partners.com>; Razmig Izakelian <razmigizakelian@quinnemanuel.com>; Brian Campbell
<briancampbell@quinnemanuel.com>
**Subject:** RE: Royalty Escrow Account

0089

Thanks.  I don't think that there is any disagreement here about the state of the law.  Because conversations were had with Mr. Olivares and others not well-versed on the bankruptcy law concepts, there may have been a misunderstanding about what the trustee's representatives authorized or approved in the way of recoupment.  I think that the most efficient way of handling this is to send me what you think might be the right accounting of what was not properly recouped and for us to review and respond to that view with documentation.

Let me know if you disagree with this approach.

Patty Tomasco
Partner
**Quinn Emanuel Urquhart & Sullivan, LLP**
711 Louisiana Street, Suite 500 | Houston, TX 77002
p: 713-221-7227 | m: 512-695-2684

---

**From:** Eric Israel [mailto:EPI@DanningGill.com]
**Sent:** Monday, November 18, 2019 9:57 PM
**To:** Patty Tomasco <pattytomasco@quinnemanuel.com>
**Cc:** michael.mcconnell@kellyhart.com; Will Beall <Will@beallandburkhardt.com>; Susan M. Whalen <susan@whalenattorney.com>; Eric Israel <EPI@DanningGill.com>; Aaron E. de Leest <adeleest@DanningGill.com>; Michael McConnell <michael.mcconnell@kellyhart.com>; Tim Skillman <tim.skillman@cr3partners.com>; James Baring <james.baring@cr3partners.com>
**Subject:** RE: Royalty Escrow Account

| [EXTERNAL EMAIL] |
|---|

---

Patty and Will:  I will inquire on the status of royalties to affiliates.  I do know that the Trustee holds a segregated account for insider royalties.

On a related matter, please see the attached letter I sent Friday to Susan Whalen.  To the extent you and Will represent other affiliates, it may apply to them too.  At our meeting, Susan said she represented all affiliates, but in the future I will include all 3 of you.

thanks

---

**From:** Patty Tomasco <pattytomasco@quinnemanuel.com>
**Sent:** Monday, November 18, 2019 7:07 PM
**To:** Eric Israel <EPI@DanningGill.com>
**Cc:** michael.mcconnell@kellyhart.com; Will Beall <Will@beallandburkhardt.com>; Susan M. Whalen <susan@whalenattorney.com>
**Subject:** Royalty Escrow Account

Please let me know of the disposition of this bank account that represents post-petition royalties owed to GRL.  As you know, royalties are real property interests that are not property of the estate.  UBS only allowed for royalties to be paid to non-affiliates, but that doesn't change the nature of the royalty interest. I would also like to be included on all conversations with GIT personnel.  What I am getting is a mismatch between representations to the Court and what I am being told.  The only way that I can be effective is to be included on all communications.

I would like to have a call tomorrow to discuss.  Please let me know what works.  Thanks.

Patty Tomasco
Partner
**Quinn Emanuel Urquhart & Sullivan, LLP**
711 Louisiana Street, Suite 500 | Houston, TX 77002
p: 713-221-7227 | m: 512-695-2684

**0091**

| Product/Service | Invoice Amount | Payments/month | Payments/Amount | Balance |
|---|---|---|---|---|
| **Crude Oil** | | | | |
| July./2019 | 255,327.30 | Aug./2019 | 1,156,398.90 | (901,071.60) |
| Aug./2019 | 1,900,651.58 | Sept./2019 | 1,450,000.00 | 450,651.58 |
| Sept./2019 | 1,514,426.96 | Oct./2019 | 404,003.00 | 1,110,423.96 |
| **Total** | **3,670,405.84** | | **3,010,401.90** | **660,003.94** |
| | | | | |
| **Natural Gas** | | | | |
| July./2019 | | Aug./2019 | - | - |
| Aug./2019 | 1,710.00 | Sept./2019 | - | 1,710.00 |
| Sept./2019 | 4,943.00 | Oct./2019 | - | 4,943.00 |
| **Total** | **6,653.00** | | **-** | **6,653.00** |

