ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
GEORGE E. SCHULMAN (State Bar No. 64572)
*gschulman@DanningGill.com*
ZEV SHECHTMAN (State Bar No. 266280)
*zs@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Michael A. McConnell,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re | Case No. 9:19-bk-11573-MB |
| HVI CAT CANYON, INC., | Chapter 11 |
| Debtor. | **CHAPTER 11 TRUSTEE'S OPPOSITION TO: "EX PARTE MOTION FOR ISSUANCE OF ORDER TO SHOW CAUSE IN RE CONTEMPT" [CASE DOC. NO. 1030]; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ZEV SHECHTMAN** |

1593186.1  26932

TABLE OF CONTENTS

Page

I. STATEMENT OF FACTS ............................................................................ 5

   A.   Background and Escrow Account ........................................................ 5

   B.   The Debtor's Insiders ......................................................................... 7

   C.   CAP's Failure to Pay for Shipments of Crude Oil .......................... 9

   D.   The Trustee's Report to GRL ............................................................ 9

   E.   The Trustee's Avoidance Action ...................................................... 9

   F.   GRL's Relief from Stay Motion ..................................................... 10

II. DISCUSSION .......................................................................................... 11

   A.   The Identity of the Movant is Uncertain ....................................... 11

   B.   The Contempt Motion Fails to Comply with LBR 9020-1 ........... 11

   C.   GRL Seeks to Hold the Trustee Accountable for the Debtor-in-Possession's

Failures. ...................................................................................................... 14

   D.   The Contempt Motion is Redundant.  Disputes Regarding Royalties are

Already Being Litigated in a Pending Adversary Proceeding. ............... 14

III. CONCLUSION ....................................................................................... 17

REQUEST FOR JUDICIAL NOTICE ...................................................... 18

DECLARATION OF ZEV SHECHTMAN .............................................. 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Balla v. Idaho State Bd. of Corr.*
  869 F.2d 461 (9th Cir. 1989) ............................................................... 13

*Bear v. Coben (In re Golden Plan of Cal., Inc.)*
  829 F.2d 705 (9th Cir. 1986) ............................................................... 16

*Colorado River Water Conservation Dist. v. United States*
  424 U.S. 800, 96 S. Ct. 1236, 1246,
  47 L. Ed. 2d 483 (1976) ...................................................................... 14

*Donovan v. Mazzola (Donovan II)*
  716 F.2d 1226 (9th Cir. 1983), *cert. denied*,
  464 U.S. 1040, 104 S.Ct. 704,
  79 L.Ed.2d 169 (1984) ......................................................................... 13

*F.T.C. v. Affordable Media*
  179 F.3d 1228 (9th Cir. 1999) .............................................................. 13

*In re Bennett*
  298 F.3d 1059 (9th Cir. 2002) .............................................................. 13

*In re Johnson*
  346 B.R. 190 (B.A.P. 9th Cir. 2006) .................................................... 16

*In re Van Ness*
  399 B.R. 897 (Bankr. E.D. Cal. 2009) ................................................ 15

**Statutes**

28 U.S.C. § 1334(c) ................................................................................... 14
28 U.S.C. § 1927 ........................................................................................ 14

**Other Authorities**

Christopher Klein, Bankruptcy Rules Made Easy (2001): A Guide to the Federal
  Rules of Civil Procedure that Apply in Bankruptcy, 75 Am. Bankr. L.J. 35, 38
  (Winter 2001) ....................................................................................... 16

**Rules**

Bankr. C.D. Cal. R. 9013-1 ............................................................... 12, 14
Bankr. C.D. Cal. R. 9013-1(a) ................................................................. 12
Bankr. C.D. Cal. R. 9013-1(c)(2) ...................................................... 12, 13
Bankr. C.D. Cal. R. 9013-1(c)(3) ...................................................... 12, 14
Bankr. C.D. Cal. R. 9013-1(c)(3)(A) ..................................................... 13
Bankr. C.D. Cal. R. 9013-1(c)(3)(B) ..................................................... 13
Bankr. C.D. Cal. R. 9013-1(c)(4) ........................................................... 12
Bankr. C.D. Cal. R. 9013-1(g)(4) ........................................................... 14
Bankr. C.D. Cal. R. 9013-1(i) ....................................................... 12, 13, 14
Bankr. C.D. Cal. R. 9020-1 ............................................................... 11, 14
Bankr. C.D. Cal. R. 9020-1(a) ................................................................ 12
Fed. R. Bankr. P. 7001 ............................................................................. 15
Fed. R. Bankr. P. 7001(1) ........................................................................ 15
Fed. R. Bankr. P. 7001(6) ........................................................................ 15
Fed. R. Bankr. P. 7001(9) ........................................................................ 15
Fed. R. Bankr. P. 7001-7087 ................................................................... 15
Fed. R. Bankr. P. 9013 ............................................................................. 12
Fed. R. Bankr. P. 9014 ................................................................... passim
Fed. R. Bankr. P. 9020 ................................................................. 11, 13, 14

1       Michael A. McConnell, as Chapter 11 Trustee ("Trustee") for the estate of

2 HVI Cat Canyon Inc. ("Debtor") hereby opposes the *Ex Parte Motion for Issuance of*

3 *Order to Show Cause in re Contempt* (case doc. no. 1030) ("Contempt Motion") filed

4 by GRL, LLC ("GRL"). This opposition is based on the below memorandum of

5 points and authorities, request for judicial notice ("RJN"), and declaration of Zev

6 Shechtman.

7       GRL seeks an order to show cause re contempt against the Trustee based upon

8 its three page motion (case doc. no. 1030), its two page request for judicial notice

9 (case doc. no. 1031), and its lodged order (case dot. no. 1034.) GRL clearly

10 contemplates that the contempt proceeding will be a contested matter with discovery,

11 as GRL has also moved for permission to serve more than 25 interrogatories and

12 more than 25 requests for admission.

13       GRL's contempt motion should be denied for four reasons.

14       1.     The moving party is GRL, but the papers filed with respect to the OSC

15 are uncertain as to whether the interested party is only GRL or whether the relief

16 sought is also sought on behalf of GLR, LLC ("GLR"). The Trustee (and, indeed,

17 the Court), is entitled to know in whose name this Contempt Motion is brought.

18 (GRL and GLR are both insiders of the Debtor.)

19       2.     GRL has failed totally to comply with Local Bankruptcy Rule ("LBR")

20 9020-1, which requires that a motion for an order to show cause meet rather specific

21 requirements, including the requirements which generally apply to motions (LBR

22 9013-1). In contravention of those rules, GRL's motion attaches no evidence,

23 contains no citations to any law, and makes no attempt to apply the law to any

24 evidence. As the moving party has the burden of proof, the failure to submit

25 evidence, let alone admissible evidence, is grounds alone to deny the motion. The

26 burden of proof on a contempt motion is higher than normal: the movant must

27 initially present clear and convincing evidence. When the movant produces no

28 evidence, the motion should be denied outright.

3.      GRL seeks to hold the Trustee in contempt for alleged failures commencing in **August, 2019**, when the Trustee was not appointed until **October 22, 2019.**  Holding the Trustee to a contempt standard for alleged failures which occurred prior to his appointment surely calls for an extraordinary level of evidence, law, and analysis.

