| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| AARON E. DE LEEST (State Bar No. 216832)<br>adeleest@DanningGill.com<br>DANNING, GILL, ISRAEL & KRASNOFF, LLP<br>1901 Avenue of the Stars, Suite 450<br>Los Angeles, California 90067<br>Telephone (310) 277-0077<br>Facsimile (310) 277-5735<br><br><br>☐ Individual *appearing without an attorney*<br>☒ Attorney for: Michael A. McConnell, Chapter 11 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION**

| In re:<br><br>HVI CAT CANYON, INC.,<br><br><br><br><br><br><br>Debtor(s) | CASE NO.: 9:19-bk-11573-MB<br><br>Chapter 11 |
|---|---|
| | **NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE RE:** *(title of motion[1])*:<br>TRUSTEE'S FIFTH MOTION FOR AN ORDER: (1) AUTHORIZING THE TRUSTEE TO OBTAIN ADDITIONAL POSTPETITION FINANCING; (2) AUTHORIZING CONTINUED USE OF CASH COLLATERAL; (3) SCHEDULING A FINAL HEARING; AND (4) GRANTING RELATED RELIEF |

PLEASE TAKE NOTE that the order titled INTERIM ORDER APPROVING EIGHTH AMENDMENT TO THE CREDIT AGREEMENT was lodged on June 15, 2020 and is attached. This order relates to the motion which is docket number 1019.

** includes omitted exhibits

---

[1] Please abbreviate if title cannot fit into text field.

1510557.1 26843 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT A

1   ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@DanningGill.com*
2   AARON E. DE LEEST (State Bar No. 216832)
    *adeleest@DaningGill.com*
3   DANNING, GILL, ISRAEL & KRASNOFF, LLP
    1901 Avenue of the Stars, Suite 450
4   Los Angeles, California 90067-6006
    Telephone: (310) 277-0077
5   Facsimile: (310) 277-5735

6   Attorneys for Michael A. McConnell,
    Chapter 11 Trustee

7

8            **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10             **NORTHERN DIVISION**

11

12   In re:                      Case No. 9:19-bk-11573-MB

13   HVI CAT CANYON, INC.,        Chapter 11

14         Debtor.             **INTERIM ORDER APPROVING**
                               **EIGHTH AMENDMENT TO THE**
15                                  **CREDIT AGREEMENT**

16                          <u>Hearing</u>
                         Date:  May 26, 2020
17                          Time:  9:30 a.m.
                         Place:  Courtroom 201
18                                    1415 State Street
                                 Santa Barbara, California
19

20       This *Interim Order Approving Eighth Amendment to the Credit Agreement* (this "<u>Eighth</u>

21 <u>Amendment Order</u>") is entered as of May 26, 2020, with respect of the following facts:

22       On October 16, 2019, the Court entered the *Agreed Order Granting Motion for*

23 *Appointment of a Chapter 11 Trustee* [ECF No. 409], and the Court approved appointment of

24 Michael McConnell as the Chapter 11 trustee in this case (the "<u>Trustee</u>") on October 22, 2019

25 [ECF No. 431].

26       On November 7, 2019, the Trustee filed his *Emergency Motion for an Order: (1)*

27 *Authorizing the Trustee to Obtain Secured Priming Superpriority Financing; (2) Authorizing*

28 *Continued Use of Cash Collateral; (3) Scheduling a Final Hearing; and (4) Granting Related*

1  *Relief* [ECF No. 474] (the "<u>Emergency Financing Motion</u>") for authorization to obtain post-

2  petition financing from UBS AG, Stamford Branch ("<u>UBS AG, Stamford Branch</u>") pursuant to

3  that certain Credit Agreement dated as of November 8, 2019, by and between the Trustee and

4  UBS AG, Stamford Branch (as amended, supplemented or otherwise modified from time to time,

5  the "<u>Credit Agreement</u>").    The Court entered the *Final Order for Emergency Priming and*

6  *Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee* [ECF

7  No. 572] (the "<u>Final Order</u>")[1] on November 27, 2019.

8      Pursuant to the authority granted in the Final Order, the Trustee and UBS AG, Stamford

9  Branch entered into that certain Amendment to Credit Agreement, dated December 5, 2019,

10  extending the availability period by two weeks and increasing the amount of financing by

11  $500,000 [ECF No. 595].  The Trustee served the requisite notice thereof [ECF No. 595].

12      On December 11, 2019, the Trustee filed his motion [ECF No. 621] for entry of an order

13  approving and authorizing the Trustee's entry into the Second Amendment to Credit Agreement.

14  The Court entered the *Interim Order Approving Second Amendment to Credit Agreement* [ECF

15  No. 650] (the "<u>Second Amendment Order</u>") on December 20, 2019.  No party filed an objection

16  to approval of the Second Amendment on a final basis and the Court entered the *Final Order*

17  *Approving Second Amendment to the Credit Agreement* [ECF No. 718] on January 22, 2020.

18      Pursuant to the authority granted in the Second Amendment Order, the Trustee and UBS

19  AG, Stamford Branch entered into that certain Third Amendment to Credit Agreement, dated

20  January 31, 2020, extending the availability period by two weeks but leaving the amount

21  available the same [ECF No. 775].  The Trustee served the requisite notice thereof [ECF No.

22  775].

23      On February 14, 2020, the Trustee filed his motion [ECF No. 799] for entry of an order

24  approving and authorizing the Trustee's entry into the Fourth Amendment to Credit Agreement.

25  The Court entered the *Interim Order Approving Fourth Amendment to Credit Agreement* [ECF

26  No. 846] (the "<u>Fourth Amendment Order</u>") on March 5, 2020.  No party filed an objection to

27

28

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Final Order.

approval of the Fourth Amendment on a final basis and the Court entered the *Final Order Approving Fourth Amendment to the Credit Agreement* [ECF No. 864] on March 19, 2020.

Pursuant to the authority granted in the Fourth Amendment Order, the Trustee and UBS AG, Stamford Branch entered into that certain Fifth Amendment to Credit Agreement, dated April 3, 2020, extending the availability period by two weeks and increasing the amount of financing by $500,000 [ECF No. 911].  The Trustee served the requisite notice thereof [ECF No. 911].

