**SEED MACKALL LLP**
1332 ANACAPA STREET, SUITE 200
POST OFFICE BOX 2578
SANTA BARBARA, CALIFORNIA 93120
TELEPHONE: (805) 963-0669
TELEFAX:    (805) 962-1404
Alan D. Condren, Bar No. 180624
Attorneys for Stephen Fisher, as Trustee
of the Nancy W. Ashton Revocable Trust,
Elizabeth Esser, and Roman Catholic
Archbishop of Los Angeles

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>HVI Cat Canyon, Inc.<br><br>             Debtor.<br>_____<br><br>Michael A. McConnell, Chapter 11 Trustee,<br><br>             Plaintiff,<br><br>vs.<br><br>DONNA JEAN AANERUD, an individual; RICHARD W. ACKERMAN, Trustee; JANE A. ADAMS, an individual; JOHN S. ADAMS, an individual; CHARLES C. ALBRIGHT, Trustee Under Trust of 5/20/76; OTHER DEFENDANTS LISTED ON EXHIBIT "I" TO THE COMPLAINT AND DOES 1-100,<br><br>             Defendants.<br>_____<br><br>AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS<br>_____ | Case No. 9:19-bk-11573-MB<br>(Chapter 11)<br><br>ADV. NO. 9:20-ap-01011-MB<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHAPTER 11 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT, FILED BY DEFENDANTS<br><br>(1) STEPHEN FISHER AS TRUSTEE OF THE NANCY W. ASHTON REVOCABLE TRUST;<br><br>(2) ELIZABETH ESSER; AND<br><br>(3) ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES<br><br>Date: August 19, 2020<br>Time: 10:00 a.m.<br>Crtrm: 201<br>      1415 State Street<br>      Santa Barbara, CA 93101 |

Defendants Stephen Fisher, as Trustee of the Nancy W. Ashton Revocable Trust, Elizabeth Esser, and Roman Catholic Archbishop of Los Angeles submit this Memorandum of Points and Authorities in Opposition to the Motion for Summary Judgment filed by the Chapter 11 Trustee.

1

## I. INTRODUCTION

1  
2     The Chapter 11 Trustee (the "Trustee") contends that the oil and gas leases at issue are not
3  leases at all but, rather, fee simple real estate interests. Based on this contention, the Trustee seeks
4  to have this Court find that the oil and gas leases are not subject to Section 365, meaning that the
5  Trustee could retain all the benefits of the oil and gas leases without having to fulfill any of his
6  obligations under these leases – particularly the obligation to cure all monetary defaults.
7     Granted, the law relating to the proper characterization of oil and gas leases as a certain type
8  of property right/interest is arcane and presents itself somewhat like a law school exam. It is a bit
9  difficult to get a handle on how the cases treat these interests, and so it is understandable that the
10 Trustee has incorrectly reached the conclusion he has reached.
11    But, cutting through the dense, seemingly contradictory language and arcane property law
12 issues discussed in the cases, it becomes clear that under California law, oil and gas leases do not
13 create fee simple real estate interests. Instead, they merely create incorporeal hereditaments which
14 are properly the subject of leaseholds.
15    The oil and gas leases are, in fact, leases within the meaning of Section 365. The Court
16 should deny the Trustee's Motion and enter Judgment to this effect.

## II. STATEMENT OF FACTS

17  
18    There are not any real factual disputes as it relates to these opposing Defendants. In his
19 Statement of Uncontroverted Facts the Trustee includes many facts that are not material to the
20 motion and makes arguments that are not properly included in a Statement of Uncontroverted
21 Facts. But the Trustee does accurately identify certain terms of the leases at issue, at least as they
22 relate to these opposing Defendants. The Trustee just draws incorrect legal conclusions.

23  
## III. UNDER CALIFORNIA LAW, OIL AND GAS LEASES DO NOT CREATE FEE SIMPLE OWNERSHIP RIGHTS
24  

25 **A.    California Rejects The "Oil And Gas In Place" Theory.**

26    Several states, including Texas, have adopted the "oil and gas in place" theory of
27 ownership. Under this theory, the owner of land owns the oil and gas that exists in the ground on
28 his fee simple estate. When the landowner enters into an oil and gas lease with a lessee, fee

ownership of the oil and gas is deemed to have been transferred/sold to the lessee as if it had been deeded. *See Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (1982)("The common oil and gas lease creates a determinable fee. It vests the lessee with title to oil and gas in place. . . . It logically follows, and has long been held by this court [Texas Supreme Court], that an oil and gas lease **is a sale of an interest in land**.")(Emphasis added.) Under the law of states that have adopted the "oil and gas in place" theory, the Trustee's motion would be well taken. But not under California law.

