1  SNOW SPENCE GREEN LLP
   Ross Spence (TX SBN 18918400)
2  ross@snowspencegreen.com
   Carolyn Carollo (TX SBN 24083437)
3  carolyncarollo@snowspencegreen.com
4  2929 Allen Parkway, Suite 2800
   Houston, Texas 77019
5  Telephone: (713) 335-4800
   Facsimile:  (713) 335-4848
6
7  *Attorneys for the County of Santa Barbara,*
   *California; Harry E. Hagen, as Treasurer-Tax*
8  *Collector of the County of Santa Barbara,*
   *California; and Santa Barbara County Air*
9  *Pollution Control District*

10              UNITED STATES BANKRUPTCY COURT
11              CENTRAL DISTRICT OF CALIFORNIA
                 SANTA BARBARA DIVISION
12

13 | In re: | Case No.:  9:19-bk-11573-MB |
14 | HVI Cat Canyon, Inc., | Chapter 11 |
15 |  |  |
16 | Debtor. | **COUNTY OF SANTA BARBARA AND HARRY E. HAGEN, TREASURER-TAX COLLECTOR'S RESPONSE TO: TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDERS: (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE ESTATE'S ASSETS, (B) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, INCLUDING NOTICE OF PROPOSED CURE AMOUNTS, (C) AUTHORIZING AND APPROVING THE SELECTION OF A STALKING HORSE BIDDER, (D) APPROVING EXPENSE REIMBURSEMENT, (E) SCHEDULING (i) AN AUCTION AND (ii) A SALE HEARING, (F) APPROVING THE FORM AND MANNER OF ALL PROCEDURES, PROTECTIONS, SCHEDULES, AND AGREEMENTS, AND (G) GRANTING RELATED RELIEF; AND (II)(A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE ESTATE'S** |

17
18
19
20
21
22
23
24
25
26
27
28

**ASSETS, (B) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (C) GRANTING
RELATED RELIEF; MEMORANDUM OF
POINTS AND AUTHORITIES,
DECLARATIONS OF MICHAEL A.
MCCONNELL, LINDSAY SHERRER,
KERMITH BOFFIL AND SAM DELRAHIM
AND REQUEST FOR JUDICIAL NOTICE IN
SUPPORT THEREOF**

Procedures Hearing
Date: September 4, 2020
Time: 3:00 p.m.
Place: Courtroom 201
        1415 State Street
        Santa Barbara, California

Sale Hearing
Date: October 5, 2020
Time: 10:00 a.m.
Place: Courtroom 201
        1415 State Street
        Santa Barbara, California

Judge: Hon. Martin R. Barash

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY
JUDGE, AND ALL INTERESTED PARTIES:**

The County of Santa Barbara and Harry E. Hagen, Treasurer-Tax Collector of the County
of Santa Barbara's[1] ("Hagen-Tax Collector") (collectively "S.B. Parties"), respond to the Trustee's
Notice of Motion and Motion for Orders: (I)(A) Approving Bidding Procedures for the Sale of
Substantially All of the Estate's Assets, (B) Approving Procedures for Assumption and Assignment
of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts,
(C) Authorizing and Approving the Selection of a Stalking Horse Bidder, (D) Approving Expense

---

[1] Hagen, Treasurer-Tax Collector does not submit to the jurisdiction of this Court for
determination of the Debtor's tax liabilities.

Reimbursement, (E) Scheduling (i) an Auction and (ii) a Sale Hearing, (F) Approving the Form and Manner of All Procedures, Protections, Schedules, and Agreements, and (G) Granting Related Relief; and (II)(A) Approving Sale of Substantially All of the Estate's Assets, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief; Memorandum of Points and Authorities, Declarations of Michael A. McConnell, Lindsay Sherrer, Kermith Boffill and Sam Delrahim and Request for Judicial Notice in Support Thereof ("Motion")(ECF No. 1243).

