ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Michael A. McConnell,
Chapter 11 Trustee

**FILED & ENTERED**

**OCT 13 2020**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY **handy**    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re | Case No. 9:19-bk-11573-MB |
| HVI CAT CANYON, INC., | Chapter 11 |
| Debtor. | **ORDER AUTHORIZING (A) THE TRUSTEE'S SALE TO TEAM MARIA JOAQUIN, L.L.C. AND MARIA JOAQUIN BASIN, L.L.C. OF SUBSTANTIALLY ALL OF THE ESTATE'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, RELATED CURE AMOUNTS, AND (C) GRANTING RELATED RELIEF** |
| | DATE:    October 5, 2020
TIME:    10:00 a.m.
PLACE:    Courtroom 201
                1415 State Street
                Santa Barbara, California |

On October 5, 2020, at 10:00 a.m., (the "Sale Hearing") there came before the United States

Bankruptcy Court for the Central District of California, Northern Division (the "Court"), the

Honorable Martin R. Barash, United States Bankruptcy Judge, presiding, a hearing on *Trustee's*

*Notice of Motion and Motion for Orders: (A) Approving Sale Of Substantially All Of the Estate's*

*Assets, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief (docket no. 1221)*, (the "Motion")[1] filed by Michael A. McConnell, the Chapter 11 Trustee (the "Trustee")[2] for the estate of HVI Cat Canyon, Inc. (the "Debtor"). Eric P. Israel of Danning, Gill, Israel & Krasnoff, LLP appeared via Zoom.gov on the Motion for the Trustee, and all other appearances were as noted on the record of the hearing.

The Court, having read and considered the Motion and all papers filed in support thereof, including the Trustee's supplements thereto, and the Notices, Oppositions and Responses filed by California Department of Conservation, Geologic Energy Management Div. (*docket no. 1294*), Stephen Fisher, as Trustee of the Nancy W. Ashton Revocable Trust, Elizabeth Esser, and Roman Catholic Archbishop of Los Angeles (*docket no. 1298*), the United States of America on behalf of USEPA and US Coast Guard (*docket no. 1304*), Buganko, LLC, Janet K. Ganong Estate and Living Trust (*docket no. 1305*), Chamberlin Oil LLC (*docket no. 1307*),Gary K. Kaestner, Trustee of the Conzelman Family Trust (*docket no. 1308*), County of Santa Barbara, California, Santa Barbara Air Pollution Control District (docket no. 1312), .GLR, LLC, and GRL, LLC *(docket no. 1313)*, Jane A. and John S. Adams, Trustees (*docket no. 1314*), Guarantee Royalties, Inc., and Laor Liquidating Associates, LP (*docket nos. 1316 and 1357*), County of Santa Barbara; County Treasurer Tax Collector (*docket no. 1317*), Goodwin "A" Mineral Owners Group et al. (docket no. 1319), Union Oil Company of CA (*docket no. 1323*), California Asphalt Production, Inc., GIT, Inc., GTL1, LLC (*docket no. 1324*), and State College LLC (*docket no. 1342*) (collectively, the "Objections"), it appearing that the relief requested in the Motion for entry of an Order (this "Order") (a) authorizing the sale (the "Sale") of the Assets (as defined in the APA (as defined

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the APA (as defined herein), as applicable; *provided* that in the event of any conflict with respect to the meaning of a capitalized but undefined term, the meaning ascribed to such term in the APA shall control.

[2] All references to the "Trustee" shall include the Seller, the Debtor and the bankruptcy estate (the "Estate"), as the context requires.

below)) to Team Maria Joaquin, L.L.C. and Maria Joaquin Basin, L.L.C. (collectively. the "Buyer"), pursuant to the Purchase and Sale Agreement between the Trustee and the Buyer, dated as of August 18, 2020 (together with all other documents contemplated thereby, as such agreement may be amended, restated or supplemented, the "APA"), a copy of which is attached to the Motion as Exhibit 5, and the First Amendment to Purchase and Sale Agreement, a copy of which is attached as Exhibit 1 to the *Notice of Submission of First Amendment to Stalking Horse Bidder's Asset Purchase Agreement (docket no. 1239)*, free and clear of all Liens, Claims, and Interests (each as defined herein); (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Buyer; and (c) granting related relief, all as more fully set forth in the Motion; and the Court having entered the *Order (A) Establishing Bidding Procedures for the Sale of Substantially All of the Estate's Assets, (B) Establishing Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (C) Authorizing and Approving the Selection of a Stalking Horse Bidder, (D) Approving Expense Reimbursement, (E) Scheduling an Auction and Sale Hearing, (F) Approving the Form and Manner of All Procedures, Protections, Schedules, and Agreements, and (G) Granting Related Relief (docket no. 1268)* (the "Bidding Procedures Order"); and the Trustee having filed the *Notice of Successful Bidders with Respect to the Debtor's Assets (docket no. 1327)*(the "Notice of Successful Bidder")  identifying the Buyer as the Successful Bidder for the Assets in accordance with the Bidding Procedures Order; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Estate, its creditors, and all other parties in interest; and the Court having found that the

Trustee provided appropriate notice of the Motion and opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements and evidence in support of the relief requested therein; and the Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; based on the Court's findings of fact and conclusions of law set forth on the record at the hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

<u>**Findings of Fact and Conclusions of Law**</u>

A.      The findings of fact and conclusions of law herein, and as set forth on the record at the hearing, constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

<u>**Jurisdiction and Venue**</u>

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of Cases and Proceedings to the Bankruptcy Judges of the Central District of California, from the United States District Court for the Central District of California, General Order 13-05 dated July 1, 2013.  Without limiting the generality of the foregoing, this Court has exclusive in rem jurisdiction over the Assets pursuant to 28 U.S.C. § 1334(e), as such Assets are property of the Debtor's chapter 11 Estate, and, as a result of such jurisdiction, this Court has all necessary power and authority to grant the relief contained herein.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**Statutory Predicates**

C.      The statutory and other legal bases for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 3012, 6004, 6006, 9007, 9008 and 9014 and Local Rule 6004-(1).  The consummation of the transactions contemplated by the APA and this Order is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and the Trustee and the Buyer have complied with all of the applicable requirements of such sections and rules in respect of such transactions.

**Sufficient Notice**

D.      As evidenced by the declarations and/or certificates of service and publication notice filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Sale (and all transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the executory contracts and unexpired leases specified as of the date hereof pursuant to the APA (collectively, the "Assigned Contracts"), the Cure Amounts (as defined below), the Sale Hearing, and all deadlines related thereto, has been provided, as relevant, in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 3012, 6004, 6006, 9007, 9008 and 9014, Local Rule 6004-(1) and in compliance with the Bidding Procedures Order, to all interested persons and entities, including, without limitation, the Notice Parties (as defined below).

E.      Notice of the Sale Hearing was published in the *Los Angeles Times* and the *Santa Barbara News Press* on September 17, 2020 and September 18, 2020, respectively, in accordance with the Bidding Procedures Order and was sufficient and proper notice to any other interested parties, including those parties whose identities are unknown to the Trustee.  With respect to any parties that may have claims against the Debtor, but whose identities are not reasonably

ascertainable by the Trustee, the publication of the Sale Notice was sufficient and reasonably calculated under the circumstances to reach such parties.

F.    The Trustee filed and served his *Notice of Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with the Sale of the Debtor's Assets and the Proposed Cure Amounts with Respect Thereto* (*docket no. 1290*) (the "Assumption Notice"), as corrected and amended by his Notice of Correction re Casmalia/Morganti and Cat Canyon/Goodwin A Leases (*docket no. 1334*), which Assumption Notice was substantially in the form of the notice of assumption and assignment of executory contracts or unexpired leases, attached as Exhibit 3 to the Motion, in accordance with the Bidding Procedures, identifying, among other things, the Cure Amounts (as defined below).  The Trustee served the Assumption Notice on each of the non-Debtor counterparties to the Assigned Contracts (as defined above). The service of the Assumption Notice was sufficient under the circumstances and in full compliance with the Bidding Procedures Order, and no further notice need be provided in respect of the Trustee's assumption and assignment to the Buyer of the Assigned Contracts or the Cure Amounts.  All non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to the assumption and assignment of the Assigned Contracts and the Cure Amounts.

G.    The notice described in the foregoing Paragraphs C–F is good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures, the Sale (and all transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts, the Cure Amounts, the Sale Hearing, consent and preferential purchase rights related to oil and gas interests and surface rights, and all deadlines related thereto is or shall be required.

**Marketing and Sale Process**

H.      The Sale of the Assets to the Buyer pursuant to the Bidding Procedures was duly authorized pursuant to sections 363(b)(1) and 363(f) of the Bankruptcy Code, Bankruptcy Rule 6004(f) and Local Rule 6004-1.  As demonstrated by (i) testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Trustee and their professionals, agents, and other representatives have marketed the Assets and conducted all aspects of the sale process, including the solicitation of bids for the Assets, in good faith and in compliance with the Bidding Procedures and the Bidding Procedures Order.  The marketing process undertaken by the Trustee and his professionals, agents and other representatives with respect to the Assets has been adequate and appropriate and reasonably calculated to maximize value for the benefit of all stakeholders.  The Bidding Procedures were duly noticed, were substantively and procedurally fair to all parties, including all potential bidders and all provisions governing credit bidding, and were conducted in a diligent, non-collusive, fair and good-faith manner.

I.      The Bid Deadline passed at 12:00 p.m. (Noon) (prevailing Pacific Time), on September 18, 2020 pursuant to the Bidding Procedures and Bidding Procedures Order.  On September 23, 2020, the Trustee filed a notice stating that the Trustee did not receive any competing Bids for the Assets.  Pursuant to the terms of the Bidding Procedures, the transaction contemplated by the APA was the highest and best bid for the Assets and, therefore, was designated as the Successful Bid.  On September 23, 2020, the Trustee filed the Notice of Successful Bidder identifying the Buyer as the Successful Bidder for the Assets in accordance with the Bidding Procedures Order.  As established by the record of the Sale Hearing, the bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by the Trustee and the Buyer.  The Bidding Procedures afforded a full, fair and

reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Assets, and the APA constitutes the best and highest offer for the Assets.

**Corporate Authority**

J.      The Assets constitute property of the Estate and title thereto is vested in the Trustee within the meaning of section 541 of the Bankruptcy Code.  The Trustee (i) has full power and authority to execute the APA and all other documents contemplated thereby, and the Sale to the Buyer has been duly and validly authorized by all necessary corporate action, (ii) has all of the power and authority necessary to consummate the Sale and all transactions contemplated by the APA, (iii) has taken all action necessary to authorize and approve the APA and the consummation by the Trustee of the Sale and all transactions contemplated thereby, and (iv) requires no consents or approvals, other than those expressly provided for in the APA, to consummate such transactions.

**Highest and Best Offer; Business Judgment**

K.      The Trustee, in exercising his business judgment, has demonstrated a sufficient basis to enter into the APA, sell the Assets on the terms outlined therein and assume and assign the Assigned Contracts to the Buyer under sections 363 and 365 of the Bankruptcy Code.  All such actions are appropriate exercises of the Trustee's business judgment and in the best interests of the Debtor's Estate, its creditors, and other parties in interest.  Approval of the Sale pursuant to the APA at this time is in the best interests of the Trustee, the Debtor, the Estate, its creditors, and all other parties in interest.

