1  O'MELVENY & MYERS LLP
   Evan M. Jones (S.B. # 115827)
2  Brian M. Metcalf (S.B. # 205809)
   400 South Hope Street, 18th Floor
3  Los Angeles, CA  90071-2899
   Telephone:  (213) 430-6000
4  Facsimile:  (213) 430-6407
   E-mail:  ejones@omm.com
5  E-mail:  bmetcalf@omm.com

6  Samantha M. Indelicato (N.Y. SBN:  5598263)
   (appearing *pro hac vice*)
7  Seven Times Square
   New York, NY  10036
8  Telephone:  (212) 326-2000
   Facsimile:  (212) 326-2061
9  E-mail:  sindelicato@omm.com

10 *Attorneys for UBS AG, London Branch
   and UBS AG, Stamford Branch*

**UNITED STATES BANKRUPTCY COURT FOR**

**THE CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 9:19-bk-11573-MB |
| HVI CAT CANYON INC., | Chapter 11 |
| Debtor. | **UBS AG, LONDON BRANCH AND UBS AG, STAMFORD BRANCH'S REPLY IN SUPPORT OF THE TRUSTEE'S MOTION FOR ORDER CONVERTING CHAPTER 11 CASE TO CHAPTER 7** |
| | Hearing<br>Date:   December 11, 2020<br>Time:   2:00 p.m.<br>Place:  Courtroom 201<br>            1415 State Street<br>            Santa Barbara, California  93101 |
| | **The hearing will be conducted remotely, using ZoomGov video and audio.** |

OMM_US:79289372.2

Case 9:19-bk-11573-MB    Doc 1502    Filed 12/04/20    Entered 12/04/20 16:19:14    Desc
Main Document    Page 2 of 6

UBS AG, London Branch and UBS AG, Stamford Branch (together, "**UBS**") submit this reply in support of the Trustee's motion to convert to Chapter 7 (the "**Motion to Convert**")[1] and in reply to the sole objection lodged by insider GLR, LLC ("**GLR**").[2] Under Section 1112(b) of the Bankruptcy Code, courts shall convert a Chapter 11 case to Chapter 7 for cause and caselaw makes clear cause includes the best interests of creditors and other stakeholders, inability to confirm a plan of reorganization and economy. The Trustee has shown that each is present here and that conversion is appropriate. GLR suggests without authority that all issues in a case must be resolved before conversion, but this is not the case. Indeed, were this true there would be no reason to ever convert as administration of the estate would always be complete before conversion. The Motion to Convert should be granted.

**I.    ARGUMENT**

Section 1112(b) of the Bankruptcy Code provides that "after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 . . . for cause." Among other things, "cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "inability to effectuate substantial consummation of a confirmed plan."[3] Where cause exists, courts will generally honor the request of a party in interest to convert the case unless such action is not in the best interests of all stakeholders.[4]

The Trustee has demonstrated that there is cause for conversion. The Trustee has completed the sales of substantially all of the Debtor's tangible assets on or around October 28, 2020, leaving minimal tangible assets with no value, and claims against insiders including GLR, whose prosecution has been provided for following conversion. Additionally, as of November 13, 2020, the Trustee abandoned most of the remaining real and personal property assets. As a result, the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Motion to Convert.

[2] *See Limited Objection to Motion to Convert Case to Chapter 7* [Docket No. 1493] (the "**Objection**").

[3] 11 U.S.C. § 1112(b)(4)(A), (M); *see, e.g.*, *In re Johnston*, 149 B.R. 158, 161–162 (B.A.P. 9th Cir. 1992) (granting conversion where the debtor lacked ability to effectuate a plan); *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 382 (Bankr. C.D. Cal. 2015) (finding cause to convert where there was continuing loss to or diminution of the estate).

[4] *In re Consol. Pioneer Mortg, Entities*, 248 B.R. 368, 375 (9th Cir. 2001) (noting that courts have broad discretion in determining what constitutes cause for conversion).

2

OMM_US:79289372.2

Trustee does not have the revenue or personnel necessary to keep the estate operating.[5] Without its oil and gas operations or any revenue, the estate cannot effectuate a plan or take any other steps towards rehabilitation. Reorganization for this estate is simply not possible at this point.

Moreover, it is no longer in the best interests of creditors and the estate to continue to administer the estate under Chapter 11. As noted in the Motion to Convert, the Trustee's future efforts will consist of investigation and litigation of avoidance claims and other claims for relief and it is likely more cost-effective to prosecute the litigation claims in a Chapter 7 case. Accordingly, converting the case at this time is in the best interests of creditors and the estate. Conversion avoids the significant costs attendant to Chapter 11, including administrative compliance and US Trustee fees.

Notably, most parties realize and agree that this is the appropriate and necessary next step for the estate. Only one party filed an objection to the Motion to Convert—GLR. GLR filed its Objection to raise two issues with conversion. GLR suggests that its issues need to be resolved prior to conversion. GLR, however, misapprehends the standard for conversion under Section 1112(b). The standard for conversion does not require the Trustee to complete certain actions prior to conversion or resolve all ongoing situations. The existence of open issues with a third party is not a basis to delay or deny the Motion to Convert as long as conversion is still in the estate's best interest. Indeed, were that the rule, no case would ever be converted as once all issues are resolved the case could simply be dismissed.

