ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Michael A. McConnell,
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>HVI CAT CANYON, INC.,<br><br>        Debtor. | Case No. 9:19-bk-11573-MB<br><br>Chapter 11<br><br>**NOTICE OF SIXTEENTH AMENDMENT TO CREDIT AGREEMENT AND BUDGET AMENDMENT**<br><br>[No Hearing Required] |

PLEASE TAKE NOTICE of the Sixteenth Amendment to Credit Agreement and Agreed Budget, a copy of which is attached as Exhibit "1" hereto.

DATED: December 16, 2020           DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:     */s/ Aaron E. de Leest*
        AARON E. DE LEEST
        Attorneys for Michael A. McConnell,
        Chapter 11 Trustee

1628990.1  26932

# EXHIBIT 1

# SIXTEENTH AMENDMENT TO CREDIT AGREEMENT

This **SIXTEENTH AMENDMENT TO CREDIT AGREEMENT** (the "Amendment"), is made and entered into as of December 11, 2020, by and among **Michael McConnell** ("Trustee"), solely in his capacity as Chapter 11 trustee for the estate of **HVI Cat Canyon, Inc.**, a Colorado corporation ("HVI CC" and, together with Trustee, collectively, "Borrower"), and **UBS AG, Stamford Branch** ("Lender"). Capitalized terms used herein without definition shall have the same meanings herein as set forth in the Credit Agreement (as defined below).

## RECITALS

**WHEREAS**, Borrower and Lender are parties to that certain Credit Agreement dated as of November 8, 2019 (the "Credit Agreement"), as amended by the Amendment to Credit Agreement dated as of December 5, 2019, the Second Amendment to Credit Agreement (the "Second Amendment") dated as of January 3, 2020, the Third Amendment to Credit Agreement dated as of January 31, 2020, the Fourth Amendment to Credit Agreement (the "Fourth Amendment") dated as of March 10, 2020, the Fifth Amendment to Credit Agreement dated as of April 3, 2020, the Sixth Amendment to Credit Agreement (the "Sixth Amendment") dated as of April 17, 2020, the Seventh Amendment to Credit Agreement dated as of May 7, 2020, the Eighth Amendment to Credit Agreement (the "Eighth Amendment") dated as of May 27, 2020, the Ninth Amendment to Credit Agreement dated as of June 8, 2020, the Tenth Amendment to Credit Agreement (the "Tenth Amendment") dated as of June 25, 2020, the Eleventh Amendment to Credit Agreement (the "Eleventh Amendment") dated as of July 14, 2020, the Twelfth Amendment to Credit Agreement (the "Twelfth Amendment") dated as of August 6, 2020, the Thirteenth Amendment to Credit Agreement (the "Thirteenth Amendment") dated as of September 10, 2020, the Fourteenth Amendment to Credit Agreement (the "Fourteenth Amendment") dated as of October 2, 2020, and the Fifteenth Amendment to Credit Agreement (the "Fifteenth Amendment") dated as of November 18, 2020, and as further modified by that certain extension letter entered into by and between Trustee and Lender on January 13, 2020 and that certain extension letter entered into by and between Trustee and Lender on March 4, 2020; and

**WHEREAS**, as of the date hereof, the parties hereto intend to further amend the Credit Agreement to (i) revise certain defined terms in Section 1.01 of the Credit Agreement, and (ii) make certain other amendments as set forth below.

**NOW**, **THEREFORE**, in consideration of the premises, the covenants, promises and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