| | | | | |
|---|---|---|---|---|
| **GIT Services** | | | | |
| July./2019 | | Aug./2019 | - | - |
| Aug./2019 | 122,093.51 | Sept./2019 | - | 122,093.51 |
| Sept./2019 | 244,160.92 | Oct./2019 | - | 244,160.92 |
| **Total** | **366,254.43** | | **-** | **366,254.43** |
| | | | | |
| **GTL 1 (Transp)** | | | | |
| July./2019 | | Aug./2019 | 181,733.00 | (181,733.00) |
| Aug./2019 | 245,521.00 | Sept./2019 | 198,000.00 | 47,521.00 |
| Sept./2019 | 202,106.00 | Oct./2019 | | 202,106.00 |
| **Total** | **447,627.00** | | **379,733.00** | **67,894.00** |
| | | | | |
| **CAP (LCR)** | | | | |
| July./2019 | | Aug./2019 | 313,235.63 | (313,235.63) |
| Aug./2019 | 447,466.88 | Sept./2019 | 347,820.00 | 99,646.88 |
| Sept./2019 | 420,691.67 | Oct./2019 | - | 420,691.67 |
| **Total** | **868,158.55** | | **661,055.63** | **207,102.92** |
| | | | | |
| **CAP (Marketing)** | | | | |
| July./2019 | | Aug./2019 | - | - |
| Aug./2019 | 737.16 | Sept./2019 | - | 737.16 |
| Sept./2019 | 858.06 | Oct./2019 | - | 858.06 |
| **Total** | **1,595.22** | | **-** | **1,595.22** |

| | |
|---|---|
| Affiliattes Owed to HVI | 666,656.94 |
| HVI Owed to Affiliattes without GIT | (276,592.14) |
| Net Owed to HVI without GIT | **390,064.80** |
| HVI Owed to  GIT | (366,254.43) |
| Net Owed to HVI | **23,810.37** |

**EXHIBIT "4"**

**HVI CAT CANYON**
PO BOX 6030
Santa Maria, Ca 93456

# INVOICE

| | |
|---|---|
| Invoice number | HVICAP-0919 |
| Invoice Date: | September 30, 2019 |
| Bill To: | CALIFORNIA ASPHALT PRODUCTION |

| Month | Description | Unit | Quantity | Price | Amount |
|---|---|---|---|---|---|
| September | Crude Oil from SMV deliver from 09/01/2019 to 09/30/2019 | BBL | 28,118.86 | $48.21 | $ 1,355,633.04 |
| September | Crude Oil from Bellridge deliver from 09/01/2019 to 09/30/2019 | BBL | 1,600.60 | $59.54 | $ 95,298.88 |
| September | Crude Oil from Redu deliver from 09/01/2019 to 09/30/2019 | BBL | 1,161.29 | $54.68 | $ 63,495.04 |

| | | |
|---|---|---|
| Total | $ | 1,514,426.96 |

**0094**

**HVI CAT CANYON**
PO BOX 6030
Santa Maria, Ca 93456

# INVOICE

| | |
|---|---|
| Invoice number | HVICAP-0819 |
| Invoice Date: | August 31, 2019 |
| Bill To: | CALIFORNIA ASPHALT PRODUCTION |

| Month | Description | Unit | Quantity | Price | Amount |
|--------|-------------|------|----------|-------|--------|
| August | Crude Oil from SMV deliver from 08/01/2019 to 08/31/2019 | BBL | 38,377.21 | $47.35 | $ 1,817,134.09 |
| August | Crude Oil from Bellridge deliver from 08/01/2019 to 08/31/2019 | BBL | 1,474.31 | $56.65 | $ 83,517.49 |