4.      The issues raised by GRL are subject to a pending adversary proceeding (the "Avoidance Action" defined below), in which GRL and GLR are free to take what discovery they wish (within the limits of the rules) and present such evidence that they have that GRL has any right to any royalties or rents, how those royalties or rents should be calculated, and whether those rents and royalties as earned should be in a separate escrow account.  For example, just how much should the Debtor or Trustee escrow for alleged royalties for an insider, GRL, upon the sale of about $3 million in oil to another insider, CAP, when CAP and GRL are controlled by yet another insider, Randeep Grewal, and then CAP pays less than 10% of the bill.  Does GRL really get to be indignant when its sister company stiffs the estate?[1]

## I.

## STATEMENT OF FACTS

**A.      Background and Escrow Account**

On July 25, 2019, the Debtor filed its voluntary Chapter 11 petition commencing this bankruptcy case.  The case was originally filed in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

On August 14, 2019, the presiding court in this case (then in New York) entered an interim cash collateral order, which stated, in pertinent part:

---

[1] As for GLR, query whether $7,500 per month for a surface lease in a rural tract of Santa Maria, CA, promised by Debtor to an insider, was appropriate rent at all relevant times.

1
2
3
4
5
6
7
8
9
10
11

> 9. ***Absent further order of the Court or written consent of the Secured Lender UBS for payments specifically designated as a royalty payment or surface lease payment to an insider or affiliate, the Debtor shall not make the following payments: (i) any royalty payments or surface lease payments to insiders or affiliates of the Debtor*** or (ii) any payment of legal fees for the Debtor or any committee, ***but the Debtor shall hold such payments in an interest-bearing escrow or segregated account. All such issues are expressly reserved for future determination. The Cash Collateral Budget attached hereto includes certain items for accounting purposes only; this Order does not permit payment of these items under this Order.*** Notwithstanding anything to the contrary, Cash Collateral shall only ***be used to pay those items in the Cash Collateral Budget that have been specifically approved. For the avoidance of doubt, the Debtor has no authority to make any (i) insider or affiliate royalty payments, (ii) insider or affiliate surface lease payments, (iii) professional fee payments, or (iv) other payments which are listed below the line in the Cash Collateral Budget for accounting purposes but not authorized by this Order,*** regardless of whether any such payments listed in (i)-(iv) are included in the Cash Collateral Budget.

12 Case doc. no. 43 at 8-9, ¶ 9 (emphasis added).

13       On October 8, 2019, this Court entered an interim order on consensual use of

14 cash collateral.  It provided for the same limitations provided in the above quoted

15 paragraph 9.  Case doc. no. 375 at pp. 6-7.

16       On October 16, 2019, the Court entered its order directing the United States

17 Trustee to appoint a Chapter 11 trustee. Case doc. no. 409.  The order directing the

18 appointment of a trustee granted the motions of two creditors, who alleged a variety

19 of problems with the Debtor including, but not limited to, the Debtor's transactions

20 with affiliates and insiders.  Case doc. nos. 356, 363.  The order approving the

21 Trustee's appointment was entered on October 22, 2019.  Case doc. no. 431.

22       On November 27, 2019, this Court entered its final cash collateral order,

23 which included the following language:

24
25
26
27
28

> ***Absent further order of the Court or written consent of UBS for payments specifically designated as a royalty payment or surface lease payment to an insider or affiliate, neither Debtor nor the Trustee shall make the following payments directly or indirectly: (i) any royalty payments or surface lease payments to insiders or affiliates of the Debtor*** or (ii) any payment of professional fees for the Debtor or any committee, ***but the Trustee shall hold any such payments provided for in the Budget in an interest-bearing escrow or segregated account. All such issues are expressly reserved for future determination. The***

> ***Budget includes certain items for accounting purposes only; this Final Order does not permit payment of these items.*** Notwithstanding anything to the contrary, the proceeds of the Facility and Cash Collateral shall only be used to pay those items in the Budget that have been specifically approved by UBS or Huron and to escrow payments as set forth above. ***For the avoidance of doubt, neither the Debtor nor the Trustee has any authority to make, directly or indirectly, any (i) insider or affiliate royalty payments; (ii) insider or affiliate surface lease payments;*** (iii) professional fee payments, except payments authorized for the Trustee's professionals or Committee's professionals under this Final Order; or (iv) other payments which are listed below the line in the Budget for accounting purposes but not authorized by this Final Order, regardless of whether any such payments listed in (i)-(iv) are included in the Budget.

Case doc. no. 572 at pp. 12-13, ¶15 (emphasis added).  Thus, at least three orders have been entered prohibiting the estate from paying royalties to insiders or affiliates.

**B.      The Debtor's Insiders**

According to the Debtor, all of the following entities are insiders and affiliates of the Debtor (collectively, the "Insiders"):

a.      California Asphalt Production, Inc., formerly known as Greka Refining Company, formerly known as Santa Maria Mining Company, a California corporation ("CAP"), operating in Santa Barbara County, California.  Case doc. no. 171, ECF p. 296 (identifying CAP as an insider and affiliate).

b.      GIT, Inc., a Colorado corporation ("GIT"), operating Santa Barbara County, California.  Case doc. no. 171, ECF p. 295 (identifying GIT as an insider and affiliate).  According to the Debtor, GIT is the 100% owner of GOGH, LLC, which is the 100% owner of the Debtor.  See initial cash collateral motion, Case doc. no. 11, page 3, ¶9.

c.      GTL1, LLC, a Colorado limited liability company ("GTL1"),  operating in Santa Barbara County, California.  Case doc. no. 171,  ECF p. 295 (identifying GTL1 as an insider and affiliate).

d.      GLR, LLC, a Delaware limited liability company ("GLR").  Case doc. no. 171, ECF p. 294, 296 (identifying GLR as an insider and affiliate).

e.    GRL, LLC, a Delaware limited liability company ("GRL").  Case doc.
no. 171, ECF p. 294, 295 (identifying GRL as an insider and affiliate).

CAP operates a refinery in Santa Maria, California.  The Debtor had multiple
written agreements with CAP until the Trustee rejected those agreements.  Case doc.
nos. 573, 613.  Prior to rejection, the Debtor and then the Trustee delivered and sold
crude oil and natural gas to the CAP refinery and third parties through CAP.

The Debtor had an agreement with GIT for GIT to provide administrative
services to the Debtor, until the Trustee rejected that agreement.  Case doc. nos. 658,
782.  That included the Debtor storing its electronic documents on GIT's server, as to
which GIT has, for the time being, blocked the Trustee's access to the server to copy
its own documents.  The Trustee's attempt to simply recover the Debtor's own
records is now the subject of a pending contested matter arising from the objections
of GIT, CAP, and GTL1 to the Trustee obtaining the Debtor's own records.

The Debtor had an arrangement with GTL1 whereby GTL1 provided product
transportation services to the Debtor, until the Trustee rejected the transportation
agreement.  Case doc. nos. 658, 782.

Randeep S. Grewal signed the Debtor's Statement of Financial Affairs
identifying himself as Chairman of the Debtor.  Case doc. no. 171, ECF p. 288.  Mr.
Grewal is admittedly also the principal of the Insiders.  For example, Mr. Grewal
signed declarations asserting that he is the principal of GRL (Case doc. no. 767) and
GLR (Case doc. no. 801).

In addition to shared ownership, prior to the Trustee's appointment, the Debtor
and the Insiders shared management.  Ernesto Olivares signed the declaration in
support of the Insiders' recent Administrative Claims Motion, as the CFO of GIT,
CAP, and GTL1.  Case doc. no. 946 at page 13.  Mr. Olivares was CFO of the
Debtor when, six days before the Debtor's petition was filed, the Debtor transferred
property to other insiders at which Mr. Olivares was also an officer, GRL and GLR.

1  The Trustee has sued to unwind those transfers.  Adversary proceeding number 9:20-

2  ap-01006-MB (the Avoidance Action discussed below).