On April 16, 2020, the Trustee filed his motion [ECF No. 939] (the "Motion") for entry of an order approving and authorizing the Trustee's entry into the Sixth Amendment to Credit Agreement (the "Sixth Amendment").  The Court entered the *Interim Order Approving Sixth Amendment to the Credit Agreement* [ECF No. 958] (the "Sixth Amendment Order") on April 22, 2020.  No party filed an objection to approval of the Sixth Amendment on a final basis and the *Final Order Approving Sixth Amendment to the Credit Agreement* has not yet been entered.

Pursuant to the authority granted in the Sixth Amendment Order, the Trustee and UBS AG, Stamford Branch entered into that certain Seventh Amendment to Credit Agreement, dated May 7, 2020 (the "Seventh Amendment"), extending the availability period by two weeks and increasing the amount of financing by $500,000 [ECF No. 996].  The Trustee served the requisite notice thereof [ECF No. 996].

On May 20, 2020, the Trustee filed his motion [ECF No. 1019] (the "Motion") for entry of an order approving and authorizing the Trustee's entry into the Eighth Amendment to Credit Agreement (the "Eighth Amendment").  On May 22, 2020, the Trustee filed his Notice of Filing of Revision to and Redline of: Eighth Amendment to Credit Agreement [ECF No. 1024], the revised Eighth Amendment was attached as Exhibit "A".  Notice and opportunity for hearing on the Motion being sufficient under the circumstances, and upon the findings of fact and conclusions of law made by the Court at the interim hearing held on May 26, 2020 (the "Interim Hearing"), all of which are incorporated herein by reference, and good cause appearing therefor,

///

///

**IT IS HEREBY FOUND AND ORDERED AS FOLLOWS:**

1.    <u>Motion Granted</u>.  The Motion is granted and the Eighth Amendment attached as Exhibit "1" hereto is approved on an interim basis.  Any objections to the Motion with respect to entry of this Eighth Amendment Order that have not been withdrawn, waived or settled, and any reservation of rights included therein, are hereby denied and overruled except as expressly set forth herein.  Except as specifically amended, supplemented, or otherwise modified by this Eighth Amendment Order and the Eighth Amendment, all provisions of the Final Order and the Sixth Amendment Order remain in full force and effect and are incorporated herein by reference as though set forth fully below, and for the avoidance of doubt, upon the effectiveness of the Eighth Amendment, all references to the Credit Agreement and the Facility in the Final Order shall mean the Credit Agreement and the Facility as modified by the terms of the Eighth Amendment.

2.    <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief granted herein are section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c).  Venue of this Chapter 11 proceeding and the Motion is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

3.    <u>Hearing Held; Notice</u>.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(c)(2).  Notice of the Interim Hearing and the relief requested in the Motion was given as set forth in the proof of service filed by the Trustee.

4.    <u>No Credit Available on More Favorable Terms</u>.  The Trustee, on behalf of the debtor and debtor in possession (the "<u>Debtor</u>") and the Debtor's estate, is unable to find sufficient financing from sources other than UBS AG, Stamford Branch on terms more favorable than the terms for the term loan facility (the "<u>Facility</u>") described in the Credit Agreement, including the Eighth Amendment.

5.    <u>Need for Post-Petition Financing and Use of Cash Collateral</u>.  The continued financing under the Facility, as modified by the Eighth Amendment, is critical for the Debtor to continue its operations in the ordinary course.  The Trustee's entry into the Eighth Amendment, and related relief is necessary to avoid immediate and irreparable harm to the Debtor's estate, its

- 4 -

employees, and all parties-in-interest.  The continued financing under the Facility, as modified by the Eighth Amendment, is the best source of financing available to the Debtor under the circumstances and was entered into in good faith and at arm's-length.

6.    <u>Authorization for Emergency Financing</u>.  The Trustee is authorized to borrow, and UBS AG, Stamford Branch is authorized to advance, an amount up to $10,000,000  (as it may be increased in accordance with this Eighth Amendment Order, the "<u>Aggregate Availability Amount</u>") under the Credit Agreement, subject to the terms of this Eighth Amendment Order and the Final Order, and in accordance with the budget attached hereto as Exhibit "2" (including all terms and conditions set forth therein and as may be updated from time to time in accordance with the Credit Agreement, the "<u>Budget</u>"), subject to a line-item variance of ten percent (10%) of the expenses set forth in the Budget tested on a cumulative basis by disbursement categories contained in the Budget (the "<u>Permitted Variance</u>").  As of May 19, 2020, UBS AG, Stamford Branch has advanced a total amount of $9,697,232.  The Trustee and UBS AG, Stamford Branch are authorized to extend the availability period under the Credit Agreement, as amended, by up to two weeks beyond the period provided for in the Eighth Amendment and increase the amount of financing by an aggregate amount of up to $500,000 beyond the amount provided for in the Eighth Amendment, in each case, upon mutual agreement of the Trustee and UBS AG, Stamford Branch, without further order of this Court.  Any advances provided by UBS AG, Stamford Branch pursuant to this Eighth Amendment Order shall be governed by the Final Order. Immediately upon entry of this Eighth Amendment Order, the Trustee shall, and is hereby authorized to, execute and deliver to UBS AG, Stamford Branch the Eighth Amendment and all other documents required to be executed and delivered under the Eighth Amendment.  The Trustee and counsel acting on behalf of the Trustee are further authorized to take any such actions that may be necessary to implement the Eighth Amendment, including without limitation to issue, execute and deliver any such certificates, borrowing requests or other documents and directions that may be requested by UBS AG, Stamford Branch.  Nothing in this Eighth Amendment Order shall create any obligation of UBS to advance or lend any money to the Trustee or the Debtor, and any such advances or loans shall be made by UBS AG, Stamford Branch only in accordance

- 5 -

with the terms and conditions of the Credit Agreement, the Final Order, and this Eighth Amendment Order.