Eighty-five years ago in *Callahan v. Martin* (1935) 3 Cal.2d 110, the California Supreme Court rejected the "oil and gas in place" theory. And later that same year, in *Dabney-Johnston Oil Corp. v. Walden* (1935) 4 Cal.2d 637, the California Supreme Court elaborated a bit to make clear that what the owner of the fee simple estate owns with respect to oil and gas is not the oil and gas in the ground but, rather, the exclusive right to drill for and produce oil. When transferred, this right creates a profit *a prendre* in the transferee:

> "The owner of land has the exclusive right on his land to drill for and produce oil. This right inhering in the owner by virtue of his title to the land is a valuable right which he may transfer. The right when granted is a profit *a prendre*, a right to remove a part of the substance of the land. A profit *a prendre* is an interest in real property in the nature of an incorporeal hereditament."

*Dabney-Johnston*, 4 Cal.2d at 649.

A profit *a prendre*, is not a fee simple interest in real property. It is a **limited incorporeal** interest, as *Callahan* made clear:

> "That rights in and to land, though they are embraced within the definition of an incorporeal hereditament, constitute a limited interest or estate in land, is generally recognized."

*Callahan*, 3 Cal.2d at 120.

And since "[a]ny interest in real property may be the subject of a lease," Miller & Starr, California Real Estate, § 34:2, p. 34-14 (4th Ed. 2019), the exclusive right to drill for and produce oil and gas may be the subject of a lease. This is what happened with respect to the leases at issue in this case. The landowners leased their exclusive right to drill for oil and gas to the debtor's predecessors-in-interest.

B.  **Use Of The Word "Fee" In The Case Law Leads To Confusion – In Truth, It Only Relates To The Duration Of The Profit *A Prendre*.**

It is understandable that the Trustee came to his incorrect conclusion that his rights under the oil and gas leases at issue are fee simple interests under California law. Why? Because the cases make imprecise use of the words "fee" and "freehold."

For example, in *Callahan* and *Dabney-Johnston*, the California Supreme Court wrote as follows:

> ". . . Where this limited interest [the profit *a prendre*] is to endure in perpetuity or for life, it is a **freehold interest**, and real property or real estate, as well as an estate in real property. But where it is for years, although an interest in land or in real estate, it is not real estate, but a chattel real, in like manner as a lease for years." (Emphasis added.)

*Callahan*, 3 Cal.2d at 120;

> "The profit *a prendre*, whether it is unlimited in duration or limited to a term of years, is an estate in real property. If it is for a term of years, it is a chattel real, which is nevertheless an estate in real property, although not real property or real estate. (*Callahan v. Martin, supra*, pp. 506, 507.) Where it is unlimited in duration, it **is a freehold interest, an estate in fee**, and real property or real estate." (Emphasis added.)

*Dabney-Johnston*, 4 Cal.2d at 650.

On their faces, these citations would seem to support the Trustee's argument. But when we look a little deeper, it becomes clear that they do not. The California Supreme Court explained why 33 years after it wrote the above-emphasized confusing words.

In *Gerhard v. Stephens* (1968) 68 Cal.2d 864, the California Supreme Court explained that its use of these terms only related to the **duration** of the profit *a prendre*, as opposed to the nature and scope of the interest. It clarified that the use of the word "fee" in connection with a profit *a prendre* only means that it is perpetual. It does not mean that the limited incorporeal nature of the profit somehow morphed into an actual possessory, corporeal fee:

> "We shall point out that Abrams and Brandt conveyed to the corporations the exclusive and **perpetual** privilege of drilling for oil and gas. Under California law we classify such an interest as a profit *a prendre*, an incorporeal hereditament. . . . we reject plaintiffs' argument that since California cases describe a **perpetual** profit *a prendre* as an "estate in fee" such a perpetual interest is not subject to abandonment under the general rule that "fee interests" in real

4

> property cannot be abandoned; the cases have used the term "fee interest" in two different contexts: (a) to indicate the **perpetual** nature of the interest; (b) to indicate the possessory, or corporeal, nature of the interest. The cases in which the courts have declared that a "fee interest" cannot be abandoned use the term in the latter sense; the cases that hold that a perpetual profit is a "fee interest" use the term in the former sense."