The S.B. Parties are the debtor's senior secured creditor with respect to all but $1,191,862[2] of UBS post-petition finance debt, which the Court ordered to be senior to the S.B. Parties lien. The Trustee has repeatedly argued that the S.B. Parties' tax lien is oversecured.[3] The Trustee's Motion seeks Court authority to sell the debtor's assets for an amount in excess of secured Santa Barbara County real property taxes owed to the S.B. Parties, but proposes that (1) none of the taxes be paid, and (2) the cash consideration be used to pay lower priority claims. The S.B. Parties object to the Motion because it seeks approval (a) to sell free and clear of the S.B. Parties' lien without paying off the indebtedness, (b) to transfer free and clear $1,000,000 of the cash proceeds to a litigation fund for unsecured creditors, as well as an appeal fund for defending an appeal of the improper sale, (c) to eliminate credit bidding rights to the S.B. Parties, (d) to violate claims priority in bankruptcy, (e) to permit gerrymandering of the Purchase Price, and (f) to exclude the S.B. Parties from the Consultation Parties.

---

[2] Motion at 18 n.6.

[3] *See* e.g. ECF No. 1159, Trustee's Notice of Emergency 7th Motion to Borrow at 35-36 ("Due to the severe shortage of cash, the Trustee did not pay the real property taxes due to Santa Barbara County by April 10, 2020. Nevertheless, Santa Barbara County is adequately protected by its huge equity cushion.").

MEMORANDUM OF POINTS AND AUTHORITIES

**A. The Trustee cannot sell free and clear of the S.B. Parties' tax lien.**

The Trustee's sole argument to try to sell free and clear of the S.B. Parties' tax lien is that it allegedly is the subject of a bona fide dispute and therefore § 363(f)(4) is satisfied. Motion at 57. The argument asserted for this bona fide dispute is the syllogism that:

    (i)    a portion of the tax lien amount consists of penalties,

    (ii)    "these penalty charges may be avoidable pursuant to § 724(a) and subject to subordination under § 726(a)(4),

    (iii)    "in conducting a best interests analysis under § 1129(a)(7) the Court must take into account all of the provisions of the Bankruptcy Code that would apply in a chapter 7 case…in considering whether a chapter 11 plan meets the 'best interests' of creditors test under § 1129(a)(7) of the Bankruptcy Code and may be confirmed", and

    (iv)    "[t]herefore, it is appropriate for the Court to determine that a dispute exists with respect to payment of penalties and, as such, pursuant to § 364(f)(4)".

Motion at 58-59.  The Trustee's argument misses the mark. First, the Motion proposes § 363 sale, not a plan confirmation, so the best interest of creditors test under § 1129(a)(7) is inapplicable. The Trustee cites no cases in support of that leap.  Second, the argument is illogical in that the Trustee is asking the Court to apply chapter 7 avoidance and subordination standards [namely § 724(a) and § 726(a)(4)] that are inapplicable in a chapter 11 case.

Whether amounts denominated as penalties are allowed or not is a question of law, not a matter of bona fide dispute. The Trustee does not cite authority for the proposition that because a secured ad valorem tax lien contains amounts denominated as penalties it is therefore subject to a bona fide dispute under § 363(f)(4). The County has briefed for the Trustee that such is not the case.

The Trustee cites *County of Orange* for the proposition that "redemption penalties are just

that, penalties, and not interest." Motion at 58 n.25; *In re County of Orange*, 262 F.3d 1014 (9th Cir. 2001). However, *County of Orange* is a case regarding whether the FDIC can be liable under 12 U.S.C. § 1825(b) for tax redemption penalty liens that attached before or after the receivership of a failed bank. The Ninth Circuit specifically distinguished 12 U.S.C. § 1825(b) from Bankruptcy Code Section 724(a) and 726(a)(4). *Id*. at 1020. The court held that the FDIC was liable to the County of Orange for tax penalty liens that attached prior to the FDIC's appointment as receiver but not those that attached after. *Id*. at 1020-21. The *County of Orange* court acknowledged that the issue of payment of interest on a bankruptcy claim under Cal. Rev. & Tax Code § 4103(b) was not before them.

The *County of Orange* case was also decided pre-BAPCPA, which added § 511 to the Bankruptcy Code. Section 511 provides that interest on tax claims shall be determined under applicable non-bankruptcy law. "The plain meaning of § 511 is unambiguous: the bankruptcy court must refer to state law and may no longer use its equitable powers to alter the interest rate on a tax claim from the rate set forth under the applicable state law." *In re Jones*, 368 B.R. 602, 605 (Bankr. S.D. Tex. 2007).

After *County of Orange*, the California legislature amended Cal. Rev. & Tax Code § 2187 to legislatively overrule *County of Orange*. The legislative intent was that redemption penalties be and are an interest rate. *In re Fowler*, 493 B.R. 148, 157 (Bankr. E.D. Cal. 2012).