L.      The offer of the Buyer, upon the terms and conditions set forth in the APA, including, without limitation, the total consideration to be realized by the Estate thereunder, (i) is the highest and best offer received by the Trustee after extensive marketing, including through the Bidding Procedures, (ii) is in the best interests of the Trustee, the Debtor, the Estate, its creditors, and all other parties in interest and (iii) constitutes full and adequate consideration, is fair and

reasonable and constitutes reasonably equivalent value, fair consideration, and fair value for the Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Trustee sought other offers for the Assets that were comparable to the APA but was unable to obtain any such offer. Taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Assets for greater economic value to the Trustee, the Debtor, the Estate, or its creditors.

### Opportunity to Object

M.      A reasonable opportunity to object or be heard with respect to the Motion, the Bidding Procedures, the Sale (and all transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts, the Cure Amounts, the Sale Hearing, consent and preferential purchase rights related to oil and gas interests or Surface Rights, and all deadlines related thereto, has been afforded to all interested persons and entities, including, without limitation:  (i) the Office of the U.S. Trustee for the Central District of California; (ii) the Committee; (iii) all creditors, including all known lessors and royalty claimants;  (iv) all entities who have expressed an interest in a transaction with respect to some or all of the Assets during the past 12 months; (v) all entities who have asserted any lien or interest in or upon the Assets; (vi) the Internal Revenue Service and all federal, state, and local regulatory or taxing authorities or recording offices; (vii) all entities known to hold or to have asserted any "Lien," "Claim," or "Interest" (each as defined herein) with respect to any of the Assets; (viii) all parties entitled to notice pursuant to Local Rule 2002-1(b); (ix) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder and; (x) all parties with an oil and gas interest or surface rights, including, without limitation, a royalty interest or working interest, which

may provide for consent rights or preferential purchase rights with respect to certain of the Assets (the foregoing persons and entities, collectively, the "Notice Parties").

### Good Faith Purchaser; Arm's Length Sale

N.    The APA was negotiated, proposed, and entered into by the Trustee and the Buyer without collusion, in good faith, and from arm's length bargaining positions.  Neither the Trustee, nor the Buyer, nor any affiliate of the Buyer has engaged in any conduct that would cause or permit the APA or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

O.    The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

P.    Neither the Buyer nor any of its affiliates, members, officers, directors, shareholders or any of its or their respective successors or assigns is an "insider" or "affiliate" of the Debtor, as those terms are defined in sections 101(31)  and 101(2) of the Bankruptcy Code, and the Buyer's professionals, agents and other representatives have complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the APA.  The APA complies with the Bidding Procedures Order and all other applicable orders of this Court.

### Free and Clear Transfer Required by Buyer

Q.    The Buyer would not have entered into the APA and would not consummate the Sale, thus adversely affecting the Trustee, the Debtor, the Estate, and the creditors, if each of (i) the Sale and (ii) the assumption and assignment of the Assigned Contracts to the Buyer were not free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the sole exception of the Permitted Encumbrances and the Assumed Obligations) as more fully set forth in Paragraph 8 of this Order, or if the Buyer would, or in the future could, be liable for any successor liabilities.  For the avoidance of doubt, the Buyer shall have no responsibility whatsoever with

respect to any liabilities except to the extent such liabilities constitute Permitted Encumbrances or Assumed Obligations, which liabilities shall remain the responsibility of the Trustee and the Debtor's Estate before, on, and after the Closing.

R.    As of the Closing, pursuant and subject to the terms of the APA and this Order, the transfer of the Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Assets and will vest the Buyer with all of the Trustee, the Debtor and the Estate's right, title, and interests in the Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the sole exception of the Permitted Encumbrances and the Assumed Obligations), including, without limitation, (i) mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights under any operating agreement not assumed by or assigned to the Buyer, right of use or possession, subleases, leases, conditional sale arrangements, any dedication under any gathering, transportation, treating, purchasing or similar agreement that is not assumed by or assigned to the Buyer, or any rights that purport to give any party a right of first refusal or consent with respect to the debtor's interest in the Assets or any similar rights; (ii) all claims as defined in Bankruptcy Code section 101(5), including, without limitation, all rights or causes of action (whether in law or in equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the debtor or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding,

law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this chapter 11 case, and whether imposed by agreement, understanding, law, equity or otherwise; (iv) any rights based on any successor or transferee liability; (v) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtor's or the Buyer's interest in the Assets, or any similar rights; (vi) any rights under labor or employment agreements; (vii) any rights under mortgages, deeds of trust, and security interests; (viii) any rights related to intercompany loans and receivables between the debtor and any non-debtor subsidiary or affiliate; (ix) any rights under pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtor or any multiemployer plan to which the Debtor has at any time contributed to or had any liability or potential liability; (x) any other employee claims related to worker's compensation, occupational disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without

limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the debtor or any of its predecessors, or (l) the WARN Act (29 U.S.C. §§2101 *et seq.*); (xi) any bulk sales or similar law; (xii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Effective Time, including, without limitation, any *ad valorem* taxes assessed by any applicable taxing authority other than the Permitted Encumbrances and the Assumed Obligations; (xiii) any unexpired and executory contract or unexpired lease to which the debtor is a party that is not an Assigned Contract that will be assumed and assigned pursuant to this Order and the APA; and (xiv) any other liabilities as provided in the APA.

### Satisfaction of Section 363(f)

S.      The Trustee may sell the Assets free and clear of any and all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever, including any rights or claims based on any putative successor or transferee liability, as set forth herein, because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. All parties in interest, including, without limitation, any holders of Liens, Claims, and/or Interests, and holders of any consent and preferential purchase rights related to oil and gas interests or surface rights, and any non-Debtor counterparties to the Assigned Contracts, who did not object, or who withdrew their objection, to the Sale, the Motion, the assumption and assignment of the applicable Assigned Contracts or the associated Cure Amounts are deemed to have consented to the relief granted herein pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Liens, Claims, or Interests and (ii) non-Debtor parties to Assigned Contracts that did object fall

within one or more of the other subsections of section 363(f) of the Bankruptcy Code or are adequately protected by having their Liens, Claims, or Interests, if any, attach to the portion of the proceeds of the Sale ultimately attributable to the Assets against or in which they claim an interest, in the order of their priority, with the same validity, force and effect, if any, which they now have against such Assets, subject to any claims and defenses the Trustee, Debtor or their Estate may possess with respect thereto.

## No Successorship

T.      Neither the Buyer nor any of its affiliates are successors to the Trustee, the Debtor or the Estate by reason of any theory of law or equity, and neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Trustee, the Debtor and/or the Estate, except as otherwise expressly provided in the APA.

## Assigned Contracts

U.      The Trustee has demonstrated (i) that it is an exercise of his sound business judgment to assume and assign the Assigned Contracts to the Buyer in each case in connection with the consummation of the Sale and (ii) that the assumption and assignment of the Assigned Contracts to the Buyer is in the best interests of the Trustee, the Debtor, the Estate and its creditors, and other parties in interest.  The Assigned Contracts being assigned to the Buyer are an integral part of the Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assigned Contracts are reasonable and enhance the value of the Debtor's Estate.  Any non-Debtor counterparty to an Assigned Contract that has not actually filed with the Court an objection to such assumption and assignment in accordance with the terms of the Motion is deemed to have consented to such assumption and assignment.

## Cure Amounts and Adequate Assurance

V.      The Trustee and the Buyer, as applicable, have, including by way of entering into the APA, agreeing to the provisions relating to the Assigned Contracts therein, entering into relevant stipulations with counterparties (i) cured, or provided adequate assurance of cure, of any default existing prior to the date hereof under any of the Assigned Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code and the Buyer has, based upon the record of these proceedings, including the evidence presented by the Trustee at the Sale Hearing, provided adequate assurance of its future performance of and under the Assigned Contracts pursuant to sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. The Buyer's promise under the APA to perform the obligations under the Assigned Contracts after the Effective Time shall constitute adequate assurance of future performance under the Assigned Contracts being assigned to the Buyer within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The Cure Amounts are hereby deemed to be the sole amounts necessary to cure any and all defaults under the Assigned Contracts under section 365(b) of the Bankruptcy Code.

### Time Is of the Essence; Waiver of Stay

W.      Time is of the essence in consummating the Sale. In order to maximize the value of the Assets, it is essential that the sale and assignment of the Assets occur within the time constraints set forth in the APA. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### Motion is Granted

1.     The relief requested by the Motion is granted as set forth herein.

## Objections Overruled

2.     Any and all objections to the Motion, including the Objections, or to the relief granted herein, or entry of this Order, whether filed, stated on the record before this Court or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits.  All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.     Notice of the Motion, the Bidding Procedures, the Sale (and all transactions contemplated in connection therewith), the assumption and assignment to the Buyer of the Assigned Contracts, the Cure Amounts, the Sale Hearing, consent and preferential purchase rights related to oil and gas interests and Surface Rights, and all deadlines related thereto was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 3012, 6004 and 6006.

## Approval of the APA

4.     The APA, including all of the terms and conditions thereof, is hereby approved. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Trustee and the Estate are each authorized and directed to take any and all actions necessary to fulfill the obligations under, and comply with the terms of, the APA and to consummate the Sale pursuant to and in accordance with the terms and conditions of the APA and this Order, without further leave of the Court.  The Trustee is further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any expenses or costs that are required to be paid in order to consummate the transactions contemplated by the APA or perform the Estate's obligations under the APA.

5.      Each of the Trustee and the Estate are authorized, in accordance with the APA, to execute and deliver, and empowered to perform under, consummate, and implement, the APA, together with all additional instruments, documents, and other agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer or reducing to possession, the Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA.

## Binding Effect of Order

6.      This Order and the APA shall be binding upon all creditors of, and equity holders in, the Debtor and any and all other parties in interest, including, without limitation, any and all holders of Liens, Claims, and Interests (including holders of any rights or claims based on any putative successor or transferee liability) of any kind or nature whatsoever, all non-Debtor parties to the Assigned Contracts, the Buyer, all successors and assigns of the Buyer, the Debtor and its affiliates and subsidiaries, the Trustee and any successor trustee appointed in the Debtor's chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code.  Nothing contained in any chapter 11 (or other) plan confirmed in these bankruptcy cases or the confirmation order confirming any such plan shall conflict with or derogate from the provisions of the APA or this Order.  To the extent of any such conflict or derogation, the terms of this Order shall govern.

## Amendments to the APA

7.      The APA and any related agreements, documents, or other instruments may be modified, amended, supplemented or restated by the parties thereto in a writing signed by both parties and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, supplement or restatement should not have a material adverse effect on the Debtor's Estate, absent Court authorization.  In that respect, to the extent the Trustee

has been authorized to abandon any asset of the Estate, the Trustee shall be deemed authorized to enter into any modification or amendment to the APA, that has been agreed between the Seller and Buyer in a writing signed by both parties and in accordance with the terms thereof, without further order of this Court, to include any abandoned asset as part of the Assets under the APA; and only in that event, such assets shall be included in the Assets sold pursuant to this Order and shall be subject to all the terms, provisions and protections provided herein. The APA shall not be altered, amended, rejected, discharged or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases or in any converted case under chapter 7 of the Bankruptcy Code, without the prior written consent of the Buyer.