Moreover, neither of the issues raised by GLR is an impediment to conversion. The issues raised by GLR are more appropriately addressed through other avenues—either directly with the Trustee and his advisors or through GLR's own motion for the requested relief.

*First*, GLR claims that the escrow account in which the Trustee is holding postpetition rent payable to GLR is an ongoing situation that "makes conversion inappropriate until it is addressed." As Trustee's counsel has indicated on the record several times, the Trustee is maintaining this

---

[5] *In re Johnston*, 149 B.R. 158,162 (B.A.P. 9th Cir. 1992) (finding cause to convert where the debtor lacked sufficient income to continue operations); *see also In re FRGR Managing Member LLC*, 419 B.R. 576, 584 (Bankr. S.D.N.Y. 2009) (finding cause to convert where the debtor was not engaged in any ongoing business and was unable to otherwise fund a plan).

3

escrow account pursuant to the initial cash collateral order entered by the Bankruptcy Court for the Southern District of New York when the case was first filed. The escrow will remain a part of the estate until the Trustee and GLR resolve any dispute over the rent payments. This Court has already instructed GLR that its remedy is not through objection to financing, payment of administrative claims or now interfering with conversion. If GLR seeks relief, it must do so by appropriate motion or adversary proceeding and not through ill-based objections to actions in the case. Such remedies can certainly be sought against a Chapter 7 estate.

*Second,* GLR argues that the Trustee is leaving behind transformers containing hazardous materials stored on GLR's premises. This is similarly not a basis to delay conversion of this case. If the transformers are property of the estate, and have not been abandoned already, they become an asset of the Chapter 7 estate and will be administered as such. It must be noted that GLR's evidence leaves significant questions on each of these issues. First, it is not clear that these transformers are, in fact, the Debtor's property. The declaration of Ms. Whalen, who was an officer of and counsel to the Debtor, makes no such claim. Nor were the transformers at issue scheduled by the Debtor -- a process in which, UBS understands, Ms. Whalen to have been substantially involved.[6] Even if the transformers are considered property of the estate, the Trustee abandoned nearly all of the estate's remaining assets pursuant to the Court's order granting the Trustee's motion to abandon that was entered on November 13, 2020.[7] The Abandonment Motion indicated the Trustee sought authority to abandon "property . . . that remains unsold after the Trustee's sale of all or a portion of the Debtor's assets," which would include any interest in the transformers.[8] The Abandonment Order only excluded a small subset of the assets of the estate, which did not include the property at issue in the GLR Objection.[9] Specifically, the Abandonment Order grants

---

[6] *See Schedules A/B: Assets – Real and Personal Property* [Docket No. 171].

[7] *See Order Granting Motion Authorizing Trustee to Abandon Unsold Leases and Executory Contracts* [Docket No. 1447] (the "**Abandonment Order**").

[8] *See Trustee's Notice of Motion and Motion for an Order Authorizing the Abandonment of any Unsold Assets and Rejection of Unexpired Leases and/or Executory Contracts; Memorandum of Points and Authorities; Declaration of Michael A. McConnell and Request for Judicial Notice in Support Thereof* [Docket No. 1288] (the "**Abandonment Motion**").

[9] *See* Abandonment Order, ¶ 4; *see also Notice of Trustee's Abandonment* [Docket No. 1452].

the Trustee authority to abandon "all operating real and personal property assets of the estate except for the (1) Adam, (2) Bettiga, (3) Laine, (4) Moretti, and (5) RB McFaddin leases . . . [and] all orphan wells." Accordingly, if the transformers were property of the estate, such property would have been abandoned by the Trustee pursuant to the Abandonment Order. Ms. Whalen's declaration apparently suggests a parol meaning contrary to the clear language of the Abandonment Order: that somehow because the Trustee allegedly knew of GLR's complaint about the transformers -- which was never presented to the Court -- that the Order doesn't address them. There is no logic to this argument, but it can certainly be presented in a Chapter 7 case if GLR wants to pursue this quixotic quest. Finally, as the Court is well aware from briefing on the Abandonment Motion, the Chapter 7 estate can abandon property so long as no imminent and identifiable risk to public safety is shown. If the insiders wish to show that transformers apparently sitting physically, if not legally, abandoned on property for years -- property that was quitclaimed to the insiders shortly before this case was filed -- suddenly poses an imminent risk, the courthouse will be open during a Chapter 7 case. Conversion need not be delayed.

## II.    CONCLUSION

Cause exists to convert this case to Chapter 7. Not only has the Trustee shown substantial loss to and diminution in value of the estate but also he has shown the inability to consummate a plan. The estate has no material physical assets and no operations beyond pursuing claims against insiders, and unfortunately there is no possibility of rehabilitation. The Trustee's Motion to Convert should be granted and the case converted to Chapter 7.

5

OMM_US:79289372.2

Dated:   December 4, 2020

> EVAN M. JONES
> BRIAN M. METCALF
> SAMANTHA INDELICATO
> O'MELVENY & MYERS LLP
>
> By:   *Evan M. Jones*
>         Evan M. Jones
>
> *Attorneys for UBS AG, London Branch
> and UBS AG, Stamford Branch*

OMM_US:79289372.2