## ARTICLE 1
## ACKNOWLEDGMENTS AND RESERVATION OF RIGHTS

**Section 1.1    Acknowledgment of Defaults**.  Borrower acknowledges and represents that as of the date hereof (a) an Event of Default has occurred under Sections 6.01(e) and 7.01(e) of the Credit Agreement as a result of (i) the failure of Borrower to sell an average of one thousand (1,000) barrels of oil per day and (ii) the failure of monthly sales receipts of Borrower

to be at least $750,000 for the months ending November 30, 2019, December 31, 2019, January 31, 2020, February 29, 2020, March 31, 2020, April 30, 2020, May 31, 2020, June 30, 2020, August 31, 2020 and November 30, 2020, as required under Section 6.02(l) of the Credit Agreement (the "Monthly Sales Defaults"); (b) an Event of Default has occurred under Sections 7.01(e), 7.01(g)(i)(H) and 7.01(j)(ii) of the Credit Agreement as a result of (i) the incurrence, creation or existence of a claim of Lien against any of Borrower's assets that are *pari passu* with or senior to the claims and Liens of Lender that could reasonably be expected to result in a Material Adverse Effect and (ii) the failure to grant Lender a lien on avoidance actions arising under Chapter 5 of the Bankruptcy Code (other than avoidance claims of the estate against any party that is a current or former insider or affiliate of HVI CC and the proceeds of such claims), in violation of Sections 2.04, 6.02(g), 7.01(g)(i)(H) and 7.01(j)(ii) of the Credit Agreement (the "Priority and Avoidance Actions Defaults"); (c) an Event of Default has occurred under Section 7.01(h) of the Credit Agreement as a result of the Cease & Desist Order issued by the Administrator of the Office of Spill Prevention and Response, dated as of January 17, 2020 (the "Governmental Approval Default"); (d) Borrower has failed to comply with the covenants in Sections 6.01(a)(ii), 6.01(a)(iii), 6.01(a)(iv), 6.01(a)(v) and 6.01(a)(viii) (the "Reporting Defaults"); (e) an Event of Default has occurred under Section 7.01(a) of the Credit Agreement as a result of Borrower's failure to pay all Obligations when they became due upon the sale of substantially all of Borrower's assets pursuant to that certain Purchase and Sale Agreement dated as of August 18, 2020, by and between Borrower and Team Maria Joaquin, L.L.C. and Maria Joaquin Basin, L.L.C. (the "Maturity Date Default", together with the Reporting Defaults, the Monthly Sales Defaults and the Priority and Avoidance Actions Defaults, the "Existing Defaults"); (f) Borrower has failed to provide Lender with sufficient evidence that Borrower has complied with the covenants in Sections 6.01(d)(vii), 6.01(d)(ix), 6.01(d)(x), 6.01(d)(xi) and 6.01(d)(xiii) of the Credit Agreement (together, the "Milestones"); (g) Borrower has failed to meet a condition precedent to the effectiveness of the Second Amendment set forth in Section 4.1(c) of the Second Amendment; (h) no Events of Default other than the Existing Defaults exist under the Credit Agreement; and (i) other than the existence of the Existing Defaults, all of the representations and warranties of Borrower in the Credit Agreement are true and correct in all material respects.

**Section 1.2    Acknowledgment of Authority.**  Borrower acknowledges and represents that (a) the execution and entry of this Amendment by Borrower is within Borrower's powers and has been duly authorized by the Court pursuant to the Fourteenth Amendment Order (as defined in the Fourteenth Amendment) and (b) no further authorization or approval or other action by, and no notice to or filing with any Person is required for the due execution and entry of this Amendment by Borrower.  Borrower further acknowledges and represents that this Amendment is a nonmaterial amendment for the purpose of the Final Borrowing Order.

**Section 1.3    Reservation of Rights.**  As of December 9, 2020, Lender has advanced a total amount of $13,478,394 to Borrower,  claims with regard to $7,681,522 of which were sold by Lender to UBS Real Estate Securities, Inc. ("UBS RESI"), pursuant to that certain Loan Purchase Agreement by and between Lender and UBS RESI, dated as of October 23, 2020.  Trustee acknowledges that as of the date hereof, the total amount owed to Lender by Trustee, including all fees and expenses, exceeds $6,042,152.63.  Notwithstanding any Advance made prior to, on or after the date hereof or any provision of this Amendment, (a) Lender is not