Total $    1,900,651.58

**HVI CAT CANYON**
PO BOX 6030
.nta Maria, Ca 93456

# INVOICE

| | |
|---|---|
| Invoice number | HVICAP-0719 |
| Invoice Date: | July 31, 2019 |
| Bill To: | CALIFORNIA ASPHALT PRODUCTION |

| Month | Description | Unit | Quantity | Price | Amount | |
|---|---|---|---|---|---|---|
| July | Crude Oil from SMV deliver from 07/01/2019 to 07/31/2019 | BBL | 17,452.13 | $48.63 | $ | 848,754.11 |
| July | Crude Oil from Bellridge deliver from 07/01/2019 to 07/31/2019 | BBL | 1,610.23 | $61.60 | $ | 99,184.21 |
| July | Crude Oil from Redu deliver from 07/01/2019 to 07/31/2019 | BBL | 145.06 | $58.32 | $ | 8,460.58 |

|  |  |  |
|---|---|---|
| **Total** | $ | 956,398.90 |

**HVI CAT CANYON**
PO BOX 6030
nta Maria, Ca 93456

# INVOICE

| | |
|---|---|
| Invoice number | HVICAP-0719B |
| Invoice Date: | July 31, 2019 |
| Bill To: | CALIFORNIA ASPHALT PRODUCTION |

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| JULY | Natural Gas deliver from 7/01/2019 to 07/31/2019 | MCF | 1,641.00 | $1.00 | $ 1,641.00 |

Total $ 1,641.00

**HVI CAT CANYON**
PO BOX 6030
Santa Maria, Ca 93456

# INVOICE

| | |
|---|---|
| Invoice number | HVICAP-0819B |
| Invoice Date: | **August 31, 2019** |
| Bill To: | **CALIFORNIA ASPHALT PRODUCTION** |

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| August | Natural Gas deliver from 8/01/2019 to 08/31/2019 | MCF | 1,710.00 | $1.00 | $ 1,710.00 |

|  |  |  |
|---|---|---|
| | **Total  $** | 1,710.00 |

# HVI CAT CANYON

PO BOX 6030
Santa Maria, Ca 93456

# INVOICE

Invoice number                    HVICAP-0919B

Invoice Date:                     **September 30, 2019**

Bill To:        **CALIFORNIA ASPHALT PRODUCTION**

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| September | Natural Gas deliver from 09/01/2019 to 09/30/2019 | MCF | 4,943.00 | $1.00 | $       4,943.00 |

Total  $       4,943.00

**0099**

**Greka Integrated, Inc**
1700 Sinton Road
Santa Maria, Ca 93458

# INVOICE

| | |
|---|---|
| Invoice number | GITHVI-0719 |
| Invoice Date: | July 31, 2019 |
| Bill To: | **HVI Cat Canyon** |

Backoffice & Administrative expense July 2019

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| July | Payroll | | | | $ 80,911.90 |
| July | Payroll taxes | | | | $ 3,763.34 |
| July | Insurance & benefit plan | | | | $ 28,510.51 |
| July | Computer Service | | | | $ 1,093.81 |
| July | Office rent | | | | $ 4,726.37 |
| July | Office repairs & cleaning | | | | $ 2,471.58 |
| July | Communications | | | | $ 4,266.54 |
| July | Postage & Courier | | | | $ 1,108.97 |
| July | Professional fees | | | | $ 2,515.31 |
| July | Legal fees | | | | $ 11,589.09 |
| July | Vehicle operating | | | | $ 757.30 |
| July | Travel | | | | $ 10,756.25 |
| July | Office equipment | | | | $ 857.42 |
| July | Utilities | | | | $ 497.34 |
| July | Office supplies | | | | $ 2,616.64 |
| July | Service charges | | | | $ 1,575.14 |
| July | Interest | | | | $ 36,417.10 |
| July | Employee relation | | | | $ 1,086.02 |
| | Period 07/01/2019 to 07/31/2019 | | | | |

**Total $   195,520.60**

**00100**

# CALIFORNIA ASPHALT PRODUCTION

1660 Sinton Road
Santa Maria, Ca 93458

# INVOICE

Invoice number          CAPHVI-0719

Invoice Date:           July 31, 2019

Bill To:        **HVI Cat Canyon**

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| July | LCR deliver from 07/01/2019 to 07/31/2019 | BBL | 4,633.47 | $67.60 | $    313,235.63 |