3  **C.     CAP's Failure to Pay for Shipments of Crude Oil**

4          As discussed in the Trustee's opposition to the Insiders' Administrative

5  Claims Motion (Case doc. no. 976), CAP, GIT, and GTL1 were always Insiders of

6  the Debtor and had intertwined business relationships, whereby GIT serves as the

7  back-office administrator for all of the Insiders and the Debtor, CAP purchased all of

8  the crude oil of the Debtor, and GTL1 trucked shipments of crude oil from the

9  Debtor to CAP.

10         CAP owes the Debtor at least $3,649,524.20 for postpetition crude oil sales

11 from August to November, 2019. Among other amounts owed to the estate, the

12 Trustee billed CAP $1.8 million for delivered oil in October 2019, but CAP only

13 paid the estate $300,000.  In addition, 20,393 barrels of oil were shipped to CAP in

14 November 2019 that were never paid for, at a value estimated to be $1,235,000.

15 **D.     The Trustee's Report to GRL**

16         The Trustee sent a detailed memorandum to GRL on June 5, 2020.  Attached

17 to the June 5, 2020, memorandum is a detailed chart showing how the funds

18 deposited into the Insider Escrow Deposit Account were calculated as well as June 5,

19 2020 bank account summary for the Insider Escrow Deposit Account.  A copy of the

20 June 5, 2020 memorandum is attached to the declaration of Zev Shechtman as

21 Exhibit "A."

22 **E.     The Trustee's Avoidance Action**

23         On January 9, 2020, the Trustee filed a complaint against GRL and GLR,

24 seeking turnover, and avoidance of preferential and/or fraudulent transfers under 11

25 U.S.C. §§ 542, 547, 548 and 550, commencing adversary proceeding number 9:20-

26

27

28

1   ap-01006-MB (the "Avoidance Action").[2]  By the Avoidance Action, the Trustee

2   seeks to recover oil and gas lease interests which were transferred from the Debtor to

3   GRL and GLR just 6 days before the Debtor's bankruptcy filing.  On February 3,

4   2020, the same date that GRL filed the Relief from Stay Motion, GRL and GLR filed

5   an answer and counterclaim in the Avoidance Action seeking, among other relief,

6   payment to GRL of the very royalties addressed by the Motion for Relief From Stay

7   as well as payment of surface lease rent to GLR.

8   **F.    GRL's Relief from Stay Motion**

9           On that same day that GRL and GLR filed their answer and counterclaim in

10  the Avoidance Action, GRL filed its Relief from Stay Motion, factually supported

11  solely by a declaration from Mr. Grewal, as the principal of GRL.  Case doc. no. 767.

12  Mr. Grewal signed the Debtor's Schedules and Statement of Financial Affairs, as the

13  Debtor's Chairman.  Case doc. no. 171, pages 288, 316.

14          On March 23, 2020, the Court entered its Order Denying the Relief from Stay

15  Motion.  Case doc. no. 866.  The Order provides that the Relief from Stay Motion is

16  denied "without prejudice to Movant pursuing relief in the related adversary

17  proceeding."  This make sense since GRL was seeking payment of the same royalties

18  in the Avoidance Action.

19          Although no law had changed, no newly discovered evidence was provided, or

20  any suggestion of error presented, on April 2, 2020, GRL filed its *Motion to*

21  *Reconsider Denial of Motion* (case doc. no. 900) ("GRL Motion to Reconsider")

22  asking the Court for reconsideration of the Court's order denying the GRL Relief

23  from Stay Motion.  The Court later entered a briefing scheduling order regarding the

24  GRL Motion to Reconsider.  Case doc. no. 950.  On May 14, 2020, the Trustee filed

25

26

27  ─────────────────
    [2] The complaint in the Avoidance Action was previously amended by right, and a

28  motion for leave to amend again is presently pending.

1  a detailed opposition to the GRL Motion to Reconsider.  Case doc. no. 967.  The

2  matter is under submission.

3      Thus, the Contempt Motion represents at least the fourth proceeding in as

4  many months that GRL has initiated regarding the same facts: the first being GRL's

5  Relief from Stay Motion, the second being GRL's counterclaim in the Avoidance

6  Action (filed the same day as the Relief from Stay Motion), the third being the GRL

7  Motion to Reconsider, and the fourth being this Contempt Motion.

8                              **II.**

9                          **DISCUSSION**

10  **A.    The Identity of the Movant is Uncertain**

11      The moving party has filed four substantive documents with respect to its

12  contempt motion: case doc. nos. 1030, 1031, 1032, and 1034.  Two identify Beall &

13  Burkhardt, APC, as counsel for both GRL and GLR.  Two identify the firm as

14  counsel only for GRL.  The actual motion for an order to show cause and the request

15  for judicial notice report that the motion is brought only on behalf of GRL.

16      The Trustee is entitled to know who seeks to hold him in contempt.  The

17  papers as filed are inconsistent.  See, e.g., Court Manual 2.5(c)(3)(A).

18  **B.    The Contempt Motion Fails to Comply with LBR 9020-1**

19      Rule 9020 of the Federal Rules of Bankruptcy Procedure ("FRBP") states that

20  "Rule 9014 governs a motion for an order of contempt made by the United States

21  trustee or a party in interest."  FRBP 9020.  FRBP 9014, in turn, states that "[i]n a

22  contested matter [] relief shall be requested by motion."  FRBP 9014.

23      Local Bankruptcy Rule ("LBR") 9020-1 describes with specificity the form of

24  a motion for order to show cause to hold a party in contempt.  LBR 9020-1 provides

25  in pertinent part:

26      <u>General</u>. Unless otherwise ordered by the court, contempt proceedings
        are initiated by filing ***a motion that conforms with LBR 9013-1*** and a
27      lodged order to show cause. Cause must be shown by filing a written
        explanation why the party should not be held in contempt and by
28      appearing at the hearing.

1   LBR 9020-1(a) (emphasis added).

2       LBR 9013-1 is the general rule of this Court applicable to motion practice and

3   contested matters.  It applies to motions under FRBP 9013 and contested matters

4   under FRBP 9014.  LBR 9013-1(a).  Unless ordered otherwise, a motion must be in

5   writing and accompanied by a notice of the motion.  LBR 9013-1(c)(2).

6       Further, LBR 9013-1(c)(3) states:

7       <u>Motion</u>. There must be served and filed with the motion and as a part
        thereof:

8
            (A) Duly authenticated copies of all photographs and
9       documentary ***evidence*** that the moving party intends to submit in
        support of the motion, in addition to the declarations required or
10      permitted by FRBP 9006(d); and

11          (B) A written statement of all reasons in support thereof, together
        with a ***memorandum of the points and authorities*** upon which the
12      moving party will rely.

13  LBR 9013-1(c)(3) (emphasis added).  The rule excepts limited types of motions—

14  professional fee or employment applications, relief from stay motion, or motions to

15  sell, use, lease, or abandon estate assets—from the requirement to file a

16  memorandum of points and authorities in support of the motion.  LBR 9013-1(c)(4).

17  A motion for order to show cause regarding contempt is not excepted from the

18  requirement that a motion be supported by a memorandum of points and authorities.

19      LBR 9013-1(i) states in pertinent part:

20      **<u>Evidence on Motions, Responses to Motions, or Reply.</u>** Factual
        contentions involved in any motion, opposition or other response to a
21      motion, or reply, must be presented, heard, and determined upon
        declarations and other written evidence. The verification of a motion is
22      not sufficient to constitute evidence on a motion, unless otherwise
        ordered by the court.

23

24  LBR 9013-1(i).  Motions must be supported by declarations and other written

25  evidence.

26      The burden of proof generally applicable to motions for contempt is "clear and

27  convincing evidence."  The Ninth Circuit has held that: "[t]he moving party has the

28  burden of showing by clear and convincing evidence that the contemnors violated a

1  specific and definite order of the court." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir.

2  2002) (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

3  Only if the movant meets its initial burden, then the burden "shifts to the contemnors

4  to demonstrate why they were unable to comply." *Donovan v. Mazzola (Donovan II)*,

5  716 F.2d 1226, 1240 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79

6  L.Ed.2d 169 (1984). The "clear and convincing" standard is "a higher standard than

7  the preponderance of the evidence standard but less stringent than beyond a

8  reasonable doubt." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466 (9th Cir.