7.      Based on the record before this Court, it appears (and the Trustee on behalf of the Debtor has stipulated) that the terms of the Eighth Amendment and this Eighth Amendment Order are fair and reasonable and are supported by reasonably equivalent value and fair consideration. Any advance made under the Credit Agreement in accordance with the Eighth Amendment shall bear interest on the unpaid principal amount thereof at a rate per annum equal to the Base Rate in effect for such advance plus 3.50%.  The Court further finds that the Trustee's agreement to the terms of the Eighth Amendment on behalf of the Debtor is a sound exercise of business judgment and should be approved as set forth herein.

8.      Use of Funds.  The Trustee may use funds advanced under the Facility, on the terms and conditions set forth herein and in the Credit Agreement, *provided that* all such funds are used to pay approved operating expenses solely in accordance with the Budget (including all terms and conditions set forth therein).  The Trustee is authorized to use funds advanced under the Facility to pay, or to fund a segregated account to pay, the reasonable fees and expenses for the Trustee's professionals and the Committee's professionals, only to the extent such fees and expenses for the Trustee's professionals and the Committee's professionals are included in the Budget and accrued prior to an Event of Default.  In accordance with the budget attached to the Seventh Amendment, the Trustee requested and escrowed $10,000 for the Committee's professionals for May 2020.   To the extent not previously escrowed, the Trustee shall immediately escrow such amount.  The $10,000 plus any amounts previously escrowed pursuant to prior order and not expended equals the total amount Budgeted for the Committee's professionals for May 2020.   Accordingly, once such funds are escrowed, the Committee's professionals shall not enjoy the benefits of the Carve-Out set forth in paragraph 16 of the Final Order.  With regard to the Trustee's professionals, they shall enjoy the benefit of the Carve-Out, which is hereby revised and replaced as set forth in Section 3.2 of the Eighth Amendment.  The Trustee's professionals are entitled to an additional amount not to exceed $15,000 in the aggregate from and after a written notice of default.

9.      <u>Use of Cash Collateral</u>.  The Trustee may use Cash Collateral, on the terms and conditions set forth in the Final Order, provided that the Termination Date is hereby amended to mean the date that is the earliest of (a) May 31, 2020 or such later date to which the Availability Period (as defined in the Credit Agreement) may be extended in accordance with the terms of this Eighth Amendment Order, (b) the occurrence of an Event of Default (as defined in the Credit Agreement), and (c) the breach or failure of the Trustee or the Debtor to comply with the terms of this Eighth Amendment Order.

10.      <u>Limitations on Use of Funds and Cash Collateral</u>.  Paragraph 14 of the Final Order shall be amended to increase the threshold amount for a Proposed Payment from $7,500 to $10,000.  Except as expressly modified herein, all provisions of the Final Order shall remain in full force and effect.

11.      <u>Stipulations</u>.  The Trustee acknowledges that as of the date hereof, the Existing Events of Default (as defined in the Eighth Amendment) have occurred and are continuing under the Credit Agreement.  UBS AG, Stamford Branch is not waiving and shall not be deemed to have waived any Event of Default.  UBS AG, Stamford Branch reserves all of its rights under the Credit Agreement and other loan documents and with respect to the Trustee's use of Cash Collateral.

12.      <u>Successors and Assigns</u>.  The provisions of this Eighth Amendment Order shall be binding upon UBS, the Debtor, the Trustee, all other parties in interest and their respective successors and assigns (including any other trustee hereinafter appointed or elected for the Debtor's estate) and inure to the benefit of UBS, the Trustee and the Debtor and their respective successors and assigns.

13.      <u>Compliance with Laws</u>.  Nothing in this Eighth Amendment Order or the Budget shall permit the Debtor or the Trustee to violate 28 U.S.C. § 959(b), and nothing in this Eighth Amendment Order or the Budget shall in any way diminish the obligation of any entity, including the Debtor and the Trustee, to comply with environmental laws.

14.      <u>Priority</u>.  Except as expressly set forth herein or in the Final Order with respect to the Financing Liens, nothing in this Eighth Amendment Order shall determine or effect the

relative priority of any senior prepetition lien or post-petition lien, and all rights are expressly reserved in that regard. All rights are expressly reserved with respect to whether any asset is cash collateral for any entity other than UBS and thus any entitlement of such other entities to adequate protection, including without limitation any superpriority claim.

15.    To the extent Santa Barbara has valid, senior, perfected, and non-avoidable liens for ad valorem taxes, penalties, interest, and attorneys' fees under applicable law, the Financing Liens and Adequate Protection Liens granted to secure Obligations incurred under the Facility in accordance with this Eighth Amendment Order shall be junior in priority and subject to such valid, senior, perfected, and non-avoidable ad valorem tax liens in favor of Santa Barbara only to the extent of such lien on the Collateral. Nothing in this Eighth Amendment Order shall determine the priority, amount, and extent of the Santa Barbara ad valorem tax liens or claims. All rights with regard to priority, amount, and extent of the Santa Barbara tax liens or claims are fully preserved.

16.    Effect of Eighth Amendment Order. If any or all of the provisions of this Eighth Amendment Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay, shall not affect (i) the validity of any Adequate Protection Obligations incurred before the actual receipt of written notice by UBS AG, London Branch of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby. Notwithstanding any such reversal, modification, vacatur or stay, any use of the Facility proceeds or Cash Collateral or Obligations or Adequate Protection Obligations incurred by Debtor or the Trustee to UBS before the actual receipt of written notice by UBS of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the original provisions of the Final Order and this Eighth Amendment Order, and UBS shall be entitled to all the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and the Final Order and this Eighth Amendment Order with respect to all uses of the Facility proceeds or Cash Collateral and the Obligations or Adequate Protection Obligations.

- 8 -

1591273.1  26932

17.     The Financing Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of UBS granted by the provisions of this Eighth Amendment Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the case to a case under chapter 7, dismissing of the case, or by any other act or omission or (ii) the entry of an order confirming a plan in the case.  The terms and provisions of this Eighth Amendment Order shall continue in this case, or in any superseding chapter 7 case under the Bankruptcy Code, and the Financing Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of UBS granted by the provisions of this Eighth Amendment Order shall continue in full force and effect until the Obligations and the Adequate Protection Obligations are indefeasibly paid in full.