*Gerhard*, 68 Cal.2d at 877;

> "The holdings in *Callahan* and *Dabney-Johnston* clearly negate the possibility that this court used the description "fee" as an indication of anything but the *duration* of the interests. Thus, *Dabney-Johnston* speaks of a profit held in fee in contradistinction to one held for a term of years. (4 Cal.2d 637, 649.)"

*Gerhard*, 68 Cal.2d at 885.

So *Gerhard* makes clear (1) that when California courts refer to a lessee's right to drill for oil and gas as a "fee," this only means that the right is perpetual, and (2) that if the right is not perpetual then, by definition (contradistinction), it is for a term of years.

C.    **The Habendum Clauses Do Not Grant Perpetual Rights.**

The Trustee argues that the habendum clauses of the leases at issue, which contain the typical language that the leases continue for so long as oil and gas may be produced, makes these rights fee simple real estate interests. *Gerhard* makes clear that they do not.

They do not even make these rights perpetual, as explained in *Lough v. Coal Oil* (1990) 217 Cal.App.3d 1518:

> "**There is a significant difference between a permanent right to extract oil and gas and the interest of a lessee under an oil and gas lease. An oil and gas lease is a privilege to take oil and gas for a** *limited duration* **and includes other duties, such as the duty to commence and complete the well with diligence and within a reasonable time. (2 Summers, Oil and Gas (permanent ed. 1959) § 392, pp. 511-512.)"** (Emphasis added.)

*Lough*, 217 Cal.App.3d at 1526;

> "Coal Oil seeks to have its lessee's interest in the oil and gas lease converted by the tax deed into some greater estate, apparently some sort of perpetual *profit a prendre*. However, in this case, **there was never a conveyance of any perpetual right to drill for the oil and gas underlying the property. Instead, there was only a** *lease* **of the right to drill for oil and gas for a period of 20 years, and so long thereafter as production from the lease was obtained.**" (Emphasis added.)

*Lough*, 217 Cal.App.3d at 1526.

5

1    Numerous other authorities support the conclusion that in California oil and gas leases are,

2  in fact, leases. For example, in *La Laguna Ranch Co. v. Dodge* (1941) 18 Cal.2d 132, the

3  California Supreme Court repeatedly referred to the lessee's rights in a leasehold estate:

> "Similarly, while the operating lessee may assign an interest in his *profit a prendre* which is intended to make the assignee a tenant in common of his entire **leasehold estate** . . ." (Emphasis added.)

6  *La Laguna Ranch*, 18 Cal.2d at 138;

> "It follows that the surrender of the leasehold interest by the lessees constituted a termination of the *profit a prendre* and the **leasehold**." (Emphasis added.)

9  *La Laguna Ranch*, 18 Cal.2d at 355-356.

### IV. AUTHORITY FROM OUTSIDE THE NINTH CIRCUIT SUPPORTS THE CONCLUSION THAT SECTION 365 APPLIES TO THE OIL AND GAS LEASES

12    As the Trustee points out, there appears to be no Ninth Circuit case that has squarely

13  addressed the applicability of Section 365 to oil and gas leases under California law. After

14  searching for authority from other circuits to support its argument, the Trustee cites *In re Topco,*

15  *Inc.*, 894 F.2d 727, 740 n. 17 (5th Cir. 1990) and then writes as follows:

> "Again, if an oil and gas lease, despite its name, is treated as a transfer of a right in real estate under state law then it is not an executory contract or unexpired lease under section 365. There is a minority of decisions which have found that section 365 does apply to oil and gas leases. However, **those decisions, are based on laws of states that treat oil and gas leases as leasehold or personal property rather than freehold interests**." (Emphasis added.)

20  (Trustee's Memorandum of Points and Authorities, 58:22-27.)

21    But California **is** a state that treats oil and gas leases as personalty. As explained above,

22  California law deems the rights of a lessee under an oil and gas lease to be a profit *a prendre*, an

23  incorporeal hereditament. As *Gerhard* made clear, these are not true "fees" or "freeholds" in the

24  sense of granting/creating possessory, corporeal rights. Instead, the use of the words "fee" and

25  "freehold" only relates to the perpetual nature of the right, in the instances in which it is granted in

26  perpetuity.