As an oversecured creditor, the S.B. Parties are also entitled to "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." § 506(b). The interest under Cal. Rev. & Tax Code §§ 2187[4] and 4103(b),[5]

---

[4] Section 2187 provides "Every tax, penalty, or interest, including redemption penalty or interest, on real property is a lien against the property assessed."

[5] Section 4103(b) provides "(b) For purposes of an administrative hearing or any claim in a

whether denominated penalties or not, are clearly charges provided for under state law and recoverable by the oversecured tax collector under § 506(b). *In re Collier*, 2009 WL 5449150, *1-2 (Bankr. N.D. Cal. 2009).

The Ninth Circuit has long held that "[t]he first priority accorded to administrative expense taxes also extends to interest and penalties that accrue on that debt." *In re Fowler*, 394 F.3d 1208, 1212 (9th Cir. 2005) (citing *Towers v. United States* (*In re Pacific-Atlantic Trading Co.*), 64 F.3d 1292, 1298 (9th Cir. 1995) and *United States v. Ledlin* (*In re Mark Anthony Constr., Inc.*), 886 F.2d 1101, 1104-08 (9th Cir. 1989)).  In addition to the authorities cited in this Response, the S.B. Parties direct the Court's attention to the decision of the Bankruptcy Court for the Central District of California in the Castro case, attached as **Exhibit A,** and the decision of the Bankruptcy Court for the Central District of California in the Palmdale Hills Property, LLC case, attached as **Exhibit B**. These well-reasoned decisions consider the interplay between the BAPCPA amendments to 506(b) and addition of § 511 with California state law on tax "penalties" (namely Cal. Rev. & Tax Code §§ 2617, 2618 and 4103) and correctly determine that Counties can recover these "penalties" as part of their secured tax claims.

The Trustee asserts that courts frequently approve bidding procedures similar to the ones proposed in this case, citing *Doehring v. Crown Corp. (In re Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982), but no tax liens were at issue in that case.

In addition to transferring the real property without paying the tax lien, the Motion seeks to convert a large portion ($11.75 million) of the Purchase Price into seller financing secured by future income from the real property and proposes to give UBS, but not the S.B. Parties, a lien on this income stream. Motion at 62.  The sale simply cannot be concluded without paying the S.B. Parties

bankruptcy proceeding pertaining to the property being redeemed, the assessment of penalties determined pursuant to subdivision (a) with respect to the redemption of that property constitutes the assessment of interest."

in full or obtaining their agreement to some other treatment. *See* § 363(f)(3)(property cannot be sold unless the price "is greater than the aggregate value of all liens on such property").

If the Trustee is asserting a bona fide dispute based on an intent that he or the stalking horse may file a future tax protest, that assertion is without merit. The Motion asserts no basis for such an argument and the S.B. Parties have previously briefed this future tax protest issue for the Trustee.

As of the petition date (July 25, 2019), there were no tax protests pending with regard to any of the debtor's real property in Santa Barbara County. In fact, there are no tax protests pending for this debtor currently. As of the petition date, the only taxes that could have been protested were the 2019 taxes. Any protest of the 2019 taxes had to have been made by December 2, 2019 (normally November 30 but extended due to the Thanksgiving Holiday). Cal. Rev. & Tax. Code §1603.  This debtor is very familiar with these deadlines. For example, on February 22, 2018, the Assessment Appeals Board of Santa Barbara County, dismissed this debtor's 2016 tax protests as untimely. *See* copy of Order attached as **Exhibit C**.

The Trustee seems to believe that § 108 gives him two years to protest taxes, but that is incorrect, because § 505(a)(2)(C) is the more specific statute and governs. Section "505(a)(2)(C) bars a bankruptcy court from redetermining tax liability for an ad valorem tax if the applicable period for contesting or redetermining the amount of the tax under nonbankruptcy law has expired before the motion to determine tax liability is brought before the bankruptcy court when the Debtor has not taken action to contest the tax assessment." *In re ATA Airlines, Inc.*, 2010 WL 3955574, *2 (Bankr. S.D. Ind. 2010)(applying § 505 to California taxes under Cal. Rev. & Tax Code §§ 1150-56); *see also In re the Village at Oakwell Farms, Ltd.*, 428 B.R. 372, 374-80 (Bankr. W.D. Tex. 2010)(time for challenging taxes expired post-petition before debtor brought § 505 motion, and § 108 does not trump the more specific language of § 505(a)(2)(C)); *Dubov v. Read (In re Read)*, 692 F.3d 1185, 1188-89 (11th Cir. 2012) ("when Congress amended § 505(a) by adding § 505(a)(2)(C),