### **Transfer of the Assets Free and Clear**

8.    The Buyer shall assume and be liable for only those liabilities expressly assumed pursuant to the APA. Pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing, the Assets shall be transferred to the Buyer free and clear of any and all Liens, Claims, and Interests of any kind or nature whatsoever, with the sole exception of the Permitted Encumbrances and the Assumed Obligations. For purposes of this Order, "Liens," "Claims," and "Interests" shall mean:

     a.    any and all charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledge, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), rights of consent, rights of setoff, successor liability, easements, servitudes, restrictive covenants, interests or rights under any operating agreement, encroachments, encumbrances, third-party interests or any other restrictions or limitations of any kind with respect to the Assets including all the encumbrances or other restrictions or limitations on use set forth in Paragraph R above (collectively, "Liens");

     b.    any and all claims as defined in section 101(5) of the Bankruptcy Code and jurisprudence interpreting the Bankruptcy Code, including, without limitation, (i) any and all claims or causes of action based on or arising under any labor, employment or pension laws, (ii) any and all claims or causes of action based upon or relating to any putative successor or transferee liability, and (iii) any and all other claims, causes of action, rights, remedies,

obligations, liabilities, counterclaims, cross-claims, third party claims, demands, restrictions, responsibilities, or contribution, reimbursement, subrogation, or indemnification claims or liabilities based on or relating to any act or omission of any kind or nature whatsoever asserted against any of the Trustee, the Debtor or the Estate or any affiliates, subsidiaries, directors, officers, agents, successors or assigns in connection with or relating to the Debtor, its operations, business, or liabilities, the Trustee's marketing and bidding process with respect to the Assets, the Assigned Contracts, or the transactions contemplated by the APA  including all the claims set forth in Paragraph R above (collectively, "Claims"); and

c.    any and all equity or other interests of any kind or nature whatsoever in or with respect to (x) the Debtor or its respective affiliates, subsidiaries, successors or assigns, (y) the Assets, or (z) the Assigned Contracts, including all the interests set forth in Paragraph R above (collectively, "Interests"),

whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing.

9.    Of the tax claims and liens asserted by the County of Santa Barbara Treasurer-Tax Collector, the total amount asserted for all taxable periods through October 31, 2020 is $6,574,501.45 which includes all amounts asserted against the Debtor and/or the Estate as owing to the County of Santa Barbara Treasurer-Tax Collector, including but not limited to, taxes, penalties, interest, attorneys' fees and costs.  Notwithstanding this claim, the actual Assumed Real Property Taxes for the purchased Assets located in Santa Barbara County solely for purposes of the APA shall be $4,806,644.99  (the "Assumed SB Real Property Taxes"), which comprises all accrued amounts owing to the County of Santa Barbara  Treasurer-Tax Collector through the Effective Time (as defined under the APA) (i.e. August 1, 2020), including but not limited to, 1/12th (or $47,434.95) of the total taxes that have been assessed against the Assets located in Santa Barbara

County for the 2020-2021 fiscal tax year, which covers the period of July 1, 2020 through June 30, 2021 (for clarity, the 1/12th covers the period from July 1, 2020 through the Effective Time (i.e. August 1, 2020)). Notwithstanding the Assumed SB Real Property Taxes definition as used herein for purposes of the APA, the Buyer shall remain responsible to the County of Santa Barbara Treasurer-Tax Collector for payment of $5,387,597.70 in taxes, penalties, interest, costs, and attorneys' fees consisting of the amounts calculated through October 31, 2020 (which includes the 2020-2021 tax year taxes of $569,219.42 and a cancellation in penalties, interest, costs, and attorney fees of $1,200,304.65) (the "Total SB Taxes Through Fiscal 2020-2021"). The Total SB Taxes Through Fiscal 2020-2021 (i.e. $5,387,597.70) shall constitute a Permitted Encumbrance and an Assumed Obligation. The Assets shall be transferred free and clear of all other Liens, Claims and Interests owed to or asserted by the County of Santa Barbara Treasurer-Tax Collector. For the avoidance of doubt, nothing in this paragraph shall impact Buyer's assumption under the APA of Assumed Real Property Taxes in respect of the Assets located in Kern County, and the claims and liens securing those taxes shall constitute a Permitted Encumbrance and Assumed Obligation without modification. The Total SB Taxes Through Fiscal 2020-2021 will be subject to the following terms of payment: (i) $1,000,000 due on the Closing Date (the "Initial Payment"), (ii) $877,519.54 due on or before December 31, 2021, (iii) $877,519.54 due on or before December 31, 2022, (iv) $877,519.54 due on or before December 31, 2023, (v) $877,519.54 due on or before December 31, 2024, and (vi) $877,519.54 due on or before December 31, 2025. The Initial Payment will first be applied to the $569,219.42 of billed taxes relating to fiscal year 2020-2021, and then to other amounts outstanding on account of the Total SB Taxes Through Fiscal 2020-2021. The Assets will be subject to future assessments in the ordinary course, including for fiscal year 2021-2022, which amounts shall be due pursuant to normal payment terms under applicable state law and shall be timely paid by the Buyer. As long as the payments to the Santa

Barbara Treasurer-Tax Collector as contemplated by this Sale Order are timely made without default, no interest, penalties or fees will accrue on any amounts comprising the Total SB Taxes Through Fiscal 2020-2021. The tax liens of the SB Taxing Authorities and Kern County are adequately protected by the terms of this Order. Seller's right to seek reassessments of the taxes assessed for fiscal year 2020-2021 shall remain unimpaired by this Order but shall be subject to state law. Notwithstanding anything to the contrary in this Sale Order, any value allocations made by the Trustee or the Buyer, including any value allocations contained within the Allocated Value Letter, will not be binding upon the County of Santa Barbara, the Assessor, or the Treasurer-Tax Collector in any reassessment proceeding or otherwise. Nothing contained in paragraph 9 shall be deemed to modify section 3.08(a)(5) of the APA.

**Vesting of Assets in the Buyer**

10.    The transfer of the Assets to the Buyer pursuant to the APA shall constitute a legal, valid, and effective transfer of the Assets on the Closing, and shall vest the Buyer with all of the Trustee, the Debtor and the Estate's right, title and interests in the Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever (with the sole exception of the Permitted Encumbrances and the Assumed Obligations).

11.    The Buyer is hereby authorized in connection with the consummation of the Sale to allocate the Assets, including the Assigned Contracts, among its affiliates, agents, designees, assigns, and/or successors, in a manner as it in its sole discretion deems appropriate, and to assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Assets, including the Assigned Contracts, to its affiliates, designees, assignees and/or successors with all of the rights and protections accorded to the Buyer under this Order and the APA with respect thereto, and the Trustee, the Debtor and the Estate shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

**Release of Liens**

12.     If any person or entity that has filed any financing statements, mortgages, mechanic's liens, *lis pendens*, or any other documents or agreements evidencing a Lien on the Debtor or any of the Assets conveyed pursuant to the APA and this Order shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens which the person or entity has with respect to the Debtor or the Assets or otherwise, then (a) the Trustee or the Buyer is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets, and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in the Assets of any kind or nature whatsoever.  Upon releasing of any Liens, the Liens will attach to the proceeds of the Sale in the order and priority that existed prior to such releases.

**Deemed Consent and Waiver of Preferential Purchase Rights**

13.     Parties with an oil and gas interest or an interest in a surface right, including, without limitation, a royalty interest or working interest providing for consent rights or preferential purchase rights with respect to certain of the Assets and who received notice in accordance with the applicable provisions of the APA and the Bidding Procedures Order and failed to timely object are hereby deemed to consent to the Sale and/or waive their ability (if any) to exercise any preferential purchase right or consent right with respect to the Sale.

**Police and Regulatory Power of Governmental Units**

14.     Nothing in this Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order;

provided, however, that neither the Buyer nor any of its affiliates shall assume any liability of the

Debtor, the Trustee or the Estate to a governmental unit (as defined in section 101(27) of the

Bankruptcy Code) for penalties, fines, response costs, or other expenses incurred for any period

prior to the Closing of the Sale Transaction.  Nothing in this Order or the APA authorizes the

transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization

or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all

legal requirements and approvals under police or regulatory law applicable to such transfer or

assignment or to the discontinuation of such obligation.  Provided however, to the extent provided

by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse

to renew any permit, license, or similar grant relating to the operation of the Assets against a

bankrupt or debtor, or another person with whom such bankrupt or debtor has been associated,

solely on account of the filing or pendency of a chapter 11 case or the insolvency of such party.

Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory

law to interpret this Order or to adjudicate any defense asserted under this Order.

### Assumption and Assignment of Assigned Contracts

15.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and

conditioned upon the Closing, the Trustee's assumption and assignment to the Buyer of the

Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the

Bankruptcy Code with respect thereto are hereby deemed satisfied.

16.     The Trustee is hereby authorized, in accordance with the APA and in accordance

with sections 105(a) and 365 of the Bankruptcy Code, to (i) assume and assign to the Buyer the

Assigned Contracts, effective upon and subject to the occurrence of the Closing, free and clear of

all Liens, Claims, and Interests of any kind or nature whatsoever (with the sole exception of the

Permitted Encumbrances and the Assumed Obligations), which Assigned Contracts, by operation

of this Order, shall be deemed assumed and assigned to the Buyer effective as of the Closing, and

(ii) execute and deliver to the Buyer such documents or other instruments as the Buyer may deem

necessary to assign and transfer the Assigned Contracts to the Buyer.

17.    Subject to Paragraph 17 hereof:

a.    The Trustee is authorized to and may assume all of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code.

b.    The Trustee is authorized to and may assign each Assigned Contract to the Buyer in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract on the consent of the counterparty thereto or allow the non-Debtor party to such Assigned Contract or Assigned Lease to terminate, recapture, impose any penalty, condition, renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, shall constitute unenforceable anti-assignment provisions which are expressly preempted under section 365 of the Bankruptcy Code and void and of no force and effect.

c.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment of the Assigned Contracts by the Trustee to the Buyer have been satisfied.

d.    Upon the Closing, the Assigned Contracts shall be transferred and assigned to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), 365(e)(1) and 365(f) of the Bankruptcy Code) that prohibits, restricts, limits, or conditions such assignment or transfer pursuant to section 365(k) of the Bankruptcy Code.

e.    After the Trustee's transfer and assignment of the Assigned Contracts to the Buyer, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

f.    Any portion of any Assigned Contract which purports to permit a counterparty thereunder to cancel the remaining term of such Assigned Contract if the Debtor discontinues its use or operation of the property is void and of no force and effect, and shall not be enforceable against the Buyer, or its assignees and sublessees; and the counterparty under any such Assigned Contract shall not have the right to cancel or otherwise modify the Assigned Contract or increase the rent, assert any claim or impose any penalty by reason of such discontinuation, the Trustee or Debtor's cessation of operations, the assignment of such Assigned Contract to the Buyer, or the interruption of business activities at any of the leased premises.