waiving, and shall not be deemed to have waived, the Milestones, the Existing Defaults, any other Events of Default, including failure to pay the outstanding Obligations by the Maturity Date, or any conditions to any Advance (including, without limitation, the conditions set forth in Section 4.02(b) or (c) of the Credit Agreement), (b) the satisfaction of Section 4.1(c) of the Second Amendment shall remain a condition to all future Advances under the Credit Agreement, (c) Lender hereby reserves all of its rights, remedies, and powers under the Credit Agreement and the other Loan Documents, at law, in equity, or otherwise (including, without limitation, the right to impose a default rate of interest with respect to all Obligations, retroactive to the date on which the Existing Defaults occurred or such later date as Lender may determine in its sole discretion), and (d) Borrower agrees that (i) neither the making of any Advance nor the acceptance by Lender of any payments provided for in the Loan Documents shall excuse Borrower from any of its obligations under the Loan Documents and (ii) it will not assert laches, waiver or any other defense to the enforcement of any of the Loan Documents based upon the making of any Advance by Lender during the occurrence of the Existing Defaults or any other Event of Default or the acceptance by Lender of any of the payments provided for in the Loan Documents.

## ARTICLE 2
## AMENDMENTS TO CREDIT AGREEMENT

**Section 2.1** **Amendments to Section 1.01: Definitions**.

(a) The definition of "Aggregate Advance Limit" in Section 1.01 of the Credit Agreement is hereby amended and restated as follows:

"Aggregate Advance Limit": An amount equal to thirteen million nine hundred thousand dollars ($13,900,000).

(b) The definition of "Maturity Date" in Section 1.01 of the Credit Agreement is hereby amended and restated as follows:

"Maturity Date": The earlier of (i) December 31, 2020, (ii) the entry of an order from the Court granting relief from the automatic stay to any credit against any material assets of Borrower, (iii) the date of exercise by any landlord or regulatory authority of any remedy with regard to any assets of Borrower, (iv) the occurrence of a Material Adverse Effect, and (v) the acceleration of the Obligations upon the occurrence of an Event of Default in accordance with the terms of this Agreement.

## ARTICLE 3
## AGREED BUDGET

**Section 3.1** **Agreed Budget**. The parties agree and acknowledge that the budget attached hereto as Exhibit A shall constitute the Agreed Budget for all purposes under the Credit Agreement and the other Loan Documents as of the date hereof, subject to further modification in accordance with the terms of the Credit Agreement. Trustee represents and warrants that Trustee is not aware of any information contained in the Agreed Budget which is false or misleading or of any omission of information which causes such Agreed Budget to be false or misleading.

4

**Section 3.2  Professional Fees.** The parties agree and acknowledge that (i) the following guidelines shall replace any prior agreement or understanding between the parties regarding any Carve-Out for the professionals referenced below, including that in paragraph 8 of the Interim Order Approving Sixth Amendment to Credit Agreement entered on April 22, 2020, Section 3.2 of the Eighth Amendment, Section 3.2 of the Tenth Amendment, Section 3.2 of the Eleventh Amendment, Section 3.2 of the Twelfth Amendment, Section 3.2 of the Thirteenth Amendment, Section 3.2 of the Fourteenth Amendment, Section 3.2 of the Fifteenth Amendment, and paragraph 16 of the Final Borrowing Order and (ii) prior to the effectiveness of this Amendment, CR3 Partners, LLC and Danning, Gill, Israel & Krasnoff, LLP shall each be required to provide an executed acknowledgement agreeing to the terms set forth in this Section 3.2, unless Lender, in its sole and absolute discretion, decides any such acknowledgement may be provided at a later date:

(a) As used herein "Deferred Fees" means all the currently unpaid fees and expenses payable to Trustee, CR3 Partners, LLC ("CR3"), Danning, Gill, Israel & Krasnoff, LLP and other professionals employed by Trustee: (i) accrued between the date of Trustee's appointment on October 16, 2019 and October 31, 2020 and ultimately allowed pursuant to a Final Order of the Court, (ii) in a total amount of two million nine hundred seventy two thousand eight hundred thirty nine dollars ($2,972,839) and (iii) to the extent in excess of the amount set forth in the Agreed Budget for Professional Fees during such period, including the holdbacks under the Credit Agreement. As used herein, "Professional Fees" means the fees and expenses payable to Trustee and all other attorneys, accountants and other professionals retained in the Chapter 11 Case pursuant to Sections 327 and 1103 of the Bankruptcy Code, including but not limited to CR3, Danning, Gill, Israel & Krasnoff, LLP and counsel to the Official Committee of Unsecured Creditors (collectively, the "Professionals" and each, a "Professional") but excluding any fees and expenses payable to Ten Oaks Partners.