Total  $      313,235.63

**00101**

**CALIFORNIA ASPHALT PRODUCTION**
1660 Sinton Road
Santa Maria, Ca 93458

# INVOICE

Invoice number                    CAPHVI-0819

Invoice Date:                     August 31, 2019

Bill To:        **HVI Cat Canyon**

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| August | LCR deliver from 08/01/2019 to 08/31/2019 | BBL | 6,797.50 | $65.83 | $      447,466.88 |

Total    $        447,466.88

9-17-19

# CALIFORNIA ASPHALT PRODUCTION

1660 Sinton Road
Santa Maria, Ca 93458

# INVOICE

| | |
|---|---|
| Invoice number | CAPHVI-0919 |
| Invoice Date: | September 30, 2019 |
| Bill To: | HVI Cat Canyon |

| Month | Description | Unit | Quantity | Price | Amount |
|---|---|---|---|---|---|
| September | LCR deliver from 09/01/2019 to 09/30/2019 | BBL | 5,930.44 | $70.94 | $ 420,691.67 |

Total  $      420,691.67

**Greka Integrated, Inc**
1700 Sinton Road
Santa Maria, Ca 93458

# INVOICE

| | |
|---|---|
| Invoice number | GITHVI-0819 |
| Invoice Date: | **August 31, 2019** |
| Bill To: | **HVI Cat Canyon** |

Backoffice & Administrative expense August 2019

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| August | Payroll | | | | $ 83,305.92 |
| August | Payroll taxes | | | | $ 2,614.46 |
| August | Insurance & benefit plan | | | | $ (7,637.17) |
| August | Office rent | | | | $ 5,042.32 |
| August | Office repairs & cleaning | | | | $ 2,843.36 |
| August | Communications | | | | $ 2,722.69 |
| August | Postage & Courier | | | | $ 565.55 |
| August | Professional fees | | | | $ 895.83 |
| August | Legal fees | | | | $ 8,685.33 |
| August | Vehicle operating | | | | $ 1,241.42 |
| August | Travel | | | | $ 12,885.54 |
| August | Office equipment | | | | $ 1,330.14 |
| August | Compliance | | | | $ 431.79 |
| August | Office supplies | | | | $ 1,824.27 |
| August | Other expense | | | | $ 3,492.07 |
| August | Service charge | | | | $ 1,305.46 |
| August | Employee relation | | | | $ 544.52 |
| | | | | | |
| | Period 08/01/2019 to 08/31/2019 | | | | |

**Total** $    122,093.51

**Greka Integrated, Inc**
1700 Sinton Road
Santa Maria, Ca 93458

# INVOICE

| | |
|---|---|
| Invoice number | GITHVI-0919 |
| Invoice Date: | **September 30, 2019** |
| Bill To: | **HVI Cat Canyon** |

Backoffice & Administrative expense August 2019

| Month | Description | Unit | Quantity | Price | Amount |
|---|---|---|---|---|---|
| September | Payroll | | | | $ 73,938.86 |
| September | Payroll taxes | | | | $ 2,325.77 |
| September | Insurance & benefit plan | | | | $ 10,212.50 |
| September | Safety Supplies | | | | $ 82.00 |
| September | Office rent | | | | $ 4,807.80 |
| September | Office repairs & cleaning | | | | $ 3,687.94 |
| September | Communications | | | | $ 4,362.14 |
| September | Postage & Courier | | | | $ 647.16 |
| September | Professional fees | | | | $ 12,243.06 |
| September | Legal fees | | | | $ 108,741.82 |
| September | Vehicle operating | | | | $ 717.82 |
| September | Travel | | | | $ 16,251.87 |
| September | Employee benefit | | | | $ 66.11 |
| September | Office supplies | | | | $ 1,688.74 |
| September | Other expense | | | | $ 3,049.65 |
| September | Service charge | | | | $ 1,048.24 |
| September | Utilities | | | | $ 289.45 |
| | Period 09/01/2019 to 09/30/2019 | | | | |