9  1989 (citations omitted).  "Substantial compliance with a court order is a defense to

10  an action for civil contempt." *Id*.

11      GRL has totally failed to satisfy the applicable rules or present any evidence to

12  satisfy its high burden of proof.

13      The Contempt Motion is less than three pages long.  It includes no notice,

14  contrary to LBR 9013-1(c)(2).  It includes no evidence, contrary to LBR 9013-

15  1(c)(3)(A) and (i).  It includes no memorandum of points and authorities (not even a

16  reference to a legal authority), contrary to LBR 9013-1(c)(3)(B).  For the same

17  reasons, it does not comply with FRBP 9014 and 9020.

18      In order to prevail on its claims, GRL would need to produce the leases and

19  prove its right to royalties, defend against the Trustee's challenge to that right (which

20  is being litigated in an adversary proceeding (the Avoidance Action), prove the

21  amount to which it is entitled, prove that the Trustee has an obligation to reserve

22  funds for its claims, prove that it is entitled to payment even if another insider

23  breaches it obligation to pay for delivered oil, etc.  GRL has made no effort to lay out

24  a case; if GRL were to try, it would be crystal clear that GRL's alleged case mirrors

25  the claims GRL is already making in the Avoidance Action.

26      The Contempt Motion does not meet the high standard of "clear and

27  convincing evidence," or any standard, because of these failures.  The Contempt

28  Motion does not even state what order, and terms of the order, the Trustee violated,

1  let alone explain how the Trustee violated a "specific and definite" order of the

2  Court.

3       GRL has not met its initial burden and therefore the burden cannot be shifted

4  to the Trustee to disprove GRL's arguments.  These are not curable defects.  GRL

5  can't supplement evidence on a reply or argue that its perfunctory request for judicial

6  notice or "offer of proof" should be sufficient.  That argument would be wrong.  See

7  LBR 9013-1(c)(3), (i) and (g)(4) ("New arguments or matters raised for the first time

8  in reply documents will not be considered.").

9       The Contempt Motion should be denied because it does not satisfy the

10 requirements of a motion under FRBP 9020, 9014 and LBR 9020-1 and 9013-1, or

11 the high evidentiary burden applicable to contempt proceedings.

12 **C.**    **<u>GRL Seeks to Hold the Trustee Accountable for the Debtor-in-</u>**

13       **<u>Possession's Failures.</u>**

14      The Contempt Motion expressly seeks to hold the Trustee to account for

15 events starting in August 2019, when the Trustee was not even appointed until

16 October 2019.  For the reasons set forth above, Local Rules 9013-1 and 9020-1

17 <u>require</u> GRL to make out a case, with admissible evidence, that the Trustee breached

18 some obligation prior to his appointment.  GRL makes no attempt to do so, and as it

19 has the burden of proof, its motion should be denied.

20 **D.**    **<u>The Contempt Motion is Redundant.  Disputes Regarding Royalties are</u>**

21       **<u>Already Being Litigated in a Pending Adversary Proceeding.</u>**

22      A bankruptcy court may abstain from hearing a particular proceeding.  28

23 U.S.C. § 1334(c).  Courts seek judicial efficiency and to avoid duplication of

24 proceedings.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S.

25 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1976) ("[T]he general principle is

26 to avoid duplicative litigation.").  Courts may even sanction an attorney "who so

27 multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. §

28 1927.

14

1    The Contempt Motion is at least the fourth proceeding commenced by GRL,

2  all through the same counsel, within a four month period, seeking payment of

3  royalties.  The first was the GRL Relief from Stay Motion which was denied.  The

4  second is the GRL and GLR counterclaim in the Avoidance Action, which is

5  pending.  The third is the GRL Motion for Reconsideration of denial of the Relief

6  from Stay Motion, and that Motion for Reconsideration is also pending.  All three of

7  the earlier commenced proceedings, two of which are still pending, concern the exact

8  same royalties which are at issue here.  GRL is taking three simultaneous bites at the

9  apple, and has already had one unsuccessful bite.[3]

10    Denying this Contempt Motion with prejudice will not substantively impact

11  GRL's claims to royalties which are being separately addressed, and should be

12  addressed in the existing Avoidance Action.

13    Proceedings to "recover money or property" from a bankruptcy estate, "to

14  obtain an injunction or other equitable relief," or to "obtain declaratory judgment"

15  are adversary proceedings under FRBP 7001.  See FRBP 7001(1), (6), and (9).

16  Adversary proceedings are lawsuits in bankruptcy, and are subject to the notice,

17  discovery and other procedural due process attributes of a federal civil action, set

18  forth in the Bankruptcy Rules.  *See* FRBP 7001-7087.  As one court has observed:

19  "An adversary proceeding under Federal Rule of Bankruptcy Procedure 7001 is

20  essentially indistinguishable from a civil action under the Federal Rules of Civil

21  Procedure." *In re Van Ness*, 399 B.R. 897, 904 (Bankr. E.D. Cal. 2009) (citing

22  Christopher Klein, Bankruptcy Rules Made Easy (2001): A Guide to the Federal

23

24

25  _____

   [3] These are just some of the motions for administrative payments filed by the

26  Debtors' insiders.  Others include GLR's administrative rent motion (Case doc. no.
   801) which was resolved by stipulation, and the recent motion for payment of

27  administrative claim by GIT, CAP and GTL1 (Case doc. no. 946), which is still
   pending.

28

1  Rules of Civil Procedure that Apply in Bankruptcy, 75 Am. Bankr. L.J. 35, 38

2  (Winter 2001)).

3      In contrast, requests for orders to show cause regarding contempt are

4  "contested matters" governed by Fed. R. Bankr. P. 9014.

> [A] contested matter under [FRBP] 9014 is a motion procedure susceptible of more expeditious resolution than an adversary proceeding. In particular, the pleading rules that entail complaint, answer, counterclaim, cross claim, and third-party practice are dispensed with in favor of a simple motion procedure.

8  *Id.* (citing *In re Johnson*, 346 B.R. 190, 195 (B.A.P. 9th Cir. 2006)).

9      Further, "[i]t is settled that a Rule 9014 motion cannot be used to circumvent

10 the requirement of an adversary proceeding."  *Id.* (citing *Bear v. Coben (In re Golden*

11 *Plan of Cal., Inc.*), 829 F.2d 705, 711–12 (9th Cir. 1986)).

12     Given the frequency of multiple proceedings that are consuming the estate's

13 limited resources, and the fact that there is an adversary proceeding vehicle to

14 address the issues here, GRL's Contempt Motion should be denied with prejudice.

15 The Court should clearly state that any dispute regarding royalties must be addressed

16 in the Avoidance Action where a counterclaim was filed to address these issues.  All

17 of the parties will have the full panoply of litigation rights and due process there.

18 Motion practice should not be a weapon in a war of attrition by the Insiders.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1

2

### III.

### CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order denying the Contempt Motion with prejudice to GRL and GLR from pursuing these claims anywhere except the pending Avoidance Action.

DATED:  June 8, 2020                    DANNING, GILL, ISRAEL &
                                        KRASNOFF, LLP


                                        By:  _____
                                             ZEV SHECHTMAN
                                             Attorneys for Michael A. McConnell,
                                             Chapter 11 Trustee

# REQUEST FOR JUDICIAL NOTICE

Michael A. McConnell, as Chapter 11 Trustee (the "Trustee") for the estate of HVI Cat Canyon Inc. (the "Debtor") hereby requests that the Court take judicial notice of the following facts pursuant to Fed. R. Evid. 201:

1.    On July 25, 2019, the Debtor filed its voluntary Chapter 11 petition commencing this bankruptcy case.  The case was originally filed in the Southern District of New York.  The case was transferred to the Northern District of Texas, and then later to the Central District of California.