18.     <u>Findings of Fact and Conclusions of Law</u>.  This Eighth Amendment Order shall constitute findings of fact and conclusions of law of the Court and shall take effect immediately upon execution hereof.

19.     <u>Filing</u>.  This Eighth Amendment Order may be filed in any state or local jurisdiction in order to evidence and perfect UBS's liens and security interests, as granted and confirmed herein.  At the request of UBS's counsel, the clerk of court shall issue a certified copy of this Eighth Amendment Order and shall execute such other certificates or affidavits of authenticity as may be reasonably necessary to put this Eighth Amendment Order in a form that may be accepted by the applicable filing office.

20.     <u>Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code</u>.  The terms of the Eighth Amendment and this Eighth Amendment Order were negotiated in good faith and at arms' length among the Trustee and UBS.  Financing provided under the Facility and the Credit Agreement shall be deemed to have been extended in good faith and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code.

21.     <u>No Stay</u>.  There is no stay of this Eighth Amendment Order, including no stay pursuant to Federal Rule of Bankruptcy Procedure 6004(h) (to the extent applicable).

1591273.1  26932

22.    <u>Final Hearing</u>.  The Motion is set for a final hearing to be held at 10:30 a.m. (prevailing Pacific Time), on June 15, 2020 (the "<u>Final Hearing</u>"), in Santa Barbara, California, in Courtroom 201, as well as telephonically.  If the United States District Court Chief Judge's Orders No. 20-042 and 20-05 closing all of the courthouses to the public, and United States Bankruptcy Court Second Amended General Order No. 20-02 making telephonic appearances mandatory are extended beyond June 1, 2020, this Final Hearing will be a telephonic hearing only.  Notwithstanding such Final Hearing, the Trustee may borrow and UBS may advance prior to such Final Hearing the full amount authorized by this Eighth Amendment Order.

###

1591273.1  26932

EXHIBIT 1

## EIGHTH AMENDMENT TO CREDIT AGREEMENT

This **EIGHTH AMENDMENT TO CREDIT AGREEMENT** (the "Amendment"), is made and entered into as of May [__], 2020, by and among **Michael McConnell** ("Trustee"), solely in his capacity as Chapter 11 trustee for the estate of **HVI Cat Canyon, Inc.**, a Colorado corporation ("HVI CC" and, together with Trustee, collectively, "Borrower"), and **UBS AG, Stamford Branch** ("Lender"). Capitalized terms used herein without definition shall have the same meanings herein as set forth in the Credit Agreement (as defined below).

## RECITALS

**WHEREAS**, Borrower and Lender are parties to that certain Credit Agreement dated as of November 8, 2019 (the "Credit Agreement"), as amended by the Amendment to Credit Agreement dated as of December 5, 2019, the Second Amendment to Credit Agreement (the "Second Amendment") dated as of January 3, 2020, the Third Amendment to Credit Agreement dated as of January 31, 2020, the Fourth Amendment to Credit Agreement (the "Fourth Amendment") dated as of March 10, 2020, the Fifth Amendment to Credit Agreement dated as of April 3, 2020, the Sixth Amendment to Credit Agreement (the "Sixth Amendment") dated as of April 17, 2020 and the Seventh Amendment to Credit Agreement dated as of May 7, 2020, and as further modified by that certain extension letter entered into by and between Trustee and Lender on January 13, 2020 and that certain extension letter entered into by and between Trustee and Lender on March 4, 2020; and

**WHEREAS**, as of the date hereof, the parties hereto intend to further amend the Credit Agreement to (i) revise certain defined terms in Section 1.01 of the Credit Agreement, and (ii) make certain other amendments as set forth below.

**NOW**, **THEREFORE**, in consideration of the premises, the covenants, promises and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

## ARTICLE 1
## ACKNOWLEDGMENTS AND RESERVATION OF RIGHTS

**Section 1.1    Acknowledgment of Defaults**.  Borrower acknowledges and represents that as of the date hereof (a) an Event of Default has occurred under Sections 6.01(e) and 7.01(e) of the Credit Agreement as a result of (i) the failure of Borrower to sell an average of one thousand (1,000) barrels of oil per day and (ii) the failure of monthly sales receipts of Borrower to be at least $750,000 for the months ending November 30, 2019, December 31, 2019, January 31, 2020, February 29, 2020, March 31, 2020, and April 30, 2020, as required under Section 6.02(l) of the Credit Agreement (the "Monthly Sales Defaults"); (b) an Event of Default has occurred under Sections 7.01(e), 7.01(g)(i)(H) and 7.01(j)(ii) of the Credit Agreement as a result of (i) the incurrence, creation or existence of a claim of Lien against any of Borrower's assets that are *pari passu* with or senior to the claims and Liens of Lender that could reasonably be expected to result in a Material Adverse Effect and (ii) the failure to grant Lender a lien on avoidance actions arising under Chapter 5 of the Bankruptcy Code (other than avoidance claims of the estate against any party that is a current or former insider or affiliate of HVI CC and the

    EXHIBIT 1

proceeds of such claims), in violation of Sections 2.04, 6.02(g), 7.01(g)(i)(H) and 7.01(j)(ii) of the Credit Agreement (the "Priority and Avoidance Actions Defaults"); (c) an Event of Default has occurred under Section 7.01(h) of the Credit Agreement as a result of the Cease & Desist Order issued by the Administrator of the Office of Spill Prevention and Response, dated as of January 17, 2020 (the "Governmental Approval Default"); (d) Borrower has failed to comply with the covenants in Sections 6.01(a)(ii), 6.01(a)(iii), 6.01(a)(iv), 6.01(a)(v) and 6.01(a)(viii) (the "Reporting Defaults", together with the Monthly Sales Defaults and the Priority and Avoidance Actions Defaults, the "Existing Defaults"); (e) Borrower has failed to provide Lender with sufficient evidence that Borrower has complied with the covenants in Sections 6.01(d)(vii), 6.01(d)(ix), 6.01(d)(x), 6.01(d)(xi) and 6.01(d)(xiii) of the Credit Agreement (together, the "Milestones"); (f) Borrower has failed to meet a condition precedent to the effectiveness of the Second Amendment set forth in Section 4.1(c) of the Second Amendment; (g) no Events of Default other than the Existing Defaults exist under the Credit Agreement; and (h) other than the existence of the Existing Defaults, all of the representations and warranties of Borrower in the Credit Agreement are true and correct in all material respects.