27    Instead, as the *Callahan* court stated, an incorporeal hereditament such as a profit *a prendre*

28  that is not perpetual is a chattel real which, although it is an interest in real property, is personalty:

6

> "Where this limited interest [an incorporeal hereditament] is to endure in perpetuity or for life, it is a freehold interest, and real property or real estate, as well as an estate in real property. **But where it is for years, although an interest in land or in real estate, it is not real estate, but a chattel real, in like manner as a lease for years.**"

*Callahan*, 3 Cal.2d at 120;

> "The rights or estate which the owner in fee or for life has in land are also described as real property, but those rights which the owner of a leasehold interest has in and to the land or real property, as the object of rights, are not real property, or real estate, **but a chattel real, which is personalty**. [Citations omitted.] Although not real property or real estate, a leasehold is nevertheless an estate in land, and estate in real property."

*Callahan*, 3 Cal.2d at 119.

The Trustee's argument that California, like Texas and some other states, treats an oil and gas lessee's rights under an oil and gas lease as a fee simple corporeal property right, is simply wrong.

In his search for meaningful out-of-Circuit cases dealing with state law similar to California's, the Trustee apparently failed to discover *Frontier Energy, LLC v. Aurora Energy, Ltd. (In re Aurora Oil & Gas Corp.)* 439 B.R. 674 (U.S. Bank. Court for the W. Dist. of Mich. 2010). In this case, the bankruptcy court held oil and gas leases under Michigan law, which is the same as California law, are leases subject to Section 365.

A.    **Frontier Energy – Michigan Law Mirrors California Law**.

The *Frontier Energy* court explained Michigan law in a way that makes it clear that it is on all fours with California law regarding the nature of the rights granted to an oil and gas lessee. That is, like California law, Michigan law treats the right to drill for and produce oil and gas as (1) a profit *a prendre*, (2) which is an interest in real estate, (3) but not a freehold / fee estate:

> ". . . Michigan regards the rights conveyed under oil and gas leases **as interests in real estate**. *Jaenicke v. Davidson*, 290 Mich. 298, 287 N.W. 472, 474 (Mich. 1939). Although the ultimate object of the transaction between Aurora and Frontier is the extraction of oil and gas, **an oil and gas lease does not grant an interest in the oil and gas *qua* personalty, only the right to extract it from the land.** Indeed, only after the oil and gas is severed from the realty does it become personal property under Michigan law. *ANR Pipeline Co. v. 60 Acres of Land*, 418 F.Supp.2d 933, 940 (W.D. Mich. 2006). The

7

> Michigan Court of Appeals explained that the interest of an oil and gas lessee is regarded as a *profit a prendre*, **an interest in the real estate, but not an interest in the oil and gas itself**, at least not until the oil and gas are extracted." (Emphases added.)

*FrontierEnergy*, 439 B.R. at 677-678;

> "Michigan treats a lessee's interest as a leasehold or profit *a prendre*, **but not a freehold estate. In this significant respect, Michigan departs from the law of Texas** and several other oil and gas states that apparently regard a lessee's interest under an oil and gas lease as a freehold or fee." (Emphases added.)

*Frontier Energy*, 439 B.R. at 678-679.

### B. Frontier Energy – Oil and Gas Leases Are "Leases" For Purposes Of Section 365

The *Frontier Energy* court then went on to hold that an oil and gas lease, under Michigan law, is a "lease" for purposes of Section 365:

> "Because, as the parties agree, the term "lease" as used in Section 365 is not fully defined, the court should consider its ordinary meaning. *Lanning*, 130 S.Ct. at 2471; *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982)."
>
> "Judge Wedoff observed that a lease is commonly understood to mean:
> [1] an agreement by the owner of property (the lessor) to allow exclusive possession of that property by another person (the lessee), [2] for a defined period of time, [3] in exchange for payment ("rent") by the lessee, [4] with the property reverting to the lessor at the end of the lessee's period of possession.
> *Resource Technology Corp.*, 254 254 B.R. at 225-26 (citing Black's Law Dictionary 889 (6th ed. 1990)). The Agreements between Frontier and Aurora, though obviously touching the arcane area of oil and gas law, fall within this common understanding.
>
> "First, the Agreements recite, and no one appears to disagree, that prior to the execution of the Agreements Frontier was the owner of the subsurface mineral estate, and both Agreements plainly grant Aurora exclusive possession and control.
>
> "Second, the Agreements grant Aurora exclusive use for a defined period of time – the initial term and thereafter so long as oil and gas are produced in "paying quantities." The fact that the duration may be difficult to ascertain does not disqualify Aurora's interest as a leasehold because "oil and gas cannot be produced forever ..." *Redman*, 1 N.W.2d at 557. **The term of each Agreement is indefinite but not perpetual.**