it intended to create an exception to the general time limits for contesting a tax assessment set forth in § 108(a)."); *In re CM Reed Almeda 1-3062, LLC*, 2016 WL 3563148, *4-5 (Bankr. D. Nev. 2016)(same). The Trustee had until November 30, 2019 (extended to December 2, 2019 due to holiday) to contest the 2019 taxes. He did not contest them, and it is too late to do so now.

If the Trustee could overcome these hurdles, he would still face the problem that he must pay the taxes first before litigating them. *California State University, Fresno Assn., Inc. v. County of Fresno*, (2017) 9 Cal.App.5th 250, 262-263. This "pay first, litigate later" rule comes out of Section 32 of Article XIII of the California Constitution. *Id*. The Trustee has stated there is no money to pay taxes. He wants to litigate first but pay later. This is not permitted under California law.

If the Trustee is asserting there is a bona fide dispute over the amount of the S.B. Parties' tax claim based on the argument that a portion of the taxes relate to property not owned by the debtor, that assertion is incorrect. The S.B. Parties have spent considerable time educating the Trustee and now the landman he has hired, about the difference between property identification numbers and Assessor parcel numbers (APNs) as well as the process for allocating assessed values relating to a taxable unit across multiple APNs. The S.B. Parties believe they have satisfied the Trustee's queries with the exception of a group of properties that is irrelevant because it is (a) unsecured taxes and (b) immaterial in dollar amount.

The Trustee does not have a bona fide dispute as to any portion of the S.B. Taxes. If he did, the amount of those taxes would have to be preserved pending the outcome of the dispute. *In re Scimeca Foundations, Inc*., 497 B.R. 753, 774 (Bankr. E.D. Pa. 2013). That is not what the Trustee proposes. He proposes to distribute all of the cash proceeds to uses other than paying the S.B. Parties. Only "certain liens" attach to the sale proceeds, but not the S.B. Parties' lien. Motion at 30. This cannot be permitted.

**B. The Trustee also cannot transfer sale proceeds without paying 2020 taxes.**

The debtor accrued tax liability on January 1, 2020, and the S.B. Parties' obtained a lien for 2020 taxes on that date. These taxes are an "actual, necessary cost of preserving the estate" under § 503(b). *In re Soltan*, 234 B.R. 260, 269 (Bankr. E.D. N.Y. 1999). Post-petition secured tax claims can also be administrative claims. *In re Brown and Cole Stores, LLC*, 375 B.R. 873, 878 (9th Cir. B.A.P. 2007); *In re Soltan, supra*.  The secured administrative taxes should be paid or escrowed. *In re Downtown Inv. Club III*, 89 B.R. 59, 61 (9th Cir. B.A.P. 1988) (post-petition real property taxes paid first out of proceeds of sale of debtor property).

**C.  The Trustee cannot take away the S.B. Parties' credit bid rights.**

The Motion would give credit bidding rights and deemed Qualified bidder status to UBS but not to the S.B. Parties, despite their senior lien position. Motion at 37.  This cannot be permitted. The Trustee has shown no cause for such relief as required under § 363(k). If UBS were to credit bid, the Court's bid procedures should make clear that UBS will take subject to the S.B. Parties' taxes. *See In re Daufuskie Island Properties, LLC*, 441 B.R. 60, 66 (Bankr. D. S.C. 2010) (bid procedures provided that credit bidder takes subject to ad valorem taxes).

**D.  The Trustee cannot pay lower priority creditors before paying the S.B. taxes.**

From the Purchase Price, the Trustee proposes to use the cash to pay $500,000 for a litigation fund, $500,000 for an escrow to fund any appeal from a sale order, and the remainder of the net cash proceeds to pay UBS on its post-petition financing lien. Motion at 31, 62.  With the exception of the $1,191,862 for which UBS has, by court order, a lien superior to the S.B. Parties' lien, no cash proceeds can go to UBS until the S.B. Parties' lien and 2020 taxes are paid in full.