18.     All defaults and all other obligations under the Assigned Contracts occurring, arising or accruing prior to the assignment thereof to the Buyer at Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) are deemed to have been cured or satisfied by the payment of the proposed Cure Amounts, which shall cure all monetary defaults, if any, under each Assigned Contract in the amounts set forth in the Assumption Notice, as corrected by the Notice of Correction (*docket no. 1334*) or any Supplemental Assumption Notice (or any other cure amount reached by agreement after an objection to the proposed cure amount by a counterparty to an Assigned Contract), which was served in compliance with the Bidding Procedures Order, and as set forth on Exhibit 1 hereto (the "Cure Amounts"), and which Cure Amounts were satisfied, or shall be satisfied as soon as practicable, by the Trustee or by the Buyer, as the case may be, as provided in the APA.  With respect to any mineral and/or oil and gas leases and/or interests that are being assumed by the Trustee and assigned to the Buyer, the pre-petition cure amount is zero and no pre-petition cure amount will be paid.

19.     For all Assigned Contracts for which the Assumption Notice was served, the Trustee and the Buyer, as applicable, are each authorized and directed to pay their respective portion of all Cure Amounts required to be paid by such parties in accordance with the APA upon the later of (a) the Closing and (b) for any Assigned Contracts for which an objection has been filed to the assumption and assignment of such agreement or the Cure Amounts relating thereto and such objection remains pending as of the date of this Order, the resolution of such objection by settlement or order of this Court.  For all Assigned Contracts for which a supplemental assumption notice was served, the Trustee and the Buyer, as applicable, are each authorized and directed to pay their respective portion of all Cure Amounts required to be paid by such parties in accordance with the APA upon the later of (x) 14 days following service of the supplemental notice of assumption

and assignment and (y) if an objection to the supplemental notice of assumption and assignment is timely filed in accordance with the Bidding Procedures Order, the resolution of such objection by settlement or order of this Court.

20.    Pursuant to section 365(k) of the Bankruptcy Code, the Trustee, the Debtor and the Estate shall be relieved from any liability for any breach for any Assigned Contract that occurs after the effectiveness of such assumption and assignment to the Buyer.

<u>**Consent to Sale Stipulations**</u>

21.    The consent to sale stipulations filed as docket nos. 1300, 1302, 1351, 1360, 1363, and 1369 are approved.

<u>**Modification of the Automatic Stay**</u>

22.    The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the APA and the provisions of this Order.

<u>**Release of Liens by Creditors; Collection of Assets**</u>

23.    Except as expressly provided to the contrary in this Order or in the APA, the holder of any valid Lien, Claim or Interest in the Debtor or the Assets shall, as of the Closing, be deemed to have waived and released such Lien, Claim or Interest, without regard to whether such holder has executed or filed any applicable release, and such Lien, Claim or Interest shall automatically, and with no further action by any party, attach to the portion of the proceeds of the Sale ultimately attributable to the Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Assets, subject to any claims, defenses and objections, if any, that the Trustee, the Debtor or the Estate may possess with respect thereto.  Notwithstanding the foregoing, any such holder of such a Lien, Claim, or Interest is authorized and directed to execute and deliver any waivers, releases, or other

related documentation, as reasonably requested by the Trustee; *provided* that, this Paragraph 23 shall not apply to or affect Permitted Encumbrances or Assumed Obligations.

## **Amendments and Surrender of Leases**

24.     As part of and in aid of the Sale, the Trustee is authorized to modify and/or amend any of the leases  and executory contracts or surrender to any respective lessor or interest holder any of the leases or executory contracts that go unsold rather than abandon them.

## **Payment from the Sale Proceeds**

25.     The Trustee is authorized to pay UBS AG, or its successor in interest ("<u>UBS</u>"), to the extent of cash proceeds, after appropriate reserves, amounts due on account of UBS' post-petition liens promptly upon closing, after deducting: (a) the sum of $400,000.00 in cash at closing, (UBS or its assignee shall be liable upon receipt of the Production Payment for payment to TenOaks Energy Partners, LLC ("TenOaks") pursuant to its retention agreement of 2% of all dollars as received under the Production Payment after Aggregate Consideration received under the Purchase Agreement exceeds $20 million.  UBS shall have no additional obligations under the TenOaks retention agreement); (b) payment to pre-Trustee professionals of $303,500.00 pursuant to paragraph 27 below; (c) the amount of  Deferred Fees pursuant to the most recent amendment to the Credit Agreement to professionals in satisfaction of carveout in their favor set forth in the Trustee financing agreement with UBS; (d) the sum of $500,000.00 to be held by the Trustee as the Litigation Fund set forth in paragraph 29 below; and (e) the sum of $500,000.00 to be held by the Trustee as the Appeals Escrow set forth in paragraph 29 below.  Payments to UBS shall first be applied to retire the $1,191,862 advanced by UBS AG, Stamford Branch to the Trustee for post-petition financing on or before November 21, 2019.  UBS' liens shall continue to attach to all property of the estate until conveyed to a Buyer or paid as set forth above.  Without limiting the

foregoing, the liens securing any unpaid post and pre-petition obligations to UBS shall attach to any non-cash consideration received by the Trustee.

26.    Additionally, after payment of the Deferred Fees in full, the Trustee is authorized to assign all of its rights to be a party to and to receive at Closing the Production Payment Conveyance, the Oil Sales Agreement, and the Deed of Trust (each as defined in the APA) to UBS or its designee as partial payment of UBS' claims.  The Trustee, UBS and Buyer are authorized to modify the forms of Production Payment Conveyance, Oil Sales Agreement, and Deed of Trust to reflect such arrangement and (i) at Closing, UBS or its designee will execute all such documents in place of Trustee, (ii) all originals and copies of such documents, to be delivered to Trustee will instead be delivered to UBS or its designee, (iii) the Trustee will have no obligations or rights thereafter under any such documents, (iv) following assignment, Buyer shall recognize UBS or its designee as Buyer's counterparty to all such documents entitled to all of the rights and benefits thereunder that otherwise would have accrued to Trustee, and (v) UBS or its designee shall make to Buyer the representations and warranties set forth in Section 6.01 through Section 6.03 of the APA, *mutatis mutandis*.  Based on the testimony of TenOaks and on the record at the Sale Hearing, the Court finds that the value of the Production Payment (as defined in the APA) is $7,681,522.

27.    Notwithstanding anything to the contrary herein, the Trustee is authorized to reserve the sum of $303,500 from the proceeds of the Sale (the "Escrowed Funds") and the Trustee is authorized to pay the Escrowed Funds at Closing (with the consent of UBS as a carveout from its liens and superiority claims) as follows on account of the allowed fees and expenses of Estate professionals incurred from the Petition Date through the date of appointment of the Trustee:  (1) $140,991.20 to Weltman & Moskowitz, LLP, counsel to the Debtor (representing 27.9% of the total interim allowed fees and expenses of $504,478.99); (2) $25,447.96 to Epiq Corporate Restructuring LLC, claims and noticing agent to the Debtor (representing 32.4% of the total

asserted fees and expenses of $78,531.74, which are deemed allowed); (3) $100,709.56 to

Pachulski Stang Ziehl & Jones, counsel to the Committee (representing 27.9% of the total interim

allowed fees and expenses of $360,347.72); (4) $30,586.33 to Conway MacKenzie, Inc., financial

advisor to the Committee (representing 27.9% of the total interim allowed fees and expenses of

$109,440.59); and (5) $5,764.95 to Cole Schotz P.C., Texas counsel to the Committee

(representing 27.9% of the total final allowed fees and expenses of $20,627.50).  Each professional

listed above consents to the treatment provided above, and acceptance of those sums from the

Escrowed Funds shall satisfy in full all administrative expenses in favor of the recipient through

and including October 21, 2019, and the balance of such administrative claims shall be waived

against the Estate.  The Trustee and UBS agree not to object to final fee applications of Estate

professionals covering the pre-Trustee period so long as such applications are consistent with the

foregoing interim allowed amounts previously approved by the Court for such period.

### Valuing the Assets

28.     The Court finds that the Purchase Price as set forth in the APA, which is hereby

confirmed, is the current fair market value of the Assets sold to the Buyer.  The Court further finds

that pursuant to Fed. R. Bankr. P. 3012, the value of the secured interests of GLR, LLC, Rival Well

Services, Inc., the California State Controller Tax Administration Section, Northern California

Collection Service, Inc., California Asphalt Production, Inc., GTL1, LLC  and GIT, Inc. are zero

and finds that, to the extent such claims are asserted to be secured, they are out of the money and

are entirely unsecured.

### Litigation Fund & Appeals Escrow

29.     In accordance with the APA, of the cash consideration received at closing, the

Trustee is authorized to contribute $500,000 of the sale proceeds to a litigation fund (the

"Litigation Fund") set aside for investigating and prosecuting litigation claims.  UBS shall also

contribute $500,000 to the Litigation Fund.  The Litigation Fund shall be available for the Trustee to pursue claims against the Debtor's insiders and affiliates for the benefit of creditors of the Estate. In addition, the APA provides for an escrow of $500,000 to defend any appeals from this Order (as defined in the APA, the "Appeals Escrow").  In accordance with the APA, the Buyer shall fund the Appeals Escrow at Closing from the adjusted Purchase Price otherwise payable to Seller, and the Appeals Escrow shall be governed by the applicable terms of the APA and is approved.

**Effect of Recordation of Order**

30.     This Order, once filed, registered, or otherwise recorded, (a) shall be effective as a conclusive determination that, upon the Closing, all Liens, Claims and Interests of any kind or nature whatsoever (with the sole exception of the Permitted Encumbrances and the Assumed Obligations) existing as to the Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Assets.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including, without limitation, recordation of this Order.  Notwithstanding the prior two sentences and for the avoidance of doubt, section 1146(a) of the Bankruptcy Code shall not apply to the Sale.

**Administrative Priority Status**

31.    Any amounts that become payable by the Trustee, the Debtor or the Estate to the

Buyer pursuant to the APA and any related agreements executed in connection therewith shall (a)

be entitled to superpriority administrative expense claim status with priority over any and all other

claims under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (b) not be subordinate

to any other administrative expense claim against the Debtor, (c) not be altered, amended,

discharged or affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases

without the prior written consent of the Buyer, and (d) be paid by the Trustee in the time and

manner provided for in the APA without further order of this Court.

**Prohibition of Actions Against the Buyer**

32.    Except for the Permitted Encumbrances and the Assumed Obligations or as

expressly permitted or otherwise specifically provided for in this Order, the Buyer and its affiliates

shall have no liability or responsibility for any liability or other obligation of the Trustee, the

Debtor, or the Estate, arising under or related to the Assets or otherwise.  Without limiting the

generality of the foregoing, and except as otherwise specifically provided herein and in the APA,

the Buyer and its affiliates shall not be liable for any claims against the Trustee, the Debtor, or the

Estate, or any of their predecessors or affiliates, and the Buyer and its affiliates shall have no

successor or vicarious liabilities of any kind or character including, without limitation, to any

theory of antitrust, warranty, product liability, environmental, successor or transferee liability, labor

law, ERISA, *de facto* merger, mere continuation, or substantial continuity, whether known or

unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with

respect to the Trustee, the Debtor, the Estate, or any obligations of the Trustee, the Debtor or the

Estate, including, without limitation, liabilities on account of the operation of the Debtor's business

prior to the Closing or any claims under the WARN Act or any claims related to wages, benefits, severance or vacation pay owed to employees or former employees of the Debtor.