(b) Notwithstanding any super-priority claims, priming liens or prepetition liens of Lender, Lender agrees that the net cash proceeds of the Collateral (including any distributions pursuant to a chapter 11 plan or any foreclosure sale) shall be applied, and Lender shall carve-out from its liens and claims to permit the payment of the Deferred Fees as follows: (1) first, to the Obligations in an amount up to $1,191,862, (2) second, to any applicable property taxes payable in respect of such Collateral, (3) third, after deducting other bona fide costs of sale including without limitation (i) unpaid sums due to Ten Oaks Partners or any broker or advisor and (ii) any amounts actually paid or escrowed from sale proceeds on behalf of (x) Professional Fees incurred between the Petition Date and the date of Trustee's appointment on October 16, 2019 or (y) the Official Committee of Unsecured Creditors during any period, fifty percent (50%) thereof to the Obligations and fifty percent (50%) thereof to the Deferred Fees until the Deferred Fees are paid in full (it being understood that the amounts specified in this Section 3.2(b)(3) have either been paid pursuant to Court order or reserved in cash and are currently held by the Trustee for the specified parties as of the date hereof), provided that in the case of a successful credit bid in this Bankruptcy Case or at a foreclosure sale, Lender shall promptly pay the Deferred Fees in cash

in the amount of two million nine hundred seventy two thousand eight hundred thirty nine dollars ($2,972,839), (4) fourth, to any remaining Obligations, (5) fifth, to any Prepetition Debt owed to Lender, and (6) sixth, as otherwise provided in the Bankruptcy Code. In addition to the above, the Professionals shall be entitled to an amount of fifteen thousand dollars ($15,000) in the aggregate from and after a written notice of default. For the avoidance of doubt, nothing in this Section 3.2(b) shall (i) be construed as consent to the allowance of any Professional Fees or Deferred Fees or (ii) affect the right of any party to object to the allowance of, or seek reduction, compromise or adjustment (in whole or in part) to the payment of, any claim.

(c) Notwithstanding any super-priority claims, priming liens or prepetition liens of Lender, Lender agrees that the net cash proceeds resulting from the recovery of any Chapter 5 avoidance claims against insiders and affiliates of Borrower shall be applied as follows: (1) first, to any litigation costs and expenses incurred in pursuing such claims (including financing of such litigation) until such costs are paid in full and (2) second, fifty percent (50%) thereof to Lender and fifty percent (50%) thereof, (A) to any allowed outstanding Professional Fees incurred in the month of October, in an amount up to forty six thousand eight hundred seventy eight dollars ($46,878) only, after effectuating the voluntary reduction of such October fees by (i) fifty thousand dollars ($50,000) for any fees owed to Trustee, (ii) one hundred fifty thousand dollars ($150,000) for any fees owed to CR3, (iii) thirty five thousand dollars ($35,000) for any fees owed to Danning, Gill, Israel & Krasnoff, LLP, and fifteen thousand dollars ($15,000) for any fees owed to the Trustee's other Professionals, and (B) to any outstanding fees and expenses payable to Trustee, Danning, Gill, Israel & Krasnoff, LLP and CR3 incurred in the month of November, provided the total amount paid pursuant to this Section 3.2(c) with regard to fees accruing in the months of October and November shall not exceed two hundred twenty five thousand dollars ($225,000). As provided in the Court's final order for Emergency Priming and Superpriority Financing and Consensual Use of Cash Collateral by the Chapter 11 Trustee dated November 27, 2019, Lender agrees, for the benefit of Trustee and the Official Committee of Unsecured Creditors, that it will not look to recover from avoidance claims or proceeds without first making a reasonable good faith effort to collect from Prepetition Collateral to satisfy the Obligations. Lender further agrees to observe any requirements of marshaling under applicable law.