**Total  $      244,160.92**

Invoice Number :    GTLHVI-07219

Invoice date:    7/31/2019

# GTL1, LLC

660 Sinton Rd.
Santa Maria Ca. 93458

### Invoice to HVI Cat Canyon Inc. July 2019

| | | | | | |
|---|---|---|---|---|---|
| ease transfer | Security | 1,860 | bbls | $5,580 | at $3.00 per bl |
| ocal crude | | 16,741.00 | bbls | $50,223 | at $3.00 per bl |
| CR to HVI | | 4,633.00 | bbls | $13,899 | at $3.00 per bl |
| ehicle leasing | | 15,000 | | $15,000 | see attached |
| emurrage ( stand by ) | | 506.90 | Hrs | $40,552 | |
| uto Insurance | | | | $10,480.24 | see attached |
| lot loads | loads@70bb | | bbls | | |
| Trucks | | 706 | Hrs | $56,480 | $80 per Hr |

| | |
|---|---|
| Total due | $192,214 |

Invoice Number :    GTLHVI-08219

Invoice date:    8/31/2019

# GTL1, LLC

1660 Sinton Rd.
Santa Maria Ca. 93458

| Invoice to HVI Cat Canyon Inc. August 2019 | | | | | | |
|---|---|---|---|---|---|---|
| Local crude | | 39,876.00 | bbls | $119,628 | | at $3.00 per bl |
| LCR to HVI | | 6,797.50 | bbls | $20,393 | | at $3.00 per bl |
| Vehicle leasing | | 15,000 | | $15,000 | | see attached |
| Demurrage ( stand by ) | | 403.75 | Hrs | $32,300 | | |
| Auto Insurance | | | | $10,480.24 | | see attached |
| Hot loads | loads@70bb | | bbls | | | |
| Trucks | | 596.5 | Hrs | $47,720 | | $80 per Hr |

| Total due | $245,521 |
|---|---|

9-17-19

Invoice Number :     GTLHVI-09219

Invoice date:     9/30/2019

# GTL1, LLC

1660 Sinton Rd.
Santa Maria Ca. 93458

| Invoice to HVI Cat Canyon Inc. September 2019 | | | | | |
|---|---|---|---|---|---|
| Local crude | | 29,318.00 | bbls | $87,955 | at $3.00 per bl |
| LCR to HVI | | 5,930.00 | bbls | $17,791 | at $3.00 per bl |
| Vehicle leasing | | 0 | | $0 | see attached |
| Demurrage ( stand by ) | | 510.50 | Hrs | $40,840 | |
| Auto Insurance | | | | $0.00 | see attached |
| Hot loads | loads@70bb | | bbls | | |
| Trucks | | 694 | Hrs | $55,520 | $80 per Hr |

| Total due | $202,106 |
|---|---|

**CALIFORNIA ASPHALT PRODUCTION**
1660 Sinton Road
Santa Maria, Ca 93458

# INVOICE

| | |
|---|---|
| Invoice number | CAPHVI-0719B |
| Invoice Date: | July 31, 2019 |
| Bill To: | **HVI Cat Canyon** |

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| JULY | Marketing Fees sales crude Bellridge | BBL | 3,470.23 | $ 0.50 | $ 1,735.12 |
| JULY | Marketing Fees sales crude Redu | BBL | 145.06 | $ 0.05 | $ 7.25 |

|  |  |  |
|---|---|---|
| Total | $ | 1,742.37 |

**CALIFORNIA ASPHALT PRODUCTION**
1660 Sinton Road
Santa Maria, Ca 93458

# INVOICE

| | |
|---|---|
| Invoice number | CAPHVI-0819B |
| Invoice Date: | August 31, 2019 |
| Bill To: | **HVI Cat Canyon** |

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| AUGUST | Marketing Fees sales crude Bellridge | BBL | 1,474.31 | $ 0.50 | $        737.16 |