2.    On August 14, 2019, the presiding court in this case (then in New York) entered an interim cash collateral order.  Case doc. no. 43.

3.    On October 8, 2019, this Court entered an interim order on consensual use of cash collateral.  Case doc. no. 375.

4.    On October 16, 2019, the Court entered its order directing the United States Trustee to appoint a Chapter 11 trustee. Case doc. no. 409.  The order directing the appointment of a trustee granted the motions of two creditors.  Case doc. nos. 356, 363.  The order approving the Trustee's appointment was entered on October 22, 2019.  Case doc. no. 431.

5.    On November 27, 2019, this Court entered its final cash collateral order. Case doc. no. 572.

6.    According to the Debtor, all of the following entities are insiders and affiliates of the Debtor (collectively, the "Insiders"):

a.    California Asphalt Production, Inc., formerly known as Greka Refining Company, formerly known as Santa Maria Mining Company, a California corporation ("CAP"), operating in Santa Barbara County, California.  Case doc. no. 171, ECF p. 296 (identifying CAP as an insider and affiliate).

b.    GIT, Inc., a Colorado corporation ("GIT"), operating Santa Barbara County, California.  Case doc. no. 171, ECF p. 295 (identifying GIT as an insider and affiliate).  According to the Debtor, GIT is the 100% owner of GOGH,

1    LLC, which is the 100% owner of the Debtor.  See initial cash collateral motion,

2    Case doc. no. 11, page 3, ¶9.

3        c.    GTL1, LLC, a Colorado limited liability company ("GTL1"),

4    operating in Santa Barbara County, California.  Case doc. no. 171,  ECF p. 295

5    (identifying GTL1 as an insider and affiliate).

6        d.    GLR, LLC, a Delaware limited liability company ("GLR").  Case

7    doc. no. 171, ECF p. 294, 296 (identifying GLR as an insider and affiliate).

8        e.    GRL, LLC, a Delaware limited liability company ("GRL").  Case

9    doc. no. 171, ECF p. 294, 295 (identifying GRL as an insider and affiliate).

10    7.    Randeep S. Grewal signed the Debtor's Statement of Financial Affairs

11    identifying himself as Chairman of the Debtor.  Case doc. no. 171, ECF p. 288.

12    8.    Mr. Grewal signed declarations asserting that he is the principal of GRL

13    (Case doc. no. 767) and GLR (Case doc. no. 801).

14    9.    Ernesto Olivares signed the declaration in support of the Insiders' recent

15    Administrative Claims Motion, as the CFO of GIT, CAP, and GTL1.  Case doc. no.

16    946 at page 13.

17    10.    On January 9, 2020, the Trustee filed a complaint against GRL and

18    GLR, seeking turnover, and avoidance of preferential and/or fraudulent transfers

19    under 11 U.S.C. §§ 542, 547, 548 and 550, commencing adversary proceeding

20    number 9:20-ap-01006-MB (the "Avoidance Action").  On February 3, 2020, the

21    same date that GRL filed the Relief from Stay Motion, GRL and GLR filed an

22    answer and counterclaim in the Avoidance Action seeking, among other relief,

23    payment to GRL of the very royalties addressed by the Motion for Relief From Stay

24    as well as payment of surface lease rent to GLR.

25    11.    On that same day that GRL and GLR filed their answer and

26    counterclaim in the Avoidance Action, GRL filed its Relief from Stay Motion,

27    factually supported solely by a declaration from Mr. Grewal, as the principal of

28

1   GRL.  Case doc. no. 767.  Mr. Grewal signed the Debtor's Schedules and Statement

2   of Financial Affairs, as the Debtor's Chairman.  Case doc. no. 171, pages 288, 316.

3          12.    On March 23, 2020, the Court entered its Order Denying the Relief from

4   Stay Motion.  Case doc. no. 866.  The Order provides that the Relief from Stay

5   Motion is denied "without prejudice to Movant pursuing relief in the related

6   adversary proceeding."

7          13.    On April 2, 2020, GRL filed its Motion to Reconsider Denial of Motion

8   (case doc. no. 900) ("GRL Motion to Reconsider") asking the Court for

9   reconsideration of the Court's order denying the GRL Relief from Stay Motion.  The

10  Court later entered a briefing scheduling order regarding the GRL Motion to

11  Reconsider.  Case doc. no. 950.  On May 14, 2020, the Trustee filed his opposition to

12  the GRL Motion to Reconsider.  Case doc. no. 967.  The matter is under submission.

13

14  DATED:  June 8, 2020                 DANNING, GILL, ISRAEL &
                                        KRASNOFF, LLP
15

16

17                                      By: _____

18                                          ZEV SHECHTMAN
                                            Attorneys for Michael A. McConnell,
19                                          Chapter 11 Trustee

20

21

22

23

24

25

26

27

28

1593186.1  26932                              20

1

## **DECLARATION OF ZEV SHECHTMAN**

2    I, Zev Shechtman, declare as follows:

3    1.    I am an attorney duly admitted to practice before this Court.  I am the

4  principal of a professional corporation that is a partner of Danning, Gill, Israel &

5  Krasnoff, LLP, attorneys of record for Michael A. McConnell,  Chapter 11 Trustee.

6  I have personal knowledge of the facts set forth herein, and if called as a witness, I

7  could and would competently testify thereto.  I make this declaration in support of

8  the Chapter 11 Trustee's Opposition to: "Ex Parte Motion for Issuance of  Order to

9  Show Cause in re Contempt" [case Doc. No. 1030].

10    2.    Attached hereto as Exhibit "A" is a true and correct copy of the email I

11  sent to William Beall, as counsel for GRL, LLC, on June 5, 2020, together with the

12  two attachments to the email.

13    I declare under penalty of perjury under the laws of the United States of

14  America that the foregoing is true and correct.

15    Executed on this 8th day of June, 2020, at Los Angeles, California.

16

17    _____

18    Zev Shechtman

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

**Zev Shechtman**

| | |
|---|---|
| **From:** | Zev Shechtman |
| **Sent:** | Friday, June 5, 2020 12:25 PM |
| **To:** | Will Beall |
| **Cc:** | Eric Israel; George Schulman; Aaron E. de Leest; Sonia Singh |
| **Subject:** | In re HVI Cat Canyon, Inc.: GRL, LLC and GLR, LLC Insider Reserve Accounting |
| **Attachments:** | HVI GRL and GLR Reserve Chart 6-5-20.pdf; Escrow Royalties Bank Statement - 06.05.20.pdf |

**To: William Beall**
**From: Zev Shechtman**
**Dated: 6/5/2020**
**Re: GRL, LLC and GLR, LLC Insider Reserve Accounting**

Attached is the Debtor's report for GRL royalties for production dates July, 2019 to March 2020.  Also attached is a copy of the June 5, 2020 account summary for the Insider Escrow Deposit Account defined below.  We understand that, typically, sales revenues for the prior month are received by about the 20th of the following month, and royalties reconciliation takes up to another 30 days from that point.  Thus, payment for April sales was received on or about May 20, 2020.  Figures for royalties for April 2020 became available on or about June 5, 2020, and are not reflected in the royalty details in the attached chart which are current through March 2020. However, the Trustee has already deposited $4,524.80 on account of April 2020 GRL royalties, reflected in the bank account summary.

The information in the chart was extracted from Debtor's records.  Debtor filed for bankruptcy protection on July 25, 2019.  Thereafter, Debtor operated as a Debtor-in-Possession until October 22, 2019, when the Trustee was appointed.