**Section 1.2    Acknowledgment of Authority.**    Borrower acknowledges and represents that (a) the execution and entry of this Amendment by Borrower is within Borrower's powers and has been duly authorized by the Court pursuant to the Eighth Amendment Order (as defined below) and (b) no further authorization or approval or other action by, and no notice to or filing with any Person is required for the due execution and entry of this Amendment by Borrower.

**Section 1.3    Reservation of Rights.**    As of May 19, 2020, Lender has advanced a total amount of $9,697,232 to Borrower. Notwithstanding any Advance made prior to, on or after the date hereof or any provision of this Amendment, (a) Lender is not waiving, and shall not be deemed to have waived, the Milestones, the Existing Defaults, any other Events of Default or any conditions to any Advance (including, without limitation, the conditions set forth in Section 4.02(b) or (c) of the Credit Agreement), (b) the satisfaction of Section 4.1(c) of the Second Amendment shall remain a condition to all future Advances under the Credit Agreement, (c) Lender hereby reserves all of its rights, remedies, and powers under the Credit Agreement and the other Loan Documents, at law, in equity, or otherwise (including, without limitation, the right to impose a default rate of interest with respect to all Obligations, retroactive to the date on which the Existing Defaults occurred or such later date as Lender may determine in its sole discretion), and (d) Borrower agrees that (i) neither the making of any Advance nor the acceptance by Lender of any payments provided for in the Loan Documents shall excuse Borrower from any of its obligations under the Loan Documents and (ii) it will not assert laches, waiver or any other defense to the enforcement of any of the Loan Documents based upon the making of any Advance by Lender during the occurrence of the Existing Defaults or any other Event of Default or the acceptance by Lender of any of the payments provided for in the Loan Documents.

**ARTICLE 2**
**AMENDMENTS TO CREDIT AGREEMENT**

**Section 2.1    Amendments to Section 1.01: Definitions.**

12

(a) The definition of "Aggregate Advance Limit" in Section 1.01 of the Credit Agreement is hereby amended and restated as follows:

"Aggregate Advance Limit": An amount equal to ten million dollars ($10,000,000).

(b) The definition of "Availability Period" in Section 1.01 of the Credit Agreement is hereby amended and restated as follows:

"Availability Period": The period commencing on the Closing Date and ending on the earlier of (i) May 31, 2020 and (ii) the Maturity Date.

(c) The definition of "Maturity Date" in Section 1.01 of the Credit Agreement is hereby amended and restated as follows:

"Maturity Date": The earlier of (i) June 30, 2020, (ii) the date of any sale, transfer or other disposition of all or substantially all of the assets of Borrower, (iii) the entry of an order from the Court granting relief from the automatic stay to any credit against any material assets of Borrower, (iv) the date of exercise by any landlord or regulatory authority of any remedy with regard to any assets of Borrower, (v) the occurrence of a Material Adverse Effect, and (vi) the acceleration of the Obligations upon the occurrence of an Event of Default in accordance with the terms of this Agreement.

**Section 2.2    Extensions to Section 6.01: Affirmative Covenants.**

(a) Lender hereby exercises its right under Section 6.01(d) of the Credit Agreement to extend the deadline set forth in Section 6.01(d)(xviii) of the Credit Agreement, which Section is amended and restated as follows:

(xviii)    No later than May 25, 2020, unless extended by Lender in its sole discretion, Trustee shall file a motion for summary judgment in its action to determine the status of Borrower's mineral leases, including whether they are subject to Section 365 of the Bankruptcy Code.

**ARTICLE 3
AGREED BUDGET**

**Section 3.1    Agreed Budget.**    The parties agree and acknowledge that the budget attached hereto as Exhibit A shall constitute the Agreed Budget for all purposes under the Credit Agreement and the other Loan Documents as of the date hereof, subject to further modification in accordance with the terms of the Credit Agreement. Trustee represents and warrants that Trustee is not aware of any information contained in the Agreed Budget which is false or misleading or of any omission of information which causes such Agreed Budget to be false or misleading.

**Section 3.2    Professional Fees.**    The parties agree and acknowledge that (i) the following guidelines shall replace any prior agreement or understanding between the parties regarding any Carve-Out for the professionals referenced below, including that in paragraph 8 of

the Interim Order Approving Sixth Amendment to Credit Agreement entered on April 22, 2020 and paragraph 16 of the Final Borrowing Order and (ii) prior to the effectiveness of this Amendment, CR3 Partners, LLC and Danning, Gill, Israel & Krasnoff, LLP shall each be required to provide an executed acknowledgement agreeing to the terms set forth in this Section 3.2, unless Lender, in its sole and absolute discretion, decides any such acknowledgement may be provided at a later date:

    (a)   As used herein "<u>Deferred Fees</u>" means all the currently unpaid fees and expenses payable to Trustee, CR3 Partners, LLC, Danning, Gill, Israel & Krasnoff, LLP and other professionals employed by Trustee: (i) accrued between the date of Trustee's appointment on October 16, 2019 and May 31, 2020 and ultimately allowed pursuant to a Final Order of the Court, (ii) in a total amount not to exceed one million four hundred thousand dollars ($1,400,000) and (iii) to the extent in excess of the amount set forth in the Agreed Budget for Professional Fees during such period, including the holdbacks under the Credit Agreement. As used herein, "<u>Professional Fees</u>" means the fees and expenses payable to Trustee and all other attorneys, accountants and other professionals retained in the Chapter 11 Case pursuant to Sections 327 and 1103 of the Bankruptcy Code, including but not limited to CR3 Partners, LLC, Danning, Gill, Israel & Krasnoff, LLP and counsel to the Official Committee of Unsecured Creditors (collectively, the "<u>Professionals</u>" and each, a "<u>Professional</u>") but excluding any fees and expenses payable to Ten Oaks Partners.