///

1      "Third, Frontier conveyed an interest to Aurora in exchange for consideration in the form or rents and royalty payments from Aurora. *Mobil Oil Corp. v. State, Dep't of Treasury*, 121 Mich.App. 293, 328 N.W.2d 367, 371 (Mich. App.1982) "Royalty payments under an oil and gas lease are not payments for the purchase of the oil and gas produced . . . [but] payments for the privilege of exploiting the land which is the subject of the lease."). Royalties for oil and gas – representing the fruits of the subsurface estate – are akin to "rents and profits" in the parlance of the common law. They are equivalent to rent measured not by the acre (as during the primary term), but by the amount of oul or gas produced.

"Fourth, at the termination of the Agreements, the interests conveyed to Aurora revert to Frontier. Frontier will be free to re-lease its subsurface estate to another entity capable of extracting additional oil and gas, or perhaps other subterranean products like gravel or sand or other minerals. This is a meaningful reversionary interest."

                                *   *   *

"From its review of these and other Michigan authorities, the court concludes that oil and gas leases in Michigan, such as each of the Agreements under consideration, are "rental agreement[s] to use real property" and therefore "leases" within the meaning of Section 365." (Emphasis added.)

*Frontier Energy*, 439 B.R. at 679-680.

### V. THE OIL AND GAS LEASES AT ISSUE IN THIS CASE HAVE ALL THE HALLMARKS OF A LEASE

**A.** **All Four Elements Are Met**.

Just as in *Frontier Energy*, the oil and gas leases at issue in the present case satisfy all elements of a lease, as normally understood.

First, there is no dispute that the lessors under the leases did, in fact, own the rights they leased to the lessees and that the leases granted the lessees the exclusive possession and control of these rights.

Second, the leases grant the lessees exclusive use for a defined period of time – the initial term and thereafter so long as oil and gas are produced. The fact that the duration may be difficult to ascertain does not disqualify the interest as a leasehold, because this habendum clause does not constitute a perpetual grant. *Lough*, 217 Cal.App.3d at 1526.

///

///

1   Third, the lessors conveyed the interest to the lessees in exchange for consideration in the form of rents and royalty payments. "The royalty return which the lessee renders to his lessor is a rent." *Dabney-Johnston*, 4 Cal.2d at 651; *Callahan*, 3 Cal.2d at 123.

Fourth, at the termination of the leases the interests conveyed to the lessees will revert to the lessors. "In addition to the right to receive rent or royalty, the lessor has a reversionary interest in the right to drill for and produce oil, dependent upon the termination of the existing leasehold, which right is the subject of grant." *Dabney-Johnston*, 4 Cal.2d at 651.

And just as in *Frontier Energy*, treating the leases at issue in this case as as leases within the meaning of Section 365 makes sense in light of Section 365's purpose. It would be patently unfair to allow the Trustee to enjoy all the benefits of the leases free of the corresponding obligations.

**B.   The Trustee Acknowledges These Four Elements Are Met.**

At pages 15 and 16 of his Memorandum of Points and Authorities in support of his motion, the Trustee lists several provisions from the leases as issue. Ironically, among these elements are all four of the elements of a lease discussed above.

15:13-16   "2.   Owner confers on the lessee for the term of the lease an exclusive right of profit to drill for and produce oil."

* This satisfies the first and second elements of a lease – (1) owner grants a right to drill for and produce oil for the, and (2) the right is exclusive and for the defined term of the lease.

15:16-19:   "3.   Lessee returns to the lessor for the privilege granted a rent or royalty measured by a fraction of the oil produced."

* This satisfies the third element of a lease.

16:3-5:   "7.   The lessor has a reversionary interest in the right to drill for and produce oil, dependent upon the termination of the existing leasehold, which right is subject of grant."

* This satisfies the fourth and final element of a lease.

So there is no dispute that all of the requisite elements of a lease are met. The Trustee just contends that these elements are evidence of something other than a lease. The Trustee is mistaken.