The Trustee is also proposing that the prepetition and post-petition liens of UBS will attach to the sale proceeds but the prepetition and post-petition liens of the S.B. Parties will not, even though the Trustee admits that UBS's liens "remain subject to a portion of the Santa Barbara property tax liens". Motion at 57.  This elevates UBS's second lien position above the S.B. Parties'

first lien position.

**E.    The bid procedures would permit gerrymandering of the Purchase Price**

Though not set forth in the Motion, the APA reveals that the Buyer and the Trustee plan to make a tax protest in the future and split the proceeds 50/50. ECF 1243 at page 175 of 253. The Motion seeks authority for the Buyer and the Trustee to allocate the Purchase Price how they see fit between real and personal property and then also as to each lease comprising the real property. While such allocations might be necessary for federal income tax or other purposes, they should not be permitted to establish January 1, 2020 tax values for the parcels.   The Trustee is seeking permission to file the Allocated Value Letter referenced in the APA under seal and is not sharing it with the S.B. Parties.

The proposed procedure can permit allocation, with a motive to do so, of higher values to properties with low tax liens on them and lower values to properties with higher taxes on them. It should not be permitted. Alternatively, any order should expressly state that any value allocations made will have no bearing on any tax protests should any be filed.

**F.    The S.B. Parties should be "Consultation Parties"**

The S.B. Parties are being asked to give up their right to be paid out of the proceeds of their collateral on the hope that the buyer will pay them in the future. The buyer's assumption of the debtor's real property tax liabilities is illusory because (1) the Buyer plans to challenge the taxes despite legal impediments to doing so, and (2) the Buyer of HVI's assets has only $15,000,000 of financing per the Buyer's declaration:

3. The Buyer, an affiliate of the Five JAB family of companies, has capital commitments in the minimum amount of $15,000,000 in order to fund this transaction and provide for continuing operations. The Buyer, the other affiliates of the Five JAB family of companies, and all of their assets are operated by Team Operating, L.L.C., a Delaware limited liability company and fully integrated oil and gas producer, well service provider, and plug and abandonment contractor. Team Operating, L.L.C. focuses on achieving low cost, efficient operations by utilizing its own oilfield services division to achieve operating efficiencies

and competitive advantages. Currently, there are approximately 45 full-time employees that will support the Buyer's operations.

Motion at 78 (Declaration of Sam Delrahim). When the cash portion of the Purchase Price is subtracted from the $15,000,000, that leaves only $6.5 million of capital. Section 3.01(b) of the APA reveals that "[t]he sum of the Assumed Real Property Taxes is anticipated to be $5,946,586.58 as of September 30, 2020." This leaves only $553,413.42 of available capital which would fund less than two months of the current losses. *See* Motion at 26 ("The Trustee's July operations, before expenses of the bankruptcy case including professional fees, resulted in the estate losing approximately $430,000 for the month. August is projected to have a similar shortfall."). The Trustee also asserts "the Trustee does not have the ability to continue operating the Debtor without ongoing postpetition borrowing." Motion at 47. Apparently, the Buyer somehow "estimates that its net monthly operating income (without deduction for depreciation and depletion) over the next twenty-four months will average approximately $250,000 per month." Motion at 79 (Declaration of Sam Delrahim). The S.B. Parties cannot share this rosy outlook, especially without any access to any information. The Consultation Parties get full access to due diligence materials, bidder financial information, the bidding process, and other matters, but the S.B. Parties are intentionally excluded.

### G. Conclusion.

The Court should not approve bid procedures to permit a sale without requiring application of the Purchase Price first to the outstanding senior secured property tax debt owed to the S.B. Parties. All of the ad valorem taxes, interest, and "penalties" should be paid in full prior to or upon closing, and escrow must be made for the costs and attorneys' fees of the S.B. Parties, which must be paid pursuant to § 506(b). The S.B. Parties request such other relief to which they are entitled.

1

Dated:  September 3, 2020                              SNOW SPENCE GREEN LLP

2
                                                      By:    */s/ Ross Spence*
3                                                            Ross Spence

4

5                                                     *Attorneys for the County of Santa Barbara,*
                                                      *California and Harry E. Hagen, as Treasurer-Tax*
6                                                     *Collector of the County of Santa Barbara, California*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28