33.     Effective upon the Closing, with the sole exception of any enforcement of rights related to the Permitted Encumbrances and the Assumed Obligations all persons and entities shall be, and hereby are, forever barred and estopped from (a) taking any action that would adversely affect or interfere with the ability of the Trustee and Debtor to transfer the Assets to the Buyer in accordance with the terms of this Order and the APA and (b) asserting, prosecuting, or otherwise pursuing, whether in law or in equity, in any judicial, administrative, arbitral or other proceeding, any Liens, Claims or Interests of any kind or nature whatsoever against the Buyer and its successors, designees, assigns, or property, or the Assets conveyed under this Order in accordance with the APA.

## No Interference

34.     Following the Closing, no holder of a Lien, Claim and/or Interest in or against the Trustee, the Debtor, the Estate or the Assets shall interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Lien, Claim, and/or Interest or any actions that the Trustee or Debtor may take in the Debtor's bankruptcy cases or any successor cases.

## Retention of Jurisdiction

35.     This Court retains jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, without limitation, retaining jurisdiction to:  (a) compel delivery of the Assets or performance of other obligations owed to the Buyer; (b) compel delivery of the proceeds of the Sale or performance of other obligations owed to the Trustee; (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (d) interpret, implement, and

enforce the provisions of this Order; and (e) protect the Buyer and its affiliates against (i) any

Liens, Claims and Interests in or against the Trustee, the Debtor, the Estate or the Assets of any

kind or nature whatsoever other than the Permitted Encumbrances and the Assumed Obligations

and (ii) any creditors or other parties in interest regarding the turnover of the Assets that may be in

their possession.

### No Stay of Order

36.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be

effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the

absence of any person or entity obtaining a stay pending appeal, the Trustee and the Buyer are free

to close the Sale under the APA at any time pursuant to the terms thereof.

### Good Faith Purchaser

37.    The Sale contemplated by the APA is undertaken by the Buyer in good faith, as that

term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or

modification on appeal of the authorization provided herein to consummate the Sale shall not affect

the validity of the Sale to the Buyer (including the assumption and assignment by the Trustee of

any of the Assigned Contracts), unless such authorization is duly stayed pending such appeal.  The

Buyer is a buyer in good faith of the Assets, and is entitled to all of the protections afforded by

section 363(m) of the Bankruptcy Code.

### Preservation of Rights

38.    Nothing contained in the Motion, this Order, the APA, or any allocation schedule

attached or related thereto shall constitute a waiver of or prejudice any argument of a party in

interest regarding, or the right of any party in interest to contest, the Trustee's allocation of the

proceeds of the Sale and all such rights shall be preserved.  Notwithstanding the foregoing, the

allocation of the proceeds of the Sale contained in the APA shall be binding between the Trustee

and the Buyer for the purposes set forth in the APA, but not as to the County of Santa Barbara or

the County of Santa Barbara Assessor or Treasurer-Tax Collector.

### Inconsistencies with Prior Orders, Pleadings or Agreements

39.     To the extent of any conflict between the APA and this Order, the terms of this

Order shall govern.  To the extent this Order is inconsistent or conflicts with any prior order or

pleading in this chapter 11 case, the terms of this Order shall govern and any prior orders shall be

deemed amended or otherwise modified to the extent inconsistent with this Order.

### Failure to Specify Provisions

40.     The failure to specifically reference any particular provisions of the APA or other

related documents in this Order shall not diminish or impair the effectiveness of such provisions, it

being the intent of the Court that the APA and other related documents be authorized and approved.

###

Date: October 13, 2020

Martin R Barash
United States Bankruptcy Judge

SURFACE LEASES

| Instrument Title | Field | Lease Name | Payee | Cure Amount |
|---|---|---|---|---|
| Exhibit "B" First Amendment to Surface Lease Agreement | Zaca Field | Davis | Grundoon LLC | $60,000.00 |
| VO-RW-1 Right of Way Agreement  11/10/92 | Santa Maria Valley | Bradley Lands (Section 6 and 31) | Bradley Land Company | $0.00 |
| VO-RW-6 Right of Way and Roadway Agreement 4/18/94 | Santa Maria Valley | Bradley Lands (Section 5) | Bradley Land Company | $0.00 |
| VO-RW-4 Right of Way Agreement 11/23/92 | Santa Maria Valley | Bradley Lands (Section 31) | Bradley Land Company | $0.00 |
| SMVC-6 Amendment to Right of Way  Agreement  2/6/74 | Santa Maria Valley | Bradley Lands (section 5 and 6) | Bradley Land Company | $0.00 |
| MC-70117 Right Of Way  Agreement 5/1/80 | Santa Maria Valley | Bradley Lands (Section 5) | Bradley Land Company | $0.00 |
| CA-40015 Right Of Way Agreement 2/6/74 | Santa Maria Valley | Bradley Lands (Section 5 and 6) | Bradley Land Company | $0.00 |
| MC-6569 Right Of Way Agreement 7/31/74 | Santa Maria Valley | Bradley Lands (section 5) | Bradley Land Company | $0.00 |
| MC-06559 Right of Way Agreement 4/4/73 | Santa Maria Valley | Bradley Lands (Section 6, 31 and 36) | Bradley Land Company | $0.00 |
| MC-6561 Amendment of Right Of Way Agreement 10/15/73 | Santa Maria Valley | Bradley Lands (section 6) | Bradley Land Company | $0.00 |
| MC-6574-1 Right Of Way Agreement 8/28/75 | Santa Maria Valley | SMV Field (Section 25 and 36) | Bradley Land Company | $0.00 |
| MC-06585 Right of Way Agreement 9/1/76 | Santa Maria Valley | Bradley Lands (Section 5 and 6) | Bradley Land Company | $0.00 |
| MC-6586 Right Of Way Agreement 4/28/76 | Santa Maria Valley | Bradley Lands  (section 6) | Bradley Land Company | $0.00 |
| SMVC-2A Right Of Way Agreement  2/7/73 | Santa Maria Valley | Bradley Lands (section 5 and 6) | Bradley Land Company | $0.00 |
| SMVC-2B Right of Way Agreement  5/20/88 | Santa Maria Valley | Bradley Lands (Section 5) | Bradley Land Company | $0.00 |
| SMV 57576 Row Of Way Agreement 6/1/76 | Santa Maria Valley | Bradley Lands (Section 6) | Bradley Land Company | $0.00 |
| MC-06589 Road Use Agreement 5/22/74 | Santa Maria Valley | Payne 21 (Section 6) | Bradley Land Company | $0.00 |
| VO-RW-3 ROW Agreement dtd 11/23/92 | Santa Maria Valley | Kemp | Judy A. Rogers | $0.00 |
|  |  |  | Ronald H. Souza | $0.00 |
|  |  |  | Michael J. Souza | $516.66 |
| VO-RW-2 Right of Way Agreement 11/14/92 | Santa Maria Valley | Kemp | Garvin Steele | $400.00 |
| VO-RW-5 Right of Way Agreement 1/6/94 | Santa Maria Valley | East Valley Farms | Roland and Sally Miller | $600.00 |
| MC-70033 Right Of Way Agreement 5/1/78 | Clark Ave | Acquistapace | Aquistapace Sisters, LLC | $1,000.00 |
| MC-70038 Right Of Way Agreement | Clark Ave | Nodlew | Nodlew Inc. | $1,800.00 |
| MC 66162-Surface Lease-12/11/89 | Cat Canyon | Los Flores | E&B Natural Resources | $100.00 |
| MC-6575 Right Of Way Agreement 12/19/91 | Santa Maria Valley | Vincent | Donald Vincent | $1,300.00 |
|  |  |  | Richard Vincent | $1,300.00 |
| MC-70021 Easement and Right Of Way Agreement 12/19/83 | Cat Canyon | Security/Thomas/Lloyd | Marianne Friedl | $0.00 |
| MC-70109 Right of Way 3/19/64 | Cat Canyon | Lloyd | C.M.T. LLC | $200.00 |
| Letter dated 8/20/43 | Casmalia | Morganti | Morganti Ranch, a Limited Partnership | $0.00 |
| Agreement dated 12/29/1965 | Casmalia | Casmalia Field-gas Pipeline under railroad | Railroad Management Company, LLC | $908.94 |
| License Agreement dated 9/5/2000 | Santa Maria Valley | Newlove, Folsom, Pinal, Orcut Fee | Orcutt Fee, LLC | $5,000.00 |
| License Agreement 9/24/07 | Belridge | McPhail | Aera Energy, LLC | $0.00 |
|  |  |  | Total | $73,125.60 |