## ARTICLE 4
## CONDITIONS OF LENDING

**Section 4.1** <u>**Conditions Precedent**</u>**.**   The effectiveness of this Amendment is subject to the following conditions precedent:

(a) Lender shall have received the following, in form and substance satisfactory and acceptable to Lender:

  (i) an executed copy of this Amendment delivered by Borrower to Lender;

  (ii) such other documents as Lender may reasonably request;

(b) the representations and warranties contained in Section 5.01 of the Credit Agreement are true and correct as though made on and as of the date of this Amendment;

(c) other than the existence of the Existing Defaults, no event or condition has occurred and is continuing, or would result from the making of any Advance, which constitutes an Event of Default or Potential Event of Default;

(d) other than in connection with the existence of the Existing Defaults (including in connection with failure of the Final Borrowing Order to grant a senior priming lien with regard to the Treasurer and Tax Collector of the Country of Santa Barbara, California), no pleading or application shall have been filed in the Court by any party in interest which is not withdrawn, dismissed or denied within ten (10) days after filing seeking (i) to dismiss or convert the Chapter 11 Case to a Chapter 7 case, (ii) the removal of Trustee, or the appointment of an examiner having enlarged powers relating to the operation of the business of Borrower (beyond those set forth under Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code, (iii) the granting of a super-priority claim or a Lien *pari passu* or senior to that of Lender granted pursuant to any Collateral Documents, the Interim Borrowing Order or the Final Borrowing Order, (iv) to stay, reverse, vacate, or otherwise modify the Interim Borrowing Order or the Final Borrowing Order without the prior written consent of Lender, or (v) relief from the automatic stay (or any other injunction having similar effect) so as to allow a third party to proceed against any material property or assets of Borrower; and

(e) no order, judgment or decree of any court (including, without limitation, the Court), arbitrator or governmental authority shall purport to enjoin or restrain Lender from making any Advance.

## ARTICLE 5
## MISCELLANEOUS

  **Section 5.1** **Entire Agreement; Effect on Credit Agreement.**  This Amendment and the Loan Documents and all exhibits hereto and thereto embody the entire agreement between the parties respecting the subject matter hereof and thereof and supersede all prior agreements, proposals, communications and understandings relating to such subject matter.  The terms of the Amendment shall be considered a part of the Credit Agreement as if fully set forth therein.  Except as specifically amended by this Amendment, the Credit Agreement and the other Loan Documents shall remain in full force and effect and are hereby ratified and confirmed.  The execution, delivery and performance of this Amendment shall not constitute a waiver of any provision of, or operate as a waiver of any right, power or remedy of, Lender under the Credit Agreement or any of the other Loan Documents.

**Section 5.2** **Miscellaneous.** This Amendment shall be binding upon the parties and their respective successors and assigns. The section headings are furnished for the convenience of the parties and are not to be considered in the construction or interpretation of this Amendment or the Credit Agreement. This Amendment may be executed in any number of counterparts, each of which shall be deemed an original, but which together shall constitute one and the same instrument. This Amendment may be executed by electronic or computerized means (including, without limitation, by electronic stylus, scanned or photographed signature, typing or any electronic signature service) and the parties agree that any such electronic signature by an authorized signatory on behalf of a party shall – to the fullest extent possible – be treated in the same way as a "wet ink" signature by such party.

**Section 5.3** **Governing Law.** The construction, validity, enforcement and interpretation of this Amendment shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

**Section 5.4** **No Other Amendments.** In case of a conflict between the terms of this Amendment and the Credit Agreement, the terms of this Amendment control. Except as expressly set forth in this Amendment, the terms of the Credit Agreement remain unchanged and in full force and effect.