Total  $        737.16

**CALIFORNIA ASPHALT PRODUCTION**
1660 Sinton Road
Santa Maria, Ca 93458

# INVOICE

Invoice number                CAPHVI-0919B

Invoice Date:                September 30, 2019

Bill To:        **HVI Cat Canyon**

| Month | Description | Unit | Quantity | Price | Amount |
|-------|-------------|------|----------|-------|--------|
| September | Marketing Fees sales crude Bellridge | BBL | 1,600.60 | $ 0.50 | $ 800.00 |
| September | Marketing Fees sales crude Redu | BBL | 1,161.29 | $ 0.05 | $ 58.06 |

Total  $        858.06

# EXHIBIT "5"

00112

**From:** James Baring
**Sent:** Friday, November 15, 2019 11:59 AM
**To:** Ernesto Olivares <MEO@greka.com>
**Cc:** Michael McConnell <michael.mcconnell@kellyhart.com>; Tim Skillman <tim.skillman@cr3partners.com>; Eric Israel <EPI@dgdk.com>
**Subject:** RE: Please Review: October HVI crude sale collections and affiliate Invoices

Hi Ernesto,

A quick point of clarification relative to the request below about not offsetting October revenue against affiliate invoices, be advised that offsets are prohibited under the Bankruptcy code.

Thanks,

James

---

**From:** James Baring <james.baring@cr3partners.com>
**Sent:** Friday, November 15, 2019 11:21 AM
**To:** Ernesto Olivares <MEO@greka.com>
**Cc:** Michael McConnell <michael.mcconnell@kellyhart.com>; Tim Skillman <tim.skillman@cr3partners.com>; Eric Israel <EPI@dgdk.com>
**Subject:** Please Review: October HVI crude sale collections and affiliate Invoices
**Importance:** High

Hi Ernesto,

Following up on our conversation today, the GIT invoice is significantly higher than the estimate you provided for the operating budget, $242,987.21 vs $156,000.  The increase is $86k higher than the estimate, or a 56% increase.  The GIT invoice estimate of $156k is forecast to be paid next week in the operating budget but prior to making that disbursement we will need you to provide all the invoices that support the amounts in each line item of the GIT October invoice by this Monday, 11/15/19.

Also, as we discussed, HVI Cat is requesting a standby Letter of Credit ("LOC") of $750k for payment of monthly crude sales to CAP.  Please confirm if CAP will provide this LOC.

Finally, in the 5-week operating budget attached to the financing motion filed with the court, HVI is forecasting as separate

1

transactions the collection of October crude sales to CAP in week 17 and disbursements to affiliates CAP for October LCR delivers and crude marketing fees, GTL1 for October transportation and vacuum trucks, and GIT for October Backoffice and Administrative services.  Please do not offset the week 17 collections due to HVI against any of the affiliate invoices also due to be paid that week.

Thank you,

James

**James Baring |** Director

6171 W. Century Boulevard, Suite 350, Los Angeles, CA 90045
Office: 1 (800) 728-7176 ext. 149 | Direct: (213) 503-4092
**Bio** | **Website** | **LinkedIn**



-----Original Message-----
From: Ernesto Olivares <MEO@greka.com>
Sent: Friday, November 15, 2019 8:58 AM
To: James Baring <james.baring@cr3partners.com>
Cc: Tim Skillman <tim.skillman@cr3partners.com>
Subject: FW: October Invoices

James,
Here is the invoices for the month of October/2019

-----Original Message-----
From: corp@greka.com [mailto:corp@greka.com]
Sent: Friday, November 15, 2019 9:23 AM
To: Ernesto Olivares
Subject: Scan from Corp SMV

-------------------
TASKalfa 5500i
[00:c0:ee:88:35:da]
-------------------

**00114**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  TRUSTEE'S NOTICE OF OPPOSITION AND OPPOSITION TO MOTION FOR APPROVAL AND PAYMENT OF ADMINISTRATIVE CLAIMS FILED BY GIT, INC., CALIFORNIA ASPHALT PRODUCTION, INC., AND GTL1, LLC [CASE DOC. NO. 946]; MEMORANDUM OF POINTS AND AUTHORITIES, REQUEST FOR JUDICIAL NOTICE, AND DECLARATIONS OF MICHAEL A. MCCONNELL, TIM SKILLMAN,  AND JAMES BARING IN SUPPORT THEREOF   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  May 5, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 5, 2020 | Patricia Morris | /s/ Patricia Morris |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1588842.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION** (if needed):