When the Trustee was appointed, Debtor's bookkeeping system was already in place, particularly with regard to production and royalty accounting.  An affiliate, GIT, did all of the backroom administrative and accounting functions, including accounting for royalties.  Indeed that bookkeeping system was continued (via GIT) until December 31, 2019, when the Trustee rejected that agreement with GIT.  Thereafter, the information was transferred to the Trustee's control, and the transfer process had its own set of issues; for example, January 2020 royalties were initially estimated (resulting in a $6,923.81 shortfall that was resolved with a deposit on June 5, 2020, as reflected in the attached bank account summary).  The Trustee continues to investigate and study that system and data.

Separately, on August 14, 2019 the Bankruptcy Court entered the first of several orders requiring that rents and royalties to insiders be held in a separate account or

segregated, rather than paid to those interest holders.  Upon appointment, the Trustee was provided with $39,752.85 in a separate account which were segregated by the Debtor-in-Possession allegedly in accordance with the Court's orders.  Apparently that account included rent for GLR of $7,500.00, and one month of royalties, although no accounting was provided to the Trustee.  Immediately upon receipt, the Trustee moved the money in that account to a new, segregated account at Wells Fargo the ("Insider Escrow Deposit Account").  The Trustee continues to review and study the existing system and data to determine the accuracy of that information.

After his appointment, the Trustee continued to segregate on the budgets the new amounts estimated to be due as insider royalties, until February 2020, when the Trustee transferred an additional sum into the Insider Escrow Deposit Account.  Thereafter, the Trustee made all future deposits directly into the Insider Escrow Deposit Account.

The Trustee estimates that, as of April 30, 2020, the Insider Escrow Deposit Account holds $52,500 reserved for rent for the Lakeview office and warehouse for GLR, LLC, another affiliate.  That appears to be the full amount necessary, as the Trustee rejected the lease on Lakeview as of February 28, 2020 and vacated those premises.  See below.

The Trustee estimates that, as of April 30, 2020, the Insider Escrow Deposit Account is short by about $59,553.21.  The principal reasons for the shortfall include: (1) the Debtor-in-Possession failed to escrow sufficient funds during the Debtor-in-Possession's tenure, resulting in a shortfall of estimated escrowed royalties of about $45,000.00; (2) CAP failed to pay for oil delivered in October and November, 2019, resulting in a shortfall of escrowed royalties of about $42,500.00; (3) the continued impact of CAP's failure to pay; and (4) the Trustee's continued efforts to understand the accounting and deal with transition issues, especially the pre-petition and pre-Trustee accounting.

The only source of funds the Trustee has to reserve for alleged insider royalties are funds subject to claimed UBS liens.  Nevertheless, the Trustee has escrowed more funds than necessary for his period of operation, and has escrowed additional funds to make up for some of the shortfall created by the Debtor-in-Possession.  Thus, while the Trustee estimates the shortfall at $59,553.21, the shortfall directly caused by the Debtor-in-Possession's failure to reserve funds and by CAP's failure to pay for delivered oil exceeds $87,500.00, and is far more than the shortfall.

The Trustee does not concede that your client is entitled to any royalties.  At an appropriate time, before any funds are paid, the Trustee may require your client to prove its entitlement to any royalties.

**0024**

Whether royalties are calculated on the amounts billed, a reference price, or the amounts actually paid, has not been established.  Thus, for example, your client may be entitled to no royalties for amounts underpaid by CAP.  The Trustee has calculated royalties for those periods of underpayments by CAP as if paid at the billed amount; but the Trustee may assert that no royalties are due on sums not paid by the oil purchaser.

Whether royalties are owing on unpaid invoices and Debtor-in-Possession breaches given that everyone involved is in insider has also not been determined.

The attached chart mentions two payment statuses carried over from the GIT accounting:
- Suspense
- Special Pay

The Trustee understands "Special Pay" is a status used to identify "non-check" payments.  Prior to November, 2019, all GRL royalties were classified by the Debtor as "Special Pay."  Once remitted to GRL, the payable was supposed to be marked as "paid" with a reference number.  According to the Debtor's records, these "Special Pay" amounts had not been paid as of the Trustee's appointment.  However, the Trustee has subsequently deposited into the Insider Escrow Deposit Account some of this amount as noted below.  Whether the Trustee had any obligation to attempt to remedy the Debtor-in-Possession's breaches has not been determined.

During the period the Trustee has operated the Debtor, he has segregated or deposited GRL's alleged royalties, with limited exceptions.  The Debtor and then the Trustee delivered oil to CAP and billed CAP $1.8 million for delivered oil in October 2019, but CAP only paid the estate $300,000 out of that $1.8 million.  In addition, 20,393 barrels of oil were shipped to CAP in November 2019 that CAP never paid for, at value estimated to be $1,235,000.  Because there was a shortfall in payment for October 2019 and no payment for November 2019 from the purchaser of the crude oil, CAP, the Trustee allocated the funds he did receive among all interest holders on account of those deliveries.  Accordingly, the Trustee deposited into the Insider Escrow Account 2.5% of that $300,000 cash payment, equal to $7,500 for override royalties. The 2.5% was based on what Ernesto Olivares (former CFO of debtor and still CFO of the debtor's affiliates) told the Trustee is an "estimate" for what is due to GRL on account of overriding royalty interests.

With respect to GLR, the Trustee set aside $7,500 per month on account of the Lakeview office and warehouse into the Insider Escrow Account.  Pursuant to Court order, the Trustee rejected the lease of and vacated the Lakeview Property on or about February 28, 2020.  The Trustee made no reserve for rent ($7,500 per month) to GLR thereafter.

**0025**

The Debtor identified on its schedules that GRL, GLR, CAP, GIT, GTL1 and Randeep Grewal are all insiders of the Debtor.  Further, we understand that Ernesto Olivares was the CFO and/or person responsible for financial affairs at the same time for the Debtor, GRL, GLR, GIT, CAP, and GTL1 at all relevant times prior to the Trustee's employment, and has continued in that capacity for the non-debtor affiliates since the Trustee's appointment.

The Trustee understands that UBS claims that some or all of these funds are the cash collateral of UBS, which impacts the Trustee's ability to use those funds to satisfy shortfalls created by the Debtor-in-Possession's failure to reserve or by CAP's failure to pay.

Please let us know if you have any questions regarding the above.

####

**Zev Shechtman**
**Danning, Gill, Israel & Krasnoff, LLP**
1901 Avenue of the Stars, Suite 450
Los Angeles CA 90067-6006
**(310) 903-6344 mobile**| (310) 201-2443 direct
(310) 277-0077 office | (310) 277-5735 fax
zs@DanningGill.com  |  www.DanningGill.com