    (b)   Notwithstanding any super-priority claims, priming liens or prepetition liens of Lender, Lender agrees that the net cash proceeds of the Collateral (including any distributions pursuant to a chapter 11 plan or any foreclosure sale) shall be applied, and Lender shall carve-out from its liens and claims to permit the payment of the Deferred Fees as follows: (1) first, to the Obligations in an amount up to $1,191,862, (2) second, to any applicable property taxes payable in respect of such Collateral, (3) third, after deducting other bona fide costs of sale including without limitation (i) payments due to Ten Oaks Partners or any broker or advisor and (ii) any amounts actually paid or escrowed from sale proceeds on behalf of (x) Professional Fees incurred between the Petition Date and the date of Trustee's appointment on October 16, 2019 or (y) the Official Committee of Unsecured Creditors during any period, fifty percent (50%) thereof to the Obligations and fifty percent (50%) thereof to the Deferred Fees until the Deferred Fees are paid in full, provided that in the case of a successful credit bid in this Bankruptcy Case or at a foreclosure sale, Lender shall promptly pay the Deferred Fees in cash in the amount of one million four hundred thousand dollars ($1,400,000), (4) fourth, to any remaining Obligations, (5) fifth, to any Prepetition Debt owed to Lender, and (6) sixth, as otherwise provided in the Bankruptcy Code. For the avoidance of doubt, nothing in this <u>Section 3.2(b)</u> shall (i) be construed as consent to the allowance of any Professional Fees or Deferred Fees or (ii) affect the right of any party to object to the allowance of, or seek reduction, compromise or adjustment (in whole or in part) to the payment of, any claim.

## ARTICLE 4
## CONDITIONS OF LENDING

**Section 4.1    Conditions Precedent.**    The effectiveness of this Amendment is subject to the following conditions precedent:

(a) Lender shall have received the following, in form and substance satisfactory and acceptable to Lender:

    (i)    an executed copy of this Amendment delivered by Borrower to Lender;

    (ii)    such other documents as Lender may reasonably request;

(b) approval by the Court or entry of an interim or final Court order, in full effect and unstayed, approving this Amendment (the "Eighth Amendment Order"), in each case in a form and substance satisfactory to Lender, which Eighth Amendment Order shall provide authority to extend the Availability Period by two weeks and increase the Aggregate Availability Amount by $500,000 without further order of the Court;

(c) the representations and warranties contained in Section 5.01 of the Credit Agreement are true and correct as though made on and as of the date of this Amendment;

(d) other than the existence of the Existing Defaults, no event or condition has occurred and is continuing, or would result from the making of any Advance, which constitutes an Event of Default or Potential Event of Default;

(e) other than in connection with the existence of the Existing Defaults (including in connection with failure of the Final Borrowing Order to grant a senior priming lien with regard to the Treasurer and Tax Collector of the Country of Santa Barbara, California), no pleading or application shall have been filed in the Court by any party in interest which is not withdrawn, dismissed or denied within ten (10) days after filing seeking (i) to dismiss or convert the Chapter 11 Case to a Chapter 7 case, (ii) the removal of Trustee, or the appointment of an examiner having enlarged powers relating to the operation of the business of Borrower (beyond those set forth under Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code, (iii) the granting of a super-priority claim or a Lien *pari passu* or senior to that of Lender granted pursuant to any Collateral Documents, the Interim Borrowing Order or the Final Borrowing Order, (iv) to stay, reverse, vacate, or otherwise modify the Interim Borrowing Order or the Final Borrowing Order without the prior written consent of Lender, or (v) relief from the automatic stay (or any other injunction having similar effect) so as to allow a third party to proceed against any material property or assets of Borrower; and

(f) no order, judgment or decree of any court (including, without limitation, the Court), arbitrator or governmental authority shall purport to enjoin or restrain Lender from making any Advance.

## ARTICLE 5
## MISCELLANEOUS

**Section 5.1    Entire Agreement; Effect on Credit Agreement.**  This Amendment and the Loan Documents and all exhibits hereto and thereto embody the entire agreement between the parties respecting the subject matter hereof and thereof and supersede all prior agreements, proposals, communications and understandings relating to such subject matter.  The terms of the Amendment shall be considered a part of the Credit Agreement as if fully set forth therein. Except as specifically amended by this Amendment, the Credit Agreement and the other Loan Documents shall remain in full force and effect and are hereby ratified and confirmed.  The execution, delivery and performance of this Amendment shall not constitute a waiver of any provision of, or operate as a waiver of any right, power or remedy of, Lender under the Credit Agreement or any of the other Loan Documents.

**Section 5.2    Miscellaneous.**  This Amendment shall be binding upon the parties and their respective successors and assigns.  The section headings are furnished for the convenience of the parties and are not to be considered in the construction or interpretation of this Amendment or the Credit Agreement.  This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, but which together shall constitute one and the same instrument. This Amendment may be executed by electronic or computerized means (including, without limitation, by electronic stylus, scanned or photographed signature, typing or any electronic signature service) and the parties agree that any such electronic signature by an authorized signatory on behalf of a party shall – to the fullest extent possible – be treated in the same way as a "wet ink" signature by such party.

**Section 5.3    Governing Law.**  The construction, validity, enforcement and interpretation of this Amendment shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

**Section 5.4    No Other Amendments.**  In case of a conflict between the terms of this Amendment and the Credit Agreement, the terms of this Amendment control.  Except as expressly set forth in this Amendment, the terms of the Credit Agreement remain unchanged and in full force and effect.