10

## VI. CALIFORNIA CIVIL CODE § 1952.4 DOES NOT LEAD TO A DIFFERENT CONCLUSION

The Trustee also cites California Civil Code § 1952.4 as what he contends is authority for his conclusion the oil and gas leases are not, in fact, leases. Although that code section does say that an oil and gas lease is not a lease of real property <u>within the meaning of Civil Code sections 1951 to 1952.2</u>, this is not surprising. Those sections only relate to termination, surrender, and abandonment.

This does not mean that an oil and gas lease is not a lease under California law, it just means that the law regarding termination, surrender, and abandonment that apply to most leases do not apply to oil and gas leases. And this makes sense. It is generally understood that oil and gas leases are different in this regard, in that they provide the lessee with the right to terminate under certain circumstances without any input or need for acceptance of the termination from the lessor.

Nor does the Law Revision Commission comment to Civil Code § 1952.4 support the conclusion that an oil and gas lease is not a lease under California law. This comment just says that oil and gas leases are different than the general lease. Yes, they are. They are leases not of a right to occupy and possess real property but, rather, leases of the right to prospect for natural resources. But this does not mean they are not leases. It just means they are leases of a different kind.

## VII. CONCLUSION

Based on the foregoing, these opposing Defendants respectfully request that the Court:

(1)     Deny the Trustee's motion;

(2)     Enter Judgment declaring that the leases at issue, at least as they relate to these opposing Defendants, are leases subject to Section 365; and

(3)     Grant these opposing Defendants such other relief as the Court deems proper.

DATED:   July 28, 2020.                    SEED MACKALL LLP

                                           By: _____/ s /_____
                                           Alan D. Condren
                                           Attorneys for Stephen Fisher, as Trustee of the
                                           Nancy W. Ashton Revocable Trust, Elizabeth
                                           Esser, and Roman Catholic Archbishop of Los
                                           Angeles

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1332 Anacapa Street, Suite 200
Santa Barbara, CA 93101

A true and correct copy of the foregoing document entitled (*specify*): Memorandum of Points and Authorities in Opposition to Chapter 11 Trustee's Motion for Summary Judgment, Filed by Defendants (1) Stephen Fisher as Trustee of the Nancy W. Ashton Revocable Trustl (2) Elizabeth Esser; and (3) Roman Catholic Archbishop of Los Angeles

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/28/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

William C. Beall will@beallandburkhardt.com, carissa@beallandburkhardt.com, Bradley D. Blakely blakeley@blakeleylawgroup.com, bradleydblakley@gmail.com, Alicia Clough aclough@loeb.com, mnielson@loeb.com, ladocket@loeb.com, Marc S. Cohen mscohen@loeb.com, klyles@loeb.com, Don Fisher@ptwww.com, tblack@ptwww.com, Brian D. Fittipaldi brian.fittipaldi@usdoj.gov,

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/28/2020 | Britt Erickson | /s/ Britt Erickson |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          **F 9013-3.1.PROOF.SERVICE**

Additional Service Information
Proof of Service

Gisele M. Goetz gmoetz@hbsb.com, ggoetz@collegesoflaw.edu; cecilia@hbsh.com

Karen L. Grant kgrant@silcom.com

Brian L. Holman b.holman@mpglaw.com

Tracy K. Hunckler thunkler@daycartermurphy.com, cgori@daycartermurphy.com

Eric P. Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com

Michael J. Langberg mlangberg@bhfs.com, dcrudup@bhfs.com

Vincent T. Martinez llimone@twitchellandrice.com, smccomish@twitchellandrice.com

Michael Arthur McConnell (TR) Michael.mcconnell@kellyhart.com

Brian M. Metcalf bmetcalf@omm.com, brian-metcalf-9774@ecf.pacerpro.com

Jerry Namba nambaepiq@earthlink.net, atty_namba@bluestylus.com

Benjamin P. Pugh bpuch@ecg.law, mhamberger@ceg.law, calendar@ecg.law

Edward S. Renwick erenwick@hanmor.com, iaguilar@hanmor.com

J. Alexandra Rhim arhim@hrhlaw.com

Todd C. Ringstad becky@ringstadlaw.com, arlene@ringstadlaw.com

Zev Shectman zshechtman@DanningGill.com, danninggill@gmail.com, zshechtman@ecf.inforuptcy.com

United States Trustee (ND) ustpregion16.nd.ecf@usdoj.gov

William E. Winfield wwinfield@calattys.com, scuevas@calattys.com