OIL AND GAS LEASES

| Field | Lease/Fee Property Name | Document | Cure Amount |
|---|---|---|---|
| Casmalia | Arrellanes | OIL AND GAS LEASE DATED 8-16-1930 REC 10-17-1930 IN BK 220 PG 421 | $103.46 |
| | | OIL AND GAS LEASE DATED 4-18-1945 REC 10-17-1930 IN BK 222 PG 528 | |
| | | AGREEMENT DATED MARCH 30, 1961 BY AND BETWEEN T.T. BONETTI ET AL AND UNION OIL (COMMINGLING AGREEMENT) | |
| | | QUITCLAIM DEED DATED OCTOBER 27, 1960 FROM UNION OIL TO LESSORS | |
| | | QUITCLAIM DEED FROM RALPH J. TINGLE JR. TO UNION OIL | |
| | | PARTIAL QUITCLAIM DEED DATED JULY 18, 1985 RECORDED | |
| Casmalia | Bonetti | OIL AND GAS LEASE DATED 11-1-1964 REC 5-13-1965 BK 2104 PG 1188 | $85.55 |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 10-28-70 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 8-30-67 | |
| | | AGREEMENT DATED 11-10-1970 (Commingling Agmt) | |
| | | AGREEMENT DATED 10-22-1971 (Stip. of Operations) | |
| | | PARTIAL QUITCLAIM DEED DATED 07-18-1958, rec. (Doc. No. 039771) | |
| Casmalia | Escolle/Lospe | OIL AND GAS LEASE DATED 03-14-46 REC 4-17-1946 BK 688 PG 45 | $0.00 |
| | | QUITCLAIM DEED DATED 10-16-1946 | |
| | | QUITCLAIM DEED DATED 8-3-1966 | |
| | | OIL AND GAS LEASE DATED 1-7-1980 | |
| | | MEMORANDUM OIL AND GAS LEASE & AGREEMENT DATED 1-7-80 REC 5-29-1980 INSTRUMENT 1980-21450 | |
| | | LEASE AND AGREEMENT DATED 9-25-47 REC 10-16-1947 BK 736 PG 290 | |
| | | AMENDMENT TO LEASE DATED 1-31-50 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 11-18-52 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 11-6-54 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 12-15-63 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 1-1-1983 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 7-27-2004 (RECORDED) | |
| | | ASSIGNMENT OF INTERESTS IN OIL, GAS AND MINERAL LEASE DATED 6-11-1999 | |
| | | ESCOLLE LEASE RESPONSE.PDF 2 | |
| Casmalia | Morganti | OIL AND GAS LEASE DATED 8-18-30 REC 10-17-1930 BK 222 PG 538 | $22,176.60 |
| | | PARTIAL QUITCLAIM DEED DATED 1-7-1980 RECORDED | |
| | | 1ST AMEND AND AGREE DTD 5-18-94 | |
| | | 2ND AMEND AND AGREE DTD 05-18-1999 | |
| | | 3RD AMEND AND AGREE 5-18-2004 | |
| | | 4TH AMEND AND AGREE DTD 12-11-2008 | |
| | | 5TH AMEND & AGREE 6-1-2009 'WASTE WATER' | |
| | | 6TH AMENDMENT AND AGREEMENT DTD FEBRUARY 20, 2014 COUNTERPART A | |
| | | 6TH AMENDMENT AND AGREEMENT DTD FEBRUARY 20, 2014 COUNTERPART B | |
| | | 6TH AMENDMENT AND AGREEMENT DTD FEBRUARY 20, 2014 COUNTERPART C | |
| | | 7TH AMENDMENT AND AGREEMENT 5-15-17 | |
| | | QUITCLAIM DEED DATED 1-6-1994 | |
| | | MEMO OF OIL AND GAS LEASE DATED 11-20-95  62 AC PARCEL RECORDED 2-1-96 INSTRUMENT 96-006527 | |
| | | OIL AND GAS LEASE DATED  11-20-95 62 AC PARCEL | |
| | | QUITCLAIM DEED DATED 04-01-1965, REC.  BK 2214 PG 446 | |
| Casmalia | Muscio | MEMORANDUM OF OIL AND GAS LEASE DATED 11-19-1971 REC 2-14-1972 IN BK 2368 PG 581 | $153.99 |
| | | OIL & GAS LEASE DATED 11-19-1971 | |
| | | AMEND TO OIL AND GAS LEASE DATED 11-10-1976 (RECORDED) | |
| | | PARTIAL QUITCLAIM DATED 10-24-1984 (RECORDED) | |
| | | LEASE AMENDMENT DATED 12-30-14 | |
| Casmalia | Righetti | OIL AND GAS LEASE DATED 2-8-1934 REC VOL. 301 PG 59 | $146.51 |
| | | PARTIAL QUITCLAIM DEED DATED 5-6-1958 BK 1526 PG 289 | |
| | | AGREEMENT (to amend lease) DATED 9-30-1959 REC 3-16-1960 BK 1724 PG 284 | |
| Cat Canyon | Goodwin A | OIL AND GAS LEASE DATED 1-1-1962-LONG FROM | $62,813.86 |
| | | OIL AND GAS LEASE DATED 1-1-1962-SHORT FORM REC 6-7-1962 INSTRUMENT 26550 BK 1937 PG 910 | |
| | | RATIFICATION OF LEASE AGREEMENT REC 6-14-1962 INSTRUMENT 79-26748 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 2-17-1966  REC 4-18-66 AT BK 2146 PG 176 | |
| | | AMENDMENT OF LEASE AGREEMENT DATED 1-1-1977 REC 6-14-1979 INSTRUMENT 79-26748 | |
| Cat Canyon | Lloyd | **3-2-1965 LEASE ONE HALF (TO DISTINGUISH THE LEASE ONLY)** | $6,251.63 |
| | | OIL AND GAS LEASE DATED 3-2-1965 REC 3-29-64 IN BK 2097 PG 319 | |
| | | ASSIGNMENT OF OIL AND GAS LEASE DATED JUNE 1, 1970 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 1-20-1970 TO EXTEND TERM FOR OIL AND GAS LEASE DATED 3-2-1965 | |
| | | AMENDATORY AGREEMENT DATED FEB 20, 1989 TO OIL AND GAS LEASE DATED 3-2-1965 (A) | |
| | | AMENDATORY AGREEMENT DATED FEB 20, 1989 TO OIL AND GAS LEASE DATED 3-2-1965 (B) | |
| | | AMENDATORY AGREEMENT DATED 7-27-1989 TO OIL AND GAS LEASE DATED 3-2-1965 | |
| | | AMENDATORY AGREEMENT DATED 4-30-1989 TO OIL AND GAS LEASE DATED 3-2-1965 (532) | |

OIL AND GAS LEASES

| Field | Lease/Fee Property Name | Document | Cure Amount |
|---|---|---|---|
| | | AMENDATORY AGREEMENT DATED 4-30-1989 TO OIL AND GAS LEASE DATED 3-2-1965 (3,195) | |
| | | AMENDATORY AGREEMENT DATED 4-30-1989 TO OIL AND GAS LEASE DATED 3-2-1965 (1,065) | |
| | | COMMINGLING OF LEASES: AMENDATORY AGREEMENT DATED 9-14-1987 | |
| | | COMMINGLING OF LEASES: AMENDMENT OF OIL AND GAS LEASE DATED 9-14-87 RECORDED MARCH 18, 1988 | |
| | | 4-21-1970 LEASE ONE HALF (CMT-TO DISTINGUISH THE LEASE ONLY) | |
| | | OIL AND GAS LEASE DATED 4-21-1970 REC 6-25-1970 INSTRUMENT 16420 BK 2312 PAGE 761 | |
| | | OPERATING PROVISIONS 4-21-1970 LEASE | |
| | | COMMINGLING OF LEASES: AMENDMENT TO OIL AND GAS LEASE DATED 9-14-1987 TO OIL AND GAS LEASES DATED 4-21-1970 | |
| | | 10 FT EASEMENT REC 5-9-2008 INSTRUMENT NO. 2008-27780 | |
| Cat Canyon | Los Flores | OIL AND GAS LEASE DATED 12-8-1947 (160 NET ACRES) BK 762 PG 413 | $0.00 |
| | | OIL AND GAS LEASE 7-28-1948 (30 ACRES) BK 810 PG 167 | |
| | | AMENDMENT OF OIL AND GAS LEASE DATED 6-3-1982 INSTRUMENT 82-26612 | |
| | | AGREEMENT DATED 4-30-1986 BETWEEN CHEVRON AND MOBIL OIL | |
| Cat Canyon | Palmer Stendel | OIL AND GAS LEASE MARCH 23, 1905 | $4,793.48 |
| | | OIL AND GAS AGREEMENT DATED APRIL 1, 1948 REC 5-15-1952 IN BK 1155 PG 263 | |
| | | ASSIGNMENT OF OIL AND GAS LEASE DATED 11-30-1953 PALMER TO UNION HALF INTEREST | |
| | | GRANT DEED DTD 3-30-1949 (SKIM POND) | |
| | | QUITCLAIM DTD MARCH 30, 1950 | |
| | | DEED DTD 2-18-1964 REC BK 2079 PG 1477 TWITCHELL TO UNION | |
| | | DEED DTD 2-24-1964 REC BK 2079 PG 1478 TWITCHELL TO UNION | |
| | | ROYALTY AGREEMENT DTD 2-18-1964 BY AND BETWEEN UNION OIL AND LUCILLE ROSENTHAL | |
| | | ROYALTY AGREEMENT DTD 3-10-1964 | |
| | | GRANT OF EASEMENT DATED 06-04-1993 | |
| Cat Canyon | Thomas | OIL AND GAS LEASE DATED 10-1-1970 | $6,197.87 |
| | | MEMORANDUM OF OIL AND GAS LEASE PART I REC 10-26-1970 INSTRUMENT 29337 BK 2325 PG 209 | |
| | | MEMORANDUM OF OIL AND GAS LEASE PART II REC 10-27-1970 INTRUMENT 29599 BK 2325 PG 602-604 | |
| | | AMENDATORY AGREEMENT 12-17-88 | |
| | | AMENDATORY AGREEMENT 1-6-89 | |
| | | AMENDATORY AGREEMENT 1-28-94 | |
| | | AMENDATORY AGREEMENT 1-28-94 PART II | |
| | | AMENDATORY AGREEMENT 6-18-96 | |
| | | AMENDATORY AGREEMENT 2-1-2004 (SHUT IN ROYALTY) | |
| | | AMENDATORY AGREEMENT 2-1-2004 (THOMAS LAW) | |
| Belridge | Belridge O'Donnell | O'DONNELL-INDENTURE OF LEASE DATED 10-2-1915 REC 2-18-1977 IN BK 29 PG 208 | $151,300.29 |
| Belridge | Gibson | INDENTURE OF LEASED DATED 12-14-1915 RECORDED 4-28-1916 AT BK 29 PG 17 | $1,171.69 |
| | | AMEND TO OIL AND GAS LEASE DATED 9-29-1971 | |
| Santa Maria Valley | Adam B | OIL AND GAS LEASE DATED 07-17-1970 REC 10-13-1970 INSTRUMENT 28028 IN BK 2323 PG 1238 | $55.54 |
| | | AMEND TO OIL AND GAS LEASE DTD JULY 1, 1976 RECORDED | |
| | | AMENDMENT TO OIL AND GAS LEASE DTD JULY 13, 1973 RECORDED | |
| Santa Maria Valley | Bettiga | MEMORANDUM OF OIL AND GAS LEASE DATED 5-23-1963 REC 3-12-64 IN BK 2039 PG 1391 | $0.00 |
| | | OIL & GAS LEASE DATED 12-26-1933 | |
| | | OIL & GAS LEASE DATED 5-23-1963 | |
| | | AMENDMENT OF LEASE DATED 4-20-1966 REC 5-4-1966  BK 2150 PG 622 | |
| | | AMENDMENT OF LEASE DATED 5-23-1969 REC 6-19-1969  BK 2275 PG 61 | |
| | | AMENDMENT OF LEASE DATED 4-26-1972 REC 6-9-72  IN BK 2405 PG 316 | |
| | | AMENDMENT OF LEASE DATED 4-15-1975 REC 5-27-75  IN BK 2567 PG 254 | |
| | | OIL AND GAS LEASE DATED 12-7-1995 REC 1996-028845 | |
| Santa Maria Valley | Bradley Land Co Tract 40161 | OIL AND GAS LEASE DATED 12-1-1965 (40161) LONG FORM | $0.00 |
| | | MEMORANDUM OF OIL AND GAS LEASE DATED 12-1-1965 (40161) REC 9-14-1967 IN BK 2204 PG 922 | |
| | | OIL AND GAS LEASE DATED 1-16-1969 (40161) | |
| | | OIL AND GAS LEASE AMENDMENT AND CONSOLIDATION AGREEMENT DATED 11-1-1972 (40159, 40161) REC. 11-22-1972-45991 | |
| | | CONSOLIDATION AGREEMENT DATED 10-1-1975 | |
| | | AMENDATORY AGREEMENT DATED 7-14-1977 | |
| | Bradley Consolidated Tract 40109 | OIL AND GAS LEASE DATED 2-17-1972 (LONG FORM) (40109) REC 3-13-1972 BK 2390 PG 581 | $0.00 |
| | | MEMORANDUM OF OIL AND GAS LEASE DATED 2-17-1972 (40109) REC 3-13-1972-8424 | |
| | | LEASE AMENDMENT AND CONSOLIDATION AGREEMENT DATED 7-26-1973 | |
| | | CONSOLIDATION AGREEMENT DATED 10-1-1975 | |
| | | AMENDATORY AGREEMENT DATED 7-14-1977 | |
| | | PARTIAL SURRENDER OF LEASE DATED 4-13-1979 | |
| | | OIL AND GAS AMENDMENT DATED 8-5-1986 (UNRECORDED) (40109) | |
| | Bradley Consolidated Tract 40159 | OIL AND GAS LEASE DATED 1-16-1969 | $0.00 |