**Section 5.5.** **Final Borrowing Order Controls.** All of the terms and agreements of the Final Borrowing Order, as supplemented by the Second Amendment Order, the Fourth Amendment Order, the Sixth Amendment Order, the Eighth Amendment Order, the Tenth Amendment Order, the Twelfth Amendment Order and the Fourteenth Amendment Order are incorporated in this Amendment by reference. In the event of any direct conflict or inconsistency between the provisions of this Amendment and the Final Borrowing Order, the provisions of the Final Borrowing Order, as supplemented by the Second Amendment Order, the Fourth Amendment Order, the Sixth Amendment Order, the Eighth Amendment Order, the Tenth Amendment Order, the Twelfth Amendment Order and the Fourteenth Amendment Order shall control.

**Section 5.6** **Fees and Expenses.** Without limiting the generality of Section 8.05 of the Credit Agreement, Borrower agrees to pay all reasonable fees and expenses of Lender in connection with this Amendment (including reasonable attorneys' fees and expenses).

[The remainder of this page is left intentionally blank.]

**IN WITNESS WHEREOF**, the parties have executed this Amendment as of the day and year first above written.

**BORROWER:**

HVI CAT CANYON, INC.

By: _____

Name: Michael McConnell

Title:  Chapter 11 Trustee for the estate of HVI Cat Canyon, Inc.

*[Signature Page to Sixteenth Amendment to Credit Agreement]*

9

**THE LENDER:**

UBS AG, STAMFORD BRANCH

By: _____

Name: Houssem Daly

Title: Associate Director

By: _____

Name: Ken chin

Title: Director

*[Signature Page to Sixteenth Amendment to Credit Agreement]*

10

Acknowledged and Agreed

**CR3 PARTNERS, LLC:**

By: *Timothy Skillman*

Name:   Timothy Skillman

Title:   Partner

*[Signature Page to Sixteenth Amendment to Credit Agreement]*

11

Acknowledged and Agreed

**DANNING, GILL, ISRAEL & KRASNOFF, LLP:**

By: _/s/ Eric P. Israel_

Name: Eric P. Israel

Title: Managing Partner

*[Signature Page to Sixteenth Amendment to Credit Agreement]*

# **EXHIBIT A**

AGREED BUDGET

(See Attached)

**HVI Cat Canyon Wind Down Budget**
as of 12/9/20
*($000s)*

| Friday week ending | 10/30/2020 Week 1 Post-Sale Closing | 11/6/2020 Week 2 Post-Sale Closing | 11/13/2020 Week 3 Post-Sale Closing | 11/20/2020 Week 4 Post-Sale Closing | 11/27/2020 Week 5 Post-Sale Closing | 12/4/2020 Week 6 Post-Sale Closing | 12/11/2020 Week 7 Post-Sale Closing | 12/18/2020 Week 8 Post-Sale Closing | Total |
|---|---|---|---|---|---|---|---|---|---|
| ***Plan Income*** | | | | | | | | | |
| Available Operating Cash | - | - | - | - | - | - | 71 | - | 71 |
| **Total Plan Income** | - | - | - | - | - | - | 71 | - | 71 |
| ***Plan Expenses*** | | | | | | | | | |
| Trustee's Counsel | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | $ (277) |
| Trustee's FA | (23) | (23) | (20) | (17) | (8) | (3) | - | - | $ (94) |
| UCC Counsel | - | - | - | - | - | - | (7) | - | $ (7) |
| Employee Payroll | - | (1) | (1) | (1) | (1) | (3) | (3) | - | $ (10) |
| HR Expenses | - | - | (1) | - | - | - | - | - | $ (1) |
| Abandonment | - | - | - | - | - | - | (33) | - | $ (33) |
| Settlement with CalGem | - | - | - | - | - | - | (70) | - | $ (70) |
| **Total Plan Expenses** | (58) | (59) | (57) | (52) | (43) | (41) | (147) | (35) | (491) |
| **Net Funding Requirement** | (58) | (59) | (57) | (52) | (43) | (41) | (76) | (35) | (420) |