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Anthony A Austin    anthony.austin@doj.ca.gov
- William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- Bradley D Blakeley    blakeley@blakeleylawgroup.com, bradleydblakeley@gmail.com
- Alicia Clough    aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com
- Marc S Cohen    mscohen@loeb.com, klyles@loeb.com
- Alan D Condren    , berickson@seedmackall.com
- Alec S DiMario    alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com
- Karl J Fingerhood    karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- H Alexander Fisch    Alex.Fisch@doj.ca.gov
- Don Fisher    dfisher@ptwww.com, tblack@ptwww.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Ellen A Friedman    efriedman@friedmanspring.com, jquiambao@friedmanspring.com
- Gisele M Goetz    gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu;cecilia@hbsb.com
- Karen L Grant    kgrant@silcom.com
- Ira S Greene    Ira.Greene@lockelord.com
- Matthew C. Heyn    Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- Brian L Holman    b.holman@mpglaw.com
- Brian L Holman    b.holman@musickpeeler.com
- Eric P Israel    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Alan H Katz    akatz@lockelord.com
- John C Keith    john.keith@doj.ca.gov
- Jeannie Kim    jekim@sheppardmullin.com, lsemeraro@sheppardmullin.com
- Mitchell J Langberg    mlangberg@bhfs.com, dcrudup@bhfs.com
- Maxim B Litvak    mlitvak@pszjlaw.com
- Vincent T Martinez    llimone@twitchellandrice.com, smccomish@twitchellandrice.com
- Michael Authur McConnell (TR)    Michael.mcconnell@kellyhart.com
- Brian M Metcalf    bmetcalf@omm.com, brian-metcalf-9774@ecf.pacerpro.com
- Jerry Namba    nambaepiq@earthlink.net, G23453@notify.cincompass.com;annie_cunningham@ymail.com
- David L Osias    dosias@allenmatkins.com,
  bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com
- Darren L Patrick    dpatrick@omm.com, darren-patrick-
  1373@ecf.pacerpro.com;sindelicato@omm.com;ejones@omm.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Benjamin P Pugh    bpugh@ecg.law, mhamburger@ecg.law;calendar@ecg.law
- Edward S Renwick    erenwick@hanmor.com, iaguilar@hanmor.com
- J. Alexandra Rhim    arhim@hrhlaw.com
- Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com
- Mitchell E Rishe    mitchell.rishe@doj.ca.gov
- George E Schulman    GSchulman@DanningGill.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Sonia Singh    ssingh@DanningGill.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com
- Daniel A Solitro    dsolitro@lockelord.com, ataylor2@lockelord.com
- Ross Spence    ross@snowspencelaw.com,
  janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com
- Christopher D Sullivan    csullivan@diamondmccarthy.com,
  mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com;quentin.roberts@diamondmccarthy.com;eri
  ka.shannon@diamondmccarthy.com;aiemee.low@diamondmccarthy.com

1588842.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                                     **F 9013-3.1.PROOF.SERVICE**

- Jennifer Taylor    jtaylor@omm.com
- John N Tedford    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com
- Salina R Thomas    bankruptcy@co.kern.ca.us
- Meagan S Tom    meagan.tom@lockelord.com, autodocket@lockelord.com;taylor.warren@lockelord.com;autodocketdev@lockelord.com
- Patricia B Tomasco    pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com
- Fred Whitaker    lshertzer@cwlawyers.com, spattas@cwlawyers.com
- William E. Winfield    wwinfield@calattys.com, scuevas@calattys.com
- Richard Lee Wynne    richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- Aaron E de Leest    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

1588842.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**