| Sum of Net Amount<br>Lease | Pay Types<br>Special Pay<br>7/31/2019 | 8/31/2019 | 9/30/2019 | 10/31/2019 | Special Pay Total | Suspense<br>11/25/2019 | 12/31/2019 | 1/31/2020 | 2/29/2020 | 3/31/2020 | Suspense Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BELRIDGE - DIATOMITE VERTICLE | 650.14 | 979.13 | 1,353.22 | 419.73 | 3,402.22 | 388.02 | | 184.87 | 22.34 | 873.16 | 1,468.39 | 4,870.61 |
| BELRIDGE - GIBSON | 79.09 | 57.79 | 28.26 | 13.15 | 178.29 | 12.75 | | 0.00 | 0.00 | 0.00 | 12.75 | 191.04 |
| BELRIDGE - TULARE HORIZONTAL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| BELRIDGE - TULARE VERTICLE | 3,513.52 | 2,548.85 | 2,766.66 | 2,161.78 | 10,990.81 | 3,904.18 | | 6,737.16 | 1,908.43 | 2,017.41 | 14,567.18 | 25,557.99 |
| BLC | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| BLU 4 | 587.52 | 1,944.77 | 120.96 | 272.20 | 2,925.45 | 187.53 | | | 319.91 | 81.65 | 589.09 | 3,514.54 |
| BLU 44 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| BLU 54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| BLU CONV. | 438.19 | 1,362.45 | 56.91 | 195.98 | 2,053.53 | 298.41 | | | 510.28 | 84.85 | 893.54 | 2,947.07 |
| BRADLEY CONS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| BROWN | 752.37 | 2,527.60 | 1,414.41 | 1,558.93 | 6,253.31 | 898.29 | | | | | 898.29 | 7,151.60 |
| CARRANZA | 793.37 | 1,472.65 | 1,823.61 | 1,973.27 | 6,062.90 | 1,098.17 | 191.37 | | 448.72 | 185.08 | 1,923.34 | 7,986.24 |
| CASMALIA-ARELLANES | 15.58 | 0.00 | 0.00 | 0.00 | 15.58 | 0.00 | | | | | 0.00 | 15.58 |
| CASMALIA-BONETTI | 9.17 | 0.00 | 0.00 | 0.00 | 9.17 | 0.00 | | | | | 0.00 | 9.17 |
| CASMALIA-MORGANTI | 1,039.51 | 1,519.64 | 1,957.94 | 1,024.31 | 5,541.40 | 12.98 | | | | | 12.98 | 5,554.38 |
| CASMALIA-MUSCIO | 16.50 | 0.00 | 0.00 | 0.00 | 16.50 | 0.00 | | | | | 0.00 | 16.50 |
| CASMALIA-RIGETTI | 19.47 | 0.00 | 0.00 | 0.00 | 19.47 | 0.00 | | | | | 0.00 | 19.47 |
| CASMALIA-RIGHETTI B | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| CAT CANYON-BELL | 0.00 | 93.26 | 71.06 | 4.06 | 168.38 | 74.26 | 53.12 | | 228.38 | 120.89 | 476.65 | 645.03 |
| CAT CANYON-BLOCHMAN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| CAT CANYON-PALMER STENDEL | 0.00 | 1,133.39 | 903.10 | 688.60 | 2,725.09 | 401.45 | 104.84 | | 447.76 | 99.89 | 1,053.94 | 3,779.03 |
| CHAMBERLIN | 393.41 | 325.83 | 611.64 | 729.99 | 2,060.87 | 527.05 | 96.69 | | 244.48 | 53.32 | 921.54 | 2,982.41 |
| CHAMBERLIN  B | 795.84 | 766.07 | 628.67 | 1,045.85 | 3,236.43 | 516.69 | 85.13 | | 134.51 | 79.10 | 815.43 | 4,051.86 |
| DAVIS | 1,034.62 | 3,992.23 | 2,994.29 | 3,686.37 | 11,707.51 | 1,938.36 | | | | | 1,938.36 | 13,645.87 |
| DAVIS  B | 308.73 | 939.14 | 864.66 | 1,029.28 | 3,141.81 | 639.94 | | | | | 639.94 | 3,781.75 |
| DAVIS  C | 696.91 | 1,974.62 | 1,526.51 | 1,475.96 | 5,674.00 | 911.65 | | | | | 911.65 | 6,585.65 |
| ESCOLLE W/LOPSE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| GATO RIDGE- UNION CONOCO | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| GATO RIDGE-FULLERTON | 0.00 | 0.09 | 0.10 | 0.00 | 0.19 | 0.00 | | | | | 0.00 | 0.19 |
| GATO RIDGE-GIBSON | 0.00 | 0.01 | 0.01 | 0.00 | 0.02 | 0.00 | | | | | 0.00 | 0.02 |
| GATO RIDGE-UNION CONTINENTAL | 0.00 | 0.08 | 0.08 | 0.00 | 0.16 | 0.00 | | | | | 0.00 | 0.16 |
| GOODWIN | 1,472.36 | 2,938.63 | 2,499.99 | 2,619.02 | 9,530.00 | 1,800.43 | 651.77 | | 347.64 | 446.95 | 3,246.79 | 12,776.79 |
| HARBORDT | 12.94 | 14.59 | 12.75 | 11.94 | 52.22 | 7.88 | 11.99 | | 0.66 | 0.24 | 20.77 | 72.99 |
| HOPKINS | 726.65 | 2,836.53 | 414.49 | 2,743.00 | 6,720.67 | 624.22 | | | 1,193.91 | | 1,818.13 | 8,538.80 |
| KEMP 4 | 193.89 | 940.04 | 186.00 | 428.59 | 1,748.52 | 675.56 | | | 1,153.03 | 206.60 | 2,035.19 | 3,783.71 |
| KEMP A | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| KEMP A13 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| LLOYD | 329.83 | 222.75 | 225.78 | 222.39 | 1,000.75 | 55.88 | 9.81 | | 0.00 | 10.10 | 75.79 | 1,076.54 |
| McPHAIL - TULARE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| McPHAIL - TULARE 37H | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 40.22 | 147.65 | 187.87 | 187.87 |
| PAYNE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| QUATI | 0.15 | 0.17 | 0.26 | 0.31 | 0.89 | 0.30 | | | | | 0.30 | 1.19 |
| RICHFIELD EAST DOME UNIT | 270.70 | 0.00 | 2,034.08 | 2,881.56 | 5,186.34 | 2,854.56 | 1,831.19 | 3,323.44 | | 2,884.16 | 10,893.35 | 16,079.69 |
| SECURITY  18-R | 245.76 | 24.32 | 533.50 | 818.79 | 1,622.37 | 500.80 | 208.17 | | 39.58 | 152.90 | 901.45 | 2,523.82 |
| SECURITY  26 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 |
| SECURITY  39 | 493.66 | 141.05 | 874.90 | 675.44 | 2,185.05 | 96.72 | 107.90 | | 75.20 | 26.07 | 305.89 | 2,490.94 |
| SECURITY  FEE | 2,251.65 | 3,137.07 | 2,477.22 | 2,669.56 | 10,535.50 | 1,888.56 | 731.33 | | 1,411.69 | 546.53 | 4,578.11 | 15,113.61 |
| SMV - LAINE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| SMVNU-ADAM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| SMVNU-BETTIGA | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| SMVNU-MC FADDIN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| SMVNU-MORETTI B | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | | 0.00 | 0.00 |
| SMVNU-UNION SUGAR | 409.44 | 462.63 | 1,121.87 | 0.00 | 1,993.94 | 280.05 | | | | | 280.05 | 2,273.99 |
| TBLU | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| TBLU  6 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 0.00 | 0.00 |
| THOMAS LEASE | 59.28 | 197.47 | 186.63 | 181.95 | 625.33 | 126.09 | 53.41 | | 29.03 | 3.76 | 212.29 | 837.62 |
| Grand Total | 17,610.25 | 32,552.85 | 27,689.56 | 29,532.01 | 107,384.67 | 20,720.78 | 4,136.72 | 10,245.47 | 8,555.77 | 8,020.31 | 51,679.05 | 159,063.72 |