**Section 5.5.    Final Borrowing Order Controls.** All of the terms and agreements of the Final Borrowing Order, as supplemented by the Second Amendment Order, the Fourth Amendment Order, the Sixth Amendment Order and the Eighth Amendment Order, are incorporated in this Amendment by reference. In the event of any direct conflict or inconsistency between the provisions of this Amendment and the Final Borrowing Order, the provisions of the Final Borrowing Order, as supplemented by the Second Amendment Order, the Fourth Amendment Order, the Sixth Amendment Order and the Eighth Amendment Order, shall control.

16

**Section 5.6**    **Fees and Expenses.**  Without limiting the generality of Section 8.05 of the Credit Agreement, Borrower agrees to pay all reasonable fees and expenses of Lender in connection with this Amendment (including reasonable attorneys' fees and expenses).


[The remainder of this page is left intentionally blank.]

17

**IN WITNESS WHEREOF**, the parties have executed this Amendment as of the day and year first above written.

**BORROWER:**

HVI CAT CANYON, INC.


By: _____

Name: Michael McConnell

Title:   Chapter 11 Trustee for the estate of HVI Cat
         Canyon, Inc.

*[Signature Page to Eighth Amendment to Credit Agreement]*

18

**THE LENDER:**

UBS AG, STAMFORD BRANCH


By: _____

Name:

Title:


By: _____

Name:

Title:

*[Signature Page to Eighth Amendment to Credit Agreement]*

11

19

EXHIBIT 2

| HVI CAT CANYON INC. Weekly Cash Flow Forecast | Forecast Week 42 11-May-20 | Forecast Week 43 18-May-20 | Forecast Week 44 25-May-20 | 3-Week TOTAL |
|---|---|---|---|---|
| *week starting* | | | | |
| Beginning Cash Balance | 613,416 | 269,262 | 98,100 | 613,416 |
| **Cash Inflows** | | | | |
| SMV | - | 141,725 | - | 141,725 |
| Redu | - | 60,757 | - | 60,757 |
| Belridge | - | 47,642 | - | 47,642 |
| **Total Cash Inflows** | - | 250,124 | - | 250,124 |
| Royalties | - | - | (24,787) | (24,787) |
| Escrow Royalties | - | - | (7,082) | (7,082) |
| **Total Net Cash Inflows** | - | 250,124 | (31,869) | 218,255 |
| **Cash Outflows** | | | | |
| **Operating Expenses** | | | | |
| Payroll Checks | - | (70,800) | - | (70,800) |
| Payroll Taxes | (25,488) | - | (25,488) | (50,976) |
| Garnishment & Child Support | - | (5,000) | (4,500) | (9,500) |
| Consultants | (12,500) | (12,500) | - | (25,000) |
| Phones | (1,500) | - | - | (1,500) |
| Power SoCalEdison | - | - | (16,436) | (16,436) |
| Waste Management | - | (1,700) | (1,000) | (2,700) |
| Water | (2,000) | (1,500) | - | (3,500) |
| SouthernCalGas | - | (500) | - | (500) |
| Portable Restrooms | - | (1,500) | - | (1,500) |
| Chemicals | (4,000) | - | (5,000) | (9,000) |
| Pumps | - | (6,000) | (6,500) | (12,500) |
| Gasoline | - | (4,000) | - | (4,000) |
| Transportation | (35,500) | (28,000) | (35,500) | (99,000) |
| Vacuum Trucks | (57,500) | (28,750) | (28,750) | (115,000) |
| Diluent | - | (103,974) | - | (103,974) |
| Electricians | (21,000) | (24,000) | (10,000) | (55,000) |
| Welders | (17,500) | - | (5,000) | (22,500) |
| Supplies (Belts-Parts, Labor) | (30,000) | - | (1,000) | (31,000) |
| Parts (Compressor, Pipe, others) | (5,000) | (5,000) | (5,000) | (15,000) |
| Weed abatement | (6,000) | - | - | (6,000) |
| Compliance | - | (15,000) | - | (15,000) |
| SBP - APCD | (37,000) | - | (10,000) | (47,000) |
| Backoffice & Administrative | (33,000) | (66,033) | - | (99,033) |
| **Total Operating Expenses** | (287,988) | (374,257) | (154,174) | (816,418) |
| **Net Operating Profit** | $ (287,988) | $ (124,132) | $ (186,042) | (598,163) |
| **Total Health and Safety & Deferred Maintenance** | | | | |
| **Health and Safety** | | | | |
| SMV Health and Safety | - | (14,570) | (35,000) | (49,570) |
| **Total Health and Safety** | - | (14,570) | (35,000) | (49,570) |
| Capital Expenditure | (25,000) | - | - | (25,000) |
| **Total Health and Safety & Deferred Maintenance** | (25,000) | (14,570) | (35,000) | (74,570) |
| Bank Charges & fees | (210) | (210) | (210) | (630) |
| Insurances | (30,956) | (32,250) | (45,129) | (108,335) |
| 1 Chapter 11 Trustee Professionals | - | - | (120,000) | (120,000) |
| Unsecured Creditor Committee Professionals | - | - | (10,000) | (10,000) |
| U.S. Trustee Payment | - | - | (27,630) | (27,630) |
| **Bankruptcy Related Expenses** | (31,166) | (32,460) | (202,969) | (266,595) |
| **Total Cash Outflows Before Transfers** | (344,154) | (421,287) | (392,143) | (1,157,583) |
| **Transfers** | | | | |
| Escrow and Reserve Net Transfers | - | - | 24,787 | 24,787 |
| **Total Net Transfers** | - | - | 24,787 | 24,787 |
| **Total Cash Outflows Net of Transfers** | (344,154) | (421,287) | (367,356) | (1,499,965) |
| **Net Cash Flow** | (344,154) | (171,162) | (399,225) | (1,281,710) |
| Beginning Cash Balance | 613,416 | 269,262 | 98,100 | 613,416 |
| Net Cash Flow | (344,154) | (171,162) | (399,225) | (914,541) |
| Net Borrowing/(Pay Down) | - | - | 301,125 | 301,125 |
| **Ending Cash Balance** | 269,262 | 98,100 | - | - |
| Loan Balance | 9,697,232 | 9,697,232 | 9,998,357 | 9,998,357 |

1 CR3 has provided periodic budgets of professional fees to UBS to include both accrued and interim payments. As of 5/20/20, accrued and unpaid fees for all the Chapter 11 Trustee's professionals for the period January 1st to April 31st 2020 are approximately $1,099.783.05. Per the April Fee Statements filed by the Chapter 11 Trustee's professionals, the total fees due to these professionals are approximately $669,902.89 and the budgeted pro-rata payment amount of $120,000 for April fees will result in a less than 20% payment of the accrued fees for the month. Total professional fees forecast for the period May 1st to May 31st are estimated to be $600,000. An agreement is still being negotiated with UBS and the Chapter 11 Trustee's professionals regarding the payment of May's forecast fees.