1615779_1.XLSX

OIL AND GAS LEASES

| Field | Lease/Fee Property Name | Document | Cure Amount |
|---|---|---|---|
| | | MEMORANDUM OF OIL AND GAS LEASE DATED 1-16-1969 (40159) 3-27-1969 INSTRUMENT 8329 BK 2266 PG 307 | |
| | | AMENDMENT AND CONSOLIDATION AGREEMENT DATED 11-22-1972 | |
| | | CONSOLIDATION AGREEMENT DATED 10-1-1975 | |
| | | AMENDATORY AGREEMENT DATED 7-14-1977 | |
| | | PARTIAL SURRENDER OF LEASE DATED 5-8-1979 | |
| | | PARTIAL SURRENDER OF LEAES DATED 3-6-1982 | |
| | | PARTIAL SURRENDER OF LEASE DATED 10-25-1982 | |
| | Bradley Consolidated Tract 40161 | OIL AND GAS LEASE DATED 1-16-1969 | $0.00 |
| | | OIL AND GAS LEASE DATED 12-1-1965 BK 2204 PG 922 | |
| | | AMENDMENT AND CONSOLIDATION AGREEMENT DATED 11-22-1972 | |
| | | CONSOLIDATION AGREEMENT DATED 10-1-1975 | |
| Santa Maria Valley | Bradley Lands Unit | MEMO OIL AND GAS LEASE DATED 10-3-1956 (40014) INSTRUMENT 21404      BK 1411 PG 162 | $23,889.68 |
| | | OIL AND GAS LEASE DATED 10-3-1956 (40014) | |
| | | QUITCLAIM DEED DATED 6-15-1960 | |
| | | MEMO OIL AND GAS LEASE DATED 4-4-1956 (40015) REC 4-24-1956 BK 1375 PG 210 | |
| | | OIL AND GAS LEASE DATED 4-4-1956 (40015) | |
| | | OIL AND GAS LEASE DATED 6-12-1957 (40016) | |
| | | MEMO OIL AND GAS LEASE DATED 6-12-1957 (40016) REC 9-3-1957 INSTRUMETN 17625 BK 1469 PG 489 | |
| Santa Maria Valley | Bradley- Parcel E | OIL, GAS AND MINERAL LEASE DATED 7-1-1970 (40001) REC. 8/13/1970 BK 2317 PG 975 | $0.00 |
| | | LEASE AMENDMENT AND CONSOLIDATION AGREEMENT 7-26-1973 BK 2473 PG 1102 | |
| | | LEASE AMENDMENT AND CONSOLIDATION AGREEMENT DATED 7-5-1973 | |
| | | AMENDATORY AGREEMENT 7-14-1977 | |
| | | PARTIAL SURRENDER OF LEASE DATED 4-13-1979 | |
| Santa Maria Valley | Texaco Bradley Lands | OIL & GAS LEASE DTD 3-1-1967 (246703) | $0.00 |
| | | MEMORANDUM OF OIL AND GAS LEASE DATED 3/1/1967 (246703) REC 5-31-1967 INSTRUMENT 14364 BK 2192 PG 12 | |
| | | MODIFICATION AGREEMENT DATED 8-5-1970 (246703) REC 9-30-1970 INSTRUMENT 26546 BK 2322 PG 571 | |
| | | MODIFICATION AGREEMENT DATED 1-11-1973 (246703) REC 1-23-1973-INSTRUMENT 1973-2783 BK 2443 PG 1188 | |
| | | PARTIAL SURRENDER REC 5-25-1979 AS INSTRUMENT 1979-23640 | |
| | | AMENDMENT TO OIL AND GAS LEASE - SHUT-IN ROYALTY AGREEMENT DATED 6-7-1989 (70209) (24603) | |
| Santa Maria Valley | Bradley Land Co. MC-70206 | OIL & GAS LEASE DTD 5-2-1979 (MC-70206) REC 3-31-1980 INSTRUMENT 80-13008 | $0.00 |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 5-2-1982 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 12-14-1987 | |
| | | AMENDATORY AGREEMENT DATED 8-11-1989 (MC-70206) | |
| | | OIL & GAS LEASE DTD 8-1-1993 (CA-70206) REC 12-9-93 INSTRUMENT 93-098119 | |
| Santa Maria Valley | Kemp | OIL AND GAS LEASE DATED 7-19-1939 (JANE KEMP) REC BK 498 PG 136 | $5,063.07 |
| | | LEASE AGREEMENT DATED 1-6-1943 REC BK 559 PG 224 | |
| | | OIL AND GAS SUBLEASE DATED 6-3-52 (SADIE WEST) REC BK 1078 PG 71 | |
| | | AMENDMENT AND AGREEMENT TO SADIE WEST 11-28-1955 | |
| | | OIL AND GAS LEAE DATED 6-21-1965 (MARKLING AND BEACH) REC 8-19-65 BK 2117 PG 87 | |
| | | ASSIGNMENT AND AGREEMENT (JANE KEMP) 1-9-1969 | |
| | | ASSIGNMENT AND AGREEMENT (MARKLING) 1-9-1969 | |
| | | OIL AND GAS LEASE DATED 2-15-1973 REC 3-28-1973 BK 2453 PG 1474 | |
| | | COMMINGLING AGREEMENT 10-17-1973 | |
| | | LEASE AMENDMENT DATED 1-1-1977 GILLILAND | |
| | | LEASE AMENDMENT DATED 1-1-1977 HUNTER | |
| | | LEASE AMENDMENT DATED 1-1-1977 MARKLING, BEACH | |
| | | LEASE AMENDMENT DATED 1-1-1977 MITCHELL | |
| | | LEASE AMENDMENT TO SADIE WEST 1939 LEASE DATED 2-9-1979 | |
| | | AMENDMENT OF OIL AND GAS LEASE DATED 8-5-86 (IT AMENDED THE 7-19-1939 LEASE) | |
| Santa Maria Valley | Kemp A | OIL AND GAS LEASE DATED 2-15-1973 (PERREIRA) REC 3-28-1973 BK 2453 PG 1474 | $0.00 |
| | | OIL AND GAS LEASE DATED 2-15-1973 (MARKLING AND BEACH) REC 3-28-1973 BK 2453 PG 1476 | |
| | | ASSIGNMENT OF OIL AND GAS LEASE 8-14-1973 | |
| | | COMMINGLING AGREEMENT 10-17-1973 | |
| | | ASSIGNMENT OF OIL AND GAS LEASE 3-25-1986 | |
| | | AMEND DTD 2-13-1990 OF O& G LSE DTD 2-15-1973 | |
| | | AMEND DTD 8-5-1986 OF O & G LSE DTD 2-15-1973 | |
| Santa Maria Valley | Laine | OIL AND GAS LEASE AGREE DTD 12-17-79 | $0.00 |
| | | MEMO OF LEASE REC 3-11-1980 INSTRUMENT 80-9932 | |
| Santa Maria Valley | Moretti | OIL & GAS LEASE DATED 11-16-1943 | $0.00 |
| | | MEMO OF OIL AND GAS LEASE DATED 9-1-1976 REC 4-12-77 INSTRUMENT 77-16811 | |
| | | OIL AND GAS LEASE DATED 9-1-1976 | |