**Notes**

This budget incorporates available operating cash as of 12/9/20 of $71k
Added UCC actual fee overage vs budget for the period May to October 2020 of $6.8k
This budget is intended to reflect weekly run rates in order to quantify the total funding need for the transition to the Ch. 7 Trustee. Timing of the actual disbursements will vary.
Updated abandonment budget to include estimated expenses to abandon Battles and total expenses incurred to date on all other properties prepared by Krummerich Engineering.
UBS approved the Trustee's $70k settlement with CalGem. The Legal budget has been updated to reflect the costs incurred to prepare for the trial and prepare settlement statements.
Removed $30k from this budget for preparing and filing Federal and State 2020 returns as we assume this expense will become the responsibility of the Ch. 7 Trustee
Removed Rent and Office expenses from this budget
Removed $5k for document retention & destruction as that is assumed to be a Ch. 7 Trustee expense
Removed $5k contingency for unknown one-time costs
Removed Q3 and Q4 2020 Trustee fees

14

EXHIBIT A

Confidential Draft: Subject to Change

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF SIXTEENTH AMENDMENT TO CREDIT AGREEMENT AND BUDGET AMENDMENT  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 16, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**: On December 16, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
HVI Cat Canyon, Inc.
c/o Capitol Corporate Services, Inc.
36 S. 18th Avenue, Suite D
Brighton, CO 80601

Debtor
HVI Cat Canyon,Inc.
630 Fifth Avenue, Suite 2410
New York, NY  10111

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 16, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 16, 2020 | Beverly Lew | /s/ Beverly Lew |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Anthony A Austin**   anthony.austin@doj.ca.gov
- **William C Beall**   will@beallandburkhardt.com, carissa@beallandburkhardt.com
- **Bradley D Blakeley**   blakeley@blakeleylawgroup.com, bradleydblakeley@gmail.com
- **Alicia Clough**   aclough@loeb.com, mnielson@loeb.com,ladocket@loeb.com
- **Marc S Cohen**   mscohen@loeb.com, klyles@loeb.com
- **Alan D Condren**   , berickson@seedmackall.com
- **Alan D Condren**   acondren@seedmackall.com, berickson@seedmackall.com
- **Alec S DiMario**   alec.dimario@mhllp.com, debra.blondheim@mhllp.com;Syreeta.shoals@mhllp.com
- **Jeremy Faith**   Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **Karl J Fingerhood**   karl.fingerhood@usdoj.gov, efile_ees.enrd@usdoj.gov
- **H Alexander Fisch**   Alex.Fisch@doj.ca.gov
- **Don Fisher**   dfisher@ptwww.com, tblack@ptwww.com
- **Brian D Fittipaldi**   brian.fittipaldi@usdoj.gov
- **Ellen A Friedman**   efriedman@friedmanspring.com, khollander@friedmanspring.com
- **Gisele M Goetz**   gmgoetz@hbsb.com, ggoetz@collegesoflaw.edu;cecilia@hbsb.com
- **Karen L Grant**   kgrant@silcom.com
- **Ira S Greene**   Ira.Greene@lockelord.com
- **Matthew C. Heyn**   Matthew.Heyn@doj.ca.gov, mcheyn@outlook.com
- **Brian L Holman**   b.holman@mpglaw.com
- **Brian L Holman**   b.holman@musickpeeler.com
- **Tracy K Hunckler**   thunckler@daycartermurphy.com, cgori@daycartermurphy.com
- **Samantha Indelicato**   sindelicato@omm.com
- **Eric P Israel**   eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Razmig Izakelian**   razmigizakelian@quinnemanuel.com
- **Evan M Jones**   ejones@omm.com, evan-jones-5677@ecf.pacerpro.com
- **Alan H Katz**   akatz@lockelord.com
- **John C Keith**   john.keith@doj.ca.gov
- **Jeannie Kim**   jekim@sheppardmullin.com, dgatmen@sheppardmullin.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                 **F 9013-3.1.PROOF.SERVICE**

- **Anna Landa**  Anna@MarguliesFaithlaw.com, Helen@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Angela@MarguliesFaithlaw.com