0027

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Office Rent | | $7,500.00 | $7,500.00 | $7,500.00 | | $7,500.00 | $7,500.00 | $7,500.00 | $7,500.00 | Rejected | | $52,500.00 |
| Grand Total of Royalties and Rent: | $17,610.25 | $40,052.85 | $35,189.56 | $37,032.01 | | $28,220.78 | $11,636.72 | $17,745.47 | $16,055.77 | $8,020.31 | $211,563.72 |
| Insider Escrowed amount for rent | | $7,500.00 | $7,500.00 | $7,500.00 | | $7,500.00 | $7,500.00 | $7,500.00 | $7,500.00 | Rejected | | $52,500.00 |
| Insider Escrowed amount for oil | | $32,252.85 | $0.00 | $7,500.00 | $28,799.39 | $0.00 | $4,136.72 | $10,245.47 | $8,555.77 | $8,020.31 | $99,510.51 |
| Total insider escrowed amount: | $0.00 | $39,752.85 | $7,500.00 | $15,000.00 | $28,799.39 | $7,500.00 | $11,636.72 | $17,745.47 | $16,055.77 | $8,020.31 | $152,010.51 |
| Shortfall in Insider Escrow Account: | | | | | | | | | | | $59,553.21 |

| WF Deposit reconciliation: | Status | Deposit Date | Source | Ammount | Note 1 | Note 2 | Note 3 |
|---|---|---|---|---|---|---|---|
| | Deposited | 10/23/19 | Decl. 21* | $39,752.85 | $32,252.85 + $7,500 | | Funds from DIP - Aug 2109 and office rent one month |
| | Deposited | 2/24/20 | Decl. 28 | $84,621.05 | $28,799.39 + $3,321.66 + $52,500.00 | 7 months office rent, est for Jan 2020, and pre-trustee |
| | Deposited | 3/11/20 | Decl. 30 | $4,136.72 | | Dec-19 |
| | Deposited | 4/16/20 | Decl. 30 | $8,555.77 | | Feb-20 |
| | Deposited | 4/30/20 | Acct. Sum. | $8,020.31 | | Mar-20 |
| | Deposited | 6/5/20 | Acct. Sum. | $6,923.81 | | Jan-20 Supplement |
| | Deposited | 6/5/20 | Acct. Sum. | $4,524.80 | | Apr-20 Detailed chart above not yet updated |
| | | | Total: | $156,535.31 | | |
| | Amount in account: | | | $156,535.31 | | |

*References to Paragraphs of Trustee's Declaration re Opposition to GRL's Reconsideration Motion at ECF doc. no. 967

**0028**

2

# WELLS FARGO

## BUSINESS CHECKING

Account
...0268
Routing Numbers

$156,535.31
Available balance

### Activity Summary

| | |
|---|---|
| **Ending collected balance  as of  06/04/20** | $145,086.70 |
| **Current posted balance** | $145,086.70 |
| **Pending withdrawals/debits** | $0.00 |
| **Pending deposits/credits** | +$11,448.61 |
| **Available balance** | **$156,535.31** |
| Monthly Service Fee Summary | |
| Routing numbers | |

## Activity

First
Previous
Next

| Date | Description | Deposits/Credits | Withdrawals/Debits |
|---|---|---|---|
| **Authorized Transactions** | | | |
| *Note: Debit card transaction amounts may change.* | | | |
| 06/05/20 | ONLINE TRANSFER FROM HVI CAT CANYON, INC. BUSIN | $6,923.81 | |
| 06/05/20 | ONLINE TRANSFER FROM HVI CAT CANYON, INC. BUSIN | $4,524.80 | |
| **Posted Transactions** | | | |
| 04/30/20 | ONLINE TRANSFER FROM HVI CAT CANYON, INC. BUSINESS CHECKING XXXXXX3560 REF #IB082Q227F ON 04/30/20 | $8,020.31 | |
| 04/16/20 | ONLINE TRANSFER FROM HVI CAT CANYON, INC. BUSINESS CHECKING XXXXXX3560 REF #IB07YQ8P9H ON 04/16/20 | $8,555.77 | |
| **Totals** | | **$32,161.41** | **$0.00** |

**0029**

| Date | Description | Deposits/Credits | Withdrawals/Debits |
|------|-------------|------------------|--------------------|
| 03/11/20 | ONLINE TRANSFER FROM HVI CAT CANYON, INC. BUSINESS CHECKING XXXXXX3560 REF #IB07S7XMJQ ON 03/11/20 | $4,136.72 | |
| **Totals** | | **$32,161.41** | **$0.00** |

Back to top

First
Previous
Next

## *Account Disclosures

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

⌂ Equal Housing Lender

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  CHAPTER 11 TRUSTEE'S OPPOSITION TO: "EX PARTE MOTION FOR ISSUANCE OF ORDER TO SHOW CAUSE IN RE CONTEMPT" [CASE DOC. NO. 1030]; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; DECLARATION OF ZEV SHECHTMAN   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  June 8, 2020  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 8, 2020 | Patricia Morris | /s/ Patricia Morris |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1593369.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                   **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION** (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Anthony A Austin    anthony.austin@doj.ca.gov
- William C Beall    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- Bradley D Blakeley    blakeley@blakeleylawgroup.com, bradleydblakeley@gmail.com
- Alicia Clough    aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com
- Marc S Cohen    mscohen@loeb.com, klyles@loeb.com
- Alan D Condren    , berickson@seedmackall.com
- Alec S DiMario    alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com
- Karl J Fingerhood    karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- H Alexander Fisch    Alex.Fisch@doj.ca.gov
- Don Fisher    dfisher@ptwww.com, tblack@ptwww.com
- Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
- Ellen A Friedman    efriedman@friedmanspring.com, jquiambao@friedmanspring.com
- Gisele M Goetz    gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu;cecilia@hbsb.com
- Karen L Grant    kgrant@silcom.com
- Ira S Greene    Ira.Greene@lockelord.com
- Matthew C. Heyn    Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- Brian L Holman    b.holman@mpglaw.com
- Brian L Holman    b.holman@musickpeeler.com
- Eric P Israel    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Alan H Katz    akatz@lockelord.com
- John C Keith    john.keith@doj.ca.gov
- Jeannie Kim    jekim@sheppardmullin.com, lsemeraro@sheppardmullin.com
- Mitchell J Langberg    mlangberg@bhfs.com, dcrudup@bhfs.com
- Maxim B Litvak    mlitvak@pszjlaw.com
- Vincent T Martinez    llimone@twitchellandrice.com, smccomish@twitchellandrice.com
- Michael Authur McConnell (TR)    Michael.mcconnell@kellyhart.com
- Brian M Metcalf    bmetcalf@omm.com, brian-metcalf-9774@ecf.pacerpro.com
- Jerry Namba    nambaepiq@earthlink.net, G23453@notify.cincompass.com;annie_cunningham@ymail.com
- David L Osias    dosias@allenmatkins.com,
  bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com
- Darren L Patrick    dpatrick@omm.com, darren-patrick-
  1373@ecf.pacerpro.com;sindelicato@omm.com;ejones@omm.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Benjamin P Pugh    bpugh@ecg.law, mhamburger@ecg.law;calendar@ecg.law
- Edward S Renwick    erenwick@hanmor.com, iaguilar@hanmor.com
- J. Alexandra Rhim    arhim@hrhlaw.com
- Todd C. Ringstad    becky@ringstadlaw.com, arlene@ringstadlaw.com
- Mitchell E Rishe    mitchell.rishe@doj.ca.gov
- George E Schulman    GSchulman@DanningGill.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Sonia Singh    ssingh@DanningGill.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com
- Daniel A Solitro    dsolitro@lockelord.com, ataylor2@lockelord.com
- Ross Spence    ross@snowspencelaw.com,
  janissherrill@snowspencelaw.com;donnasutton@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com
- Christopher D Sullivan    csullivan@diamondmccarthy.com,
  mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com;quentin.roberts@diamondmccarthy.com;eri
  ka.shannon@diamondmccarthy.com;aiemee.low@diamondmccarthy.com

1593369.1  26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

- Jennifer Taylor    jtaylor@omm.com
- John N Tedford    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com
- Salina R Thomas    bankruptcy@co.kern.ca.us
- Meagan S Tom    meagan.tom@lockelord.com, autodocket@lockelord.com;taylor.warren@lockelord.com;autodocketdev@lockelord.com
- Patricia B Tomasco    pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com
- Fred Whitaker    lshertzer@cwlawyers.com, spattas@cwlawyers.com
- William E. Winfield    wwinfield@calattys.com, scuevas@calattys.com
- Richard Lee Wynne    richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com
- Emily Young    pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com
- Aaron E de Leest    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

1593369.1   26932 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**