EXHIBIT 2

20

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE RE: TRUSTEE'S FIFTH MOTION FOR AN ORDER: (1) AUTHORIZING THE TRUSTEE TO OBTAIN ADDITIONAL POSTPETITION FINANCING; (2) AUTHORIZING CONTINUED USE OF CASH COLLATERAL; (3) SCHEDULING A FINAL HEARING; AND (4) GRANTING RELATED RELIEF  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  June 15, 2020 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:  On  June 15, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
HVI Cat Canyon, Inc.
c/o Capitol Corporate Services, Inc.
36 S. 18th Avenue, Suite D
Brighton, CO 80601

Debtor
HVI Cat Canyon,Inc.
630 Fifth Avenue, Suite 2410
New York, NY  10111

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  June 15, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 15, 2020 | Beverly Lew | /s/ Beverly Lew |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION** (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Anthony A Austin**    anthony.austin@doj.ca.gov

- **William C Beall**    will@beallandburkhardt.com, carissa@beallandburkhardt.com

- **Bradley D Blakeley**    blakeley@blakeleylawgroup.com, bradleydblakeley@gmail.com

- **Alicia Clough**    aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com

- **Marc S Cohen**    mscohen@loeb.com, klyles@loeb.com

- **Alan D Condren**    , berickson@seedmackall.com

- **Alec S DiMario**    alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com

- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com,
  Helen@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com;Noreen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

- **Karl J Fingerhood**    karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov

- **H Alexander Fisch**    Alex.Fisch@doj.ca.gov

- **Don Fisher**    dfisher@ptwww.com, tblack@ptwww.com

- **Brian D Fittipaldi**    brian.fittipaldi@usdoj.gov

- **Ellen A Friedman**    efriedman@friedmanspring.com, khollander@friedmanspring.com

- **Gisele M Goetz**    gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu;cecilia@hbsb.com

- **Karen L Grant**    kgrant@silcom.com

- **Ira S Greene**    Ira.Greene@lockelord.com

- **Matthew C. Heyn**    Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com

- **Brian L Holman**    b.holman@mpglaw.com

- **Brian L Holman**    b.holman@musickpeeler.com

- **Tracy K Hunckler**    thunckler@daycartermurphy.com, cgori@daycartermurphy.com

- **Eric P Israel**    eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com

- **Evan M Jones**    ejones@omm.com, ejones@omm.com

- **Alan H Katz**    akatz@lockelord.com

- **John C Keith**    john.keith@doj.ca.gov

- **Jeannie Kim**    jekim@sheppardmullin.com, lsemeraro@sheppardmullin.com

- **Mitchell J Langberg**    mlangberg@bhfs.com, dcrudup@bhfs.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Maxim B Litvak**    mlitvak@pszjlaw.com

- **Vincent T Martinez**    llimone@twitchellandrice.com, smccomish@twitchellandrice.com

- **Michael Arthur McConnell (TR)**    Michael.mcconnell@kellyhart.com

- **Brian M Metcalf**    bmetcalf@omm.com, brian-metcalf-9774@ecf.pacerpro.com

- **Jerry Namba**    nambaepiq@earthlink.net, G23453@notify.cincompass.com;annie_cunningham@ymail.com

- **David L Osias**    dosias@allenmatkins.com,
  bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com

- **Darren L Patrick**    dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com;sindelicato@omm.com;ejones@omm.com

- **Jeffrey N Pomerantz**    jpomerantz@pszjlaw.com

- **Benjamin P Pugh**    bpugh@ecg.law, mhamburger@ecg.law;calendar@ecg.law

- **Edward S Renwick**    erenwick@hanmor.com, iaguilar@hanmor.com

- **J. Alexandra Rhim**    arhim@hrhlaw.com

- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com

- **Mitchell E Rishe**    mitchell.rishe@doj.ca.gov

- **George E Schulman**    GSchulman@DanningGill.Com,
  danninggill@gmail.com;gschulman@ecf.inforuptcy.com

- **Zev Shechtman**    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

- **Sonia Singh**    ssingh@DanningGill.com, danninggill@gmail.com,ssingh@ecf.inforuptcy.com

- **Daniel A Solitro**    dsolitro@lockelord.com, ataylor2@lockelord.com

- **Ross Spence**    ross@snowspencelaw.com,
  janissherrill@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com

- **Christopher D Sullivan**    csullivan@diamondmccarthy.com,
  mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com;quentin.roberts@diamondmccarthy.com;erika.shannon@diamondmccarthy.com;aiemee.low@diamondmccarthy.com

- **Jennifer Taylor**    jtaylor@omm.com

- **John N Tedford**    jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

- **Salina R Thomas**    bankruptcy@co.kern.ca.us

- **Meagan S Tom**    meagan.tom@lockelord.com,
  autodocket@lockelord.com;taylor.warren@lockelord.com;autodocketdev@lockelord.com

- **Patricia B Tomasco**    pattytomasco@quinnemanuel.com,
  barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com

- **Fred Whitaker**    lshertzer@cwlawyers.com, spattas@cwlawyers.com

- **William E. Winfield**    wwinfield@calattys.com, scuevas@calattys.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Richard Lee Wynne**    richard.wynne@hoganlovells.com,
  tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com

- **Emily Young**    pacerteam@gardencitygroup.com,
  rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

- **Aaron E de Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**