OIL AND GAS LEASES

| Field | Lease/Fee Property Name | Document | Cure Amount |
|---|---|---|---|
| | | AMENDMENT OF OIL AND GAS LEASE | |
| | | PARTIAL QUITLCLAIM DEED | |
| | | MEMORANDUM OF AMENDMENT TO LEASE | |
| | | | |
| Santa Maria Valley | Payne | **1968 LEASE-BARDIN** | $0.00 |
| | | OIL AND GAS LEASE DTD AUG 12, 1968  RECORDED 12-13-68 as Instrument No. 38617 in Bk 2255, Pg 439 | |
| | | EXT OF O & G LEASE DTD JUNE 21, 1973 | |
| | | AMENDATORY AGREE DTD APR 2, 1989 | |
| | | AMENDATORY AGREE DTD APR 19, 1989 | |
| | | | |
| | | **1968 LEASE-GILLESPIE** | |
| | | OIL AND GAS LEASE DTD AUG 12, 1968  RECORDED 12-13-68 as INSTRUMENT 38621 in Bk 2255, Pg 463 | |
| | | EXT OF OIL AND GAS LEASE DTD MAY 11, 1973 | |
| | | AMENDATORY AGREE DTD MARCH 24, 1989 | |
| | | | |
| | | **1968 LEASE-NEWTON** | |
| | | OIL AND GAS LEASE DTD AUG 12, 1968  RECORDED 12-20-68 as INSTRUMENT 39331 in Bk 2256, Pg 112 | |
| | | ASSIGNMENT AND AGREEMENT 7-20-1972 REC BK 2416 PG 911 | |
| | | | |
| | | **1970 LEASE-PAYNE** | |
| | | OIL AND GAS LEASE DTD JAN 2, 1970-LONG FORM | |
| | | O & G LEASE JAN 2, 1970 (SHORT FORM) REC BK 2298 PG 308 | |
| | | EXT OF OIL AND GAS LEASE DTD 11- 14-74 1974 REC BK 2545 PG 1406 | |
| | | AMENDATORY AGREE DTD APRIL 14, 1989 | |
| Santa Maria Valley | R.B. McFaddin | OIL AND GAS LEASE DTD JUNE 8, 1964 | $40.30 |
| | | MEMO OF OIL AND GAS LEASE DTD JUNE 8, 1964 RECORDED 9-30-1964 INSTRUMENT 41819 BK 2072 PG 226 | |
| | | AMENDMENT TO OIL AND GAS LEASE DTD MAY 22, 1974 COUNTERPART A | |
| | | AMENDMENT TO OIL AND GAS LEASE DTD MAY 22, 1974 COUNTERPART B | |
| | | MEMO TO AMENDMENT TO OIL AND GAS LEASE DTD MAY 22, 1970 | |
| | | OPERATING AGREEMENT DTD JUNE 1, 1977 | |
| | | | |
| Zaca | Brown | OIL AND GAS LEASE DATED 4-17-1942 | $35,571.46 |
| | | ALICE SEDGWICK TO GETTY OIL -OIL AND GAS LEASE 9-17-71 RECORDED 2371 PAGE 1011 | |
| | | ALICE SEDGWICK TO GETTY OIL -OIL AND GAS LEASE 9-23-71 RECORDED 2371 PAGE 1014 | |
| | | OIL AND GAS LEASE DATED 7-7-1976 BY LEONARD K. FIRESTORE TO GETTY OIL-RECORDED 2623 PAGE 950 | |
| | | AMENDMENT AND AGREEMENT DATED 7-10-1976 RECORDED INSTRUMENT  79-340025 | |
| | | DEAN BROWN ET TUX TO GETTY OIL 7-14-1976 BK 2623 PG 1828 | |
| | | DEAN BROWN ET TUX TO GETTY OIL 7-14-1976 BK 2623 PG 1825 | |
| | | AMENDMENT OF LEASE DATED 9-15-1976 | |
| | | MODIFICATION OF LEASE DATED 6-24-1977 | |
| | | WILIAM J. BEDFORD ET AL. TO GETTY OIL 6-25-79 INSTUMENT 1979-51489 | |
| | | AMENDMENT TO OIL AND GAS LEASE DATED 4-5-1982 INSTRUMENT 82-13663 | |
| | | OIL, GAS AND MINERAL LEASE DATED 5-1-1997 | |
| | | DEAN AND KATHERIN BROWN TRUSTEES OIL AND GAS LEASE DATED 4-30-1997 AS INSTRUMENT NO. 1997-036109 | |
| | | EXTENSION TO OIL AND GAS MINERAL LEASE DATED 3-22-2000 REC 7-11-2000-41978 | |
| | | | |
| Zaca | Carranza | INDENTURE OF LEASE DATED 1-1-1951 RECORDED JULY 2, 1951 BK 999 PG 407 | $40,708.05 |
| | | PARTIAL QC OF OIL AND GAS LEASE - DATED JANUARY 13, 1955 CARRANZA DOWN TO 40 AC | |
| | | | |
| Zaca | Chamberlin | THEODORE CHAMBERLIN JR. TO TIDEWATER DTD 4-7-1942 BK 545 PG 917 | $13,594.99 |
| | | AMENDMENT TO OIL AND GAS LEASE WITH GETTY OIL DATED  7-1-1976, RECORDED 9-15-76 AT BOOK 2626 PAGE 2446 | |
| | | MODIFICATION OF OIL AND GAS LEASE  DATED 6-24-1977 RECORDED AS INSTRUMENT NUMBER 1977-032024 | |
| | | | |
| Zaca | Chamberlin B | OIL AND GAS LEASE DATED 4-17-1942 BK 545 PG 197 | $18,985.15 |
| | | AMENDMENT TO OIL AND GAS LEASE WITH GETTY OIL DATED  7-1-1976, RECORDED 9-15-76 AT BOOK 2626 PAGE 2446 | |
| | | MODIFICATION OF OIL AND GAS LEASE DATED 6-24-1977 RECORDED AS INSTRUMENT NUMBER 1977-032024 | |
| | | | |
| Zaca | Davis | HAROLD H. DAVIS ET TUX TO TIDEWATER ASSOCIATED OIL 1-11-1939 RCD BK 449 PG 451 | $56,685.54 |
| | | MODIFICATION OF OIL AND GAS LEASE DATED 11-18-1942 RECORDED 12-11-1942 AT BK 561 PAGE 404 | |
| | | OIL AND GAS LEASE  9-17-71 RECORDED 11-10-1971 IN BK 2371 AND PAGE 1011 | |
| | | OIL AND GAS LEASE 9-23-71 | |
| | | AMENDMENT AND AGREEMENT 10-22-1979 RECORDED 80-24589 | |
| | | DEAN BROWN OIL, GAS AND MINERAL LEASE DATED 5-31-1989 | |
| | | DEAN AND KATHERIN BROWN TRUSTEES OIL AND GAS LEASE DATED APRIL 30, 1997 AS INSTRUMENT NO. 1997-036109 | |

1615779_1.XLSX

OIL AND GAS LEASES

| Field | Lease/Fee Property Name | Document | Cure Amount |
|---|---|---|---|
| | | ALICE SEDGWICK WOHL ET. AL TO VINTAGE PETROLEUM, OIL AND GAS LEASE 5-1-97 INSTRUMENT NO. 1997-036108 | |
| | | ALICE SEDGWICK WOHL ET AL TO VINTAGE PETROLEUM EXTENSION AND AMENDMENT TO OIL, GAS AND MINERAL LEASE RECORDED 7-11-2000, INSTRUMENT NO 2000-041979 | |
| | | DEAN AND KATHERINE BROWN TRUSTEES EXTENSION AND AMENDMENT TO OIL, GAS AND MINERAL LEASE DATED 3-22-2000 AS INSTRUMENT NO. 2000-0041978 | |
| | | AMENDMENT OF OIL, GAS AND MINERAL LEASE DATED 7-1-80 RECORDED AS DOCUMENT NO. 82-13663 | |
| Zaca | Davis B | ALICE SEDWICK ET ALL TO GETTY OIL  9-17-71 RECORDED 2371 PAGE 1011 | $20,781.99 |
| | | ALICE SEDWICK ET ALL TO GETTY OIL  9-23-71 RECORDED 2371 PAGE 1014 | |
| | | LENARD K. FIRESTORE TO GETTY OIL-JULY 7, 1976 RECORDED 2623 PAGE 950 | |
| | | DEAN BROWN ET TUX TO GETTY OIL 7-14-1976 BK 2623 PG 1828 | |
| | | DEAN BROWN ET TUX TO GETTY OIL 7-14-1976 BK 2623 PG 1825 | |
| Zaca | Davis C | ALICE SEDWICK ET ALL TO GETTY OIL  9-17-71 RECORDED 2371 PAGE 1011 | $33,152.35 |
| | | ALICE SEDWICK ET ALL TO GETTY OIL  9-23-71 RECORDED 2371 PAGE 1014 | |
| | | LENARD K. FIRESTORE TO GETTY OIL-JULY 7, 1976 RECORDED 2623 PAGE 950 | |
| Zaca | Quati | OIL AND GAS LEASE BY AND BETWEEN HAROLD H. DAVIS TO TIDEWATER OIL DATED 1/11/1939 RECORDED AT BOOK 449 AND PAGE 451 IN THE OFFICIAL RECORDS OF SANTA BARBARA COUNTY. | $5.93 |
| | | PARTIALQUITCLAIM DEED AND SURRENDER DATED 1-20-1955 BOOK 1295 PAGE 275 | |
| | |  ADDENDUM TO OIL AND GAS LEASE, DATED 7/6/1983, RECORDED AS INSTRUMENT # 1983-034552 BY AND BETWEEN RAY STARK AS LANDLORD AND GETTY OIL CO. AS TENANT.  WHILE THIS IS TITLED AN ADDENDUM TO OIL AND GAS LEASE, IT IS ACTUALLY A SURFACE USE AGREEMENT BETWEEN THE SURFACE OWNER AND THE OIL COMPANY | |
| Cat Canyon | Bell | Quitclaim Deed from Saba to  Greka SMV dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-050821 | $0.00 |
| | | Corrective Quitclaim Deed to correct legal description of that certain Quitclaim Deed dated June 18, 1999 recorded June 21, 1999 as Instrument No. 99-93801 | |
| | | Coporation Grant Deed  dated February 27, 2002 from Greka SMV to Greka AM | |
| Cat Canyon | Blochman | Quitclaim Deed from Saba to  Greka SMV dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-050821 | $0.00 |
| | | Corrective Quitclaim Deed to correct legal description of that certain Quitclaim Deed dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-93801 | |
| | | Coporation Grant Deed  dated February 27, 2002 from Greka SMV to Greka AM | |
| Cat Canyon | Palmer Stendel | Quitclaim Deed from Saba to  Greka SMV dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-050821 | $0.00 |
| | | Corrective Quitclaim Deed to correct legal description of that certain Quitclaim Deed dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-93801 | |
| | | Coporation Grant Deed  dated February 27, 2002 from Greka SMV to Greka AM | |
| Cat Canyon | Security | Corporation Deed from Shell Western E&P, Inc to Vintage Oil. | $0.00 |
| | | Mineral Deed from Vintage Petroleum California to Greka SMV, INC. INSTRUMENT 2002-67769 | |
| | | COVENANT RUNNING WITH THE LAND INSTRUMENT NO. 2002-67769 | |
| Cat Canyon | Los Flores | Vintage Petroleum California to Greka SMV, Inc -Assignment of Royalty interest RECORDED JULY 15, 2002 AS INSTRUMENT 2002-0067772 | $0.00 |
| Santa Maria Valley | Jim Hopkins | Quitclaim Deed from Saba to  Greka SMV dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-050821 | $0.00 |
| | | Corrective Quitclaim Deed to correct legal description of that certain Quitclaim Deed dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-050822 | |
| | | Right of Way Agreement dated 11-2-2007 REC 1-9-2008 Instrument No. 2008-1391 | |
| Santa Maria Valley | Union Sugar | Mineral Deed dated May 15, 1974, by and between Santa Maria Valley Associates and Union Oil Company of California recorded May 15, 1974 in BK 2515 Page 1349 | $0.00 |
| | | Amendment of Mineral Deed dated November 15, 1974, by and between Santa Maria Valley Associates and Union Oil Company of California recorded February 6, 1975 as Intrument 3744 in Book 2551 page 743 | |
| | | Quitclaim Deed from Saba to  Greka SMV dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-050821 | |
| | | Corrective Quitclaim Deed to correct legal description of that certain Quitclaim Deed dated June 18, 1999 recorded June 21,1999 as Instrument No. 99-93801 | |
| | | Deed dated May 26, 200 Instrument No. 2000-31967 | |
| Santa Maria Valley | Kemp | Mineral Deed  DTD 11-4-1992 from Paul D. Markling and Phyllis Beach to Vintage REC 1/26/1993 INSTRUMENT 1993-6242 | $0.00 |
| | | Mineral Deed from Vintage to Greka SMV, Inc. for 50% interest  RECORDED AS INSTRUMENT NO. 2002-0067771) | |
| Belridge | McPhail and Mc Phail 37 H | AGREEMENT DATED 5-1-63 RECORDEDv4-25-63 IN BK 3600 PG 302 | $2,068.05 |
| | | GRANT DEED DATED 4-9-64 RECORDED BK 3720 PG 78 | |

OIL AND GAS LEASES

| Field | Lease/Fee Property Name | Document | Cure Amount |
|---|---|---|---|
| | | QUITCLAIM MINERAL DEED DATED 3-24-1992  RECORDED 9-15-1993 AS INSTRUMENT NO. 133484 BK 6908 PAGE 1931 | |
| | | MINERAL DEED DATED 6-30-1999 RECORDED 7-12-1999 INSTRUMENT 0199099131 | |
| | | QUITCLAIM DEED DATED 9-18-2001 RECORDED 9-24-2001 INSTRUMENT 0201139882 | |
| | | QUITCLAIM DEED DATED 10-5-2001 RECORDED 10-8-2001 INSTRUMENT NO. 0201150092 | |
| | | CORRECTION CORPORATION QUITCLAIM DEED RECORDED 8-24-200 INSTRUMENT NO. 0205229743 | |
| | | **Total** | $505,797.03 |

CONTRACTS

NONE

**Exhibit 1**