- **Mitchell J Langberg**  mlangberg@bhfs.com, dcrudup@bhfs.com

- **Maxim B Litvak**  mlitvak@pszjlaw.com

- **Vincent T Martinez**  llimone@twitchellandrice.com, smccomish@twitchellandrice.com

- **Michael Arthur McConnell (TR)**  Michael.mcconnell@kellyhart.com

- **Brian M Metcalf**  bmetcalf@omm.com, brian-metcalf-9774@ecf.pacerpro.com

- **Monserrat Morales**  Monsi@MarguliesFaithLaw.com, Vicky@MarguliesFaithLaw.com;Helen@marguliesfaithlaw.com;Angela@MarguliesFaithlaw.com

- **Alan I Nahmias**  anahmias@mbnlawyers.com, jdale@mbnlawyers.com

- **Jerry Namba**  nambaepiq@earthlink.net, atty_namba@bluestylus.com

- **David L Osias**  dosias@allenmatkins.com, bcrfilings@allenmatkins.com,kdemorest@allenmatkins.com,csandoval@allenmatkins.com

- **Darren L Patrick**  dpatrick@omm.com, darren-patrick-1373@ecf.pacerpro.com;sindelicato@omm.com;ejones@omm.com

- **Jeffrey N Pomerantz**  jpomerantz@pszjlaw.com

- **Benjamin P Pugh**  bpugh@ecg.law, mhamburger@ecg.law;calendar@ecg.law

- **Edwin J Rambuski**  edwin@rambuskilaw.com, marissa@rambuskilaw.com

- **Hugh M Ray**  hugh.ray@pillsburylaw.com, nancy.jones@pillsburylaw.com,docket@pillsburylaw.com

- **Edward S Renwick**  erenwick@hanmor.com, iaguilar@hanmor.com

- **J. Alexandra Rhim**  arhim@hrhlaw.com

- **Todd C. Ringstad**  becky@ringstadlaw.com, arlene@ringstadlaw.com

- **Mitchell E Rishe**  mitchell.rishe@doj.ca.gov

- **George E Schulman**  GSchulman@DanningGill.Com, danninggill@gmail.com;gschulman@ecf.inforuptcy.com

- **Zev Shechtman**  zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

- **Sonia Singh**  ssingh@DanningGill.com, amatsuoka@ecjlaw.com

- **Daniel A Solitro**  dsolitro@lockelord.com, ataylor2@lockelord.com

- **Ross Spence**  ross@sdllaw.com, brittany@sdllaw.com;donna@sdllaw.com;henry@sdllaw.com

- **Christopher D Sullivan**  csullivan@diamondmccarthy.com, mdomer@diamondmccarthy.com;kmartinez@diamondmccarthy.com;quentin.roberts@diamondmccarthy.com; erika.shannon@diamondmccarthy.com;aiemee.low@diamondmccarthy.com

- **Jennifer Taylor**  jtaylor@omm.com

- **John N Tedford**  jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

- **Salina R Thomas**  bankruptcy@co.kern.ca.us

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**

- **Meagan S Tom**   meagan.tom@lockelord.com, autodocket@lockelord.com;taylor.warren@lockelord.com

- **Patricia B Tomasco**   pattytomasco@quinnemanuel.com, barbarahowell@quinnemanuel.com;cristinagreen@quinnemanuel.com

- **Philip S Warden**   philip.warden@pillsburylaw.com, thomas.loran@pillsburylaw.com;kathy.stout@pillsburylaw.com;deirdre.campino@pillsburylaw.com

- **Fred Whitaker**   lshertzer@cwlawyers.com, spattas@cwlawyers.com

- **William E. Winfield**   wwinfield@calattys.com, scuevas@calattys.com

- **Richard Lee Wynne**   richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com

- **Emily Young**   pacerteam@gardencitygroup.com, rjacobs@ecf.epiqsystems.com;ECFInbox@epiqsystems.com

- **David R Zaro**   dzaro@allenmatkins.com

- **Aaron E de Leest**   adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**